Michael L. Schrag (SBN 185832)
Joshua J. Bloomfield (SBN 212172)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, California 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
mls@classlawgroup.com
jjb@classlawgroup.com

Richard M. Paul III
Ashlea G. Schwarz
**PAUL LLP**
601 Walnut Street, Suite 300
Kansas City, Missouri 64106
Telephone: (816) 984-8100
Facsimile: (816) 984-8101
Rick@PaulLLP.com
Ashlea@PaulLLP.com

*Counsel for Plaintiff and Proposed Class*

## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Alicia Hernandez, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>Wells Fargo Bank, N.A.,<br><br>    Defendant. | Case No. 18-cv-07354<br><br>**CLASS ACTION COMPLAINT**<br><br><br>DEMAND FOR JURY TRIAL |

# I.     INTRODUCTION

1.      Losing your home through a foreclosure is one of the most disruptive events that you could experience.

2.      Recognizing this, Congress set aside $50 billion in stimulus funding for the Home Affordable Modification Program (HAMP). Created in the wake of the mortgage crisis, HAMP was designed to keep people in their homes, providing a measure of stability to homeowners facing unemployment or underemployment in harsh economic conditions.

3.      Wells Fargo accepted up to $6.4 billion in HAMP funding, but failed to fulfill its obligations and duties to its customers under HAMP's loan modification program.

4.      Rather than use software developed by Fannie Mae to calculate a borrower's eligibility for HAMP, Wells Fargo developed its own proprietary tool. Wells Fargo now admits that this tool caused systematic miscalculations that led to Wells Fargo wrongfully denying loan modifications to over 870 borrowers who qualified for a loan modification under HAMP. Of those, Wells Fargo admits it foreclosed on 545 borrowers when it should have instead offered them a loan modification.

5.      Loan modifications often substantially reduce borrowers' monthly payments.

6.      Plaintiff Alicia Hernandez was the exact type of person whom HAMP was supposed to help. Prior to 2008, she was working full-time and bought a condo in North Bergen, New Jersey.

7.      When the recession hit, however, she lost her job to downsizing and needed the help that HAMP was supposed to provide.

8.      Rather than extend a HAMP modification, Wells Fargo miscalculated and initiated foreclosure proceedings. Ms. Hernandez fought foreclosure pro se for years, but in the end, she was foreclosed on.

9.      As part of its voluntary remediation program – designed to reassure investors and the public that Wells Fargo can be a trusted brand once again – Wells Fargo sent her a check for $15,000. The accompanying letter informed Ms. Hernandez that Wells Fargo had discovered that she wasn't offered a loan modification due to a "faulty calculation." And if not for the error, she would have been approved for a HAMP modification.

10.     Wells Fargo's letter did not explain how Wells Fargo determined the amount offered by

1    check, but nonetheless assured that it should be sufficient to "make things right."

2        11.    Seeking full and fair compensation, Plaintiff brings this action on behalf of herself and

3    others similarly affected by Wells Fargo's faulty calculations.

4                                II.    JURISDICTION

5        12.    This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2)

6    because this is a class action wherein the amount in controversy exceeds the sum or value of

7    $5,000,000, exclusive of interest and costs, there are at least 870 members in the proposed class, and at

8    least one member of the class of plaintiffs is a citizen of a state different from the Defendant.

9        13.    This Court has personal jurisdiction over Defendant Wells Fargo Bank, N.A., because it

10   is headquartered in California and conducts business in the state of California.

11       14.    Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because a substantial part

12   of the events or omissions giving rise to the claims occurred in, were directed to, and/or emanated from

13   this District.

14                          III.    INTRADISTRICT ASSIGNMENT

15       15.    Assignment to the Oakland/San Francisco division is proper because Wells Fargo Bank,

16   N.A. is headquartered in San Francisco, California and a substantial part of the events or omissions

17   which give rise to the claims occurred there.

18                                IV.    PARTIES

19       16.    Plaintiff Alicia Hernandez is a resident and citizen of Pennsylvania, who owned a home

20   in New Jersey during the relevant time period.

21       17.    Defendant Wells Fargo Bank, N.A. is incorporated in Delaware, and its principal place

22   of business is 420 Montgomery Street, San Francisco, California 94104.

23                          V.    FACTUAL ALLEGATIONS

24   **A.    Background on Wells Fargo**

25       18.    Wells Fargo has historically been the nation's largest mortgage lender. That lasted until

26   a string of scandals stemming from Wells Fargo's misdeeds started coming to light in 2017.[1] According

27   _____

28   [1] Samantha Sharf, *Quicken Loans Overtakes Wells Fargo As America's Largest Mortgage Lender*, FORBES (Feb. 5, 2018), https://tinyurl.com/largest-lender.

to Wells Fargo's latest quarterly filing with the Securities & Exchange Commission (SEC), the bank holds $284 billion in mortgage debt, and another $36 billion on second-mortgages.[2]

19.     At the end of 2016, federal regulators revealed that Wells Fargo's employees had "secretly created millions of unauthorized bank and credit card accounts without their customers knowing it."[3]

20.     In July 2017, the *New York Times* revealed that Wells Fargo had charged more than 800,000 borrowers for "force-placed" car insurance that they did not want or need.[4] The bank was only allowed to charge for "force-placed" insurance if the car-loan customer did not have their own auto insurance, but these customers *did* have their own insurance.[5] The *New York Times* reported that 25,000 Wells Fargo borrowers had their vehicles wrongfully repossessed as a result of Wells Fargo adding these additional premium amounts for  the force-placed insurance to consumers' monthly loan statements.[6]

21.     In April 2018, federal regulators settled an enforcement action with Wells Fargo for $1 billion related to its force-placement of unneeded auto insurance, on top of the $1.5 billion that Wells Fargo already faced in penalties from the Department of Justice and state regulators for the opening of fraudulent accounts.[7]

22.     And now, Wells Fargo has caused certain customers to lose their homes and suffer financial, physical, and emotional hardships. In August 2018, Wells Fargo admitted that a "software error" had caused it to deny mortgage modifications to 625 borrowers who actually qualified for and were entitled to a mortgage modification under federal law.[8] This admission was based on information it knew in 2015 but chose not to disclose for nearly three years.

23.     In November 2018, Wells Fargo announced that it had understated the number of

---

[2] Wells Fargo & Company, *Form 10-Q for Quarter Ending Sept. 30, 2018*, SECURITIES & EXCHANGE COMMISSION (Oct. 24, 2018), https://tinyurl.com/ybazt2wl.
[3] Jackie Wattles et al., *Wells Fargo's 20-month nightmare*, CNN (Apr. 24, 2018), https://tinyurl.com/cnn-20-mo-nightmare.
[4] Gretchen Morgenson, Wells Fargo Forced Unwanted Auto Insurance on Borrowers, NEW YORK TIMES (July 27, 2017), https://tinyurl.com/y8p5c4sd.
[5] *Id.*
[6] *Id.*
[7] Matthew Goldstein, *Wells Fargo Pays $1 Billion to Federal Regulators*, NEW YORK TIMES (Apr. 20, 2018), https://tinyurl.com/wf-reg-fines.
[8] Ben Lane, *Wells Fargo reveals software error wrongly denied much-needed mortgage modifications*, HOUSING WIRE (Aug. 3, 2018), https://tinyurl.com/y8j9ljvg.

CLASS ACTION COMPLAINT
Case No. 18-cv-07354

affected borrowers and that it was actually 40% more; now Wells Fargo claims a total of 874 were wrongfully denied loan modifications by the software error.[9] These borrowers should have received a loan modification under the federal Home Affordable Modification Program (HAMP), but were incorrectly denied.[10]

24.     In the end, at least 545 mortgage borrowers lost their homes through foreclosures because of Wells Fargo's software error.[11]

25.     This lawsuit seeks remedies for the harm Wells Fargo caused all borrowers who were erroneously denied a mortgage modification.

**B.     The Federal HAMP Program**

26.     "In response to rapidly deteriorating financial market conditions in the late summer and early fall of 2008, Congress enacted the Emergency Economic Stabilization Act. The centerpiece of the Act was the Troubled Asset Relief Program (TARP), which required the Secretary of the Treasury to "implement a plan" to "minimize foreclosures" and keep troubled mortgage-borrowers in their homes.[12]

27.     The Treasury Secretary created the HAMP program to carry out Congress's mandate. HAMP received $50 billion in TARP funds.[13] Mortgage lenders that *chose* to participate in the HAMP program were eligible to receive allocations of these stimulus funds.

28.     Wells Fargo chose to participate in HAMP.

29.     To participate, Wells Fargo was required to comply with all HAMP program requirements. In exchange for up to $6.4 billion in HAMP funds, Wells Fargo agreed to abide by all "guidelines and procedures issued by the Treasury with respect to [HAMP]" and "any supplemental documentation … issued by the Treasury," including "Supplemental Directives." *See* Wells Fargo, *Amended and Restated Servicer Participation Agreement*, § 1(B).[14]

30.     In a Supplemental Directive, the Treasury Secretary required loan-servicers participating in HAMP to issue a mortgage modification to any borrower who met all the criteria to qualify. *See*

---

[9] Ben Lane, *Wells Fargo reveals software error led to hundreds of faulty foreclosures*, HOUSING WIRE (Nov. 6, 2018), https://tinyurl.com/y94ezdje.
[10] *Id.*
[11] *Id.*
[12] *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 556 (7th Cir. 2012).
[13] *Id.*
[14] *Available at* https://tinyurl.com/wells-fargo-hamp-agreement.

Supplemental Directive 09–01 (if a borrower meets all qualifying criteria, "the servicer MUST offer the modification") (emphasis in original).

31.    To be eligible for HAMP, borrowers needed to (among other things):

    a.    Show that they had suffered a financial hardship;

    b.    Be able to pay 31% of their monthly income towards the mortgage.

32.    If the borrower met these eligibility criteria, the loan servicer participating in HAMP was required to issue a mortgage modification if the "Net Present Value" of the modified mortgage was positive, meaning it was "more profitable to modify the loan" than to "allow the loan to go into foreclosure."[15] In simplified terms, the basic formula for calculating Net Present Value is:

Net Present Value = (Expected Revenue from Modified Mortgage) – (Expected Cost of Foreclosing).

33.    In essence, a positive Net Present Value meant that the lender was expected to lose money by foreclosing on rather than modifying the mortgage.

34.    If the Net Present Value calculation was positive, the Treasury Secretary required the loan servicer to issue a modification. If it was negative, the servicer could choose to offer a modification, but did not have to. *See* Supplemental Directive 09-01. Loan servicers received HAMP money for every loan modification they issued, as an incentive to offer modifications.

35.    When modifying a mortgage, HAMP-participating lenders were required to reduce the borrower's monthly mortgage payment to get it "as close as possible to 31 percent" of the borrower's monthly income.[16] To achieve this, loan servicers were required to reduce the interest rate on the loan.[17] If this reduction was insufficient to get the payment down to 31 percent of borrower income, the loan servicer was required to convert the mortgage to a 40-year term.[18] If that wasn't enough, the servicer had to place the loan in forbearance and waive interest on the loan while in forbearance.[19]

36.    Borrowers who qualified for HAMP were generally given a "trial" modification for three months or more. If they were able to pay the modified amount and remained HAMP-eligible, they could receive a permanent modification.

---

[15] *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 557 (7th Cir. 2012).
[16] Supplemental Directive 09–01.
[17] *Id.*
[18] *Id.*
[19] *Id.*

**C.  Wells Fargo's Proprietary Software Miscalculates "Net Present Value," Wrongly Denying Mortgage Modifications to Borrowers**

37.  Fannie Mae created a software tool for loan servicers to use for calculating Net Present Value (NPV) for HAMP purposes.[20] Fannie Mae is a financial-services corporation created by Congress.

38.  As the Treasury Secretary notes, Fannie Mae's NPV calculator was made available to HAMP-participating loan-servicers on the HAMP servicer web portal, "www.financialstability.gov."[21]

39.  The Treasury Secretary's Supplemental Directive 09-01 allows loan servicers with $40 billion or more in mortgage loans to use their own proprietary NPV calculator, rather than the default calculator provided on the HAMP web portal.[22]

40.  In a July 2018 SEC filing, Wells Fargo revealed that it had discovered a "calculation error" in a software tool it used to determine whether to issue a mortgage loan modification.[23] The tool miscalculated certain fees when "determining whether a customer qualified for a mortgage loan modification pursuant to the requirements" of HAMP.[24] Wells Fargo said that the software error was corrected on October 20, 2015; yet Wells Fargo did not disclose the error for another three years.[25] Wells Fargo determined that the software error had affected "approximately 625 customers," who were "incorrectly denied a loan modification."[26] Wells Fargo said it had set aside $8 million to "remediate" the error without any explanation as to how it calculated this amount.[27]

41.  In an October 2018 SEC filing, Wells Fargo expanded the number of consumers harmed by its conduct. It said that although the software error had been fixed on October 20, 2015, Wells Fargo had discovered "related errors" that had continued until April 30, 2018.[28] Wells Fargo said, "Similar to the initial calculation error, these errors caused an overstatement of the attorneys' fees that were

---

[20] *See* Supplemental Directive 09-01, at *4, *available at* https://tinyurl.com/hamp-supp-dir.
[21] *Id.* at *4-5.
[22] *Id.* at *5.
[23] Wells Fargo & Company, *10-Q for Period Ending June 30, 2018*, SEC (July 25, 2018), https://tinyurl.com/y9te58qx.
[24] *Id.* at *5.
[25] *Id.*
[26] *Id.*
[27] *Id.*
[28] Wells Fargo & Co., *10-Q for Period Ending September 30, 2018*, https://tinyurl.com/ybazt2wl.

included for purposes of determining whether a customer qualified for a mortgage loan modification."[29] Attorneys' fees are relevant to HAMP's Net Present Value calculation because they are a substantial cost in the foreclosure process. An overstatement of attorneys' fees would exaggerate the loss that the lender expected to take on the loan, reducing the Net Present Value of a modification, and erroneously reducing the number of modifications offered. As a result of the attorneys' fees overstatement, "870 customers were incorrectly denied a loan modification," according to Wells Fargo.[30] Of those, 545 customers lost their homes to foreclosure.[31]

42.     In its latest SEC filing, Wells Fargo said it had "contacted a substantial majority of the approximately 870 affected customers to provide remediation."[32] Wells Fargo's "remediation" is typically a check of between $1,400 and $25,000. The basis for these amounts is not explained or supported.

43.     Plaintiff brings this lawsuit on behalf of herself and other similarly situated borrowers throughout the U.S. because this amount is insufficient to compensate for the loss of their homes and other damages and injuries suffered.

44.      Wells Fargo essentially concedes as much when, in its SEC filing, it also stated that it is giving customers "the option also to pursue no-cost mediation with an independent mediator"[33] to negotiate additional compensation.

**D.     Wells Fargo's Miscalculation Errors and Resulting Foreclosures Caused Class Members Substantial Financial and Other Harm**

45.     In the wake of the 2008 financial crisis, homeowners were struggling to make ends meet.

46.     Class members applied for loan modifications and many were told that they did not qualify for a loan modification. Class members had little choice but to take Wells Fargo at its word that they did not qualify for HAMP.

47.     Starting in the fall of 2018, Wells Fargo sent borrowers, including Ms. Hernandez, a

---

[29] *Id*. at *6.
[30] *Id*.
[31] *Id*.
[32] *Id*.
[33] *Id*.

CLASS ACTION COMPLAINT
Case No. 18-cv-07354

letter. The letter said:

> When you were considered for a loan modification, you weren't approved, and now we realize that you should have been. We based our decision on a faulty calculation, and we're sorry. If it had been correct, you would have been approved for a trial modification.

48. Included with the letter, Wells Fargo sent Class members a check ranging from $1,400 to $25,000. Wells Fargo did not explain the basis for the amount offered to customers and why some were offered more than others. Nor has Wells Fargo told Class members what the "faulty calculation" was or why it occurred.

49. But as Wells Fargo admits in the letter, customers suffered serious financial harm as a result of foreclosures that should never have happened. In the letter, Wells Fargo says: "We've carefully considered what we can do for you. You'll find a payment enclosed to help make up for your **financial loss**." (emphasis added.) Wells Fargo also admits in the letter that customers suffered "negative reporting" on their credit reports.

50. Although Wells Fargo does not acknowledge it, Class members suffered other substantial harm as well.

### Plaintiff's Experience

51. Ms. Hernandez lost her job due to mass layoffs following the financial crisis.

52. She began the loan modification process in 2012-13, but Wells Fargo told her that she didn't qualify for a HAMP modification. Wells Fargo instituted foreclosure proceedings in late 2013.

53. Ms. Hernandez fought the foreclosure pro se for several years, but Wells Fargo foreclosed on her property in late 2015, around the same time Wells Fargo now says that it discovered and fixed the software error.

54. Three years later, in September 2018, Wells Fargo sent Ms. Hernandez its form letter and a check for $15,000.

55. The check does not make up for the severe financial and other consequences that Wells Fargo's calculation error inflicted on Ms. Hernandez, including the money and equity she lost from the foreclosure, the damage to her credit rating, and other serious consequences for her and her family.

CLASS ACTION COMPLAINT
Case No. 18-cv-07354

## VI.   CLASS ALLEGATIONS

56.     This putative class action is brought pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure on behalf of the following Nationwide Class:

> All persons who were denied a HAMP mortgage modification by Wells Fargo due to a calculation error with respect to attorneys' fees for purposes of determining whether a customer qualified for a loan modification or related errors regarding the maximum allowable foreclosure attorneys' fees.

57.     In addition, Plaintiff asserts claims on behalf of the following New Jersey Subclass:

> All persons who were denied a HAMP mortgage modification by Wells Fargo for a property located in New Jersey due to a calculation error with respect to attorneys' fees for purposes of determining whether a customer qualified for a loan modification or related errors regarding the maximum allowable foreclosure attorneys' fees.

58.     Excluded from the Class are: Wells Fargo Bank, N.A. and any of its parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Wells Fargo has a controlling interest. Also excluded are any individuals who make a timely election to opt out of this proceeding using the proper protocol. Also excluded are: any federal, state or local governments, including any governmental departments, agencies, divisions, bureaus, boards, sections, groups, counsels, or subdivisions. Lastly, excluded from the Class are: any judges assigned to hear any aspect of this litigation, as well as their immediate family members.

59.     Plaintiff reserves the right to modify or amend this Class definition before the Court determines whether certification is appropriate.

60.     _Numerosity_. The Class is so numerous that joinder of all members is impracticable. The number of affected individuals exceeds 800, according to Wells Fargo's own SEC filings.

61.     _Commonality_. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

    a.   Whether Wells Fargo's software program or calculation protocols were negligently designed and/or used;

    b.   Whether Wells Fargo's conduct violated federal HAMP rules;

    c.   What caused the miscalculation error(s);

d.   What process Wells Fargo used to determine which borrowers were affected or unaffected by the miscalculation error(s);

e.   What process Wells Fargo used to determine how much money to send each Class Member as part of its voluntary remediation program;

f.   What process Wells Fargo used to notify Class Members of the availability of a check and other relief, given that the foreclosed property address is unlikely to be Class Members' current address;

g.   Whether Defendant's conduct was an unlawful or unfair business practice under Cal. Bus. & Prof. Code § 17200, et seq.;

h.   Whether Defendant's conduct emanated from California, such that California law should be applied for all Class members;

i.   Whether Plaintiff and the Class are entitled to equitable relief, including, but not limited to, injunctive relief and restitution;

j.   Whether Plaintiff and the other Class members are entitled to actual, statutory, or other forms of damages, and other monetary relief.

62.   <u>Typicality</u>. The named plaintiff's claims are typical of those of other Class members because each seeks to recover for injuries caused by the same calculation error and each was denied a HAMP mortgage modification by Wells Fargo.

63.   <u>Adequacy</u>. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff's counsel are competent and experienced in litigating class actions.

64.   <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Class is impracticable. Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims. There will be no difficulty in the management of this action as a class action.

65.   Damages for any individual Class member are likely insufficient to justify the cost of individual litigation, so that in the absence of class treatment, Defendant's violations of law inflicting substantial damages in the aggregate would go unremedied.

66.     Class certification is also appropriate under Fed. R. Civ. P. 23(a) and (b)(2), because Defendant have acted or have refused to act on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

### VII.   CHOICE OF LAW ALLEGATIONS

67.     The State of California has sufficient contacts to the conduct alleged herein that California law may be uniformly applied to the claims of the proposed Class.

68.     Wells Fargo does substantial business in California; its headquarters is located in California; and a significant portion of the proposed Nationwide Class is located in California.

69.     In addition, the conduct that forms the basis for each and every Class Member's claims against Wells Fargo emanated from Wells Fargo's U.S. headquarters in San Francisco, California, where—among other things—Wells Fargo received customer complaints, planned its communications with Class Members, and set its HAMP compliance and software auditing policies.

70.     The State of California also has the greatest interest in applying its law to Class Members' claims. Its governmental interests include not only an interest in compensating resident consumers under its consumer protection laws, but also what the State has characterized as a "compelling" interest in using its laws to regulate a resident corporation and preserve a business climate free of fraud and deceptive practices. *Diamond Multimedia Sys. v. Sup. Ct.*, 19 Cal. 4th 1036, 1064 (1999).

71.     If other states' laws were applied to Class members' claims, California's interest in discouraging resident corporations from engaging in the sort of unfair and deceptive practices alleged in this complaint would be significantly impaired. California could not effectively regulate a company like Wells Fargo, which does business throughout the United States, if it can only ensure that consumers from one of the fifty states affected by conduct that runs afoul of its laws are compensated.

### VIII.   TOLLING ALLEGATIONS

72.     Plaintiff and Class Members could not have discovered, through reasonable diligence, that Wells Fargo's software contained calculation errors that denied HAMP loan modification to borrowers who were entitled to receive a modification under the HAMP program.

73.     The evidence and means of discovering the calculation errors, and the systemic nature of

the problem, were within Wells Fargo's exclusive control.

74.    As a result, any applicable statutes of limitation are tolled.

75.    In addition, any applicable statutes of limitation have been tolled by Wells Fargo's knowing, active, and fraudulent concealment of the facts alleged herein. Wells Fargo kept Plaintiff and all Class Members ignorant of vital information essential to the pursuit of their claims, without any fault or lack of diligence on the part of Plaintiff.

76.    Wells Fargo admits in an SEC filing that it knew about the software errors as early as October 2015. Yet it continued foreclosure proceedings against Plaintiff and Class Members, and did not inform Plaintiff or Class Members about the errors until late 2018.

77.    Wells Fargo was also under a continuous duty to disclose this information to Plaintiff and Class Members.

78.    Plaintiff and Class Members reasonably relied on Wells Fargo's active concealment of the facts as alleged herein.

79.    As a result, Wells Fargo is precluded by estoppel from relying on a statute of limitations defense.

## COUNT I:   NEGLIGENCE

(On Behalf of Plaintiff and Nationwide Class)

80.    Plaintiff incorporates all allegations as if fully set forth herein.

81.    Wells Fargo owed a duty to Plaintiff and Class Members to implement HAMP's requirements for offering mortgage modifications.

82.    Wells Fargo had a duty to exercise reasonable care in the creation, implementation, and use of its internal software to determine whether a mortgage modification was required under HAMP regulations.

83.    Wells Fargo had a duty to ensure that borrowers who met all objective requirements were given a HAMP mortgage modification.

84.    Wells Fargo failed to exercise reasonable care in the creation, implementation, and use of its internal software to determine whether a mortgage modification was required under HAMP regulations.

85. Wells Fargo failed to ensure that borrowers who met all objective requirements were given or offered a HAMP mortgage modification.

86. Wells Fargo denied or failed to offer mortgage modifications to Plaintiff and Class Members who met all objective requirements to receive a permanent HAMP mortgage modification.

87. Wells Fargo breached its duties to Plaintiff and Class Members by:

    a. Failing to perform mortgage servicing functions consistent with its responsibilities to Plaintiff and Class Members;

    b. Creating, implementing, and using an internal software program and protocols that were flawed and defective and incorrectly calculated whether a borrower was entitled to a HAMP mortgage modification;

    c. Failing to properly supervise its agents and employees, including its loss mitigation and collection personnel; foreclosure attorneys; and technical, computer, and engineering employees who developed, implemented, and used the internal software to determine whether a borrower qualified for a HAMP mortgage modification;

    d. Making inaccurate calculations and determinations of Plaintiff's and Class Members' eligibility for a HAMP mortgage modification;

    e. Not conducting sufficient testing to determine whether its internal software program was correctly calculating whether a borrower was entitled to a HAMP mortgage modification;

    f. Failing to give HAMP mortgage modifications and other foreclosure alternatives to qualified borrowers; and

    g. Concealing the error in its internal software program from approximately 2015 through October 2018.

88. Wells Fargo knew or should have known that borrowers such as Plaintiff and Class Members would suffer injury as a result of Wells Fargo's failure to exercise reasonable care.

89. Wells Fargo's violations of law and/or negligence were the direct and proximate cause of Plaintiff and Class Members' injuries, harm and economic loss, which Plaintiff and Class Members suffered and will continue to suffer.

CLASS ACTION COMPLAINT
Case No. 18-cv-07354

90.     As a consequence of Wells Fargo's negligence, Plaintiff and Class Members were injured in at least the following ways:

     a.   wrongful foreclosures;

     b.   otherwise avoidable losses of homes to foreclosure;

     c.   less favorable mortgage modifications;

     d.   increased fees and other costs to avoid or attempt to avoid foreclosure;

     e.   lost equity in homes that were foreclosed on;

     f.   loss of savings in fruitless attempts to secure mortgage modifications;

     g.   loss of opportunities to pursue other refinancing or loss mitigation strategies;

     h.   increased costs associated with lowered credit scores; and

     i.   significant stress causing physical injuries and emotional distress.

## COUNT II:  CONVERSION

### (On Behalf of Plaintiff and Nationwide Class)

91.     Plaintiff incorporates all allegations as if fully set forth herein.

92.     Plaintiff and Class Members were the owners and possessors of their respective real property. As a result of the conduct alleged above, Wells Fargo has interfered with the Plaintiff and Class Members' rights to possess and control such property, to which they had a superior right of possession and control at the time of conversion.

93.     As a direct and proximate result of Wells Fargo's conduct, Plaintiff and Class Members suffered injury, damage, loss, or harm and therefore seek compensatory damages.

## COUNT III: VIOLATION OF UNFAIR COMPETITION LAW (UCL)

### (On Behalf of Plaintiff and Nationwide Class)

94.     Plaintiff incorporates all allegations as if fully set forth herein.

95.     California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, prohibits "unfair competition," which includes "any unlawful, unfair or fraudulent business act or practice."

96.     A business act or practice is "unfair" when it "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012).

97.     Wells Fargo engaged in business acts and practices that are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers by, among other things:

a.  Failing to perform mortgage servicing functions consistent with its responsibilities to Plaintiff and Class Members;

b.  Creating, implementing, and using an internal software program and protocols that were flawed and defective and incorrectly calculated whether a borrower was entitled to a HAMP mortgage modification;

c.  Failing to properly supervise its agents and employees, including its loss mitigation and collection personnel; foreclosure attorneys; and technical, computer, and engineering employees who developed, implemented, and used the internal software to determine whether a borrower qualified for a HAMP mortgage modification;

d.  Making inaccurate calculations and determinations of Plaintiff's and Class Members' eligibility for a HAMP mortgage modification;

e.  Not conducting sufficient testing to determine whether its internal software program was correctly calculating whether a borrower was entitled to a HAMP mortgage modification;

f.  Failing to give HAMP mortgage modifications and other foreclosure alternatives to qualified borrowers; and

g.  Concealing the error in its internal software program from approximately 2015 through October 2018.

98.     The harms from these business acts and practices outweigh any potential utility.

99.     Wells Fargo's business acts and practices offend established public policies that are tethered to specific constitutional, statutory, and/or regulatory provisions, such as HAMP. The Department of the Treasury states that "HAMP was designed to help families who are struggling to remain in their homes."[34]

100.    A business act or practice is "unlawful" when it is proscribed by some other statute, regulation, or constitutional provision. "By proscribing 'any unlawful' business practice, the UCL

---

[34] U.S. Dep't of the Treasury, *Home Affordable Modification Program (HAMP)* (accessed Nov. 14, 2018), https://tinyurl.com/treas-hamp.

permits injured consumers to 'borrow' violations of other laws and treat them as unlawful competition that is independently actionable." *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1225 (N.D. Cal. 2014).

101.    Wells Fargo engaged in business acts or practices that were proscribed by law, including the following: Wells Fargo engaged in unfair business practices under § 5 of the Federal Trade Commission (FTC) Act, and Wells Fargo violated the requirements of HAMP, such as Supplemental Directive 09–01 (if a borrower meets all qualifying criteria, "the servicer MUST offer the modification") (emphasis in original).

102.    Uniformly telling borrowers that they were not qualified for a HAMP mortgage modification when they in fact were qualified constitutes a fraudulent practice under the UCL because it was likely to deceive Plaintiff and Class Members about their entitlement to a mortgage modification under HAMP and the adequacy of Wells Fargo's methods for evaluating someone's entitlement to a HAMP modification.

103.    Wells Fargo knew or had reason to know that Plaintiff and Class Members were entitled to a mortgage modification under HAMP, or Wells Fargo acted with reckless disregard for the truth. Wells Fargo had superior knowledge and exclusive control of the facts, figures, and tools to determine Plaintiff's and Class Members' entitlement to modifications under HAMP, and Plaintiff and Class Members could not have reasonably discovered the truth without tremendous difficulty.

104.    Plaintiff saw or heard Wells Fargo's misrepresentations concerning her entitlement to a HAMP modification, and reasonably relied on those misrepresentations.

105.    As a direct and proximate result of Wells Fargo's unfair, unlawful, and fraudulent business acts and practices, Plaintiff and Class Members suffered injury in fact and lost money or property, including through:

      a.    wrongful foreclosures;

      b.    otherwise avoidable losses of homes to foreclosure;

      c.    less favorable mortgage modifications;

      d.    increased fees and other costs to avoid or attempt to avoid foreclosure;

      e.    lost equity in homes that were foreclosed on;

f.   loss of savings in fruitless attempts to secure mortgage modifications;

g.   loss of opportunities to pursue other refinancing or loss mitigation strategies; and

h.   increased costs associated with lowered credit scores.

106.   Because of Wells Fargo's unlawful, unfair, and fraudulent business practices, Plaintiff and Class Members are entitled to relief, including attorneys' fees and costs, restitution, declaratory relief, and a permanent injunction enjoining Wells Fargo from its unlawful, fraudulent, and unfair practices. Plaintiff also seeks reasonable attorneys' fees and costs under applicable law, including Federal Rule of Civil Procedure 23 and California Code of Civil Procedure § 1021.5.

## COUNT IV: NEW JERSEY CONSUMER FRAUD ACT

### (On Behalf of Plaintiff and New Jersey Subclass)

107.   Plaintiff incorporates all allegations as if fully set forth herein.

108.   The New Jersey Consumer Fraud Act, N.J. Stat. §§ 56:8-1, et seq., prohibits unconscionable practices, deception, fraud, false pretense, false promise, misrepresentation, as well as the knowing concealment, suppression, or omission of any material fact with the intent that others rely on the concealment, omission, or fact.

109.   Wells Fargo's unconscionable and deceptive practices include:

a.   Failing to perform mortgage servicing functions consistent with its responsibilities to Plaintiff and Class Members;

b.   Creating, implementing, and using an internal software program and protocols that were flawed and defective and incorrectly calculated whether a borrower was entitled to a HAMP mortgage modification;

c.   Failing to properly supervise its agents and employees, including its loss mitigation and collection personnel; foreclosure attorneys; and technical, computer, and engineering employees who developed, implemented, and used the internal software to determine whether a borrower qualified for a HAMP mortgage modification;

d.   Making inaccurate calculations and determinations of Plaintiff's and Class Members' eligibility for a HAMP mortgage modification;

e.   Not conducting sufficient testing to determine whether its internal software program was

CLASS ACTION COMPLAINT
Case No. 18-cv-07354

correctly calculating whether a borrower was entitled to a HAMP mortgage
modification;

    f.    Failing to give HAMP mortgage modifications and other foreclosure alternatives to
qualified borrowers; and

    g.    Concealing the error in its internal software program from approximately 2015 through
October 2018.

110.    Wells Fargo's representations and omissions were material because they were likely to
deceive Plaintiff and Class Members about their entitlement to a mortgage modification under HAMP
and the adequacy of Wells Fargo's methods for evaluating someone's entitlement to a HAMP
modification.

111.    Wells Fargo intended to mislead Plaintiff and Class Members and induce them to rely on
its misrepresentations and omissions.

112.    Wells Fargo acted intentionally or knowingly to violate New Jersey's Consumer Fraud
Act, and recklessly disregarded Plaintiff and Class Members' rights.

113.    As a direct and proximate result of Wells Fargo's unconscionable and deceptive
practices, Plaintiff and Class Members suffered injury in fact and lost money or property, including
through:

    a.    wrongful foreclosures;

    b.    otherwise avoidable losses of homes to foreclosure;

    c.    less favorable mortgage modifications;

    d.    increased fees and other costs to avoid or attempt to avoid foreclosure;

    e.    lost equity in homes that were foreclosed on;

    f.    loss of savings in fruitless attempts to secure mortgage modifications;

    g.    loss of opportunities to pursue other refinancing or loss mitigation strategies; and

    h.    increased costs associated with lowered credit scores.

114.    Because of Wells Fargo's unconscionable and deceptive business practices, Plaintiff and
Class Members are entitled to relief, including injunctive relief, other equitable relief, actual damages,
treble damages, restitution, and attorneys' fees and costs.

CLASS ACTION COMPLAINT
Case No. 18-cv-07354

**COUNT V:  NEGLIGENCE PER SE**

(On Behalf of Plaintiff and Nationwide Class)

115.   Plaintiff incorporates by reference the above allegations as if fully set forth herein.

116.   Wells Fargo violated California's Unfair Competition Law (UCL), as fully discussed above. Moreover, as discussed above, Wells Fargo also violated federal HAMP regulations, such as Supplemental Directive 09–01 (if a borrower meets all qualifying criteria, "the servicer MUST offer the modification").

117.   Wells Fargo's violation of the UCL and HAMP regulations directly and proximately caused Plaintiff's and Class Members' injuries including but not limited to:

       a.   wrongful foreclosures;

       b.   otherwise avoidable losses of homes to foreclosure;

       c.   less favorable mortgage modifications;

       d.   increased fees and other costs to avoid or attempt to avoid foreclosure;

       e.   lost equity in homes that were foreclosed on;

       f.   loss of savings in fruitless attempts to secure mortgage modifications;

       g.   loss of opportunities to pursue other refinancing or loss mitigation strategies;

       h.   increased costs associated with lowered credit scores; and

       i.   significant stress and emotional distress.

118.   The injuries resulted from an occurrence of the nature that the UCL and HAMP regulations were designed to prevent.

119.   Plaintiff and Class Members are members of the class of persons for whose protections the laws and regulations were adopted.

**IX.     PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and all Class members, requests judgment be entered against Defendant and that the Court grant the following:

       a.   An order determining that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, that Plaintiff is a proper class representative, that Plaintiff's attorneys be appointed class counsel pursuant to Rule 23(g) of the Federal

1   Rules of Civil Procedure, and that the class notice be promptly issued;

2   b.   Judgment against Defendant for Plaintiff's and Class Members' asserted causes of

3   action;

4   c.   Appropriate declaratory relief against Defendant;

5   d.   Preliminary and permanent injunctive relief against Defendant;

6   e.   An award of all applicable damages;

7   f.   An award of reasonable attorneys' fees and other litigation costs reasonably incurred;

8   and

9   g.   Any and all relief to which Plaintiff and the Class may be entitled.

10   **X.   DEMAND FOR JURY TRIAL**

11   Plaintiff demands trial by jury for all issues so triable.

12

13   Dated: December 5, 2018                    */s/ Michael L. Schrag*

14                                              **GIBBS LAW GROUP LLP**
                                                Michael L. Schrag (SBN 185832)
15                                              Joshua J. Bloomfield (SBN 212172)
                                                505 14th Street, Suite 1110
16                                              Oakland, California 94612
                                                Telephone:  510-350-9700
17                                              Facsimile:  510-350-9701
                                                mls@classlawgroup.com
18                                              jjb@classlawgroup.com

19
20                                              Richard M. Paul III
                                                Ashlea G. Schwarz
21                                              **PAUL LLP**
                                                601 Walnut Street, Suite 300
22                                              Kansas City, Missouri 64106
                                                Telephone: 816-984-8100
23                                              Facsimile:  816-984-8101
                                                Rick@PaulLLP.com
24                                              Ashlea@PaulLLP.com

25
26                                              *Counsel for Plaintiff and Proposed
                                                Class*

27
28