1  Amanda L. Groves (SBN: 187216)
   agroves@winston.com
2  Morgan E. Stewart (SBN: 321611)
   mstewart@winston.com
3  **WINSTON & STRAWN LLP**
   101 California Street, 35th Floor
4  San Francisco, CA  94111-5802
   Telephone:    (415) 591-1000
5  Facsimile:    (415) 591-1400

6  Kobi K. Brinson (Admitted *pro hac vice*)
   kbrinson@winston.com
7  Stacie C. Knight (Admitted *pro hac vice*)
   sknight@winston.com
8  **WINSTON & STRAWN LLP**
   300 South Tryon Street, 16th Floor
9  Charlotte, NC 28202
   Telephone:    (704) 350-7700
10 Facsimile:    (704) 350-7800

11 Attorneys for Defendant
   WELLS FARGO BANK, N.A.
12

13            **UNITED STATES DISTRICT COURT**

14           **NORTHERN DISTRICT OF CALIFORNIA**

15              **SAN FRANCISCO DIVISION**

16

17                                    │ No. 3:18-cv-07354 WHA
   ALICIA HERNANDEZ, individually and  │
18 on behalf of all others similarly situated, │ **DEFENDANT WELLS FARGO BANK, N.A.'S**
                                        │ **NOTICE OF MOTION AND MOTION TO**
19                Plaintiff,            │ **DISMISS CLASS ACTION COMPLAINT;**
                                        │ **MEMORANDUM OF POINTS AND**
20            v.                        │ **AUTHORITIES IN SUPPORT THEREOF**

21 WELLS FARGO BANK, N.A.,              │ Date: April 25, 2019
                                        │ Time: 8:00 a.m.
22                Defendant.            │ Courtroom: 12
                                        │ Judge: Hon. William H. Alsup
23

24

25

26

27

28

1

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2

**PLEASE TAKE NOTICE THAT** on April 25, 2019 at 8:00 a.m., or as soon thereafter as

3

the matter may be heard, in Courtroom 12 of the above-entitled court, located at 450 Golden Gate

4

Avenue, San Francisco, California, Defendant Wells Fargo Bank, N.A. ("Wells Fargo") will and

5

hereby does move the Court to dismiss Plaintiff Alicia Hernandez's Class Action Complaint (the

6

"Complaint") with prejudice pursuant to Rules 9(b) and 12(b) of the Federal Rules of Civil

7

Procedure for lack of statutory standing, failure to state a claim upon which relief can be granted,

8

and failure to plead with specificity.

9

Specifically, Wells Fargo seeks dismissal of the Complaint on the bases that Plaintiff lacks

10

standing to enforce HAMP regulations, and her claims each separately fail for several different

11

reasons.  This Motion is based upon this Notice of Motion and Motion, the accompanying

12

Memorandum of Points and Authorities, and the record in this action, and any other written or oral

13

submission that may be presented at or before the hearing on this motion.

14

15

Dated: January 31, 2019

Respectfully submitted,

16

**WINSTON & STRAWN LLP**

17

18

By: /s/ *Amanda L. Groves*

19

Amanda L. Groves (SBN: 187216)
agroves@winston.com
Morgan E. Stewart (SBN: 321611)

20

mstewart@winston.com
101 California Street, 35th Floor

21

San Francisco, CA  94111-5802
Telephone:     (415) 591-1000

22

Facsimile:     (415) 591-1400

23

Kobi K. Brinson (Admitted *pro hac vice*)
kbrinson@winston.com

24

Stacie C. Knight (Admitted *pro hac vice*)
sknight@winston.com

25

300 South Tryon Street, 16th Floor
Charlotte, NC 28202

26

Telephone:     (704) 350-7700
Facsimile:     (704) 350-7800

27

*Attorneys for Defendant*

28

*Wells Fargo Bank, N.A.*

-i-

1
2
3

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     SUMMARY OF ALLEGED FACTS...................................................................1

III.    LEGAL ARGUMENT ...........................................................................................2

        A.      Legal Standards...........................................................................................2

                1.      Rule 12(b)(6)....................................................................................2

                2.      Applicable Law ................................................................................3

        B.      Plaintiff Cannot Sue to Enforce HAMP....................................................5

        C.      Even Assuming Plaintiff's Theory Could Proceed, Her Claims Should Be
                Dismissed for Independent Reasons. ........................................................8

                1.      Plaintiff's Negligence Claims Should Be Dismissed (Counts I &
                        IV).......................................................................................................8

                2.      Plaintiff's Conversion Claim Fails (Count II). .............................11

                3.      The Court Should Dismiss Plaintiff's UCL Claim (Count III).......12

                4.      The Court Should Dismiss Plaintiff's Claim for Violation of New
                        Jersey Consumer Fraud Act (Count IV). ......................................16

IV.     CONCLUSION.....................................................................................................17

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4  *Abogados v. AT&T, Inc.*,
     223 F.3d 932 (9th Cir. 2000) ..................................................................................3

5

6  *Advanced Enter. Recycling, Inc. v. Bercaw*,
     376 N.J. Super. 153 (App. Div. 2005) ....................................................................12

7  *Aguinaldo v. Ocwen Loan Servicing, LLC*,
8    No. 5:12-CV-01393-EJD, 2012 WL 3835080 (N.D. Cal. Sept. 4, 2012).........................5

9  *Ansanelli v. JP Morgan Chase Bank, N.A.*,
     No. C 10-03892 WHA, 2011 WL 1134451 (N.D. Cal. Mar. 28, 2011) ........................10

10

11  *Argabright v. Rheem Mfg. Co.*,
      201 F. Supp. 3d 578 (D.N.J. 2016) ...................................................................3, 16

12  *Ashcroft v. Iqbal*,
13    556 U.S. 662 (2009)...................................................................................2, 14

14  *Badame v. J.P. Morgan Chase Bank, N.A.*,
      641 F. App'x 707 (9th Cir. 2016) ......................................................................5, 9

15

16  *Bell Atlantic Corp. v. Twombly*,
      550 U.S. 544 (2007)....................................................................................2, 3

17  *Bijeau-Seitz v. Atl. Coast Mortg. Servs., Inc.*,
18    No. 12-6372, 2013 WL 3285979 (D.N.J. June 28, 2013).........................................8, 9

19  *Branch v. Tunnell*,
      14 F.3d 449 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cty. of*
20    *Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) ..........................................................3

21  *Campusano v. BAC Home Loans Servicing, LP*,
22    No. CV11-04609 AHM, 2012 WL 13008750 (N.D. Cal. Jan. 20, 2012)......................5, 12

23  *Cannon v. Wells Fargo Bank, N.A.*,
      917 F. Supp. 2d 1025 (N.D. Cal. 2013) ........................................................4, 12, 14

24  *Cevdet Aksüt Ve Oullari Koll. Sti v. Cavusoglu*,
25    No. 12-2899 (WJM), 2015 WL 4315330 (D.N.J. July 14, 2015)................................12

26  *Churchill Village, L.L.C. v. Gen. Elec. Co.*,
      169 F. Supp. 2d 1119 (N.D. Cal. 2000) ...............................................................13

27

28  *Cox v. Sears Roebuck & Co.*,
      138 N.J. 2, 647 A.2d 454 (1994)........................................................................16

*Dabush v. Mercedes-Benz USA, LLC*,
  378 N.J. Super. 105, 874 A.2d 1110 (Super. Ct. App. Div. 2005) ................................16

*DeLuca v. CitiMortgage*,
  543 F. App'x 194 (3d Cir. 2013) .................................................................................16

*Edwards v. PHH Mortg. Corp.*,
  No. 17-7807, 2018 WL 2733693 (D.N.J. June 6, 2018)...............................................16

*Faili v. BAC Home Loans Servicing LP*,
  No. 8:13-cv-1105-JLS, 2014 WL 255704 (C.D. Cal. Jan. 23, 2014) ..........................12

*Flores v. Wells Fargo Bank, N.A.*,
  No. 11–6619 JSC, 2012 WL 2427227 (N.D. Cal. June 26, 2012)..................................7

*Four Pals, LLC v. Javamoon Café Franchise Servs., LLC*,
  No. A-4457-08T3, 2010 WL 3185221 (N.J. Super. Ct. App. Div. Aug. 10, 2010) ......12

*Galayda v. Wachovia Mortg., FSB*,
  No. 10-1065 (FLW), 2010 WL 5392743 (D.N.J. Dec. 22, 2010)..................................16

*Giordano v. Saxon Mortg. Servs., Inc.*,
  No. 12-7937 (MAS) (LHG), 2013 WL 12158378 (D.N.J. Oct. 31, 2013) .....................6

*Graybill v. Wells Fargo Bank, N.A.*,
  953 F. Supp. 2d 1091 (N.D. Cal. 2013) .........................................................................5

*Gustafson v. BAC Home Loans Servicing, LP*,
  294 F.R.D. 529 (C.D. Cal. 2013)............................................................................12, 15

*In re Hartman*,
  No. AP 15-01968 (JKS), 2017 WL 2230336 (D.N.J. May 22, 2017) ...........................9

*Haynish v. Bank of Am., N.A.*,
  284 F. Supp. 3d 1037 (N.D. Cal. 2018) .........................................................................9

*Howard Johnson Int'l, Inc. v. Vraj Brig, LLC*,
  No. 08-1466, 2010 WL 215381 (D.N.J. Jan. 14, 2010)...............................................12

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) .......................................................................................3

*Keosseian v. Bank of Am.*,
  No. 11-3478 (JAP), 2012 WL 458470 (D.N.J. Feb. 10, 2012).....................................7

*Lane v. Wells Fargo Bank, N.A.*,
  No. C 12-04026 WHA, 2013 WL 269133 (N.D. Cal. Jan. 24, 2013).............4, 6, 7, 15

*Lueras v. BAC Home Loans Servicing, LP*,
  221 Cal. App. 4th 49 (2013) ..........................................................................................5

**DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

*Marias v. Bank of Am., N.A.*,
No. 14-4986 (RBK/JS), 2015 WL 4064780 (D.N.J. July 1, 2015)........................8, 9, 11

*Muniz v. Wells Fargo & Co., et al.*,
No. 17-cv-04995-MMC, 2018 WL 2197556 (N.D. Cal. May 14, 2018)................14, 15

*Nedlloyd Lines B.V. v. Super. Court*,
3 Cal. 4th 459 (1992) .....................................................................................................3, 4

*Norwest Mortg., Inc. v. Super. Court*,
72 Cal. App. 4th 214 (1999) ...............................................................................................13

*Park v. M & T Bank Corp.*,
No. 09-CV-2921 (DMC), 2010 WL 1032649 (D.N.J. Mar. 16, 2010)........................11

*Perkins v. Wash. Mut., FSB*,
655 F. Supp. 2d 463 (D.N.J. 2009) .................................................................................11

*Phoenix Pinelands Corp. v. United States*,
No. 09-2237, 2010 WL 1704743 (D.N.J. Apr. 26, 2010)........................................11, 12

*Pitre v. Wells Fargo Bank, N.A.*,
No. C 13-00552 WHA, 2013 WL 2156315 (N.D. Cal. May 17, 2013)........................17

*Rost v. Avelo Mortg., LLC*,
No. 15-3254, 2015 WL 6737026 (D.N.J. Nov. 3, 2015) .............................................11

*Saltiel v. GSI Consultants, Inc.*,
170 N.J. 297, 788 A.2d 268 (2002)...................................................................................11

*Shinn v. Champion Mortg. Co.*,
No. 09-cv-00013 (WJM), 2010 WL 500410 (D.N.J. Feb. 5, 2010) .............................11

*Slimm v. Bank of Am. Corp.*,
No. 12-5846 (NLH/JS), 2013 WL 1867035 (D.N.J. May 2, 2013).............................6, 7

*Stolba v. Wells Fargo & Co.*,
No. 10-cv-6014 (WJM)(MF), 2011 WL 3444078 (D.N.J. Aug. 8, 2011) .................8, 11

*Sun v. Wells Fargo Bank, N.A.*,
No. C 14-00063 WHA, 2014 WL 1245299 (N.D. Cal. Mar. 25, 2014) .......................10

*Tidenberg v. Bidz.com, Inc.*,
No. 08-5553 PSG, 2009 WL 605249 (C.D. Cal. Mar. 4, 2009) ........................13, 14, 15

*Toneman v. U.S. Bank, Nat'l Ass'n for Bear Stearns Asset Backed Sec. Tr. 2004-AC7*,
No. CV 12-09369 MMM, 2013 WL 12132049 (C.D. Cal. Oct. 21, 2013) .................7, 9

*In re Toyota Motor Corp.*,
785 F. Supp. 2d 883 (C.D. Cal. 2011) ........................................................................13, 15

*Vasquez v. Wells Fargo Home Mortg.*,
   No. 11CV462 ................................................................................................................8

*Washington Mut. Bank, FA v. Super. Court*,
   24 Cal. 4th 906 (2001) ...............................................................................................4

**Statutes**

12 U.S.C. § 5201 *et seq.*..................................................................................................5

12 U.S.C. § 5219 ............................................................................................................5

N.J.S.A. § 56:8-2...........................................................................................................16

**Other Authorities**

Servicer Participation Agreement, located at
   https://www.treasury.gov/initiatives/financial-stability/TARP-
   Programs/housing/mha/Documents_Contracts_Agreements/wellsfargobankna_Re
   dacted.pdf .....................................................................................................................6

Fed. R. Civ. P. 9(b) ............................................................................................3, 16, 17

Fed. R. Civ. P. 12(b)(6).................................................................................................2

1    I.    **INTRODUCTION**

2         Relying on a legal theory that Courts routinely have rejected, Plaintiff—a Pennsylvania

3    resident who obtained a mortgage for a New Jersey investment property—purports to bring a

4    nationwide class action against Wells Fargo, asserting a variety of state law claims.  Plaintiff bases

5    all her claims on Wells Fargo's purported violations of the federal government's now-ended Home

6    Affordable Modification Program ("HAMP").  Plaintiff's decision to proceed under HAMP—

7    despite well-settled law rejecting the theory—dooms all of her claims for relief.  Moreover, each of

8    Plaintiff's claims fails as a matter of law for separate and independent reasons.  Accordingly, the

9    Court should dismiss the Complaint with prejudice.

10   II.   **SUMMARY OF ALLEGED FACTS**

11        Plaintiff's claims arise out of a 2006 mortgage loan she obtained from Wells Fargo on an

12   investment property in New Jersey.  Compl. ¶¶ 6, 16.  After she lost her job during the recent

13   financial crisis, Plaintiff was not able to meet her mortgage obligations to Wells Fargo, and she

14   defaulted on the loan.  Compl. ¶¶ 7, 51.  According to Plaintiff, sometime in 2012 or 2013, she

15   sought a HAMP loan modification from Wells Fargo, but Wells Fargo denied her application and

16   eventually foreclosed on the property in 2015.  Compl. ¶¶ 52-53.[1]

17        The U.S. Department of Treasury created HAMP in 2008 to help homeowners avoid

18   foreclosure by modifying loans to achieve a monthly payment amount that was affordable and

19   sustainable over the long term.  Compl. ¶¶ 26, 27.  Generally speaking, under HAMP, after receipt of

20   required documentation and calculation and verification of the borrower's income, the servicer

21   would apply a series of steps (capitalization, interest rate reduction, term extension, and principal

22   forbearance) until the borrower's monthly mortgage payment ratio was reduced to an amount that

23   was 31 percent of the borrower's gross monthly income (the "payment ratio target").  Compl. ¶¶ 31,

24   35.  If, after applying these steps, the servicer was able to achieve the payment ratio target, then the

25   loan was required to pass the Net Present Value ("NPV") test, which compared the net present value

26   of a modification to the net present value of no modification.  Compl. ¶ 32.  If the result of the NPV

27

28   [1] In the event this case proceeds past the pleading stage, discovery will show that Wells Fargo
     offered Plaintiff two loan modifications, and she declined both of them.

1  test was positive, then generally speaking, the borrower was eligible for a HAMP modification.

2  Compl. ¶ 34.

3      Wells Fargo participated in HAMP.  Compl. ¶ 28.  As alleged in the Complaint, a calculation

4  error in Wells Fargo's modification software tool caused certain fees to be misstated and resulted in

5  incorrect HAMP modification denials.  Compl. ¶¶ 40, 41.  Some of those loans eventually went into

6  foreclosure, including Plaintiff's.  Compl. ¶¶ 24, 52.  Wells Fargo publicly disclosed this error in

7  July 2018, and began a voluntary remediation program to assist affected borrowers in the fall of

8  2018.  Compl. ¶¶ 40-42.

9      On December 5, 2018, Plaintiff filed her Complaint, asserting claims for negligence,

10  conversion, negligence per se, and violations of California's Unfair Competition Law ("UCL") and

11  the New Jersey Consumer Fraud Act, all based on Wells Fargo's alleged failure to comply with

12  HAMP.  Compl. ¶¶ 81-119.  She seeks to represent a nationwide class of "[a]ll persons who were

13  denied a HAMP mortgage modification by Wells Fargo due to a calculation error with respect to

14  attorneys' fees for purposes of determining whether a customer qualified for a loan modification or

15  related errors regarding the maximum allowable foreclosure attorneys' fees," along with a subclass

16  of New Jersey borrowers.  Compl. ¶¶ 56-57.

17  **III.**    **LEGAL ARGUMENT**

18      **A.**    **Legal Standards**

19          **1.**    **Rule 12(b)(6)**

20      A complaint fails to state a claim under Rule 12(b)(6) unless it contains "enough facts to state

21  a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547

22  (2007).  The court should not accept unreasonable inferences or unwarranted deductions of fact.

23  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the

24  allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the

25  elements of a cause of action, supported by mere conclusory statements, do not suffice") (citation

26  omitted).  In other words, a complaint must allege "more than labels and conclusions" or a

27  "formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555; *see also*

28  *Iqbal*, 556 U.S. at 678 ("[Rule 8(a)] demands more than an unadorned, the defendant-unlawfully-

harmed-me accusation."). Rather, the factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Fraud-based claims—including those under state consumer fraud statutes—are subject to Rule 9(b), which requires that "[i]n all averments of fraud … the circumstances constituting fraud … shall be stated with particularity." Fed. R. Civ. P. 9(b). Rule 9(b) requires that the allegations state "the who, what, when, where, and how of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (applying Rule 9(b)'s heightened pleading standards to claims for violations of the UCL) (internal quotation marks and citations omitted); *Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 606 (D.N.J. 2016) ("The claims under the NJCFA … are subject to the heightened pleading standard of Fed. R. Civ. P. 9(b), which requires particularized pleading for the conduct underlying fraud claims.").

### 2.    Applicable Law

A federal court sitting in diversity applies the forum state's choice-of-law rules. *Abogados v. AT&T, Inc.*, 223 F.3d 932, 934 (9th Cir. 2000). Under California law, if the parties have an agreement that another state's law will govern, the court applies the framework set out in *Nedlloyd Lines B.V. v. Super. Court*, 3 Cal. 4th 459 (1992). Here, Plaintiff's mortgage contains a choice-of-law provision, which provides:[2]

> This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law.

Declaration of Carmen Bell in Support of Defendant Wells Fargo Bank, N.A.'s Motion to Transfer Venue, ¶ 12 and Ex. A at ¶ 16 (Doc. No. 25-1). Accordingly, the Court must apply the *Nedlloyd*

---

[2] The Court can consider Plaintiff's mortgage loan documents in connection with this motion because they are integral to her claims. *See, e.g., Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) ("[W]e hold that documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss."), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

1    framework to determine what state's laws applies to Plaintiff's claims.

2        The *Nedlloyd* framework includes three steps.  First, the court must determine whether the

3    various claims fall within the scope of the choice-of-law clause.  *Washington Mut. Bank, FA v.*

4    *Super. Court*, 24 Cal. 4th 906, 916 (2001).  Next, the court must find either that (1) "the chosen state

5    has a substantial relationship to the parties or their transaction" or (2) "there is any other reasonable

6    basis for the parties' choice of law."  *Nedlloyd*, 3 Cal. 4th at 466.  Finally, if "either test is met, the

7    court must next determine whether the chosen state's law is contrary to a *fundamental* policy of

8    California" and, if not, the court must enforce the choice-of-law provision.  *Id*. (emphasis in

9    original).

10        Applying this framework, courts consistently have enforced the choice-of-law language

11    included in Plaintiff's mortgage.  For example, in *Lane v. Wells Fargo Bank, N.A.*, No. C 12-04026

12    WHA, 2013 WL 269133, at *4 (N.D. Cal. Jan. 24, 2013), a putative class action challenging Wells

13    Fargo's lender-placed insurance practices, this Court (Alsup, J.) examined the same language at

14    issue here, held that it was valid and enforceable, and required application of Arkansas law to the

15    Arkansas plaintiffs' claims.  As this Court explained:

16
17        Under the *Nedlloyd* test, the choice-of-law provision is enforceable
        because Arkansas has a substantial relationship to the parties or their
18        transaction, as the property is located in Arkansas, plaintiffs are
        residents of Arkansas, and the mortgage was initially obtained from an
        Arkansas company.  Next, a court must determine whether Arkansas
19        law is contrary to a fundamental policy of California.  Because the
        parties do not dispute the similarity of the state laws in question, and
20        plaintiffs do not contend that California law would preclude freedom of
        contract in this context, the choice-of-law provision is enforceable.
21

22    *Id*. at *4.  Accordingly, because the "[p]laintiffs' contract and tort claims [were] based on Wells

23    Fargo's alleged improper practices in procuring and charging for unauthorized insurance and

24    obtaining hidden profits—all claims that arise from the loan agreement and relationship created

25    thereby," Arkansas law applied to all of their state law claims.  *Id*.; *see also Cannon v. Wells Fargo*

26    *Bank, N.A.*, 917 F. Supp. 2d 1025, 1051 (N.D. Cal. 2013) (Chen, J.) (interpreting the same choice-of-

27    law provision at issue here and finding that it required application of Florida law to Florida

28

**DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

1    plaintiffs' contract and tort claims); *cf. Campusano v. BAC Home Loans Servicing, LP*, No. CV11-

2    04609 AHM (JCx), 2012 WL 13008750, at *3 (N.D. Cal. Jan. 20, 2012) (considering identical

3    choice of law provision in another lender's loan documents and finding that "given the broad

4    wording of the … provision, there is no reasonable question that all disputes relating to the mortgage

5    transaction and the property fall within its scope . . . there is a strong logical relationship between the

6    selected law and the transaction—namely, the selected law is the law of the jurisdiction where the

7    subject property is located[,]" and "there is no reason to find that this choice-of-law provision

8    contravenes a fundamental policy of California.").

9         This case is no different.  Plaintiff's claims relate to her mortgage transaction, New Jersey

10   has a substantial relationship to Plaintiff's mortgage transaction because it is the state where

11   Plaintiff's property was located, and application of the choice-of-law provision would not

12   contravene a fundamental policy of California.[3]  Accordingly, Plaintiff's choice-of-law provision is

13   valid and enforceable, and New Jersey law governs all of her claims.

14        **B.    Plaintiff Cannot Sue to Enforce HAMP.**

15        The U.S. Department of Treasury established HAMP pursuant to the Emergency Economic

16   Stabilization Act of 2008, as amended by the American Recovery and Reinvestment Act of 2009.

17   (the "Act").  12 U.S.C. § 5201 *et seq.*  The Act directed the Department of Treasury to maximize

18   assistance of homeowners and to encourage mortgage servicers to take advantage of government

19   programs to minimize foreclosures.  *See* 12 U.S.C. § 5219.  In furtherance of these goals, the

20   Department of Treasury, through Federal National Mortgage Association ("Fannie Mae"), entered

21   into Servicer Participation Agreements with loan servicers, pursuant to which servicers performed

22   _____

23   [3] Indeed, California law is similar to New Jersey law regarding the issues raised herein.  *See e.g.,
     Graybill v. Wells Fargo Bank, N.A.*, 953 F. Supp. 2d 1091, 1107 (N.D. Cal. 2013) (dismissing UCL

24   and negligence claims premised on HAMP violations); *Badame v. J.P. Morgan Chase Bank, N.A.*,
     641 F. App'x 707, 709-10 (9th Cir. 2016) ("[Defendant bank] did not owe Plaintiffs a duty of care

25   when considering their loan modification application because 'a loan modification is the
     renegotiation of loan terms, which falls squarely within the scope of a lending institution's

26   conventional role as a lender of money.'") (quoting *Lueras v. BAC Home Loans Servicing, LP*, 221
     Cal. App. 4th 49, 66 (2013)); *Aguinaldo v. Ocwen Loan Servicing, LLC*, No. 5:12-CV-01393-EJD,

27   2012 WL 3835080, at *6 (N.D. Cal. Sept. 4, 2012) (tort of conversion does not apply to real
     property).

28

certain loan modification and foreclosure prevention services for eligible loans.  Wells Fargo and

Fannie Mae entered into a Servicer Participation Agreement in April 2009, as amended in March

2010.[4]

Although HAMP was created in furtherance of the government's goal to maximize assistance

to homeowners, it is well-settled that individual borrowers are not third-party beneficiaries of HAMP

Servicer Participation Agreements, and they accordingly do not have standing to enforce HAMP,

including through claims for negligence, unfair competition, and unfair trade practices.  For

example, in *Slimm v. Bank of Am. Corp.*, No. 12-5846 (NLH/JS), 2013 WL 1867035, at *2 (D.N.J.

May 2, 2013), the plaintiffs alleged that the defendant bank agreed to a HAMP modification, but

after several assurances that the modification was close to final approval, improperly denied the

modification.  According to the plaintiffs, despite complying with all of the bank's requests, the bank

"intentionally and wrongfully toyed" with them throughout the HAMP modification process by

consistently assuring them that the modification was being processed and was essentially

guaranteed.  *Id.*  The plaintiffs brought numerous claims, including a state law claim for promissory

estoppel.  *Id.* at *10.  The court dismissed the claim, reasoning that it was "intertwined with [the

plaintiffs'] allegations that Defendants failed to comply with their obligations under HAMP," for

which there is no private right of action.  *Id.*  The court also rejected the plaintiffs' contention that

the promissory estoppel claim was "not based upon the loan modification, but rather [was] premised

upon [the bank's] promise to 'make a fair and honest review' of their loan modification request."  *Id.*

As the court explained, "this characterization is possibly even more interrelated with HAMP, as it

directly relates to the method of processing and review of the loan modification request."  *Id.* at *11.

*See also Giordano v. Saxon Mortg. Servs., Inc.*, No. 12-7937 (MAS) (LHG), 2013 WL 12158378, at

*10 (D.N.J. Oct. 31, 2013) (dismissing state law claims premised on alleged failure to comply with

HAMP: "HAMP does not provide an independent cause of action for borrowers against lenders and

---

[4] Located at https://www.treasury.gov/initiatives/financial-stability/TARP-Programs/housing/mha/Documents_Contracts_Agreements/wellsfargobankna_Redacted.pdf.
The Court can take judicial notice of this document because it is currently available on the U.S. Department of Treasury website and therefore is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  *Lane*, 2013 WL 269133, at *2.

servicers … and courts … across the country have universally rejected claims … on that basis.")
(internal quotation marks and citations omitted); *Keosseian v. Bank of Am.*, No. 11-3478 (JAP), 2012
WL 458470, at *2 (D.N.J. Feb. 10, 2012) (dismissing breach of contract, breach of the duty of good
faith and fair dealing, promissory estoppel, and New Jersey Consumer Fraud Act claims based on
defendants' denial of plaintiffs' loan modification request and alleged failure to comply with HAMP
because there is no private right of action under HAMP); *Toneman v. U.S. Bank, Nat'l Ass'n for
Bear Stearns Asset Backed Sec. Tr. 2004-AC7*, No. CV 12-09369 MMM (MRWx), 2013 WL
12132049, at *16 (C.D. Cal. Oct. 21, 2013) ("to the extent plaintiffs base their negligence claim on
an alleged entitlement to a loan modification under HAMP, their claim is an improper attempt to
privately enforce HAMP when Congress granted no such private right of action") (internal quotation
and citations omitted); *Flores v. Wells Fargo Bank, N.A.*, No. 11–6619 JSC, 2012 WL 2427227, at
*8 (N.D. Cal. June 26, 2012) (dismissing UCL claim predicated on alleged HAMP violations);
*Aleem v. Bank. of Am., N.A.*, No EDCV 09-01812-VAP (RZX), 2010 WL 532330, at *3 (C.D. Cal.
Feb. 9, 2010) (rejecting UCL claim based on HAMP violations because "the UCL cannot create a
private right of action where none exists").

The fatal defect underlying the state law claims in these cases also exists here.  As in those
cases, Plaintiff's theory is that Wells Fargo violated state law by violating HAMP.  Indeed,
Plaintiff's proposed class definition compels this conclusion: "All persons who were denied a
HAMP mortgage modification by Wells Fargo due to a calculation error with respect to attorneys'
fees for purposes of determining whether a customer qualified for a loan modification or related
errors regarding the maximum allowable foreclosure attorneys' fees." Compl. ¶ 56. *See also, e.g.*,
Compl. ¶ 23 ("[B]orrowers should have received a loan modification under the federal [HAMP], but
were incorrectly denied"); ¶ 61(b) (a purportedly common question of law and fact is "[w]hether
Wells Fargo's conduct violated federal HAMP rules"); ¶ 82 ("Wells Fargo had a duty to ensure that
borrowers who met all objective requirements were given a HAMP modification.").  But well-
established law makes clear that Plaintiff cannot sue to enforce HAMP and her allegations
accordingly are fatally flawed.  The Court should dismiss her Complaint with prejudice.  *See e.g.,
Slimm*, 2013 WL 1867035, at *10 (dismissing claims "subsumed within [Plaintiff's] HAMP

1   claims"); *Vasquez v. Wells Fargo Home Mortg.*, No. 11CV462 L(WMC), 2012 WL 985308, at *4

2   (S.D. Cal. Mar. 22, 2012) ("Because plaintiffs have no private right of action against defendants

3   under HAMP, and all of their claims are predicated on allegations that defendants violated HAMP

4   regulations or denied plaintiffs a loan modification or foreclosed upon the property when a HAMP

5   modification was pending, plaintiffs' complaint must be dismissed with prejudice.").

6   **C.      Even Assuming Plaintiff's Theory Could Proceed, Her Claims Should Be**

7   **Dismissed for Independent Reasons.**

8   **1.      Plaintiff's Negligence Claims Should Be Dismissed (Counts I & IV).**

9   In Counts I and IV, Plaintiff purports to bring negligence claims against Wells Fargo based

10  upon three claimed duties of care, each arising out of HAMP.  First, Plaintiff alleges that Wells

11  Fargo owed her a duty "to implement HAMP's requirements for offering mortgage modifications."

12  Compl. ¶ 81.  Next, Plaintiff alleges that "Wells Fargo had a duty to exercise reasonable care in the

13  creation, implementation, and use of its internal software to determine whether a mortgage

14  modification was required under HAMP regulations."  Compl. ¶ 82.  Finally, Plaintiff alleges that

15  "Wells Fargo had a duty to ensure that borrowers who met all objective requirements were given a

16  HAMP mortgage modification."  Compl. ¶ 83.  *See also* Compl. ¶ 116 ("Wells Fargo also violated

17  federal HAMP regulations, such as Supplemental HAMP Directive 09-01").  As shown below,

18  Plaintiff's negligence and negligence per se claims should be dismissed because Wells Fargo did not

19  owe Plaintiff a duty as a matter of law and the economic loss doctrine bars the claims.

20  **a.      Wells Fargo Did Not Owe Plaintiff a Duty as a Matter of Law.**

21  Under New Jersey law, it is well established that "a bank does not owe a duty of care to a

22  borrower, even if the borrower is a consumer."  *Stolba v. Wells Fargo & Co.*, No. 10-cv-6014

23  (WJM)(MF), 2011 WL 3444078, at *5 (D.N.J. Aug. 8, 2011) (citations omitted); *see also Marias v.

24  Bank of Am., N.A.*, No. 14-4986 (RBK/JS), 2015 WL 4064780, at *3 (D.N.J. July 1, 2015) ("In New

25  Jersey, it is well established that when the contractual relationship is between a lending bank and a

26  borrower, a creditor bank does not owe a duty of care to a borrower, even if the borrower is a

27  consumer.") (internal quotation marks omitted); *Bijeau-Seitz v. Atl. Coast Mortg. Servs., Inc.*, No.

28  12-6372 (RBK/AMD), 2013 WL 3285979, at *6 (D.N.J. June 28, 2013) ("Plaintiffs have also

asserted a negligence claim against [the bank] based on the bank's alleged negligent processing of Plaintiffs' loan modification application.  This claim has been flatly rejected by several courts."). Indeed, "[e]ven if a creditor bank voluntarily counsels a borrower on its loan, the bank does not take on a specific independent duty imposed by law, and thus, the bank is not liable in tort to the borrower." *Marias*, 2015 WL 4064780, at *3.

Consistent with this rule, New Jersey courts routinely find that loan modification negotiations do not create a duty of care on the part of the lender or loan servicer.  *See Bijeau-Seitz*, 2013 WL 3284979, at *6 (concluding that a bank cannot "suddenly assume a fiduciary duty to consumers by … failing to comply with HAMP protocol and requirements, and promising to provide certain services which they may never had the intention of providing" and dismissing negligence claim with prejudice) (internal quotation marks omitted); *In re Hartman*, No. AP 15-01968 (JKS), 2017 WL 2230336, at *4 (D.N.J. May 22, 2017) ("[T]he Court finds persuasive the reasoning of courts who have *declined* to recognize negligent misrepresentation claims arising out of a lender's alleged breach of duty during the loan modification process[,]" as there is "[no] precedent … holding a lender liable for negligent statements or omissions made during the course of a loan modification review.") (emphasis in original) (internal quotation marks and citation omitted).

California courts agree.  For example, in *Toneman v. U.S. Bank, Nat'l Ass'n for Bear Stearns Asset Backed Sec. Tr. 2004-AC7*, 2013 WL 12132049, at *13, the court aptly explained:

> Holding that a lender assumes no duty of care to borrowers merely because it engages in discussions regarding a loan modification is sound policy, since absent a duty in the first place to modify a loan or even to evaluate such an application under objective standards limiting the lender's discretion, imposing negligence liability for the mishandling of loan modification applications could be a disincentive to lenders from ever offering modification.

*See also Badame*, 641 F. App'x at 709-10 ("[Bank] did not owe Plaintiffs a duty of care when considering their loan modification application because a loan modification is the renegotiation of loan terms, which falls squarely within the scope of a lending institution's conventional role as a lender of money.") (internal quotation marks and citation omitted); *Haynish v. Bank of Am., N.A.*,

**DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

1    284 F. Supp. 3d 1037, 1051 (N.D. Cal. 2018) ("This Court has repeatedly considered the issue and

2    concluded that lenders owe no duty of care in the loan modification context, even when the lender

3    apparently agreed to consider a borrower's modification application").

4         This Court's decision in *Ansanelli v. JP Morgan Chase Bank, N.A.*, No. C 10-03892 WHA,

5    2011 WL 1134451 (N.D. Cal. Mar. 28, 2011) (Alsup, J.), does not compel a different conclusion.

6    There, the plaintiffs alleged that their loan servicer agreed to place them on a trial loan modification

7    plan, guaranteeing that if they made three modified payments on time, it would permanently modify

8    their loan. *Id*. at *1.  The plaintiffs claimed that after they timely made the modified payments, the

9    servicer nonetheless denied them a permanent loan modification.  *Id*.  In declining to dismiss the

10   plaintiffs' negligence claim, this Court reasoned that by offering the plaintiffs a trial modification

11   plan and "engag[ing] with them concerning the trial period plan," it had gone "beyond the domain of

12   a usual money lender." *Id*. at *7.  That is not the case here, where Plaintiff alleges only that Wells

13   Fargo denied her a loan modification.  As this Court explained in *Sun v. Wells Fargo Bank, N.A.*,

14   No. C 14-00063 WHA, 2014 WL 1245299 (N.D. Cal. Mar. 25, 2014) (Alsup, J.), the absence of

15   such allegations dooms a negligence claim:

> While the undersigned judge has found that a financial institution actively participates in the financed enterprise beyond the domain of the usual money lender when it offers borrowers a loan modification and a trial period plan, such is not the case here. … defendants have not yet offered plaintiff a loan modification.  More importantly, defendants are not alleged to have engaged in a trial period plan that might suggest active participation in the financed enterprise beyond the role of a usual money lender. … Thus, plaintiff has failed to show that defendants have a fiduciary duty to her.  Plaintiff's claims for constructive fraud, negligent misrepresentation, and negligence are **DISMISSED**.

23   *Id*. at *4 (emphasis in original).

24         As the foregoing demonstrates, Wells Fargo did not owe a duty to Plaintiff as a matter of

25   law, and her negligence and negligence per se claims must be dismissed.

26         **b.     The Economic Loss Rule Bars Plaintiff's Negligence and**

27                 **Negligence Per Se Claims.**

28         Wells Fargo's lack of duty to Plaintiff also compels the conclusion that the economic loss

1  rule bars her negligence claims.  "Under New Jersey law, a tort remedy does not arise from a

2  contractual relationship unless the breaching party owes an independent duty imposed by law."

3  *Park v. M & T Bank Corp*., No. 09-CV-2921 (DMC), 2010 WL 1032649, at *6 (D.N.J. Mar. 16,

4  2010); *see also Shinn v. Champion Mortg. Co*., No. 09-cv-00013 (WJM), 2010 WL 500410, at *4

5  (D.N.J. Feb. 5, 2010); *Perkins v. Wash. Mut., FSB*, 655 F. Supp. 2d 463, 471 (D.N.J. 2009); *Saltiel v.*

6  *GSI Consultants, Inc*., 170 N.J. 297, 316-17, 788 A.2d 268, 280 (2002).  An independent duty does

7  not exist unless the duty is "separate and apart" from the contractual obligations between the parties.

8  *Saltiel*, 170 N.J. at 314, 788 A.2d at 279; *see also Perkins*, 655 F. Supp. 2d at 471 (holding that the

9  economic loss doctrine barred the mortgagor's negligence claim against a mortgagee bank because

10  the bank did not owe the mortgagor a duty outside of their contractual relationship).

11      As demonstrated above, in New Jersey, when the contractual relationship is between a

12  lending bank and a borrower, the bank does not owe a duty of care to a borrower under tort law.

13  *See, e.g., Stolba*, 2011 WL 3444078, at *5 (dismissing the borrowers' negligent processing claim

14  arising out of HAMP because the creditor bank did not owe its borrowers a duty).  Accordingly,

15  because Wells Fargo owed no duty to Plaintiff outside of the parties' contractual relationship, the

16  economic loss doctrine bars Plaintiff's negligence claims.  *See id*.; *see also Marias*, 2015 WL

17  4064780, at *3-4 (borrowers' claim that lender negligently processed their loan modification request

18  was barred by the economic loss rule); *Rost v. Avelo Mortg., LLC*, No. 15-3254, 2015 WL 6737026,

19  at *5 (D.N.J. Nov. 3, 2015) (economic loss rule barred plaintiffs' negligence claim premised on

20  allegation that lender wrongfully denied them a loan modification under HAMP).

21      For these reasons, Plaintiff's negligence claims should be dismissed as a matter of law.

22      **2.  Plaintiff's Conversion Claim Fails (Count II).**

23      Plaintiff's second Cause of Action for conversion fares no better.

24      First, conversion applies to personal—not real—property.  Under New Jersey law,

25  "[c]onversion has been defined as an unauthorized assumption and exercise of the right of ownership

26  over ***goods or personal chattels*** belonging to another, to the alternation of their condition or the

27  exclusion of an owner's rights."  *Phoenix Pinelands Corp. v. United States*, No. 09-2237, 2010 WL

28  1704743, at *4 (D.N.J. Apr. 26, 2010) (emphasis added) (internal quotation marks and citation

**DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

3:18-cv-07354-WHA

1    omitted).  Because real property is not a good or personal chattel, New Jersey courts consistently

2    have held that there is no cause of action for conversion of real property.  *See e.g., id.* ("[D]amage to

3    the vegetation on Plaintiff's land constitutes damage to Plaintiff's real property, not damage to a

4    chattel.  Therefore, [Plaintiff's conversion claim] must be dismissed."); *Howard Johnson Int'l, Inc.*

5    *v. Vraj Brig, LLC*, No. 08-1466, 2010 WL 215381, at *8 (D.N.J. Jan. 14, 2010) (the tort of

6    conversion applies to "goods or personal chattels"); *Four Pals, LLC v. Javamoon Café Franchise*

7    *Servs., LLC*, No. A-4457-08T3, 2010 WL 3185221, at *5 (N.J. Super. Ct. App. Div. Aug. 10, 2010)

8    ("[The] tort of conversion has been historically applied to chattels.").  Because Plaintiff's conversion

9    claim is based upon her allegation that "Wells Fargo has interfered with [her] rights to possess and

10   control [her] [real] property,"[5] it fails as a matter of law.

11           Second, "an action for conversion does not lie where there is a debtor-creditor relationship

12   between the parties."  *Cevdet Aksüt Ve Oullari Koll. Sti v. Cavusoglu*, No. 12-2899 (WJM), 2015

13   WL 4315330, at *10 (D.N.J. July 14, 2015) (citing *Advanced Enter. Recycling, Inc. v. Bercaw*, 376

14   N.J. Super. 153, 161 (App. Div. 2005)).  Because Wells Fargo and Plaintiff had only a creditor-

15   debtor relationship, her conversion claim fails for this reason as well.

16           For these reasons, the Court should dismiss Plaintiff's conversion claim with prejudice.

17                   **3.      The Court Should Dismiss Plaintiff's UCL Claim (Count III).**

18           In her Third Cause of Action, Plaintiff purports to assert a claim under California's UCL.  As

19   demonstrated in part III(A)(3), *supra*, Plaintiff's valid and enforceable choice-of-law provision

20   precludes application of the UCL to her claims.  *See, e.g., Cannon*, 917 F. Supp. 2d at 1055 (in light

21   of plaintiffs' choice of law provision, "Florida law governs, not California law, and therefore the

22   [UCL claim] is dismissed on that basis alone"); *Campusano*, 2012 WL 13008750, at *1; *Gustafson*

23   *v. BAC Home Loans Servicing, LP*, 294 F.R.D. 529, 536-37 (C.D. Cal. 2013); *Faili v. BAC Home*

24   *Loans Servicing LP*, No. 8:13-cv-1105-JLS (ANx), 2014 WL 255704, at *10-11 (C.D. Cal. Jan. 23,

25   2014).  As demonstrated below, however, even if there were no controlling choice-of-law provision,

26   Plaintiff's UCL claim still fails because she has not sufficiently alleged that Wells Fargo's conduct

27

28   [5] Compl. ¶ 92.

**DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

1   occurred in California.

2          It is well-settled that "California law embodies a presumption against the extraterritorial

3   application of its statutes." *Churchill Village, L.L.C. v. Gen. Elec. Co*., 169 F. Supp. 2d 1119, 1126

4   (N.D. Cal. 2000).  Accordingly, remedies under California's UCL are only "available to non-

5   California residents if those persons are harmed by wrongful conduct occurring in California." *In re*

6   *Toyota Motor Corp*., 785 F. Supp. 2d 883, 916-918 (C.D. Cal. 2011) (dismissing UCL and CLRA

7   claims brought by non-California residents).  *See also Tidenberg v. Bidz.com, Inc.*, No. 08-5553 PSG

8   (FMOx), 2009 WL 605249, at *4 (C.D. Cal. Mar. 4, 2009) ("the UCL was neither designed [n]or

9   intended to regulate claims of non-residents arising from conduct occurring entirely outside of

10  California"); *Norwest Mortg., Inc. v. Super. Court*, 72 Cal. App. 4th 214, 224-25 (1999) (vacating

11  class certification as to non-California residents for conduct occurring outside of California).  "In

12  determining whether the UCL … appl[ies] to non-California residents, courts consider where the

13  defendant does business, whether the defendant's principal offices are located in California, where

14  class members are located, and the location from which [the relevant] decisions were made." *In re*

15  *Toyota*, 785 F. Supp. 2d at 917.  Courts also consider whether the plaintiff's injury occurred in

16  California. *Tidenberg*, 2009 WL 605249, at *4.  If not, then a non-resident plaintiff cannot assert a

17  claim under the UCL.  *Id*.

18         Here, Plaintiff does not allege that her loan transaction with Wells Fargo occurred in

19  California (nor could she), nor does she allege that she was harmed in California (nor could she).

20  Indeed, it is clear that none of Plaintiff's alleged injuries occurred in California:  She lives in

21  Pennsylvania, and the property at issue was in New Jersey.  *See* Compl. ¶ 16.  Indeed, the

22  Complaint's only connection to California are Plaintiff's allegations that Wells Fargo is

23  "headquartered in San Francisco" and "received customer complaints, planned it communications

24  with Class Members, and set its HAMP compliance and software auditing policies" at its

25  "headquarters in San Francisco, California."  Compl. ¶¶ 15, 69.  These conclusory allegations are

26

27

28

**DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

1  insufficient.[6]

2      First, the fact that Wells Fargo purportedly is headquartered in San Francisco is insufficient

3  to overcome the presumption against the extraterritorial application of California's laws.  This Court

4  recently reiterated this rule in another case against Wells Fargo, *Muniz v. Wells Fargo & Co., et al.*,

5  No. 17-cv-04995-MMC, 2018 WL 2197556 (N.D. Cal. May 14, 2018) (Chesney, J.), where it

6  dismissed the Nevada plaintiff's UCL claim.  As the Court explained, "[plaintiff's] reliance on an

7  allegation in the [Complaint] that WF&C has its "headquarters" in California … is unavailing." *Id*.

8  at *4.  Likewise, in *Cannon*, 917 F. Supp. at 1056, this Court (Chen, J.) dismissed the out-of-state

9  plaintiffs' UCL claim:

10         Plaintiffs argue that there is no extraterritoriality problem because Wells
11         Fargo has its principal place of business in California and a California
           court may properly apply California laws to non-California members of
12         a nationwide class where the defendant is a California corporation and
           some or all of the challenged conduct emanates from California. …
13         Even assuming this is the case, the question is whether Wells Fargo's
           connection to California is enough to give rise to Plaintiffs' [UCL]
14         claim. [ ] [Here], it is possible that the decision to do the kickbacks and
           the backdating emanated from California.  The question, however, is
15         whether it is *plausible* that Wells Fargo did so; without additional facts
           suggesting that Wells Fargo did make the decision in California (*i.e*.,
16         the tortious conduct occurred at least in part in California), the Court
17         concludes that it is not.

18  *Id*. (emphasis in original); *see also Tidenberg*, 2009 WL 605249, at *5 ("Apparently, Plaintiff

19  believes that because [defendants'] principal place of business is in California, a fact that Defendants

20  concede, the Court can presume that any false and misleading statements emanated from California.

21  But the bulk of authority counsels against making such an assumption.").

22      The Court also should reject Plaintiff's obvious attempt to plead around this fatal hurdle by

23  claiming that some of Wells Fargo's conduct—namely, receipt of customer complaints, planning

24  communications with putative class members, and setting its HAMP compliance and software

25  auditing policies—occurred in California.  As an initial matter, Wells Fargo's receipt of customer

26  ─────────────────
27  [6] The allegations also are wrong.  *See* Declaration of Carmen Bell in Support of Defendant Wells
    Fargo Bank, N.A.'s Motion to Transfer Venue (Doc. No. 25-1).  However, for purposes of this
    motion to dismiss, the Court must accept Plaintiff's allegations as true.  *See, e.g., Iqbal*, 556 U.S. at
28  678.

1    complaints and communications with putative class members are irrelevant, because that alleged

2    conduct does not form any part of Plaintiff's UCL claim.  *See* Compl. ¶¶ 87, 102; *see also*

3    *Tidenberg*, 2009 WL 605249, at *5 (dismissing UCL claims for lack of standing when the plaintiff

4    "d[id] not allege any specific facts linking Defendants' contacts with California to the claims

5    Plaintiff assert[ed] against them.")

6        In any event, Plaintiff's conclusory allegations are insufficiently detailed to establish the

7    required nexus to California.  For example, in *Muniz*, 2018 WL 2197556, this Court considered an

8    allegation that Wells Fargo's alleged "scheme" at issue emanated from California.  *Id.* at *4.  In

9    dismissing the Nevada plaintiff's UCL claim, the court reasoned that the complaint "contains no

10   facts to support [that] conclusory allegation … or any other factual allegations showing the acts that

11   form the basis of [his] claims occurred in California."  *Id.*  Likewise, in *Lane*, 2013 WL 269133, at

12   *3, this Court (Alsup, J.) found allegations that Wells Fargo "maintains its principal place of

13   business in California and a substantial part of the acts or omissions giving rise to their claims

14   occurred in California" were "conclusory" and could not establish the Arkansas plaintiffs' ability to

15   proceed under the UCL.  *See also Gustafson*, 2012 WL 4761733, at *6 (plaintiff's allegation that the

16   defendants' scheme was "devised, implemented and directed from [their] offices in California" was

17   too conclusory; the "mere possibility that certain decisions related to [defendants'] policies and

18   practices regarding force-placed insurance may have been made in California does not, standing

19   alone, justify application of the UCL to Plaintiff's claims"); *In re Toyota*, 785 F. Supp. 2d at 916-18

20   (even though plaintiffs' complaint alleged that the defendant did business throughout California and

21   that certain corporate decisions forming the basis for the plaintiffs' claims were made in California,

22   the court dismissed plaintiffs' UCL claims because the plaintiffs failed to allege "with sufficient

23   detail" that the alleged conduct emanated from California).

24       Finally, Plaintiff does not allege that the remaining conduct forming the basis for her UCL

25   claim—namely, Wells Fargo's allegedly wrongful denial of HAMP modifications through faulty

26   software—occurred in California.  *See* Compl. ¶¶ 97, 102.

27       In sum, because none of Wells Fargo's alleged misconduct occurred in California, and

28   because Plaintiff was not injured in California, she cannot bring a claim under the UCL, and the

1    Court should dismiss that claim with prejudice.

2    **4.    The Court Should Dismiss Plaintiff's Claim for Violation of New Jersey**

3    **Consumer Fraud Act (Count IV).**

4    To state a viable claim for violation of the New Jersey Consumer Fraud Act, a plaintiff must

5    allege (1) an unlawful practice; (2) that she suffered an ascertainable loss; and (3) a causal

6    relationship between the unlawful practice and the ascertainable loss. *Dabush v. Mercedes-Benz*

7    *USA, LLC*, 378 N.J. Super. 105, 114, 874 A.2d 1110, 1115 (Super. Ct. App. Div. 2005).  As the

8    Supreme Court of New Jersey has explained, "[t]o violate the Act, a person must commit an

9    'unlawful practice' as defined in the legislation." *Cox v. Sears Roebuck & Co*., 138 N.J. 2, 17, 647

10   A.2d 454, 462 (1994).  The CFA defines an "unlawful practice" as: "The act, use or employment by

11   any person of any unconscionable commercial practice, deception, fraud, false pretense, false

12   promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material

13   fact with intent that others rely upon such concealment, suppression or omission, in connection with

14   the sale or advertisement of any merchandise or real estate."  N.J.S.A. § 56:8-2.

15   Claims under the Consumer Fraud Act must be pled with particularity under Federal Rule of

16   Civil Procedure 9(b).  *Argabright*, 201 F. Supp. 3d at 606.  Specifically, a plaintiff must "identify

17   with specificity the content of any alleged false representations by Defendant [and] … identify the

18   date, time, and place of the alleged fraud." *Edwards v. PHH Mortg. Corp.*, No. 17-7807

19   (RMB/KMW), 2018 WL 2733693, at *3 (D.N.J. June 6, 2018).  Here, Plaintiff does not identify a

20   single Wells Fargo employee who engaged in any of the alleged wrongful conduct, when they

21   engaged in such conduct, or what they said to her.  *See, e.g.,* Compl. ¶¶ 109(a)-(g).  Her threadbare

22   and conclusory allegations do not meet the heightened level of specificity required under Rule 9(b).

23   *See e.g.,* *DeLuca v. CitiMortgage*, 543 F. App'x 194, 196 (3d Cir. 2013) (affirming district court's

24   dismissal of Consumer Fraud Act claim where complaint made "conclusory allegations about 'high

25   pressure tactics' and 'rushing to closing'"); *Galayda v. Wachovia Mortg., FSB*, No. 10-1065 (FLW),

26   2010 WL 5392743, at *8 (D.N.J. Dec. 22, 2010) (dismissing Consumer Fraud Act claim where

27   complaint lacked specificity and merely alleged defendants "made false promises [and]

28   misrepresentations[,]" but did not identify content of statements, identity of defendants purportedly

1  making statements, nor when statements were made); *cf. Pitre v. Wells Fargo Bank, N.A.*, No. C 13-

2  00552 WHA, 2013 WL 2156315, at *5 (N.D. Cal. May 17, 2013) (allegations that Wells Fargo told

3  plaintiffs that their home would not be foreclosed upon and that they did not need to worry about

4  making their full mortgage payments while the loan modification was being reviewed did not

5  comply with Rule 9(b): "The allegations do not provide details of the 'who, what, when, where, and

6  how' of Wells Fargo's misconduct.  Plaintiffs do not allege who told them that Wells Fargo would

7  not begin the foreclosure process, what the statements were, when these statement[s] were made, or

8  how plaintiffs relied on these statements.").

9       Accordingly, the court should dismiss Plaintiff's New Jersey Consumer Fraud Act claim for

10  failure to comply with Rule 9(b).

11  **IV.    CONCLUSION**

12       For the foregoing reasons, Wells Fargo Bank, N.A. respectfully requests that the Court

13  dismiss Plaintiff's Complaint in its entirety, with prejudice.

14

15  Dated: January 31, 2019                    WINSTON & STRAWN LLP

16                                  By:   */s/ Amanda L. Groves*
17                                        Amanda L. Groves
                                          Morgan E. Stewart
18                                        Kobi K. Brinson (Admitted *pro hac vice*)
                                          Stacie C. Knight (Admitted *pro hac vice*)
19                                        Attorneys for Defendant
20                                        WELLS FARGO BANK, N.A.

21

22

23

24

25

26

27

28