Amanda L. Groves (SBN: 187216)
agroves@winston.com
Morgan E. Stewart (SBN: 321611)
mstewart@winston.com
**WINSTON & STRAWN LLP**
101 California Street, 35th Floor
San Francisco, CA  94111-5802
Telephone:    (415) 591-1000
Facsimile:     (415) 591-1400

Kobi K. Brinson (Admitted *pro hac vice*)
kbrinson@winston.com
Stacie C. Knight (Admitted *pro hac vice*)
sknight@winston.com
**WINSTON & STRAWN LLP**
300 South Tryon Street, 16th Floor
Charlotte, NC 28202
Telephone:    (704) 350-7700
Facsimile:     (704) 350-7800

Attorneys for Defendant
WELLS FARGO BANK, N.A.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ALICIA HERNANDEZ, *et al*., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO & COMPANY and WELLS FARGO BANK, N.A.,<br><br>Defendants. | No. 3:18-cv-07354 WHA<br><br>**DEFENDANT WELLS FARGO BANK, N.A.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: May 23, 2019<br>Time: 8:00 a.m.<br>Courtroom: 12<br>Judge: Hon. William H. Alsup |

1    **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2    **PLEASE TAKE NOTICE THAT** on May 23, 2019 at 8:00 a.m., or as soon thereafter as the

3    matter may be heard, in Courtroom 12 of the above-entitled court, located at 450 Golden Gate

4    Avenue, San Francisco, California, Defendant Wells Fargo Bank, N.A. ("Wells Fargo") will and

5    hereby does move the Court to dismiss Plaintiffs' First Amended Class Action Complaint (the

6    "FAC") with prejudice pursuant to Rule 12(b) of the Federal Rules of Civil Procedure for lack of

7    statutory standing and failure to state a claim upon which relief can be granted.

8    Specifically, Wells Fargo seeks dismissal of the FAC on the bases that Plaintiffs lack

9    standing to enforce the consent order referenced therein, lack standing to enforce HAMP, Wells

10   Fargo owed no duties of oversight or compliance to Plaintiffs, and Wells Fargo had no duty to

11   modify Plaintiffs' mortgage loans.  Additionally, Plaintiffs' claims each separately fail for several

12   different reasons.  This Motion is based upon this Notice of Motion and Motion, the accompanying

13   Memorandum of Points and Authorities, and the record in this action, and any other written or oral

14   submission that may be presented at or before the hearing on this motion.

15   Dated: March 28, 2019                     Respectfully submitted,

16                                              **WINSTON & STRAWN LLP**

17

18                                              By: */s/ Amanda L. Groves*

19                                              Amanda L. Groves (SBN: 187216)
                                                agroves@winston.com
20                                              Morgan E. Stewart (SBN: 321611)
                                                mstewart@winston.com
21                                              101 California Street, 35th Floor
                                                San Francisco, CA  94111-5802
22                                              Telephone:    (415) 591-1000
                                                Facsimile:    (415) 591-1400
23
                                                Kobi K. Brinson (Admitted *pro hac vice*)
24                                              kbrinson@winston.com
                                                Stacie C. Knight (Admitted *pro hac vice*)
25                                              sknight@winston.com
                                                300 South Tryon Street, 16th Floor
26                                              Charlotte, NC 28202
                                                Telephone:    (704) 350-7700
27                                              Facsimile:    (704) 350-7800

28                                              *Attorneys for Defendant* WELLS FARGO BANK, N.A.

-i-

## **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................... 1

II.   SUMMARY OF ALLEGED FACTS ...................................................................... 1

III.  LEGAL ARGUMENT .............................................................................................. 4

    A.    Plaintiffs' Claims Fail Outright Because They Lack Standing to Enforce the OCC Consent Order. .................................................................................... 4

    B.    Plaintiffs Cannot Sue to Enforce HAMP. ................................................... 5

    C.    Even Assuming Plaintiffs' Theories Could Proceed, Their Claims Should Be Dismissed for Independent Reasons. ......................................................... 8

        1.    Plaintiffs' Breach of Contract Claim Should Be Dismissed (Count I). ................................................................................................................. 8

        2.    Plaintiffs' Intentional Infliction of Emotional Distress Claim Should Be Dismissed (Count II). ...................................................... 10

            a.    Plaintiffs' Allegations Are Insufficient as a Matter of Law. ................. 11

            b.    Non-Borrower Plaintiffs Cannot Pursue IIED Claims Against Wells Fargo. .......................................................................................... 13

        3.    Plaintiffs' Negligence Claims Should Be Dismissed (Count III). ................... 14

            a.    Wells Fargo Did Not Owe Plaintiffs a Duty as a Matter of Law .......... 14

            b.    The Economic Loss Rule Bars Plaintiffs' Negligence Claims. ............. 16

        4.    Plaintiffs' Wrongful Foreclosure Claim Should Be Dismissed (Count IV). ............................................................................................... 17

        5.    Plaintiffs' California Homeowner Bill of Rights Claim (Count V) is Defective and Should Be Dismissed. ............................................. 18

        6.    The Court Should Dismiss Plaintiffs' UCL Claim (Count VI) ...................... 19

        7.    The Court Should Dismiss Plaintiffs' Various State Consumer Protection Claims (Count VII). ..................................................... 22

IV.   CONCLUSION ..................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adobe Sys., Inc. Privacy Litig.*,
   66 F. Supp. 3d 1197 (N.D. Cal. 2014) .........................................................................................20

*Aleem v. Bank. of Am., N.A.*,
   2010 WL 532330 (C.D. Cal. Feb. 9, 2010).................................................................................7, 20

*Alvarez v. U.S. Bank, N.A.*,
   2012 WL 2394680 (D. Mass. June 22, 2012) ..............................................................................12

*Ansanelli v. JP Morgan Chase Bank, N.A.*,
   2011 WL 1134451 (N.D. Cal. Mar. 28, 2011) (Alsup, J.) ..........................................................15

*Aranda v. CitiMortgage Inc.*,
   2013 WL 12182677 (C.D. Cal. May 13, 2013) ...........................................................................21

*Auriti v. Wells Fargo Bank, N.A.*,
   2013 WL 2417832 (S.D. Tex. June 3, 2013) ...............................................................................11

*Badame v. J.P. Morgan Chase Bank, N.A.*,
   641 F. App'x 707 (9th Cir. 2016) ................................................................................................15

*Bellinghausen v. Tractor Supply Co.*,
   2013 WL 5090869 (N.D. Cal. Sept. 13, 2013) .............................................................................2

*Bernard v. Deutsche Bank Nat'l Tr. Co.*,
   2016 WL 5346376 (N.D. Ga. June 1, 2016), *vacated on other grounds*, 2019 WL
   1323602 (N.D. Ga. Jan. 25, 2019) ..............................................................................................17

*Berryman v. Merit Prop. Mgmt., Inc.*,
   152 Cal. App. 4th 1544 (2007) ...................................................................................................19

*Bunce v. Ocwen Loan Servicing, LLC*,
   2013 WL 3773950 (E.D. Cal. July 17, 2013) .............................................................................20

*Cabanilla v. Wachovia Mortg.*,
   2012 WL 13020028 (C D. Cal. Mar. 20, 2012)...........................................................................22

*Cannon v. Wells Fargo Bank, N.A.*,
   917 F. Supp. 2d 1025 (N.D. Cal. 2013) ........................................................................................9

*Cel-Tech Comm'ns, Inc. v. L.A. Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) ................................................................................................................19

*Chabner v. United Omaha Life Ins. Co.*,
   225 F.3d 1042 (9th Cir. 2000) .....................................................................................................20

*Chao v. Rothermel*,
  327 F.3d 223 (3d Cir. 2003).........................................................................................16

*Christensen v. Super. Ct.*,
  54 Cal. 3d 868 (1991) ................................................................................................13

*Conant v. Wells Fargo Bank, N.A.*,
  60 F. Supp. 3d 99 (D.D.C. 2014) .................................................................................5

*Dahnken v. Wells Fargo Bank, N.A.*,
  2014 WL 523382 (N.D. Cal. Feb. 6, 2014*), aff'd sub nom. Dahnken v. Wells
  Fargo Bank, NA*, 705 F. App'x 508 (9th Cir. 2017)....................................................19

*Das v. WMC Mortg. Corp.*,
  831 F. Supp. 2d 1147 (N.D. Cal. 2011) ......................................................................21

*Davis v. HSBC Bank Nev., N.A.*,
  691 F.3d 1152 (9th Cir. 2012) ....................................................................................20

*DeLeon v. Wells Fargo Bank, N.A.*,
  2011 WL 311376 (N.D. Cal. Jan. 28 2011) ..................................................................9

*Farren v. Select Portfolio Servicing, Inc.*,
  2017 WL 1063891 (E.D. Cal. Mar. 20, 2017) ............................................................12

*Flores v. Wells Fargo Bank, N.A.*,
  2012 WL 2427227 (N.D. Cal. June 26, 2012) .........................................................7, 21

*Fontaine v. Bank of Am., N.A.*,
  2015 WL 5022429 (S.D. Cal. Aug. 21, 2015), *aff'd*, 696 F. App'x 256 (9th Cir.
  2017) ..............................................................................................................................2

*Gardner v. Am. Home Mortg. Servicing, Inc.*,
  691 F. Supp. 2d 1192 (E.D. Cal. 2010)......................................................................17

*Georgia-Pacific v. Officemax Inc.*,
  2013 WL 5273007 (N.D. Cal. Sept. 18, 2013) ............................................................9

*Ghaffari v. Wells Fargo Bank, N.A.*,
  2014 WL 6606611 (M.D. Pa. Nov. 19, 2014) ..............................................................5

*Hall v. Washington Mut. Bank*,
  2011 WL 13213926 (C.D. Cal. Jan. 3, 2011) .............................................................12

*Haynish v. Bank of Am., N.A.*,
  284 F. Supp. 3d 1037 (N.D. Cal. 2018) ......................................................................14

*Henrietta E. Willis Revocable Trust v. Wells Fargo Bank, N.A.*,
  2014 WL 12596430 (C.D. Cal. Nov. 10, 2014)............................................................5

*ILWU-PMA Welfare Plan Bd. of Trustees v. Connecticut Gen. Life Ins. Co.*,
  2015 WL 9300519 (N.D. Cal. Dec. 22, 2015) (Alsup, J.) ............................................16

*Jaffri v. JPMorgan Chase Bank, N.A.*,
  26 N.E.3d 635 (Ind. Ct. App. 2015).................................................................7, 11, 12

*Janda v. T-Mobile, USA, Inc.*,
  2009 WL 667206 (N.D. Cal. Mar. 13, 2009), *aff'd*, 378 F. App'x 705 (9th Cir.
  2010) ..........................................................................................................................20

*JPMorgan Chase Bank, N.A. v. Horvath*,
  862 F. Supp. 2d 744 (S.D. Ohio 2012) .........................................................................7

*Kaurloto v. U.S. Bank, N.A.*,
  No. 16-CV-06652-JFW-GJSX, 2016 WL 6808117 (C.D. Cal. Nov. 17, 2016)...........18

*Keosseian v. Bank of Am.*,
  2012 WL 458470 (D.N.J. Feb. 10, 2012) ....................................................................23

*Lane v. Wells Fargo Bank, N.A.*,
  2013 WL 269133 (N.D. Cal. Jan. 24, 2013) (Alsup, J.) ................................................9

*Lawther v. OneWest Bank*,
  2010 WL 4936797 (N.D. Cal. Nov. 30, 2010) .............................................................10

*Lesa, LLC v. Family Tr. of Kimberley & Alfred Mandel*,
  2016 WL 1446770 (N.D. Cal. April 13, 2016)...............................................................9

*Love v. Bank of Am., N.A.*,
  2014 WL 1292652 (N.D. Ga. Mar. 31, 2014)...............................................................18

*Lozano v. AT&T Wireless Servs., Inc.*,
  504 F.3d 718 (9th Cir. 2007) .......................................................................................20

*Lucke v. Wells Fargo Bank, N.A.*,
  2014 WL 12601035 (D. Minn. Apr. 2, 2014)..................................................................5

*Lueras v. BAC Home Loans Servicing, LP*,
  221 Cal. App. 4th 49 (2013) ..................................................................................14, 15

*Marquez v. Wells Fargo Bank, N.A.*,
  2013 WL 5141689 (N.D. Cal. Sept. 13, 2013) .............................................................18

*Martinez v. Adams*,
  2010 WL 892186 (E.D. Cal. Mar. 9, 2010) ..................................................................14

*McMahon v. Craig*,
  176 Cal. App. 4th 1502 (2009) ....................................................................................13

*McReynolds v. HSBC Bank USA*,
2012 WL 5868945 (N.D. Cal. Nov. 19, 2012) ............................................................12

*Mills v. JPMorgan Chase Bank, N.A.*,
2016 WL 6896571 (E.D. Cal. Nov. 23, 2016) ................................................18, 19, 22

*Morshaeuser v. Citimortgage, Inc.*,
2012 WL 12990576 (E.D. La. Nov. 14, 2012) ..............................................................7

*Nedlloyd Lines B.V. v. Super. Ct.*,
3 Cal. 4th 459 (1992) ....................................................................................................9

*Nelson v. Bank of Am., N.A.*,
446 F. App'x 158 (11th Cir. 2011) ...............................................................................7

*Nguyen v. Aurora Loan Servs., LLC*,
2011 WL 13234276 (C.D. Cal. Dec. 5, 2011) ............................................................20

*Ozoria v. Deutsche Bank Tr. Co. Ams.*,
2011 WL 1303270 (S.D. Fla. Mar. 31, 2011) ..............................................................7

*Pantoja v. Countrywide Home Loans, Inc.*,
640 F. Supp. 2d 1177 (N.D. Cal. 2009) ......................................................................17

*Perra v. Bank of Am. Corp.*,
2013 WL 2250243 (Bankr. D. Mass. May 22, 2013) ..................................................11

*Peters v. Wells Fargo Bank, N.A.*,
2013 WL 12218470 (C.D. Cal. Dec. 19, 2013) .............................................................5

*Pniewski v. U.S. Bank Nat'l Ass'n*,
2014 WL 1052813 (N.D. Ill. Mar. 19, 2014) ...............................................................7

*Portney v. CIBA Vision Corp.*,
2009 WL 305488 (C.D. Cal. Feb. 6, 2009) .................................................................19

*Potter v. Firestone Tire & Rubber Co.*,
6 Cal. 4th 965 (1993) ...................................................................................................13

*Ridenhour v. Bank of Am., N.A.*,
23 F. Supp. 3d 1201 (D. Id. 2014) ..............................................................................16

*Robinson v. SunTrust Mortg., Inc.*,
2018 WL 3731119 (N.D. Ga. May 7, 2018), *appeal docketed*, No. 18-13650 (11th
Cir. Aug. 28, 2018) ......................................................................................................11

*Rubin v. Wal-Mart Stores, Inc.*,
599 F. Supp. 2d 1176 (N.D. Cal. 2009) ......................................................................22

*Salone v. Bank of Am., N.A.*,
  2018 WL 3815041 (N.D. Cal. June 22, 2018) ...................................................................16

*San Joaquin Cmty. Hosp. v. Thompson*,
  2002 WL 34596496 (E.D. Cal. Aug. 13, 2002) ................................................................16

*Sanchez v. Aurora Loan Servs., LLC*,
  2014 WL 12589659 (C.D. Cal. Mar. 11, 2014) ...............................................................12

*Sanguinetti v. CitiMortgage, Inc.*,
  2013 WL 4838765 (N.D. Cal. Sept. 11, 2013) ...................................................................4

*Sheard v. Bank of Am., N.A.*,
  2012 WL 3025119 (D. Md. July 23, 2012) .......................................................................23

*Slimm v. Bank of Am. Corp.*,
  2013 WL 1867035 (D.N.J. May 2, 2013) .........................................................................6, 7

*Spaulding v. Wells Fargo Bank, N.A.*,
  920 F. Supp. 2d 614 (D. Md. 2012) ...................................................................................7

*Stovall v. SunTrust Mortg., Inc.*,
  2011 WL 4402680 (D. Md. Sept. 20, 2011) .....................................................................23

*Sun v. Wells Fargo Bank, N.A.*,
  2014 WL 1245299 (N.D. Cal. Mar. 25, 2014) (Alsup, J.) ..........................................15, 16

*Sykes v. Pioneer Title of Ada Cty.*,
  2013 WL 587504 (D. Idaho Feb. 14, 2013) .....................................................................11

*Taylor v. Sovereign/Santander Bank*,
  2015 WL 757543 (M.D. Pa. Feb. 23, 2015) .......................................................................7

*Temple v. Bank of Am., N.A.*,
  2015 WL 3658834 (N.D. Cal. June 12, 2015) ..................................................................14

*Tietsworth v. Sears*,
  720 F. Supp. 2d 1123 (N.D. Cal. 2010) ...........................................................................21

*Toneman v. U.S. Bank, Nat'l Ass'n for Bear Stearns Asset Backed Sec. Tr. 2004-AC7*,
  2013 WL 12132049 (C.D. Cal. Oct. 21, 2013) ........................................................ *passim*

*Tran v. BAC Home Loan Servicing, L.P.*,
  2011 WL 5057099 (S.D. Tex. Oct. 24, 2011) .....................................................................7

*United States v. FMC Corp.*,
  531 F.3d 813 (9th Cir. 2008) .............................................................................................4

*Vargas v. JP Morgan Chase Bank, N.A.*,
  2014 WL 3435628 (C.D. Cal. July 11, 2014) ...................................................................19

*Vasquez v. Wells Fargo Home Mortg.*,
    2012 WL 985308 (S.D. Cal. Mar. 22, 2012) ..................................................................8

*Velasco v. Wells Fargo Bank*,
    2015 WL 12746226 (C.D. Cal. Jan. 8, 2015) ..........................................................5, 10

*Wheeler v. Citigroup*,
    938 F. Supp. 2d 466 (S.D.N.Y. 2013) ..........................................................................7

*Whitlock v. Pepsi Ams.*,
    681 F. Supp. 2d 1116 (N.D. Cal. 2010) ......................................................................13

*Williams v. Wells Fargo Bank, N.A.*,
    2012 WL 13014956 (N.D. Ga. Sept. 18, 2012) ...........................................................17

*Yost v. Nationstar Mortg., LLC*,
    2013 WL 4828590 (E.D. Cal. Sept. 9, 2013) ...............................................................16

**Statutes**

5 U.S.C. § 553 .............................................................................................................................16

12 U.S.C. § 5201 *et seq.* ...............................................................................................................6

12 U.S.C. § 5219 ...........................................................................................................................6

Cal. Civ. Code § 2924.17(b) .......................................................................................................18

1

**I.    INTRODUCTION**

2        Still relying on legal theories that courts routinely have rejected, Plaintiffs—residents of

3    eleven states—purport to bring a nationwide class action against Wells Fargo, asserting a variety of

4    state claims.  After being confronted with Wells Fargo's motion to dismiss the original Complaint,

5    Plaintiffs have added a new theory of liability: that Wells Fargo breached various audit and testing

6    duties in a 2011 consent order with one of its regulators.  This new theory does not save Plaintiffs'

7    claims, because it is well-settled that third parties such as plaintiffs have no standing under the

8    consent order.  As demonstrated herein, Plaintiffs' claims still fail as a matter of law, and the Court

9    should dismiss the First Amended Complaint with prejudice.

10   **II.    SUMMARY OF ALLEGED FACTS**

11       Plaintiffs' claims arise out of mortgage loans serviced[1] by Wells Fargo.  FAC ¶¶ 70-160.

12   Plaintiffs admit that, as a result of various financial hardships, they were not able to meet their

13   mortgage obligations and defaulted on their loans.  *Id.*  According to Plaintiffs, they sought loan

14   modifications from Wells Fargo, but Wells Fargo denied their applications and, for most, eventually

15   foreclosed on the properties.  *Id.*[2]

16       Although the First Amended Complaint generally references "mortgage loan modification or

17   repayment plan[s] pursuant to the requirements of government-sponsored enterprises (such as Fannie

18   Mae and Freddie Mac), the Federal Housing Administration (FHA), … or any other governmental

19   entity or program," FAC ¶ 161, the First Amended Complaint identifies only one specific loan

20

21

22

23

24

25

26   [1] Wells Fargo also originated some of the loans at issue, but because Plaintiffs' allegations do not relate to origination, its status as an originator is irrelevant to this case.

27   [2] Two Plaintiffs, Russell and Brenda Simoneaux, did not face foreclosure and paid off their mortgage in 2018.  FAC, ¶ 111.

28

modification program: the U.S. Department of Treasury's now-ended Home Affordable

Modification Program ("HAMP").[3]  *See, e.g.*, FAC ¶¶ 31, 34, 43, 173, 194, 201, 224, 226, 233, 238.

As alleged in the First Amended Complaint, a calculation error in Wells Fargo's modification

software tool caused certain fees to be misstated and resulted in incorrect modification denials.  FAC

¶¶ 64-65.  Some of those loans eventually went into foreclosure, including certain of the named

Plaintiffs: Hernandez, Granja, Linder, White, Teague, Demartino, Wilson, Hood, Floyds, Frye, and

Trevino.  FAC ¶¶ 14-18, 21-26.  Wells Fargo publicly disclosed this error in 2018, and began a

voluntary remediation program to assist affected borrowers in the fall of 2018.  FAC ¶¶ 64-67.

On December 5, 2018, Plaintiff Alicia Hernandez filed her original Complaint, asserting

claims for negligence, conversion, negligence per se, and violations of California's Unfair

Competition Law ("UCL") and the New Jersey Consumer Fraud Act, all based on Wells Fargo's

alleged failure to comply with HAMP.  Dkt. No. 1 ¶¶ 81-119.  Specifically, Plaintiff Hernandez

sought to represent a "[a]ll persons who were denied a HAMP mortgage modification by Wells

Fargo due to a calculation error with respect to attorneys' fees for purposes of determining whether a

customer qualified for a loan modification or related errors regarding the maximum allowable

foreclosure attorneys' fees."  *Id.* ¶ 56; *see also, e.g., id.* ¶ 23, ¶ 61(b), ¶ 82, and ¶ 83 ("Wells Fargo

had a duty to ensure that borrowers who met all objective requirements were given a HAMP

mortgage modification.").  Based on Wells Fargo's alleged violations of HAMP, Plaintiff Hernandez

asserted claims for negligence and negligence per se, conversion, and violations of the California

Unfair Competition Law and the New Jersey Consumer Fraud Act.

---

[3] Although Plaintiffs repeatedly state that Wells Fargo violated "other government requirements," they never identify what those "other government requirements" were, when they were in effect, or in what documents they were contained.  Plaintiffs' failure to provide even the most basic information about these "other government requirements" is a violation of Rules 8 and 12(b)(6), even if Plaintiffs had standing to enforce these "government requirements."  Any claims based on their conclusory, unsupported allegations of "other government requirements" cannot support any claim for relief.  *See, e.g.*, *Bellinghausen v. Tractor Supply Co.*, 2013 WL 5090869, at *3 (N.D. Cal. Sept. 13, 2013) ("Without identifying any factual allegations supporting [an] alleged violation, the Court cannot draw a reasonable inference that Defendant is liable."); *Fontaine v. Bank of Am., N.A.*, 2015 WL 5022429, at *4 (S.D. Cal. Aug. 21, 2015), *aff'd*, 696 F. App'x 256 (9th Cir. 2017) (allegations do not comply with Rule 8 where "it is unclear which laws or standards have been violated, and how they have allegedly been violated").

1    On January 31, 2019, Wells Fargo Bank, N.A. filed its motion to dismiss, explaining why

2    Plaintiff Hernandez does not have standing to enforce HAMP.  In response, on February 28, 2019,

3    Plaintiff Hernandez filed her First Amended Complaint, which changed her overriding theory of

4    liability, named holding company Wells Fargo & Company as an additional defendant, and added

5    fifteen new putative class representatives[4] and nine new causes of action.

6    Although the First Amended Complaint doubles down on their efforts to enforce HAMP (*see,*

7    *e.g.*, FAC ¶¶ 161, 189, 201, 224, 223), Plaintiffs also contend that Wells Fargo and the Board of

8    Directors of newly-added defendant Wells Fargo & Company violated two 2011 consent orders with

9    the Office of the Comptroller of the Currency ("OCC"), which required them to "maintain adequate

10   governance and controls to ensure compliance with HAMP; to engage in ongoing testing for

11   compliance with HAMP; and to ensure that the Bank's mortgage modification and foreclosure

12   practices were regularly reviewed and any deficiencies promptly detected and remedied."  FAC ¶ 43.

13   Plaintiffs claim that these violations led to them being denied loan modifications and caused a

14   variety of alleged injuries.  *See, e.g.*, FAC ¶¶ 5, 39.  Plaintiffs assert claims for breach of contract,

15   intentional infliction of emotional distress, negligence, wrongful foreclosure, violations of

16   California's Homeowners' Bill of Rights ("HBOR"), violations of California's Unfair Competition

17   Law ("UCL"), and violations of various state consumer protection laws, all based on Wells Fargo's

18   purported failures to (1) comply with HAMP, (2) offer them loan modifications under HAMP and

19   unidentified "other government requirements," and (3) comply with the OCC Consent Order's

20   requirements regarding testing and oversight of its mortgage modification processes.  FAC ¶¶ 5, 10,

21   29, 35, 37-39, 42-47, 52, 184-262.  Plaintiffs purport to bring their claims on behalf of the following

22   nationwide class (as well as several alternative subclasses in California, Florida, Georgia, Illinois,

23   Louisiana, Maryland, New Jersey, New York, Ohio, Pennsylvania, and Texas):

24          All persons who (i) qualified for a mortgage loan modification or
25          repayment plan pursuant to the requirements of government-sponsored
            enterprises (such as Fannie Mae and Freddie Mac), the Federal Housing
26          Administration (FHA), the U.S. Department of Treasury's Home

27   ───────────────
[4] The caption of the First Amended Complaint does not include Plaintiff Debora Granja, who is
28   referenced as a plaintiff in paragraphs 15 and 70-76 of the First Amended Complaint.

1

2

3

   Affordable Modification Program (HAMP), or any other governmental entity or program; and (ii) were not offered a mortgage loan modification by Wells Fargo due to a systematic error in Wells Fargo's automated mortgage loan modification underwriting tool.

4

FAC ¶ 161.

### III. LEGAL ARGUMENT

5

6

  **A. Plaintiffs' Claims Fail Outright Because They Lack Standing to Enforce the OCC Consent Order.**

7

8

   In an attempt to avoid the standing problems caused by proceeding under HAMP, Plaintiffs

9

now contend that Wells Fargo failed to comply with the terms of its 2011 OCC Consent Order.  *See,*

10

*e.g.* FAC ¶ 43 (alleging that Wells Fargo "pledged" in the 2011 Consent Order to "maintain adequate

11

governance and controls to ensure compliance with HAMP; to engage in ongoing testing for

12

compliance with HAMP; and to ensure that the Bank's mortgage modification and foreclosure

13

practices were regularly reviewed and any deficiencies promptly detected and remedied"); ¶ 46

14

(alleging that Wells Fargo "repeatedly failed to fulfill these obligations over the course of several

15

years … in violation of the promises [it] made in the 2011 Consent Order").  As explained below,

16

however, Plaintiffs do not have standing to enforce the OCC Consent Order, regardless of what label

17

they give their claims.

18

   As the Ninth Circuit has explained, "[c]onsent decrees are construed as contracts for

19

purposes of enforcement," and "under Ninth Circuit precedent, incidental third-party beneficiaries

20

may not enforce consent decrees … ."  *United States v. FMC Corp.*, 531 F.3d 813, 819-20 (9th Cir.

21

2008).  Third-party beneficiaries are presumptively incidental beneficiaries absent a clear expression

22

in the consent decree that individual members of the public can enforce it.  *See id.* at 821.  Such clear

23

intent must appear in the consent decree's precise language.  *See id.*  Accordingly, "absent a clear

24

expression in the consent decree that individual members of the public can enforce" it.  *Sanguinetti*

25

*v. CitiMortgage, Inc.*, 2013 WL 4838765 (N.D. Cal. Sept. 11, 2013) (citing *FMC Corp.*, 531 F.2d at

26

821).

27

   Using these standards here, Wells Fargo's 2011 Consent Order contains no such expression.

28

Indeed, the Consent Order expressly states the opposite:

-4-

1
2
3

> Nothing in the Stipulation and Consent or this Order, express or implied,
> shall give to any person or entity, other than the parties hereto, and their
> successors hereunder, any benefit or any legal or equitable right, remedy
> or claim under the Stipulation and Consent or this Order.

4
5
6

Consent Order, Article XII, ¶ 10.[5]  Accordingly, Plaintiffs' attempt to ground their claims on Wells Fargo's breach of its duties under the 2011 OCC Consent Order fails as a matter of law—a conclusion with which multiple courts agree.

7
8
9
10
11
12
13
14
15
16

　　　For example, in *Velasco v. Wells Fargo Bank*, 2015 WL 12746226 (C.D. Cal. Jan. 8, 2015), the plaintiff sued Wells Fargo for negligence, based, in part, on Wells Fargo's alleged violations of the 2011 OCC Consent Order. *Id*. at *1-6.  The court dismissed the claim, explaining: "[Plaintiff's] attempt to rely on the Consent Order to create a duty of care … is … without merit because [she] is not a party to the Consent Order, and the Consent Order specifically denies a private right of action to third parties." *Id*. at *3.  Similarly, in *Henrietta E. Willis Revocable Trust v. Wells Fargo Bank, N.A*., 2014 WL 12596430 (C.D. Cal. Nov. 10, 2014), the court rejected the plaintiffs' negligence claim premised upon Wells Fargo's 2011 OCC Consent Orders, reasoning that it expressly precludes third-party claims and could not support the imposition of any duties of care on Wells Fargo.  *Id*. at *5.[6]

17
18
19
20
21

　　　The fatal defect underlying the claims in these cases also exists here.  As in those cases, Plaintiffs' theory is that Wells Fargo violated various state laws by violating the audit, compliance, and testing provisions of the 2011 OCC Consent Order.  But well-established law makes clear that Plaintiffs cannot enforce the OCC Consent Order, and accordingly, their allegations are fatally flawed.  The Court should dismiss the First Amended Complaint with prejudice.

22

　　　**B.**　　　**Plaintiffs Cannot Sue to Enforce HAMP.**

23
24
25

　　　Although the First Amended Complaint focuses on Wells Fargo's alleged breaches of the 2011 OCC Consent Order, Plaintiffs still attempt to proceed under HAMP.  *See* FAC ¶¶ 34-35, 39,

26
27
28

[5] *See* Request for Judicial Notice, ¶ 1 and Exhibit 1.
[6] *See also Conant v. Wells Fargo Bank, N.A*., 60 F. Supp. 3d 99, 117 (D.D.C. 2014); *Lucke v. Wells Fargo Bank, N.A*., 2014 WL 12601035, at *3 (D. Minn. Apr. 2, 2014); *Ghaffari v. Wells Fargo Bank, N.A*., 2014 WL 6606611, at *8 (M.D. Pa. Nov. 19, 2014); *Peters v. Wells Fargo Bank, N.A*., 2013 WL 12218470, at *5 (C.D. Cal. Dec. 19, 2013).

201, 224, 233, 238.  However, like their Consent Order-based claims, Plaintiffs' HAMP-based claims fail as a matter of law.

The U.S. Department of Treasury established HAMP pursuant to the Emergency Economic Stabilization Act of 2008, as amended by the American Recovery and Reinvestment Act of 2009. (the "Act").  12 U.S.C. § 5201 *et seq*.  The Act directed the Department of Treasury to maximize assistance of homeowners and to encourage mortgage servicers to take advantage of government programs to minimize foreclosures.  *See* 12 U.S.C. § 5219.  In furtherance of these goals, the Department of Treasury, through Federal National Mortgage Association ("Fannie Mae"), entered into Servicer Participation Agreements ("SPA") with loan servicers, pursuant to which servicers performed certain loan modification and foreclosure prevention services for eligible loans.  Wells Fargo and Fannie Mae entered into a SPA in April 2009, as amended in March 2010.[7]

Although HAMP was created in furtherance of the government's goal to maximize assistance to homeowners, it is well-settled that individual borrowers are not third-party beneficiaries of HAMP SPAs, and they accordingly do not have standing to enforce HAMP.  For example, in *Slimm v. Bank of Am. Corp.*, 2013 WL 1867035, at *2 (D.N.J. May 2, 2013), the plaintiffs alleged that the defendant bank agreed to a HAMP modification, but after several assurances that the modification was close to final approval, improperly denied the modification.  According to the plaintiffs, despite complying with all of the bank's requests, the bank "intentionally and wrongfully toyed" with them throughout the HAMP modification process by consistently assuring them that the modification was being processed and was essentially guaranteed.  *Id*.  The plaintiffs brought numerous claims, including a state law claim for promissory estoppel.  *Id*. at *10.  The court dismissed the claim, reasoning that it was "intertwined with [the plaintiffs'] allegations that Defendants failed to comply with their obligations under HAMP," for which there is no private right of action.  *Id*.  The court also rejected the plaintiffs' contention that the promissory estoppel claim was "not based upon the loan modification, but rather [was] premised upon [the bank's] promise to make a fair and honest review of their loan modification request."  *Id*. at *11 (internal quotation marks omitted).  As the court

---

[7] *See* Request for Judicial Notice, ¶ 2 and Exhibit 2.

explained, "this characterization is possibly even more interrelated with HAMP, as it directly relates to the *method of processing* and review of the loan modification request."  *Id.* (emphasis added).

Similarly, in *Jaffri v. JPMorgan Chase Bank, N.A.*, 26 N.E.3d 635, 640 (Ind. Ct. App. 2015), a borrower asserted an intentional infliction of emotional distress claim, alleging that the bank "intentionally did not dedicate the resources to HAMP modifications that were necessary to properly comply with the federal program."  Rejecting that assertion and finding that the borrower had no private right of action under HAMP, the court explained "[i]f there was a violation of federal law with respect to [the bank's] handling of [plaintiff's] HAMP requests, that is a matter better addressed by the U.S. Treasury Department as the administrator of that program."  *Id.*  (also noting that "[b]efore HAMP was enacted, [plaintiff's] options for remaining in her home would have been even more limited than with the program in place.").[8]

---

[8] Courts in each of the named plaintiffs' states agree.  *See Nelson v. Bank of Am., N.A.*, 446 F. App'x 158, 159 (11th Cir. 2011) ("nothing express or implied in HAMP gives borrowers a private right of action"); *Wheeler v. Citigroup*, 938 F. Supp. 2d 466, 471 (S.D.N.Y. 2013) ("HAMP does not provide a private right of action"); *Spaulding v. Wells Fargo Bank, N.A.*, 920 F. Supp. 2d 614, 618-19 (D. Md. 2012) (denial of a HAMP modification cannot form the basis for claims against a lender or servicer); *JPMorgan Chase Bank, N.A. v. Horvath*, 862 F. Supp. 2d 744, 748-49 (S.D. Ohio 2012) (dismissing borrower's claims that relied on servicer's denial of a HAMP modification because "Congress did not provide homeowners … with a private cause of action under HAMP"); *Taylor v. Sovereign/Santander Bank*, 2015 WL 757543, at *5 (M.D. Pa. Feb. 23, 2015) (no private right of action under HAMP); *Pniewski v. U.S. Bank Nat'l Ass'n*, 2014 WL 1052813, at *2 (N.D. Ill. Mar. 19, 2014) (borrower could not maintain state law claims for the denial of a HAMP modification); *Toneman v. U.S. Bank, Nat'l Ass'n for Bear Stearns Asset Backed Sec. Tr. 2004-AC7*, 2013 WL 12132049, at *16 (C.D. Cal. Oct. 21, 2013) ("to the extent plaintiffs base their negligence claim on an alleged entitlement to a loan modification under HAMP, their claim is an improper attempt to privately enforce HAMP when Congress granted no such private right of action") (internal quotation and citations omitted); *Flores v. Wells Fargo Bank, N.A.*, 2012 WL 2427227, at *8 (N.D. Cal. June 26, 2012) (dismissing UCL claim predicated on alleged HAMP violations); *Morshaeuser v. Citimortgage, Inc*., 2012 WL 12990576, at *6 (E.D. La. Nov. 14, 2012) (no private right of action under HAMP); *Ozoria v. Deutsche Bank Tr. Co. Ams.*, 2011 WL 1303270, at *5 (S.D. Fla. Mar. 31, 2011) (same); *Tran v. BAC Home Loan Servicing, L.P*., 2011 WL 5057099, at *2 (S.D. Tex. Oct. 24, 2011) (same); *Aleem v. Bank. of Am., N.A*., 2010 WL 532330, at *3 (C.D. Cal. Feb. 9, 2010) (rejecting UCL claim based on HAMP violations because "the UCL cannot create a private right of action where none exists").

Here, despite amending their allegations, Plaintiffs still claim that Wells Fargo violated state law by violating HAMP.[9]  As shown above, however, Plaintiffs' HAMP-based claims are fatally flawed.  The Court should dismiss the First Amended Complaint with prejudice.  *See e.g., Vasquez v. Wells Fargo Home Mortg.*, 2012 WL 985308, at *4 (S.D. Cal. Mar. 22, 2012) ("Because plaintiffs have no private right of action against defendants under HAMP, and all of their claims are predicated on allegations that defendants violated HAMP regulations or denied plaintiffs a loan modification or foreclosed upon the property when a HAMP modification was pending, plaintiffs' complaint must be dismissed with prejudice.").

**C.      Even Assuming Plaintiffs' Theories Could Proceed, Their Claims Should Be Dismissed for Independent Reasons.**

**1.      Plaintiffs' Breach of Contract Claim Should Be Dismissed (Count I).**

In their breach of contract claim, Plaintiffs allege that Wells Fargo breached the terms of their "Security Instruments, [under which] the Bank was required to give notice to Plaintiffs and class members before it was permitted to accelerate the remaining balance on their loans and initiate the foreclosure process."  FAC ¶ 187.  Plaintiffs also claim that any such notice Wells Fargo provided was inadequate, because "the Bank did not notify Plaintiffs and class members that they could cure their default and avoid acceleration and foreclosure by accepting a mortgage modification."  FAC ¶ 189; *see also id.* ("the Bank was required to offer [Plaintiffs] a mortgage modification but failed to do so").  These allegations fail on their face, because there is no such notice requirement in Plaintiffs' security instruments.

---

[9] *See e.g.,* FAC ¶ 34 (alleging that Plaintiffs could have avoided their claimed injuries "if Wells Fargo had lowered their mortgage payments as HAMP required"); ¶ 39 ("the Bank repeatedly violated HAMP"); ¶ 201 ("Wells Fargo's conduct violated HAMP"); ¶ 217 (asserting violations of HBOR:  "Wells Fargo was therefore required to offer Plaintiffs and class members the opportunity to cure their default by accepting a [HAMP] mortgage modification before it could exercise its right to foreclose[.]"); ¶ 224 (asserting violation of UCL: "Wells Fargo engaged in unlawful practices by denying mortgage modifications to Plaintiffs and class members in violation of HAMP and other governmental requirements."); and ¶ 233, 238 (asserting claims under various state consumer protection statutes: "Wells Fargo engaged in unfair practices by denying mortgage modifications to Plaintiffs and class members in violation of HAMP[.]").

1   As the First Amended Complaint admits,[10] the **only** provision of any security instrument

2   requiring Wells Fargo to give notice to borrowers before initiating foreclosure is the following,[11]

3   which states:[12]

4           Acceleration; Remedies.  Lender shall give notice to Borrower prior to
5           acceleration following Borrower's breach . . . The notice shall specify:
        (a) the default; (b) the action required to cure the default; (c) a date not
6           less than 30 days from the date the notice is given to Borrower, by which
        default must be cured; (d) that failure to cure the default on or before
7           the date specified in the notice may result in acceleration of the sums
        secured by this Security Instrument, foreclosure by judicial proceeding
8           and sale of the Property.

9   This provision plainly does not require Wells Fargo to modify Plaintiffs' mortgages, or to notify

10   them of a purported right to cure their defaults through a modification.  "Contract interpretation is a

11   question of law to be determined by the court."  *Lesa, LLC v. Family Tr. of Kimberley & Alfred*

12   *Mandel*, 2016 WL 1446770, at *4 (N.D. Cal. April 13, 2016).  "If contractual language is clear and

13   explicit and does not involve an absurdity, the plain meaning governs."  *Georgia-Pacific v.*

14   *Officemax Inc.*, 2013 WL 5273007, at *6 (N.D. Cal. Sept. 18, 2013) (internal quotation omitted).[13]

15   Here, the plain meaning of "the action required to cure default" is the amount required to bring the

16   _____

17   [10] *See* FAC ¶ 187 (paraphrasing paragraph 22 of certain Plaintiffs' security instruments).
[11] This provision—which is the only provision on which the breach of contract claim is based—is
18   not included in all of the named Plaintiffs' security instruments.  *See, e.g.*, Request for Judicial
Notice, ¶ 3 and Exhibit 3 (Demartino Deed of Trust and Hood Open-End Mortgage).  It is axiomatic
19   that any borrower whose security instrument does not contain this provision has no breach of
contract claim based upon it.
20   [12] *See* Request for Judicial Notice, ¶ 3 and Exhibit 3.
[13] Plaintiffs' Security Instruments contain a choice of law provision, which provides: "This Security
21   Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is
located. … ."  Those choice-of-law provisions are valid and enforceable, and prohibit any plaintiff
22   from pursuing claims under the laws of any state other than the state where his/her property was
located.  *See Nedlloyd Lines B.V. v. Super. Ct.*, 3 Cal. 4th 459, 466 (1992); *Lane v. Wells Fargo*
23   *Bank, N.A.*, 2013 WL 269133, at *4 (N.D. Cal. Jan. 24, 2013) (Alsup, J.) (Arkansas plaintiffs'
"contract and tort claims are based on Wells Fargo's alleged improper practices in procuring and
24   charging for unauthorized insurance and obtaining hidden profits—all claims that arise from the loan
agreement and relationship created thereby," thus, Arkansas law applies to their claims); *Cannon v.*
25   *Wells Fargo Bank, N.A.*, 917 F. Supp. 2d 1025, 1051 (N.D. Cal. 2013) (same choice of law provision
required application of Florida law to Florida plaintiffs' contract and tort claims).  However, given
26   that named plaintiffs hail from eleven different states, it is impossible for Wells Fargo to include
those various states' laws in this brief, which is limited by Local Rule 7-4 to 25 pages.  Accordingly,
27   Wells Fargo focuses on California law herein.

28

loan current.  *See DeLeon v. Wells Fargo Bank, N.A.*, 2011 WL 311376, at *7 (N.D. Cal. Jan. 28 2011) ("In order to cure the default, Plaintiffs would have had to pay [the amount in arrears] in full, plus any payment obligations that accrued after the default was recorded.").  Plaintiffs do not explain—because they cannot—how the phrase "action required to cure the default" can be read to require Wells Fargo to modify their loans or notify them of a purported right to cure their defaults through a modification.  Indeed, the Security Instrument does not reference modification at all.  Instead, it provides Wells Fargo with the absolute, contractual right to foreclose in the event of an uncured default:

> If default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding

Security Instrument, ¶ 22.  Accordingly, because the Security Instrument gave Wells Fargo the absolute right to foreclose in the event of an uncured default, and imposed no duty to modify Plaintiffs' loans, Plaintiffs' breach of contract claim fails as a matter of law.  *See, e.g., Lawther v. OneWest Bank*, 2010 WL 4936797, at *9 (N.D. Cal. Nov. 30, 2010) ("The express terms of the original loan documents supplied [plaintiff's] lender with the contractual right to foreclose upon the property in the event of default and imposed no absolute duty to modify the loan.  Accordingly, where the defendants acted consistent with the express terms of their contractual agreements, they could not have breached their implied covenants of good faith and fair dealing."); *Velasco*, 2015 WL 12746226, at *4 ("The parties' only contractual obligations are with respect to the loan, note, and deed of trust—none of which gave [plaintiff] a right to a loan modification—and thus [plaintiff] has failed to state a claim for breach of the implied covenant.  Because the contracts [at] issue do not contain the terms on which [plaintiff] relies for this claim, [the claim] is dismissed with prejudice.").

### 2.      Plaintiffs' Intentional Infliction of Emotional Distress Claim Should Be Dismissed (Count II).

In Count II, Plaintiffs purport to bring an intentional infliction of emotional distress claim ("IIED") on behalf of themselves and "all persons who resided at the subject property when Wells

Fargo denied Nationwide Class members a mortgage modification and/or foreclosed on the

property."  FAC ¶ 166.   According to Plaintiffs, Wells Fargo engaged in two outrageous acts: (1)

failing to verify or audit its mortgage modification software, allowing systemic errors to persist for

several years in violation of its 2011 OCC Consent Order; and (2) failing to promptly remedy

violations of HAMP.  FAC ¶¶ 192-94.  This claim should be dismissed.  Courts consistently find that

allegations of failed loan modifications do not support IIED claims, and, as demonstrated above,

Plaintiffs cannot enforce the OCC Consent Order or HAMP.  Moreover, Plaintiffs' attempt to assert

IIED claims on behalf of non-borrowers cannot proceed because Plaintiffs do not allege that Wells

Fargo acted with knowledge and awareness of any non-borrower putative class members.

> **a.**  **Plaintiffs' Allegations Are Insufficient as a Matter of Law.**

As demonstrated above, because Plaintiffs cannot enforce the OCC Consent Order or HAMP,

their allegations that Wells Fargo violated them cannot sustain their claims, including their IIED

claims.  *See, e.g., Jaffri*, 26 N.E. 3d at 640.  Moreover, courts find that even a purportedly wrongful

modification denial that results foreclosure cannot sustain an IIED claim.  As one court has

explained:

> The Court believes that losing a home is stressful, and the Court
> understands Plaintiff's frustration with the loan modification process.
> But Plaintiff defaulted on his loan, thereby allowing Defendants to
> foreclose, and Defendants had no legal obligation to modify Plaintiff's
> loan terms.  In view of the fact that Plaintiff makes no claim that he did
> not owe the mortgage debt, or that [he] was not in default, the Court
> cannot find the refusal to stop the foreclosure process as being
> "outrageous."

*Sykes v. Pioneer Title of Ada Cty.*, 2013 WL 587504, at *2 (D. Idaho Feb. 14, 2013); *see also*

*Robinson v. SunTrust Mortg., Inc*., 2018 WL 3731119, at *7 (N.D. Ga. May 7, 2018), *appeal*

*docketed*, No. 18-13650 (11th Cir. Aug. 28, 2018) (plaintiffs' allegation that mortgage servicer

engaged in outrageous conduct by giving them false reasons for denying them a loan modification

could not sustain an IIED claim); *Perra v. Bank of Am. Corp*., 2013 WL 2250243, at *6 (Bankr. D.

Mass. May 22, 2013) ("when a bank acts on what it believes is its right to foreclose, such action does

not rise to the level of extreme and outrageous conduct necessary to support a claim for intentional

1   infliction of emotional distress.  Even when a bank promises not to foreclose and then does so, such

2   conduct is not considered so extreme as to give rise to a claim for intentional infliction of emotional

3   distress.") (citations omitted); *Auriti v. Wells Fargo Bank, N.A.*, 2013 WL 2417832, at *8 (S.D. Tex.

4   June 3, 2013) ("even improper conduct that might in other situations constitute bad faith or

5   invalidate a foreclosure—such as allegations that the bank violated part of the loan agreement,

6   refused to negotiate, promised and then denied the plaintiff a loan modification, or that its

7   bureaucracy generally made the plaintiff's life miserable—will not support an intentional infliction

8   claim.); *Alvarez v. U.S. Bank, N.A.*, 2012 WL 2394680, at *9 (D. Mass. June 22, 2012)

9   ("foreclosures, even ones that may involve improper conduct, do not readily go beyond all possible

10  bounds of decency") (citation and internal quotation marks omitted).[14]

11       Moreover, courts have recognized that a servicer's failure to comply with lending

12  regulations—including an alleged intentional mishandling of a potential HAMP modification—is

13  insufficient to support an IIED claim.  *See Hall v. Washington Mut. Bank*, 2011 WL 13213926, at *3

14  (C.D. Cal. Jan. 3, 2011) ("It is highly unlikely that JPMorgan's alleged failure to comply with

15  lending regulations could constitute the requisite 'outrageous' conduct that is so extreme as to

16  exceed all bounds of that usually tolerated in a civilized community.") (internal quotation omitted);

17  *Jaffri*, 26 N.E. 3d at 640 (finding that even intentional mishandling of HAMP application could not

18  "constitute[ ] the type of beyond-the-pale, 'outrageous' conduct that may be covered by an IIED

19  claim.").

20       For these reasons, Plaintiffs have not alleged an IIED claim as a matter of law, and their IIED

21  claim must be dismissed.

---

22  [14] *See also McReynolds v. HSBC Bank USA*, 2012 WL 5868945, at *6 (N.D. Cal. Nov. 19, 2012)
23  (dismissing IIED claim because completing foreclosure sale before loan modification documentation
    was processed  "is insufficient to meet the 'extreme and outrageous' standard"); *Farren v. Select*
24  *Portfolio Servicing, Inc.*, 2017 WL 1063891, at *6 (E.D. Cal. Mar. 20, 2017) (dismissing IIED claim
    where plaintiffs alleged lender lost and mismanaged loan modification applications, required
25  plaintiffs to resubmit documents several times, promised not to foreclose, and then sold their home
    in foreclosure); *Sanchez v. Aurora Loan Servs., LLC*, 2014 WL 12589659, at *20 (C.D. Cal. Mar.
26  11, 2014) ("Sanchez's allegations that defendants mishandled his loan modification documents and
    promised to work with him to achieve a modification, but then initiated nonjudicial foreclosure
27  proceedings, are insufficient as a matter of law to plead extreme and outrageous conduct beyond all
    reasonable bounds of decency.").
28

1
2

     **b.**    **Non-Borrower Plaintiffs Cannot Pursue IIED Claims Against Wells Fargo.**

3       In alleging a claim for intentional infliction of emotional distress, "[i]t is not enough that the
4   conduct be intentional and outrageous.  It must be conduct directed at the plaintiff, or occur in the
5   presence of a plaintiff of whom the defendant is aware." *Christensen v. Super. Ct*., 54 Cal. 3d 868,
6   903 (1991).  For this reason, "it is not enough to show that the defendant knew or should have
7   known that there may be people in the area who might be affected by defendants' conduct."
8   *Whitlock v. Pepsi Ams.*, 681 F. Supp. 2d 1116, 1122 (N.D. Cal. 2010).

9       Here, the non-borrower Plaintiffs do not allege they were present when Wells Fargo's alleged
10  misconduct occurred and that Wells Fargo knew they were present, or that Wells Fargo acted with
11  the intent of causing them emotional distress.  Instead, they allege only that Wells Fargo "acted with
12  reckless disregard" as to its "***customers*** … who were wrongfully denied mortgage modifications and
13  foreclosed upon."  FAC ¶ 195 (emphasis added).  In other words, the non-borrower Plaintiffs
14  apparently assume they can proceed because Wells Fargo's alleged conduct was substantially certain
15  to cause extreme emotional distress to anyone who lived at the subject properties.  That is not
16  enough.  As the California Supreme Court has explained, an allegation that the defendant "had to
17  have realized that its misconduct was almost certain to cause severe emotional distress to any person
18  who might foreseeably" be affected is insufficient as a matter of law.  *Potter v. Firestone Tire &*
19  *Rubber Co*., 6 Cal. 4th 965, 1003 (1993).

20      *Christensen v. Superior Court* is instructive.  There, the plaintiffs alleged that the defendants'
21  conduct in mishandling the remains of deceased persons was intentional and outrageous and was
22  substantially certain to cause extreme emotional distress to relatives and close friends of the
23  deceased.  The California Supreme Court disagreed, and found that the IIED claim was not
24  sufficiently supported where the plaintiffs did not allege that the defendants' misconduct was
25  directed primarily at the plaintiffs, or that it was calculated to cause them severe emotional distress,
26  or that it was done with knowledge of their presence and with a substantial certainty that they would
27  suffer severe emotional injury.  54 Cal. 3d at 903; *see also McMahon v. Craig*, 176 Cal. App. 4th
28  1502, 1506, 1515-16 (2009) (dismissing an IIED claim and holding that a veterinarian's malpractice

in treating a dog and in concealing the fact that the veterinarian had caused the dog's death was not outrageous conduct that was specifically directed at the plaintiff). The same is true here, and the non-borrower Plaintiffs' IIED claim should be dismissed with prejudice. *See e.g., Martinez v. Adams,* 2010 WL 892186, at *12 (E.D. Cal. Mar. 9, 2010) (dismissing IIED claim for failure to state a claim where plaintiff merely alleged "Defendants acted with reckless disregard of the probability that Plaintiff would suffer emotional distress.").

### 3. Plaintiffs' Negligence Claims Should Be Dismissed (Count III).

In Count III, Plaintiffs bring negligence and negligence per se claims against Wells Fargo. As shown below, Plaintiffs' negligence and negligence per se claims should be dismissed because Wells Fargo did not owe Plaintiffs a duty as a matter of law and the economic loss doctrine bars the claims.

### a. Wells Fargo Did Not Owe Plaintiffs a Duty as a Matter of Law.

It is well-established that a bank does not owe a borrower a duty of care where it acts "within the scope of the conventional role of a residential lender." *Lueras v. BAC Home Loans Servicing, LP,* 221 Cal. App. 4th 49, 94 (2013). Consistent with this rule, courts routinely find that loan modification negotiations do not create a duty of care on the part of the lender or loan servicer. *See e.g., Haynish v. Bank of Am., N.A.*, 284 F. Supp. 3d 1037, 1051 (N.D. Cal. 2018) ("This Court has repeatedly considered the issue and concluded that lenders owe no duty of care in the loan modification context, even when the lender apparently agreed to consider a borrower's modification application"); *Temple v. Bank of Am., N.A.*, 2015 WL 3658834, at *4 (N.D. Cal. June 12, 2015) (lenders do not exceed their typical role as lender or involve themselves beyond the normal course of business "[b]y merely offering to review" a borrower's loan modification application).

For example, in *Toneman v. U.S. Bank, Nat'l Ass'n for Bear Stearns Asset Backed Sec. Tr. 2004-AC7*, the court aptly explained:

> Holding that a lender assumes no duty of care to borrowers merely because it engages in discussions regarding a loan modification is sound policy, since absent a duty in the first place to modify a loan or even to evaluate such an application under objective standards limiting the lender's discretion, imposing negligence liability for the mishandling of

1
2

> loan modification applications could be a disincentive to lenders from
> ever offering modification.

3   2013 WL 12132049, at *13 (internal quotation omitted); *see also Badame v. J.P. Morgan Chase*

4   *Bank, N.A.*, 641 F. App'x 707, 709-10 (9th Cir. 2016) ("[Defendant bank] did not owe Plaintiffs a

5   duty of care when considering their loan modification application because 'a loan modification is the

6   renegotiation of loan terms, which falls squarely within the scope of a lending institution's

7   conventional role as a lender of money.'") (quoting *Lueras*, 221 Cal. App. 4th at 67).

8   This Court's decision in *Ansanelli v. JP Morgan Chase Bank, N.A.*, 2011 WL 1134451 (N.D.

9   Cal. Mar. 28, 2011) (Alsup, J.), does not compel a different conclusion.  There, the plaintiffs alleged

10  that their loan servicer agreed to place them on a trial loan modification plan, guaranteeing that if

11  they made three modified payments on time, it would permanently modify their loan.  *Id*. at *1.  The

12  plaintiffs claimed that after they timely made the modified payments, the servicer nonetheless denied

13  them a permanent loan modification.  *Id*.  In declining to dismiss the plaintiffs' negligence claim,

14  this Court reasoned that by offering the plaintiffs a trial modification plan and "engag[ing] with them

15  concerning the trial period plan," it had gone "beyond the domain of a usual money lender."  *Id*. at

16  *7.  That is not the case here, where Plaintiffs allege only that Wells Fargo wrongly denied them

17  loan modifications in violation of HAMP and the OCC Consent Order.  As this Court explained in

18  *Sun v. Wells Fargo Bank, N.A.*, 2014 WL 1245299 (N.D. Cal. Mar. 25, 2014) (Alsup, J.), the

19  absence of such allegations dooms a negligence claim:

20
21
22
23
24
25

> While the undersigned judge has found that a financial institution
> actively participates in the financed enterprise beyond the domain of the
> usual money lender when it offers borrowers a loan modification and a
> trial period plan, such is not the case here. … defendants have not yet
> offered plaintiff a loan modification.  More importantly, defendants are
> not alleged to have engaged in a trial period plan that might suggest
> active participation in the financed enterprise beyond the role of a usual
> money lender. … Thus, plaintiff has failed to show that defendants have
> a fiduciary duty to her.  Plaintiff's claims for constructive fraud,
> negligent misrepresentation, and negligence are DISMISSED.

26
27
28

-15-

1    *Id.* at \*4 (citations omitted).[15]  As the foregoing demonstrates, Wells Fargo did not owe a duty to

2    Plaintiffs as a matter of law, and their negligence claims must be dismissed.

3                 **b.**      **The Economic Loss Rule Bars Plaintiffs' Negligence Claims.**

4                 Wells Fargo's lack of duty to Plaintiffs also compels the conclusion that the economic loss

5    rule bars their negligence claims.  Indeed, a tort remedy does not arise from a contractual

6    relationship unless the breaching party owes a "*separate* duty of care beyond that established by

7    contract." *ILWU-PMA Welfare Plan Bd. of Trustees v. Connecticut Gen. Life Ins. Co.*, 2015 WL

8    9300519, at \*11 (N.D. Cal. Dec. 22, 2015) (Alsup, J.) (emphasis added).

9                 As demonstrated above, when the contractual relationship is between a lending bank and a

10   borrower, the bank does not owe a duty of care to a borrower under tort law.  As one court recently

11   explained in finding that the economic loss doctrine barred a borrower's negligence claim against his

12   loan servicer: "Plaintiff asserts that Defendant acted negligently throughout the loan modification

13   process," but "Plaintiff identifies no independent duty Defendant breached. … Defendant would

14   only owe such a duty if a contract imposed one. … Because Defendant's relevant duties arose from

15   alleged agreements between the parties, the economic loss rule applies." *Salone v. Bank of Am.,*

16   *N.A.*, 2018 WL 3815041, at \*5 (N.D. Cal. June 22, 2018); *see also Yost v. Nationstar Mortg., LLC*,

17   2013 WL 4828590, at \*12 (E.D. Cal. Sept. 9, 2013) (negligence claim against servicer based upon

18   failed loan modification attempt barred by the economic loss rule).  Because Wells Fargo owed no

19

20

---

21   [15] In addition, the OCC Consent Order and the HAMP guidelines are not regulations with the force
22   of law such that they could serve as the basis for imposing liability under a negligence theory. *See,*
     *e.g.*, *Ridenhour v. Bank of Am., N.A.*, 23 F. Supp. 3d 1201, 1206 (D. Id. 2014) ("The HAMP
23   guidelines are not regulations.  Thus, they do not create legal duties, and the claim, as pled, should
     be dismissed.").  Indeed, the OCC Consent Order (which is a consent decree between Wells Fargo
24   and its regulator) and the HAMP guidelines were not subject to formal notice and comment
     rulemaking and were not published in the Federal Register, which is a requirement under the
25   Administrative Procedures Act. *See* 5 U.S.C. § 553.  "Legislative rules that impose new duties upon
     the regulated party have the force and effect of law and must be promulgated in accordance with the
26   proper procedures under the Administrative Procedures Act." *Chao v. Rothermel*, 327 F.3d 223, 227
     (3d Cir. 2003). As a result, HAMP guidelines, and the OCC Consent Order, "lack[] the force or
27   effect of law" and cannot underpin Plaintiffs' claims. *San Joaquin Cmty. Hosp. v. Thompson*, 2002
     WL 34596496, at \*9 (E.D. Cal. Aug. 13, 2002).
28

duties to Plaintiffs outside their contractual relationship, the economic loss doctrine bars their negligence claims, and Count III should be dismissed.

### 4.   Plaintiffs' Wrongful Foreclosure Claim Should Be Dismissed (Count IV).

Mirroring their breach of contract claim, Plaintiffs purport to bring wrongful foreclosure claims on behalf of putative California and Georgia subclasses, based on their allegation that "[t]he foreclosure was unlawful and/or unfair because Wells Fargo did not first notify Plaintiffs … that they could cure their default by accepting a mortgage modification." FAC ¶¶ 206, 212.  These claims fail for the same reasons that Plaintiffs' breach of contract claim fails.

First, as set forth extensively above, lenders and loan servicers have no legal duty modify borrowers' loans, whether under HAMP or otherwise.  *See Toneman*, 2013 WL 12132049, at *5 ("Numerous courts have concluded that a lender has no obligation to modify eligible loans prior to foreclosing."); *Pantoja v. Countrywide Home Loans, Inc*., 640 F. Supp. 2d 1177, 1188 (N.D. Cal. 2009) ("the Court finds that Defendants are entitled to a dismissal of Plaintiff's wrongful foreclosure claim because under California law, Defendants do not owe Plaintiff a statutory duty to modify his loan"); *Gardner v. Am. Home Mortg. Servicing, Inc.*, 691 F. Supp. 2d 1192, 1203 (E.D. Cal. 2010) ("Plaintiff's allegation that Defendants violated [HAMP] by refusing to suspend the foreclosure sale, fails to state a wrongful foreclosure claim"); *Williams v. Wells Fargo Bank, N.A.*, 2012 WL 13014956, at *3 (N.D. Ga. Sept. 18, 2012) (Georgia wrongful foreclosure claim dismissed because "[t]he only breach of duty that plaintiff alleges is the duty to provide a HAMP modification, which is not actionable").

Moreover, nothing in Plaintiffs' Security Instruments required Wells Fargo to modify Plaintiffs' loans, or to notify them of the potential to cure their default through loan modification. To the contrary, the Security Instruments do not mention modification at all, and they gave Wells Fargo the absolute right to foreclose in the event of an uncured default.  Security Instrument, ¶ 22. Accordingly, Plaintiffs' "wrongful foreclosure" claims fail on their face and should be dismissed with prejudice.  *See, e.g., Bernard v. Deutsche Bank Nat'l Tr. Co*., 2016 WL 5346376, at *9 n.18 (N.D. Ga. June 1, 2016) ("To the extent plaintiff's breach of contract and wrongful foreclosure

claims are based on his suggestion that defendants agreed to a loan modification but then refused to modify his loan, plaintiff has failed to point to any specific contract that was breached … seeking a loan modification does not give [p]laintiff a cause of action for wrongful foreclosure, and he has simply failed to identify any contractual provision that defendants breached") (citations and internal quotation marks omitted), *vacated on other grounds*, 2019 WL 1323602 (N.D. Ga. Jan. 25, 2019); *Love v. Bank of Am., N.A.*, 2014 WL 1292652, at *4 (N.D. Ga. Mar. 31, 2014) ("Failure to make the proper loan payments or tender the amount due defeats any wrongful foreclosure or attempted wrongful foreclosure claims.").

### 5.   Plaintiffs' California Homeowner Bill of Rights Claim (Count V) is Defective and Should Be Dismissed.

In Count V, Plaintiffs allege that Wells Fargo violated Cal. Civ. Code § 2924.17 of the HBOR, which provides that "[b]efore recording or filing [a declaration or foreclosure related notice (*i.e.*, notice of default, notice of sale, substitution of trustee, assignment of deed of trust)], a mortgage servicer shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information." Cal. Civ. Code § 2924.17(b). As courts have observed, "[t]h[is] provision is intended to prevent 'robo-signing,' which occurs when persons sign a document without personal knowledge of the content attested to therein and/or sign the documents without the requisite authority to do so." *Mills v. JPMorgan Chase Bank, N.A.*, 2016 WL 6896571, at *3 (E.D. Cal. Nov. 23, 2016) (citations and internal quotation marks omitted); *Marquez v. Wells Fargo Bank, N.A.*, 2013 WL 5141689, at *5 (N.D. Cal. Sept. 13, 2013) ("Section 2924.17 prohibits the practice of robo-signing, in which servicers sign foreclosure documents without determining the right to foreclose."); *Kaurloto v. U.S. Bank, N.A.*, No. 16-CV-06652-JFW-GJSX, 2016 WL 6808117, at *5 (C.D. Cal. Nov. 17, 2016) (same).

Indeed, courts have dismissed claims under Section 2924.17 where plaintiffs have "failed to articulate a legal theory to which any robo-signing claims are relevant." *See, e.g.*, *Kaurloto*, 2016 WL 6808117, at *5; *Marquez*, 2013 WL 5141689, at *5 (dismissing Section 2924.17 claim because plaintiffs did not complain that defendants engaged in robo-signing).

1    Here, Plaintiffs allege that Wells Fargo violated HBOR's Section 2924.17 because its

2    modification software "was not reliable" and therefore Plaintiffs' "loan information did not support

3    Wells Fargo's right to foreclose." FAC ¶ 217. But Plaintiffs never allege that Wells Fargo

4    "sign[ed] a document without personal knowledge of the content attested to therein" or "sign[ed] the

5    documents without the requisite authority to do so." *Mills*, 2016 WL 6896571, at *3 (citations and

6    quotation marks omitted). Indeed, the FAC is completely devoid of any allegation that Wells Fargo

7    engaged in robo-signing in violation of HBOR's Section 2924.17. Plaintiffs' reliance on HBOR

8    claim is misplaced, and the claim should be dismissed with prejudice.[16]

9    ### 6.    The Court Should Dismiss Plaintiffs' UCL Claim (Count VI).

10   California Business and Professions Code §17200 prohibits unlawful, unfair or fraudulent

11   business acts or practices and unfair, deceptive, untrue or misleading advertising. "Because Business

12   and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of

13   unfair competition-acts or practices which are unlawful, or unfair, or fraudulent." *Cel-Tech*

14   *Comm'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 181 (1999). In the FAC, Plaintiffs appear

15   to premise their UCL claims solely on the "unlawful" and "unfair" prongs of the UCL.

16   "By proscribing 'any unlawful' business practice, [the UCL] borrows violations of other laws

17   and treats them as unlawful practices that the unfair competition law makes independently

18   actionable." *Cel-Tech Commc'ns*, 20 Cal. 4th at 165. Because "a violation of another law is a

19   predicate for stating a cause of action under the UCL's unlawful prong[,]" "[i]f the borrowed

20   violations of law or predicate claims lack merit, then the unfair competition claim necessarily fails."

21   *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007); *Portney v. CIBA Vision*

22   *Corp.*, 2009 WL 305488, at *7 (C.D. Cal. Feb. 6, 2009); *Vargas v. JP Morgan Chase Bank, N.A.*,

23   2014 WL 3435628, at *5 (C.D. Cal. July 11, 2014) ("If unable to state a claim for the underlying

24   offense, the plaintiff similarly cannot state a claim under UCL for unlawful practices."). Here,

25

26   [16] Section 2924.17 came into effect on January 1, 2013 and is not retroactively applied. *See*
     *Dahnken v. Wells Fargo Bank, N.A.*, 2014 WL 523382, at *2 (N.D. Cal. Feb. 6, 2014), *aff'd sub*
27   *nom. Dahnken v. Wells Fargo Bank, NA*, 705 F. App'x 508 (9th Cir. 2017). Thus, to the extent the
     FAC alleges conduct in violation of 2924.17 that took place before 2013, Plaintiffs' HBOR claims
28   fail as a matter of law on this additional ground.

1   Plaintiffs allege that Wells Fargo "engaged in unlawful practices by denying mortgage modifications

2   [...] in violation of HAMP and other governmental requirements."  FAC ¶ 224.   As set forth in

3   Section III.B, *supra*, Plaintiffs cannot base their UCL claim on purported violations of HAMP.

4   Indeed, courts repeatedly have dismissed unfair competition claims that were "based upon violations

5   of ... HAMP."  *Aleem v. Bank of Am.*, 2010 WL 532330, at *4 (C.D. Cal. Feb. 9, 2010); *Bunce v.*

6   *Ocwen Loan Servicing, LLC*,  2013 WL 3773950, at *7 n.2  (E.D. Cal. July 17, 2013) (rejecting

7   a UCL claim based upon HAMP violation because "there is no private cause of action

8   under HAMP" and "'[a] court may not allow a plaintiff to plead around an absolute bar to relief

9   simply by recasting the cause of action as one for unfair competition'") (quoting *Chabner v. United*

10   *Omaha Life Ins. Co.,* 225 F.3d 1042, 1048 (9th Cir. 2000)).  Nor can Plaintiffs proceed under the

11   UCL based upon allegations that Wells Fargo violated the OCC Consent Order.  *See, e.g., Nguyen v.*

12   *Aurora Loan Servs., LLC*, 2011 WL 13234276, at *4 (C.D. Cal. Dec. 5, 2011) (plaintiff could not

13   pursue "unlawful" UCL claim based on defendant's alleged violations of consent order with its

14   regulator, because the consent order (like the OCC Consent Order at issue here) expressly prohibited

15   its use by private parties in legal proceedings).  Therefore, Plaintiffs fail to state a claim under the

16   UCL's "unlawful" prong.[17]

17   Regarding Plaintiffs' "unfair" UCL claim, as courts have noted, "[t]he proper definition of

18   'unfair' conduct against consumers 'is currently in flux' among California courts."  *In re Adobe Sys.,*

19   *Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1226 (N.D. Cal. 2014)).  Some courts apply a balancing

20   test, which requires courts to "weigh the utility of the defendant's conduct against the gravity of the

21   harm to the alleged victim."  *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012)

22   (internal quotation marks omitted).  Others have held that "unfairness must be tethered to some

23   legislatively declared policy or proof of some actual or threatened impact on competition," which is

24   known as the "public policy" test. *Lozano v. AT&T Wireless Servs., Inc*., 504 F.3d 718, 735 (9th

25

26   [17] In addition, as set forth in footnote 14 above, because HAMP and the OCC Consent Order do not

27   have the force of law, it is improper to base an "unlawful" UCL claim on them.  *See Janda v. T-Mobile, USA, Inc.*, 2009 WL 667206, at *8 n.9 (N.D. Cal. Mar. 13, 2009), *aff'd*, 378 F. App'x 705

28   (9th Cir. 2010).

Cir. 2007) (internal quotation marks omitted).  Yet other courts have applied what is referred to as an "FTC" test, which requires facts establishing that "the consumer injury is substantial, is not outweighed by any countervailing benefit to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided." *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1137 (N.D. Cal. 2010) (internal quotation marks omitted).  Here, Plaintiffs allege that Wells Fargo "engaged in unfair practices by failing to properly verify or audit the automated software it used to determine whether Plaintiffs and class members were eligible for a mortgage modification" and "by failing to properly oversee the Bank's compliance with HAMP and other governmental requirements."  FAC ¶ 225-26.  Plaintiffs further allege that the utility of Wells Fargo's verification, auditing, and oversight practices are outweighed by the harm to the consumers and that the practices "run afoul of the public policies underlying HAMP and [HBOR]."  FAC ¶ 27.

These allegations are insufficient to allege that Wells Fargo conduct meets any of the three standards applied by California courts.  Plaintiffs fail to demonstrate how Wells Fargo's "fail[ure] to properly verify or audit the automated software" and "to oversee the Bank's compliance with HAMP" meets the balancing and FTC tests, given that, as set forth above, Wells Fargo owed no duty of oversight to Plaintiffs to properly verify or audit the automated software.  *See Das v. WMC Mortg. Corp.*, 831 F. Supp. 2d 1147, 1161 (N.D. Cal. 2011) (plaintiff failed to state a claim under the unfair prong on ground that "lenders do not owe borrowers a duty of care during the loan qualification process because it is an arm's length transaction") (citing *Kurek v. Am.'s Wholesale Lender,* 2011 WL 3240482, at *3 (N.D. Cal. July 28, 2011).  Nor did Wells Fargo owe Plaintiffs any duty to modify their loans under HAMP (or their Security Instruments, for that matter).  *See Aranda v. CitiMortgage Inc.*, 2013 WL 12182677, at *4 (C.D. Cal. May 13, 2013) (because there "is no legal duty for a lending institution to offer a loan modification, failure to do so is not an unfair business practice" under the UCL's unfair prong).  Plaintiffs' tethering allegations also do not support an "unfair" prong claim under the public policy test.  First, as set forth above, Plaintiffs may not premise a UCL claim on HAMP.  *Flores v. Wells Fargo Bank, N.A.*, 2012 WL 2427227, at *8 (N.D. Cal. June 26, 2012) (UCL claim dismissed where plaintiff "tether[ed] their Unfair Business Practices allegations to the HAMP claim").  Second, the policy underlying Plaintiffs' HBOR claim is

1    to prevent robo-signing, which, as discussed above, Plaintiffs do not allege Wells Fargo did. *See*

2    *Mills*, 2016 WL 6896571, at *3 (section 2924.17 is designed to prevent "robo-signing").

3           Lastly, Plaintiffs' UCL claim must fail because it is premised on the same defective theories

4    as their other claims.  Because each claim fails for the various reasons explained herein, Plaintiff's

5    UCL claim must also fail. *See Cabanilla v. Wachovia Mortg*., 2012 WL 13020028, at *4 (C.D. Cal.

6    Mar. 20, 2012) (claim for unlawful, unfair, and fraudulent business practices in violation of

7    California's UCL failed where it was premised on the same conduct that formed the basis of

8    deficient claims for negligent implementation of the HAMP, breach of contract, among others);

9    *Rubin v. Wal-Mart Stores, Inc.*, 599 F. Supp. 2d 1176, 1179 (N.D. Cal. 2009) (where a UCL claim is

10   predicated on other claims that fail, the UCL claim must be dismissed as well) (same); *Toneman*,

11   2013 WL 12132049, at *20-22 (C.D. Cal. Oct. 21, 2013) (same).

12          **7.      The Court Should Dismiss Plaintiffs' Various State Consumer Protection**

13                   **Claims (Count VII).**

14          In Count VII, Plaintiffs purport to bring claims under the Illinois Consumer Fraud Act, the

15   Maryland Consumer Protection Act and Consumer Debt Collection Act, the New Jersey Consumer

16   Fraud Act, Section 349(a) of New York's General Business Law, and the Pennsylvania Unfair Trade

17   Practices and Consumer Protection Law, all based on the same allegations of wrongful HAMP

18   denials and purported audit and testing failures.  FAC ¶¶ 231-262.  These claims fail because, as set

19   forth extensively above, Plaintiffs cannot enforce the OCC Consent Order or HAMP, they admit

20   they defaulted on their loans, and the Security Instruments gave Wells Fargo the contractual right to

21   foreclose.  As one court has explained:

22                  The thrust of [Plaintiff's] [unfair debt collection] allegations is her
                    assertion that "by filing debt collection foreclosure proceedings and/or
23                  conducting foreclosure sales without first complying with the
                    prerequisites of the Fannie Mae HAMP program or … based upon
24                  bogus or insufficient papers and affidavits through [foreclosure
                    counsel], [the servicer] has asserted a claim with knowledge that the
25                  right to foreclose does not exist. … because the HAMP program does
                    not confer a private right of action, [plaintiff] may not sue to enforce its
26                  guidelines.  Therefore, even assuming [servicer] did not abide by
                    HAMP's guidelines, and that [foreclosure counsel] filed improper
27                  foreclosure documents, [servicer's] right to foreclose came about when
28

1

2

3

4

> [plaintiff] defaulted on her mortgage.  [Servicer's] alleged failure to
> abide by HAMP's guidelines, and [foreclosure counsel's] alleged filing
> of improper foreclosure documents do not change the fact that [plaintiff]
> defaulted on her mortgage in August 2009. As a result, [plaintiff] has
> not shown that [servicer] claimed, attempted, or threatened to enforce a
> right with knowledge that the right [did] not exist.

5

*Stovall v. SunTrust Mortg., Inc*., 2011 WL 4402680, at *9 (D. Md. Sept. 20, 2011); *see also e.g.,*

6

*Sheard v. Bank of Am., N.A*., 2012 WL 3025119, at *3 (D. Md. July 23, 2012) ("to properly allege a

7

claim under the [Maryland Consumer Fraud Act], [plaintiff] must point to an agreement between

8

herself and [her lender] separate and apart from HAMP"); *Keosseian v. Bank of Am*., 2012 WL

9

458470, at *2 (D.N.J. Feb. 10, 2012) (dismissing New Jersey Consumer Fraud Act claim based on

10

allegations that servicer denied plaintiff's loan modification request in violation of HAMP because

11

borrowers have no standing under HAMP).

12

## IV.    CONCLUSION

13

For the foregoing reasons, Wells Fargo Bank, N.A. respectfully requests that the Court

14

dismiss Plaintiffs' First Amended Complaint in its entirety, with prejudice.

15

16

Dated: March 28, 2019                    WINSTON & STRAWN LLP

17

By:   */s/ Amanda L. Groves*
18
Amanda L. Groves
Morgan E. Stewart
19
Kobi K. Brinson (Admitted *pro hac vice*)
Stacie C. Knight (Admitted *pro hac vice*)

20

Attorneys for Defendant
WELLS FARGO BANK, N.A.

21

22

23

24

25

26

27

28