Amanda L. Groves (SBN: 187216)
agroves@winston.com
Morgan E. Stewart (SBN: 321611)
mstewart@winston.com
**WINSTON & STRAWN LLP**
101 California Street, 35th Floor
San Francisco, CA 94111
Telephone:    (415) 591-1000
Facsimile:    (415) 591-1400

Kobi K. Brinson (Admitted *pro hac vice*)
kbrinson@winston.com
Stacie C. Knight (Admitted *pro hac vice*)
sknight@winston.com
**WINSTON & STRAWN LLP**
300 South Tryon Street, 16th Floor
Charlotte, NC 28202
Telephone:    (704) 350-7700
Facsimile:    (704) 350-7800

Attorneys for Defendant
WELLS FARGO & COMPANY

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ALICIA HERNANDEZ, *et al*., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO & COMPANY and WELLS FARGO BANK, N.A.,<br><br>Defendants. | No. 3:18-cv-07354 WHA<br><br>**DEFENDANT WELLS FARGO & COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: June 13, 2019<br>Time: 8:00 a.m.<br>Courtroom: 12<br>Judge: Hon. William H. Alsup |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on June 13, 2019 at 8:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 12 of the above-entitled court, located at 450 Golden Gate Avenue, San Francisco, California, Defendant Wells Fargo & Company will and hereby does move the Court to dismiss Plaintiffs' First Amended Class Action Complaint (the "FAC") with prejudice pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of standing and failure to state a claim upon which relief can be granted.

Specifically, Wells Fargo & Company seeks dismissal of the First Amended Complaint on the bases that Plaintiffs lack standing to bring any claims against Wells Fargo & Company, an entity with whom they have no relationship whatsoever and which owed no duties to Plaintiffs as a matter of law.  Additionally, Plaintiffs' claims each separately fail for several different reasons.  This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, and the record in this action, and any other written or oral submission that may be presented at or before the hearing on this motion.

Dated: May 7, 2019                    Respectfully submitted,

                                                    **WINSTON & STRAWN LLP**

                                                    By: /s/ *Amanda L. Groves*

                                                    Amanda L. Groves (SBN: 187216)
                                                    agroves@winston.com
                                                    Morgan E. Stewart (SBN: 321611)
                                                    mstewart@winston.com
                                                    101 California Street, 35th Floor
                                                    San Francisco, CA  94111-5802
                                                    Telephone:     (415) 591-1000
                                                    Facsimile:     (415) 591-1400

                                                    Kobi K. Brinson (Admitted *pro hac vice*)
                                                    kbrinson@winston.com
                                                    Stacie C. Knight (Admitted *pro hac vice*)
                                                    sknight@winston.com
                                                    300 South Tryon Street, 16th Floor
                                                    Charlotte, NC 28202
                                                    Telephone:     (704) 350-7700
                                                    Facsimile:     (704) 350-7800

                                                    *Attorneys for Defendant*
                                                    WELLS FARGO & COMPANY

## TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................... 1

II.   PLAINTIFFS' ALLEGATIONS .............................................................................. 1

III.  LEGAL ARGUMENT ............................................................................................. 3

    A.   Plaintiffs Have Not Alleged and Cannot Allege the Holding Company is
         Responsible for the Alleged Actions of its Subsidiary, the Bank. .................................. 3

    B.   All of Plaintiffs' Claims Against the Holding Company Fail Under Rule
         12(b)(6). ................................................................................................................. 6

         1.   Plaintiffs' Intentional Infliction of Emotional Distress Claim Should Be
            Dismissed (Count II). ........................................................................................ 6

            a.   Plaintiffs' Admissions Foreclose Their IIED Claim Against the Holding
                Company. .............................................................................................. 6

            b.   Plaintiffs Cannot Rely on the OCC Consent Order or HAMP to
                Underpin Their IIED Claim Against the Holding Company. ......................... 7

         2.   Plaintiffs' Negligence Claim Fails Because the Holding Company Owed No
            Duties to Plaintiffs, With Whom It Had No Relationship Whatsoever
            (Count III) ......................................................................................................... 8

         3.   Plaintiffs' Wrongful Foreclosure Claim Should Be Dismissed Because the
            Holding Company Was Not a Party to the Contracts Underlying This
            Claim (Count IV). ............................................................................................. 10

         4.   Plaintiffs' California Homeowner Bill of Rights Claim (Count V) is
            Defective and Should Be Dismissed. ............................................................... 10

         5.   The Court Should Dismiss Plaintiffs' UCL Claim (Count VI). ............................ 11

         6.   The Court Should Dismiss Plaintiffs' Various State Consumer Protection
            Claims (Count VII). .......................................................................................... 13

IV.   CONCLUSION ........................................................................................................ 14

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Adobe Sys., Inc. Privacy Litig.*,
66 F. Supp. 3d 1197 (N.D. Cal. 2014) ........................................................................11

*Berryman v. Merit Prop. Mgmt., Inc.*,
152 Cal. App. 4th 1544 (2007) ..................................................................................11

*Bily v. Arthur Young & Co.*,
3 Cal. 4th 370 (1992) ..................................................................................................8

*Cabanilla v. Wachovia Mortg.*,
2012 WL 13020028 (C.D. Cal. Mar. 20, 2012) ........................................................13

*Cel-Tech Comm'ns, Inc. v. L.A. Cellular Tel. Co.*,
20 Cal. 4th 163 (1999) ..............................................................................................11

*Christensen v. Super. Ct.*,
54 Cal. 3d 868 (1991) ..................................................................................................6

*Das v. WMC Mortg. Corp.*,
831 F. Supp. 2d 1147 (N.D. Cal. 2011) ....................................................................12

*Davis v. HSBC Bank Nev., N.A.*,
691 F.3d 1152 (9th Cir. 2012) ..................................................................................11

*Flores v. Wells Fargo Bank, N.A.*,
2012 WL 2427227 (N.D. Cal. June 26, 2012) ..........................................................12

*Fontaine v. JPMorgan Chase Bank, N.A.*,
42 F. Supp. 3d 102 (D.D.C. 2014) ..............................................................................7

*Henrietta E. Willis Revocable Trust v. Wells Fargo Bank, N.A.*,
2014 WL 12596430 (C.D. Cal. Nov. 10, 2014) ..........................................................9

*Hogan v. Jacobson*,
823 F.3d 872 (6th Cir. 2016) ......................................................................................9

*Jaffri v. JPMorgan Chase Bank, N.A.*,
26 N.E.3d 635 (Ind. Ct. App. 2015) ........................................................................8, 9

*Johnson v. Raytheon Co., Inc.*,
245 Cal. Rptr. 3d 282 (2019) ......................................................................................8

*Karen Kane, Inc. v. Bank of Am.*,
67 Cal. App. 4th 1192 (1998) ......................................................................................8

*Lozano v. AT&T Wireless Servs., Inc.*,
    504 F.3d 718 (9th Cir. 2007) ...................................................................................12

*Newton v. Am. Debt Servs., Inc.*,
    75 F. Supp. 3d 1048 (N.D. Cal. 2014) .....................................................................12

*Portney v. CIBA Vision Corp.*,
    2009 WL 305488 (C.D. Cal. Feb. 6, 2009)...............................................................11

*Pullen v. Victory Woodwork, Inc.*,
    2007 WL 1847633 (E.D. Cal. June 27, 2007) ...........................................................9

*Rubin v. Wal-Mart Stores, Inc.*,
    599 F. Supp. 2d 1176 (N.D. Cal. 2009) ....................................................................13

*Sanguinetti v. CitiMortgage, Inc.*,
    2013 WL 4838765 (N.D. Cal. Sept. 11, 2013) ...........................................................7

*Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*,
    49 Cal. App. 4th 472 (1996) ......................................................................................8

*Tietsworth v. Sears*,
    720 F. Supp. 2d 1123 (N.D. Cal. 2010) ....................................................................12

*Toneman v. U.S. Bank, Nat'l Ass'n*,
    2013 WL 12132049 (C.D. Cal. Oct. 21, 2013)..........................................................13

*United States v. FMC Corp.*,
    531 F.3d 813 (9th Cir. 2008) ......................................................................................7

*Vargas v. JP Morgan Chase Bank, N.A.*,
    2014 WL 3435628 (C.D. Cal. July 11, 2014) ...........................................................11

*Vásquez-Robles v. CommoLoCo, Inc.*,
    757 F.3d 1 (1st Cir. 2014)...........................................................................................9

*Velasco v. Wells Fargo Bank*,
    2015 WL 12746226 (C.D. Cal. Jan. 8, 2015) .............................................................9

*Whitlock v. Pepsi Ams.*,
    681 F. Supp. 2d 1116 (N.D. Cal. 2010) ......................................................................6

**Statutes**

12 U.S.C. § 5201 *et seq.*.................................................................................................7

12 U.S.C. § 5219.............................................................................................................8

Cal. Civ. Code § 2924.17(b) .........................................................................................10

California Business and Professions Code § 17200 ...........................................................................11

1

## I.   INTRODUCTION

2
     Relying on a government consent order they do not have standing to enforce, Plaintiffs

3
purport to bring a nationwide class action against Wells Fargo & Company, a holding company with

4
which they have no relationship whatsoever.  As Plaintiffs admit, as a holding company, Wells

5
Fargo & Company (the "Holding Company") does not originate or service mortgage loans, had no

6
contracts with Plaintiffs, and did not refuse to modify their loans.  Indeed, Plaintiffs' decision to sue

7
the Holding Company appears to have been prompted by their desire to avoid a transfer of this

8
action to the Southern District of Iowa, and not by any actual legal claims they have against it.  As

9
shown herein, they have none.  All of Plaintiffs' claims against the Holding Company fail as a

10
matter of law and the Court should dismiss the First Amended Complaint with prejudice.

11

## II.   PLAINTIFFS' ALLEGATIONS

12
     Plaintiffs' claims arise out of mortgage loans serviced by Wells Fargo Bank, N.A. (the

13
"Bank").  FAC ¶¶ 33, 70-160.  Plaintiffs admit that, as a result of various financial hardships, they

14
were not able to meet their mortgage obligations and defaulted on their loans.  *Id*.  According to

15
Plaintiffs, they sought loan modifications from the Bank (which would have provided a three-month

16
trial modification and—if the trial payments were made—a permanent loan modification).  *See id*.

17
And although the First Amended Complaint generally references "mortgage loan modification or

18
repayment plan[s] pursuant to the requirements of government-sponsored enterprises (such as Fannie

19
Mae and Freddie Mac), the Federal Housing Administration (FHA), … or any other governmental

20
entity or program," FAC ¶ 161, the First Amended Complaint identifies only one specific loan

21
modification program: the U.S. Department of Treasury's now-ended Home Affordable

22
Modification Program ("HAMP").  *See, e.g.*, FAC ¶¶ 31, 34, 43, 173, 194, 201, 224, 226, 233, 238.

23
Plaintiffs allege that the Bank denied their applications due to a calculation error in its modification

24
software, which was publicly disclosed in 2018.  FAC ¶¶ 33, 64-67.  Without alleging that they

25
found new jobs or had enough income that would have allowed them to successfully participate in

26
either a trial or permanent modification, Plaintiffs allege this error resulted in foreclosure of some of

27
their properties.  FAC ¶¶ 33, 70-160.  As Plaintiffs also allege, following public disclosure of the

28
software error in the fall of 2018, the Bank began a voluntary remediation program to assist affected

borrowers.  FAC ¶¶ 64-67.  Plaintiffs acknowledge they participated in that process.  FAC ¶¶ 75, 85, 91, 99, 107, 119, 127, 134, 142, 149, 159.

A few months after receiving payment through that process, Plaintiff Alicia Hernandez filed her original Complaint, asserting various claims against the Bank, all based on the Bank's alleged failure to comply with HAMP.  Dkt. No. 1, ¶¶ 81-119.  On December 31, 2019 the Bank filed a motion to transfer venue, explaining that the action should be transferred to the Southern District of Iowa because the parties, the witnesses, and evidence were not located in this district, or in California, for that matter, but instead were located in Iowa.  Plaintiff Hernandez responded by filing the First Amended Complaint, which added the California-based Holding Company as a defendant, along with fifteen new putative class representatives and nine new causes of action.  Although the First Amended Complaint doubles down on the efforts to enforce HAMP (*see, e.g.*, FAC ¶¶ 161, 189, 201, 224, 223), Plaintiffs also contend that the Bank and the Holding Company's Board of Directors violated two 2011 consent orders with the Office of the Comptroller of the Currency ("OCC"), which required them to "maintain adequate governance and controls to ensure compliance with HAMP; to engage in ongoing testing for compliance with HAMP; and to ensure that the Bank's mortgage modification and foreclosure practices were regularly reviewed and any deficiencies promptly detected and remedied."  FAC ¶ 43.  Plaintiffs claim that these violations led to them being denied loan modifications and caused a variety of alleged injuries.  *See, e.g.*, FAC ¶¶ 5, 39.

Based on those allegations, Plaintiffs assert claims for intentional infliction of emotional distress, negligence, wrongful foreclosure, violations of California's Homeowner Bill of Rights ("HBOR"), violations of California's Unfair Competition Law ("UCL"), and violations of various state consumer protection laws.  Plaintiffs bring each of these claims against both defendants, with no allegations distinguishing between them: (1) the Bank, which serviced Plaintiffs' loans; and (2) the Holding Company, a bank holding company with which Plaintiffs allege no dealings or relationship whatsoever.  Plaintiffs' lack of relationship with the Holding Company is confirmed by its omission from their breach of contract claim.  FAC ¶¶ 184-190.

III.   **LEGAL ARGUMENT**

A.   **Plaintiffs Have Not Alleged and Cannot Allege the Holding Company is Responsible for the Alleged Actions of its Subsidiary, the Bank.**

Despite its 262 paragraphs, the First Amended Complaint makes only three allegations against the Holding Company:

(1)   Defendant [Holding Company] is a Delaware corporation headquartered in San Francisco, California, and a registered bank holding company that owns and controls Defendant [Bank].[1]

(2)   [T]he Bank and [the Holding Company] shared responsibility for ensuring that the Bank's operations were properly tested to ensure compliance with HAMP and other government requirements, with ultimate responsibility lying with [the Holding Company's] Board of Directors, and its Audit & Examination Committee in particular.  There also exists a high-degree of built-in overlap between the two defendants due to the fact that [the Holding Company] owns and controls the Bank, and that the Bank directors responsible for ensuring compliance with HAMP and other government requirements were also [Holding Company] executives and/or directors.

(3)   "Wells Fargo" agreed to correct these deficiencies in two 2011 consent orders, one of which was signed by the Bank's Board of Directors (all of whom were also officers and/or directors of [the Holding Company]), and the other of which was signed by [the Holding Company] pursuant to a resolution passed by [the Holding Company's] Board of Directors.

FAC ¶¶ 27, 29, 42.  Plaintiffs apparently believe these allegations are sufficient to make the Holding Company liable for the alleged actions of its subsidiary, the Bank.  Indeed, the remaining 259 paragraphs of the First Amended Complaint lump the Holding Company and the Bank together, making all allegations against them as a whole as if they are one in the same, referencing them as "Wells Fargo."  They are not one and the same, and Plaintiffs' allegations fall far short of establishing the parent company is liable for the purported actions of its subsidiary.

---

[1] Plaintiffs' conclusory allegation of "control" is incompatible with the remainder of their allegations, which claim the opposite of control: that the Holding Company did not exercise enough oversight of the Bank.

1    A parent company, of course, is not automatically liable for the acts of its subsidiaries.  *See*

2    *United States v. Bestfoods*, 524 U.S. 51, 68 (1998) ("It is a general principle of corporate law deeply

3    ingrained in our economic and legal systems that a parent corporation … is not liable for the acts of

4    its subsidiaries.") (internal quotation marks and parenthetical omitted).  To avoid this general rule,

5    the First Amended Complaint apparently attempts to allege an "alter ego" theory.  This theory does

6    allow a plaintiff to "pierce the corporate veil," but only if the plaintiff alleges "specific facts

7    supporting both of the necessary elements[:]" first, that "there is such a unity of interest and

8    ownership that the individuality, or [corporate] separateness, of the said person and the corporation

9    has ceased," and second, that "an adherence to the fiction of the separate existence of the corporation

10    would [] sanction a fraud or promote injustice."  *The Travelers Indem. Co. of Conn. v. Pulte Grp.,*

11    *Inc.*, 2019 WL 1915760, at *8-9 (C.D. Cal. Apr. 26, 2019) (citation and internal quotation marks

12    omitted).  Conclusory allegations of alter ego status are inadequate; instead, the "plaintiff must

13    allege specifically both of the elements of alter ego liability, as well as facts supporting each."

14    *Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1040-41 (N.D. Cal. 2014) (citation omitted).

15    Plaintiffs' allegations come nowhere close to this standard.  Regarding the Holding

16    Company's alleged "control" of the Bank, Plaintiffs allege no facts supporting the allegation,

17    rendering it woefully insufficient.  *Quigley v. Verizon Wireless*, 2012 WL 1945784, at *4 (N.D. Cal.

18    May 30, 2012) ("broad allegations of control, standing alone, are not sufficient to meet the Rule 8

19    standard laid out in *Twombly* and *Iqbal*"); *SPECS Surface Nano Analysis GmbH v. Kose*, 2011 WL

20    2493722, at *2 (N.D. Cal. June 23, 2011) (allegation that defendant "has directed and controlled and

21    continues to direct and control" its subsidiary was "insufficient to support [the] [p]laintiff's alter ego

22    claim"); *cf. B & R Supermarket, Inc. v. Visa, Inc.*, 2016 WL 5725010, at *10 (N.D. Cal. Sept. 30,

23    2016) (Alsup, J.) ("plaintiffs' allegations that the issuing-bank defendants continue to control Visa

24    and MasterCard are vague and conclusory" and cannot support a conspiracy claim).

25    Likewise, alleging that the Holding Company "owns" the Bank is insufficient.  The Ninth

26    Circuit has held that "[t]he mere fact of sole ownership and control does not eviscerate the separate

27    corporate identity that is the foundation of corporate law."  *Katzir's Floor & Home Design, Inc. v.*

28    *M-MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004).  Indeed, "[e]ven if the [owner company] is

1    entitled to all of the corporation's profits, and dominated and controlled the corporation, that fact is

2    insufficient by itself to make the [owner] personally liable." *Id*.; *see also Leek v. Cooper*, 194 Cal.

3    App. 4th 399, 415 (2011) ("allegation that a person owns all of the corporate stock and makes all of

4    the management decisions is insufficient to cause the court to disregard the corporate entity").

5         Nor does sharing (unspecified) "executives and/or directors" render a parent liable for its

6    subsidiary's alleged acts.  Instead, "[i]t is entirely appropriate for directors of a parent corporation to

7    serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation

8    to liability for its subsidiary's acts." *Sonora Diamond Corp. v. Super. Ct*., 83 Cal. App. 4th 523, 549

9    (2000); *see also Saaiman v. Am. Gen. Life Ins. Co*., 2019 WL 1864858, at *4 (S.D. Cal. Apr. 25,

10   2019).  The Ninth Circuit has weighed in on this subject as well, holding that total ownership and

11   shared management personnel "are alone insufficient to establish the requisite level of control"

12   required to support an alter ego theory.  *Ranza v. Nike, Inc*., 793 F.3d 1059, 1073 (9th Cir. 2015); *see*

13   *also Glass Egg Digital Media v. Gameloft, Inc*., 2018 WL 500243, at *3-4 (N.D. Cal. Jan. 22, 2018)

14   (allegations that defendant company was "controlled by, share[d] consolidated financial statements

15   with, share[d] overlapping management and board members with, and [was] a wholly owned

16   subsidiary of" co-defendant company were insufficient under Rule 12(b)(6)).  "Otherwise," this

17   Court has recognized, "parent and subsidiary entities would always be presumed alter egos." *GEC*

18   *US 1 LLC v. Frontier Renewables, LLC*, 2016 WL 4677585, at *14 (N.D. Cal. Sept. 7, 2016).

19        And Plaintiffs also plead no facts at all in support of the second prong of alter ego liability,

20   "which demands a showing that an inequitable result will follow if the Court considers the actions

21   taken by [the Bank] to be those of [the Bank] alone." *Saaiman*, 2019 WL 1864858, at *5.  For

22   example, Plaintiffs plead "no facts that [the Bank] would be unable to satisfy a judgment that

23   Plaintiff[s] might obtain." *Id*.  The absence of any such allegations warrants a conclusion that the

24   First Amended Complaint does not state any claim under the alter ego theory.  *See id*.; *see also Glass*

25   *Egg Digital*, 2018 WL 500243, at *4 ("even assuming, *arguendo*, the [complaint] had sufficiently

26   alleged the requisite unity of interest, [the plaintiff] has failed to address, let alone plead any facts to

27   support a finding" that "an inequitable result would follow if the entities' separate corporate forms

28   were recognized").

1     For all these reasons, Plaintiffs have not alleged a basis to render the Holding Company

2   liable for the purported acts of its subsidiary, and the claims against it should be dismissed with

3   prejudice.

4         **B.     All of Plaintiffs' Claims Against the Holding Company Fail Under Rule 12(b)(6).**

5         To the extent Plaintiffs seek a finding that the Holding Company is independently liable on

6   the claims asserted against "Wells Fargo," the First Amended Complaint again fails.  As a bank

7   holding company with no relationship with Plaintiffs whatsoever, the Holding Company owed no

8   duties to Plaintiffs and Plaintiffs cannot use the OCC Consent Order or HAMP to bootstrap a claim

9   against it.  Their claims should be dismissed.

10          **1.     Plaintiffs' Intentional Infliction of Emotional Distress Claim Should Be**
11               **Dismissed (Count II).**

12        In Count II, Plaintiffs purport to bring an intentional infliction of emotional distress ("IIED")

13   claim on behalf of themselves and "all persons who resided at the subject property when 'Wells

14   Fargo' denied Nationwide Class members a mortgage modification and/or foreclosed on the

15   property."  FAC ¶ 166.   This claim should be dismissed.

16               **a.     Plaintiffs' Admissions Foreclose Their IIED Claim Against the**
17                    **Holding Company.**

18        In alleging a claim for intentional infliction of emotional distress, "[i]t is not enough that the

19   conduct be intentional and outrageous. ***It must be conduct directed at the plaintiff, or occur in the***

20   ***presence of a plaintiff of whom the defendant is aware***."  *Christensen v. Super. Ct.*, 54 Cal. 3d 868,

21   903 (1991) (emphasis added).  For this reason, "it is not enough to show that the defendant knew or

22   should have known that there may be people in the area who might be affected by defendants'

23   conduct," *Whitlock v. Pepsi Ams.*, 681 F. Supp. 2d 1116, 1122 (N.D. Cal. 2010)—but that is, at best,

24   what Plaintiffs allege here.  Again, as a non-lender/servicer who did not deny any putative class

25   members a mortgage modification, foreclose on any of their properties, or have any relationship with

26   them whatsoever, it is axiomatic that the Holding Company could not have directed any of its

27   alleged conduct at them or acted in their presence as a matter of law.

28

**b.** **Plaintiffs Cannot Rely on the OCC Consent Order or HAMP to Underpin Their IIED Claim Against the Holding Company.**

In any event, even if Plaintiffs had sufficiently alleged that the Holding Company directed its conduct at them (they have not and cannot), their IIED claim still fails.  Specifically, the acts complained of are purported violations of the OCC Consent Order and HAMP.  FAC ¶¶ 192, 194.  Neither can support an IIED claim as a matter of law.

Regarding the OCC Consent Order, as the Ninth Circuit has explained, "[c]onsent decrees are construed as contracts for purposes of enforcement," and "under Ninth Circuit precedent, incidental third-party beneficiaries may not enforce consent decrees … ."  *United States v. FMC Corp.*, 531 F.3d 813, 819-20 (9th Cir. 2008) (citations omitted).  Third-party beneficiaries are presumptively incidental beneficiaries absent a clear expression in the consent decree that individual members of the public can enforce it.  *See id.* at 821.  Such clear intent must appear in the consent decree's precise language.  *See id*.  Accordingly, "absent a clear expression in the consent decree that individual members of the public can enforce" it.  *Sanguinetti v. CitiMortgage, Inc*., 2013 WL 4838765, at *5 (N.D. Cal. Sept. 11, 2013) (citing *FMC Corp*., 531 F.2d at 821).

The 2011 Consent Order contains no such expression.  Indeed, it expressly states the opposite:

> Nothing in the Stipulation and Consent or this Order, express or implied, shall give to any person or entity, other than the parties hereto, and their successors hereunder, any benefit or any legal or equitable right, remedy or claim under the Stipulation and Consent or this Order.

Consent Order, Article XII, ¶ 10.   Accordingly, Plaintiffs' cannot ground their IIED claim on the Holding Company's alleged breach of its duties under the 2011 OCC Consent Order.  *See Fontaine v. JPMorgan Chase Bank, N.A*., 42 F. Supp. 3d 102, 110-11 (D.D.C. 2014) (plaintiff could not base her IIED claim on the defendant's alleged violations of a government consent order).

Nor can Plaintiffs base their IIED claim on purported violations of HAMP.  *See* FAC ¶¶ 34-35, 39, 192, 194.  The Department of Treasury established HAMP pursuant to the Emergency Economic Stabilization Act of 2008, as amended by the American Recovery and Reinvestment Act of 2009. (the "Act").  12 U.S.C. § 5201 *et seq.*  The Act directed the Department of Treasury to

maximize assistance of homeowners and to encourage mortgage servicers to take advantage of

government programs to minimize foreclosures. *See* 12 U.S.C. § 5219. In furtherance of these

goals, the Department of Treasury, through Federal National Mortgage Association ("Fannie Mae"),

entered into Servicer Participation Agreements ("SPA") with loan servicers, pursuant to which

servicers performed certain loan modification and foreclosure prevention services for eligible loans.

The Bank and Fannie Mae entered into a SPA in April 2009, as amended in March 2010. *See* Dkt.

No. 60, ¶ 2 and Ex. 2. However, the Holding Company was not a party to the agreement. *See id*.

This makes sense, given that, as Plaintiffs admit, the Holding Company does not service mortgage

loans and did not engage in any of the loan modification- or foreclosure-related activity alleged in

the First Amended Complaint. FAC ¶¶ 27-28, 33. Moreover, even if the Holding Company had

participated in HAMP (which it did not), the law is clear that Plaintiffs cannot use HAMP as a basis

for their claims. *See Jaffri v. JPMorgan Chase Bank, N.A.*, 26 N.E.3d 635, 640 (Ind. Ct. App. 2015)

(borrower could not base an intentional infliction of emotional distress claim on the allegation that

the bank "intentionally did not dedicate the resources to HAMP modifications that were necessary to

properly comply with the federal program"). Thus, Plaintiffs' IIED claim against the Holding

Company fails as a matter of law.

### 2. Plaintiffs' Negligence Claim Fails Because the Holding Company Owed No Duties to Plaintiffs, With Whom It Had No Relationship Whatsoever (Count III).

In Count III, Plaintiffs bring negligence and negligence per se claims against the Holding

Company. In any negligence claim, the threshold question is whether the defendant owed the

plaintiff a duty of care, which is a question of law to be resolved by the court. *Bily v. Arthur Young*

*& Co.*, 3 Cal. 4th 370, 397 (1992), *as modified* (Nov. 12, 1992) (internal citations omitted). And it is

well-established that a defendant "simply owe[s] no duty to [a party] who was a stranger to it."

*Johnson v. Raytheon Co., Inc.*, 245 Cal. Rptr. 3d 282, 288-89 (2019); *see also Software Design &*

*Application, Ltd. v. Hoefer & Arnett, Inc.*, 49 Cal. App. 4th 472, 478-79 (1996) (primary flaw in

plaintiff's negligence claim against banks was that the plaintiff was a stranger to the banks); *Karen*

*Kane, Inc. v. Bank of Am.*, 67 Cal. App. 4th 1192, 1202 (1998) (plaintiff who had no relationship

1   with the bank defendant could not assert a negligence claim against the bank).  Here, because

2   Plaintiffs' own allegations show that the Holding Company had no relationship with them—

3   contractual or otherwise—it owed them no duties as a matter of law, and their negligence claim must

4   be dismissed on this basis alone.

5        In addition, as with the IIED claim, Plaintiffs cannot use the OCC Consent Order to create

6   any duties owed to them by the Holding Company.  Indeed, courts repeatedly have rejected

7   negligence claims based on this OCC Consent Order.  For example, in *Velasco v. Wells Fargo Bank*,

8   2015 WL 12746226 (C.D. Cal. Jan. 8, 2015), the plaintiff sued the Bank for negligence, based, in

9   part, on the Bank's alleged violations of the 2011 OCC Consent Order.  *Id*. at *1-6.  The court

10  dismissed the claim, explaining: "[Plaintiff's] attempt to rely on the Consent Order to create a duty

11  of care … is … without merit because [she] is not a party to the Consent Order, and the Consent

12  Order specifically denies a private right of action to third parties." *Id*. at *3.  Similarly, in *Henrietta*

13  *E. Willis Revocable Trust v. Wells Fargo Bank, N.A*., 2014 WL 12596430 (C.D. Cal. Nov. 10, 2014),

14  the court rejected the plaintiffs' negligence claim premised upon the Bank's 2011 OCC Consent

15  Order, reasoning that it expressly precludes third-party claims and could not support the imposition

16  of any duties of care on the Bank.  *Id*. at *5.

17       Likewise, because the Holding Company did not participate in HAMP, it could not have

18  owed Plaintiffs any duties under that program as a matter of law.  *See Pullen v. Victory Woodwork,*

19  *Inc*., 2007 WL 1847633, at *3 (E.D. Cal. June 27, 2007) (duties do not "arise out of thin air");

20  *Vásquez-Robles v. CommoLoCo, Inc*., 757 F.3d 1, 8 (1st Cir. 2014) (a court cannot create a duty "out

21  of thin air"); *Hogan v. Jacobson*, 823 F.3d 872, 881-82 (6th Cir. 2016) ("a duty cannot have arisen

22  out of thin air; instead, some relationship between [the plaintiff] and the defendants must have

23  created it").

24       Moreover, even if the Holding Company had participated in HAMP (it did not), Plaintiffs could

25  not base their IIED claims on purported HAMP violations.  *See, e.g., Jaffri*, 26 N.E.3d at 640 (borrower

26  could not base an IIED claim on alleged violations of HAMP).

27

28

**3.    Plaintiffs' Wrongful Foreclosure Claim Should Be Dismissed Because the Holding Company Was Not a Party to the Contracts Underlying This Claim (Count IV).**

In Count IV, Plaintiffs purport to bring wrongful foreclosure claims on behalf of putative California and Georgia subclasses, based on their allegations that "Wells Fargo" breached the terms of their contracts in connection with the foreclosures of their loans: "[t]he foreclosure was unlawful and/or unfair because 'Wells Fargo' did not first notify Plaintiffs … that they could cure their default by accepting a mortgage modification" and "Plaintiffs and class members qualified for the mortgage modification and 'Wells Fargo' *was required by the Security Agreements* to notify Plaintiffs and class members of actions they could take to cure their default before exercising its power of sale." FAC ¶ 206 (emphasis added); *see also id*. ¶ 212 ("'Wells Fargo' breached its duty by foreclosing on Plaintiff's and class members' homes without first giving Plaintiff and class members notice that the [sic] could cure their default by accepting a mortgage modification. '*Wells Fargo' was required to do so under the terms of the Security Instruments*.") (emphasis added).

As evidenced by Plaintiffs' decision not to assert their breach of contract claim against the Holding Company, FAC ¶¶ 184-90, as well as their admissions that the Holding Company is a bank holding company that did not loan them any money or service their loans, FAC ¶¶ 27, 33, the Holding Company is not a party to the "Security Agreements" underlying the wrongful foreclosure claim. In addition, Plaintiffs admit that the Holding Company did not deny them loan modifications or foreclose on their properties. FAC ¶ 33. Accordingly, Plaintiffs' own allegations doom their wrongful foreclose claim against the Holding Company. That claim must be dismissed with prejudice.

**4.    Plaintiffs' California Homeowner Bill of Rights Claim (Count V) is Defective and Should Be Dismissed.**

In Count V, Plaintiffs allege that "Wells Fargo" violated Cal. Civ. Code § 2924.17 of the HBOR, which provides that "[b]efore recording or filing [a declaration or foreclosure related notice (*i.e.*, notice of default, notice of sale, substitution of trustee, assignment of deed of trust)], a *mortgage servicer* shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan

-10-

1   information." Cal. Civ. Code § 2924.17(b) (emphasis added). According to Plaintiffs, however,

2   "their mortgage servicer" was "Wells Fargo Bank"—not the Holding Company. FAC ¶ 33.

3   Accordingly, by Plaintiffs' own admission, HBOR does not apply and imposed no duties on the

4   Holding Company. The claim should be dismissed with prejudice.

5            **5.       The Court Should Dismiss Plaintiffs' UCL Claim (Count VI).**

6            California Business and Professions Code § 17200 prohibits unlawful, unfair or fraudulent

7   business acts or practices and unfair, deceptive, untrue or misleading advertising. "Because Business

8   and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of

9   unfair competition-acts or practices which are unlawful, or unfair, or fraudulent." *Cel-Tech*

10  *Comm'ns, Inc. v. L.A. Cellular Tel. Co*., 20 Cal. 4th 163, 180 (1999). In the First Amended

11  Complaint, Plaintiffs appear to premise their UCL claims solely on the "unlawful" and "unfair"

12  prongs of the UCL.

13           "By proscribing 'any unlawful' business practice, [the UCL] borrows violations of other laws

14  and treats them as unlawful practices that the unfair competition law makes independently

15  actionable." *Cel-Tech Commc'ns*, 20 Cal. 4th at 165. Because "a violation of another law is a

16  predicate for stating a cause of action under the UCL's unlawful prong[,]" "[i]f the borrowed

17  violations of law or predicate claims lack merit, then the unfair competition claim necessarily fails."

18  *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007); *Portney v. CIBA Vision*

19  *Corp.*, 2009 WL 305488, at *7 (C.D. Cal. Feb. 6, 2009); *Vargas v. JP Morgan Chase Bank, N.A.*,

20  2014 WL 3435628, at *5 (C.D. Cal. July 11, 2014) ("If unable to state a claim for the underlying

21  offense, the plaintiff similarly cannot state a claim under UCL for unlawful practices.") (citations

22  omitted). Here, Plaintiffs recently confirmed in their opposition to the Bank's motion to dismiss that

23  their "unlawful" UCL claim is based upon alleged HAMP violations: "Plaintiffs' claim under the

24  unlawful prong is based on 'Wells Fargo's' failure to comply with HAMP. … ." Dkt. No. 67 at 19.

25  As demonstrated above, however, because the Holding Company did not participate in HAMP and

26  Plaintiffs lack standing to enforce HAMP, Plaintiffs' "unlawful" UCL claim against the Holding

27  Company fails on its face.

28

1   Regarding Plaintiffs' "unfair" UCL claim, as courts have noted, "[t]he proper definition of
2   'unfair' conduct against consumers 'is currently in flux' among California courts."  *In re Adobe Sys.,*
3   *Inc. Privacy Litig*., 66 F. Supp. 3d 1197, 1226 (N.D. Cal. 2014) (internal quotation marks omitted).
4   Some courts apply a balancing test, which requires courts to "weigh the utility of the defendant's
5   conduct against the gravity of the harm to the alleged victim."  *Davis v. HSBC Bank Nev., N.A.*, 691
6   F.3d 1152, 1169 (9th Cir. 2012) (internal quotation marks omitted).  Others have held that
7   "unfairness must be tethered to some legislatively declared policy or proof of some actual or
8   threatened impact on competition," which is known as the "public policy" test.  *Lozano v. AT&T*
9   *Wireless Servs., Inc*., 504 F.3d 718, 735 (9th Cir. 2007) (citation and internal quotation marks
10  omitted).  Yet other courts have applied what is referred to as an "FTC" test, which requires facts
11  establishing that "the consumer injury is substantial, is not outweighed by any countervailing benefit
12  to consumers or to competition, and is not an injury the consumers themselves could reasonably
13  have avoided."  *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1137 (N.D. Cal. 2010) (internal quotation
14  marks omitted).  Here, Plaintiffs allege that "Wells Fargo" "engaged in unfair practices by failing to
15  properly verify or audit the automated software it used to determine whether Plaintiffs and class
16  members were eligible for a mortgage modification" and "by failing to properly oversee the Bank's
17  compliance with HAMP and other governmental requirements."  FAC ¶ 225-26.  Plaintiffs further
18  allege that the utility of "Wells Fargo's" "verification, auditing, and oversight practices are
19  outweighed by the harm to the consumers and that the practices "run afoul of the public policies
20  underlying HAMP and [HBOR]."  FAC ¶ 27.
21  These allegations are insufficient to allege that the Holding Company's conduct meets any of
22  the three standards applied by California courts.  Plaintiffs fail to demonstrate how the Holding
23  Company's "fail[ure] to properly verify or audit the automated software" and "to oversee the Bank's
24  compliance with HAMP" meets the balancing and FTC tests, given that, as set forth above, the
25  Holding Company owed no duties to Plaintiffs to verify or audit the automated software.  *See Das v.*
26  *WMC Mortg. Corp.*, 831 F. Supp. 2d 1147, 1161 (N.D. Cal. 2011) (plaintiff failed to state a claim
27  under the unfair prong on ground that defendant owed no duty to plaintiffs) (citing *Kurek v. Am.'s*
28  *Wholesale Lender,* 2011 WL 3240482, at *3 (N.D. Cal. July 28, 2011); *Newton v. Am. Debt Servs.,*

-12-

*Inc.*, 75 F. Supp. 3d 1048, 1062 (N.D. Cal. 2014) (FDIC consent order could not be enforced through the UCL's unfairness prong because the court lacked jurisdiction to enforce the consent order via the UCL).

Plaintiffs' tethering allegations also do not support an "unfair" claim under the public policy test.  First, as set forth above, Plaintiffs may not premise a UCL claim on HAMP, because the Holding Company did not participate in it (and, in any event, courts routinely reject UCL claims based on HAMP because there is no private right of action to enforce it).  *See, e.g., Flores v. Wells Fargo Bank, N.A.*, 2012 WL 2427227, at *8 (N.D. Cal. June 26, 2012) (UCL claim dismissed where plaintiff "tether[ed] their Unfair Business Practices allegations to the HAMP claim," for which there is no private right of action).  Second, the Holding Company is not subject to Plaintiffs' HBOR claim because it is not a mortgage servicer.

Lastly, Plaintiffs' UCL claim must fail because it is premised on the same defective theories as their other claims.  Because each claim fails for the various reasons explained herein, Plaintiff's UCL claim must also fail.  *See Cabanilla v. Wachovia Mortg.*, 2012 WL 13020028, at *4 (C.D. Cal. Mar. 20, 2012) (claim for unlawful, unfair, and fraudulent business practices in violation of California's UCL failed where it was premised on the same conduct that formed the basis of deficient claims for negligent implementation of the HAMP, breach of contract, among others); *Rubin v. Wal-Mart Stores, Inc.*, 599 F. Supp. 2d 1176, 1179 (N.D. Cal. 2009) (where a UCL claim is predicated on other claims that fail, the UCL claim must be dismissed as well) (same); *Toneman v. U.S. Bank, Nat'l Ass'n*, 2013 WL 12132049, at *20-22 (C.D. Cal. Oct. 21, 2013) (same).

### 6.     The Court Should Dismiss Plaintiffs' Various State Consumer Protection Claims (Count VII).

In Count VII, Plaintiffs purport to bring claims under the Illinois Consumer Fraud Act, the Maryland Consumer Protection Act and Consumer Debt Collection Act, the New Jersey Consumer Fraud Act, Section 349(a) of New York's General Business Law, and the Pennsylvania Unfair Trade Practices and Consumer Protection Law, all based on the same allegations of wrongful HAMP denials and purported audit and testing failures.  FAC ¶¶ 231-262.  These claims fail because, as set forth extensively above, Plaintiffs cannot enforce the OCC Consent Order or HAMP, and the

Holding Company did not service their loans, deny them loan modifications, or foreclose on their properties.  Indeed, every single one of these claims hinges entirely on the allegedly wrongful modification denials and foreclosure of Plaintiffs' properties.  FAC ¶¶ 233, 238-40, 245, 253, 258. Because, by Plaintiffs' own admission, the Holding Company did not engage in any of this conduct, these claims cannot proceed as a matter of law.

## IV.    CONCLUSION

Plaintiffs have no claims against the Wells Fargo & Company, and it should not be a party to this lawsuit.  For the foregoing reasons, Wells Fargo & Company respectfully requests that the Court dismiss Plaintiffs' First Amended Complaint against it in its entirety, with prejudice.

Dated: May 7, 2019                          WINSTON & STRAWN LLP

                                            By:   /s/ *Amanda L. Groves*
                                                  Amanda L. Groves
                                                  Morgan E. Stewart
                                                  Kobi K. Brinson (Admitted *pro hac vice*)
                                                  Stacie C. Knight (Admitted *pro hac vice*)

                                                  Attorneys for Defendant
                                                  WELLS FARGO & COMPANY