Amanda L. Groves (SBN: 187216)
agroves@winston.com
Morgan E. Stewart (SBN: 321611)
mstewart@winston.com
**WINSTON & STRAWN LLP**
101 California Street, 35th Floor
San Francisco, CA 94111-5802
Telephone:    (415) 591-1000
Facsimile:    (415) 591-1400

Kobi K. Brinson (Admitted *pro hac vice*)
kbrinson@winston.com
Stacie C. Knight (Admitted *pro hac vice*)
sknight@winston.com
**WINSTON & STRAWN LLP**
300 South Tryon Street, 16th Floor
Charlotte, NC 28202
Telephone:    (704) 350-7700
Facsimile:    (704) 350-7800

Attorneys for Defendant
WELLS FARGO BANK, N.A.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ALICIA HERNANDEZ, *et al.*, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO & COMPANY and WELLS FARGO BANK, N.A.,<br><br>Defendants. | No. 3:18-cv-07354 WHA<br><br>**DEFENDANT WELLS FARGO BANK, N.A.'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Date: May 23, 2019<br>Time: 8:00 a.m.<br>Courtroom: 12<br>Judge: Hon. William H. Alsup |

## TABLE OF CONTENTS

I.    INTRODUCTION..................................................................................................... 1

II.   ARGUMENT ........................................................................................................... 1

      A.    Proceeding Under State Law Cannot Save Plaintiffs' Claims............................. 1

      B.    Even Assuming Plaintiffs' Theories Could Proceed, Their Claims Fail
            for Independent Reasons.............................................................................. 3

            1.    Plaintiffs Cannot Manufacture Contractual Ambiguity (Count
                  I)....................................................................................................... 3

            2.    Plaintiffs' Intentional Infliction of Emotional Distress Claim
                  Should Be Dismissed (Count II). ..................................................... 6

                  a.    Plaintiffs' Allegations Are Insufficient as a Matter of Law. .................. 6

                  b.    The Non-Borrower Plaintiffs' Allegations Are Insufficient................... 7

            3.    Plaintiffs' Negligence Claims Should Be Dismissed (Count III)................. 8

                  a.    Wells Fargo Did Not Owe Plaintiffs a Duty as a Matter of Law............ 8

                  b.    The Economic Loss Rule Bars Plaintiffs' Negligence Claims. ............. 10

            4.    Plaintiffs' Wrongful Foreclosure Claim Should Be Dismissed
                  (Count IV)........................................................................................ 11

            5.    Plaintiffs' California Homeowner Bill of Rights Claim (Count
                  V) is Defective and Should Be Dismissed...................................... 12

            6.    The Court Should Dismiss Plaintiffs' UCL Claim (Count VI). ................ 13

            7.    Plaintiffs' Various State Consumer Protection Claims Fail
                  (Count VII). .................................................................................... 14

III.  CONCLUSION ..................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Almasi v. Equilon Enters., LLC,*
   2012 WL 3945528 (N.D. Cal. Sept. 10, 2012) .............................................................14

*Alvarez v. BAC Home Loans Servicing, L.P.,*
   228 Cal. App. 4th 941 (2014) .................................................................................8, 9

*Anderson v. Deutsche Bank Nat. Tr. Co. Am.,*
   649 F. App'x 550 (9th Cir. 2016) .................................................................................9

*Ansanelli v. JP Morgan Chase Bank, N.A.,*
   2011 WL 1134451 (N.D. Cal. Mar. 28, 2011) (Alsup, J.)............................................9

*Argueta v. J.P. Morgan Chase,*
   787 F. Supp. 2d 1099 (E.D. Cal. 2011).......................................................................14

*Avington v. Bank of Am.,*
   2018 WL 4471774 (N.D. Ok. Sept. 18, 2018) ..............................................................2

*Badame v. J.P. Morgan Chase Bank, N.A.,*
   641 F. App'x 707 (9th Cir. 2016) .................................................................................9

*Bal v. New Penn Fin., LLC,*
   2015 WL 3867984 (C.D. Cal. June 22, 2015) ..............................................................4

*Biakanja v. Irving,*
   49 Cal. 2d 647 (1958) ...............................................................................................9, 10

*Buford v. Ocwen Loan Servicing, LLC,*
   2018 WL 6790656 (E.D. Va. Nov. 2, 2018) .................................................................5

*Bukowski v. Wells Fargo Bank, N.A.,*
   757 F. App'x 124 (3d Cir. 2018) .................................................................................15

*Bushell v. JPMorgan Chase Bank, N.A.,*
   220 Cal. App. 4th 915 (2013) .......................................................................................3

*Cave v. Saxon Mortg. Servs., Inc.,*
   2012 WL 1957588 (E.D. Pa. May 30, 2012)...............................................................15

*Comm. On Children's Television, Inc. v. Gen. Foods Corp.,*
   35 Cal. 3d 197 (1983) ............................................................................................13, 14

*Corvello v. Wells Fargo Bank, N.A.,*
   728 F.3d 878 (9th Cir. 2013) ........................................................................................3

-iii-

*Davis v. DRRF Trust*
   *2015-1*, 2016 WL 8257126 (W.D. Tex. Jan. 6, 2016) ..................................................5

*DeLeon v. Wells Fargo Bank, N.A.*,
   2011 WL 311376 (N.D. Cal. Jan. 28 2011) ................................................................4

*Deschaine v. IndyMac Mortg. Servs.*,
   617 F. App'x 690 (9th Cir. 2015) .............................................................................8

*Dumont v. Litton Loan Servicing, LP*,
   2014 WL 815244 (S.D.N.Y. Mar. 3, 2014) .......................................................14, 15

*Edw C. Levy Co. v. Rein*,
   85 F.3d 635 (9th Cir. 1996) (unpublished table decision) ........................................5

*Faulks v. Wells Fargo & Co.*,
   2015 WL 4914986 (N.D. Cal. Aug. 17, 2015) ..........................................................6

*Fontaine v. JPMorgan Chase Bank, N.A.*,
   42 F. Supp. 3d 102 (D.D.C. 2014) ...........................................................................6

*Forster v. Wells Fargo Bank, N.A.*,
   2018 WL 509967 (N.D. Cal. Jan. 23, 2018) .............................................................9

*Fowler v. Wells Fargo Bank, N.A.*,
   2017 WL 3977385 (N.D. Cal. Sept. 11, 2017) ........................................................13

*Giordano v. Saxon Mortg. Servs., Inc.*,
   2013 WL 12158378 (D.N.J. Oct. 31, 2013)..............................................................15

*Green v. Central Mortg. Co.*,
   148 F. Supp. 3d 852 (N.D. Cal. 2015) ....................................................................12

*Haynish v. Bank of Am.*,
   284 F. Supp. 3d 1037 (N.D. Cal. 2018) ....................................................................8

*Hodsdon v. Mars, Inc.*,
   891 F.3d 857 (9th Cir. 2018) .................................................................................14

*Hogan v. Jacobson*,
   823 F.3d 872 (6th Cir. 2016) ...................................................................................1

*Hundal v. PLM Loan Mgmt. Servs., Inc.*,
   2016 WL 7157644 (N.D. Cal. Dec. 8, 2016).............................................................4

*Jaffri v. JPMorgan Chase Bank, N.A.*,
   26 N.E.3d 635 (Ind. Ct. App. 2015)..........................................................................6

-iv-

*Janda v. T-Mobile, USA, Inc.*,
  2009 WL 667206 (N.D. Cal. Mar. 13, 2009), *aff'd*, 378 F. App'x 705 (9th Cir.
  2010) ................................................................................................................................. 13

*Kaar v. Wells Fargo Bank, N.A.*,
  2016 WL 3068396 (N.D. Cal. June 1, 2016) (Alsup, J.) ............................................... 9

*Lamberth v. Clark Cty. Sch. Dist.*,
  698 F. App'x 387 (9th Cir. 2017) ................................................................................. 6

*Logan v. Union Sec. Ins. Co.*,
  2015 WL 3745047 (C.D. Cal. Mar. 31, 2015) .............................................................. 5

*Lopacich v. Falk*,
  5 F.3d 210 (7th Cir. 1993) ............................................................................................ 7

*Lueras v. BAC Home Loans Servicing, L.P.*,
  221 Cal. App. 4th 49 (2013) ..................................................................................... 8, 9

*Mann v. Bank of New York Mellon*,
  2013 WL 5231482 (S.D. Tex. Sept. 16, 2013) .......................................................... 4, 5

*Martinez v. Wells Fargo Bank, N.A.*,
  2015 WL 4041674 (W.D. Tex. June 30, 2015) ............................................................. 5

*Matthews v. Wells Fargo Bank, N.A.*,
  2012 WL 5379585 (E.D. Mich. Oct. 31, 2012), *aff'd*, 536 F. App'x 577 (6th Cir.
  2013) ............................................................................................................................. 13

*McGinnis v. Am. Home Mortg. Servicing, Inc.*,
  817 F.3d 1241 (11th Cir. 2016) .................................................................................... 7

*Monet v. JPMorgan Chase Bank, N.A.*,
  2017 WL 3895790 (N.D. Cal. Sept. 5, 2017) ............................................................. 12

*Oskoui v. J.P. Morgan Chase Bank, N.A.*,
  851 F.3d 851 (9th Cir. 2017) .................................................................................... 3, 14

*Pemberton v. Nationstar Mortg. LLC*,
  331 F. Supp. 3d 1018 (S.D. Cal. 2018) ...................................................................... 13

*Penermon v. Wells Fargo Bank, N.A.*,
  47 F. Supp. 3d 982 (N.D. Cal. 2014) .......................................................................... 12

*Perez-Encinas v. AmerUs Life Ins. Co.*,
  468 F. Supp. 2d 1127 (N.D. Cal. 2006) ........................................................................ 4

*Peterson v. Wells Fargo Bank N.A.*,
  2019 WL 1767573 (N.D. Cal. Apr. 22, 2019) ............................................................ 10

*Pullen v. Victory Woodwork, Inc.*,
   2007 WL 1847633 (E.D. Cal. June 27, 2007) ...............................................................1

*Ramirez v. Baxter Credit Union*,
   2017 WL 1064991 (N.D. Cal. Mar. 21, 2017)................................................................4

*Razzak v. Wells Fargo Bank, N.A.*,
   2018 WL 1524002 (N.D. Cal. Mar. 28, 2018)..............................................................10

*Rose v. Bank of Am., N.A.*,
   57 Cal. 4th 390 (2013) .................................................................................................13

*Rowen v. Bank of Am., N.A.*,
   2013 WL 1182947 (C.D. Cal. Mar. 18, 2013)................................................................7

*Ryan-Beedy v. Bank of New York Mellon*,
   293 F. Supp. 3d 1101 (E.D. Cal. 2018)........................................................................11

*Saldana v. Wells Fargo Bank, N.A.*,
   2019 WL 501481 (N.D. Cal. Feb. 8, 2019) ..................................................................10

*Salone v. Bank of Am., N.A.*,
   2018 WL 3815041 (N.D. Cal. June 22, 2018)..............................................................10

*Snyder v. Bank of Am., N.A.*,
   2016 WL 109981 (N.D. Cal. Jan. 8, 2016)...................................................................12

*Starkey v. JP Morgan Chase Bank, N.A.*,
   2013 WL 6669268 (S.D. Ohio Dec. 18, 2013), *aff'd*, 573 F. App'x 444 (6th Cir.
   2014) ............................................................................................................................13

*Steffens v. Am. Home Mortg. Servicing, Inc.*,
   2011 WL 901812 (D.S.C. Jan. 5, 2011) .........................................................................2

*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*,
   17 Cal. 4th 553 (1998) .................................................................................................14

*Sun v. Wells Fargo Bank, N.A.*,
   2014 WL 1245299 (N.D. Cal. Mar. 25, 2014) (Alsup, J.).....................................3, 8, 9

*Temple v. Bank of Am., N.A.*,
   2015 WL 3658834 (N.D. Cal. June 12, 2015)................................................................8

*Trautman v. JPMorgan Chase Bank*,
   2012 WL 3263907 (Minn. Ct. App. Aug. 13, 2012) ....................................................13

*Vásquez-Robles v. CommoLoCo, Inc.*,
   757 F.3d 1 (1st Cir. 2014)..............................................................................................1

*West v. JPMorgan Chase Bank, N.A.*,
    214 Cal. App. 4th 780 (2014) ........................................................................................4

*Wigod v. Wells Fargo Bank, N.A.*,
    673 F.3d 547 (7th Cir. 2012) ..........................................................................2, 13, 15

*Yost v. Nationstar Mortg., LLC*,
    2013 WL 4828590 (E.D. Cal. Sept. 9, 2013)................................................................11

DEFENDANT WELLS FARGO BANK, N.A.'S REPLY IN FURTHER SUPPORT OF ITS
MOTION TO DISMISS FIRST AMENDED COMPLAINT

3:18-cv-07354-WHA

1

## I.   **INTRODUCTION**

2    Plaintiffs' Opposition confirms that the FAC should be dismissed.  Despite their

3    protestations, even a cursory review of Plaintiffs' arguments reveals that they are attempting to

4    enforce the OCC Consent Order and HAMP, which they do not have standing to do.  Moreover,

5    Plaintiffs resort to hyperbole, misstatements of the law, and cases that have no bearing on the issues.

6    Stripping away Plaintiffs' rhetoric reveals one thing: their claims are legally deficient, and the Court

7    should dismiss them with prejudice.

8    ## II.   **ARGUMENT**

9    ### A.   **Proceeding Under State Law Cannot Save Plaintiffs' Claims.**

10    In an attempt to avoid dismissal, Plaintiffs argue that are "are not trying to enforce the OCC

11    order" or "attempting to proceed under HAMP" because their claims are not labeled "breach of OCC

12    Consent order" or "breach of HAMP."  Opp. at 7-8.  That argument fails.

13    First, duties do not "arise out of thin air."  *Pullen v. Victory Woodwork, Inc*., 2007 WL

14    1847633, at *3 (E.D. Cal. June 27, 2007); *see also Vásquez-Robles v. CommoLoCo, Inc*., 757 F.3d 1,

15    8 (1st Cir. 2014) (a court cannot create a duty "out of thin air"); *Hogan v. Jacobson*, 823 F.3d 872,

16    881-82 (6th Cir. 2016) ("a duty cannot have arisen out of thin air").  Here, Plaintiffs allege that

17    Wells Fargo violated state law by "ignor[ing] consent decrees requiring it to reform its mortgage

18    modification and foreclosure practices," "using automated software that had not been properly

19    verified or audited to ensure its accuracy," failing to oversee its "compliance with HAMP and other

20    government requirements," and violating HAMP.  FAC ¶¶ 192, 194, 200-01, 218, 225-26, 233, 238,

21    240, 251-52, 258-59.  But, the only conceivable sources of the software "verification and auditing"-

22    and HAMP-related duties—and, indeed the only sources Plaintiffs identify—are the 2011 Consent

23    Order and HAMP.  As shown in Wells Fargo's opening brief, however, Plaintiffs cannot proceed

24    under either.  ***Plaintiffs agree***.  *See* Opp. at 7-8.

25    Plaintiffs try to avoid this bar by arguing that they "have not pled a cause of action under

26    either HAMP or the OCC consent order" and instead are proceeding under state law.  *See id*. ("the

27    vehicle under which Plaintiffs seek to recover from 'Wells Fargo' is state law.").  But Plaintiffs give

28    themselves away later in their Opposition, where they admit: "Plaintiffs' claim under the unlawful

-1-

1    prong [of the UCL] is based on 'Wells Fargo's' failure to comply with HAMP … ." *Id.* at 19.[1]

2    Plaintiffs also ignore their own pleading, which specifically premises their claims on alleged HAMP

3    and Consent Order violations.[2]  Thus, the label Plaintiffs assign their claims is irrelevant; they

4    cannot avoid the absolute prohibition to proceeding under the Consent Order or HAMP simply by

5    bringing their claims under state law.  *Steffens v. Am. Home Mortg. Servicing, Inc.*, 2011 WL

6    901812, at *3 (D.S.C. Jan. 5, 2011) ("Despite the fact that she did not label her claims as 'HAMP

7    violations,' the underlying factual and legal basis for each is squarely based on HAMP.") (citation

8    omitted); *Avington v. Bank of Am.*, 2018 WL 4471774, at *1 (N.D. Ok. Sept. 18, 2018) ("Although

9    [plaintiffs] label their second claim as a 'breach of representation and warranty,' that claim is based

10    upon their assertions that the defendants failed to comply with [HAMP].").

11        Finally, Plaintiffs ignore the cases in Wells Fargo's opening brief—which are directly on

12    point[3]—and instead cite four cases that do not help them.  *See* Opp. at 8-9.  As Plaintiffs admit, all

13    four cases involved mortgage servicers who refused to give the plaintiffs permanent loan

14    modifications upon successful completion of their HAMP trial payment plans.  *See id.* at 9 ("trial

15    period plans offered under HAMP may form the basis for state contract claims").  In those courts'

16    view, under basic contract principles, the trial payment plans were ***contracts*** between the servicers

17    and the plaintiffs, pursuant to which the servicers "agreed to permanently modify the loan" if certain

18    conditions were met.  *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 554, 558 (7th Cir. 2012) ("If

19

20    [1] *See also* Opp. at 21 (UCL claim is based on Wells Fargo's purported failures to test its mortgage

21    modification software as required by the OCC Consent Order), 22 ("unfair" UCL claim is tethered to HAMP), 23-24 (state consumer protection law claims are based on alleged HAMP violations).

22    [2] *See* FAC ¶ 34 (alleging that Plaintiffs could have avoided their claimed injuries "if Wells Fargo had lowered their mortgage payments as HAMP required"); ¶ 39 ("the Bank repeatedly violated

23    HAMP"); ¶ 192 ("Wells Fargo ignored consent decrees requiring it to reform is mortgage modification and foreclosure practices"); ¶ 201 ("Wells Fargo's conduct violated HAMP"); ¶ 217

24    (asserting violations of HBOR:  "Wells Fargo was therefore required to offer Plaintiffs and class members the opportunity to cure their default by accepting a [HAMP] mortgage modification before

25    it could exercise its right to foreclose[.]"); ¶ 224 (asserting violation of UCL: "Wells Fargo engaged in unlawful practices by denying mortgage modifications to Plaintiffs and class members in violation

26    of HAMP and other governmental requirements."); and ¶¶ 233, 238 (asserting claims under various state consumer protection statutes: "Wells Fargo engaged in unfair practices by denying mortgage

27    modifications to Plaintiffs and class members in violation of HAMP[.]").

28    [3] *See* Opening Br. at 6-7 and n.9.

I [borrower] am in compliance with the Loan Trial Period and my representations in Section 1 continue to be true in all material respects, then the [Servicer] will provide me with a permanent Loan Modification Agreement"); *Corvello v. Wells Fargo Bank, N.A.*, 728 F.3d 878, 881 (9th Cir. 2013) (same); *Oskoui v. J.P. Morgan Chase Bank, N.A.*, 851 F.3d 851, 858-59 (9th Cir. 2017) (servicer "will modify" the loan upon successful completion of the trial plan); *Bushell v. JPMorgan Chase Bank, N.A.*, 220 Cal. App. 4th 915, 921-22 (2013) ("If you … comply with the terms of the [TPP], we will modify your mortgage loan"). In other words, the plaintiffs in each case presented run-of-the-mill claims that did not depend upon or require reference to HAMP.

The same cannot be said here. Plaintiffs do not allege that Wells Fargo offered them trial plans or that they complied with the terms of any such trial plans. Rather, they allege that they were denied HAMP mortgage loan modifications outright—a legal theory this Court has already rejected. In *Sun v. Wells Fargo Bank, N.A.*, 2014 WL 1245299 (N.D. Cal. Mar. 25, 2014) (Alsup, J.), the plaintiff alleged that her loan servicer promised her a HAMP loan modification but denied her application in bad faith and breached its obligations under HAMP. *Id.* at *1, 4. This Court dismissed the fraud, negligent misrepresentation, and negligence claims, explaining:

> While the undersigned judge has found that a financial institution actively participates in the financed enterprise beyond the domain of the usual money lender when it offers borrowers a loan modification and a trial period plan, such is not the case here. … defendants are not alleged to have engaged in a trial period plan that might suggest active participation in the financed enterprise beyond the role of a usual money lender.

*Id.* at *4 (citations omitted). The Court should do the same here. Because Plaintiffs impermissibly seek to enforce the OCC Consent Order and HAMP, and because they do not allege that Wells Fargo breached any trial payment plans, their claims fail from the outset and must be dismissed.

**B.   Even Assuming Plaintiffs' Theories Could Proceed, Their Claims Fail for Independent Reasons.**

**1.   Plaintiffs Cannot Manufacture Contractual Ambiguity (Count I).**

In connection with their breach of contract claim, Plaintiffs desperately try to manufacture an ambiguity in the parties' contracts, arguing that the phrase "the action required to cure the default" in

-3-

1    the Security Instrument "raises a question of fact that cannot be resolved through a motion to

2    dismiss." Opp. at 10.  However, "a contract is not ambiguous simply because the parties disagree as

3    to its meaning." *Ramirez v. Baxter Credit Union*, 2017 WL 1064991, at *4 (N.D. Cal. Mar. 21,

4    2017) (citation and quotation marks omitted).  Rather, a contractual term is ambiguous only "if it is

5    susceptible to more than one reasonable interpretation." *Id.*  In determining whether a given

6    interpretation is reasonable, "a court is to interpret the language of an agreement in its 'ordinary and

7    popular sense.'" *Perez-Encinas v. AmerUs Life Ins. Co.*, 468 F. Supp. 2d 1127, 1133 (N.D. Cal.

8    2006) (citations omitted).  Moreover, "courts will not strain to create an ambiguity where none

9    exists." *Id.* (citation omitted).

10         Here, the phrase "the action required to cure the default" is not ambiguous because it is

11   susceptible to only one reasonable interpretation: payment of the amount required to bring the loan

12   current.  *See DeLeon v. Wells Fargo Bank, N.A.*, 2011 WL 311376, at *7 (N.D. Cal. Jan. 28 2011)

13   ("In order to cure the default, Plaintiffs would have had to pay [the amount in arrears] in full, plus

14   any payment obligations that accrued after the default was recorded.").  Plaintiffs' interpretation—

15   that "the action required to cure the default" includes a loan modification—is not reasonable, and, in

16   fact, this Court has already rejected it.  In *Hundal v. PLM Loan Mgmt. Servs., Inc.*, 2016 WL

17   7157644 (N.D. Cal. Dec. 8, 2016), this Court recognized that "although a loan modification may …

18   enable[] [a borrower] to *eventually* cure any default," it is payment of the full amount due that

19   constitutes an actual cure of the default.  *Id.* at *7 (emphasis in original).[4]

20   _____

21   [4] Plaintiffs' cited cases are inapposite.  *West v. JPMorgan Chase Bank, N.A.*, 214 Cal. App. 4th 780
     (2014), does not address the issue at hand.  Instead, the borrower alleged that her servicer breached

22   the trial payment plan by refusing to give her a permanent loan modification upon her successful
     completion of the trial.  *Id.* at 796-98.  As shown in Section II.A. above, Plaintiffs make no such

23   allegations here, thus, this line of cases is irrelevant.  In *Bal v. New Penn Fin., LLC*, 2015 WL
     3867984 (C.D. Cal. June 22, 2015), the court rejected the plaintiff's allegation that his servicer

24   breached the implied covenant of good faith and fair dealing by failing to offer him a loan
     modification, reasoning that "Plaintiff has not identified any contract provision requiring [the

25   servicer] to offer loan modifications when Plaintiff fails to meet his own obligations under the
     Note." *Id.* at *4.  Accordingly, *Bal* actually supports Wells Fargo's arguments—it does not help

26   Plaintiffs.  Finally, in *Mann v. Bank of New York Mellon*, 2013 WL 5231482 (S.D. Tex. Sept. 16,
     2013), the court held that because the plaintiffs admitted their servicer had offered them a trial

27   payment plan, their own allegations defeated their breach of contract theory.  *Id.* at *3-4.  In light of

28

-4-

1    Moreover, although Plaintiffs claim that their proffered interpretation is reasonable because

2    "Wells Fargo was required to offer Plaintiffs mortgage modifications" (Opp. at 11), they point to

3    nothing in the relevant contracts—the Security Agreements—containing any such requirement.  Nor

4    could they, because the Security Instruments do not mention modification at all.  It is difficult to

5    imagine how "the action required to cure the default" could reasonably be read to include a loan

6    modification, when the contract is entirely silent on modification in the first instance.

7    Other courts agree.  For example, in *Davis v. DRRF Trust 2015-1*, 2016 WL 8257126 (W.D.

8    Tex. Jan. 6, 2016), the court flatly rejected the argument that "the action required to cure the default"

9    provision in the plaintiff's deed of trust required her servicer to offer her a loan modification:

> Plaintiff cites no case law in support of her theory that loan modification
> under HAMP constitutes an "action required to cure the default" and is
> thus required under the deed of trusts.  Arguably, loan modification does
> not cure default but rather is an alternative to foreclosure in the event of
> default.  The plain language of the deed of trust clearly does not require
> Defendant to modify Plaintiff's loan in the event of default.  Therefore,
> Defendant's failure to modify Plaintiff's loan under HAMP does not
> constitute breach.

16   *Id*. at *2 (internal citations omitted).  Similarly, in *Buford v. Ocwen Loan Servicing, LLC*, 2018 WL

17   6790656, at *8 (E.D. Va. Nov. 2, 2018), the court reasoned that because the deed of trust "does not

18   reference any loan modification requests," it could not be read to require the servicer to offer a loan

19   modification prior to foreclosing.  *See also Martinez v. Wells Fargo Bank, N.A*., 2015 WL 4041674,

20   at *3 (W.D. Tex. June 30, 2015) (holding that failure to modify a loan under HAMP does not violate

21   identical contractual language).[5]

22

---

23   those admissions, it was not necessary for the court to opine on whether the plaintiffs' breach of
contract theory was consistent with the contract.  *See id*.

24   [5] Moreover, it is well-settled that when interpreting a contract, "the court must ascertain and give

25   effect to the intention of the parties at the time it was made, if at all possible," *Edw C. Levy Co. v.
Rein*, 85 F.3d 635, *2 (9th Cir. 1996) (unpublished table decision), and "a contract should not be

26   interpreted in such a way as to produce absurd results."  *Logan v. Union Sec. Ins. Co*., 2015 WL
3745047, at *11 (C.D. Cal. Mar. 31, 2015) (citations omitted).  Plaintiffs do not explain (because

27   they cannot) how their security instruments reasonably can be read to require their servicer to offer
them a loan modification under programs that did not even exist at the time of contracting.

28

1    For all these reasons, the Court should reject Plaintiffs' strained attempt to create ambiguity

2    in their Security Instruments and dismiss their breach of contract claim with prejudice.[6]

3         **2.    Plaintiffs' Intentional Infliction of Emotional Distress Claim Should Be**

4              **Dismissed (Count II).**

5    Plaintiffs do not address the overwhelming amount of case law holding that modification

6    denials resulting in foreclosure will not sustain an IIED claim.  *See* Opening Br. at 11-12.

7    Furthermore, Plaintiffs' description of Illinois law is superficial and overstated.  The claim should be

8    dismissed.

9         **a.    Plaintiffs' Allegations Are Insufficient as a Matter of Law.**

10   As stated in Section II.A. above, Plaintiffs cannot enforce the OCC Consent Order or HAMP.

11   Thus, their attempt to base their IIED claim on alleged violations of the Consent Order and HAMP

12   fails as a matter of law.  *Jaffri v. JPMorgan Chase Bank, N.A.*, 26 N.E.3d 635, 640 (Ind. Ct. App.

13   2015) (borrower could not base IIED claim on allegation that the bank "intentionally did not

14   dedicate the resources to HAMP modifications that were necessary to properly comply with the

15   federal program"); *Fontaine v. JPMorgan Chase Bank, N.A.*, 42 F. Supp. 3d 102, 110-11 (D.D.C.

16   2014) (plaintiff could not base IIED claim on the defendant's alleged violations of a government

17   consent order).

18   Even setting aside this foundational flaw, courts routinely find that a purportedly wrongful

19   modification denial resulting in foreclosure will not support an IIED claim.  *See* Opening Br. at 11-

20   12.  Plaintiffs ignore these cases, and instead cite three that are readily distinguishable.  Unlike in

21   *Faulks v. Wells Fargo & Co.*, 2015 WL 4914986, at *5-6 (N.D. Cal. Aug. 17, 2015), Plaintiffs here

22   do not allege "a scheme" to deny loan modifications, but instead a software error that Wells Fargo

23

---

24   [6] Plaintiffs admit that they have not adequately alleged a breach of contract claim on behalf of
     Plaintiffs John and Yvonne Demartino and Hood, and "seek leave to correct their contract
25   allegations as to the Demartino and Hood Plaintiffs and specify the distinct basis for their breach-of-
     contract claims."  Opp. at 11-12.  It is well-established that a party cannot seek leave to amend in an
26   opposition to a motion to dismiss.  *Lamberth v. Clark Cty. Sch. Dist.*, 698 F. App'x 387, 389 (9th
     Cir. 2017).  "Instead, a request for leave to amend 'must be made by motion' and must 'state with
27   particularity the grounds for seeking' an order granting leave to amend."  *Id.* (citing Fed. R. Civ. P.
     7(b)(1)).  Accordingly, this request is not well-taken and should be denied.

28

-6-

has been working to voluntarily remediate.  FAC ¶ 67.  And unlike the plaintiff in *Rowen v. Bank of Am., N.A.*, 2013 WL 1182947, at *4 (C.D. Cal. Mar. 18, 2013), Plaintiffs do not allege Wells Fargo assured them they were not in default and would not be referred to foreclosure.  Finally, unlike in *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1258-59 (11th Cir. 2016), Wells Fargo's employees did not "frequently harass[] [the plaintiff] by phone and mail," they were not "opaque[], unresponsive[], and belligeren[t]," and they did not "pursu[e] foreclosure in a fairly short amount of time for a relatively small amount of money" (under $1,500).

In short, Plaintiffs have not presented the Court with any authority justifying departure from the usual rule: that a foreclosure resulting from an allegedly wrongful modification denial does not support a claim for intentional infliction of emotional distress.  *See* Opening Br. at 11-12.  The claim should be dismissed.

### b.  The Non-Borrower Plaintiffs' Allegations Are Insufficient.

Plaintiffs' Opposition tacitly concedes that they have not adequately alleged an IIED claim on behalf of California non-borrowers.  *See* Opp. at 13-14.  Indeed, rather than confront the cases in Wells Fargo's opening brief, Plaintiffs argue that "[t]he only issue at this stage of the litigation is whether the one non-borrower plaintiff named in the complaint . . . has adequately alleged" her IIED claim under Illinois law.  *Id.* at 14.  But Plaintiffs' description of Illinois law is incomplete.

According to Plaintiffs, Illinois law only requires that a defendant "know that there is at least a high probability that its conduct will cause severe emotional distress."  Opp. at 14.  In other words, Plaintiffs claim, a defendant's potential liability for IIED in Illinois is boundless, and can extend to anyone, even if the defendant had no knowledge of that person.  That is not the law.  In considering IIED claims under Illinois law, the Seventh Circuit has directed courts to consider, among other things, the defendant's awareness of the plaintiff's susceptibility to emotional stress.  *Lopacich v. Falk*, 5 F.3d 210, 212 (7th Cir. 1993).  It is axiomatic that a defendant with no knowledge of a particular plaintiff cannot be aware of that plaintiff's susceptibility to emotional stress.  And, Wells Fargo has not located a single Illinois case allowing an IIED claim to proceed under the circumstances alleged here—namely, a plaintiff who (1) had no relationship with the defendant, (2) does not allege she was present when the defendant's alleged misconduct occurred or that the

-7-

1    defendant knew she was present, and (3) does not allege that the defendant acted with an intent to

2    cause her emotional distress.   Indeed, Plaintiffs here allege only that Wells Fargo "acted with

3    reckless disregard" as to its "**customers** … who were wrongfully denied mortgage modifications and

4    foreclosed upon." FAC ¶ 195 (emphasis added).  Plaintiff Brown admits she was not a customer,

5    thus, her IIED claim cannot proceed.

6         **3.**     **Plaintiffs' Negligence Claims Should Be Dismissed (Count III).**

7         **a.**     **Wells Fargo Did Not Owe Plaintiffs a Duty as a Matter of Law.**

8         This Court's opinion in *Sun*, 2014 WL 1245299, is directly on point and requires dismissal of

9    Plaintiffs' negligence claim for lack of duty.  *See* Section II.A., above.  Unable to distinguish *Sun*,

10   the California Plaintiffs (Debora Granja and Keith Lindner) ask the Court to disregard it simply

11   because it predates *Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal. App. 4th 941 (2014).  Opp.

12   at 14-15.  As Plaintiffs acknowledge, however, the California Supreme Court has not addressed the

13   issue, and, Plaintiffs offer no authority for their argument that the Court should blindly follow a

14   later, but admittedly non-controlling, case.

15        In any event, *Alvarez* did not change the long-standing rule that a bank does not owe a

16   borrower a duty of care where it acts "within the scope of the conventional role of a residential

17   lender."  *E.g., Lueras v. BAC Home Loans Servicing, L.P.*, 221 Cal. App. 4th 49, 94-95 (2013).

18   Consistent with this rule, courts in this district continue to find, post-*Alvarez*, that loan modification

19   negotiations do not create a duty of care on the part of the lender or servicer.  *See, e.g., Haynish v.*

20   *Bank of Am.*, 284 F. Supp. 3d 1037, 1051 (N.D. Cal. 2018) ("lenders owe no duty of care in the loan

21   modification context, even when the lender apparently agreed to consider a borrower's modification

22   application"); *Temple v. Bank of Am., N.A.*, 2015 WL 3658834, at *4 (N.D. Cal. June 12, 2015)

23   (lenders do not exceed their typical role as lender or involve themselves beyond the normal course of

24   business "[b]y merely offering to review" a borrower's loan modification application).  Indeed, post-

25   *Alvarez*, the Ninth Circuit twice has held that a lender owes no duty of care in considering a

26   borrower's loan modification request because "a loan modification is the renegotiation of loan terms,

27   which falls squarely within the scope of a lending institution's conventional role as a lender of

28   money."  *Deschaine v. IndyMac Mortg. Servs.*, 617 F. App'x 690, 693 (9th Cir. 2015); *see also*

-8-

1    *Badame v. J.P. Morgan Chase Bank, N.A.*, 641 F. App'x 707, 709-10 (9th Cir. 2016) (same).

2    Plaintiffs ignore these cases—perhaps because they have no answer for them.

3    This Court's decision in *Kaar v. Wells Fargo Bank, N.A.*, 2016 WL 3068396 (N.D. Cal. June

4    1, 2016) (Alsup, J.), does not compel a different conclusion.  There, this Court reaffirmed its 2011

5    decision, *Ansanelli v. JP Morgan Chase Bank, N.A.*, 2011 WL 1134451 (N.D. Cal. Mar. 28, 2011)

6    (Alsup, J.), where it held that by offering the plaintiffs a trial modification plan and "engag[ing] with

7    them concerning the trial period plan," the servicer had gone "beyond the domain of a usual money

8    lender."  *Id*. at *7; *see also Kaar*, 2016 WL 3068396, at *4 ("When a financial institution offers

9    borrowers a loan modification and a trial period plan, it is actively participating in the financial

10   enterprise beyond the domain of the usual money lender.").  As shown in Section II.A., above, and

11   in Wells Fargo's opening brief, however, Plaintiffs do not allege they were offered a trial

12   modification plan, and as this Court explained in *Sun*, 2014 WL 1245299, the absence of such

13   allegations dooms a negligence claim.

14   Finally, while Plaintiffs insist that application of the "*Biakanja*" factors[7] compels the

15   conclusion that a lender owes a borrower a duty of care when reviewing a mortgage modification

16   application, they do not analyze those factors, and instead blithely refer to *Alvarez*.  *See* Opp. at 15-

17   16.  And, the Ninth Circuit disagrees, finding that "application of the *Biakanja* factors does not

18   support imposition of such a duty."  *Anderson v. Deutsche Bank Nat. Tr. Co. Am.*, 649 F. App'x 550,

19   552 (9th Cir. 2016) (no duty of care where borrower alleged delay in processing of loan modification

20   application).  And, while Plaintiffs correctly note that courts in this district are split on how to

21   reconcile *Alvarez*'s broad holding with *Lueras*, when applying the *Biakanja* factors, courts in this

22   district have limited *Alvarez* to cases in which the lender placed the borrower in the position

23   necessitating the loan modification.  *See e.g., Forster v. Wells Fargo Bank, N.A.*, 2018 WL 509967,

24   at *4 (N.D. Cal. Jan. 23, 2018) ("Where modification is necessary because the borrower cannot

25

26   [7] (1) "the extent to which the transaction was intended to affect the plaintiff," (2) "the foreseeability of harm to him," (3) "the degree of certainty that the plaintiff suffered injury," (4) "the closeness of

27   the connection between the defendant's conduct and the injury suffered," (5) "the moral blame attached to the defendant's conduct," and (5) "the policy of preventing future harm."  *Biakanja v.*

28   *Irving*, 49 Cal. 2d 647, 650 (1958).

1    repay the loan, the borrower's harm is not closely connected with the lender's conduct, and the

2    lender is not morally culpable."); *Peterson v. Wells Fargo Bank N.A.*, 2019 WL 1767573, at *3

3    (N.D. Cal. Apr. 22, 2019) ("when the modification was necessarily due to the borrower's inability to

4    repay the loan, the borrower's harm, suffered from denial of a loan modification, is not closely

5    connected to the lender's conduct") (citation and internal quotation marks omitted); *Saldana v. Wells*

6    *Fargo Bank, N.A.*, 2019 WL 501481, at *7 (N.D. Cal. Feb. 8, 2019) ("[W]here, as here, the lender

7    did not place the borrower in a position creating a need for a loan modification, no moral blame

8    attaches to the lender's conduct.") (citation and internal quotation marks omitted); *Razzak v. Wells*

9    *Fargo Bank, N.A.*, 2018 WL 1524002, at *6 (N.D. Cal. Mar. 28, 2018) ("it is undisputed that

10   Razzak's need for a loan modification was the result of her inability to repay her loan, which

11   inability is, in no manner, attributable to Wells Fargo").

12       Here, too, California plaintiffs Granja and Lindner allege they sought loan modifications due

13   to their own inability to repay their loans—not because Wells Fargo placed them in the position of

14   needing a loan modification.  FAC ¶ 71 (Granja needed a loan modification because her "husband

15   lost his job"); ¶ 80 (Lindner "was laid off from his job" which "caused the Lindners' already-difficult

16   financial situation to become critical."  Thus, the *Biakanja* factors do not support imposition of a

17   duty here.

18       For all these reasons, Wells Fargo did not owe a duty to Plaintiffs as a matter of law, and

19   their negligence claim must be dismissed.

20                    **b.**    **The Economic Loss Rule Bars Plaintiffs' Negligence Claims.**

21       Plaintiffs' response to the economic loss rule is that they can avoid the bar merely by alleging

22   non-economic damages.  *See* Opp. at 17.  The problem with this argument, of course, is that it

23   assumes the existence of a duty, which, as shown, cannot be alleged as a matter of law.  Indeed, as

24   Wells Fargo established in its opening brief, when the contractual relationship is between a lending

25   bank and a borrower, the bank does not owe a duty of care to a borrower under tort law.  *See Salone*

26   *v. Bank of Am., N.A.*, 2018 WL 3815041, at *5 (N.D. Cal. June 22, 2018) ("Plaintiff asserts that

27   Defendant acted negligently throughout the loan modification process," but "Defendant would only

28   owe such a duty if a contract imposed one. … Because Defendant's relevant duties arose from

-10-

alleged agreements between the parties, the economic loss rule applies."); *Yost v. Nationstar Mortg., LLC*, 2013 WL 4828590, at *12 (E.D. Cal. Sept. 9, 2013) (negligence claim against servicer based upon failed loan modification attempt barred by the economic loss rule, and when a borrower defaults on the loan due to his or her inability to pay, he or she cannot establish causation as a matter of law). Plaintiffs ignore these cases—a tacit admission that they have no response to them.

In sum, because Wells Fargo did not owe a duty to Plaintiffs as a matter of law, their negligence claims should be dismissed.

### 4. Plaintiffs' Wrongful Foreclosure Claim Should Be Dismissed (Count IV).

The Opposition devotes a mere two paragraphs to the wrongful foreclosure claim, and actually confirms the claim's fundamental flaw. As Plaintiffs admit, the wrongful foreclosure claim "largely mirrors their claim for breach of contract" and rests on their allegation that by failing to offer them a loan modification, Wells Fargo ***breached the parties' contract***, resulting in wrongful foreclosures. *See* Opp. at 17. Yet, Plaintiffs do not address (perhaps because they cannot) that nothing in their Security Instruments required Wells Fargo to modify their loans, or to notify them of the potential to cure their default through loan modification. Plaintiffs also do not address Wells Fargo's showing that lenders and loan servicers have no legal duty modify borrowers' loans, whether under HAMP or otherwise. *See* Opening Br. at 17.

Instead, Plaintiffs argue that their foreclosures were "unfair." *See* Opp. at 17. But they do not cite a single case holding that a servicer acts "unfairly" when it complies with the underlying contract. And, the lone case they cite, *Ryan-Beedy v. Bank of New York Mellon*, 293 F. Supp. 3d 1101 (E.D. Cal. 2018), does not help them. There, the plaintiff alleged that the foreclosure was wrongful because her servicer "failed to properly review her complete modification application and simply moved forward with the foreclosure sale despite assurances that the foreclosure sale would necessarily be postponed upon submission of the complete application." *Id*. at 1115. Plaintiffs make no such allegations here. Accordingly, because they cannot overcome the plain and unambiguous language in the Security Instrument—which did not require Wells Fargo to modify their loans and gave Wells Fargo the absolute right to foreclose in the event of an uncured default—Plaintiffs' wrongful foreclosure claim fails and should be dismissed.

-11-

5.      **Plaintiffs' California Homeowner Bill of Rights Claim (Count V) is Defective and Should Be Dismissed.**

Plaintiffs admit they do not allege "robo-signing."  Opp. at 18-19.  Instead, citing two cases, *Penermon v. Wells Fargo Bank, N.A.*, 47 F. Supp. 3d 982 (N.D. Cal. 2014), and *Green v. Central Mortg. Co.*, 148 F. Supp. 3d 852 (N.D. Cal. 2015), Plaintiffs claim that § 2924.17 can be violated "outside the robo-signing context."  Opp. at 19.  As shown in Wells Fargo's opening brief, however, the majority of cases analyzing whether a plaintiff has adequately alleged a § 2924.17 claim first consider whether the plaintiff has alleged "robo-signing": *i.e.*, the signing of a foreclosure-related document (such as a notice of default) without personal knowledge of the content attested to therein and/or sign[s] the documents without the requisite authority to do so.  If not, courts routinely dismiss the claim.  *See Monet v. JPMorgan Chase Bank, N.A.*, 2017 WL 3895790, at *5 (N.D. Cal. Sept. 5, 2017) (collecting cases).  Importantly, HBOR's legislative history supports this interpretation.  *See* Sen. Rules Comm., Off. of Sen. Floor Analyses, Conf. Rep. No. 1 on S.B. 900, 2011-2012 Reg. Sess., at p. 25-29 (as amended June 27, 2012) (HBOR's "validity of foreclosure documents" requirement arose from concern over "robo-signing").

Plaintiffs' cited cases are readily distinguishable.  In *Penermon*, 47 F. Supp. 3d at 997, the plaintiff alleged that her servicer violated § 2924.17 because the notice of default stated that no payments had been made since December 1, 2012 despite the fact she had made payments until February 2013.  In contrast here, Plaintiffs admit they defaulted on their loans, making *Penermon* inapposite.  *See Snyder v. Bank of Am., N.A.*, 2016 WL 109981, at *7 (N.D. Cal. Jan. 8, 2016) ("[I]n *Penermon* there was a factual dispute as to when the plaintiff stopped making payments and the propriety of default, whereas here Plaintiff does not dispute that she stopped making payments in 2008 and that default was otherwise proper.").

*Green*, 148 F. Supp. 3d 852, also does not help Plaintiffs.  There, the plaintiff alleged that the defendant violated § 2924.17 by falsely stating in the notice of default that it had "exercised due diligence in an attempt to contact the borrower but was unable to do so," and that because this statement was false, her lender had no right to foreclose.  *Id.* at 875.  Of course, Plaintiffs allege no such conduct here.

1     In sum, because the majority of cases reject § 2924.17 claims in the absence of "robo-

2  signing" allegations, and because HBOR's legislative history supports that interpretation, the Court

3  should dismiss Plaintiffs' HBOR claim with prejudice.

4              **6.    The Court Should Dismiss Plaintiffs' UCL Claim (Count VI).**

5     Plaintiffs' Opposition does not salvage their UCL claim.

6     First, as Plaintiffs concede, "[their] claim under the unlawful prong is based on Wells Fargo's

7  failure to comply with HAMP." Opp. at 19.  But, as Plaintiffs admit, the cases in Wells Fargo's

8  opening brief are directly contrary to their argument that they can enforce HAMP through the UCL.

9  *See id.* at 19-20.  Plaintiffs ignore the numerous other cases holding that they cannot base a UCL

10  claim on a claimed HAMP violation.  *See* Opening Br. at 21-22 (collecting cases).

11     Plaintiffs' cited cases are inapposite.  In *Fowler v. Wells Fargo Bank, N.A.*, 2017 WL

12  3977385, at *4 (N.D. Cal. Sept. 11, 2017), the plaintiff premised her claims on breach of a

13  promissory note which allegedly incorporated HUD regulations.  Here, Plaintiffs identify no

14  contractual provision that required Wells Fargo to give them a HAMP modification—nor could they.

15  This distinction is not minor.  Courts regularly distinguish *Wigod*, 673 F.3d 547—another case on

16  which Plaintiffs rely—on this basis.  *See Starkey v. JP Morgan Chase Bank, N.A.*, 2013 WL

17  6669268, at *4 (S.D. Ohio Dec. 18, 2013), *aff'd*, 573 F. App'x 444 (6th Cir. 2014); *Matthews v.*

18  *Wells Fargo Bank, N.A.*, 2012 WL 5379585, at *3 (E.D. Mich. Oct. 31, 2012), *aff'd*, 536 F. App'x

19  577 (6th Cir. 2013); *Trautman v. JPMorgan Chase Bank*, 2012 WL 3263907, at *4 (Minn. Ct. App.

20  Aug. 13, 2012).  California courts are no exception.  *See, e.g., Pemberton v. Nationstar Mortg. LLC*,

21  331 F. Supp. 3d 1018, 1036-37 (S.D. Cal. 2018) (distinguishing both *Fowler* and *Wigod*).  In short,

22  without a contractual term on which to base their claims, Plaintiffs' UCL claim is simply another

23  non-cognizable attempt to enforce HAMP.

24     *Rose v. Bank of Am., N.A.*, 57 Cal. 4th 390, 393 (2013), also is distinguishable because it

25  concerned the federal Truth in Savings Act, which previously allowed for a private right of action.

26  By contrast, HAMP lacks "the force of law" required to sustain a UCL claim.  *See Janda v. T-*

27  *Mobile, USA, Inc.*, 2009 WL 667206, at *8 (N.D. Cal. Mar. 13, 2009), *aff'd*, 378 F. App'x 705 (9th

28  Cir. 2010).  *Comm. On Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 210-11

-13-

1  (1983) and *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal. 4th 553, 565 (1998), likewise are

2  inapposite.  *See* Opp. at 20.  The plaintiffs in those cases based their UCL claims on alleged

3  violations of specific laws: the Sherman Act and the Stop Tobacco Access to Kids Enforcement Act,

4  respectively.  *See Children's Television*, 35 Cal. 3d at 210-11; *Stop Youth Addiction*, 17 Cal. 4th at

5  565.  Here, Plaintiffs allege that Wells Fargo "violated HAMP" by having inadequate internal

6  processes, something not regulated by HAMP.  Indeed, Plaintiffs' allegations are more similar to

7  those in *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 867 (9th Cir. 2018) (cited by Plaintiffs in support of

8  their "unfair" UCL claim), in which the Ninth Circuit held that there was not a "close enough nexus

9  between the policy at issue . . . and the challenged action" to support a UCL claim.

10  Plaintiffs also do not address Wells Fargo's central arguments on their "unfair" UCL claim.

11  Rather, Plaintiffs baldly assert, without support, that "[i]f Wells Fargo refuses to devote resources to

12  testing its mortgage modification systems and ensuring compliance with legal requirements, it will

13  gain an unfair competitive advantage over those firms who play fairly and devote a significant part

14  of their capital and workforce to auditing and compliance."  Opp. at 21.  Plaintiffs do not explain

15  how foreclosing delinquent mortgages instead of modifying them unfairly inures to the benefit of

16  Wells Fargo, or how Wells Fargo's own internal processes negatively affect competition.  Nor do

17  Plaintiffs have standing to bring an "unfair" UCL claim based on this (unpled) allegedly anti-

18  competitive conduct.  *See Almasi v. Equilon Enters., LLC*, 2012 WL 3945528, at *10 (N.D. Cal.

19  Sept. 10, 2012).  At best, Plaintiffs' allegations are speculative and conclusory, and they lack the

20  required specificity to support a UCL claim.  *See, e.g., Argueta v. J.P. Morgan Chase*, 787 F. Supp.

21  2d 1099, 1105-06 (E.D. Cal. 2011) (citation omitted).

22  Finally, Plaintiffs' reliance on *Oskoui* to salvage their "unfair" claim is misplaced.  As shown

23  above, the plaintiff in that case based her claims on an alleged breach of a trial payment plan*,* which

24  is not at issue here.

25  Plaintiffs' UCL claim should be dismissed.

26  **7.    Plaintiffs' Various State Consumer Protection Claims Fail (Count VII).**

27  Like Plaintiffs' California UCL claim, Plaintiffs' claims under other state consumer

28  protection laws are impermissibly based on HAMP.  *See* Opp. at 23.  But *Dumont v. Litton Loan*

-14-

1    *Servicing, LP*, 2014 WL 815244 (S.D.N.Y. Mar. 3, 2014), does not support their argument.  *See*

2    Opp. at 24.  There, the New York consumer protection claim that survived the motion to dismiss was

3    based on the improper charging of fees, not on HAMP.  *See id*. at *10.  In fact, the court dismissed

4    the HAMP-based Pennsylvania and New Jersey consumer protection claims.  *See id*. at *13-14.

5            Plaintiffs' Pennsylvania, Illinois, and New Jersey cases also are inapposite.  In each case, the

6    plaintiffs premised their claims on breach of a HAMP trial payment plan, not on the defendant's

7    general noncompliance with HAMP.  *See Cave v. Saxon Mortg. Servs., Inc*., 2012 WL 1957588, at

8    *10 (E.D. Pa. May 30, 2012)); *Wigod*, 673 F.3d at 564-65; *Bukowski v. Wells Fargo Bank, N.A*., 757

9    F. App'x 124, 129 (3d Cir. 2018)).  As demonstrated in Section II.A., above, this difference is

10   critical, and requires dismissal of the Pennsylvania, Illinois, and New Jersey consumer protection

11   claims.  *See Giordano v. Saxon Mortg. Servs., Inc*., 2013 WL 12158378, at *11 (D.N.J. Oct. 31,

12   2013) ("[i]n contrast to *Cave I* and *Cave II*, Plaintiffs' state law claims rely solely on the uniform

13   HAMP rules, directives, and other HAMP documentation in contravention to well-settled law that

14   borrowers do not have a private right of action against lenders or servicers pursuant to HAMP.").

15           Finally, Plaintiffs acknowledge that their Maryland Consumer Protection Act claim will not

16   survive the motion to dismiss and state that they "intend to add allegations" to save their claim.

17   Opp. at 23.  In light of their admission that the existing complaint is inadequate, Plaintiffs' Maryland

18   Consumer Protection Act claim should be dismissed for the reasons stated in Wells Fargo's opening

19   brief.

20   **III.    <u>CONCLUSION</u>**

21           For the foregoing reasons, Wells Fargo Bank, N.A. respectfully requests that the Court

22   dismiss Plaintiffs' First Amended Complaint in its entirety, with prejudice.

23   Dated: May 9, 2019                                WINSTON & STRAWN LLP

24                                                     By:   */s/ Amanda L. Groves*
                                                            Amanda L. Groves
25                                                          Morgan E. Stewart
                                                            Kobi K. Brinson (Admitted *pro hac vice*)
26                                                          Stacie C. Knight (Admitted *pro hac vice*)

27                                                          Attorneys for Defendant
                                                            WELLS FARGO BANK, N.A.
28

-15-