IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ALICIA HERNANDEZ, EMMA WHITE, KEITH LINDNER, TROY FRYE, COSZETTA TEAGUE, IESHA BROWN, RUSSELL and BRENDA SIMONEAUX, JOHN and YVONNE DEMARTINO, ROSE WILSON, TIFFANIE HOOD, GEORGE and CYNDI FLOYD, DEBORA GRANJA, and DIANA TREVINO, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

WELLS FARGO & COMPANY, and WELLS FARGO BANK, N.A.,

Defendants.

No. C 18-07354 WHA

**ORDER RE MOTION TO DISMISS**

## INTRODUCTION

In this negligence and wrongful-foreclosure action, defendant Wells Fargo Bank, N.A. moves to dismiss. For the following reasons, the motion is **GRANTED IN PART AND DENIED IN PART**.

## STATEMENT

Plaintiffs all had their mortgage loans serviced by defendant Wells Fargo Bank, N.A. when they faced various financial hardships and defaulted on their loans. Although they sought loan modifications from Wells Fargo, those applications were denied (Amd. Compl. ¶¶ 30–33).

At the time plaintiffs requested loan modifications, Wells Fargo participated in the Home Affordable Modification Program (HAMP), through which mortgage lenders received stimulus funds in exchange for issuing loan modifications to qualified borrowers. Although plaintiffs met the program's threshold requirements for such a modification, Wells Fargo failed to offer them one. Instead, the bank foreclosed on eleven of the named plaintiffs and more than five hundred other customers who could not make their monthly payments without a modification. Two plaintiffs, Russell and Brenda Simoneaux, did not face foreclosure and ultimately paid off their mortgage (*id.* ¶¶ 30–34, 109–13).

A 2010 investigation by the Office of Comptroller of the Currency (OCC) found numerous deficiencies in Wells Fargo's mortgage modification and foreclosure practices, including that the bank failed to devote adequate oversight to its foreclosure processes, failed to ensure compliance with applicable laws, and failed to adequately audit its foreclosure procedures. Wells Fargo agreed to correct these deficiencies in two 2011 consent orders, agreeing to maintain adequate governance and controls to ensure compliance with HAMP, to engage in ongoing testing for compliance with HAMP, and to ensure that the bank's mortgage modification and foreclosure practices were regularly reviewed and any deficiencies promptly detected and remedied. Despite these consent orders, between 2010 and 2018 Wells Fargo failed to detect multiple systematic errors in the automated decision-making software it used to determine customers' eligibility for a mortgage modification under HAMP and other government programs (*id.* ¶¶ 35–47).

As is particularly relevant here, in October 2015, Wells Fargo discovered a calculation "error" in a software tool it used to determine whether to issue a mortgage modification. This calculation error, which underlies the claims in this case, caused certain fees to be misstated and resulted in incorrect modification denials. In May 2016, after Wells Fargo discovered the error but before it had been disclosed to regulators or borrowers, the OCC fined Wells Fargo for failing to detect a separate software error that led to the denial of mortgage modifications to 184 Wells Fargo customers. Despite this ongoing oversight by the OCC, Wells Fargo did not disclose the 2015 error until 2018. That same year, Wells Fargo disclosed even more software

errors. In total, 870 customers were incorrectly denied a loan modification, 545 of which lost their homes in foreclosure. According to plaintiffs, these repeated failures to implement adequate testing procedures — as well as other high-profile scandals that have roiled the bank in recent years — are emblematic of Wells Fargo's chronic and intentional lack of oversight (*id*. ¶¶ 48–69).

In December 2018, plaintiff Alicia Hernandez filed this putative nationwide class action, asserting claims for negligence, conversion, violations of California's Unfair Competition Law, and violations of the New Jersey Consumer Fraud Act. In response to a motion to dismiss, Hernandez filed an amended complaint in February 2019. The operative complaint added 15 new named plaintiffs, added Wells Fargo & Company as a new defendant, and added nine additional claims for relief. Wells Fargo now moves to dismiss the complaint for failure to state a claim (Dkt. Nos. 1, 44, 59). This order follows full briefing and oral argument.[1]

**ANALYSIS**

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when its factual allegations, rather than mere conclusory statements, create the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court ruling on a motion to dismiss must accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030–31 (9th Cir. 2008). Conclusory allegations or "formulaic recitation of the elements" of a claim, however, are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 681.

**1. STANDING TO BRING STATE LAW CLAIMS BASED ON APPLICATIONS FOR HAMP MODIFICATION.**

In response to the financial crisis of 2008, Congress passed the Emergency Economic Stabilization Act. This law included the Troubled Asset Relief Program, which required the

---

[1] The instant motion is brought only by defendant Wells Fargo Bank, N.A. Defendant Wells Fargo & Company has separately moved to dismiss the complaint for lack of standing and failure to state a claim (Dkt. No. 73). A hearing on Wells Fargo & Company's motion to dismiss is set for June 2019.

3

Secretary of the Treasury to, among other things, implement a plan to minimize home foreclosures. *Corvello v. Wells Fargo Bank, NA*, 728 F.3d 878, 880 (9th Cir. 2013), *as amended on reh'g in part* (Sept. 23, 2013) (citation omitted). Pursuant to this instruction, the Treasury Department in 2009 launched the HAMP program to incentivize banks to refinance mortgages of distressed homeowners so they could stay in their homes. Under the program, home-loan servicers, including Wells Fargo, signed servicer participation agreements that entitled them to $1,000 for each permanent modification they made but required them to follow Treasury guidelines and procedures. *Ibid*.

Treasury directed loan servicers to determine each borrower's eligibility for a loan modification by following a three-step process. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 556–57 (7th Cir. 2012). *First*, the borrower had to meet certain threshold requirements, including that the loan originated on or before January 1, 2009, it was secured by the borrower's primary residence, and the mortgage payments were more than 31 percent of the borrower's monthly income. *Second*, the servicer calculated a modification using a "waterfall" method, applying enumerated changes in a specified order until the borrower's monthly mortgage payment ratio dropped "as close as possible to 31 percent." *Third*, the servicer applied a net present value test to assess whether the modified mortgage's value to the servicer would be greater than the return on the mortgage if unmodified. If the net present value result was positive — *i.e.*, the value of the modified mortgage would be greater than the servicer's expected return after foreclosure — the Treasury directives said that "the servicer MUST offer the modification." *Ibid.* (citing Supplemental Directive 09–01).

HAMP did not create a federal right of action for borrowers against lenders. Wells Fargo argues that plaintiffs' state-law claims, which are based in part on allegations that Wells Fargo failed to offer plaintiffs a loan modification as required by HAMP, fail as a matter of law because plaintiffs lack standing to enforce HAMP's requirements. For the reasons now explained, this order disagrees and concludes that HAMP's lack of a private federal right of action does not automatically preclude state-law claims that refer to or incorporate Wells Fargo's failures in meeting HAMP's requirements.

4

In the leading federal appellate decision on this issue, the United States Court of Appeals for the Seventh Circuit rejected Wells Fargo's contention that the absence of a private federal remedy under HAMP displaced the plaintiffs' state-law claims. *Wigod*, 673 F.3d at 581. There, the plaintiff alleged that Wells Fargo had issued her a "trial" loan modification under which it agreed to permanently modify the loan if she qualified under HAMP guidelines. The plaintiff alleged that although she did qualify, Wells Fargo refused to grant her a permanent modification after it miscalculated her property taxes. The district court dismissed the complaint in its entirety, reasoning that the plaintiff's state-law claims were premised on Wells Fargo's obligations under HAMP, which did not confer a private right of action. *Id.* at 555–59. In reversing the dismissal, *Wigod* concluded that "[t]he absence of a private right of action from a federal statute provides no reason to dismiss a claim under a state law just because it refers to or incorporates some element of the federal law." *Id.* at 581.

Since the appellate court's decision in *Wigod*, our court of appeals and California appellate courts have similarly allowed state-law claims based on HAMP-required loan modifications to proceed past the pleading stage. *See, e.g. Corvello*, 728 F.3d at 880; *West v. JPMorgan Chase Bank, N.A.*, 214 Cal. App. 4th 780, 788 (2013); *Bushell v. JPMorgan Chase Bank*, N.A., 220 Cal. App. 4th 915, 928 n.9 (2013). This order also finds the reasoning of *Wigod* convincing and similarly rejects Wells Fargo's argument that the absence of a private remedy under HAMP requires dismissal of plaintiffs' state-law claims.

The non-binding decisions cited by Wells Fargo do not compel a contrary result. For example, in *Slimm v. Bank of America Corporation*, No. 12-cv-05846, 2013 WL 1867035 (D.N.J. May 2, 2013) (Judge Noel Hillman), the district court dismissed the plaintiff's state-law claims based on its determination that the claims were insufficiently independent of HAMP. In support of this holding, *Slimm* cited *Sinclair v. Citi Mortgage Inc.*, No. 12-cv-04261, 2013 WL 1010617 (3d Cir. Mar.15, 2013), an unpublished decision by the United States Court of Appeals for the Third Circuit. *Sinclair*, however, merely held that HAMP lacks a private right of action. It did not hold that HAMP precludes state-law claims such as those asserted by plaintiffs here. The holding in *Jaffri v. JPMorgan Chase Bank, N.A.*, 26 N.E.3d 635, 640 (Ind. Ct. App. 2015),

was similarly limited. In sum, this order rejects Wells Fargo's contention that plaintiffs' claims are an impermissible attempt to enforce HAMP guidelines under state law and proceeds to address plaintiffs' claims on the merits.[2]

### 2. STANDING TO ENFORCE OCC CONSENT ORDER.

Wells Fargo also argues that the complaint must be dismissed because plaintiffs' claims are premised on Wells Fargo's failure to comply with its obligations under the 2011 consent order it entered into with the OCC — a consent order to which plaintiffs are not a party. Plaintiffs agree that Wells Fargo's alleged violation of the consent order "is a matter for the federal government to enforce" (Opp. at 7). Wells Fargo fails to explain, however, why plaintiffs' inability to enforce the OCC consent order necessarily dooms all of plaintiffs' claims, each of which relies on Wells Fargo's alleged violations of the consent order to a varying extent. Wells Fargo does not dispute, for example, that the existence of the consent order is relevant to show Wells Fargo's knowledge of deficiencies in oversight or controls concerning its loan modification and foreclosure processes. This order therefore analyzes on a claim-by-claim basis the extent to which the claim is an impermissible attempt to enforce the OCC consent decree.

### 3. CALIFORNIA'S HOMEOWNERS BILL OF RIGHTS.

Plaintiffs Debora Granja and Keith Lindner assert a claim under California's Homeowners Bill of Rights, Section 2924.17 of the California Civil Code, which provides that before recording or filing a notice of default, a notice of sale, and other specified documents, "a mortgage servicer shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information." Plaintiffs allege that Wells Fargo violated Section 2924.17 because its modification software was not reliable and therefore Wells Fargo's right to foreclose was not supported by competent and reliable information (Amd. Compl. ¶¶ 215–20).

Wells Fargo argues that Section 2924.17 only protects against "robo-signing," which "occurs when persons sign a document without personal knowledge of the content attested to

---

[2] In a footnote, Wells Fargo includes a string cite to a dozen non-binding decisions which either pre-date *Wigod*, fail to address *Wigod*'s analysis, or merely stand only for the general proposition that HAMP does not create a private federal remedy.

6

therein and/or sign the documents without the requisite authority to do so." *Mills v. JPMorgan Chase Bank, N.A.*, No. 16-cv-00665, 2016 WL 6896571, at *3 (E.D. Cal. Nov. 23, 2016) (Judge Dale Drozd) (citations and internal quotation marks omitted). Because the complaint does not allege "robo-signing," Wells Fargo argues, plaintiffs' claim fails as a matter of law. This order declines to read Section 2924.17's protections in such a limited way.

The purpose of the Homeowners Bill of Rights is to ensure that "borrowers are considered for, and have a meaningful opportunity to obtain, available loss mitigation options, if any, offered by or through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure." Cal. Civ. Code § 2923.4. Other courts in this district have upheld Section 2924.17 claims outside of the robo-signing context. *See, e.g., Penermon v. Wells Fargo Bank, N.A.*, 47 F. Supp. 3d 982, 997–98 (N.D. Cal. 2014) (Judge Kandis Westmore); *Green v. Cent. Mortg. Co.*, 148 F. Supp. 3d 852, 875–76 (N.D. Cal. 2015) (Judge Laurel Beeler). Indeed, Wells Fargo's own authorities explain that "Section 2924.17 prohibits 'robo-signing,' *or executing foreclosure documents without 'substantiat[ing] the borrower's default and the right to foreclose.'" *Monet v. JPMorgan Chase Bank, N.A.*, No. 17-cv-00623-LHK, 2017 WL 3895790, at *5 (N.D. Cal. Sept. 5, 2017) (Judge Lucy Koh) (emphasis added) (citation omitted). That Section 2924.17's prohibitions arose "from national media attention to . . . 'robosigning,'" Sen. Rules Comm., Off. of Sen. Floor Analyses, Conf. Rep. No. 1 on S.B. 900, 2011–2012 Reg. Sess., at p. 25–29 (as amended June 27, 2012), does not mean that the statute was designed to solve this problem alone. Wells Fargo's motion to dismiss plaintiffs' Section 2924.17 claim is accordingly **DENIED**.[3]

### 4. SECTION 17200.

To state a claim for unfair competition under Section 17200 of California Business and Professions Code, a plaintiff must allege that a defendant engaged in an "unlawful, unfair or fraudulent business act or practice." The statute is violated where a defendant's conduct violates

---

[3] As plaintiffs do not dispute, however, Section 2924.17 came into effect on January 1, 2013, and is not retroactively applied. *See Dahnken v. Wells Fargo Bank, N.A.*, No. No. 13-cv-2838 PJH, 2014 WL 523382, at *2 (N.D. Cal. Feb. 6, 2014) (Judge Phyllis Hamilton)*, aff'd sub nom. Dahnken v. Wells Fargo Bank, NA*, 705 F. App'x 508 (9th Cir. 2017). Accordingly, to the extent the complaint alleges that conduct took place before 2013, such conduct is not actionable under Section 2924.17.

7

any of the foregoing prongs. *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012). Here, plaintiffs assert a Section 17200 claim based on the "unlawful" and "unfair" prongs.

As to the unfairness prong, our court of appeals has applied unfairness under two different tests: *Cel-Tech* and *South Bay*. *See, e.g.*, *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 865–67 (9th Cir. 2018). *Cel-Tech* held that "unfair" conduct must be "tethered to some legislatively declared policy" or have some effect on competition. *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 186–87 (1999). Under *South Bay*, a challenged business practice qualifies as unfair when the practice is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *S. Bay Chevrolet v. Gen. Motors Acceptance Corporation*, 72 Cal. App. 4th 861, 886–87 (1999) (citation omitted).

The conduct alleged in the complaint satisfies the unfairness prong under either test. In allegedly failing to properly test and monitor its mortgage modification software, Wells Fargo undermined the legislatively-declared policy of California's Homeowners Bill of Rights "to ensure that, as part of the nonjudicial foreclosure process, borrowers are considered for, and have a meaningful opportunity to obtain, available loss mitigation options, if any, offered by or through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure." Cal. Civ. Code § 2923.4. Moreover, in prioritizing profits over adequate oversight, despite being on notice of deficiencies in its foreclosure practices, and causing hundreds of unnecessary foreclosures, Wells Fargo plausibly engaged in unscrupulous behavior.

As to the unlawful prong, plaintiffs allege that Wells Fargo engaged in unlawful practices by denying mortgage modifications "in violation of HAMP and other governmental requirements" (Amd. Compl. ¶ 224). Wells Fargo argues that HAMP cannot serve as the predicate for a Section 17200 claim because HAMP does not create a private right of action. Contrary to Wells Fargo, California law allows parties to challenge unlawful business practices under Section 17200 even where the underlying conduct violates a law that does not provide a private right of action. *See Zhang v. Superior Court*, 57 Cal. 4th 364, 376–77 (2013); *see also Fowler v. Wells Fargo Bank, N.A.*, No. 17-cv-02092-HSG, 2017 WL 3977385, at *2 (N.D. Cal.

8

Sept. 11, 2017) (Judge Haywood Gilliam, Jr.). This order therefore disagrees that plaintiffs cannot base their Section 17200 claim on alleged violations of HAMP.

Wells Fargo's authorities to the contrary are unconvincing. In both *Aleem v. Bank of America*, No. 09-cv-01812, 2010 WL 532330, at *3 (C.D. Cal. Feb. 9, 2010) (Judge Virginia Phillips), and *Bunce v. Ocwen Loan Servicing, LLC*, No. 13-cv-00976, 2013 WL 3773950, at *7 (E.D. Cal. July 17, 2013) (Judge William Shubb), the district court dismissed a Section 17200 claim premised on a violation of HAMP because HAMP does not provide a private right of action. Both *Bunce* and *Aleem*, however, ultimately relied on *Summit Technology, Inc. v. High-Line Medical Instruments Co., Inc.*, 922 F. Supp. 299, 316 (C.D. Cal. 1996) (Judge Audrey Collins), for the proposition that Section 17200 cannot create a private right of action where none exists under the federal statute. *Summit Technology*, however, predates the California Supreme Court's decision in *Zhang* and, as discussed above, misstates current California law.

Also unconvincing is Wells Fargo's argument that HAMP does not "have the force of law" and therefore cannot serve as a predicate for an "unlawful" Section 17200 claim. Wells Fargo relies solely on *Janda v. T-Mobile, USA, Inc.*, No. 05-cv-03729 JSW, 2009 WL 667206, at *8 n.9 (N.D. Cal. Mar. 13, 2009) (Judge Jeffrey White), where the district court dismissed a Section 17200 claim premised on violations of a FCC policy statement, which policy statement the FCC merely "encourage[d]" adherence to. Here, by contrast, HAMP does more than "encourage" adherence to its directives. And, although our court of appeals affirmed the district court's dismissal of the plaintiffs' Section 17200 claim, it did not adopt the district court's reasoning that the FCC policy statement lacked "the force of law" and therefore could not be relied upon to establish the claim. Rather, the appellate court concluded that the defendant's alleged conduct did not involve the sort of business practices discouraged by the policy statement. *Janda v. T-Mobile USA, Inc.*, 378 Fed. Appx. 705, 708 (9th Cir. 2010). The motion to dismiss plaintiffs' Section 17200 claim is accordingly **DENIED**.

5. **STATE CONSUMER PROTECTION CLAIMS.**

In the event that plaintiffs' Section 17200 claim is not applied on a nationwide basis, plaintiffs bring a claim for relief under the consumer protection statutes of five other states: the

9

Illinois Consumer Fraud Act, the Maryland Consumer Protection Act and Consumer Debt Collection Act, the New Jersey Consumer Fraud Act, Section 349(a) of New York's General Business Law, and the Pennsylvania Unfair Trade Practices and Consumer Protection Law. This claim is based on the same allegations regarding wrongful HAMP denials and purported audit and testing failures (Amd. Compl. ¶¶ 231–62), and Wells Fargo once again moves to dismiss these claims on the theory that plaintiffs cannot assert state-law claims premised on violations of HAMP. For the reasons already explained, this order disagrees that HAMP precludes state-law claims. Plaintiffs also allege more than a stand-alone HAMP violation. Rather, the complaint points to unfair and misleading business practices in connection with Wells Fargo's reckless failure to verify and audit its automated software and its misrepresentations regarding mortgagors' eligibility for loan modifications.

Wells Fargo also argues, and plaintiffs agree, that for purposes of Maryland law, a lender who complies with the terms of the parties' mortgage contract does not violate the Maryland Consumer Debt Collection Act or Maryland Consumer Protection Act even if the lender failed to abide by HAMP guidelines. As discussed below, plaintiffs have failed to allege that Wells Fargo breached their mortgage contracts. As to plaintiffs' Maryland claims only, the motion to dismiss plaintiffs' state consumer protection claims is **GRANTED**. The motion to dismiss these claims is otherwise **DENIED**.

### 6. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

The elements of the tort of intentional infliction of emotional distress are: (1) outrageous conduct, (2) an intent to cause or a reckless disregard of the possibility of causing emotional distress, (3) severe or extreme emotional distress, and (4) actual and proximate cause of the emotional distress by the outrageous conduct. *Symonds v. Mercury Sav. & Loan Ass'n*, 225 Cal. App. 3d 1458, 1468 (1990). Wells Fargo cites a multitude of decisions in which courts have concluded that the denial of a loan modification resulting in foreclosure does not give rise to a claim for intentional infliction of emotional distress. Here, however, plaintiffs allege much more than that.

The complaint alleges that Wells Fargo repeatedly failed to test the automated decision-making tool it used to determine borrowers' eligibility for mortgage modifications, even in the face of a consent decree which put Wells Fargo on notice that it needed to implement such testing. Moreover, as alleged in the complaint, Wells Fargo went so far as to conceal its discovery of systemic errors from regulators and borrowers for several years. Plaintiffs allege that Wells Fargo knowingly and repeatedly refused to address these problems, deliberately deciding to put profits and growth over compliance. As a result, plaintiffs (and hundreds of other borrowers) lost their homes and suffered severe emotional distress. Wells Fargo was happy to receive HAMP money but when it came time to actually deliver on loan modifications, it systematically turned homeowners out into the streets through an alleged pattern of reckless and heartless "errors" and "cover-ups." This order cannot say as a matter of law that Wells Fargo's conduct, as currently pled, could not be deemed outrageous. That issue will need to be considered after the facts are developed in discovery. In the meantime, the borrower-plaintiffs have stated a claim for intentional infliction of emotional distress and the motion to dismiss their claim is **DENIED**.

By comparison, plaintiff Iesha Brown's intentional infliction of emotion distress claim goes too far. According to the complaint, Brown lived with her mother, plaintiff Coszetta Teague, who purchased a home in Illinois for herself and her family through a mortgage loan from Wells Fargo. After Wells Fargo denied Teague's request for a loan modification, the entire family, including Brown, was forced to live in their car for roughly three years. This experience emotionally devastated Brown, who became depressed and had suicidal ideations (Amd. Compl. ¶¶ 101–08). While the extent to which the borrower-plaintiffs may bring their claims on behalf of putative non-borrower class members will be resolved at class certification, this order concludes that plaintiff Brown has failed to state a claim for intentional infliction of emotional distress.

The parties agree that Brown's claim for intentional infliction of emotional distress is governed by Illinois law. Unlike California law, which requires that a defendant have known that "particular plaintiffs" would be affected by its conduct, *Potter v. Firestone Tire & Rubber*

11

*Co.*, 6 Cal. 4th 965, 1002–03 (1993), to state a claim in Illinois, a plaintiff need only allege that the actor knew "that there is at least a high probability that his conduct will cause severe emotional distress," *Schweihs v. Chase Home Fin., LLC*, 77 N.E. 3d 50, 63 (2016). Here, not only does the complaint fail to allege facts plausibly suggesting that Wells Fargo knew of Brown's presence in the home, the complaint fails to plausibly allege that Wells Fargo had reason to believe that *anyone* other than the borrower would be impacted by foreclosure. Even taking the complaint's allegations and reasonable inferences therefrom as true, Brown has not alleged that Wells Fargo acted recklessly as to anyone other than the homeowners with whom Wells Fargo dealt. Wells Fargo's motion to dismiss Brown's claim for intentional infliction of emotional distress is **GRANTED**.

### 7. NEGLIGENCE.

To state a claim for negligence, a plaintiff must allege: (1) the defendant's legal duty of care to the plaintiff; (2) breach of that duty; (3) causation; and (4) resulting injury to the plaintiff. *Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 500 (2001). Here, California plaintiffs Debora Granja and Keith Lindner allege that Wells Fargo failed to use reasonable care in determining whether they were eligible for a mortgage modification (Amd. Compl. ¶¶ 198–203).

"[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal. App. 3d 1089, 1096 (1991) (citation omitted). To determine whether a duty of care exists in a particular case, California courts balance the factors set forth in *Biakanja v. Irving*, 49 Cal. 2d 647, 650 (1958): (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm.

The undersigned judge has held that a financial institution actively participates in the financed enterprise beyond the domain of the usual money lender when it offers borrowers a loan

12

modification and a trial period plan. *See Ansanelli v. JP Morgan Chase Bank, N.A.*, No. 10-cv-03892, 2011 WL 1134451, *7 (N.D. Cal. Mar. 28, 2011); *Avila v. Wells Fargo Bank*, No. 12-cv-01237, 2012 WL 2953117, at *12 (N.D. Cal. July 19, 2012). By contrast, where, as here, a defendant has not yet offered the plaintiff a loan modification, then the undersigned has held that the defendant has not actively participated in the financed enterprise beyond the role of a usual money lender and merely engaging in the loan modification process is insufficient to give rise to a duty of care. *Sun v. Wells Fargo Bank, Nat'l Ass'n*, No. 14-cv-00063, 2014 WL 1245299, at *4 (N.D. Cal. Mar. 25, 2014).

Courts are divided on whether accepting documents for a loan modification is within the scope of a lender's conventional role as a mere lender of money or whether it can instead give rise to a duty of care with respect to the processing of a loan modification application. While some courts have followed *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49 (2013), in deciding that under the *Biakanja* factors the loan servicer does not owe a borrower a common law duty of care in processing a loan modification application, others have followed *Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal. App. 4th 941 (2014), to conclude that a common law duty of care in the loan modification process does arise under California law.

Even after *Alvarez*, in at least three unpublished decisions our court of appeals has followed *Lueras* and held that a financial institution does not owe a duty of care to borrowers in the loan modification process. *See Anderson v. Deutsche Bank Nat'l Trust Co. Americas*, 649 Fed. Appx. 550, 552 (9th Cir. 2016); *Badame v. J.P. Morgan Chase Bank, N.A.*, 641 Fed. Appx. 707, 709–10 (9th Cir. 2016); *Deschaine v. IndyMac Morg. Servs.*, 617 Fed. Appx. 690, 692 (9th Cir. 2015). Because the undersigned has previously held that merely engaging in the loan modification process is insufficient to give rise to a duty of care, and because our court of appeals has consistently followed *Lueras* (albeit in non-binding decisions), this order concludes that plaintiffs have not alleged a duty of care in connection with their requests for loan modifications. Wells Fargo's motion to dismiss plaintiffs' negligence claim is **GRANTED**. This

13

order does not reach Wells Fargo's argument that the economic loss rule also bars plaintiffs' negligence claims.[4]

### 8. BREACH OF CONTRACT.

To allege a claim for breach of contract, a plaintiff must allege: "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." *Reichert v. General Ins. Co. of America*, 68 Cal. 2d 822, 830 (1968). Courts attempt to "ascertain [the parties'] intention solely from the written contract, if possible," *Starlight Ridge S. Homeowners Ass'n v. Hunter-Bloor*, 177 Cal. App. 4th 440, 447 (2009), and begin by assuming contract terms have their "plain, ordinary, popular or legal meaning," *Hayter Trucking, Inc. v. Shell W. E&P, Inc.*, 18 Cal. App. 4th 1, 15 (1993). If the "ordinary and popular sense" leaves doubt regarding a word's meaning, courts consider the circumstances under which the contract was made, the matter to which it relates, and any special meaning given to words by usage. *Starlight Ridge*, 177 Cal. App. 4th at 447–48.

For ten of the twelve named plaintiffs, the alleged contract is the secured-loan instrument they entered into when they financed their homes. The relevant contractual language, which requires Wells Fargo to give notice to borrowers before initiating foreclosure, provides:[5]

> Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach . . . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date not less than 30 days from the date the notice is given to Borrower, by which default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property.

---

[4] In recognizing that courts disagree as to whether a loan modification application creates a duty of care for money lenders, the undersigned judge has noted that "[f]ederal district courts applying California law after *Alvarez* overwhelmingly hold that the California Supreme Court would recognize a duty of care." *Kaar v. Wells Fargo Bank, N.A.*, No. 16-cv-01290, 2016 WL 3068396, at *4 (N.D. Cal. June 1, 2016) (quoting *MacDonald v. Wells Fargo Bank N.A.*, No. 14-cv-04970, 2015 WL 1886000, at *5 (N.D. Cal. Apr. 24, 2015) (Judge Haywood Gilliam, Jr.)). Nevertheless, for the reasons stated herein, this order declines to adopt the reasoning set forth in *Alvarez*.

[5] Plaintiffs' secured-loan instruments also contain a choice of law provision which provides for the application of the law of the jurisdiction in which the subject property was located. Although plaintiffs hail from eleven different states, the parties only briefed California law in connection with plaintiffs' breach of contract claim. This order accordingly analyzes this claim under California law only.

14

Plaintiffs contend that Wells Fargo breached the requirement to notify them of "the action required to cure the default" by accelerating payments and commencing foreclosure without first notifying them "that they could cure their default and avoid acceleration and foreclosure by accepting a mortgage modification" (Amd. Compl. ¶ 189). This order disagrees that plaintiffs have alleged a breach of contract claim. Nothing in this provision (or any other provision in the contract) supports plaintiffs' proposed interpretation. The secured-loan instrument does not mention mortgage modification at all. Instead, it gives the bank the absolute right to foreclose in the event of an uncured default. The alleged requirement to offer plaintiffs a loan modification comes only from "HAMP or related programs," none of which are referenced in the contract that Wells Fargo purportedly breached.

Nor is the language at issue — "the action required to cure the default" — sufficiently ambiguous to raise a factual question that cannot be resolved through a motion to dismiss. Under California law, "[t]he fundamental goal of contract interpretation is to give effect to the mutual intent of the parties as it existed at the time of contracting." *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 989 (9th Cir. 2006) (per curiam) (citation omitted). Plaintiffs point to nothing in the complaint to suggest that a "government-mandated mortgage modification" even existed at the time they entered into their contracts with Wells Fargo. Accordingly, the phrase "the action required to cure the default" is susceptible to only one reasonable interpretation under the circumstances alleged — payment of the amount required to bring the loan current. While Wells Fargo's failure to offer plaintiffs loan modifications may have violated HAMP (for which there is no private right of action), that failure did not amount to a breach of plaintiffs' secured-loan instruments. Wells Fargo's motion to dismiss this claim is **GRANTED**.

The opposition to the instant motion acknowledges that plaintiffs Demartino and Hood's secured-loan instruments do not include the "action required to cure the default" language that forms the basis of plaintiffs' breach of contract claim. Demartino and Hood accordingly request leave to amend the complaint to allege "similar breach of contract claims" based on the language of their respective secured-loan instruments. This request is **DENIED** without prejudice.

15

Plaintiffs may file a noticed motion for leave to amend the complaint in accordance with the procedures set forth below.

### 9. WRONGFUL FORECLOSURE.

Plaintiffs also assert a claim for wrongful foreclosure under California and Georgia law. Under California law, the basic elements of the tort of wrongful foreclosure are as follows: (1) the defendant causes an illegal, fraudulent or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the plaintiff was prejudiced or harmed; and (3) the mortgagor tendered the amount of the secured indebtedness or was excused from tendering. *Miles v. Deutsche Bank Nat'l Trust Co.*, 236 Cal. App. 4th 394, 408 (2015). Georgia law similarly permits a wrongful foreclosure claim "when a creditor forecloses on property without the legal right to do so, in violation of the terms of the deed." *Sheely v. Bank of Am., N.A.*, 36 F. Supp. 3d 1364, 1377 (N.D. Ga. 2014) (Judge Timothy Batten) (quoting *BAC Home Loans Servicing, L.P. v. Wedereit*, 759 S.E. 2d 867, 872 (2014)).

As with their breach of contract claim, plaintiffs' wrongful foreclosure claim is premised on the allegation that "the foreclosure was unlawful and/or unfair because Wells Fargo did not first notify Plaintiffs . . . that they could cure their default by accepting a mortgage modification" (Amd. Compl. ¶ 206). As set forth above, however, nothing in plaintiffs' secured-loan instruments required Wells Fargo to modify their loans or notify them of the potential to cure their default through a loan modification. Accordingly, because plaintiffs' wrongful foreclosure claim is based on the theory that Wells Fargo illegally foreclosed on plaintiffs' properties by failing to comply with the terms of plaintiffs' secured-loan instruments, their claim fails and must be dismissed.

Plaintiffs summarily argue that they have stated a wrongful foreclosure claim under California law, separate and apart from any breach of their secured-loan instruments, because California also permits wrongful foreclosure claims to be premised on "unfair business practices" (Opp. at 17) (citing *Ryan-Beedy v. Bank of New York Mellon*, 293 F. Supp. 3d 1101, 1115 (E.D. Cal. 2018)). Even assuming plaintiffs' statement of the law is correct, they wholly fail to explain why the business practices at issue are sufficiently unfair to be considered

"fraudulent" or "willfully oppressive" so as to state a claim for wrongful foreclosure. The motion to dismiss plaintiffs' wrongful foreclosure claim is accordingly **GRANTED**.

### 10. REQUEST FOR JUDICIAL NOTICE.

Courts may take judicial notice of facts that are not subject to reasonable dispute because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FRE 201(b). "[M]atters of public record" are the appropriate subjects of judicial notice. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002). The order accordingly **GRANTS** Wells Fargo's unopposed request for judicial notice of (1) the 2011 OCC consent order, (2) the servicer participation agreement between Wells Fargo and Fannie Mae, and (3) the secured-loan instruments of certain plaintiffs.

## CONCLUSION

For the reasons stated, Wells Fargo's motion to dismiss is **GRANTED IN PART AND DENIED IN PART**. By **JUNE 10 AT NOON**, each side shall file a supplemental brief, not to exceed five pages, regarding the impact, if any, of this order on Wells Fargo & Company's pending motion to dismiss. Although plaintiffs will be permitted to seek leave to amend the dismissed claims by a motion noticed on the normal 35-day calendar, a schedule for such motion will be set following the resolution of Wells Fargo & Company's pending motion to dismiss. Meanwhile, discovery should proceed in a robust way.

**IT IS SO ORDERED.**

Dated: June 3, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

17