Amanda L. Groves (SBN: 187216)
agroves@winston.com
Morgan E. Stewart (SBN: 321611)
mstewart@winston.com
**WINSTON & STRAWN LLP**
101 California Street, 35th Floor
San Francisco, CA  94111-5802
Telephone:   (415) 591-1000
Facsimile:   (415) 591-1400

Kobi K. Brinson (Admitted *pro hac vice*)
kbrinson@winston.com
Stacie C. Knight (Admitted *pro hac vice*)
sknight@winston.com
**WINSTON & STRAWN LLP**
300 South Tryon Street, 16th Floor
Charlotte, NC 28202
Telephone:   (704) 350-7700
Facsimile:   (704) 350-7800

Attorneys for Defendant
WELLS FARGO BANK, N.A.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ALICIA HERNANDEZ, *et al.*, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO & COMPANY and WELLS FARGO BANK, N.A.,<br><br>Defendants. | No. 3:18-cv-07354 WHA<br><br>**DEFENDANT WELLS FARGO & COMPANY'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Date: June 20, 2019<br>Time: 8:00 a.m.<br>Courtroom: 12<br>Judge: Hon. William H. Alsup |

**TABLE OF CONTENTS**

| | | | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | ARGUMENT | | 1 |
| | A. | Plaintiffs Have Not Alleged That the Holding Company is Responsible for the Alleged Actions of its Subsidiary. | 1 |
| | | 1. Plaintiffs' Alter Ego Allegations Are Woefully Insufficient. | 1 |
| | | 2. Plaintiffs Have Not Alleged a Basis to Find an Agency Relationship Between the Holding Company and the Bank. | 3 |
| | B. | The Holding Company is Not Directly Liable to Plaintiffs. | 4 |
| | | 1. Plaintiffs Intentional Infliction of Emotional Distress Claim Should Be Dismissed (Count II). | 4 |
| | | 2. Plaintiffs' California Negligence Claims Should Be Dismissed (Count III). | 6 |
| | | 3. Plaintiffs' Wrongful Foreclosure and HBOR Claims Fail (Counts IV and V). | 8 |
| | | 4. The Court Should Dismiss Plaintiffs' UCL Claim (Count VI). | 8 |
| | | 5. The Court Should Dismiss Plaintiffs' Various State Consumer Protection Claims (Count VII). | 11 |
| III. | CONCLUSION | | 11 |

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Aas v. Super. Ct.*,
  24 Cal. 4th 627 (2000) .................................................................................................................6

*Almasi v. Equilon Enters., LLC*,
  2012 WL 3945528 (N.D. Cal. Sept. 10, 2012) ..........................................................................11

*Biankanja v. Irving*,
  49 Cal. 2d 647 (1958) .................................................................................................................7

*Cabanilla v. Wachovia Mortg.*,
  2012 WL 13020028 (C D. Cal. Mar. 20, 2012) .........................................................................11

*Chao v. Rothermel*,
  327 F.3d 223 (3d Cir. 2003) ........................................................................................................8

*Christensen v. Super. Ct.*,
  54 Cal. 3d 868 (1991) .................................................................................................................5

*CitiMortgage, Inc. v. Carpenter*,
  2012 WL 1079807 (Ohio Ct. App. March 30, 2012) ..................................................................9

*Conant v. Wells Fargo Bank, N.A.*,
  60 F. Supp. 3d 99 (D.D.C. 2014) ................................................................................................7

*Coon v. Fed. Nat'l Mortg. Ass'n*,
  2018 WL 3887508 (E.D. Va. Aug. 15, 2018) .............................................................................8

*Corvello v. Wells Fargo Bank*,
  728 F.3d 878 (9th Cir. 2013) .......................................................................................................6

*Ghaffari v. Wells Fargo Bank, N.A.*,
  2014 WL 6606611 (M.D. Pa. Nov. 19, 2014) ............................................................................7

*Henrietta E. Willis Revocable Trust v. Wells Fargo Bank, N.A.*,
  2014 WL 12596430 (C.D. Cal. Nov. 10, 2014) ..........................................................................7

*Hodges v. Apple Inc.*,
  No. 13-CV-01128-WHO, 2013 WL 4393545 (N.D. Cal. Aug. 12, 2013) ................................10

*Katzir's Floor & Home Design, Inc. v. M-MLS.com*,
  394 F.3d 1143 (9th Cir. 2004) ....................................................................................................2

*Lamberth v. Clark City Sch. Dist.*,
  698 F. App'x 387 (9th Cir. 2017) ...............................................................................................2

ii

DEFENDANT WELLS FARGO & COMPANY'S REPLY IN FURTHER SUPPORT OF ITS
MOTION TO DISMISS FIRST AMENDED COMPLAINT
3:18-cv-07354-WHA

*Leek v. Cooper*,
 194 Cal. App. 4th 399 (2011) .................................................................................................2

*Lucke v. Wells Fargo Bank, N.A.*,
 2014 WL 12601035 (D. Minn. Apr. 2, 2014) ..........................................................................7

*Menacho v. U.S. Bank Nat'l Ass'n*,
 281 F. Supp. 3d 607 (E.D. Va. 2017) .......................................................................................9

*Oskoui v. J.P. Morgan Chase Bank, N.A.*,
 851 F.3d 851 (9th Cir. 2017) ....................................................................................................6

*Pantoja v. Countrywide Home Loans, Inc.*,
 640 F. Supp. 2d 1177 (N.D. Cal. 2009) ....................................................................................4

*Peters v. Wells Fargo Bank, N.A.*,
 2013 WL 12218470 (C.D. Cal. Dec. 19, 2013) .......................................................................7

*PNC Mortg. v. Garland*,
 2014 WL 1325908 (Ohio Ct. App. Mar. 20, 2014) ................................................................10

*Pullen v. Victory Woodwork, Inc.*,
 2007 WL 1847633 (E.D. Cal. June 27, 2007) .........................................................................7

*Quigley v. Verizon Wireless*,
 2012 WL 1945784 (N.D. Cal. May 30, 2012) .........................................................................2

*Reamer v. Deutsche Bank Nat'l Tr. Co. Americas*,
 2016 WL 1259557 (E.D. Va. Mar. 28, 2016) ..........................................................................9

*Ridenhour v. Bank of Am., N.A.*,
 23 F. Supp. 3d 1201 (D. Id. 2014) .......................................................................................6, 8

*Rubin v. Wal-Mart Stores, Inc.*,
 599 F. Supp. 2d 1176 (N.D. Cal. 2009) ..................................................................................11

*Saaiman v. Am. Gen. Life Ins. Co.*,
 2019 WL 1864858 (S.D. Cal. Apr. 25, 2019) ..........................................................................3

*Sandoval v. Ali*,
 34 F. Supp. 3d 1031 (N.D. Cal. 2014) .....................................................................................1

*Sonora Diamond Corp. v. Superior Ct.*,
 83 Cal. App. 4th 523 (2000) ........................................................................................1, 2, 3, 4

*Velasco v. Wells Fargo Bank*,
 2015 WL 12746226 (C.D. Cal. Jan. 8, 2015) ..........................................................................7

*Weathers v. HSBC Bank USA, NA*,
 2015 WL 506459 (Minn. Ct. App. Feb. 9, 2015) .....................................................................9

iii

DEFENDANT WELLS FARGO & COMPANY'S REPLY IN FURTHER SUPPORT OF ITS
MOTION TO DISMISS FIRST AMENDED COMPLAINT
3:18-cv-07354-WHA

*Whitlock v. Pepsi Ams.*,
    681 F. Supp. 2d 1116 (N.D. Cal. 2010) ....................................................................................5

*Wigod v. Wells Fargo Bank, N.A.*,
    673 F.3d 547 (7th Cir. 2012) ............................................................................................9, 10

**Statutes**

5 U.S.C. § 553 .................................................................................................................................8

12 U.S.C. § 5219(a) ........................................................................................................................9

Cal. Civ. Code §2924.17 ...............................................................................................................10

## I. INTRODUCTION

Plaintiffs' Opposition confirms that the FAC should be dismissed. Plaintiffs concede that they are strangers to the Holding Company, having had no contract or relationship with it whatsoever. Plaintiffs attempt to avoid the damning nature of that concession by allegations that the Holding Company "owned" and "controlled" the Bank. Neither is or could adequately be pled, which is likely why the Opposition resorts to misconstruing the relevant law. Indeed, Plaintiffs' heavy reliance on rhetoric, and conclusory allegations devoid of facts, reveals one thing: their claims against the Holding Company are legally deficient, and the Court should dismiss them with prejudice.

## II. ARGUMENT

### A. Plaintiffs Have Not Alleged That the Holding Company is Responsible for the Alleged Actions of its Subsidiary.

In their Opposition, Plaintiffs claim they have alleged two bases for making the Holding Company liable for the alleged actions of its subsidiary, the Bank. Relying on the same conclusory allegations of "ownership," "control, and overlapping "officers and/or directors," Plaintiffs argue that the Holding Company and the Bank are alter egos, and that the Holding Company is "indirectly liable to Plaintiffs through the acts of its agent, [the Bank]." Opp. at 5. Plaintiffs are wrong on both fronts.

#### 1. Plaintiffs' Alter Ego Allegations Are Woefully Insufficient.

First, as California courts repeatedly have held, "[a]lter ego is an extreme remedy, sparingly used." *Sonora Diamond Corp. v. Superior Ct.*, 83 Cal. App. 4th 523, 539 (2000). Accordingly, conclusory allegations of alter ego status are inadequate; instead, the "plaintiff must allege specifically both of the elements of alter ego liability, as well as facts supporting each." *Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1040–41 (N.D. Cal. 2014) (citation omitted). Plaintiffs Opposition confirms they have not met this heightened standard. Indeed, by repeating the FAC's conclusory allegations of "ownership and control" and overlapping officers and directors, the Opposition exposes Plaintiffs' belief that scattering a few buzzwords into the FAC is enough to sustain an alter ego allegation. *See* Opp. at 5 (the Holding Company "owns and controlled the Bank" and "the

1

DEFENDANT WELLS FARGO & COMPANY'S REPLY IN FURTHER SUPPORT OF ITS
MOTION TO DISMISS FIRST AMENDED COMPLAINT
3:18-cv-07354-WHA

Bank's board of directors 'were also officers and/or directors of [the Holding Company]"). But state and federal courts in California repeatedly hold that such conclusory allegations are not enough. *See, e.g., Quigley v. Verizon Wireless*, 2012 WL 1945784, at *4 (N.D. Cal. May 30, 2012) ("broad allegations of control, standing alone, are not sufficient to meet the Rule 8 standard laid out in *Twombly* and *Iqbal*"). And, Plaintiffs do not cite a single case allowing such conclusory allegations to proceed.

In any event, sole ownership and control is itself insufficient to make the Holding Company liable for the Bank's alleged actions. *Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004);[1] *see also Leek v. Cooper*, 194 Cal. App. 4th 399, 415 (2011) ("allegation that a person owns all of the corporate stock and makes all management decisions is insufficient to cause the court to disregard the corporate entity"). The allegedly overlapping "officers and/or directors" also is insufficient. As explained in the opening brief, courts agree that "[i]t is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts." *Sonora Diamond Corp*, 83 Cal. App. 4th at 549. In fact, the presumption is "that each common officer or director wore the appropriate 'hat' when making corporate and operational decisions for the respective entities." *Id*. The FAC does not make a single allegation rebutting this presumption.

In a tacit admission that their existing allegations are insufficient—and in an apparent attempt to improperly amend their allegations through their Opposition brief[2]—Plaintiffs next argue that the Holding Company's consolidated SEC reporting "demonstrate[s] [the Holding Company's] direct oversight of the Bank's mortgage modification and foreclosure procedures." Opp. at 4.[3] But it is well-established that consolidated reporting – *i.e*., reports that combine information about the

---

[1] Plaintiffs assert that *Katzir* is not controlling because it was not decided at the motion to dismiss stage. However, the opening brief cites *Katzir* for its well-established, non-controversial statements of law. Plaintiffs' attempt to distinguish Katzir based on its procedural posture, and not on the law, demonstrates the weaknesses of their position.

[2] It is well-established that a party cannot amend its complaint through an opposition to a motion to dismiss. *See, e.g., Lamberth v. Clark City Sch. Dist.*, 698 F. App'x 387, 389 (9th Cir. 2017).

[3] As shown in the Opposition to Plaintiffs' Request for Judicial Notice, filed contemporaneously herewith, the contents of the Holding Company's SEC filings are not judicially noticeable, and cannot save Plaintiffs' claims in any event.

subsidiary with information about the parent – is a common business practice that is recommended by generally accepted accounting principles and allowed by both the IRS and the SEC. *See Sonora Diamond Corp.*, 83 Cal. App. 4th at 550. Accordingly, courts have found that the use of "we, "the Company," or even a single name to refer to both the parent and subsidiary in such reports cannot be the basis of establishing that the companies are, in practice, a single entity. *Id*.

Plaintiffs' final argument is that they have adequately alleged the second prong of alter ego liability: that an inequitable result will follow if the Court considers the actions taken by the Bank to be those of the Bank alone. According to Plaintiffs, "the complaint illustrates the injustice or fraud that would result if [the Holding Company and the Bank] are not treated as alter egos," because it alleges that the Holding Company's "risk management executives and directors failed to monitor HAMP programs 'in violation of the promises they made in the 2011 Consent Order,'" and, "allowing [the Holding Company] to avoid accountability to Plaintiffs for failing to do so would be unjust." Opp. at 6 (citing FAC ¶ 46). That argument misses the mark for multiple reasons. First, Plaintiffs have conflated their indirect theory of liability against the Holding Company—*i.e.*, that it should be responsible for the Bank's alleged conduct—with whether the Holding Company is directly liable to them as a result of its own conduct ("allowing [the Holding Company] to avoid accountability to Plaintiffs for failing to [comply with the 2011 Consent Order] would be unjust"). Second, the Holding Company owed Plaintiffs no duties under HAMP or the 2011 Consent Order, so Plaintiffs cannot rely on either to sustain a claim against the Holding Company. And finally, to adequately allege the second alter ego prong, Plaintiffs must allege facts showing, for example, that the Bank "would be unable to satisfy a judgment that Plaintiff[s] might obtain." *Saaiman v. Am. Gen. Life Ins. Co.*, 2019 WL 1864858, at *5 (S.D. Cal. Apr. 25, 2019). Whether or not Plaintiffs believe it would be "unjust" to allow the Holding Company "to avoid accountability" for the conduct alleged has nothing to do with that analysis.

**2. Plaintiffs Have Not Alleged a Basis to Find an Agency Relationship Between the Holding Company and the Bank.**

Nor have Plaintiffs adequately alleged an agency relationship between the Holding Company and the Bank. The "key characteristic" required to find an agent-principal relationship is control.

3

*Sonora Diamond Corp.*, 83 Cal. App. 4th at 541.  Plaintiffs' burden here is not a light one.  Rather, they must allege "that the [Holding Company] so controls [the Bank] as to cause [the Bank] to become merely the instrumentality of [the Holding Company]]." *Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 1177, 1192 (N.D. Cal. 2009).  For this reason, "general executive control over the subsidiary is not enough; rather there must be a strong showing beyond simply facts evidencing the broad oversight typically indicated by the common ownership and common directorship present in a normal parent-subsidiary relationship." *Id*. at 542 (internal quotation marks and citation omitted).  A parent-subsidiary relationship is not a principal-agent relationship unless the parent "moved beyond the establishment of general policy and direction for the subsidiary and in effect [has] taken over performance of the subsidiary's day-to-day operations in carrying out that policy." *Id*. (emphasis in original).

In their Opposition, Plaintiffs ignore these pleading requirements.  Instead, just as they do with their alter ego arguments, Plaintiffs simply repeat the FAC's conclusory allegations of "ownership and control." *See* Opp. at 5.  But Plaintiffs do not allege any facts showing that the Holding Company took over the Bank's day-to-day mortgage modification and foreclosure operations.  Indeed, they allege the opposite: that the Holding Company did not exercise enough control over the Bank. *See, e.g*., FAC ¶¶ 2, 5, 7, 43-47. Far from establishing agency, Plaintiffs have pled themselves out of that liability theory, and the Court should dismiss it as a matter of law.

For all these reasons, Plaintiffs have not alleged a basis to render the Holding Company liable for the purported acts of its subsidiary, and the claims against it should be dismissed with prejudice.

**B.     The Holding Company is Not Directly Liable to Plaintiffs.**

Given the utter lack of connection between Plaintiffs and the Holding Company, Plaintiffs necessarily strain to defend including the Holding Company as directly liable. Each claim premised on direct liability should be dismissed.

        **1.     Plaintiffs Intentional Infliction of Emotional Distress Claim Should Be Dismissed (Count II).**

The Opposition ignores the Holding Company's argument that as a non-lender/servicer who

did not deny any putative class members a mortgage modification, foreclose on any of their properties, or have any relationship with them whatsoever, the Holding Company could not have directed any of its alleged conduct at them or acted in their presence—a required element for their IIED claim.  *See Christensen v. Super. Ct.*, 54 Cal. 3d 868, 903 (1991) (in alleging a claim for intentional infliction of emotional distress, "[i]t is not enough that the conduct be intentional and outrageous.  It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware.") (emphasis added); *see also Whitlock v. Pepsi Ams.*, 681 F. Supp. 2d 1116, 1122 (N.D. Cal. 2010).  Instead, Plaintiffs argue that "[t]here is a direct connection between [the Holding Company] and the emotional distress that Plaintiffs suffered." Opp. at 6.  That is not the law—aptly demonstrated by Plaintiffs' failure to cite any.

Next, Plaintiffs argue that their IIED claim does not attempt to enforce the Holding Company's government consent orders or HAMP because "nowhere in the complaint do Plaintiffs include any claims or allegations to enforce those government regulations." Opp. at 7.  But Plaintiffs give themselves away elsewhere in the Opposition, where they admit: "Plaintiffs' First Amended Complaint includes claims based, in part, on … government consent orders … ." Opp. at 1.  Plaintiffs also ignore their own pleading, which specifically premises their claims on alleged HAMP and consent order violations.[4]  While the Holding Company acknowledges that the Court has allowed Plaintiffs' HAMP- and the consent-order based claims to proceed against the Bank, critical differences require a different outcome regarding the Holding Company.  It is undisputed that, unlike the Bank, the Holding Company had no relationship with Plaintiffs at all.  Thus, without any relationship or other basis to assert their claims against the Holding Company, Plaintiffs necessarily

---

[4] *See* FAC ¶ 34 (alleging that Plaintiffs could have avoided their claimed injuries "if Wells Fargo had lowered their mortgage payments as HAMP required"); ¶ 39 ("the Bank repeatedly violated HAMP"); ¶ 192 ("Wells Fargo ignored consent decrees requiring it to reform is mortgage modification and foreclosure practices"); ¶ 201 ("Wells Fargo's conduct violated HAMP"); ¶ 217 (asserting violations of HBOR:  "Wells Fargo was therefore required to offer Plaintiffs and class members the opportunity to cure their default by accepting a [HAMP] mortgage modification before it could exercise its right to foreclose[.]"); ¶ 224 (asserting violation of UCL: "Wells Fargo engaged in unlawful practices by denying mortgage modifications to Plaintiffs and class members in violation of HAMP and other governmental requirements."); and ¶¶ 233, 238 (asserting claims under various state consumer protection statutes: "Wells Fargo engaged in unfair practices by denying mortgage modifications to Plaintiffs and class members in violation of HAMP[.]").

must rely on breaches of HAMP and the consent order—there is nothing else. Plaintiffs admit they cannot enforce the consent order, and, HAMP does not help them either; it is undisputed that the Holding Company did not participate in HAMP, thus, any alleged HAMP violations cannot form the basis of a claim against the Holding Company. For this reason, Plaintiffs' cited cases, *Corvello v. Wells Fargo Bank*, 728 F.3d 878 (9th Cir. 2013), and *Oskoui v. J.P. Morgan Chase Bank, N.A.*, 851 F.3d 851 (9th Cir. 2017), which involved ***mortgage servicers*** who refused to give the plaintiffs permanent loan modifications upon successful completion of their HAMP trial payment plans, are irrelevant.

Because Plaintiffs had no relationship or dealings with the Holding Company, their IIED claim should be dismissed.

### 2. Plaintiffs' California Negligence Claims Should Be Dismissed (Count III).

The first sentence of Plaintiffs' negligence argument demonstrates exactly why their negligence claim fails as a matter of law. As Plaintiffs concede, a party is liable for negligence only when "he owes a duty of care to a plaintiff or a class of which a plaintiff is a member," and "[t]his duty may arise through statute or contract, or it may be based on the parties' relationship." Opp. at 7. But, as Plaintiffs admit, they had no contract and no relationship with the Holding Company.[5] Accordingly, the Holding Company's alleged duties to them must arise out of a statute.

But it is axiomatic that the Holding Company's government consent orders were not statutes. Nor was HAMP – which, again, the Holding Company did not participate in. Rather, HAMP was a voluntary government program and certainly not a statute. *See, e.g.*, *Ridenhour v. Bank of Am., N.A.*, 23 F. Supp. 3d 1201, 1206 (D. Id. 2014) ("The HAMP guidelines are not regulations. Thus, they do not create legal duties, and the claim, as pled, should be dismissed."). *See also* Section 4, below.

In an attempt to avoid this result, Plaintiffs again try to disclaim the consent orders, arguing that they "do not refer to the 2011 Consent Order to predicate their negligence claim, but as evidence

---

[5] Plaintiffs admit they are not "in privity" with the Holding Company, and cite *Aas v. Super. Ct.*, 24 Cal. 4th 627, 645 (2000), as support for allowing their negligence claim to proceed. *See* Opp. at 8. *Aas* discussed the economic loss rule, which holds that plaintiffs cannot recover in tort for purely economic losses. *Aas* is not relevant to any issue before the Court.

of [the Holding Company's] knowledge of its previous and continued misconduct … ." Opp. at 8, n.3.  As shown in the opening brief, however, duties do not "arise out of thin air." *Pullen v. Victory Woodwork, Inc.*, 2007 WL 1847633, at *3 (E.D. Cal. June 27, 2007).  Plaintiffs never identify any other source of the Holding Company's alleged "obligations to properly maintain and test its software programs" or its "oversight, auditing, and testing responsibilities in the foreclosure and loss mitigation (loan modification) arenas" (Opp. at 8), and, as courts repeatedly have held, alleged breaches of the duties in the 2011 Consent Order cannot form the basis of a negligence claim.  *See Velasco v. Wells Fargo Bank*, 2015 WL 12746226, at *3 (C.D. Cal. Jan. 8, 2015) ("[Plaintiff's] attempt to rely on the Consent Order to create a duty of care … is … without merit because [she] is not a party to the Consent Order, and the Consent Order specifically denies a private right of action to third parties."); *Henrietta E. Willis Revocable Trust v. Wells Fargo Bank, N.A.*, 2014 WL 12596430, at *5 (C.D. Cal. Nov. 10, 2014) (rejecting negligence claim premised upon Wells Fargo's 2011 OCC Consent Orders, reasoning that it expressly precludes third-party claims and could not support the imposition of any duties of care on Wells Fargo).[6]  Plaintiffs have no answer for these cases—which presumably is why they have ignored them.

Plaintiffs next argue that the six "*Biankanja*" factors[7] compels the Court to create new law and conclude that the Holding Company owed them—complete strangers—a duty of care.  *See* Opp. at 7-8.  Plaintiffs' pithy, six-sentence analysis of those factors is not supported by a single citation to their FAC or by a single case.  And, in light of the Court's June 3, 2019 order ("Order"), which dismissed the negligence claim against the Bank—the only defendant with whom Plaintiffs had a relationship—this claim necessarily must fail as to the Holding Company, which was a complete stranger to them.  Dkt. 87 at 12-14.  This claim, too, should be dismissed.

---

[6] *See also Conant v. Wells Fargo Bank, N.A.*, 60 F. Supp. 3d 99, 117 (D.D.C. 2014); *Lucke v. Wells Fargo Bank, N.A.*, 2014 WL 12601035, at *3 (D. Minn. Apr. 2, 2014); *Ghaffari v. Wells Fargo Bank, N.A.*, 2014 WL 6606611, at *8 (M.D. Pa. Nov. 19, 2014); *Peters v. Wells Fargo Bank, N.A.*, 2013 WL 12218470, at *5 (C.D. Cal. Dec. 19, 2013).

[7] (1) "the extent to which the transaction was intended to affect the plaintiff," (2) "the foreseeability of harm to him," (3) "the degree of certainty that the plaintiff suffered injury," (4) "the closeness of the connection between the defendant's conduct and the injury suffered," (5) "the moral blame attached to the defendant's conduct," and (5) "the policy of preventing future harm." *Biankanja v. Irving*, 49 Cal. 2d 647, 650 (1958).

### 3. Plaintiffs' Wrongful Foreclosure and HBOR Claims Fail (Counts IV and V).

Plaintiffs concede that their wrongful foreclosure and HBOR claims against the Holding Company are based solely on their "indirect" theories of liability, *i.e.*, agency and alter ego. *See* Opp. at 8-10. As shown above and in the opening brief, those theories fail as a matter of law. Thus, Plaintiffs' wrongful foreclosure and HBOR claims against the Holding Company should be dismissed with prejudice.

### 4. The Court Should Dismiss Plaintiffs' UCL Claim (Count VI).

Plaintiffs' Opposition does not salvage their UCL claim.

First, an "unlawful" UCL claim must be based on a violation of another law. *See* Opp. at 10 ("the UCL does not 'enforce' other laws; it 'borrows' violations of other laws and treats them as unlawful practices"). According to Plaintiffs, they base their unlawful UCL claim on "a 'predicate' violation of HAMP and its implementing directives, which have the force of law." Opp. at 11. Plaintiffs are wrong. HAMP was not law, but rather a voluntary government ***program***, and its guidelines were neither law nor regulation. *See, e.g., Ridenhour*, 23 F. Supp. 3d at 1206 ("The HAMP guidelines are not regulations. Thus, they do not create legal duties … "). The HAMP guidelines were neither the subject of formal notice and comment rulemaking nor were they published in the Federal Register – both of which the Administrative Procedures Act requires for legislative rules imposing new duties (which do have the force and effect of law). *See* 5 U.S.C. § 553; *Chao v. Rothermel*, 327 F.3d 223, 227 (3d Cir. 2003) ("Legislative rules that impose new duties upon the regulated party have the force and effect of law and must be promulgated in accordance with the proper procedures under the Administrative Procedures Act"; *Coon v. Fed. Nat'l Mortg. Ass'n*, 2018 WL 3887508, at *7 n. 12 (E.D. Va. Aug. 15, 2018) (HAMP directive "does not constitute a rule with the effect of law" because it "was not subject to the notice or comment requirements and simply provides guidance to servicers on the obligations under HAMP"). As HAMP lacks the force or effect of law[8]

---

[8] Wells Fargo recognizes that the Court has determined that whether HAMP includes a private right of action is not determinative of Plaintiffs' UCL claim. Dkt. 87 at 8-9.

it cannot underpin Plaintiffs' UCL claim under the "unlawful" prong.

Plaintiffs' lone case on this score, *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012), does not help them. *Wigod* did not suggest – as the Opposition states – that "[Plaintiffs] may plead a UCL unlawful claim based on a 'predicate' violation of HAMP and its implementing directives, which have the force of law." First, *Wigod* did not even involve a UCL claim, let alone address the statute's requirements.[9]  Second, the Opposition cites to *Wigod* as "explaining implementation of HAMP 12 U.S.C. § 5219(a) through Secretary of Treasury directives" – as if this explanation somehow supports Plaintiff's position. On the contrary, the fact that Treasury directives implement the program only proves the Motion's point. Directives do not have the force of law, as courts have "repeatedly and resoundingly held." *Reamer v. Deutsche Bank Nat'l Tr. Co. Americas*, 2016 WL 1259557, at *5 (E.D. Va. Mar. 28, 2016) ("[C]ourts have 'repeatedly and resoundingly held' that Supplemental Directive No. 09-01 [HAMP] does not have such force of law that a violation would provide a cause of action under a contract's applicable law provision, because no private right of action by a borrower to enforce HAMP regulations exists."); *Weathers v. HSBC Bank USA, NA,* 2015 WL 506459, at *4 (Minn. Ct. App. Feb. 9, 2015) ("There is no caselaw, nor do appellants cite any, that states that HAMP directives are 'state or federal law'"); *Menacho v. U.S. Bank Nat'l Ass'n*, 281 F. Supp. 3d 607, 609–10 (E.D. Va. 2017) ("Supplemental Directive 09–01 was not subject to the notice or comment requirements, and simply provides guidance to servicers on the obligations under HAMP … [and] is therefore only an 'interpretive rule' applicable as guidance from the agency, and not with the effect of law.") (internal citation omitted); *CitiMortgage, Inc. v. Carpenter*, 2012 WL 1079807, at *6-7 (Ohio Ct. App. March 30, 2012) ("Although the language in the Treasury's Supplemental Directives requires certain procedures to be followed, '[t]he HAMP program itself is not codified as a public law.' … [And] [a]lthough the terms found within the Treasury's Supplemental Directive 09–08 … appear to be mandatory, neither HAMP itself nor the Treasury's guidelines has the force and effect

---

[9] Indeed, while this Court's Order found *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012) persuasive with respect to Plaintiffs' contention that the absence of a private right of action from a federal statute does not automatically foreclose a claim under state law, it was not discussed for the proposition cited in the Opposition – either in the Order or the underlying briefing for the Bank's motion to dismiss. *See* Dkt. 87 at 7-9.

of law."); *PNC Mortg. v. Garland,* 2014 WL 1325908, at *11 (Ohio Ct. App. Mar. 20, 2014) ("Unlike the HUD requirements, which are contained in the Code of Federal Regulations and have the force of law, HAMP requirements are found in directives put forth by the U.S. Treasury and do not have the full force and effect of law.").

Nothing in *Wigod* suggests the court intended to part with this well-established law. On the contrary, to the extent the court gave force to the directives, it was only in accordance with the TPP agreement, as it found that the "HAMP guidelines unquestionably formed the reasonable expectations of the parties to Wigod's TPP Agreement[.]" *Id*. at 565; *see also id.* at 568 ("to the extent Wells Fargo had a duty to service Wigod's home loan responsibly and with competent personnel, that duty emerged solely out of its contractual obligation). In short, HAMP does not have the force of law and it cannot be the basis for an "unlawful" prong claim.

With respect to the "unfair" prong, Plaintiffs first argue that the conduct alleged in the FAC was "unfair" because it "undermine[s] the policies underlying HAMP and HBOR, both of which seek to avoid unnecessary foreclosures and promote fair mortgage servicing practices." Opp. at 12. First, Plaintiffs' reference to HBOR is a non-starter; they admit that they have not adequately alleged an actual violation of HBOR against the Holding Company and that they instead seek to impose "indirect" liability on the Holding Company for this claim. Opp. at 9. In order to state claim under unfair prong's public policy test, "a plaintiff must identify an actual policy based on a legal provision *that the defendant violated.*" *Hodges v. Apple Inc.*, No. 13-CV-01128-WHO, 2013 WL 4393545, at *6 (N.D. Cal. Aug. 12, 2013) (dismissing unfair prong claim) (emphasis added). Here, Plaintiffs concede the Holding Company is not even subject to HBOR, which applies to mortgage servicers and not holding companies. Cal. Civ. Code §2924.17. Thus, HBOR cannot be the required "tethering" for Plaintiffs' unfair prong claim.

Next, Plaintiffs baldly assert, without support, that "[i]f Wells Fargo refuses to devote resources to testing its mortgage modification systems and ensuring compliance with legal requirements, it will gain an unfair competitive advantage over those firms who play fairly and devote a significant part of their capital and workforce to auditing and compliance." Opp. at 12. Plaintiffs do not explain how **the Bank's** foreclosing delinquent mortgages instead of modifying them unfairly

inures to the benefit of the Holding Company, or how the Holding Company's own internal processes negatively affect competition. Nor do Plaintiffs have standing to bring an "unfair" UCL claim based on this (unpled) allegedly anti-competitive conduct. *See Almasi v. Equilon Enters., LLC*, 2012 WL 3945528, at *10 (N.D. Cal. Sept. 10, 2012).

Finally, Plaintiffs' UCL claim also fails because it is premised on the same defective theories as their other claims. Because each claim fails for the various reasons explained herein, Plaintiff's UCL claim must also fail. *See Cabanilla v. Wachovia Mortg.*, 2012 WL 13020028, at *4 (C D. Cal. Mar. 20, 2012) (claim for unlawful, unfair, and fraudulent business practices in violation of California's UCL failed where it was premised on the same conduct that formed the basis of deficient claims for negligent implementation of the HAMP, breach of contract, among others); *Rubin v. Wal-Mart Stores, Inc.*, 599 F. Supp. 2d 1176, 1179 (N.D. Cal. 2009) (where a UCL claim is predicated on other claims that fail, the UCL claim must be dismissed as well) (same); *Toneman*, 2013 WL 12132049, at *20-22 (C.D. Cal. Oct. 21, 2013) (same).

Thus, Plaintiffs' UCL claim should be dismissed.

### 5. The Court Should Dismiss Plaintiffs' Various State Consumer Protection Claims (Count VII).

As to their other state consumer protection claims, Plaintiffs simply refer the Court to pages 3-4 and 7-8 of their Opposition. Significantly, Plaintiffs do not dispute that, because these claims hinge entirely on the allegedly wrongful modification denials and foreclosures of Plaintiffs' properties—conduct in which the Holding Company did not participate—these claims cannot proceed as a matter of law. *See* Opening Br. at 14. Indeed, Plaintiffs' superficial treatment of these claims only confirms that they cannot proceed. Thus, Count VII should be dismissed.

## III. CONCLUSION

For the foregoing reasons, Wells Fargo & Company respectfully requests that the Court dismiss Plaintiffs' First Amended Complaint in its entirety, with prejudice.

Dated: June 4, 2019          WINSTON & STRAWN LLP

By: */s/ Amanda L. Groves*
Amanda L. Groves

| | |
|---|---|
| 1 | Morgan E. Stewart |
| 2 | Kobi K. Brinson (Admitted *pro hac vice*) |
|   | Stacie C. Knight (Admitted *pro hac vice*) |
| 3 | Attorneys for Defendant |
| 4 | WELLS FARGO BANK, N.A. |