# GIBBS LAW GROUP
## L L P

June 27, 2019

**VIA ECF**

Judge William H. Alsup
San Francisco Courthouse
Courtroom 12 – 19th Floor
450 Golden Gate Ave.
San Francisco, CA 94102

      **Re:**    *Hernandez et al. v. Wells Fargo Bank, N.A. et al.*,
              **Case No. 3:18-cv-07354-WHA**

Dear Judge Alsup:

Pursuant to the Court's June 24th order, Plaintiffs respectfully submit this response to Wells Fargo Bank's recently filed discovery letter brief. *See* Dkt. Nos. 102-103. The parties' dispute concerns two topics that Wells Fargo believes should be off limits during its upcoming 30(b)(6) deposition: (i) Wells Fargo's response to the 2011 consent orders discussed in Plaintiffs' complaint, and (ii) Wells Fargo's discovery of and response to the 2013-2014 software error discussed in Plaintiffs' complaint. *See* Am. Compl., Dkt. No. 44, ¶¶ 40-47, 49-52. Both topics are highly relevant to Plaintiffs' claim for intentional infliction of emotional distress, which alleges Wells Fargo acted outrageously by putting profits over legal compliance and repeatedly failed to properly test its mortgage modification software. Wells Fargo has claimed publicly that it simply made an innocent mistake, which led it to wrongly deny mortgage modifications to at least 870 customers. But Plaintiffs contend that Wells Fargo's Boards of Directors were repeatedly put on notice that the Bank's mortgage modification procedures were deficient and that appropriate testing and legal compliance procedures needed to be implemented. Am. Compl., ¶¶ 192-194. The 2011 consent orders and 2013-2014 software error are two such warnings that Plaintiffs allege Wells Fargo's boards deliberately failed to heed. *Id.*; ¶¶ 4-6, 40-52, 192-194.

The actions Wells Fargo's boards took in response to the 2011 consent orders and 2013-2014 software error are also relevant to Plaintiffs' UCL claim, which alleges that Wells Fargo's failure to implement appropriate testing and compliance procedures constitutes an unfair business practice. *Id.*, ¶¶ 225-226. And because Plaintiffs allege that Wells Fargo's unfair business practices emanated from California, such that the UCL may properly be used to obtain restitution for all affected borrowers, the location where Wells Fargo's board members acted in response to the 2011 consent orders and 2013-2014 software errors are of particular relevance as well. *Id.*, ¶¶ 179-183.

Plaintiffs accordingly ask that the Court deny Wells Fargo's request for a protective order as to Topics 6 and 8 of Plaintiffs' 30(b)(6) deposition notice.

www.ClassLawGroup.com
505 14th Street, Suite 1110, Oakland, CA 94612
T. 510 350 9700     F. 510 350 9701

**Topic 6: Wells Fargo's response to the 2011 consent orders**

Plaintiffs seek testimony on any actions Wells Fargo took in response to two 2011 consent orders that relate to errors in its software that caused faulty calculations of class members' eligibility for a loan modification. This testimony is relevant because Wells Fargo's failure to implement adequate procedures led it to wrongfully deny mortgage modifications to Plaintiffs. *See* Order on Motion to Dismiss, Dkt. No. 87 at p. 2. This topic addresses at least three aspects of Plaintiffs' case: (1) that failing to test/audit the software at issue is unfair in light of the warnings Wells Fargo received, as shown in the consent orders; (2) that these unfair practices emanated from California for purposes of applying the UCL to non-California class members' claims, and (3) Wells Fargo engaged in extreme and outrageous behavior by failing to implement adequate procedures despite notice it had from the 2011 consent orders.

As to the first two aspects, testimony on this topic will address whether Wells Fargo engaged in unfair practices under the UCL, as well as whether the UCL applies to non-California class members' claims. The Court upheld Plaintiffs' unfair UCL claim based on allegations that Wells Fargo prioritized profits over adequate oversight, despite having notice of deficiencies in its foreclosure practices. Dkt. No. 87 at p. 8. Plaintiffs pled a nationwide class that will pursue UCL claims, since the actions that form the basis of those claims center in California. Am. Compl., ¶¶ 163, 179-183. The UCL may apply to non-California residents' claims so long as the unlawful conduct forming the basis of those claims emanated from California. *Ehret v. Uber Technologies, Inc*., 68 F.Supp.3d 1121, 1130-1131 (N.D. Cal. 2014) (applying the UCL to plaintiffs outside of California where the alleged conduct "emanated from California is consistent with the California Supreme Court's statement … that the UCL's focus is 'on the defendant's conduct, rather than the plaintiff's damages …'"). Testimony on Topic 6 will allow Plaintiffs to investigate what Wells Fargo decided to do in response to the 2011 consent orders, and what, if anything, it actually ended up doing to audit and test its mortgage modification operations for compliance with HAMP – including where all those events took place. The complaint includes allegations that these actions were based in California, and Plaintiffs should be permitted to substantiate those allegations through discovery. Am. Compl., ¶¶ 179-183.

Third, Topic 6 speaks to whether Wells Fargo's conduct was extreme and outrageous in relation to Plaintiffs' claim for intentional infliction of emotional distress (IIED). The Court upheld Plaintiffs' IIED claim based not on Wells Fargo's mere denial of a loan modification resulting in foreclosure, but on Plaintiffs' allegations of Wells Fargo's repeated failure to test the tool it was using to determine borrowers' eligibility for modifications – even in defiance of a consent decree that put Wells Fargo on notice of potential problems with its mortgage modification practices. Dkt. No. 87 at pp. 10-11. The complaint alleges that Wells Fargo's failure to adequately respond to warnings of these deficiencies caused Plaintiffs and class members to lose their homes. *Id*. at ¶¶ 192-193. And as the Court recognized in its motion to dismiss order, Wells Fargo does not dispute that a consent order may be relevant to showing Wells Fargo's knowledge of deficiencies in its mortgage modification and foreclosure processes. Dkt. No. 87 at p. 6.

Therefore, testimony on Topic 6 is important to Plaintiffs' IIED claim, which is largely based on Wells Fargo's actions (or failure to act) given the notice it had from the 2011 consent decrees. *See Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1055 (9th Cir. 2015) ("Consent decrees can be introduced … to show notice or knowledge.").

**Topic 8: Wrongful denial of 184 mortgage modifications in 2013 and 2014**

Like Topic 6, testimony on Topic 8 is relevant to Plaintiffs' UCL and intentional infliction of emotional distress claims. Topic 8 seeks testimony on Wells Fargo's wrongful denial of 184 mortgage modifications in 2013 and 2014, including how Wells Fargo discovered the error and what changes it made to its auditing and testing procedures in light of this error. That this systemic error existed is evidence of Wells Fargo's failure to address problems in its mortgage modification procedures that the government brought to its attention. Am. Compl., ¶¶ 48-49. The complaint explains how the OCC noted this 2013/2014 error in a May 2016 order requiring Wells Fargo to pay a civil penalty of $70 million, but that unbeknownst to the OCC, Wells Fargo had discovered a different error – one of the errors at issue in this case – by 2015. *Id.* at ¶¶ 49-50. Wells Fargo decided not to tell anyone about that error, likely to avoid a larger penalty from the OCC and to ensure that the OCC would terminate its supervision of Wells Fargo under the 2011 consent order. *Id.* at ¶ 50. Even worse, even after discovering its wrongful denial of 184 mortgage modifications and the 2015 error, Wells Fargo still did not reform its auditing and verification practices. *Id.* at ¶ 51. The Court upheld Plaintiffs' IIED claim based on these allegations of extreme and outrageous conduct, among others. Dkt. No. 87 at pp. 10-11. Wells Fargo should not be able to avoid producing a witness on this relevant information.

Topic 8 also relates to Plaintiffs' UCL claim under the unfairness prong. The Court held that Plaintiffs alleged unfair conduct based on Wells Fargo's failure to properly test and audit its mortgage modification software, in violation of the California Homeowners Bill of Rights' policy of ensuring that borrowers are considered for, and have an opportunity to obtain, available loss mitigation options. Dkt. No. 87 at p. 8. Wells Fargo's wrongful denial of 184 modifications in 2013 and 2014 is evidence of its failure to properly consider borrowers for a key loss mitigation option. And as with Topic 6, whether this conduct emanated from California will help determine whether the UCL applies to non-California residents' claims.

Wells Fargo's request for a protective order should be denied. The Court has upheld Plaintiffs' UCL and intentional infliction of emotional distress claim based on allegations described in Topics 6 and 8, and Plaintiffs should be able to conduct discovery on those claims.

Respectfully submitted,

*/s/ Linda Lam*
Linda Lam

*Counsel for Plaintiffs*