

North America   Europe   Asia

101 California Street
34th Floor
San Francisco, CA 94111
T +1 415 591 1000
F +1 415 591 1400

**AMANDA L. GROVES**
Partner
415-591-1000
agroves@winston.com

June 28, 2019

**VIA ECF**
Hon. Judge William H. Alsup
San Francisco Courthouse
Courtroom 12 - 19th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:    *Hernandez, et al. v. Wells Fargo Bank, N.A., et al.*, **Case No. 3:18-cv-07354-WHA**

Dear Judge Alsup:

Pursuant to the Court's June 27th order (Dkt. No. 108), Wells Fargo Bank, N.A. ("Wells Fargo") respectfully submits this response to Plaintiffs recently filed discovery letter brief. *See* Dkt. 105.  Wells Fargo addresses the issues raised by Plaintiffs in their letter as follows:

**Request for Production Nos. 18 and 20**

Plaintiffs contend that they are seeking executive summaries, agendas, meeting minutes, and other documents created for or given to Wells Fargo's Compliance Committee or Audit & Examination Committee that contain any reference to HAMP or Wells Fargo's loan modification policies, procedures, or practices. (Dkt. No. 105.)  Respectfully, Wells Fargo understood that the parties had reached an agreement as to these requests and is confused by Plaintiffs' representations to the contrary.  As demonstrated in the attached May 7, 2019 and May 15, 2019 correspondence between the parties following the parties' May 7th telephonic meet and confer, Plaintiffs narrowed the requests to "executive summaries concerning Wells Fargo's discovery of the calculation error(s) described in Wells Fargo & Company's Form 10-Q for the quarterly period ending on September 30, 2018, how Wells Fargo addressed the error(s), and how Wells Fargo notified the borrowers and attempted to remediate the harm that the error(s) caused." *See* Ex. A (Wells Fargo's May 7, 2019 letter) at p. 5; Ex. B (Plaintiffs' May 15, 2019 letter) at page 5 ("We agreed to limit these requests to all executive summaries and appreciate that Wells Fargo will produce the executive summaries.").  Plaintiffs clarified in their May 15, 2019 letter that they did not intend to withdraw the committee aspect of this request.  Accordingly, in response, Wells Fargo agreed to search for "what non-privileged, responsive executive summaries exist" and indicated that it would "supplement this response accordingly." *See* Ex. C (Wells Fargo's May 24, 2019 letter) at page 3; *see also* Ex. D (Wells Fargo's June 3, 2019 letter) at 2 ("Well Fargo will produce non-privileged, responsive executive summaries, to the extent such documents exist and can be located after a

reasonable search."). Contrary to Plaintiffs' assertions, Wells Fargo has not "been silent on whether it will produce any other documents provided to these committees." Dkt. 105. Instead, Wells Fargo agreed to search for and produce the very documents Plaintiffs sought in their narrowed request. Wells Fargo is confident that the parties will be able to resolve the confusion over these requests during the July 1 meet and confer.

**Request for Production Nos. 17 and 19**

Plaintiffs seek "[a]ll documents provided to and received from the Office of the Comptroller of the Currency (OCC) as part of its investigation that led to the 2011 Consent Order" and "[a]ll reports provided by the Wells Fargo Compliance Committee to the OCC." As Wells Fargo has explained to Plaintiffs, documents prepared for and communications with the OCC are protected by the bank examination privilege. That privilege belongs to the OCC, and it is therefore not Wells Fargo's privilege to waive. *See Chase Bank USA, N.A. Check Loan Contract Litig. v. Chase Bank*, No. C 09-MD-2032 MMCJL, 2011 WL 2078621, at *1 (N.D. Cal. Mar. 17, 2011) (noting that the OCC holds the privilege to the bank examination privilege and that the plaintiffs must provide to the OCC notice and opportunity to be heard when documents covered by the privilege are sought) (citing *In re Bankers Trust Co.*, 61 F.3d 465, 468, 471–72 (6th Cir. 1995) (holding that where bank examination privilege applies, federal agency "must be allowed the opportunity to assert the privilege and the opportunity to defend its assertion").

Plaintiffs' letter brief does not challenge that the documents they seek fall under the bank examination privilege, except to note that "purely factual matters are not protected by the privilege." Dkt. 105. To clarify, Wells Fargo is not withholding purely factual material simply because it was, at some point, provided to the OCC. Instead, Plaintiffs request that Wells Fargo "identify responsive documents and provide a privilege log." But given that the *entirety* of these two requests seek documents that, by their definition, fall under the bank examination privilege, it is unduly burdensome and disproportional to the needs of the case for Wells Fargo to specifically search for, collect, and log responsive documents, none of which Wells Fargo is able to produce to Plaintiffs.

**Request for Production No. 16**

Plaintiffs seek production of the personnel files of "all witnesses disclosed in [Wells Fargo's] Rule 26 initial disclosures" and, to the extent not listed, Carmen Bell, Jeff Smith[1], Brent Potter, Kara Reimers, Greg McWilliams, and Bill Pinkerton. Dkt. 105. Plaintiffs contend that such documentation in the employee files are relevant to "a witness's knowledge of the software error and what she did (or did not do) about it." Dkt. 105. Wells Fargo disagrees that any notations in these employee personnel files regarding the software error at issue would be "relevant to any party's claim or defense and proportional to the needs of the case." *See* Fed. R. Civ. P. 26(b)(1).

But even if the personnel files were relevant, that does not end the inquiry. In the Ninth Circuit, "even when [personnel files are] directly relevant to litigation, discovery will not be permitted until a balancing of the compelling need for discovery against the fundamental right of

---

[1] Wells Fargo's initial disclosures did not list "Jeff Smith." Wells Fargo believes Plaintiffs meant to refer to Erin Smith-Romero, who was listed in its April 5, 2019 Supplemental Initial Disclosures.

privacy determines that disclosure is appropriate." *Liberty Mut. Ins. Co. v. California Auto. Assigned Risk Plan*, 2012 WL 892188, *3 (N.D. Cal., March 14, 2012) (citations omitted); see also *All Star Seed v. Nationwide Agribusiness Ins. Co.*, No. 12CV146-L BLM, 2013 WL 1882260, at *3 (S.D. Cal. May 3, 2013) (discovery of personnel files is allowed if "(1) the material sought is 'clearly relevant,' and (2) the need for discovery is compelling because the information sought is not otherwise readily obtainable").

Here, Plaintiffs have not demonstrated a "compelling need" for Wells Fargo to search these personnel files. And of course there are several avenues available to Plaintiffs to discover the witnesses' "knowledge of the software error and what she did (or did not) do about it." Searching through their personnel files constitutes an unnecessary intrusion and violation of employee privacy that provides neither party probative value or benefit beyond that already available to Plaintiffs.

## Wells Fargo's Document Production

Plaintiffs contend in their letter brief that Wells Fargo must complete its document production by today (June 28, 2019) because they need to depose several witnesses before their class certification motion is due on August 8, 2019. Dkt. 105. As an initial matter, Plaintiffs made this request of Wells Fargo for the first time on June 24, 2019—two days before filing its letter brief with the Court. Before that time, Plaintiffs were silent on any date by which they needed Wells Fargo's production to be complete, and the parties had discussed during multiple meet-and-confer sessions that Wells Fargo's productions would be on a rolling basis. Not only had Plaintiffs' never before asked Wells Fargo to complete its production by June 28, their position that Wells Fargo must produce all responsive documents six weeks before the class certification motion deadline runs afoul of the Scheduling Order in this case, pursuant to which fact discovery may proceed for another six months. *See* Case Management Order, Dkt. No. 63 (setting December 18, 2019 deadline for non-expert discovery)). And as Your Honor's Standing Order notes, depositions should proceed regardless of whether document production is complete. *See* Supplemental Order to Order Setting Initial Case Management Conference in Civil Cases Before Judge William Alsup, ¶ 27.

What is more, Wells Fargo has produced a substantial number of responsive documents to Plaintiffs in relatively short order, and will have substantially completed its document production by the end of next week—well in advance of Plaintiffs' class certification deadline. To be sure, in the four months since receiving Plaintiffs' requests for production of documents on February 26, 2019, Wells Fargo has diligently (1) collected and applied search terms to files from 37 individual Wells Fargo employees' electronic records and more than 10 centralized repositories, (2) manually reviewed nearly 68,000 documents from those sources for responsiveness, privilege, and personally-identifiable information (which must be redacted per privacy laws applicable to Wells Fargo), and (3) produced well over 10,000 responsive, non-privileged documents to Plaintiffs. Wells Fargo is producing another 1200+ documents to Plaintiffs today and an additional 10,000+ documents to Plaintiffs next week.

As Wells Fargo has told the Plaintiffs on multiple occasions, although its document production will be substantially complete by the end of next week, Wells Fargo is in the process

of collecting and reviewing an additional set of remediation-related documents, which will need to be produced after next week.  Additionally, Wells Fargo is currently engaged in a review of documents that require redactions for privilege and/or personally identifiable information in native form (e.g., Excel files that must be redacted natively and reloaded to the electronic database).  This more complicated review necessitates an additional level of attention, and the resulting non-privileged content from such records and will be produced as soon as practicable once the review is completed.

Wells Fargo is prepared to discuss this matter with Plaintiffs during the July 1 meet-and-confer and is hopeful that the parties will be able to resolve Plaintiffs' concern.

We appreciate your attention to this matter.


Respectfully submitted,

*/s/ Amanda L. Groves*
Amanda L. Groves

*Counsel for Wells Fargo Bank, N.A.*