# EXHIBIT A



**WINSTON & STRAWN LLP**

North America  Europe  Asia

333 S. Grand Avenue, 38th Floor
Los Angeles, CA 90071
T +1 213 615 1700
F +1 213 615 1750

SHAWN R. OBI
Associate Attorney
(213) 615-1763
sobi@winston.com

May 7, 2019

**VIA E-MAIL**

Linda Lam
Gibbs Law Group LLP
505 14th Street, Suite 1110,
Oakland, CA 94612

Re:  *Hernandez et al. v. Wells Fargo Bank, N.A. et al.,* Case No. 18-cv-07354 (N.D. Cal.) - Wells Fargo's Response to Plaintiffs' First Set of Request For Production

Counsel:

We write on behalf of Wells Fargo Bank, N.A. ("Wells Fargo" or "Defendant") in response to your April 29, 2019 letter.

As an initial matter, we disagree with the May 15, 2019 production deadline you have unilaterally set for certain of the documents Wells Fargo has agreed to produce. At no time during the parties' April 23, 2019 telephonic conference ("meet and confer") was this date discussed or agreed to. Indeed, we explained that the basis for Wells Fargo's position that it would begin its rolling production 30 days after entry of the protective order is not for purposes of delay but rather to provide for sufficient time for Wells Fargo to review, apply the proper confidentiality designations and necessary redactions for personally-identifiable information, and produce the documents in a format consistent with the parties' ESI protocol. Plaintiffs' counsel provided no response or objection and certainly did not counter with a May 15, 2019 deadline as your letter now purports to do. Now that the protective order has been entered, Wells Fargo intends begin its rolling production within 30 days of that date, consistent with its written responses and the position maintained at the meet and confer.

Turning to your concerns about Wells Fargo's discovery responses to Plaintiffs' First Set of Document Requests ("RFPs" or "Requests"), we address them in the order you raised in your letter as follows.

May 7, 2019
Page 2

### Plaintiff's Requests for Production of Documents

### RFP No. 1

Following Wells Fargo's objections and our meet and confer, you narrowed the scope of Plaintiffs' Request to a) "the service participation agreement between Wells Fargo and the government concerning HAMP, including any amendments to that service participation agreement" and b) "any consent orders between Wells Fargo and any government entity about Wells Fargo's conduct in relation to HAMP."

Wells Fargo is conducting a search for Servicer Participation Agreement(s) and amendments (existing as of 2010 forward). However, regarding "any consent orders between Wells Fargo and any government entity about Wells Fargo's conduct in relation to HAMP," this Request is still overly broad, including as to the terms "any consent orders" and "in relation to HAMP." Further, such "consent orders" are not relevant to the claims and defenses in this case, as Plaintiffs contend that they are not seeking to enforce these consent orders. *See, e.g.,* Opp'n to Motion to Dismiss (Dkt. 67) at 7-9.

### RFP No. 2

Following Wells Fargo's objections and our meet and confer, you narrowed the scope of Plaintiffs' Request to "all documents and communications about Wells Fargo's non-compliance with any service participation agreement relating to HAMP." This Request is still overly broad, including as to the terms "non-compliance with any service participation agreement relating to HAMP." Further, such documents are not relevant to the claims and defenses in this case, as Plaintiffs contend that they are not seeking to enforce HAMP. *See, e.g.,* Opp'n to Motion to Dismiss (Dkt. 67) at 7-9.

### RFP Nos. 3-6

As an initial matter, we did not agree to provide a "list of what [Wells Fargo] intend[s] to produce" responsive to this Request, nor did we agree to agree to list documents in Wells Fargo's possession that we do not intend to produce. Instead, Wells Fargo agreed to provide a description of what responsive documents it intends to produce, as required by the Rules.

In any event, and following Wells Fargo's objections and our meet and confer, you narrowed Plaintiffs' Request to "all communications regarding Wells Fargo's reasoning for choosing to use its own software (as opposed to the software program that Fannie Mae offered) to calculate borrowers' eligibility for a loan modification under HAMP; all documents and communications regarding internal concerns about your software's ability to accurately calculate whether a borrower was eligible for a HAMP loan modification; and all documents and communications relating to how Wells Fargo addressed those concerns."

SF:211435.1

May 7, 2019
Page 3

In response to this narrowed Request, Wells Fargo agrees to conduct a reasonable search for, and produce, non-privileged communications regarding its software's ability to accurately calculate attorney fees in connection with determining eligibility for HAMP loan modifications (i.e., the error at issue in this case). To the extent non-privileged documents exist regarding how Wells Fargo addressed any concerns in that regard, those already are covered by response to RFP No. 7, below.

### RFP No. 7

As set forth above, Wells Fargo objects to the May 15, 2019 deadline set forth in the letter. Consistent with its written responses and the position maintained at the meet and confer, Wells Fargo intends to begin its rolling production of documents within 30 days of entry of the protective order, which is May 29, 2019.

### RFP No. 8

Following Wells Fargo's objections and our meet and confer, in response to this Request, Wells Fargo will provide (i) the total amount paid in remediation – but not including the mediations – to the entire class in the aggregate, and (ii) responsive communications as to the named Plaintiffs. Given that a class has not been certified, producing documents and communications as to the unnamed class members is not warranted or appropriate at this time. And Plaintiffs have not articulated any need for unnamed class member discovery at this point.

As to the mediation amounts, we remain concerned about the mediation privilege – particularly in California. The named Plaintiffs could waive the privilege as to the mediated amounts, and Wells Fargo would agree to do the same – but that information is already in Plaintiffs' possession, custody or control. We remain open to discussing this issue further, but are concerned that a voluntary production of amounts paid through mediations could be objectionable to borrowers.

### RFP No. 9

Following Wells Fargo's objections and our meet and confer, and as confirmed in your letter, there appears to be no further disagreement concerning Wells Fargo's response to this Request.

### RFP No. 10

Following Wells Fargo's objections and our meet and confer, and as confirmed in your letter, there appears to be no further disagreement concerning Wells Fargo's response to this Request.

### RFP No. 11

Following Wells Fargo's objections and our meet and confer, you narrowed the scope of Plaintiffs' Request to "documents sufficient to show when it initiated foreclosure proceedings on class members' properties, the basis for the decision to foreclose, and when the actual foreclosures took place (to the extent that they did)."

SF:211435.1

May 7, 2019
Page 4

This modified Request still seeks documents containing the highly sensitive and confidential information of unnamed class members and therefore does not alleviate the concerns Wells Fargo articulated in its written responses and during the meet and confer. Plaintiffs also have not articulated why discovery regarding unnamed class members is appropriate at this time. Wells Fargo will produce responsive documents as to the named Plaintiffs only.

**RFP No. 12**

First, we wholly disagree with your characterization that Wells Fargo "ke[pt] the at-issue software glitch under wraps." Second, as set forth above, Wells Fargo objects to the May 15, 2019 deadline set forth in the letter. Consistent with its written responses and the position maintained at the meet and confer, Wells Fargo intends to begin its rolling production of documents within 30 days of entry of the protective order, which is May 29, 2019.

Notwithstanding the foregoing objections, your letter is accurate that during our meet and confer, Wells Fargo agreed to produce responsive documents. Specifically, it agreed that its response to RFP No. 12 shall be the same as its response to RFP No. 7, as follows: "Defendant agrees to produce, based on a search of reasonable scope that is proportional to the needs of the case and consistent with the parties' ESI protocol, responsive documents relating to the discovery of the calculation error (as described in Wells Fargo & Company's Form 10-Q for the quarterly period ended September 30, 2018) and how it was dealt with, including how Wells Fargo would notify borrowers and remediate the impact of the error. Defendant intends to begin production upon 30 days of entry of an appropriate protective order regarding confidentiality."

**RFP No. 13**

Our records reflect that no loan modifications were offered or provided to any of the named Plaintiffs as part of Wells Fargo's voluntary remediation program. We maintain that the term "adjustment" is unclear, but that the offered and accepted terms of any remediation as to the named Plaintiffs will be reflected in documents Wells Fargo has agreed to produce in response to other Requests as indicated herein and in Wells Fargo's written responses.

**RFP No. 14**

During our meet and confer, Wells Fargo agreed to produce documents sufficient to show the organizational structure of Wells Fargo's Home Mortgage Division a few positions above and below Carmen Bell.

Further, as set forth above, Wells Fargo objects to the May 15, 2019 deadline set forth in the letter. Consistent with its written responses and the position maintained at the meet and confer, Wells Fargo intends to begin its rolling production of documents within 30 days of entry of the protective order, which is May 29, 2019.

**RFP No. 15**

SF:211435.1

May 7, 2019
Page 5

As set forth above, Wells Fargo objects to the May 15, 2019 deadline set forth in the letter. Consistent with its written responses and the position maintained at the meet and confer, Wells Fargo intends to begin its rolling production of documents within 30 days of entry of the protective order, which is May 29, 2019.

### RFP No. 16

Your letter requests that Wells Fargo "produce personnel files for [its] witnesses [if] there are documents in these files that pertain to the error at issue in this case." Wells Fargo maintains its objections as stated in its written responses, and will not search or produce personnel files.

### RFP Nos. 17 and 19

Your letter acknowledges that "the bank examination privilege [...] belongs to the OCC and not Wells Fargo." (citing *In re Chase Bank USA, N.A. "Check Loan" Contract Litig.*, 2011 WL 2078621, *1 (N.D. Cal. Mar. 17, 2011)). Thus, you recognize even if it were inclined to do so, it is not Wells Fargo's privilege to waive.

Moreover, no privilege log will be provided given that the entirety of these two Requests seek documents that would fall under the privilege. A privilege log is not appropriate or warranted under such circumstances.

### RFP No. 18 and 20

Following Wells Fargo's objections and our meet and confer, you narrowed the scope of Plaintiffs' Request to "all executive summaries concerning Wells Fargo's discovery of the calculation error(s) described in Wells Fargo & Company's Form 10-Q for the quarterly period ending on September 30, 2018, how Wells Fargo addressed the error(s), and how Wells Fargo notified borrowers and attempted to remediate harm that the error(s) caused." As it appears Plaintiffs are withdrawing the committee-aspect of these Requests; these Requests as worded in your letter now seek the same information Wells Fargo has agreed to produce in response to Request No. 7. It thus appears this issue is resolved.

### RFP No. 21

Following Wells Fargo's objections and our meet and confer, you narrowed the scope of Plaintiffs' Request to "all reports, findings, and/or conclusions from any review or audit of Wells Fargo's loan modification software that contained the calculation error(s) described in Wells Fargo & Company's Form 10-Q for the quarterly period ending on September 30, 2018."

This request remains vague, particularly with respect to what a "review" of software entails, and any review or audit of the software not related to error at issue would not be relevant to the claims or defenses in this case. Thus, this request remains overbroad.

### RFP No. 22 and 23

SF:211435.1

May 7, 2019
Page 6

Following Wells Fargo's objections and our meet and confer, you narrowed the scope of these to Plaintiffs' Request to "documents sufficient to show Wells Fargo's schedule(s) (from 2010 to 2018) for auditing the loan modification software that contained the calculation error(s) described in Wells Fargo & Company's Form 10-Q for the quarterly period ending on September 30, 2018."

In response to this narrowed Request, Wells Fargo is checking as to whether such schedules exist.

      Unless otherwise specifically set forth herein, Wells Fargo preserves its objections as stated in its written Responses and Objections and in the meet and confer.

Sincerely,

*[signature]*

Shawn R. Obi

SF:211435.1