# EXHIBIT B



Laura C. Fellows
Attorney

T 816.984.8111
F 816.984.8101

Laura@PaulLLP.com

May 15, 2019

Amanda L. Groves
Kobi K. Brinson
WINSTON & STRAWN LLP
300 South Tryon Street, 16th Floor
Charlotte, North Carolina 28202

Shawn R. Obi
WINSTON & STRAWN LLP
333 South Grand Ave, 38th Floor
Los Angeles, California 90071

Re:   *Hernandez et al. v. Wells Fargo Bank, N.A. et al.,* Case No. 18-cv-07354 (N.D. Cal.)
       Wells Fargo's Response to Plaintiffs' First Set of Requests for Production and
       First Set of Interrogatories

Dear Counsel,

This letter follows-up from our most recent telephone conference on May 7, 2019, in which we continued to address issues regarding Wells Fargo's Responses to Plaintiffs' First Set of Requests for Production and also discussed Wells Fargo's Responses to Plaintiffs' First Set of Interrogatories.

**Plaintiffs' First Set of Requests for Production**

We understand we have tentatively resolved our disputes with respect to **Request Nos. 7, 9, 10, 12, and 14**. We also understand that although Wells Fargo's responses state it will start producing documents on May 29, you will try to produce documents before that date. Moreover, we understand that Wells Fargo will produce a privilege log within two weeks after the production.

**Request No. 1**

You will produce the service participation agreements, including any amendments. We understand Wells Fargo is refusing to produce the consent orders we requested. However, the consent orders are similarly responsive and must be produced. Wells Fargo's statement that the consent orders are "not relevant to the claims and defenses in this case" is not well taken. While Wells Fargo correctly notes Plaintiffs are not seeking to enforce the consent decrees, it does not



follow that Plaintiffs are not entitled to *any* discovery related to the consent decrees. As we explained in our opposition to your motion to dismiss, the consent decrees are evidence of Wells Fargo's knowledge of issues surrounding its loan modification software. Moreover, some of Plaintiffs' claims – such as the negligence and intentional infliction of emotional distress claims – involve showing an element of intent (e.g. recklessness) on Wells Fargo's part. Further, we note in support of its Motion to Dismiss the First Amended Complaint (ECF No. 60), Wells Fargo asked the Court to take judicial notice of a consent decree.[1] Please produce the consent decrees between Wells Fargo and any government entity about Wells Fargo's conduct in relation to HAMP.

**Request No. 2**

First, we did not see a response to our April 29, 2019 letter's request that Wells Fargo produce Mortgagee Letters from HUD regarding HAMP from January 1, 2009 until the present. We understand you are checking with your client about this request and will let us know your position.

Second, we are disappointed Wells Fargo will not produce any communications regarding its non-compliance with any service participation agreement related to HAMP. Wells Fargo has objected that the request, even as limited, is overly broad but refused to provide a proposed limitation to which it could potentially be agreeable or concrete examples of how the request is overly broad. Although Plaintiffs' April 29, 2019 letter specifically outlined a reasonable limitation to this request, in the interest of further compromise, Plaintiffs request that Wells Fargo produce all documents and communications about Wells Fargo's non-compliance with any service participation agreement related to the software used to calculate whether borrowers qualified for a loan modification under HAMP. This would include executive summaries regarding consent orders relating to the software used to calculate whether borrowers qualified for a loan modification and HAMP, as well as internal e-mails regarding the OCC investigations that led to the consent orders, and Wells Fargo's attempt to comply with the consent orders after they took effect.

**Request Nos. 3-6**

You stated in our initial meet and confer call that you will provide a description of the documents you intend to provide in response to this request. Please provide us with that list by the end of this week (5/17).

---

[1] We similarly note Wells Fargo requested that the Court take judicial notice of the Servicer Participation Agreement. *See* ECF No. 60 at p. 2. Thus, while Wells Fargo notes it is "searching" for the agreements, we trust responsive documents will be produced in short order.



We also appreciate that Wells Fargo will conduct a search for responsive documents as outlined in your May 7, 2019 letter. We also understand that you will consult with your client regarding our request to search for documents regarding Wells Fargo choosing to use its own software (as opposed to the software program that Fannie Mae offered) to calculate borrowers' eligibility for a loan modification under HAMP. Please let us know your client's position at your earliest convenience.

**Request No. 8**

At this time, Plaintiffs are agreeable to Wells Fargo producing the total amount paid in remediation – absent mediation – to the entire class in the aggregate and communications to the named Plaintiffs as suggested. However, Plaintiffs reserve the right to request these documents in the future, as well as to engage in further meet and confer on additional responsive documents.

**Request No. 11**

In the interest of moving discovery forward, at this time, we ask that you only produce the documents to show when Wells Fargo initiated foreclosure proceedings, the basis for the decision to foreclosure, and when the actual foreclosure took place (to the extent that they did) for the named Plaintiffs. We reserve the right to request other class members' foreclosure information after we review the initial production.

**Request No. 13**

This request seeks documents regarding another form of remediation provided to Plaintiffs, namely loan modifications and other loan adjustments. Wells Fargo initially responded that no "loan modifications were offered or provided to any of the named Plaintiffs as part of Wells Fargo's voluntary remediation program." *See* Response to No. 13. Wells Fargo also objected that the term "loan adjustments" was vague and ambiguous. We discussed this Request during our initial discovery call on April 23, 2019 and explained that we understand other class members were offered loan adjustments, such as curtailments, as part of remediation. In response, you advised you did not believe Wells Fargo offered loan modifications to class members as part of any remediation efforts. In our follow-up correspondence, dated April 29, 2019, we pointed out that Wells Fargo told the court in the response to the Order to Show Cause that, "Wells Fargo proactively … offered loan modifications, and/or issued credits to affected borrowers, depending on their individual circumstances." *See* ECF No. 24 at p. 2. We thus asked that Wells Fargo reconsider its position. In response, we understand Wells Fargo still contends that "adjustments"



is vague and will only provide information for the named Plaintiffs. As we have previously explained what is meant by "adjustments," including curtailments and/or credits to affected borrowers, we trust that any ambiguity or vagueness has been cleared up for Wells Fargo. Nonetheless, in the spirit of compromise, we are agreeable to Wells Fargo providing information in the aggregate regarding the total amount issued as loan adjustments (curtailments and/or credits), similar to the information Wells Fargo is providing in response to request no. 8.

**Request No. 15**

Please let us know your availability at your earliest convenience for a meet-and-confer on an ESI protocol.

**Request No. 16**

In the interest of compromise, we requested that Wells Fargo provide documents in the personnel files for witnesses that pertain to the error at issue in the case. Wells Fargo refuses to "search or produce personnel files." Notations in a personnel file regarding the exact error at issue in this matter are highly relevant. The request is not designed to harass but to obtain directly relevant information as to whether individuals Wells Fargo identified were subjected to any form of discipline for the specific error. Please produce any documents from personnel files that directly pertain to the software error that is at issue in this case. As you know, some of Plaintiffs' claims include an intent element (such as the negligence and intentional infliction of emotional distress claims). If there are documents showing that certain witnesses knew about the software error but failed to take appropriate action to fix it, then those documents should be produced – even if they are part of a personnel file.

**Request Nos. 17 and 19**

We disagree with your contention that all materials to and from the OCC are protected by the bank examination privilege; indeed, purely factual material is not protected. *See, e.g., Erhart v. BoI Holding, Inc.*, Case No.:15cv2287-BAS (NLS), 2018 WL 5994417, at *5 (S.D. Cal. Nov. 15) (citation omitted). Please provide a privilege log, pursuant to standard practice relating to the bank examination privilege in the Ninth Circuit.



May 15, 2019
Page 5

**Request Nos. 18 and 20**

We agreed to limit these requests to all executive summaries and appreciate that Wells Fargo will produce the executive summaries. But at no point did we agree to withdraw our request regarding the executive summaries at the Audit and Examination committee level or all committee levels. Those summaries are similarly responsive. Please confirm you will also produce the executive summaries related to committees.

**Request No. 21**

As we discussed during our call, we are seeking informal and formal reports, findings and/or conclusions from any informal or formal review or audit of the loan modification that contained the calculation error(s) described in Wells Fargo & Company's Form 10-Q for the quarterly period ending on September 30, 2018. Please confirm Wells Fargo will provide these responsive documents.

**Request Nos. 22 and 23**

We understand Wells Fargo is searching for documents in response to these requests. Please advise if responsive documents are not located. Otherwise, we trust responsive documents were located and will be produced.

**<u>Plaintiffs' First Set of Interrogatories</u>**

Thank you for agreeing that Wells Fargo will supplement its responses to these interrogatories. Given that Plaintiffs' initial set of interrogatories only includes six interrogatories, Wells Fargo should be producing those supplemental responses in the coming days. Specifically, we would request that we receive supplemental responses by May 22, 2019.

**Interrogatory No. 1**

This interrogatory seeks the amount Wells Fargo received from the U.S. government in connection with HAMP. The request is not vague and is relevant to the claims in this matter. For example, it is relevant to the reasonableness of Wells Fargo's actions to ensure compliance with HAMP and the degree of oversight required under the program. Please confirm you will supplement this response.



**Interrogatory No. 2**

This interrogatory seeks the identification of persons and/or entities involved in designing and/or writing the source code for the software Wells Fargo used to calculate borrower eligibility under HAMP. This interrogatory is relevant to Plaintiffs' claims that Wells Fargo's software had error(s) in it that caused Wells Fargo to wrongfully deny mortgage modifications; thus, those who designed and/or wrote the source code for the software may have discoverable information regarding this claim. We understand you are not certain of the volume of potential people and/or entities that may be responsive to this interrogatory. We agreed that Wells Fargo will supplement its response to this interrogatory to identify people and/or entities that may be relevant to the software.

**Interrogatory No. 3**

We agreed not to request additional information in response to this interrogatory at this time. However, Plaintiffs reserve the right to request this information in the future.

**Interrogatory No. 4**

We understand Wells Fargo will supplement its response to provide the information requested by this interrogatory, including the total number of class members who cashed remediation checks from Wells Fargo and the total amount of cash payments made to class members by Wells Fargo.

**Interrogatory No. 5**

This interrogatory seeks the identification of persons who discovered the software issues and/or mistakes and who made decisions regarding how to correct them as described in the operative complaint. Such a request is proper in that it seeks the identification of persons who may be in possession of discoverable information. *See generally* Fed. R. Civ. P. 26 (b)(1) advisory committee's note (2015) ("the present rule adds: including … the identify and location of persons who know of any discoverable matter. Discovery of such matters is so deeply entrenched in practice that it is no longer necessary to clutter the long text of Rule 26 with these examples"). We understand Wells Fargo will supplement this response to identify persons it has been able to locate to-date; of course, if Wells Fargo locates additional, responsive information, it should timely supplement its response.



May 15, 2019
Page 7

**Interrogatory No. 6**

This interrogatory asks for the people who served on the Compliance and the Audit and Examination Committees. Those individuals may be in possession of discoverable information regarding Plaintiffs' claims. Wells Fargo's contentions that Plaintiffs have directed this request to the wrong entity and that Plaintiffs are not entitled to this information because their claims are not based upon the consent decrees are without merit. These individuals are potential witnesses. Please supplement this response to let us know who those witnesses are.

Best Regards,

Laura C. Fellows