IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALICIA HERNANDEZ, EMMA WHITE, KEITH LINDNER, TROY FRYE, COSZETTA TEAGUE, IESHA BROWN, RUSSELL and BRENDA SIMONEAUX, JOHN and YVONNE DEMARTINO, ROSE WILSON, TIFFANIE HOOD, GEORGE and CYNDI FLOYD, DEBORA GRANJA, and DIANA TREVINO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO & COMPANY, and WELLS FARGO BANK, N.A.,<br><br>Defendants.<br>_____/ | No. C 18-07354 WHA<br><br>**ORDER GRANTING MOTION TO DISMISS AND JUDICIAL NOTICE** |

**INTRODUCTION**

In this putative class foreclosure action, defendant Wells Fargo & Company moves to dismiss. For the following reasons, the motion is **GRANTED**.

**STATEMENT**

Defendant Wells Fargo & Company (WFC) is a financial services company headquartered in San Francisco, California. The firm's primary operating subsidiary is Wells Fargo Bank, N.A. (Bank).

Plaintiffs all had their mortgage loans serviced by the Bank when they faced various financial hardships and defaulted on their loans. Although they sought loan modifications, those applications were denied (Amd. Compl. ¶¶ 30–33).

At the time plaintiffs requested loan modifications, defendants participated in the Home Affordable Modification Program (HAMP), through which mortgage lenders received stimulus funds in exchange for issuing loan modifications to qualified borrowers. Although plaintiffs met the program's threshold requirements for such a modification, defendants failed to offer them one. Instead, the Bank foreclosed on eleven of the named plaintiffs and more than five hundred other customers who could not make their monthly payments without a modification. Two plaintiffs, Russell and Brenda Simoneaux, did not face foreclosure and ultimately paid off their mortgage (*id.* ¶¶ 30–34, 109–13).

A 2010 investigation by the Office of Comptroller of the Currency (OCC) found numerous deficiencies in the Bank's mortgage modification and foreclosure practices, including that it failed to devote adequate oversight to its foreclosure processes, failed to ensure compliance with applicable laws, and failed to adequately audit its foreclosure procedures. The Bank and WFC each signed a consent order agreeing to correct these deficiencies. In its consent order, WFC was ordered to strengthen its oversight of the Bank's compliance with HAMP, ensure its audit and compliance programs were adequately staffed, and to improve the information and reports that it would regularly review. WFC's Board of Directors agreed. The Bank's Board of Directors, made up entirely of WFC board members, agreed to its consent order as well. However, in June 2015, the OCC found the Bank and WFC were still not compliant, and that the Bank failed to detect multiple systematic errors in the automated decision-making software it used to determine customers' eligibility for a mortgage modification (*id.* ¶¶ 35–47).

In October 2015, the Bank discovered a calculation "error" in a software tool it used to determine whether to issue a mortgage modification. This calculation error, which underlies the claims in this case, caused certain fees to be misstated and resulted in incorrect modification denials. The OCC issued a $70 million penalty. These errors were not disclosed until 2018. In total, 870 customers were incorrectly denied a loan modification, 545 of who lost their homes in

foreclosure. According to plaintiffs, these repeated failures to implement adequate testing procedures — as well as other high-profile scandals that have roiled the bank in recent years — are emblematic of defendants' chronic and intentional lack of oversight (*id*. ¶¶ 48–69).

In December 2018, plaintiff Alicia Hernandez filed this putative nationwide class action, asserting claims for negligence, conversion, violations of California's Unfair Competition Law, and violations of the New Jersey Consumer Fraud Act. In response to a motion to dismiss, Hernandez filed an amended complaint in February 2019. The operative complaint added 15 new named plaintiffs, added WFC as a new defendant, and added nine additional claims for relief. WFC now moves to dismiss the complaint for failure to state a claim (Dkt. Nos. 1, 44, 73). The instant motion is brought only by Wells Fargo & Company. Wells Fargo Bank, N.A. moved separately to dismiss (Dkt. No. 59), which was granted in part and denied in part (Dkt. No. 87). The instant order only addresses the claims from the parties' Joint Response to the Court's June 3, 2019 Order (Dkt. No. 96). This order follows full briefing and oral argument.

**ANALYSIS**

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when its factual allegations, rather than mere conclusory statements, create the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court ruling on a motion to dismiss must accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030–31 (9th Cir. 2008). Conclusory allegations or "formulaic recitation of the elements" of a claim, however, are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 681.

1. **INDIRECT LIABILITY.**

A parent may be vicariously liable for its subsidiary's actions under an agency theory or under an alter-ego theory.

A. **Agency Theory.**

3

The degree of control a parent exerts over its subsidiary is a key factor in determining whether an agency relationship exists. *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 541 (2000). The parent must control the subsidiary to such an extent that the subsidiary becomes the instrumentality of the parent. *Ibid.* Evidence such control exists includes when a parents takes over a subsidiary's day-to-day operations or when the overlap in the parent's and subsidiary's board or executive membership demonstrates the parent is essentially pulling the subsidiary's puppet strings. A parent's mere ownership of a subsidiary, even if absolute, is insufficient. *Katzir's Floor & Home Design, Inc., v. M-MLS.com,* 394 F.3d 1143 (9th Cir. 2004).

Here, plaintiff alleges in its amended complaint that WFC "owns and control[s]" the Bank, and had "oversight responsibilities" for ensuring the Bank "tested and audited its mortgage modification operations" (Amd. Compl. ¶¶ 181, 193). It further alleges all of the Bank's board members were WFC board members as well (*id.* at 51).

Although the fact that the Bank's board members are completely composed of WFC board members weighs towards the existence of control, such an allegation is insufficient on its own. Importantly, there is no allegation that WFC participated in or controlled the Bank's day-to-day operations regarding mortgage approval or servicing. As such, plaintiffs have not sufficiently alleged WFC's liability under an agency theory.

**B.     Alter-Ego Theory.**

The corporate veil may be pierced under an alter-ego theory if 1) there is a unity of interest between the parent and subsidiary and 2) adherence to the fiction of a separate corporate existence allows a fraud or promotes injustice or inequitable consequences. *In re Schwarzkopf*, 626 F.3d 1032, 1038 (9th Cir. 2010). A unity of interests exists when "the separate personalities of the corporation and the shareholder do not in reality exist." *Gerritsen v. Warner Bros. Entertainment Inc.,* 116 F.Supp.3d 1104, 1136 (C.D. Cal. 2015). Again, the level of control a parent exerts over its subsidiary is a key factor in the unity of interests analysis. Other factors include identical equitable ownership, use of one entity as a mere shell or conduit of the others, or a lack of segregation of funds. *Ibid.*

4

Plaintiff points to the same arguments it made for agency theory in demonstrating a unity of interests. This order has already addressed these arguments. The allegations of control do not exhibit anything more than mere supervision. This order will not address the second prong of the alter-ego test as the first prong has not been met.

In sum, plaintiffs have not sufficiently alleged that WFC is indirectly liable for the Bank's actions. The following claims will be analyzed under a theory of direct liability.

### 2. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

The elements of the tort of intentional infliction of emotional distress (IIED) are: (1) outrageous conduct, (2) an intent to cause or a reckless disregard of the possibility of causing emotional distress, (3) severe or extreme emotional distress, and (4) actual and proximate cause of the emotional distress by the outrageous conduct. *Symonds v. Mercury Sav. & Loan Ass'n*, 225 Cal. App. 3d 1458, 1468 (1990).

WFC argues plaintiffs' claim should be dismissed because they have no right to enforce the consent orders or HAMP. WFC claims consent decrees are construed as contracts and as such, third-party beneficiaries like plaintiffs cannot enforce the decrees (Mot. at 7). This is correct. It also claims plaintiffs cannot enforce the claim under HAMP because WFC did not participate in it (Reply at 7). Even if that is the case, plaintiffs can still make an IIED claim by alleging WFC engaged in outrageous conduct with intent or recklessness.

Here, the amended complaint alleges WFC failed to oversee and review the Bank's compliance with HAMP in the face of a consent decree which put WFC on notice. Plaintiffs argue WFC's inaction, given the fact it had notice, could be considered reckless behavior. The cases it cites to in support of this claim are unconvincing as they do not concern IIED claims. *Corvello v. Wells Fargo,* 728 F.3d 878 (9th Cir. 2013); *Oskoui v. J.P. Morgan Chase Bank*, N.A., 851 F 3.d 851 (9th Cir. 2017). WFC's failure to act even with notice, as currently pled, cannot be deemed outrageous and reckless. The borrower-plaintiffs have not stated a claim for IIED against WFC and the motion to dismiss this claim is **GRANTED**.

### 3. CALIFORNIA'S HOMEOWNERS BILL OF RIGHTS.

California's Homeowners Bill of Rights (HBOR), Section 2924.17 provides, "a mortgage

5

servicer shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information." Plaintiffs have alleged that the Bank, not WFC is the mortgage servicer (Amd. Compl. ¶ 33). Since indirect liability does not apply, WFC's motion to dismiss plaintiffs' HBOR claim against WFC is accordingly **GRANTED**.

### 4. SECTION 17200.

To state a claim for unfair competition under Section 17200 of the California Business and Professions Code, a plaintiff must allege that a defendant engaged in an "unlawful, unfair or fraudulent business act or practice." The statute is violated when a defendant's conduct violates any of the foregoing prongs. *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012). Here, plaintiffs assert a Section 17200 claim based on the "unlawful" and "unfair" prongs.

Plaintiffs allege WFC engaged in unlawful practices by denying mortgage modifications "in violation of HAMP and other governmental requirements" (Amd. Compl. ¶ 224). An unlawful UCL claim must be based on the violation of another law or regulation. *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 165 (1999). WFC claims HAMP is not a law but a government program (Reply at 8). WFC is correct. Plaintiff does not cite to any support that HAMP is a law or regulation that was subject to formal notice and comment rulemaking, and its reliance on *Wigod v. Wells Fargo Bank, N.A.* is insufficient. 673 F.3d 547 (7th Cir. 2012). *Wigod* analyzed a HAMP violation as a predicate for an Illinois Consumer Fraud and Deceptive Business Practices Act claim, not a UCL claim. Furthermore, Secretary of Treasury directives are not the equivalent of laws or regulations. The motion to dismiss the claims under the "unlawful" prong against WFC is thus **GRANTED**.

As to unfairness, our court of appeals has applied unfairness under two different tests: *Cel-Tech* and *South Bay*. *See, e.g.*, *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 865–67 (9th Cir. 2018). *Cel-Tech* held that "unfair" conduct must be "tethered to some legislatively declared policy" or have some effect on competition. *Cel-Tech Commc'ns*, 20 Cal. 4th at 186–87. Plaintiffs need not allege a direct violation of a statute to satisfy the tethering test, only a

6

violation of its "policy or spirit." *Diaz v. Intuit, Inc.,* No. 15-01778-EJD, 2017 WL 4386461 at *6 (N.D. Cal. Sept 29, 2017). Under *South Bay*, a challenged business practice qualifies as unfair when the practice is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *S. Bay Chevrolet v. Gen. Motors Acceptance Corporation*, 72 Cal. App. 4th 861, 886–87 (1999) (citation omitted). With this approach, courts examine the practice's "impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer." *Ibid.* WFC's arguments regarding the FTC test will not be addressed as the two aforementioned tests used by our court of appeals are controlling.

The conduct alleged in the complaint does not satisfy the prong under either test. Under the *Cel-Tech* test, plaintiffs allege WFC's failure to properly oversee the mortgage approval process and modification software undermines the policies of HAMP and HBOR (Amd. Compl. ¶ 7). WFC correctly alleges plaintiffs' reference to HBOR is a non-starter since WFC is not a mortgage servicer. Similarly, plaintiffs do not adequately claim WFC's conduct is unfair under HAMP's policy goals. HAMP's purpose is to provide relief to borrowers who are at risk of foreclosure by reducing mortgage payments to sustainable levels. In this case, plaintiffs allege WFC's failure to properly test its mortgage modification software even after being ordered to do so violated this purpose (Opp. at 12). As defendant argues, HAMP did not create a duty for WFC to verify or audit the automated software (Br. at 12). Failing to act in the face of notice without such a duty does not rise to level the level of unfair conduct necessary to be considered a violation of HAMP's policy or spirit.

Under the *South-Bay* test, plaintiffs allege WFC's testing and oversight practices are unfair because they resulted in hundreds of wrongful foreclosures with far-reaching financial and emotional consequences (Amd. Compl. ¶ 227). WFC argues that it did not owe plaintiffs any duty nor did the Bank's wrongful foreclosure process provide WFC with any benefit (Reply at 10–11). Again, although WFC's board was put on notice of the errors in the Bank's software, its failure to act without any duty cannot plausibly be considered immoral, unethical, oppressive, unscrupulous or substantially injurious regardless of any competitive advantage is may have gained or the extent of customers whose homes were foreclosed on. The motion to dismiss the

claims under the "unfair" prong against WFC is thus **GRANTED**.

### 5. STATE CONSUMER PROTECTION CLAIMS.

Plaintiffs bring a claim for relief under the consumer protection statutes of five other states: the Illinois Consumer Fraud Act, the New Jersey Consumer Fraud Act, the Maryland Consumer Protection Act and Consumer Debt Collection Act, Section 349(a) of New York's General Business Law, and the Pennsylvania Unfair Trade Practices and Consumer Protection Law.

WFC moves to dismiss these claims by stating that WFC itself did not service the plaintiffs' loans, deny them loan modifications, nor foreclose on their properties (Opp. at 13–14). Plaintiffs have alleged among other claims that WFC failed to implement or maintain procedures to ensure the Bank was complying with HAMP or other applicable government requirements (Amd. Compl. ¶ 233). As stated above, WFC is not indirectly liable for the Bank's actions and a failure to act without any duty does not plausibly point to unfair and misleading business practices in violation of the state consumer protection laws. The motion to dismiss these claims against WFC is thus **GRANTED**.

### 6. REQUEST FOR JUDICIAL NOTICE.

Courts may take judicial notice of facts that are not subject to reasonable dispute because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FRE 201(b). "[M]atters of public record" are the appropriate subjects of judicial notice. *Lee v. City of Los Angeles,* 250 F.3d 668, 689 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cty. of Santa Clara,* 307 F.3d 1119, 1125–26 (9th Cir. 2002).

Plaintiffs offer five documents for judicial notice: (1) WFC's Form 10-Q for the period ending June 30, 2018, (2) WFC's Form 10-Q for the period ending September 30, 2018, (3) WFC's Form 10-K for the fiscal year ending December 31, 2018, (4) In re: Wells Fargo & Co. Consent Order dated April 13, 2011, and (5) In re: Wells Fargo & Co. Order to Cease and Desist Issued Upon Consent Pursuant to the Federal Deposit Insurance Act dated February 2018.

These documents are a matter of public record as they are publically filed. WFC argues that none of the documents should be judicially noticed because a court cannot take judicial

notice of such documents for the truth of the matter asserted therein (Obj. at 4). This statement is not entirely correct as party admissions may be judicially noticed for the truth of the matter if requested by the opposing party. FRE 801(d)(2). In this case, the 2018 SEC filings, which were written by WFC, and the consent orders, which were signed and accepted by WFC's board, may be judicially noticed in their entirety for their contents because they are party admissions.

This order accordingly **GRANTS** judicial notice as to all of the documents requested.

## CONCLUSION

For the reasons stated, Wells Fargo & Company's motion to dismiss the above-mentioned claims solely against Wells Fargo & Company is **GRANTED**. The case against Wells Fargo Bank, N.A. will go forward. The Court is of the view that further leave to amend in regards to Wells Fargo & Company would be futile.

**IT IS SO ORDERED.**

Dated: July 10, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE