Michael L. Schrag (SBN 185832)
Joshua J. Bloomfield (SBN 212172)
Linda Lam (SBN 301461)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, California 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
mls@classlawgroup.com
jjb@classlawgroup.com
lpl@classlawgroup.com

Richard M. Paul III
Ashlea G. Schwarz
Laura C. Fellows
**PAUL LLP**
601 Walnut Street, Suite 300
Kansas City, Missouri 64106
Telephone: (816) 984-8100
Facsimile: (816) 984-8101
Rick@PaulLLP.com
Ashlea@PaulLLP.com
Laura@PaulLLP.com

*Counsel for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALICIA HERNANDEZ, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | Case No. 3:18-cv-07354 -WHA<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE DR. JOHN A. KILPATRICK'S OPINIONS**<br><br>Date: October 31, 2019<br>Time: 8:00 a.m.<br>Courtroom: 12<br>Judge: Hon. William H. Alsup |

TABLE OF CONTENTS

Introduction ............................................................................................................................. 1

Background Facts on Dr. Kilpatrick ....................................................................................... 2

Argument ................................................................................................................................ 4

I.  Wells Fargo Does Not Dispute the Reliability of Automated Valuation Models (AVM) ...... 4

II.  Dr. Kilpatrick's Methodology Accounts for Relevant Variables ............................................ 5

III.  Dr. Kilpatrick's GAVM Is More Reliable than Individual Appraisals ................................... 8

IV.  The Methodology Was Not Presented to Establish Facts ....................................................... 8

Conclusion ............................................................................................................................. 10

## TABLE OF AUTHORITIES

*Barfield v. Sho-Me Power Electric Coop.*, Case No. 11-cv-04321-NKL, 2013 WL 12145824 (W.D. Mo. July 8) ......................................................................... 2, 3

*Bazemore v. Friday*, 478 U.S. 385 (1986) ........................................................................... 6

*Britton v. Servicelink Field Services, LLC*, Case No. 2:18-cv-00041-TOR, 2019 WL 3400683 (E.D. Wash. July 26) ........................................................................... 5

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) ............................................ 3, 4

*Edwards v. Nat'l Milk Producers Fed'n*, Case No. C 11-04766 JSW, 2014 WL 4643639 (N.D. Cal. Sept. 16) ........................................................................... 6

*Fed. Housing Finance Agency v. Nomura Holding America, Inc.*, 104 F.Supp.3d 441 (S.D.N.Y. 2015) ............................................................................ 2, 3

*Giuliano v. Sandisk Corp.*, Case No. C 10-02787 SBA, 2015 WL 10890654 (N.D. Cal. May 14) ............................................................................ 8, 9

*Gutierrez v. Wells Fargo Bank, N.A.*, Case No. C 07-05923 WHA, 2008 WL 4279550 (N.D. Cal. Sept. 11) .......................................................................... 6

*Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998 (9th Cir. 2004) ................... 8

*In re RFC and ResCap Liquidating Trust Litig.*, Case No. 13-cv-3451, Case No. 14-cv-1716, 2018 WL 4489685 (D. Minn. Sept. 19) ........................................ 3, 8

*Korea Supply Co. v. Lockheed Martin Corp.* 29 Cal. 4th 1134 (2003) ............................ 10

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) ........................................................ 4

*Massachusetts Mut. Life Ins. Co. v. DB Structured Products, Inc.*, Case No. 11-30039-MGM, 2015 WL 2130060 (D. Mass. May 7) ......................................... 3

*Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979 (9th Cir. 2015) ..................... 10

*Rai v. Santa Clara Valley Transp. Auth.*, 308 F.R.D. 245 (N.D. Cal. 2015) ................... 4, 5

*Ralston v. Mortgage Investors Group, Inc.*, Case No. 08-536-JF (PSG), 2011 WL 6002640 (N.D. Cal. Nov. 30) .......................................................................... 6

*Sali v. Corona Reg. Med. Ctr.*, 909 F.3d 996 (9th Cir. 2018) ............................................ 4

*Turner v. Murphy Oil USA, Inc.*, Case No. Civ.A. 05-4206, 2006 WL 91364 (E.D. La. Jan. 12) ................................................................................. 3

## INTRODUCTION

Dr. John A. Kilpatrick, Ph.D., MAI, FRICS, is a nationally renowned home appraisal expert. While Wells Fargo attacks his declaration as if it were a final merits expert report, his role here is limited: he explains how, if a liability class is certified, he could efficiently and reliably assist in calculating lost equity in damages proceedings. His main opinion—that he is capable of appraising class members' homes using an Automated Valuation Model (AVM)—is hardly controversial. Indeed, Wells Fargo has used an AVM to value properties in its loan modification process and many courts have accepted Dr. Kilpatrick as an expert to appraise homes using his AVM. Wells Fargo prematurely argues about details such as the proper valuation date (a legal issue), and how to account for liens on class members' homes, but Wells Fargo cannot credibly dispute that Dr. Kilpatrick can use his AVM to appraise class members' homes to help determine the losses they suffered when Wells Fargo wrongfully accelerated their debts and/or foreclosed.

Dr. Kilpatrick is one of the country's leading experts on using AVMs to automate the appraisal process by accessing a wealth of available data so that numerous homes can be appraised at one time without requiring a personal visit to every home. Wells Fargo does not directly attack the use of AVMs, which would be futile given their wide acceptance in the appraisal industry and within Wells Fargo, but nevertheless argues Dr. Kilpatrick should be precluded from using an AVM to prove class members' losses. That argument runs contrary to a wealth of experience and supporting literature on the use of AVMs. And, while appraisal methodology is not determinative of whether the court should certify a liability class here, Dr. Kilpatrick's opinion that his AVM will likely make follow-on damages proceedings more efficient, and will yield accurate appraisals, is supported by academic literature and numerous courts.

Finally, the primary case Wells Fargo relies on to exclude Dr. Kilpatrick's preliminary opinions is distinguishable because plaintiffs there sought to use Dr. Kilpatrick's AVM to do something it was not designed to do—calculate rental values. Rental values are not at issue here and other courts have consistently approved Dr. Kilpatrick's methodology. Wells Fargo is thus left with nit-picks that, even if correct, go to the weight and not admissibility of Dr. Kilpatrick's declaration. Wells Fargo's motion should thus be denied.

**BACKGROUND FACTS ON DR. KILPATRICK**

Dr. Kilpatrick has more than 35 years of experience in real estate finance, appraisal, and teaching. ECF No. 140 at p. 2 (Kilpatrick Report). He is a certified real estate appraiser in all fifty states, and a nationally certified appraisal standards instructor by the Appraisal Standards Board in Washington, D.C. *Id.* at pp. 2, 6. He is currently the managing director of a consulting firm that specializes in real estate valuation and financial and economic analysis, and has written or contributed to more than ten books (including a forthcoming book titled, *Real Estate Valuation and Strategy*) and more than 100 journal articles and papers. *Id.* at pp. 1-2. Moreover, Dr. Kilpatrick has served as a consultant to government entities, including the Federal Housing Finance Authority, as conservator for Fannie Mae and Freddie Mac, and was appointed by the Washington governor to serve on the State Economic Development Finance Authority. *Id.* There can be no doubt Dr. Kilpatrick is a well-credentialed expert in the field of mass appraisals. *See, e.g., Barfield v. Sho-Me Power Electric Coop.*, Case No. 11-cv-04321-NKL, 2013 WL 12145824, at *1 n.1 (W.D. Mo. July 8) (listing Dr. Kilpatrick's accomplished resume and noting he is "clearly qualified to give an expert opinion on mass appraisals").

Dr. Kilpatrick has developed a proprietary AVM, known as the Greenfield Automated Valuation Model (GAVM), that provides a valid, reliable, and efficient method to determine the value of Plaintiffs' homes. ECF No. 140, at pp. 6-7, 13-14. The validity of his GAVM does not depend on the facts of this case because it can be adjusted to account for any number of factors, as appropriate. *See, e.g.*, Deposition of John Kilpatrick, Ph.D. ("Kilpatrick Depo."), Ex. 1 to Declaration of Michael Schrag ("Schrag Decl.") at 67:22-68:5, 82:6-85:5, 123:11-124:2, 130:3-20. Wells Fargo complains he has not yet run his GAVM to appraise class members' homes, yet the point of the model is to run it against a large group of homes, not individual homes, and Wells Fargo has not produced addresses for class members' homes. Wells Fargo further complains that the appraisal alone will yield only one category of damages, but that is no reason to exclude his opinion. Plaintiffs' trial plan proposes an individualized damages phase. Dr. Kilpatrick can, however, efficiently and reliably determine the value of class members' homes on a date certain, which will greatly assist the Court in calculating damages.[1]

---

[1] Dr. Kilpatrick is also an expert financial economist. ECF No. 140, p. 17. He testified that his expertise could be used to measure other out-of-pocket losses for class members. *Id.* at 7; Kilpatrick Depo. at 57:6-25. The amount of lost equity is just the "starting point." Kilpatrick Depo. at 59:20-22.

   Courts across the country have widely approved Dr. Kilpatrick's GAVM. ECF No. 140, pp. 3-4; *see also, e.g., Barfield*, 2013 WL 12145824, at *4 ("Dr. Kilpatrick's opinion satisfies the tailored *Daubert* analysis proper at the class certification stage because it presents a reliable theory for addressing damages on a class wide basis in accordance with Plaintiffs' liability theory, without individual issues predominating"); *Fed. Housing Finance Agency v. Nomura Holding America, Inc.*, 104 F.Supp.3d 441, 508 (S.D.N.Y. 2015) (denying *Daubert* challenge and analyzing Dr. Kilpatrick's appraisals in depth to find, "While defendants have mounted a vigorous attack against the Greenfield AVM, there is no evidence that any AVM currently used in the field would have performed better when assessed with the rigor applied by the impressive array of experts assembled by defendants…. FHFA has shown that Kilpatrick's AVM has performed at least as reliably as those on which defendants and others in business typically rely in making important decisions."); *In re RFC and ResCap Liquidating Trust Litig.*, Case No. 13-cv-3451, Case No. 14-cv-1716, 2018 WL 4489685, at *8-10 (D. Minn. Sept. 19) (denying motion to exclude Dr. Kilpatrick's expert opinion; "Defendants' arguments about the reliability of Dr. Kilpatrick's GAVM go to weight rather than admissibility"); *Massachusetts Mut. Life Ins. Co. v. DB Structured Products, Inc.*, Case No. 11-30039-MGM, 2015 WL 2130060, at *9 (D. Mass. May 7) (denying *Daubert* challenge to Dr. Kilpatrick's GAVM; "the court finds his opinion is relevant and rests upon sufficiently reliable grounds for admissibility purposes"); *Turner v. Murphy Oil USA, Inc.*, Case No. Civ.A. 05-4206, 2006 WL 91364, at *5 (E.D. La. Jan. 12) (permitting Dr. Kilpatrick's opinion related to commonality, typicality, and predominance based on mass appraisal techniques and his "view that mass appraisal techniques are more reliable than appraisals on a house-by-house basis").

   As these various opinions conclude, Dr. Kilpatrick has specialized knowledge (conducting mass appraisals) in a technical field of expertise (real estate appraisals) that can assist the jury in deciding a fact in issue (how much were class members harmed when Wells Fargo wrongfully foreclosed on their homes). More importantly at this stage, Dr. Kilpatrick's mass appraisal model provides a methodology for assisting with an important component of damages that class members intend to prove if a liability class is certified and the class prevails at trial; and it does so in a manner that will yield a more accurate appraisal than an individualized appraisal of each class member's home.

**ARGUMENT**

In analyzing expert testimony, a court must determine if the witness is qualified[2] and whether the witness' testimony is relevant and reliable. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). The court is granted "broad latitude when it decides how to determine reliability." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141-42 (1999). At this preliminary stage, although the court should use the *Daubert* standard, "admissibility must not be dispositive." *Sali v. Corona Reg. Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018). Rather, the court's "inquiry into the evidence's ultimate admissibility should go to the weight that evidence is given at the class certification stage." *Id.* This analysis has often been referred to as a "tailored *Daubert* analysis" in that it "scrutinize[s] the reliability of the expert testimony in light of the criteria for class certification and the current state of the evidence." *Rai v. Santa Clara Valley Transp. Auth.*, 308 F.R.D. 245, 264 (N.D. Cal. 2015) (citation omitted).

Dr. Kilpatrick has opined that his mass appraisal system can be used to measure the loss in home equity for each class member, consistent with one of Plaintiffs' theories of damages.

**I.   Wells Fargo Does Not Dispute the Reliability of Automated Valuation Models (AVM)**

Dr. Kilpatrick's report provides a reliable method to appraise class members' homes using a proprietary AVM. An AVM is a computer program that uses statistical models to estimate a property's market value. *See* ECF No. 140 at p. 11. The Appraisal Standards Board recognizes that AVMs can be accurate and reliable, and the *Uniform Standards of Professional Appraisal Practice* (USPAP) sets standards to be followed to create "credible mass appraisals." *See id.* at pp. 11-12.

Dr. Kilpatrick's declaration lists the steps he will take using his GAVM to appraise the value of class members' homes, including using property coordinates to account for relevant location factors and applying it to his spatial model, conducting data sampling to verify accuracy, classifying properties by submarkets and property types, and analyzing property characteristics. *See id*. at pp. 9-10.

Wells Fargo does not seriously dispute that AVMs are reliable; and they are fully accepted in the appraisal industry. *See, e.g., Mass. Mut. Life Ins. Co.*, Case No. 11-30039-MGM, 2015 WL 2130060, at *9 (D. Mass. May 7) ("it is clear that AVMs have been subject to peer review and are accepted within the real estate appraisal and underwriting industry"). Moreover, consistent with Dr.

---

[2] Wells Fargo does not appear to challenge Dr. Kilpatrick's qualifications.

Kilpatrick's report noting that lenders routinely use AVMs to value properties, Wells Fargo's internal documents show that it too uses an AVM to value properties as part of its loan modification analysis. ECF No. 140 at p. 12; ECF No. 138-14, Ex. 12 to Schrag Decl. As Wells Fargo's Home Preservation Application (HPA) instructions make clear, the "loan-to-value ratio of unpaid principle balance to home value" is one of the calculations used in the loan modification decisioning process. ECF No. 138-14, Ex. 12 to Schrag Decl., at 00071447. The "Home Value" is determined by the most recent value of either an appraisal or "AVM VALUE." *See id.* at 00071446.

Unable to attack AVMs as an unreliable tool for mass appraisals, Wells Fargo's motion to exclude Dr. Kilpatrick relies heavily on *Britton v. Servicelink Field Services, LLC*, Case No. 2:18-cv-00041-TOR, 2019 WL 3400683 (E.D. Wash. July 26). But *Britton* is distinguishable because plaintiffs there tried to use the AVM to calculate daily rental values, rather than simply home values. *See id* at *7. The present case, in contrast, will not require Dr. Kilpatrick to use his AVM to calculate rental values.[3]

## II.  Dr. Kilpatrick's Methodology Accounts for Relevant Variables

Wells Fargo's argument that Dr. Kilpatrick's declaration is unreliable because it does not show how he decided which variables to use in his AVM is premature. Dr. Kilpatrick's declaration states that in prior cases. he has used property data from iLeads. *See* ECF No. 140, p. 11. iLeads includes two data sources: sales/deed data and tax assessor data. *See id.* The data includes information such as: most recent sales price, sales data, property characteristics such as square footage, bathrooms, ages, lot size, and property location. *See id.* Isolating all specifications, such as whether the square footage of a bedroom will be used, is not required at this stage.

For example, in *Rai v. Santa Clara Valley Transp. Auth.*, the defendant sought to exclude the damage method plaintiffs proposed by alleging the expert identifies "…sources of data without showing how he proposes to use those sources to perform an exact calculation." (internal quotations omitted). 308 F.R.D. 245 at 263-64. Because damage calculations do not have to be "exact" at this stage, the *Rai* court denied the motion to exclude and found the damage model was sufficient. *Id.*

---

[3] Wells Fargo notes that Dr. Kilpatrick stated in his deposition that his opinions have never been excluded, but Dr. Kilpatrick testified he was not aware of the *Britton* opinion (issued in late July) until his deposition. *See* Kilpatrick Depo. at 149:16-151:18.

Similarly, in support of class certification in *Gutierrez v. Wells Fargo Bank, N.A.*, the plaintiffs provided this Court with expert testimony that a "program could be written and applied against the bank's database…." Case No. C 07-05923 WHA, 2008 WL 4279550, at *17 (N.D. Cal. Sept. 11). Wells Fargo objected that the report did not disclose the reasons for the opinion, relied on false facts, and potentially calculated damages incorrectly. *Id*. at *17 n.6. For example, Wells Fargo objected that the damage calculations purported to focus on "end of day" but did not define the time so that it was not clear whether it meant end of business day or at midnight. *Id.* This Court overruled Wells Fargo's objections, stating it was "confident and so finds that software will be designable to extract the vital elements needed to assess damages and causation." *Id*. at *17. Here, unlike in *Gutierrez*, Plaintiffs are not even seeking to certify a damages class; nevertheless, as in that case, Dr. Kilpatrick will be able to input the proper variables into his AVM to reliably appraise the lost value in class members' homes.

Moreover, as the Supreme Court has noted with respect to regression analysis, "[n]ormally, failure to include variables will affect the analysis' probativeness, not its admissibility." *Bazemore v. Friday*, 478 U.S. 385, 400 (1986) (Brennan, J., joined by all Members of the Court, concurring in part); *see also, e.g., Edwards v. Nat'l Milk Producers Fed'n*, Case No. C 11-04766 JSW, 2014 WL 4643639, at *6 (N.D. Cal. Sept. 16) (following *Bazemore* and rejecting Defendants' argument that "Plaintiffs' expert failed to consider important relevant factors"). AVMs, including Dr. Kilpatrick's proposed GAVM, are a form of regression analysis. *See* ECF No. 140, p. 8.

*Ralston v. Mortgage Investors Group, Inc.*, Case No. 08-536-JF (PSG), 2011 WL 6002640 (N.D. Cal. Nov. 30), is instructive. There, the defendant sought to exclude an expert report that outlined the method by which a "commonly applicable model can be created to calculate the proposed Class Members' alleged damages in this action." *See id.* at *2. The defendant argued the model was fatally flawed because it did not account for certain variables the defendant asserted were crucial. *See id.* at *9. The court rejected this argument, finding that faulting the model for factors the defendant believed were critical "…would be essentially to adopt Countrywide's factual position on those issues before evaluating their relevance to the definition of or certification of the class." *Id.* at *9. Similarly here, Wells Fargo's claim that its version of the "relevant" variables needs to be included in any proposed methodology to make it reliable does not warrant exclusion.

1  Nor do Wells Fargo's arguments that Dr. Kilpatrick's declaration fails to account for the actual
2  condition of each property and liens warrant excluding his opinion. First, Dr. Kilpatrick's methodology
3  accounts for the physical condition of the property. As Dr. Kilpatrick testified, his model accounts for
4  improvements to the home where they are "locally important." *See* Kilpatrick Depo. at 91:22-92:10.
5  His GAVM takes into account various improvements using tax-assessed value. *See id.* Dr. Kilpatrick's
6  model will account for the extent to which various improvements increase, or perhaps decrease,
7  property values, as it accounts for market value. *See id.* at 94:13-96:3. Whether someone subjectively
8  values a property differently because of an improvement speaks to "bias," which is what ones seeks to
9  avoid in determining market value because market value is based on the amount a reasonable buyer
10 would be willing to pay, rather than the subjective amount a particular buyer would be willing to pay.
11 *See* Kilpatrick Depo. at 92:11-23.

Wells Fargo's argument that the tax assessed value is not completely accurate because assessments are not done each year ignores the fact that it is just one factor in the model. As Dr. Kilpatrick explained, the model uses both tax assessments and comparable properties to look at prior value and updated value. Kilpatrick Depo. at 97:18-99:1. The model has been tested to see if it can account for "idiosyncratic changes" and has been found to have a "high degree of consistency, which tells us that it is statistically robust to those kinds of changes." *See id.* Moreover, as Dr. Kilpatrick testified, the model takes into account other factors that could influence value, such as: location, curb appeal, size of the home, and age. Kilpatrick Depo. at 106:3-18. Therefore, the model is not merely looking at tax assessed values and spitting them out as an "answer." It is using tax assessed values as the starting point and then analyzing other factors that could influence home value to determine the most accurate valuation.

Wells Fargo makes much about Dr. Kilpatrick's model not accounting for liens on the property. But the existence of a lien does not affect the fair market value of a home. Given that lien values are unlikely to be disputed items, Wells Fargo is looking for disputes where none exist. Questions such as whether the amount of the lien then needs to be "backed out" or otherwise accounted for after the value of the property has been determined are irrelevant to the question at hand: whether Dr. Kilpatrick's method of AVM is reliable and will be helpful in determining damages.

Finally, even assuming Wells Fargo's arguments about property conditions or liens have merit, "questions regarding the evidence relied upon by [an expert] go to the weight, not the admissibility of [the expert's] opinion." *Giuliano v. Sandisk Corp.*, Case No. C 10-02787 SBA, 2015 WL 10890654, *8 (N.D. Cal. May 14) (citing *Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1017 n.14 (9th Cir. 2004)). Moreover, Dr. Kilpatrick's methodology is flexible and can account for other relevant variables as needed. *See, e.g.*, Kilpatrick Depo. at 67:22-68:5, 82:6-85:5, 123:11-124:2, 130:3-20.

### III.   Dr. Kilpatrick's GAVM Is More Reliable than Individual Appraisals

Wells Fargo's implication that appraisals must be individualized is unavailing. ECF No. 148 at p. 10-12. First, Wells Fargo cannot dictate the appraisal method Plaintiffs use to prove damages. Second, Wells Fargo is wrong to assert that individualized appraisals are more accurate. As Dr. Kilpatrick outlines, individual property valuations are inherently subject to bias and can be unreliable. ECF No. 140, pp. 7, 10-11; Kilpatrick Depo. at 78:20-80:3. An individual appraisal is limited because most appraisers will only use a small set of "comparable sales selected for comparison purposes." ECF No. 140, p.7. This limited selection leads to the possibility of bias, which can be avoided through mass appraisal where all property sales of a like kind are used. *See id.* As a result, "estimates from small samples are subject to random and significant statistical variation." *Id.* at pp. 10-11.

Wells Fargo responds to these arguments by discussing the anticipated error rate of Dr. Kilpatrick's methodology. But Wells Fargo does not dispute Dr. Kilpatrick's statement that his average error rate "falls within industry standards for excellent AVM performance." *See* ECF No. 140, p. 13. Instead, Wells Fargo suggests, without foundation, that a 7% error rate is too high. Whether the error rate is too high or not, which Plaintiffs dispute, goes to the weight of Dr. Kilpatrick's testimony and does not justify exclusion. *See, e.g., In re RFC*, 2018 WL 4489685, at *8-10 (D. Minn. Sept. 9) (denying motion to exclude Dr. Kilpatrick's expert opinion and "Defendants' arguments about the reliability of Dr. Kilpatrick's GAVM go to weight rather than admissibility").

### IV.   The Methodology Was Not Presented to Establish Facts

Wells Fargo argues Dr. Kilpatrick has assumed numerous factors, including that all class members would have accepted a modification if offered and would still be in their homes today. ECF No. 148, p. 17. But Plaintiffs did not submit Dr. Kilpatrick's report to establish these types of facts.

Rather, the report was presented to demonstrate *how* damages could be calculated. Further, even assuming Dr. Kilpatrick's methodology relies on "incorrect" facts, "questions regarding the evidence relied upon by [an expert] go to the weight, not the admissibility of [the expert's] opinion. *Giuliano*, 2015 WL 10890654, at *8.

In *Ralston*, the defendant similarly argued that a proposed model for benefit-of-the-bargain damages was unreliable because it did not account for "the numerous complex financial events that commonly arise in the context of residential mortgages, such as loan payoffs, modifications, foreclosures, and default related fees." *Ralston*, 2011 WL 6002640, at *8. In denying the motion to exclude, the court found the expert's assumptions did not "foreclose [the report's] admissibility at this stage." *Id.* The court saw "no basis for dismissing [the expert's] testimony that the methodology can calculate damages accurately on a class-wide basis by adjusting the database inputs to integrate individual loan terms and payment variables" and found that the methodology still constituted a reasonable method for calculating damages. *Id.* The court further found the "argument that the report should be excluded where relevant factors are unaddressed is unpersuasive where the court has yet to determine which factors are relevant to the class claims." *Id.* Here too, Wells Fargo asks this Court to strike the declaration before the Court has made any determination as to what the relevant factors are. Dr. Kilpatrick's methodology is flexible and can account for other factors.

Finally, Wells Fargo argues Dr. Kilpatrick's declaration must be excluded because he assumes the wrong date on which to value the homes. ECF No. 148 at pp. 12-14. Wells Fargo argues that class members are not entitled to recover the increase in value of their homes coming out of the recession had Wells Fargo not sold them in foreclosure. But Wells Fargo acknowledges that a party can be liable for consequential damages where "they are the proximate result of the breach and [] they were foreseeable." ECF No. 148, p. 19 (citing 24 Williston on Contracts § 64:16 (4th ed.)). As Plaintiffs have shown, Wells Fargo knew there was a risk it was wrongfully denying mortgage loan modifications as early as 2014. ECF No. 140, pp. 12-13. Although Wells Fargo curtly alleges it would not be foreseeable that lost equity would accrue post-foreclosure, Plaintiffs will argue that it is foreseeable that Wells Fargo's breach of contract would cause a homeowner to lose future equity value. The jury will decide whether such damages are the proximate and foreseeable result of the breach.

With respect to the UCL, Wells Fargo's citation to *Korea Supply Co. v. Lockheed Martin Corp.* 29 Cal. 4th 1134, 1144 (2003), for the notion that damages cannot be recovered because the UCL is equitable in nature is misplaced. Plaintiffs can seek restitution of money or property lost as a result of the UCL violation. *See, e.g., Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979 (9th Cir. 2015) (discussing restitution under the UCL in connection with class certification and noting that in "calculating damages, here restitution, California law 'requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation'"). Moreover, "[w]here a defendant has wrongfully obtained a plaintiff's property, 'the measure of recovery for the benefit received … is the value of the property at the time of its improper acquisition … *or a higher value if this is required to avoid injustice*' where the property has changed in value." *Id.* (citation omitted) (emphasis added).

In any event, Dr. Kilpatrick can adjust his methodology to fit the appropriate dates and parameters that emerge as this case approaches trial. Indeed, Dr. Kilpatrick testified that, "I've discussed using as a future date the date of trial. But if, in fact, there's a reason to use a different the date, we can – we can do that on an individualized basis within the confines of the AVM. So there's nothing – obviously, we're going to use different foreclosure dates for each and every one of these properties. There's no reason why the second date has to be identical for each and every one of those properties." Kilpatrick Depo. at 123:17-124:2; *see also id.* at 130:13-20 ("And for illustrative purposes, in my hypothetical, I've used the date of trial or today. But if the court decides that some other date is different or appropriate, the model can easily do that in an unambiguous fashion. Q. And it could change the date for each individual class member? A. Yes.").

## CONCLUSION

Plaintiffs seek to use Dr. Kilpatrick's GAVM appraisals to assist in calculating the lost equity damages suffered by class members when Wells Fargo wrongfully sold their homes in foreclosure or otherwise caused class members to lose their homes. Dr. Kilpatrick's qualifications to conduct a mass appraisal to value class members' homes cannot seriously be questioned. He has time and again been recognized in the appraisal industry and by courts as an expert in the field. How Plaintiffs choose to

quantify their damages is not an issue that goes to the admissibility of Dr. Kilpatrick's opinions, and thus Wells Fargo's motion should be denied.

| Dated: September 30, 2019 | Respectfully submitted, |
|---|---|
| | **GIBBS LAW GROUP LLP** |
| | /s/ *Michael L. Schrag* |
| | Michael L. Schrag (SBN 185832) |
| | Joshua J. Bloomfield (SBN 212172) |
| | Linda Lam (SBN 301461) |
| | 505 14th Street, Suite 1110 |
| | Oakland, California 94612 |
| | Telephone: (510) 350-9700 |
| | Facsimile: (510) 350-9701 |
| | mls@classlawgroup.com |
| | jjb@classlawgroup.com |
| | lpl@classlawgroup.com |
| | |
| | P<small>AUL</small> **LLP** |
| | Richard M. Paul III |
| | Ashlea G. Schwarz |
| | Laura C. Fellows |
| | 601 Walnut Street, Suite 300 |
| | Kansas City, Missouri 64106 |
| | Telephone: (816) 984-8100 |
| | Facsimile: (816) 984-8101 |
| | Rick@PaulLLP.com |
| | Ashlea@PaulLLP.com |
| | Laura@PaulLLP.com |
| | |
| | *Attorneys for Plaintiffs* |

## CERTIFICATE OF SERVICE

I hereby certify that on the September 30, 2019, I electronically transmitted the attached documents to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all parties of record.

/s/ *Michael L. Schrag*