Michael L. Schrag (SBN 185832)
Joshua J. Bloomfield (SBN 212172)
Linda P. Lam (SBN 301461)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, California 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
mls@classlawgroup.com
jjb@classlawgroup.com
lpl@classlawgroup.com

Richard M. Paul III
Ashlea G. Schwarz
Laura C. Fellows
**PAUL LLP**
601 Walnut Street, Suite 300
Kansas City, Missouri 64106
Telephone: (816) 984-8100
Facsimile: (816) 984-8101
Rick@PaulLLP.com
Ashlea@PaulLLP.com
Laura@PaulLLP.com

*Counsel for Plaintiffs and the Proposed Classes*

# UNITED STATES DISTRICT COURT FOR THE

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALICIA HERNANDEZ et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | Case No. 3:18-cv-07354-WHA<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Date:   October 31, 2019<br>Time:  8 a.m.<br>Dept:   Courtroom 12<br>Judge: Hon. William H. Alsup |

**Table of Contents**

INTRODUCTION ................................................................................................................. 1

RESPONSE TO WELLS FARGO'S COUNTERSTATEMENT OF FACTS .......................... 2

ARGUMENT ........................................................................................................................ 3

I. Common Issues Predominate on Plaintiffs' Contract Claim ..................................................... 3

   A. The Breach of Contract Claim Is Suitable for Nationwide Class Treatment ...................... 3

   B. Because the Standard Form Government Contracts Are Unambiguous, Wells Fargo's Arguments Concerning Extrinsic Evidence Are Beside the Point ........................................ 4

   C. Class Members' Defaults Trigger, Not Excuse Wells Fargo's Performance ..................... 5

   D. State Law on Incorporation of HUD Regulations Does Not Defeat Class Certification .... 6

   E. Wells Fargo Admits Causation ............................................................................................ 6

   F. Wells Fargo's Criticisms of Plaintiffs' Damages Model are Unavailing ............................ 7

   G. Plaintiffs Have Standing to Represent a Nationwide Breach of Contract Class ................. 8

II. This Court Should Certify the California Subclass .................................................................. 8

   A. Plaintiff Debora Granja is an adequate class representative of the California Subclass ........................................................................................................................... 8

   B. The California subclass is sufficiently numerous ............................................................. 9

   C. Common UCL liability issues predominate and Granja has UCL standing ................. 10

   D. The same evidence will prove or disprove the wrongful foreclosure and HBOR claims ................................................................................................................................ 11

III. The Court Should Certify the Non-California State Consumer Protection Subclasses ...... 12

IV. Issue Certification of "Extreme and Outrageous Conduct" Would Materially Advance This Litigation ................................................................................................. 12

V. Plaintiffs and Counsel Satisfy Rule 23's Adequacy Requirement ...................................... 13

VI. Class Litigation Is Superior Because It Will Save Expense and Promote Uniformity ....... 14

Table of Authorities

Cases

*Alfred v. Pepperidge Farm, Inc.*, 2016 WL 7655793 (C.D. Cal. Aug. 5, 2016) ................... 9
*Allen v. Conagra Foods, Inc.*, 2019 WL 3302821 (N.D. Cal. July 22, 2019) ..................... 12
*Audino v. JPMorgan Chase Bank, N.A.*, 2017 WL 7693387 (S.D. Iowa June 27, 2017) ..... 6
*Ayres v. Ocwen Loan Servicing, LLC*, 129 F.Supp.3d 249 (D. Md. 2015) ......................... 12
*Bates v. JPMorgan Chase Bank,* 768 F.3d 1126 (11th Cir. 2014) ........................................ 6
*Beaver v. Tarsadia Hotels*, 2017 WL 2268853 (S.D. Cal. May 24, 2017) ......................... 14
*Chavez v. Indymac Mortgage Services*, 219 Cal.App.4th 1052 (2013) ............................. 11
*Cohen v. Chicago Title Ins. Co.*, 242 F.R.D. 295 (E.D. Pa. 2007) ...................................... 12
*Collins v. Olin Corp.*, 248 F.R.D. 95 (D. Conn. 2008) ................................................. 11, 13
*Diaz v. Albertson's LLC*, 2016 WL 8904415 (C.D. Cal. Dec. 20, 2016) ............................ 13
*Dixon v. Wells Fargo Bank, N.A.*, 2012 WL 4450502 (E.D. Mich. Sept. 25, 2012) ............ 6
*Dzielak v. Whirlpool Corp.*, 26 F.Supp.3d 304 (D.N.J. 2014) ............................................ 12
*Eduardo Chavez v. Smurfit Kappa N. Am. LLC et al.*,
    2019 WL 4570024 (C.D. Cal. July 5, 2019) ................................................................. 13
*Ellsworth v. U.S. Bank, N.A.*, 2014 WL 2734953,
    (N.D. Cal. June 13, 2014) ..................................................................... 3, 4, 5, 8
*Farhang v. Indian Inst. of Tech., Kharagpur*,
    2010 WL 2228936, (N.D. Cal. June 1, 2010) ................................................................. 7
*Glover v. Udren*, 2013 WL 6237990 (W.D. Pa. Dec. 3, 2013) ........................................... 12
*Gustafson v. BAC Home Loans Servicing, LP*,
    2012 WL 4761733 (C.D. Cal. Apr. 12, 2012) ................................................................. 9
*Harper v. Law Office of Harris and Zide LLP*,
    2016 WL 2344194 (N.D. Cal. May 4, 2016) ................................................................ 15
*Hawkins v. Comparet–Cassani*, 251 F.3d 1230 (9th Cir. 2001) ........................................... 8
*Heritage Bank N.A. v. Ruh*, 191 N.J. Super. 53 (Ch. Div. 1983) ......................................... 6
*In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*,
    270 F.R.D. 521 (N.D. Cal. 2010) ............................................................................ 4, 5, 8
*In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098 (N.D. Cal. 2007) ........................ 8
*In re Facebook Privacy Litigation*, 192 F.Supp.3d 1053 (N.D. Cal. 2016) ......................... 7
*In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011 (N.D. Cal. 2007) .. 8
*In re Lehman Bros. Sec. and ERISA Litig.*, 2013 WL 440622 (S.D.N.Y. Jan. 23, 2013) ... 15
*In re Med. Capital Secs. Litig.*, 2011 WL 5067208 (C.D. Cal. Jul. 26, 2011) ...................... 3
*In re Mortg. Electronic Registration Sys., Inc.*, 754 F.3d 772, 785 (9th Cir. 2014) ........... 11
*In re TFT-LCD Antitrust Litig.*, 267 F.R.D. 583 (N.D. Cal. 2010) ....................................... 8
*Ireland v. Anderson*, 2016 WL 7324104 (D.N.D. Aug. 29, 2016) ....................................... 9
*Johnson v. Hartford Casualty Insurance Co.*,
    2017 WL 2224828 (N.D. Cal. May 22, 2017) .............................................................. 14
*Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168 (N.D. Cal. 2017) ............................. 8
*Kamakahi v. Am. Soc'y for Reprod. Med.*, 305 F.R.D. 164 (N.D. Cal. 2015) .................... 13
*Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504 (C.D. Cal. 2012) ......................... 12
*Kleiner v. First National Bank of Atlanta*, 97 F.R.D. 683 (N.D.Ga. 1983) ......................... 4
*Kwikset Corp. v. Superior Court*, 51 Cal.4th 310 (2011) .................................................. 10
*Lane v. Wells Fargo Bank, N.A.*, 2013 WL 269133 ............................................................. 8
*Leszczynski v. Allianz Ins.,* 176 F.R.D 659 (S.D. Fla. 1997) ............................................... 4
*Leyva v. Medline Industries Inc.*, 716 F.3d 510 (9th Cir. 2013) ......................................... 15

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
Case No. 3:18-cv-07354-WHA

*Lil' Man in the Boat, Inc. v. City and County of San Francisco*,
    2019 WL 125905 (N.D. Cal. Jan. 8, 2019) ...................................................................10
*McLeod v. Bank of America, N.A.*, 2017 WL 6373020 (N.D. Cal. Dec. 13, 2017) ..............7
*Nunez v. BAE Sys. San Diego Ship Repair Inc.*,
    292 F.Supp.3d 1018 (S.D. Cal. 2017) .........................................................................9
*Ortega v. Uber Technologies Inc.*, 2018 WL 4190799 (E.D.N.Y. May 24, 2018).............14
*Readick v. Avis Budget Group, Inc.*, 2013 WL 3388225 (S.D.N.Y. July 3, 2013) .............12
*Rufini v. CitiMortgage, Inc.*, 227 Cal.App.4th 299 (2014) ................................................10
*Sali v. Corona Regional Medical Center*, 909 F.3d 996 (9th Cir. 2018) ...........................13
*Sandoval v. M1 Auto Collisions Centers*, 309 F.R.D. 549 (N.D. Cal. 2015) ......................9
*Senne v. Kansas City Royals Baseball Corp.*, F.3d 918 (9th Cir. 2019) .............................7
*Siegel v. Shell Oil Co.*, 656 F.Supp.2d 825 (N.D. Ill. 2009) .............................................12
*Sinclair v. Donovan*, 2011 WL 5326093 (S.D. Ohio Nov. 4, 2011) ...................................6
*Slakpikas v. First Am. Title Ins. Co.*, 298 F.R.D. 285 (W.D. Pa. 2014).............................12
*Stabley v. Bank of America, N.A.*, 2014 WL 3645327, (D. Nev. July 22, 2014) .................6
*Takiguchi v. MRI Int'l, Inc.*, 2016 WL 1091090 (D. Nev. Mar. 21, 2016) ........................14
*Tokoshima v. Pep Boys—Manny Moe & Jack of California*,
    2014 WL 1677979 (N.D. Cal. Apr. 28, 2014)............................................................9
*Torres v. Mercer Canyons Inc.*, 835 F.3d. 1125 (9th Cir. 2016)..........................................7
*Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036 (2016)..............................................7, 8
*Ulrich-Kurtzer v. Wells Fargo Bank, N.A.*,
    2016 WL 4275451 (W.D. Wash Jan. 28, 2016) .........................................................6
*United States ex rel. Terry v. Wasatch Advantage Group, LLC*,
    327 F.R.D. 395 (E.D. Cal. 2018).................................................................................7

Statutes

Fed. R. Civ. P. 23 .................................................................................................................15

Other Authorities

Antonin Scalia & Bryan A. Garner, Reading Law:
    The Interpretation of Legal Texts 101 (2012) ...................................................................4

# INTRODUCTION

Wells Fargo admits that for 5 ½ years, its HPA tool systematically miscalculated mortgage modification eligibility by *adding* (rather than comparing) state-specific maximum attorney's fees to actual attorney's fees. Dkt. 149 at 2. It also admits that this common error "resulted in the erroneous denial of trial payment plans or trial modifications for *impacted borrowers*." *Id*. (emphasis added). Yet it opposes certifying a class of these impacted borrowers even though a class trial could efficiently address its liability. Wells Fargo's opposition unfairly attacks class counsel and, more fundamentally, conflates the varied degree of harm its error caused with the predominantly common questions of whether this error breached uniform (or substantially similar) contract terms and violated state laws.

Contrary to the opposition, Plaintiffs fairly characterize the evidence obtained so far. In fact, while Wells Fargo puts a more favorable spin on its wrongful conduct, it agrees with the core facts Plaintiffs present. Wells Fargo admits it discovered the error in 2013 but did not attempt to correct it until 2015; and it admits that the proposed class members were all impacted by the attorney fee calculation error. *Id*. Wells Fargo, however, focuses on two unfortunate but correctable drafting errors in the class certification motion, for which Plaintiffs apologize to the Court and Wells Fargo. Plaintiffs inadvertently omitted Debora Granja from the list of Plaintiffs moving for class certification and California from the list of state subclasses in the class definitions, though the motion expressly states that Plaintiffs "seek to certify a California sub-class." Dkt. 138 at 13. To clarify, Plaintiffs are proposing Ms. Granja as a class representative of the nationwide class and California subclass.

Nor do Wells Fargo's substantive arguments rebut that common liability issues predominate. The same evidence—accelerating the debt without notifying class members that they were eligible for loan modifications—will prove Wells Fargo breached both types of contracts at issue here. Given that the bank's corporate witness agrees that modification is a way to cure a default, the clause at issue is not ambiguous, rendering unnecessary the 50-state analysis Wells Fargo proffers. Indeed, Plaintiffs can likely establish a classwide breach on summary judgment. The same evidence will establish Wells Fargo's liability on the wrongful foreclosure, Homeowner's Bill of Rights, UCL, and other state law claims. If Plaintiffs prevail on liability, the extent of harm Wells Fargo caused each class member will be addressed in follow-on damages/restitution proceedings.

**RESPONSE TO WELLS FARGO'S COUNTERSTATEMENT OF FACTS**

Wells Fargo criticizes Plaintiffs' discussion of the evidence to date, but the reality is Wells Fargo is the one playing fast-and-loose with the record. Consider first Wells Fargo's statement that Plaintiffs "falsely" claim that the bank never audited its Home Preservation Application (HPA) software. In support, Wells Fargo says that it (and others) routinely audited the *results* produced by the HPA. Plaintiffs' statement, however, was that the HPA tool itself wasn't audited. The evidence reveals no such audit during the relevant time frame—"despite calls internally and from outsiders for [such] regular audits." Motion, Dkt. 138 at 21:25-22:1. Wells Fargo's corporate representative, Carmen Bell, confirmed this fact, testifying: "It wasn't an audit or exam of the tool itself, but it was the output of the decision." Bell Depo., Dkt. 149-22 at 155:20-156:11.

Consider second Wells Fargo's accusation that "no document supports" Plaintiffs' statement that Wells Fargo knew 50 borrowers had been wrongfully denied a loan modification but ignored the problem. To the contrary, an internal company email dated January 9, 2014, *confirms* the bank had "50 loans identified with negative impact" and was aware that its "tool needs to be updated." Dkt. 138-22.

The evidence also confirms that Wells Fargo held a five-day "summit" in 2014 at which attorney's fees in the loan decision-making process were addressed, but the bank made no changes then—or until 2015. Wells Fargo criticizes Plaintiffs for not mentioning that the bank also considered *other* fees in the loan process at this summit. Dkt. 149 at 3:18-19 (calling this "critical contextual information"). How that is relevant or exculpatory is a mystery.

Consider next Wells Fargo's attempt to dispute Plaintiffs' statement that the loan modification process is "standardized." In all the ways that matter, it is; the process involves the same general steps. Dkt. 138-14 at 00071415 (all loan modification programs, "…have the same phases: Preconditions, Eligibility, Trial Period, and Final Modification."). Wells Fargo's misstep occurred during the eligibility phase. Bell Depo., Dkt. 138-3 at 61:13-18. Any slight variations do not detract from the uniform nature of the loan process.

Wells Fargo next disputes that it "ignored" state-specific fee caps (Dkt. 149 at 12), but an October 2014 email shows it knew the fee matrix was "not maintained by anyone" and "completely outdated." Dkt. 138-31. Another document noted, "HPU decisioning *does not account for* investor/state fee caps."

Dkt. 138-28 at 00001328 (emphasis added). And still more evidence indicates that after Wells Fargo removed the fee matrix, it did nothing to ensure it was staying within the state-specific fee caps. Dkt. 138-41 at 0088395 ("There was no check by the Underwriter to validate the quote from the attorney was within the investor allowable amount based on the property's state").

At bottom, Wells Fargo seeks to tell two stories: one to the investing public in securities filings, where it admitted common wrongdoing to a distinct class of people; and another to this Court, where it argues the "impacted" borrowers are so different that 946 trials are needed to establish liability. In doing so, Wells Fargo spins some facts in its favor but does not dispute this case's most important facts.

## ARGUMENT

### I. Common Issues Predominate on Plaintiffs' Contract Claim

Both types of form contracts Wells Fargo breached (standardized by Fannie/Freddie and the FHA respectively) require giving borrowers notice of how they can cure a default before Wells Fargo is entitled to accelerate their debts and initiate foreclosure. Dkt. 60-3 at 26, 33-35. Each contract is governed by the law of the state in which the subject property is located, but that doesn't mean the contract has a different meaning in each state. Wells Fargo argues that state extrinsic evidence rules vary, but those will not come into play here because the form contracts are unambiguous, and in fact Wells Fargo's corporate representative acknowledged that a modification can cure a default. Ferguson Depo., Dkt. 138-11 at 50:5-7.

#### A. The breach of contract claim is suitable for nationwide class treatment

Wells Fargo argues that the contract claim cannot be certified nationwide because different state laws apply. That argument, however, presupposes that the contracts are *not* standardized form contracts, which is incorrect. That difference matters because "courts routinely certify class actions regarding breaches of form contracts . . . common questions predominate when, as here, they involve form contracts and standardized policies and practices applied on a routine basis to all customers by a bank." *Ellsworth v. U.S. Bank, N.A.*, 2014 WL 2734953, at *20 (N.D. Cal. June 13, 2014) (citing *In re Med. Capital Secs. Litig.*, 2011 WL 5067208, at *3 (C.D. Cal. Jul. 26, 2011) (collecting cases)).

//
//

Judge Illston, for example, rejected arguments that variations in applicable state law defeated commonality in a nationwide class, in part because the contracts at issue were form policy contracts. As here, the parties in that case "offer[ed] competing interpretations based on the face of the documents," but such differences did "not demonstrate a lack of common issues of law." *In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*, 270 F.R.D. 521, 529 (N.D. Cal. 2010); *see also Ellsworth,* 2014 WL 2734953 at *20 (concluding defendant "overstate[d] the extent of any variations in state contract law, including as to the definition of breach, the existence of causation and damages requirements, and the admissibility of extrinsic evidence"); *Leszczynski v. Allianz Ins.,* 176 F.R.D 659, 671-72 (S.D. Fla. 1997) (certifying policyholder class where policies were "same in all material respects" and issued nationwide) (citing *Kleiner v. First Nat'l Bank of Atlanta*, 97 F.R.D. 683, 693 (N.D. Ga. 1983)). Given the standardized nature of the contracts at issue here, variations in state law do not defeat commonality or predominance.

### B. Because the standard form government contracts are unambiguous, Wells Fargo's arguments concerning extrinsic evidence are beside the point

Wells Fargo incorrectly claims that Plaintiffs' breach of contract claim "relies on extrinsic evidence." Dkt. 149 at 6. Plaintiffs' position in this case has always been that the standardized contracts contain general terms that, accorded their full and fair scope, cover loan modifications as an action to cure a default. Dkt. 67 at 9-10; Dkt. 60-3 at 26, 33-35; *cf.* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 101 (2012) ("Without some indication to the contrary, general words (like all words, general or not) are to be accorded their full and fair scope. They are not to be arbitrarily limited."). For its part, Wells Fargo *agreed* that the contract was unambiguous—though it took the view that the *only* "cure" was to bring the loan current. Dkt. 59 at 9-10. But its corporate representative admitted that the bank viewed modifications as a default cure. Ferguson Depo., Dkt. 138-11 at 50:5-7. Ultimately, the Court concluded that Plaintiffs' reading was plausible. Dkt. 136 at 4.

As such, because "neither party has asserted that the form policy contract contains ambiguous terms (rather, they offer competing interpretations based on the face of the documents), admission of extrinsic evidence should not be necessary to interpret the contractual provisions at issue." *In re Conseco*, 270 F.R.D. at 529. And because Wells Fargo has not identified any ambiguous language or extrinsic

evidence, state law variations in the treatment of extrinsic evidence will not create individual issues that might predominate over common ones.[1] *See id.*; *see also Ellsworth*, 2014 WL 2734953 at *22 (holding state law differences on the admissibility of extrinsic evidence did not defeat predominance because extrinsic evidence did not appear to be relevant to the issues in the case and the defendant did "not identify any extrinsic evidence or ambiguous contract terms"). If Plaintiffs are correct that either or both of these form contracts unambiguously required Wells Fargo to notify class members of their eligibility for a loan modification to cure their default before accelerating their debt, this will be a common question of law that can be decided by the Court on a motion for summary judgment.

Besides, Wells Fargo's own charts (Dkt. 149-26) show that most if not all states admit extrinsic evidence. *See In re Conseco*, 270 F.R.D. at 529 (finding defendant "overstate[d]" state-law differences regarding "the admissibility of extrinsic evidence"). And further, "at best (and on this record, entirely hypothetically), it would be non-individualized extrinsic evidence." *Ellsworth*, 2014 WL 2734953, at *23. In any event, there is no reason to suspect that such evidence exists, given the bank's admission that a "default would be cured if the loan modification goes through the final settlement process, thus curing the default." Dkt. 138-11 at 50:5-7. Wells Fargo's contrary arguments are purely hypothetical.

### C. Class members' defaults trigger, not excuse, Wells Fargo's performance

Wells Fargo next argues that there are material state law differences regarding the effect of Plaintiffs' "own breaches," by which Wells Fargo means a borrower's default. That argument makes little sense. The security instruments explicitly set forth Wells Fargo's rights and obligations *if* a borrower defaults. *See, e.g.*, Dkt. 60-3 at 26, 33-35. These provisions circumscribe Wells Fargo's right to accelerate borrowers' debts and require the bank to give borrowers notice of an opportunity to cure and the method by which they could do so. As such, the default does not *excuse* Wells Fargo's obligation to provide notice and an opportunity to cure; it is the triggering event that contractually *requires* Wells Fargo to take these steps. The variations in state law pertaining to the first-to-breach rule or similar rules (Dkt. 149 at 9) simply have no application to the facts of this case.

---

[1] Plaintiffs' suggestion that *even if* the contract language were ambiguous, common extrinsic evidence would show that the parties intended loan modifications to cure defaults, Dkt. 67 at 9-10; Dkt. 138 at 19, does not mean that Plaintiffs believe that the contract is ambiguous or that extrinsic evidence is needed.

### D. State law on incorporation of HUD regulations does not defeat class certification

Wells Fargo argues that some states do not recognize contract claims based on violations of HUD regulations incorporated into contracts. This argument does not apply to class members who had Fannie/Freddie contracts, or even the majority of those who had FHA contracts. But Wells Fargo has correctly identified only four states that do not recognize contract claims for the FHA version.[2] Plaintiffs have identified four others. *See Dixon v. Wells Fargo Bank, N.A.*, 2012 WL 4450502, at *8 (E.D. Mich. Sept. 25, 2012); *Stabley v. Bank of America, N.A.*, 2014 WL 3645327, at *4 (D. Nev. July 22, 2014); *Heritage Bank N.A. v. Ruh*, 191 N.J. Super. 53, 66 (Ch. Div. 1983); and *Ulrich-Kurtzer v. Wells Fargo Bank, N.A.*, 2016 WL 4275451, at *4 (W.D. Wash Jan. 28, 2016). That impacts 54 of 946 class members, from Alabama (4), Colorado (2), Illinois (20), Maryland, (11), Michigan (7), Nevada (2), New Jersey (6), and Washington (2). Thirty-seven of these 54 class members can still pursue their Illinois, Maryland, or New Jersey consumer protection claims, and all of them can be a part of the IIED issue class.

### E. Wells Fargo admits causation

Wells Fargo's argument that Plaintiffs cannot prove causation classwide ignores that the bank has referred to class members as "impacted borrowers." Dkt. 149 at 2. Wells Fargo even admitted to all class members that it botched the calculation of their eligibility for a loan modification, and that if not for that error, they would have been offered an opportunity to participate in a loan modification program. Dkt. 138-43. Wells Fargo's duty to notify class members of this opportunity to cure their default was a condition precedent to accelerating the debt, a condition Wells Fargo openly concedes it did not satisfy. These admissions prove causation for all class members.

In *Bates v. JPMorgan Chase Bank, NA*, the Eleventh Circuit held that the same clause at issue from the FHA form agreement ("if not permitted by regulations of the Secretary") constituted a condition precedent. 768 F.3d 1126, 1132 (11th Cir. 2014). Plaintiffs will ask this Court to make the same ruling on the FHA contract and also hold that the provision in the Fannie/Freddie contract constitutes a condition precedent. Whether these clauses constitute conditions precedent are common questions that

---

[2] Wells Fargo wrongly claims Iowa and Ohio fall into this category as well – they do not. *See Audino v. JPMorgan Chase Bank, N.A.,* 2017 WL 7693387, at *6 (S.D. Iowa June 27, 2017); *Sinclair v. Donovan*, 2011 WL 5326093, at *7 (S.D. Ohio Nov. 4, 2011).

predominate over any individual issues for purposes of Rule 23(a)(2) and (b)(3). If the duty to notify class members of their eligibility for a loan modification to cure their default is a condition precedent, Wells Fargo was prohibited from accelerating their debts and thus causation will not require an individualized inquiry. Whether each class member would have accepted the loan modification and completed the trial payment plan is not a causation issue but instead goes to the extent of their damages. These individual damages questions do not defeat certification. *See, e.g.*, *United States ex rel. Terry v. Wasatch Advantage Group, LLC*, 327 F.R.D. 395, 415-416 (E.D. Cal. 2018) (differences in entitlement to damages did not defeat certification); *In re Facebook Privacy Litigation*, 192 F.Supp.3d 1053, 1062 (N.D. Cal. 2016) ("plaintiffs have established injury in fact through [their] breach of contract claim for nominal damages"); *Farhang v. Indian Inst. of Tech., Kharagpur*, 2010 WL 2228936, at *7 (N.D. Cal. June 1, 2010) (declining to dismiss contract claim for failure to state a claim because nominal damages would be available even if plaintiff could not prove actual damages). In any case, "fortuitous non-injury to a subset of class members does not necessarily defeat class certification of the entire class" in part because "the district court is well situated to winnow out those non-injured members at the damages phase of the litigation, or to refine the class definition." *Torres v. Mercer Canyons Inc.*, 835 F.3d. 1125, 1137 (9th Cir. 2016).

### F.  Wells Fargo's criticisms of Plaintiffs' damages model are unavailing

Wells Fargo criticizes Dr. Kilpatrick's explanation of how he would calculate one aspect of class member damages if the court certifies a liability class. But its criticism attempts to hold Plaintiffs to a false standard. It is well settled that "[w]hen 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1045 (2016) (citations omitted). *See also Senne v. Kansas City Royals Baseball Corp.*, F.3d 918, 938 (9th Cir. 2019); *McLeod v. Bank of America, N.A.*, 2017 WL 6373020 at *14 (N.D. Cal. Dec. 13, 2017). Dr. Kilpatrick's model doesn't purport to capture all class members' damages; it merely provides a streamlined methodology for establishing one aspect of each member's damages. Further, as explained in the opposition to the motion to exclude, Dr. Kilpatrick can adjust start and end

dates in his AVM and liens can be backed out before calculating final damages for any class member. Dkt. 155 at 7-10. Thus, contrary to Wells Fargo's position, Dr. Kilpatrick's model will assist in calculating lost equity which are foreseeable breach of contract damages in this case. *Id.* To the extent other recoverable damages are individualized, such matters can be "tried separately" after classwide liability is determined. *See Tyson*, 136 S.Ct. at 1045.

### G. Plaintiffs have standing to represent a nationwide breach of contract class

Wells Fargo's argument that Plaintiffs must put forward a class representative from 46 states to have standing to maintain a nationwide breach of contract class is without support in the case law. *Ellsworth* allowed four Plaintiffs to represent class members from over 40 states, 2014 WL 2734953 at *3-7, and *Conseco* certified a nationwide contract class without any mention that each state needed its own representative. 240 FRD at 535.[3] Plaintiffs' contract claim arises from uniform provisions in form contracts Wells Fargo used in every state—not from state statutes. As such, Plaintiffs do not need a class representative from every state to have standing to bring this claim.

## II.     This Court Should Certify the California Subclass

The Second Amended Complaint has three California-specific causes of action—UCL, wrongful foreclosure, and the Homeowner's Bill of Rights. These claims are amenable to class treatment because the same common evidence will prove Wells Fargo's liability for all three claims.

### A. Plaintiff Debora Granja is an adequate class representative of the California Subclass

Ms. Granja was wrongfully denied a modification, has no conflicts with other class members, and has demonstrated her commitment to this case by following the progress of the litigation, actively participating in discovery, and appearing for her deposition. *In re TFT-LCD Antitrust Litig.*, 267 F.R.D. 583, 595 (N.D. Cal. 2010); Granja Depo., Exh. A to Schrag Decl. at 165:12-167:23; 179:16-181:5.

---

[3] Wells Fargo's cases are inapposite; none concern a nationwide breach of contract class. *Lane v. Wells Fargo Bank N.A.* found that the plaintiffs lacked standing to assert a UCL claim because they were not California residents. 2013 WL 269133 at *4 (N.D. Cal. Jan. 24, 2013). Three other cases Wells Fargo cites concern state antitrust or consumer protection laws. *See In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011 (N.D. Cal. 2007); *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098 (N.D. Cal. 2007); and *Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168 (N.D. Cal. 2017) The fourth involved a convicted prisoner who lacked standing to assert a constitutional claim applicable only to those not yet convicted. *See Hawkins v. Comparet–Cassani*, 251 F.3d 1230 (9th Cir. 2001).

Plaintiffs' counsel inadvertently omitted Ms. Granja from the list of moving plaintiffs, but this should not preclude her appointment as a class representative. Ms. Granja has asserted the UCL, wrongful foreclosure, and Homeowner's Bill of Rights claims on behalf of the California subclass. *See* SAC (Dkt. No. 137) at ¶¶ 16, 70-76, 205, 215, 221. Wells Fargo has deposed her and served interrogatories regarding her adequacy as a class representative. *See* Granja Depo.; Schrag Decl. at ¶ 4. And, district courts have inherent power to replace class representatives, and routinely allow plaintiffs to add or substitute a class representative even after a class is certified. *Nunez v. BAE Sys. San Diego Ship Repair Inc.*, 292 F.Supp.3d 1018, 1059 (S.D. Cal. 2017) (collecting cases); *see also Alfred v. Pepperidge Farm, Inc.*, 2016 WL 7655793, at *3 (C.D. Cal. Aug. 5, 2016).

Even though Ms. Granja has moved to Oregon, she has standing to pursue her California claims because she was injured in California. "[T]he UCL reaches claims made by out-of-state residents harmed by unlawful conduct occurring inside California." *See, e.g., Gustafson v. BAC Home Loans Servicing*, LP, 2012 WL 4761733, at *5 (C.D. Cal. Apr. 12, 2012). Wells Fargo denied Granja's loan modification on a home in California, and ultimately foreclosed on that home. Granja Depo. at 101:24-102:4. At the same time, Ms. Granja was living in California. *Id*. at 16:3-11, 102:21- 103:11.

**B.  The California subclass is sufficiently numerous**

The 31-member California subclass satisfies numerosity. First, although courts generally hold that each subclass must independently satisfy each Rule 23 requirement, "if the subclass members are members of a larger certified class, courts have applied the numerosity requirement less stringently." *Ireland v. Anderson*, 2016 WL 7324104, at *15 (D.N.D. Aug. 29, 2016). In *Tokoshima v. Pep Boys— Manny Moe & Jack of California*, the court held that a subclass with only 19 members was sufficiently numerous, given "the interest of judicial efficiency and fairness to the Subclass members with modest individual claims." 2014 WL 1677979, at *5 n.4 (N.D. Cal. Apr. 28, 2014).

Second, the numerosity factors discussed in *Sandoval v. M1 Auto Collisions Centers* weigh in favor of certification. 309 F.R.D. 549, 562 (N.D. Cal. 2015). For judicial economy, a single class liability trial presenting common evidence of Wells Fargo's wrongful conduct is more efficient than 31 individual trials with the same evidence. The factors regarding class members' financial resources and ability to file individual suits also favor certification; even average individual damages awards as high

as $250,000 would not justify the over 4,400 attorney hours already spent on this case, or the expense of bringing this case to trial. Schrag Decl., Dkt. 138-1 at ¶ 10; Paul Decl., Dkt. 138-44 at ¶ 15. Many class members are still recovering from the aftermath of losing their homes to foreclosure and lack the financial means to file individual suits against Wells Fargo. *See Lil' Man in the Boat, Inc. v. City and County of San Francisco*, 2019 WL 125905, at *5 (N.D. Cal. Jan. 8, 2019) (courts often look to "the economic status of the class members" in considering these factors). Accordingly, the 31-member California subclass is sufficiently numerous.

### C.  Common UCL liability issues predominate and Ms. Granja has UCL standing

The UCL claim is amenable to class treatment because whether Wells Fargo acted unfairly under the UCL depends on its own conduct, rather than any class member's conduct. The Court will need to apply one of two UCL tests to determine unfairness; either test applies in the same way to all class members. *See* Dkt. 138 at 21. Also, whether Wells Fargo acted unlawfully under the UCL by denying mortgage modifications in violation of HAMP and other government requirements can be resolved classwide. Wells Fargo has admitted that it wrongfully denied loan modifications to all class members in violation of HAMP or other government regulations; the question of whether those violations render Wells Fargo liable under the unlawful prong of the UCL is the same for all class members.

Nor is Wells Fargo correct that Plaintiffs do not seek restitution. Dkt. 149 at 17; *see* SAC (Dkt. 137) at 46 (prayer for relief). To have standing to sue under the UCL, a plaintiff needs to demonstrate that she "lost money or property" as a result of the defendant's conduct. *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 323 (2011). The California Supreme Court has made clear that there are "innumerable ways" to show economic injury from unfair competition. *Id*. A plaintiff may have surrendered more in a transaction than she otherwise would have, "have a present or future property interest diminished," or "be deprived of money or property to which he or she has a cognizable claim." *Id*. An unfair business practice may cause "a loss by the plaintiff without any corresponding gain by the defendant, such as, for example, a diminishment in the value of some asset a plaintiff possesses." *Id*. at 336.

Ms. Granja has alleged several types of economic injury resulting from Wells Fargo's conduct that entitle her to restitution. This includes the loss of her home, lost equity in her home, and money she spent moving her family. SAC at ¶ 228. Had Wells Fargo offered Ms. Granja a loan modification

before foreclosing, Ms. Granja would have made the modified payments and kept her home. Granja Depo. at 95:19-96:15. Instead, Wells Fargo wrongfully seized Ms. Granja's home. Lost equity is within the scope of "lost money or property" under the UCL. *Rufini v. CitiMortgage, Inc.*, 227 Cal.App.4th 299, 310-311 (1st Dist. 2014) (finding UCL standing where plaintiff alleged defendant's unfair practices "deprived [him] of the opportunity to pursue other means of avoiding foreclosure, leading to the loss of his home and the equity he had in it"). Ms. Granja therefore has UCL standing.

### D. The same evidence will prove or disprove the wrongful foreclosure and HBOR claims

The HBOR and wrongful foreclosure claims are certifiable for the same reasons as the UCL claim. Plaintiffs allege Wells Fargo violated section 2924.17 of HBOR by failing to ensure that its right to foreclose was supported by competent and reliable information. SAC at ¶¶ 216-218. Wells Fargo's HBOR violation is one of the bases of Plaintiffs' UCL claim. *See id*. at ¶ 227. And Plaintiffs' wrongful foreclosure claim is based on Wells Fargo's failure to notify Plaintiffs that they could cure their default by accepting a modification as well as Wells Fargo's unfair practices. *Id*. at ¶ 206. All three claims depend on the same evidence. Plaintiffs explained how they will prove the HBOR claim on a classwide basis in their proposed trial plan (Dkt. 138-48 at 5); that claim brought in the SAC on behalf of the California subclass will be proven with the same evidence as the UCL and wrongful foreclosure claims. SAC at ¶¶ 215-220; *Collins v. Olin Corp.*, 248 F.R.D. 95, 106 (D. Conn. 2008) (certifying class and subclasss to pursue claims pled rather than tying certification to particular claims). Thus, Wells Fargo's argument that the California subclass should not be allowed to pursue the HBOR claim is wrong.

As for the wrongful foreclosure claim, the issue of tender does not preclude certification. In California, tender may be excused where it would be "inequitable to enforce the debt" against the plaintiff. *In re Mortg. Electronic Registration Sys., Inc.*, 754 F.3d 772, 785 (9th Cir. 2014). Here all class members are excused from tendering because Wells Fargo was required to offer a loan modification before it could accelerate on the debts. It would be inequitable (and illogical) to require Plaintiffs to tender their outstanding debt before Wells Fargo fulfilled one of its duties under the mortgage contract—offering a loan modification as a method for curing any default. *See Chavez v. Indymac Mortgage Services*, 219 Cal.App.4th 1052, 1062-63 (2013) (plaintiff alleged exception to tender rule where defendants lacked a contractual basis to foreclose).

### III. The Court Should Certify the Non-California State Consumer Protection Subclasses

Courts routinely certify state subclasses to pursue consumer protection claims under different state laws. *See, e.g.*, *Allen v. Conagra Foods, Inc.*, 2019 WL 3302821, at *10-21 (N.D. Cal. July 22, 2019); *Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504, 545 (C.D. Cal. 2012). The five (non-California) state consumer protection subclasses here are suitable for class treatment because common issues predominate within each subclass. Each of the five states' consumer protection statutes prohibit deceptive or unfair conduct, and award relief if the conduct caused harm to the plaintiff. *See Siegel v. Shell Oil Co.*, 656 F.Supp.2d 825, 831-32 (N.D. Ill. 2009) (elements of Illinois Consumer Fraud Act include "a deceptive or unfair practice by the defendant," and proximate causation); *Ayres v. Ocwen Loan Servicing, LLC*, 129 F. Supp. 3d 249, 270 (D. Md. 2015) (similar for Maryland); *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 333 (D.N.J. 2014) (similar for New Jersey); *Slakpikas v. First Am. Title Ins. Co.*, 298 F.R.D. 285, 290 (W.D. Pa. 2014) (similar for Pennsylvania); *Readick v. Avis Budget Group, Inc.*, 2013 WL 3388225, at *2 (S.D.N.Y. July 3, 2013) (similar for New York). Whether Wells Fargo engaged in unfair or deceptive conduct can be resolved class-wide for each subclass.

Wells Fargo has made no showing that these subclasses would present issues of manageability, or that individual questions would predominate. It cites *Glover v. Udren* for the notion that claims under the Pennsylvania consumer protection law are not suitable for class treatment. 2013 WL 6237990, at *21 (W.D. Pa. Dec. 3, 2013). But *Glover* only denied certification because the plaintiff there failed to include any element of loss in the class definition, and determining reliance required individualized examination. *Id.* at *21-22. Those issues aren't present here: Plaintiffs' class definition includes an element of loss (denial of a loan modification), and reliance is not at issue. Dkt. 138 at 9:11-17; *see also Cohen v. Chicago Title Ins. Co.*, 242 F.R.D. 295, 301 (E.D. Pa. 2007) (certifying class to pursue PA consumer protection claim based on overcharges for title insurance).

### IV. Issue Certification of "Extreme and Outrageous Conduct" Would Materially Advance This Litigation

The issue of "extreme and outrageous conduct" is suitable for class treatment because it depends only on Wells Fargo's actions and thus can be proven entirely with common evidence. Adjudicating whether Wells Fargo's actions were extreme and outrageous in a single trial would be far more efficient

than requiring each class member to individually litigate the same issue more than 900 times. *See Kamakahi v. Am. Soc'y for Reprod. Med.*, 305 F.R.D. 164, 193 (N.D. Cal. 2015) (granting issue certification on whether certain guidelines violated the Sherman Act).[4] Wells Fargo is wrong that no court has certified this issue. In *Collins*, the court considered whether to certify a class to pursue a claim for infliction of emotional distress, among other torts. 248 F.R.D. at 104. The court rejected the argument that the IIED claim requires an inquiry into each class member's mental health and other possible causes of emotional distress, holding that "the remaining elements of an intentional infliction of emotional distress claim, such as the intent of [defendant] … and whether [defendant's] conduct was extreme and outrageous, can be made on a class-wide basis." *Id*. The same is true here.

States take the same or nearly the same approach on what constitutes "extreme and outrageous behavior" – and Wells Fargo has not shown otherwise. *See* Dkt. 149 at 23; Ex. 22 to Brinson Decl. (Dkt. 149-27); Dkt. 138 at 28. As in *Collins*, individual issues as to whether Wells Fargo's conduct caused class members severe emotional distress is an inquiry the Court can make "in conjunction with the inquiry into the actual damages sustained by each plaintiff." 248 F.R.D. at 104. Here, certification of the "extreme and outrageous" issue would materially advance the litigation because it would resolve an issue central to every class member's IIED claim.

### V.   Plaintiffs and Counsel Satisfy Rule 23's Adequacy Requirement

Wells Fargo's arguments against Plaintiffs' counsel's adequacy are unavailing. Plaintiffs and their counsel must have no conflicts of interest with class members and must "prosecute the action vigorously on behalf of the class." *Sali v. Corona Regional Medical Center*, 909 F.3d 996, 1007 (9th Cir. 2018). Wells Fargo does not argue that counsel or plaintiffs have a conflict of interest with class members. Nor does Wells Fargo dispute Plaintiffs' counsel's vigorous advocacy for the class. Dkt. 149 at 33-34. Instead, Wells Fargo wrongly accuses Plaintiffs' counsel of misstating evidence and making errors in its opening brief. Dkt. 149 at 34. But as discussed above, Plaintiffs fairly cited the evidence and testimony obtained to date. And the errors are correctable and do not overshadow Plaintiffs'

---

[4] *See also Eduardo Chavez v. Smurfit Kappa N. Am. LLC et al.*, 2019 WL 4570024, at *9 (C.D. Cal. July 5, 2019) (certifying issue class to determine whether defendant's meal period policy was lawful); *Diaz v. Albertson's LLC*, 2016 WL 8904415, at *6 (C.D. Cal. Dec. 20, 2016) (certifying class for the sole issue of whether it would be impractical for the defendant to allow off-duty meal breaks).

counsel's effective advocacy here or decades of experience obtaining excellent results for consumers and small businesses in similar complex class actions. *Id.*; Dkt. 138-1; 138-2 at 10-11; 138-44; 138-45 at 5-6. Over the last nine months, Plaintiffs' counsel has zealously and productively advocated for the 946 impacted borrowers in a challenging legal landscape. Dkt. 138-1, Schrag Decl. at ¶ 10; Dkt. 138-44, Paul Decl. at ¶ 15. To date, Plaintiffs' counsel has worked over 4,400 hours on this case. Dkt. 138-1, Schrag Decl. at ¶¶ 9-10; Dkt. 138-44, Paul Decl. at ¶¶ 14-15. At the outset, Plaintiffs' counsel secured an order requiring Wells Fargo to send corrective letters to all affected borrowers advising them of their right to be represented by counsel in Wells Fargo's private remediation efforts. Dkt. 18; Dkt. 28. Plaintiffs' counsel also worked diligently researching and preparing relevant legal claims and obtaining evidence to support them. Dkt. 136 at 7. Plaintiffs' counsel defeated Wells Fargo's motion to dismiss the state UDAP, IIED, HBOR, and wrongful foreclosure claims. Then, counsel prevailed on its motion to re-plead the nationwide contract claim after it was initially dismissed. Dkt. 137 at ¶¶ 180-196. Plaintiffs and their counsel satisfy Rule 23's adequacy requirement.

## VI. Class Litigation Is Superior Because It Will Save Expense and Promote Uniformity

Each superiority factor under Rule 23(b)(3) weighs in favor of certification. The first factor is "class members' interests in individually controlling the prosecution or defense of separate actions," which includes consideration of whether damages suffered by each class member are so high as to make individual actions superior. *Johnson v. Hartford Casualty Insurance Co.*, 2017 WL 2224828, *16 (N.D. Cal. May 22, 2017). Here, some class members (such as the ones who did not lose their homes) suffered relatively small monetary losses (e.g. paying more interest than they would have if they had received a modification). Given the time and expense this case requires, even a relatively large award would likely result in a "negative value" case, where an individual class member's recovery is likely to be lower than the cost of individual litigation. *See Ortega v. Uber Tech. Inc.*, 2018 WL 4190799, at *8 (E.D.N.Y. May 24, 2018); *Takiguchi v. MRI Int'l, Inc.*, 2016 WL 1091090, at *12 (D. Nev. Mar. 21, 2016) (finding a class action to be superior even where damages ran from "tens of thousands to hundreds of thousands of dollars," since litigation would present hardship on individual class members' finances and health); *Beaver v. Tarsadia Hotels*, 2017 WL 2268853, at *2, *5 (S.D. Cal. May 24, 2017) (settlement class certified where class member net recovery after fees and costs averaged $95,000).

The second and third superiority factors, the extent of existing litigation regarding the same controversy and the desirability of concentrating the litigation in this forum, also support certification. Fed. R. Civ. P. 23(b)(3)(B)-(C). The fact that eight other actions exist regarding this software error (Brinson Decl., Dkt. 149-5 at ¶4) means that the vast majority have chosen not to file their own action against Wells Fargo, showing they do not believe it is economically viable to challenge the fourth largest U.S. bank individually. *See In re Lehman Bros. Sec. and ERISA Litig.*, 2013 WL 440622, at *5 (S.D.N.Y. Jan. 23, 2013) (individual actions brought by four percent of the proposed class did not defeat superiority, as "[t]his is not a case in which all [class members] have the means to maintain separate actions").

The last factor in determining superiority is "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(D). Since the same evidence on liability would be necessary to prove each class member's claim, concentrating the over 900 class members' actions into this single litigation "is the most economical tack." *Harper v. Law Office of Harris and Zide LLP*, 2016 WL 2344194, at *5 (N.D. Cal. May 4, 2016). That there would need to be individualized inquiries on damages does not defeat certification. *Leyva v. Medline Industries Inc.*, 716 F.3d 510, 513-14 (9th Cir. 2013).

In sum, a class liability and issue trial will be manageable and superior to 946 individual actions.[5]

| | |
|---|---|
| Dated: October 3, 2019 | Respectfully submitted, |
| /s/ Michael L. Schrag | Richard M. Paul III |
| **GIBBS LAW GROUP LLP** | Ashlea G. Schwarz |
| Michael L. Schrag (SBN 185832) | Laura C. Fellows |
| Joshua J. Bloomfield (SBN 212172) | **PAUL LLP** |
| Linda Lam (SBN 301461) | 601 Walnut Street, Suite 300 |
| 505 14th Street, Suite 1110 | Kansas City, Missouri 64106 |
| Oakland, California 94612 | Telephone: (816) 984-8100 |
| Telephone: (510) 350-9700 | Facsimile: (816) 984-8101 |
| Facsimile: (510) 350-9701 | Rick@PaulLLP.com |
| mls@classlawgroup.com | Ashlea@PaulLLP.com |
| jjb@classlawgroup.com | Laura@PaulLLP.com |
| lpl@classlawgroup.com | |

*Attorneys for Plaintiffs*

---

[5] Wells Fargo's attempt to spin good faith scheduling compromises among counsel into arguments against the superiority of class treatment is unavailing. *See* Schrag Decl. at ¶¶ 2, 3.