Michael L. Schrag (SBN 185832)
Joshua J. Bloomfield (SBN 212172)
Linda P. Lam (SBN 301461)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, California 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
mls@classlawgroup.com
jjb@classlawgroup.com
lpl@classlawgroup.com

Richard M. Paul III
Ashlea G. Schwarz
Laura C. Fellows
**PAUL LLP**
601 Walnut Street, Suite 300
Kansas City, Missouri 64106
Telephone: (816) 984-8100
Facsimile: (816) 984-8101
Rick@PaulLLP.com
Ashlea@PaulLLP.com
Laura@PaulLLP.com

*Counsel for Plaintiffs and the Proposed Classes*

# UNITED STATES DISTRICT COURT FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALICIA HERNANDEZ et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | Case No. 3:18-cv-07354-WHA<br><br>**PLAINTIFFS' RENEWED NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**<br><br>Date:   January 9, 2020<br>Time:  8 a.m.<br>Dept:  Courtroom 12<br>Judge: Hon. William H. Alsup |

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................... 1

FACTUAL BACKGROUND ...................................................................................... 2

    **A.**    **Wells Fargo Ignores the Government's Warnings on Loan Servicing Deficiencies** . 2

    **B.**    **Wells Fargo's Defective Loan Modification Eligibility Software** ............................. 3

    **C.**    **Wells Fargo Discovered the Error in 2013 But Ignored it For Two Years** ............... 4

    **D.**    **Wells Fargo Concealed the Impact on Borrowers Until 2018** ................................. 5

ARGUMENT ............................................................................................................... 6

    **A.**    **This Court Should Certify the California Class** ...................................................... 6

        **1.**    **The California Class Is Sufficiently Numerous** .................................................. 6

        **2.**    **Common Questions of Fact and Law Predominate Over Individual Issues** . 7

            **a)**    **Common issues predominate on California breach of contract liability** ................................................................................................ 7

                **(i) Fannie/Freddie Contract** ...................................................... 8

                **(ii) FHA Contract** ....................................................................... 9

                **(iii) Causation and injury in fact are common issues** ...................... 10

                **(iv)**    **All class members performed by qualifying for a trial modification** .................................................................... 12

            **b)**    **Common issues predominate on HBOR liability** .............................. 12

            **c)**    **Common issues predominate on UCL liability** ................................. 13

            **d)**    **Common issues predominate on wrongful foreclosure liability** ....... 14

            **e)**    **Issue certification of "extreme and outrageous conduct" would materially advance this litigation** ....................................... 15

        **3.**    **Granja's and Campos's Claims Are Typical of California Class Members** 16

        **4.**    **Granja, Campos, and Their Counsel Satisfy Adequacy** ............................... 16

        **5.**    **A Class Action Is Superior to 24 Individual Trials** ........................................ 17

**B.**   **The Nationwide Class and Six State Subclasses Also Satisfy Rule 23(a) and Rule 23(b)(3)** ................................................................................................. **19**

1.   **The Nationwide Class Is Sufficiently Numerous** .............................. **19**

2.   **Common Questions of Fact and Law Predominate Over Any Individual Issues** ................................................................................................. **20**

a)   **Common issues predominate on breach of contract liability** ............ **20**

b)   **Issue certification of "extreme and outrageous" conduct would materially advance the nationwide class's claims** ............................. **21**

3.   **Typicality of the Proposed Class Representatives' Claims** ........................... **21**

4.   **Adequacy of the Proposed Class Representatives** ........................... **22**

5.   **Class Litigation Is Superior to Piecemeal Resolution of These Claims** ....... **22**

6.   **The Court Should Certify the State Consumer Protection Subclasses** ........ **23**

7.   **The Court Should Certify California and Georgia Wrongful Foreclosure Subclasses** ........................................................................................ **24**

**CONCLUSION** ............................................................................................. **25**

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adams v. Bank of Am., N.A.*,

    237 F. Supp. 3d 1189 (N.D. Ala. 2017) ...................................................................21

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,

    568 U.S. 455 (2013) ..........................................................................................................6

*Anderson v. Nextel Retail Stores*, LLC,

    2010 WL 8591002 (C.D. Cal. Apr. 12, 2010) ............................................................7

*Ayres v. Ocwen Loan Servicing, LLC*,

    129 F. Supp. 3d 249 (D. Md. 2015) ...........................................................................23

*Beaver v. Tarsadia Hotels*,

    2017 WL 2268853 (S.D. Cal. May 24, 2017) ...........................................................18

*Bohnert v. Roman Catholic Archbishop of San Francisco*,

    67 F. Supp. 3d 1091 (N.D. Cal. 2014) .......................................................................15

*Buschman v. Anesthesia Business Consultants LLC*,

    42 F.Supp.3d 1244 (N.D. Cal. 2014) ...........................................................................7

*Chavez v. Indymac Mortg. Servs.*,

    219 Cal. App. 4th 1052 (2013) .....................................................................14, 15, 24

*Christenson v. Citimortgage, Inc.*,

    2013 WL 5291947 (D. Colo. Sept. 18, 2013) ..........................................................21

*Collins v. Olin Corp.*,

    248 F.R.D. 95 (D. Conn. 2008) ............................................................................16, 21

*Corvello v. Wells Fargo Bank N.A.*,

    2016 WL 3995909 (N.D. Cal. Jan. 29, 2016) ..........................................................13

*Dixon v. Wells Fargo Bank, N.A.*,

    2012 WL 4450502 (E.D. Mich. Sept. 25, 2012) ......................................................21

*Dorado v. Bank of Am., N.A.*,

    2016 WL 3924115 (S.D. Fla. July 21, 2016) ................................................................... 9

*Dzielak v. Whirlpool Corp.*,

    26 F. Supp. 3d 304 (D.N.J. 2014) ................................................................................... 23

*Ehret v. Uber Tech., Inc.*,

    148 F.Supp.3d 884 (N.D. Cal. 2015) ............................................................................. 19

*Elias v. Ungar's Food Prod., Inc.*,

    252 F.R.D. 233 (D.N.J. 2008) ......................................................................................... 23

*Ellsworth v. U.S. Bank, N.A.*,

    2014 WL 2734953 (N.D. Cal. June 13, 2014) ..................................................... 7, 9, 20

*Estrada v. Caliber Home Loans, Inc.*,

    172 F. Supp. 3d 1108 (C.D. Cal. 2016) ......................................................................... 14

*Ewert v. eBay, Inc.*,

    2010 WL 4269259 (N.D. Cal. Oct. 25, 2010) .................................................................. 8

*F.B.T. Productions, LLC v. Aftermath Records*,

    827 F.Supp.2d 1092 (C.D. Cal. 2011) .......................................................................... 8, 9

*Gaspar v. Linvatec Corp.*,

    167 F.R.D. 51 (N.D. Ill. 1996) ......................................................................................... 7

*Gaudin v. Saxon Mortg. Servs., Inc.*,

    297 F.R.D. 417 (N.D. Cal. 2013) ................................................................................... 14

*Gold v. Lumber Liquidators, Inc.*,

    323 F.R.D. 280 (N.D. Cal. 2017) ................................................................................... 24

*Greko v. Diesel U.S.A., Inc.*,

    277 F.R.D. 419 (N.D. Cal. 2011) ..................................................................................... 6

*Hanon v. Dataproducts Corp.*,

    976 F.2d 497 (9th Cir. 1992) .......................................................................................... 16

*Harper v. Law Office of Harris and Zide LLP*,

    2016 WL 2344194 (N.D. Cal. May 4, 2016) ................................................................. 18

PLAINTIFFS' RENEWED NOTICE OF MOTION
AND MOTION FOR CLASS CERTIFICATION
Case No. 3:18-cv-07354-WHA

*Hayes v. M&T Mortg. Corp.*,

    906 N.E.2d 638 (Ill. App. 2009) ................................................................21

*Heritage Bank N.A. v. Ruh*,

    191 N.J. Super. 53 (Ch. Div. 1983) ........................................................21

*Hodsdon v. Mars, Inc.*,

    891 F.3d 857 (9th Cir. 2018) ...................................................................13

*In re Brazilian Blowout Litig.*,

    2011 WL 10962891 (C.D. Cal. Apr. 12, 2011) .......................................13

*In re Conseco Life Ins. Co. LifeTrend Ins. Sales and Marketing Litig.*,

    270 F.R.D. 521 (N.D. Cal. 2010).....................................................9, 10, 20

*In re Facebook Privacy Litig.*,

    192 F. Supp. 3d 1053 (N.D. Cal. 2016) ..................................................11

*In re Foreign Exchange Benchmark Rates Antitrust Litig.*,

    2019 WL 4171032 (S.D.N.Y. Sept. 3, 2019).........................................16

*In re Lehman Bros. Sec. and ERISA Litig.*,

    2013 WL 440622 (S.D.N.Y. Jan. 23, 2013) .....................................18, 22

*In re Live Concert Antitrust Litig.*,

    247 F.R.D. 98 (C.D. Cal. 2007) ........................................................11, 12

*In re Med. Capital Secs. Litig.*,

    2011 WL 5067208 (C.D. Cal. July 26, 2011) .........................................20

*In re Mortg. Electronic Registration Sys., Inc.*,

    754 F.3d 772 (9th Cir. 2014) ...................................................................15

*In re Tobacco II Cases*,

    46 Cal.4th 298 (2009) ..............................................................................14

*In re Yahoo Mail Litig.*,

    308 F.R.D. 577 (2015) ......................................................................16, 22

*Ireland v. Anderson*,

    2016 WL 7324104 (D.N.D. Aug. 29, 2016) ...........................................24

PLAINTIFFS' RENEWED NOTICE OF MOTION
AND MOTION FOR CLASS CERTIFICATION
Case No. 3:18-cv-07354-WHA

*Johnson v. Hartford Casualty Ins. Co.,*
    2017 WL 2224828 (N.D. Cal. May 22, 2017) ................................................. 17, 22

*Keegan v. Am. Honda Motor Co., Inc.,*
    284 F.R.D. 504 (C.D. Cal. 2012) ................................................................. 23

*Kleiner v. First Nat. Bank of Atlanta,*
    97 F.R.D. 683 (N.D. Ga. 1983) .................................................................. 20

*Lewis Jorge Construction Mgmt., Inc. v. Pomona Unified School Dist.,*
    34 Cal.4th 960 (2004) .......................................................................... 11, 19

*Leyva v. Medline Industries Inc.,*
    716 F.3d 510 (9th Cir. 2013) ..................................................................... 18

*Lil' Man in the Boat, Inc. v. City and County of San Francisco,*
    2019 WL 125905 (N.D. Cal. Jan. 8, 2019) ....................................................... 6

*Martin v. Behr Dayton Thermal Prod. LLC,*
    896 F.3d 405 (6th Cir. 2018) ..................................................................... 10

*Ortega v. Uber Tech. Inc.,*
    2018 WL 4190799 (E.D.N.Y. May 24, 2018) .................................................. 18, 22

*Parra v. Bashas', Inc.,*
    536 F.3d 975 (9th Cir. 2008) ...................................................................... 7

*Pulaski & Middleman, LLC v. Google, Inc.,*
    802 F.3d 979 (9th Cir. 2015) .............................................................. 11, 14, 19

*Randolph v. Crown Asset Mgmt., LLC,*
    254 F.R.D. 513 (N.D. Ill. 2008) ............................................................... 23, 24

*Readick v. Avis Budget Group, Inc.,*
    2013 WL 3388225 (S.D.N.Y. July 3, 2013) ..................................................... 23

*Ryan-Beedy v. Bank of New York Mellon,*
    293 F. Supp. 3d 1101 (E.D. Cal. 2018) .......................................................... 14

*Sandoval v. M1 Auto Collisions Centers,*
    309 F.R.D. 549 (N.D. Cal. 2015) .................................................................. 6

PLAINTIFFS' RENEWED NOTICE OF MOTION
AND MOTION FOR CLASS CERTIFICATION
Case No. 3:18-cv-07354-WHA

*Sheely v. Bank of Am., N.A.*,
     36 F.Supp.3d 1364 (N.D. Ga. 2014) ........................................................... 25

*Siegel v. Shell Oil Co.*,
     656 F.Supp.2d 825 (N.D. Ill. 2009) ........................................................... 23

*Slakpikas v. First Am. Title Ins. Co.*,
     298 F.R.D. 285 (W.D. Pa. 2014) ........................................................... 23

*Stabley v. Bank of Am., N.A.*,
     2014 WL 3645327 (D. Nev. July 22, 2014) ........................................................... 21

*Strebel v. Brenlar Inv., Inc.*,
     135 Cal.App.4th 740 (2006) ........................................................... 19

*Sykes v. Mel Harris & Assocs., LLC*,
     285 F.R.D. 279 (S.D.N.Y. 2012) ........................................................... 23

*Tait v. BSH Home Appliances Corp.*,
     289 F.R.D. 466 (C.D. Cal. 2012) ........................................................... 23, 24

*Takiguchi v. MRI Int'l, Inc.*,
     2016 WL 1091090 (D. Nev. Mar. 21, 2016) ........................................................... 18

*Tokoshima v. Pep Boys—Manny Moe & Jack of California*,
     2014 WL 1677979 n.4 (N.D. Cal. Apr. 28, 2014) ........................................................... 24

*Tyson, Inc. v. Bouaphakeo*,
     136 S. Ct. 1036 (2016) ........................................................... 10

*Ulrich-Kurtzer v. Wells Fargo Bank, N.A.*,
     2016 WL 4275451 (W.D. Wash Jan. 28, 2016) ........................................................... 21

*Valentino v. Carter-Wallace, Inc.*,
     97 F.3d 1227 (9th Cir. 1996) ........................................................... 15

*Wal-Mart Stores, Inc. v. Dukes*,
     564 U.S. 338 (2011) ........................................................... 8

*Wells Fargo Home Mortg., Inc. v. Neal*,
     398 Md. 705 (2007) ........................................................... 21

*Wolin v. Jaguar Land Rover N. Am., LLC,*
   617 F.3d 1168 (9th Cir. 2010) ................................................................. 16, 21

*Yokoyama v. Midland Nat. Life Ins. Co.,*
   594 F.3d 1087 (9th Cir. 2010) ..................................................................... 11

**Statutes**

12 U.S.C. § 5201 .................................................................................................. 3

12 U.S.C.A. § 1715u ........................................................................................... 10

Cal. Civ. Code § 2924.17 ................................................................................... 12

Cal. Civ. Code § 2924.19 ................................................................................... 12

Cal. Civ. Code § 2924.19(b) .............................................................................. 19

Cal. Civ. Code § 3333 ........................................................................................ 19

N.Y. Gen. Bus. Law § 349 ................................................................................. 23

**Regulations**

24 C.F.R. §§ 203.501, 203.605(a), 203.606(a) .................................................. 9

**Other Authorities**

CACI No. 1602 .................................................................................................. 15

CACI No. 1600 .................................................................................................. 15

Restatement (Second) of Contracts § 211(2) ...................................................... 8

1

## NOTICE OF MOTION AND MOTION

2

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

3

   **PLEASE TAKE NOTICE THAT** on January 9, 2020, at 8 a.m. or as soon thereafter as the

4

matter may be heard, Plaintiffs will and hereby do move the Court, before the Honorable William H.

5

Alsup in Courtroom 12, 19th Floor of the United States District Court for the Northern District of

6

California, San Francisco Division, located at the Phillip Burton Federal Building, 450 Golden Gate

7

Avenue, San Francisco, California 94102, for an order certifying the following California class:

8

### California Class

9

**All persons whose home loan was secured by real property located in California who between**
**2010 and 2018 (i) qualified for a home loan modification or repayment plan pursuant to the**

10

**requirements of government-sponsored enterprises (such as Fannie Mae and Freddie Mac), the**
**Federal Housing Administration (FHA), or the U.S. Department of Treasury's Home Affordable**

11

**Modification Program (HAMP); and (ii) were not offered a home loan modification or repayment**
**plan by Wells Fargo due to excessive attorney's fees being included in the loan modification**

12

**decisioning process.**

13

   Plaintiffs request that the Court appoint Debora Granja and Sandra Campos[1] as class

14

representatives for the California Class to pursue claims for breach of contract, violation of the

15

Homeowner Bill of Rights, UCL violations, wrongful foreclosure, and resolution of the issue of

16

whether Wells Fargo's conduct was outrageous, an element of the California tort of intentional

17

infliction of emotional distress. Plaintiffs further request that the Court appoint Michael Schrag of

18

Gibbs Law Group LLP and Richard Paul of Paul LLP as co-lead class counsel. If the Court certifies the

19

California Class, further consideration of class certification for the nationwide class and non-California

20

state subclasses should be held in abeyance pending resolution of the California Class claims.

21

//

22

//

23

//

24

25

[1] Plaintiffs are concurrently filing a motion to amend the complaint to add Campos as a plaintiff and

26

proposed class representative. *See* Plaintiffs' Motion for Leave to Amend. As discussed there, Campos
is a California resident who executed an FHA security instrument in connection with the mortgage on

27

her home located in Paramount, California. Although Plaintiffs had previously proposed non-California
class members with FHA mortgage contracts as representatives of a national breach of contract class,

28

given the possibility that the Court could certify a California class and hold other potential classes in
abeyance, they are proposing to add Campos as a named representative.

PLAINTIFFS' RENEWED NOTICE OF MOTION
AND MOTION FOR CLASS CERTIFICATION
Case No. 3:18-cv-07354-WHA

Alternatively, the Court should certify all the following classes and subclasses now:

## Nationwide Class

**All persons who between 2010 and 2018 (i) qualified for a home loan modification or repayment plan pursuant to the requirements of government-sponsored enterprises (such as Fannie Mae and Freddie Mac), the Federal Housing Administration (FHA), the U.S. Department of Treasury's Home Affordable Modification Program (HAMP); and (ii) were not offered a home loan modification or repayment plan by Wells Fargo due to excessive attorney's fees being included in the loan modification decisioning process.**

The Nationwide class will pursue a breach of contract claim as well as resolution of the issue of whether Wells Fargo's conduct was extreme and outrageous with respect to the tort of intentional infliction of emotional distress.

The Nationwide class will be represented by Plaintiffs Alicia Hernandez, Debora Granja, Sandra Campos, Emma White, Troy Frye, Coszetta Teague, Russell and Brenda Simoneaux, John and Yvonne DeMartino, Rose Wilson, Tiffanie Hood, George and Cyndi Floyd, and Diana Trevino.

## California Subclass

**All members of the Nationwide Class whose home was secured by real property located in California.**

In addition to claims it is pursuing as part of the Nationwide Class, the California Subclass will pursue claims for violation of the Homeowner Bill of Rights and the UCL.

The California Subclass will be represented by Debora Granja and Sandra Campos.

## California Wrongful Foreclosure Subclass

**All members of the California subclass whose home Wells Fargo sold in foreclosure.**

In addition to claims it is pursuing as part of the Nationwide Class and the California Subclass, the California Wrongful Foreclosure Subclass will pursue a claim for the tort of wrongful foreclosure.

The California Wrongful Foreclosure Subclass will be represented by Debora Granja and Sandra Campos.

## Illinois Subclass

**All members of the Nationwide Class whose home was secured by real property located in Illinois.**

In addition to claims it is pursuing as part of the Nationwide Class, the Illinois Subclass will pursue a claim for violation of the Illinois Consumer Fraud Act.

The Illinois Subclass will be represented by Coszetta Teague.

## Maryland Subclass

**All members of the Nationwide Class whose home was secured by real property located in Maryland.**

In addition to claims it is pursuing as part of the Nationwide Class, the Maryland Subclass will

pursue claims for violation of the Maryland Consumer Protection Act and the Maryland Consumer Debt Collection Act.

The Maryland Subclass will be represented by John and Yvonne DeMartino.

### New Jersey Subclass
**All members of the Nationwide Class whose home was secured by real property located in New Jersey.**

In addition to claims it is pursuing as part of the Nationwide Class, the New Jersey Subclass will pursue a claim for violation of the New Jersey Consumer Fraud Act.

The New Jersey Subclass will be represented by Alicia Hernandez.

### New York Subclass
**All members of the Nationwide Class whose home was secured by real property located in New York.**

In addition to claims it is pursuing as part of the Nationwide Class, the New York Subclass will pursue a claim for violation of Section 349(a) of New York's General Business Law.

The New York Subclass will be represented by Rose Wilson.

### Pennsylvania Subclass
**All members of the Nationwide Class whose home was secured by real property located in Pennsylvania.**

In addition to claims it is pursuing as part of the Nationwide Class, the Pennsylvania Subclass will pursue a claim for violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law.

The Pennsylvania Subclass will be represented by George and Cyndi Floyd.

### Georgia Wrongful Foreclosure Subclass
**All members of the Nationwide Class whose home loan was secured by real property located in Georgia whose home Wells Fargo sold in foreclosure.**

In addition to claims it is pursuing as part of the Nationwide Class, the Georgia Wrongful Foreclosure Subclass will pursue a claim for the tort of wrongful foreclosure.

The Georgia Wrongful Foreclosure Subclass will be represented by Troy Frye.

Plaintiffs Alicia Hernandez (New Jersey), Debora Granja (California), Sandra Campos (California), Emma White (Florida), Troy Frye (Georgia), Coszetta Teague (Illinois), Russell and Brenda Simoneaux (Louisiana), John and Yvonne DeMartino (Maryland), Rose Wilson (New York), Tiffanie Hood (Ohio), George and Cyndi Floyd (Pennsylvania), and Diana Trevino (Texas) request appointment as class representatives of the Nationwide Class and as representatives of their respective

state subclasses. Michael Schrag of Gibbs Law Group LLP and Richard Paul of Paul LLP respectfully

request appointment as co-lead class counsel.

Dated: November 21, 2019                          Respectfully submitted,

                                                  */s/ Michael L. Schrag*
                                                  **GIBBS LAW GROUP LLP**
                                                  Michael L. Schrag (SBN 185832)
                                                  505 14th Street, Ste. 1110
                                                  Oakland, California 94612
                                                  Telephone:  510-350-9700
                                                  Facsimile:  510-350-9701
                                                  mls@classlawgroup.com

                                                  Richard M. Paul III
                                                  **PAUL LLP**
                                                  601 Walnut Street, Suite 300
                                                  Kansas City, Missouri 64106
                                                  Telephone: 816-984-8100
                                                  Facsimile:  816-984-8101
                                                  Rick@PaulLLP.com

                                                  *Attorneys for Plaintiffs*

# INTRODUCTION

Last year, Wells Fargo admitted that it wrongfully denied home loan modifications to approximately 870 borrowers, causing 545 of them to lose their homes to foreclosure and all of them to lose the opportunity to obtain more favorable loan terms. After further inquiry, Wells Fargo now admits there are 824 "impacted borrowers." Wells Fargo has sent materially identical letters to all 824 borrowers, informing them that the bank wrongfully denied them a loan modification or repayment plan.

The letter revealed a disastrous and avoidable error in the company's loan modification software that damaged many lives. From 2010-2015, the bank's software effectively double-counted attorney's fees when calculating eligibility for a mortgage modification under government-sponsored enterprises. Rather than *limit* foreclosure attorney's fees to the maximum allowable under state law, the bank's software *added* the maximum amount allowable in fees under state law to the amount of fees actually incurred. Consequently, over eight hundred borrowers who qualified for loan modifications were deemed ineligible.

Wells Fargo discovered the error in 2013 but refused to even try to fix it until 2015. Ultimately, the bank didn't fully fix the problem until 2018. Wells Fargo publicly admitted the error in 2018, but now strives mightily to resist judicial accountability. Plaintiffs thus bring this class action to hold Wells Fargo accountable for turning their American dream of homeownership into a nightmare.  Plaintiffs ask the Court to certify first a California liability-only class and one issue class, and to hold in abeyance a ruling on nationwide and other state subclasses until after a California-wide merits determination.

The California class is sufficiently cohesive to warrant adjudication by representation. Its members entered into standardized contracts that required Wells Fargo to notify them that they qualified for a loan modification before the bank could accelerate on their loans. Whether Wells Fargo breached this obligation, and whether Wells Fargo's error constitutes an unfair business practice, wrongful foreclosure, and a violation of the Homeowner Bill of Rights, are predominant common questions answered with common evidence concerning Wells Fargo's conduct that render this case amenable to class treatment. A jury can also consider common evidence to determine whether Wells Fargo's conduct was "outrageous," an element of intentional infliction of emotional distress under

California law.

This Court and others have successfully managed complex actions using a "funneling method" of certifying one (or a few) of several state classes to test whether class proceedings are manageable.[2] Under this approach, the parties would try the California liability only class, followed by a remedies phase in which a jury would consider individualized economic, non-economic, and punitive damages for California class members. That approach is not only manageable, it is superior because it would materially advance the overall litigation by providing the parties with important information that will inform future proceedings, either nationwide or state-by-state. *See* Plaintiffs' CA Trial Plan.

## FACTUAL BACKGROUND

Plaintiffs and class members are current and former borrowers whose home loans originated with and/or were serviced by Wells Fargo. Each executed one of two types of standardized government-issued form mortgage contracts, either the Federal Housing Administration (FHA) or Fannie Mae/Freddie Mac Security instrument.[3] These claims are susceptible to generalized, class-wide proof, the focus of which is Wells Fargo's uniform conduct. Specifically, over the course of eight years, Wells Fargo's erroneous denial of trial modifications and repayment plans stemmed from ignoring government warnings to improve its loss mitigation practices, failing to catch an obvious calculation error in its loan modification eligibility software, refusing for two years to spend a small amount of money to fix the error, and then concealing the error for another three years.

### A.   Wells Fargo Ignores the Government's Warnings on Loan Servicing Deficiencies

In 2011, the U.S. government concluded that Wells Fargo had engaged in numerous unsound banking practices in servicing residential loans. *See generally* 2011 Consent Order, Ex. 1 to Declaration of Michael Schrag ("Schrag Decl."). Wells Fargo agreed going forward to ensure "effective mortgage servicing, foreclosure, and loss mitigation activities." *Id.* at Article III(2). But it failed, leading to

---

[2] *See, e.g., In re Anthem, Inc. Data Breach Litig.*, No. 15-md-02617-LHK (Dkt. 317) (N.D. Cal. Oct. 23, 2015); *In re: Vizio, Inc., Consumer Privacy Litig.*, No. 8:16-ml-02693-JLS-KES (Dkt. 120) (C.D. Cal. Oct. 14, 2016); *In re: Syngenta AG MIR 162 Corn Litig.*, No. 2:14-md-02591-JWL-JPO (Dkt. 1098) (D. Kan. Oct. 21, 2015); Dkt. 171, Transcript of 11/6/19 Hearing at 5:2-17.

[3] *See* Dkt. 60-3, Wells Fargo's Request for Judicial Notice (attaching copies of certain Plaintiffs' security instruments as "exemplars" that are "substantially similar to the security instruments of the remaining named Plaintiffs.").

1  additional consent orders in 2013 and 2015. Ex. 2 and 3 to Schrag Decl. The 2015 consent order noted

2  that Wells Fargo was still not appropriately reviewing and auditing loss mitigation operations to

3  identify and promptly remedy deficiencies. Ex. 3 at Article IV(1)(a)(vi). Then in 2016, Wells Fargo

4  paid a $70 million fine because a calculation error different from the one at issue here led to 184

5  incorrect loan modifications. Ex. 4 to Schrag Decl. at p. 3. When it paid this fine, Wells Fargo knew

6  about but had not disclosed the similar calculation error at issue in this case.

7      **B. Wells Fargo's Defective Loan Modification Eligibility Software**

8      To "help homeowners retain their homes and prevent the destructive impact of foreclosures on

9  families and communities," the federal government launched loss mitigation programs, including

10  HAMP. Ex. 5 to Schrag Decl.; 12 U.S.C. § 5201, *et seq*. Wells Fargo participated in HAMP and

11  received billions in government funds for doing so. Ex. 6 to Schrag Decl. at section 4(F). In exchange,

12  Wells Fargo was required to offer loan modifications to borrowers deemed eligible based on a formula

13  designed to determine whether a borrower had the ability to make the modified payments; these loan

14  modifications would cure a borrower's default and prevent foreclosure. *See* Ex. 6, 7, 8 (Deposition of

15  Robert Ferguson ("Ferguson Depo.") at 27:23-28:1, 30:3-31:4, 46:20-47:9, 49:25-51:4, 52:11-53:9;

16  53:17-24), 9, and 10 to Schrag Decl. The purpose of its loan modification programs was "to prevent

17  foreclosures by getting the borrower current …" Ex. 11 to Schrag Decl. at 00071415.

18      In 2010, Wells Fargo developed two proprietary software tools to use in a standardized process

19  to evaluate loan modification eligibility depending on the type of loan -- the Home Preservation

20  Application (HPA) and the SLoAD tool. Deposition of Carmen Bell ("Bell Depo."), Ex. 12 to Schrag

21  Decl. at 60:4-61:9; Ex. 11 to Schrag Decl. at 00071415; Ex. 13 to Schrag Decl. at 00071155. Wells

22  Fargo was supposed to determine whether borrowers could afford to make modified payments based on

23  their monthly income. The eligibility decision began with capitalizing unpaid fees and charges,

24  including attorney's fees Wells Fargo incurred processing the delinquent loan, into the loan balance;

25  then this sum was re-amortized. Ex. 11 at 00071422-71423. HUD established maximum attorney's fees

26  Wells Fargo could charge in each state, and HUD provided Wells Fargo a table with these limits. *See*

27  Ex. 14 to Schrag Decl.

28      Using this table, Wells Fargo was supposed to input the attorney's fees it had paid and incurred,

but only up to the maximum allowable amount. Ex. 15 to Schrag Decl. at 00010407-08; Ex. 17 to Schrag Decl. at 106022. Instead, Wells Fargo programmed its HPA tool to *add* the state maximum to the fees that had been actually paid and incurred, which inevitably caused the formula to erroneously reject borrowers whose income would have made them otherwise eligible for a modification. Ex. 16 to Schrag Decl. at 00066808; Ex. 17 to Schrag Decl. at 106022.

### C.  Wells Fargo Discovered the Error in 2013 But Ignored it For Two Years

In August 2013, Wells Fargo discovered its error and knew that "incorrect Attorney's Fees [were] being calculate[ed] in HPA that could be impacting decisions." Ex. 18 to Schrag Decl.; Ex. 19 to Schrag Decl. at 00000311. Shortly thereafter, Wells Fargo began to "research and test[ ] to determine/isolate the problem." Ex. 20 to Schrag Decl. at 00144382. Senior leaders within Wells Fargo were briefed on the error, and a recommendation was made to fix it. Ex. 19 to Schrag Decl. at 00000311. Week after week, the attorney's fee error was included on the list of potential issues to be prioritized for resolution. *See* Ex. 21 to Schrag Decl. But it took months for Wells Fargo to prioritize or assign resources to fix the problem.

By January 2014, Wells Fargo preliminarily identified 50 loans where a loan modification had been wrongly denied. Ex. 22-24 to Schrag Decl. Yet somehow, Wells Fargo concluded in the same month that no modifications were wrongly denied and that there was no urgency to fix the error. Ex. 25 to Schrag Decl. at 00000476; Ex. 26 to Schrag Decl. at 00002724. Wells Fargo has since identified 824 borrowers who were wrongly denied modifications; when asked at her deposition how in 2014 the bank concluded that no one was impacted, Wells Fargo's corporate representative had no answer. Bell Depo. at 95:10-18.

The employee who found the error in August 2013 (and escalated the issue to senior leaders) and a Wells Fargo risk manager both recommended a temporary fix while Wells Fargo worked on a permanent solution. Ex. 27 to Schrag Decl. In fact, Wells Fargo's risk consultant warned that Wells Fargo knew there was a risk of ongoing harm to customers, i.e., wrongful denials of loan modifications. *Id.* Wells Fargo nevertheless ignored this advice, failing even to implement a temporary fix.

In July 2014, Wells Fargo conducted a five-day summit to assess this and other fee processing errors. Ex. 28 to Schrag Decl. At this summit, Wells Fargo again acknowledged that the calculation

error … "may lead to **incorrect mod program participation decisions by HPU**." Ex. 29 to Schrag

Decl. at 00001325-00001326 (emphasis added). Despite knowing it could be denying an "unknown"

number of loan modifications because of "overstated fees," Wells Fargo still did nothing to fix the

problem. *Id*. at 00001339.

In October 2014, a new project manager, Diane Young, recommended a solution that would

only cost the bank $61,950—or approximately .0007% of its 2014 annual revenue of $84 billion.[4] But

again, Wells Fargo refused. Ex. 30-33 to Schrag Decl; Deposition of Diane Young ("Young Depo."),

Ex. 34 to Schrag Decl. at 67:15-69:5, 91:24-92:4. Despite knowing that "[i]naccurate fees will continue

to be quoted," Young's request for funding was denied because "[s]trategic priorities [had] changed."

Ex. 33, 36 to Schrag Decl.; Young Depo. at 118:4-21.

After this, Susan Crawford, Operational Risk Consultant, advised on May 4, 2015, that

continuing to use the fee matrix was "risky," so she asked: "Try for a different fix or accept the risk and

close this issue?" Ex. 36 to Schrag Decl. at 00001713. Wells Fargo accepted the risk. Ex. 37 to Schrag

Decl. at 00107884. Nevertheless, Ms. Crawford continued to voice her concerns and finally, in October

2015, the fee matrix was removed from the HPA tool. This did not, however, completely fix the

problem; errors in adding excessive attorney fees for loans made with the SLoaD tool continued,

causing additional wrongful loan modification denials until 2018. Bell Depo. at 43:21-46:9; 193:15-25.

**D.  Wells Fargo Concealed the Impact on Borrowers Until 2018**

Just as Ms. Crawford had predicted in 2015, Wells Fargo did in fact wrongfully deny borrowers

loan modifications because of how attorney's fees were calculated. Ex. 38 to Schrag Decl. at 00011932.

While reviewing a different error in March 2018, Wells Fargo "rediscovered" this attorney's fee error

and finally figured out that it harmed borrowers from April 13, 2010 until October 20, 2015. Ex. 38 to

Schrag Decl.; Ex. 39 to Schrag Decl. at 00011932. Through this review, Wells Fargo also discovered

that it had wrongfully denied mortgage modifications for loans analyzed in SLoaD from 2010 until

2018. Bell Depo. at 44:25-46:3; Ex. 40 to Schrag Decl. In all, Wells Fargo wrongfully denied loan

modifications to 824 borrowers, and caused over 500 of them to lose their homes. *See* Ex. 41 to Schrag

---

[4] Wells Fargo's 2014 Annual Report at p. 32 (available at
https://www08.wellsfargomedia.com/assets/pdf/about/investor-relations/annual-reports/2014-annual-report.pdf, last visited Nov. 18, 2019).

PLAINTIFFS' RENEWED NOTICE OF MOTION
AND MOTION FOR CLASS CERTIFICATION
Case No. 3:18-cv-07354-WHA

Decl.

## ARGUMENT

### A.  This Court Should Certify the California Class

To obtain certification of a class action for money damages under Rule 23(b)(3), a plaintiff must satisfy Rule 23(a)'s prerequisites of numerosity, commonality, typicality, and adequacy of representation, and must also establish that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013). As Plaintiffs will demonstrate, the proposed California class satisfies these requirements and is sufficiently cohesive to warrant adjudication by representation.

#### 1.    The California Class Is Sufficiently Numerous

The 24-member California class satisfies numerosity. *See* Dkt. 167 at 1:20-22. "In considering whether a proposed class satisfies this prerequisite, the court does not apply a bright line rule based on size." *Greko v. Diesel U.S.A., Inc.*, 277 F.R.D. 419, 425 (N.D. Cal. 2011) (certifying class with between 19-33 members). When a proposed class or subclass falls into "the gray area between 21 and 40 class members," courts consider factors other than class size, including: (1) the judicial economy in avoiding multiple actions; (2) geographic dispersion of class members; (3) the financial resources of class members; (4) their ability to file individual suits; and (5) requests for prospective relief that may affect future class members. *Sandoval v. M1 Auto Collisions Centers*, 309 F.R.D. 549, 562 (N.D. Cal. 2015) (citations omitted); *Greko*, 277 F.R.D. at 425 (considering same factors).

These factors favor certification here. A liability-only class trial presenting common evidence of Wells Fargo's wrongful conduct is more efficient than 24 individual trials repeating the same evidence. Class members are also financially vulnerable Californians who struggled to make mortgage payments and many are still recovering from the aftermath of losing their homes to foreclosure and lack the financial means to file individual suit against Wells Fargo. *See, e.g.,* Deposition of Debora Granja ("Granja Depo."), Ex. 42 to Schrag Decl. at 41:24-42:21; *see Lil' Man in the Boat, Inc. v. City and County of San Francisco*, 2019 WL 125905, at *5 (N.D. Cal. Jan. 8, 2019) (courts often look to "the

economic status of the class members" in considering the numerosity factors).[5] Further, class members are dispersed across at least three districts in California, making joinder impractical. Dkt. 149 at 18:7-10. The 24-member California class is therefore sufficiently numerous.[6] *See Gaspar v. Linvatec Corp*., 167 F.R.D. 51, 56-57 (N.D. Ill. 1996) (class of 18 sufficiently numerous, since class treatment would serve judicial economy and class members were geographically dispersed).

### 2.     Common Questions of Fact and Law Predominate Over Individual Issues

Rule 23(a)(2) requires "questions of law or fact common to the class." This standard is "flexible": "Where the circumstances of each class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Parra v. Bashas', Inc*., 536 F.3d 975, 978-79 (9th Cir. 2008).

Rule 23(b)(3) requires that common questions of law or fact predominate over questions affecting only individual members. The predominance requirement is "more stringent" than the commonality requirement; by satisfying Rule 23(b)(3), the proposed class necessarily satisfies commonality under Rule 23(a)(2). *Anderson v. Nextel Retail Stores*, LLC, 2010 WL 8591002, at *12 (C.D. Cal. Apr. 12, 2010). Plaintiffs thus analyze commonality and predominance together.

### a)     Common issues predominate on California breach of contract liability

"[C]ommon questions predominate when, as here, they involve form contracts and standardized policies and practices applied on a routine basis to all customers by a bank." *Ellsworth v. U.S. Bank, N.A*., 2014 WL 2734953, at *20 (N.D. Cal. June 13, 2014). The elements for breach of contract under California law are: "(1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damages to plaintiff as a result of the breach." *Buschman v. Anesthesia Business Consultants LLC*, 42 F.Supp.3d 1244, 1250 (N.D. Cal. 2014).

Proof of the first three elements is common to all class members, and only the amount (not the fact) of damages is individualized.

---

[5] In addition to Granja and Campos, Plaintiffs' counsel represents seven proposed California class members and a total of 142 proposed class members.
[6] The last *Sandoval* factor is inapplicable because Plaintiffs are not requesting prospective relief.

1

**(i) Fannie/Freddie Contract**

2      Class members had one of two form mortgage contracts imposed without negotiation: the

3  Fannie/Freddie version or the FHA version. The key common dispute on which this claim turns is

4  whether both contracts required Wells Fargo to notify class members that they could cure a default (and

5  avoid foreclosure) by accepting a loan modification or repayment plan.

6      Turning first to the Fannie/Freddie contract, it states that Wells Fargo was required to send

7  notice of "the action required to cure the default" before accelerating and foreclosing on class

8  members' homes. Ex. 43 to Schrag Decl. at ¶ 22. Plaintiffs contend a modification is a way to cure a

9  default. While Wells Fargo's corporate representative admitted this, the bank takes a different position

10 in this lawsuit. Nevertheless, commonality depends on a common question "capable of classwide

11 resolution—which means that determination of its truth or falsity will resolve an issue that is central to

12 the validity of each one of the claims in one stroke." *See Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338,

13 350 (2011). If the Court accepts Wells Fargo's interpretation that a modification can't cure a default, it

14 will prevail on this claim. But given that Wells Fargo has admitted breach—that it accelerated or

15 foreclosed without notifying class members that they qualified for a modification—and that each class

16 member was impacted by the wrongful denial of a modification, if the Court accepts Plaintiffs'

17 interpretation, the class will likely obtain summary judgment on this claim. Dkt. 149 at 3:22-23; *see*

18 *Ewert v. eBay, Inc.*, 2010 WL 4269259, at *7 (N.D. Cal. Oct. 25, 2010) (where there is a form contract

19 at issue, courts will, wherever reasonable, interpret the contract "as treating alike all those similarly

20 situated") (citing Restatement (Second) of Contracts § 211(2)).

21     Because the form Fannie/Freddie contract is unambiguous, the Court can interpret it as a matter

22 of law. *See F.B.T. Productions, LLC v. Aftermath Records*, 827 F.Supp.2d 1092, 1101-02 (C.D. Cal.

23 2011) ("Parol evidence is properly admitted to construe a contract only when its language is

24 ambiguous."). In moving to dismiss, Wells Fargo *agreed* that the contract is unambiguous – though it

25 took the view that the only way to "cure" a default was to bring the loan current. Dkt. 59 at 9-10. But its

26 corporate representative admitted that "[t]he default would be cured if the loan modification goes

27 through the final settlement process, thus curing the default." Ferguson Depo., Ex. 8 to Schrag Decl. at

28 50:5-7. Therefore, since "neither party has asserted that the form policy contract contains ambiguous

PLAINTIFFS' RENEWED NOTICE OF MOTION
AND MOTION FOR CLASS CERTIFICATION
Case No. 3:18-cv-07354-WHA

1    terms (rather, they offer competing interpretations based on the face of the documents), admission of

2    extrinsic evidence should not be necessary to interpret the contractual provisions at issue." *In re*

3    *Conseco Life Ins. Co. LifeTrend Ins. Sales and Marketing Litig.*, 270 F.R.D. 521, 529 (N.D. Cal. 2010).

4         Even if extrinsic evidence is admissible to interpret the contract or considered to determine

5    whether an ambiguity exists, the Court can apply the same evidence and rules on extrinsic evidence to

6    all California class members. Under California law, if a court finds that a party's interpretation of a

7    contract is reasonably susceptible based on extrinsic evidence, then the court may admit that evidence

8    and consider it in interpreting the contract. *F.B.T. Productions, LLC*, 827 F.Supp.2d at 1102. Where the

9    extrinsic evidence is undisputed, the court must interpret the contract as a matter of law (even if the

10   evidence shows the language is susceptible to more than one reasonable interpretation). *Id*. Here, given

11   that the form contracts were imposed on Plaintiffs without negotiation and contain uniform terms, any

12   extrinsic evidence will come from Wells Fargo documents and testimony, and be common to all

13   California class members. *See Ellsworth*, 2014 WL 2734953 at *23 ("It is not obvious that extrinsic

14   evidence will be introduced at all [on a form contract], and at best … it would be non-individualized

15   extrinsic evidence."). Therefore, interpreting the Fannie/Freddie contract and resolving the issue of

16   breach are amenable to class resolution, likely on summary judgment.

17                                    **(ii) FHA Contract**

18        The FHA contract states that Wells Fargo may accelerate and foreclose "*except as limited by*

19   *regulations issued by the [HUD] Secretary*." Ex. 44 to Schrag Decl. at ¶ 9(a) (emphasis added). The

20   contract further states that "[i]n many circumstances regulations issued by the Secretary will limit

21   Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose.…"

22   *Id*. at ¶ 9(d). As with the Fannie/Freddie contract, Plaintiffs can prove that Wells Fargo violated this

23   provision by failing to notify class members that they qualified for a modification before foreclosing. *See*

24   *Dorado v. Bank of Am., N.A.*, 2016 WL 3924115, at *5 (S.D. Fla. July 21, 2016) ("a California court

25   would most likely apply the majority rule that 'breach of contract claims based on a failure to comply

26   with HUD regulations' are viable").

27        Common evidence will show that HUD regulations prohibit lenders from foreclosing without

28   first offering loan modifications to qualifying borrowers. *See* 24 C.F.R. §§ 203.501, 203.605(a),

203.606(a); 12 U.S.C.A. § 1715u ("Upon default … mortgagees shall engage in loss mitigation actions for the purpose of providing an alternative to foreclosure" such as a loan modification). Moreover, the HUD Secretary stated in a 2011 report to Congress that "[d]uring this time of elevated financial stress on households, FHA has maintained a robust set of policies for loan servicer engagement with borrowers to provide assistance in *curing* mortgage delinquencies," including loan modifications where an interest rate could be reduced to current market levels, and "the loan re-amortized for up to 30 years."[7] The FHA is a part of HUD, and HUD was one of HAMP's administering offices.[8]

Whether Wells Fargo breached the FHA contract by failing to offer loan modifications to class members turns on contract interpretation and HUD regulations that apply to all class members with the FHA contract. Since the parties are unlikely to dispute the HUD regulations, the Court should be able to decide on summary judgment whether the contracts, as informed by HUD regulations, required Wells Fargo to notify class members of their right to receive a loan modification, and whether Wells Fargo's failure to do so constitutes a breach. *See In re Conseco*, 270 F.R.D. at 529 (noting that plaintiffs' interpretation of a form contract "may ultimately be rejected at the summary judgment stage or disproved at trial, but they … do not demonstrate a lack of common issues of law."). Therefore, because the Court can decide on a classwide basis whether the contracts required notice of class members' eligibility for a loan modification, and whether Wells Fargo breached that requirement, common issues predominate on breach of contract liability.

### (iii) Causation and injury in fact are common issues

*Tyson, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016) "instructs that certification may remain 'proper' even if 'important matters' such as actual injury, causation, and damages will have to be tried separately." *Martin v. Behr Dayton Thermal Prod. LLC*, 896 F.3d 405, 415 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 1319 (2019) (citing 136 S. Ct. at 1045). Here, however, causation and the fact of damages both predominate.

---

[7] HUD Annual Report to Congress for Fiscal Year 2011,
https://www.hud.gov/sites/documents/FHAMMIFANNRPTFY2011.PDF (last visited November 8, 2019) (emphasis added).

[8] *See* https://www.hud.gov/program_offices/housing/fhahistory;
https://www.hud.gov/hudprograms/fhahamp (last visited November 8, 2019).

1    Wells Fargo has admitted that it caused each class member not to receive a modification, and

2    that all class members were "impacted" by this error. *See* Ex. 45 to Schrag Decl.; Dkt. 153 at 1:23-24

3    ("The error at issue here … impacted" class members). In other words, Wells Fargo has admitted—and

4    its internal documents show—that its conduct caused all class members to lose an opportunity to obtain

5    more favorable loan terms, *e.g.*, a lower monthly payment, reduced interest rate, extended terms, and/or

6    loan forbearance (reduced principal) during a time when class members were financially vulnerable.

7    *See* Ex. 11 to Schrag Decl. at 00071422.

8    This admission is common proof that each class member was damaged. At a minimum, each

9    class member lost an option to obtain more favorable loan terms that would have cured his or her

10   default; and that option at least has nominal value. *See In re Facebook Privacy Litig.*, 192 F. Supp. 3d

11   1053, 1062 (N.D. Cal. 2016) ("plaintiffs have established injury in fact through [their] breach of

12   contract claim for nominal damages").

13   Wells Fargo has questioned whether each class member would have accepted the modification

14   and completed the trial payment plan. But these questions are unrelated to whether class members in

15   fact lost the option to modify. It instead addresses the *extent* of class members' damages. *See Lewis*

16   *Jorge Construction Mgmt., Inc. v. Pomona Unified School Dist.*, 34 Cal.4th 960, 968 (2004) (general

17   damages flow "necessarily" from a breach of contract). Individual questions on the amount of class

18   members' damages (such as whether they lost their home and/or how much additional interest they had

19   to pay), however, do not defeat certification. *See, e.g., Yokoyama v. Midland Nat. Life Ins. Co.,* 594

20   F.3d 1087, 1094 (9th Cir. 2010) ("[t]he amount of damages is invariably an individual question and

21   does not defeat class action treatment") (citations omitted); *Pulaski & Middleman, LLC v. Google, Inc.*,

22   802 F.3d 979, 987 (9th Cir. 2015) ("*Yokoyama* remains the law of this court … '[d]amages calculations

23   alone … cannot defeat certification'") (citation omitted); *In re Live Concert Antitrust Litig.*, 247 F.R.D.

24   98, 135 (C.D. Cal. 2007) (recognizing that if "fact" of damages, or "impact," can be established with

25   common proof, then individualized questions on *amount* does not preclude certification). Indeed,

26   Plaintiffs envision individual remedies determinations after the class liability trial. *See* Plaintiffs' CA

27   Trial Plan.

28

PLAINTIFFS' RENEWED NOTICE OF MOTION
AND MOTION FOR CLASS CERTIFICATION
Case No. 3:18-cv-07354-WHA

1

2

                    **(iv)**      **All class members performed by qualifying for a trial**
                                            **modification**

3

4

5

6

7

8

9

10

11

12

      Lastly, class members' performance under the contracts does not raise individualized issues. Wells Fargo had a contractual obligation to offer all class members a loan modification if class members qualified according to a federally-mandated formula. Therefore, class members' defaults on their mortgages is not a "performance" issue as Wells Fargo claims, but instead is a triggering event for Wells Fargo's loss mitigation efforts. *See, e.g.*, Dkt. 60-3 at 26, 33-35. These provisions require the bank to give borrowers notice of an opportunity to cure the default (and the method by which they could do so) before accelerating the debt. *Id*. The only contract "performance" at issue here was qualifying for a modification—and Wells Fargo has conceded that all class members qualified for a modification. *See* Ex. 45 to Schrag Decl. The element of performance, therefore, does not raise individual issues.

13

            **b)**      **Common issues predominate on HBOR liability**

14

15

16

17

18

19

20

21

      Common issues predominate as to liability on Plaintiffs' Homeowner Bill of Rights claim. The HBOR requires a mortgage servicer like Wells Fargo to "review competent and reliable evidence" (including a borrower's loan status and information) to substantiate its right to foreclose before filing a notice of default or sale. Cal. Civ. Code § 2924.17. A mortgage servicer who violates section 2924.17 is liable for actual economic damages; a court may also award the greater of treble damages or statutory damages of $50,000 if it finds that a material violation was intentional or reckless. Cal. Civ. Code § 2924.19. Here, Wells Fargo recklessly violated HBOR by using software that it knew (or was reckless in not knowing) to be deficient. *See supra* section II(C).

22

23

24

25

26

27

28

      Common evidence of the calculation error in the HPA Tool, Wells Fargo's knowledge of the error and failure to fix it for years, and the resulting incorrect loan modification decisions will establish HBOR liability as to all California class members. For example, after a Wells Fargo employee discovered the error in 2013, the bank conducted a review of 7,000 loans and initially determined that 50 borrowers were wrongfully denied a modification due to the error—yet Wells Fargo failed to implement a fix for it until late 2015. *See supra* section II(C). Even when it fixed the attorney's fees issue in the HPA tool, Wells Fargo continued to miscalculate attorney's fees in its SLoaD tool. *See id.*

1  Documents and testimony showing these facts are among the common evidence that will show Wells

2  Fargo failed to rely on "competent and reliable" evidence in concluding that class members were not

3  eligible for a modification and substantiating its right to foreclose on class members' homes.

4  c)  **Common issues predominate on UCL liability**

5  UCL claims are particularly amenable to class treatment. *See In re Brazilian Blowout Litig.,*

6  2011 WL 10962891, at *8 (C.D. Cal. Apr. 12, 2011) (relief under the UCL "is available without

7  individualized proof of deception, reliance and injury"). Each class members' knowledge or experience

8  with Wells Fargo is thus irrelevant.

9  Plaintiffs contend that Wells Fargo violated the unlawful and unfair prongs of the UCL, both of

10  which present predominately common issues. SAC, Dkt. 137 at ¶¶ 224-25. Plaintiffs' claim under the

11  unlawful prong is based on Wells Fargo's failure to comply with HAMP and other government

12  mandates that required the bank to offer loan modifications to Plaintiffs and class members. Wells

13  Fargo has admitted that it denied modifications to class members who qualified under HAMP (Dkt. 149

14  at 1:19-3:23); whether that HAMP violation also constitutes a violation of the UCL's unlawful prong is

15  a question that is identical to all class members. *See Corvello v. Wells Fargo Bank N.A.*, 2016 WL

16  3995909, at *5 (N.D. Cal. Jan. 29, 2016) (common questions predominated where plaintiffs' UCL

17  claim was premised on violations of the Rosenthal Act; "if Wells Fargo is correct [in its position on the

18  Act], the bank will win against everyone.").

19  Plaintiffs' claim under the UCL's unfair prong is also subject to common proof. The Ninth

20  Circuit has endorsed two tests for unfairness: the *Cel-Tech* test, which requires the alleged conduct to

21  be tethered to some legislatively declared policy, and the *South Bay* test, which requires the alleged

22  conduct to offend established public policy or be immoral, unethical, or substantially injurious to

23  consumers. *Hodson v. Mars, Inc.*, 891 F.3d 857, 866 (9th Cir. 2018).

24  Under either test, proving that Wells Fargo engaged in unfair practices will focus on common

25  evidence of Wells Fargo's conduct—including, for example, internal documents and deposition

26  testimony showing that Wells Fargo failed to heed government mandates to audit and control its loss

27  mitigation practices. Common evidence of an unfair business practice includes the fact that Wells Fargo

28  learned about the error in 2013; was warned by several employees, including Susan Crawford, that

incorrect modification denials would result if it did not fix the error; and yet continued to use the tool until late 2015 because it didn't want to spend around $62,000 to fix it. *See supra* section II(C).

Determining whether Wells Fargo's conduct offends established public policy will not require any individual inquiries. This is consistent with the UCL's "focus on the defendant's conduct … in service of the statute's larger purpose of protecting the general public against unscrupulous business practices." *In re Tobacco II Cases*, 46 Cal.4th 298, 312 (2009). Common issues therefore predominate. *See Gaudin v. Saxon Mortg. Servs., Inc.*, 297 F.R.D. 417, 430 (N.D. Cal. 2013) (finding predominance on UCL unfair claim because "proving the claim will primarily require an investigation into the TPP itself and Defendant's uniform practices").

During the remedies phase, class members will prove the amount of restitution Wells Fargo owes them, which for example, could be the difference between what they paid on their mortgage and what they would have paid had they received a lower, modified payment; or the value of the homes that Wells Fargo took from them measured at the appropriate time. *See Estrada v. Caliber Home Loans, Inc.*, 172 F. Supp. 3d 1108, 1117 (C.D. Cal. 2016) (mortgage-loan payments can be subject of UCL restitution); *Pulaski*, 802 F.3d at 988-99 (where a defendant wrongfully obtains a plaintiff's property, restitution can be value of property at time of improper acquisition "*or a higher value to avoid injustice*") (emphasis added); Plaintiffs' CA Trial Plan.

### d) Common issues predominate on wrongful foreclosure liability

The California tort of wrongful foreclosure also involves common legal questions that can be answered with common evidence. Plaintiffs will show (i) that Wells Fargo breached their mortgage contracts by failing to notify them that they could cure their default by accepting a modification; and (ii) that Wells Fargo engaged in unfair business practices that resulted in foreclosures on class members' homes. *See Chavez v. Indymac Mortg. Servs.*, 219 Cal. App. 4th 1052, 1062-63 (2013); *Ryan-Beedy v. Bank of New York Mellon*, 293 F. Supp. 3d 1101, 1115 (E.D. Cal. 2018). As discussed above, the question of whether Wells Fargo is liable for wrongful foreclosure by accelerating and foreclosing in violation of class members' form mortgage contracts is applicable to each class member's claim. *See supra* III(A)(2)(a). And common evidence of whether Wells Fargo engaged in unfair business practices by ignoring errors in its loan modification software will apply to all class

members. For example, documents and testimony showing that Wells Fargo erroneously programmed its matrix to *add* the state maximum to the attorney's fees that had been actually paid and incurred (instead of using the matrix to *limit* the fees in the calculation)—and then chose to ignore the error for two years—are common evidence of Wells Fargo's unfair business practices. *See supra* section II(C) and II(D).

The issue of tender, which is an element of wrongful foreclosure, does not preclude certification. In California, tender may be excused where it would be "inequitable to enforce the debt" against the plaintiff. *In re Mortg. Electronic Registration Sys., Inc.,* 754 F.3d 772, 785 (9th Cir. 2014). Here, all class members are excused from tendering because Wells Fargo was required to offer a loan modification before it could accelerate on the debts. It would be inequitable (and illogical) to require Plaintiffs to tender their outstanding debt before Wells Fargo fulfilled one of its duties under the mortgage contract—offering a loan modification as a method for curing any default. *See Chavez v. Indymac Mortgage Services,* 219 Cal.App.4th 1052, 1062-63 (2013) (plaintiff alleged exception to tender rule where defendants lacked a contractual basis to foreclose).

### e)   Issue certification of "extreme and outrageous conduct" would materially advance this litigation

Under California law, liability for intentional infliction of emotional distress (IIED) requires proof that: (1) defendant's conduct was outrageous, (2) defendant intended to cause emotional distress or acted with reckless disregard of the probability that plaintiff would suffer emotional distress, (3) plaintiff suffered emotional distress, and (4) defendant's conduct was a substantial factor in causing plaintiff's emotional distress. California Civil Jury Instructions (CACI) No. 1600. Under California law, conduct is "outrageous" if it "exceed[s] all bounds of that usually tolerated in a civilized society." *Bohnert v. Roman Catholic Archbishop of San Francisco,* 67 F. Supp. 3d 1091, 1099 (N.D. Cal. 2014) (citation omitted); CACI No. 1602. The issue of "outrageous conduct" is suitable for class treatment because it turns on an objective standard, depends only on Wells Fargo's actions, and thus can be proven entirely with common evidence. *See Valentino v. Carter-Wallace, Inc.,* 97 F.3d 1227, 1234 (9th Cir. 1996) (Rule 23(c)(4) "authorizes the district court in appropriate cases to isolate the common issues … and proceed with class treatment of those particular issues.").

1    Adjudicating the "outrageous" issue in a single trial would be far more efficient than requiring

2    each California class member to litigate these same issues. In *Collins v. Olin Corp.*, the court certified a

3    class to pursue resolution of several elements of a claim for infliction of emotional distress, explaining

4    that "the intent of [defendant] … and whether [defendant's] conduct was extreme and outrageous, can

5    be made on a class-wide basis." 248 F.R.D. 95, 104 (D. Conn. 2008). The same is true here. *See also In*

6    *re Foreign Exchange Benchmark Rates Antitrust Litig.*, 2019 WL 4171032, at *10 (S.D.N.Y. Sept. 3,

7    2019) (certifying issues depending solely on defendants' conduct (i.e. whether defendants were a part

8    of alleged conspiracy) under Rule 23(c)(4), since those common issues were amenable to class

9    treatment).

10                **3.    Granja's and Campos's Claims Are Typical of California Class Members**

11    "The purpose of the typicality requirement is to assure that the interest of the named

12    representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508

13    (9th Cir. 1992). A proposed class representative is typical if she has been injured by the same course of

14    conduct as the class, has the same or similar injury, and has an action based on conduct that is not

15    unique to her. *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Both

16    Debora Granja and Sandra Campos are typical of the proposed class because they were harmed by the

17    same conduct as the class: Wells Fargo failed to notify each that she could cure her default by accepting

18    a loan modification, and sent each a form letter it sent to other class members admitting that it should

19    have offered her a modification. *See* Ex. 48 and 49 to Schrag Decl. Because Granja had the

20    Fannie/Freddie contract and Campos the FHA contract with respect to homes in California which they

21    lost to foreclosure, it makes sense to appoint them in tandem to represent the California class. Any

22    factual variations do not defeat typicality where, as here, Granja's and Campos's underlying claims rely

23    on the same legal or remedial theories. *Id.* Thus, the typicality requirement is satisfied.

24                **4.    Granja, Campos, and Their Counsel Satisfy Adequacy**

25    To test the adequacy of a class representative, courts ask two questions: (1) whether the named

26    plaintiff and her counsel have any conflicts of interest with other class members, and (2) whether the

27    named plaintiff and her counsel will prosecute the action vigorously on behalf of the class. *In re Yahoo*

28    *Mail Litig.*, 308 F.R.D. 577, 595 (2015). Granja and Campos are adequate class representatives because

they were both wrongly denied a modification and share the same grievances against Wells Fargo as the rest of the class, have no conflicts with other class members, and have demonstrated an understanding of their duties as a class representative. Granja has shown her commitment to this case by following the progress of the litigation, actively participating in discovery, and appearing for her deposition. Granja Depo., Ex. 41 to Schrag Decl. at 163:15-164:15; 165:12-167:23; 179:16-181:5. Should the Court grant the motion to amend the complaint, Campos will do the same on an expedited basis. Declaration of Sandra Campos at ¶ 7-10. Campos also understands her responsibilities as a class representative and agrees to fulfill them. *Id.* at ¶ 6-10.

For their part, Plaintiffs' counsel has zealously and productively advocated for the class in a challenging legal landscape. To date, Plaintiffs' counsel have worked over 5,920 hours on this case. Schrag Decl. at ¶ 7; Paul Decl. at ¶ 10. At the outset, Plaintiffs' counsel secured an order requiring Wells Fargo to send corrective letters to all affected borrowers advising them of their right to be represented by counsel in Wells Fargo's private remediation efforts. Dkt. 28. Plaintiffs' counsel then worked to research and develop relevant legal claims and obtained evidence to support them. Schrag Decl. at ¶ 14. Plaintiffs' counsel defeated Wells Fargo's motion to dismiss the state UDAP, IIED, HBOR, and wrongful foreclosure claims. Dkt. 87. Then, counsel prevailed on their motion to re-plead the nationwide breach of contract claim after it was initially dismissed. Dkt. 136 at 3-4. Plaintiffs' counsel are experienced in class litigation and will continue to devote their time and expertise to this case as it advances towards and through trial.

### 5.    A Class Action Is Superior to 24 Individual Trials

Each superiority factor under Rule 23(b)(3) weighs in favor of certifying a California class. The first factor is "class members' interest in individually controlling the prosecution or defense of separate actions," which includes consideration of whether damages suffered by each class member are so high as to make individual actions superior. *Johnson v. Hartford Casualty Ins. Co.,* 2017 WL 2224828, at *16 (N.D. Cal. May 22, 2017). Here, some class members (such as those who did not lose their homes) suffered relatively small monetary losses (e.g., paying more interest than they would have if they had received a modification). Given the time and expense this case requires, even a relatively large award would likely result in a "negative value" case, where an individual class member's recovery is likely to

1   be lower than the cost of individual litigation. *See Ortega v. Uber Tech. Inc.*, 2018 WL 4190799, at *8

2   (E.D.N.Y. May 24, 2018); *Takiguchi v. MRI Int'l, Inc.*, 2016 WL 1091090, at *12 (D. Nev. Mar. 21,

3   2016) (finding a class action to be superior even where damages ran from "tens of thousands to

4   hundreds of thousands of dollars," since litigation would present hardship on individual class members'

5   finances and health); *Beaver v. Tarsadia Hotels*, 2017 WL 2268853, at *2, *5 (S.D. Cal. May 24, 2017)

6   (settlement class certified where class member net recovery after fees and costs averaged $95,000).

7          The second and third superiority factors, the extent of existing litigation regarding the same

8   controversy and the desirability of concentrating the litigation in this forum, also support certification.

9   Fed. R. Civ. P. 23(b)(3)(B)-(C). To our knowledge, no other California class members have filed suit

10  individually, and only eight other similar actions exist in other states (two of which are proposed class

11  actions). Dkt. 149-5 at ¶ 4. *See In re Lehman Bros. Sec. and ERISA Litig.*, 2013 WL 440622, at *5

12  (S.D.N.Y. Jan. 23, 2013) (individual actions brought by four percent of the proposed class did not

13  defeat superiority, as "[t]his is not a case in which all [class members] have the means to maintain

14  separate actions"). On November 14, 2019, Wells Fargo moved to stay the proposed class action in the

15  Eastern District of Washington pending a resolution of the present case. *See* Dkt. 55 in *Coordes v.*

16  *Wells Fargo Bank*, Case 2:19-cv-00052-TOR (E.D. Wash.).

17         The last factor in determining superiority is "the likely difficulties in managing a class action."

18  Fed. R. Civ. P. 23(b)(3)(D). Since the same evidence on liability would be necessary to prove each

19  class member's claim, concentrating all 24 class members' liability claims into this single litigation "is

20  the most economical tack." *Harper v. Law Office of Harris and Zide LLP*, 2016 WL 2344194, at *5

21  (N.D. Cal. May 4, 2016). That there would need to be individualized inquiries on damages does not

22  defeat certification. *Leyva v. Medline Industries Inc.*, 716 F.3d 510, 513-14 (9th Cir. 2013).

23         Along these lines, Plaintiffs' trial plan proposes two phases. In the first phase, the jury (and

24  Court) will resolve liability on California class claims, whether Wells Fargo's conduct was extreme and

25  outrageous, and the remedies for the two California class representatives. *See* Plaintiffs' CA Trial Plan.

26  If the California class prevails, in the next phase, remaining California class members will have the

27  opportunity to prove their individualized damages and restitution. *Id.*

28         During the remedy phase, each California class member will prove his or her remedies under

each claim. For example, on the contract claim, class members will show their general and special damages from the breach. *See Lewis Jorge Constr. Mgmt.*, 34 Cal.4th at 968-69 (2004) (general and special (i.e. consequential) damages are recoverable for breach of contract). Under the HBOR claim, if Plaintiffs prove reckless or intentional conduct, class members may receive the greater of treble their actual damages or $50,000 in statutory damages. Cal. Civ. Code § 2924.19(b). For the tort of wrongful foreclosure, class members will prove all damages that Wells Fargo "proximately caused," including loss in appreciation in value of the homes they lost to foreclosure, as well as the loss of use of their homes. Cal. Civ. Code § 3333; *see Strebel v. Brenlar Inv., Inc.*, 135 Cal.App.4th 740, 750-755 (2006) (affirming jury's award of "lost appreciation" in value, measured from the date home was wrongfully taken from plaintiff through date of trial, as well as "lost use" damages). Class members will also show their entitlement to restitution under the UCL. *See Pulaski*, 802 F.3d at 988-89 ("Where a defendant has wrongfully obtained a plaintiff's property, 'the measure of recovery … is the value of the property at the time of its improper acquisition … or a higher value if this is required to avoid injustice'") (citations omitted).

### B.  The Nationwide Class and Six State Subclasses Also Satisfy Rule 23(a) and Rule 23(b)(3)

As an alternative to first certifying the California class and holding certification of any other classes and subclasses in abeyance, Plaintiffs move for an order certifying a nationwide class to pursue breach of contract liability and the issue of whether Wells Fargo engaged in "extreme and outrageous conduct," as well as California, Illinois, Maryland, New Jersey, New York, and Pennsylvania state subclasses to pursue state-specific consumer protection claims.[9] The nationwide class and these six state subclasses satisfy all of Rule 23(a)'s and Rule 23(b)(3)'s requirements.

#### 1.     The Nationwide Class Is Sufficiently Numerous

Plaintiffs' proposed nationwide class consists of 824 members, and therefore easily satisfies numerosity. *See* Ex. 41 to Schrag Decl.; *Ehret v. Uber Tech., Inc.*, 148 F.Supp.3d 884, 890 (N.D. Cal. 2015).

---

[9] In this alternative, only the California subclass would pursue the UCL claim.

1

**2.      Common Questions of Fact and Law Predominate Over Any Individual Issues**

2

**a)      Common issues predominate on breach of contract liability**

3          As with the California class, the predominate common question is whether the FHA and

4   Fannie/Freddie contracts required Wells Fargo to notify class members that they qualified for loan

5   modification before accelerating or foreclosing. *See supra* section III(A)(2)(a).

6          While the contracts are governed by the law where each property is located, variations in

7   applicable state law on contract interpretation do not defeat commonality in the nationwide class, in

8   part because the contracts at issue are form contracts. *In re Conseco,* 270 F.R.D. at 529 (rejecting

9   argument that differences in state contract law defeated certification; since neither party argued the

10  form contract had ambiguous terms, admission of extrinsic evidence wouldn't be necessary); *see also*

11  *Ellsworth*, 2014 WL 2734953 at *22 (differences in state contract law did not defeat predominance

12  where form Fannie/Freddie mortgage contracts were at issue). As in *Ellsworth*, breach of contract

13  liability is suitable for nationwide class treatment here because neither party has argued that the

14  Fannie/Freddie and FHA contracts are ambiguous (instead, the parties offer competing interpretations

15  based on the face of the contracts). Therefore, "admission of extrinsic evidence should not be

16  necessary" and the Court can interpret the contracts as a matter of law. *See In re Conseco*, 270 F.R.D.

17  at 529; *see also Kleiner v. First Nat. Bank of Atlanta*, 97 F.R.D. 683, 693 (N.D. Ga. 1983) (where

18  neither party asserted loan contract at issue was ambiguous, court presumed resolution of dispute would

19  not require inquiry into extrinsic circumstances); *see supra* section III(A)(2)(a).

20         Even if the Court finds an ambiguity, all states agree that a court may admit extrinsic evidence

21  to interpret an ambiguous contract. *See* Ex. 46 to Schrag Decl. And "at best (and on this record, entirely

22  hypothetically), it would be non-individualized extrinsic evidence." *Ellsworth*, 2014 WL 2734953 at

23  *23. Any such evidence will concern *Wells Fargo's* understanding of the contractual language at issue.

24  That language was standard across contracts and was not negotiated on an individual basis. *See In re*

25  *Med. Capital Secs. Litig.,* 2011 WL 5067208, at *5 (C.D. Cal. July 26, 2011) (certifying contract claims

26  where plaintiffs' interpretation was buttressed by "evidence regarding Defendants' course of

27  performance").

28         Eight states (Alabama, Colorado, Illinois, Maryland, Michigan, Nevada, New Jersey, and

- 20 -

1    Washington) do not recognize contract claims based on violations of HUD regulations incorporated

2    into contracts.[10] Therefore, class members from those states who have FHA contracts do not have a

3    breach of contract claim; they can, however, still be a part of the IIED issue class, and those from

4    Illinois, Maryland, or New Jersey can still pursue their consumer protection claims.

5                    **b)      Issue certification of "extreme and outrageous" conduct would**

6                              **materially advance the nationwide class's claims**

7            The Court can determine whether Wells Fargo's actions were "extreme and outrageous" for the

8    nationwide class because the issue depends entirely on common evidence of Wells Fargo's conduct.

9    States take the same or nearly the same approach on what constitutes "extreme and outrageous"

10   behavior. Ex. 47 to Schrag Decl. Because all states use an objective standard, common evidence

11   concerning Wells Fargo's conduct can prove the element without any need for individualized

12   testimony. As in *Collins*, individual issues as to whether Wells Fargo's conduct caused class members

13   severe emotional distress is an inquiry the Court can make "in conjunction with the inquiry into the

14   actual damages sustained by each plaintiff." 248 F.R.D. at 104. Here, certification of the "extreme and

15   outrageous" issue would materially advance the litigation by resolving an issue central to every class

16   member's IIED claim.

17                   **3.      Typicality of the Proposed Class Representatives' Claims**

18           Each of the proposed class representatives satisfies typicality because each has been injured by

19   the same course of conduct as the class, has the same or similar injury, and has an action based on

20   conduct that is not unique to him or her. *See Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168,

21   1175 (9th Cir. 1992). In other words, Wells Fargo has admitted that it failed to offer each class

22   representative a loan modification, even though the class representatives qualified for one. *See* Ex. 45

23   to Schrag Decl. They all have the same interest in obtaining remedies for being denied the opportunity

24

25   _____
     [10] *See Dixon v. Wells Fargo Bank, N.A.*, 2012 WL 4450502, at *8 (E.D. Mich. Sept. 25, 2012); *Stabley
26   v. Bank of Am., N.A.*, 2014 WL 3645327, at *4 (D. Nev. July 22, 2014); *Heritage Bank N.A. v. Ruh*, 191
     N.J. Super. 53, 66 (Ch. Div. 1983); *Adams v. Bank of Am., N.A.*, 237 F. Supp. 3d 1189, 1197-1201
27   (N.D. Ala. 2017); *Hayes v. M&T Mortg. Corp.*, 906 N.E.2d 638, 641-42 (Ill. App. 2009); *Wells Fargo
     Home Mortg., Inc. v. Neal*, 398 Md. 705, 711 (2007); *Christenson v. Citimortgage, Inc.*, 2013 WL
28   5291947, at *7 (D. Colo. Sept. 18, 2013); and *Ulrich-Kurtzer v. Wells Fargo Bank, N.A.*, 2016 WL
     4275451, at *4 (W.D. Wash Jan. 28, 2016).

PLAINTIFFS' RENEWED NOTICE OF MOTION
AND MOTION FOR CLASS CERTIFICATION
Case No. 3:18-cv-07354-WHA

1   to save their homes and make lower mortgage payments during a time of financial struggle. The

2   typicality requirement is therefore satisfied.

### 4.      Adequacy of the Proposed Class Representatives

4         All 15 class representatives are adequate in that they do not have any conflicts of interest with

5   other class members, and they have shown their commitment to prosecuting this case on behalf of the

6   class. *See In re Yahoo Mail Litig.*, 308 F.R.D. at 595. Each of them has demonstrated an understanding

7   of the case and his/her duties as a class representative, has stayed updated on the progress of the case,

8   actively participated in discovery, and was deposed by Wells Fargo's counsel. *See* Ex. 50 to 63 to

9   Schrag Decl. (class representative deposition excerpts). And as addressed in the California adequacy

10  section above, Plaintiffs' counsel has demonstrated their dedication to this case over the past year by

11  productively advocating for the class. *See* supra section III(A)(4). The proposed class representatives

12  and Plaintiffs' counsel will continue to effectively prosecute this case on behalf of the class.

### 5.      Class Litigation Is Superior to Piecemeal Resolution of These Claims

14        The superiority factors under Rule 23(b)(3) weigh in favor of certifying a nationwide class and

15  the six state subclasses. The first factor, "class members' interests in individually controlling the

16  prosecution or defense of separate actions," includes consideration of whether damages suffered by

17  each class member are so high as to make individual actions superior. *Johnson*, 2017 WL 2224828 at

18  *16. For those class members who suffered relatively small monetary losses (such as the ones who did

19  not lose their homes), the time and expense of individual litigation against Wells Fargo would outweigh

20  any expected recovery. *See Ortega*, 2018 WL 4190799 at *8. The second and third superiority factors,

21  the extent of existing litigation regarding the same controversy and the desirability of concentrating the

22  litigation in this forum, also support certification. Fed. R. Civ. P. 23(b)(3)(B)-(C); *see* Plaintiffs'

23  Nationwide Trial Plan. To Plaintiffs' counsel's knowledge, only eight other actions regarding this

24  software error exist (Brinson Decl., Dkt. 149-5 at ¶ 4), showing that most class members have not

25  challenged Wells Fargo individually. *See In re Lehman Bros. Sec. and ERISA Litig.*, 2013 WL 440622,

26  at *5 (S.D.N.Y. Jan. 23, 2013) (individual actions brought by four percent of the proposed class did not

27  defeat superiority, as "[t]his is not a case in which all [class members] have the means to maintain

28  separate actions").

### 6.    The Court Should Certify the State Consumer Protection Subclasses

Courts routinely certify state subclasses to pursue consumer protection claims under different state laws. *See, e.g., Keegan v. Am. Honda Motor Co., Inc*., 284 F.R.D. 504, 545 (C.D. Cal. 2012). Plaintiffs addressed why the California subclass is amenable to class treatment in section III(A) above. The other five state consumer protection subclasses here are also suitable for class treatment because common issues predominate within each subclass. Each of these states' consumer protection statutes awards relief if a plaintiff can show: (1) unfair or deceptive acts or practices, (2) resulting harm, and (3) causation. *See Siegel v. Shell Oil Co.*, 656 F.Supp.2d 825, 831-32 (N.D. Ill. 2009) (elements of Illinois Consumer Fraud Act are (1) deceptive or unfair act by defendant; (2) defendant's intent that plaintiff rely on deceptive or unfair act; (3) unfair act occurred in trade or commerce; (4) proximate causation); *Ayres v. Ocwen Loan Servicing, LLC*, 129 F. Supp. 3d 249, 270 (D. Md. 2015) (elements of Maryland Consumer Protection Act are (1) unfair or deceptive practice that is (2) relied upon, and (3) causes injury); *Dzielak v. Whirlpool Corp*., 26 F. Supp. 3d 304, 333 (D.N.J. 2014) (elements of New Jersey Consumer Fraud Act are (1) unlawful conduct; (2) loss by plaintiff; and (3) causation); *Slakpikas v. First Am. Title Ins. Co*., 298 F.R.D. 285, 290 (W.D. Pa. 2014) (Pennsylvania's Unfair Trade Practices and Consumer Protection Law requires proof of unfair or deceptive practices and ascertainable loss); *Readick v. Avis Budget Group, Inc*., 2013 WL 3388225, at *2 (S.D.N.Y. July 3, 2013) (violation of N.Y. Gen. Bus. Law § 349 requires showing (1) defendant engaged in deceptive or misleading conduct, and (2) plaintiff was injured by reason thereof). The same common evidence that will prove Wells Fargo engaged in unfair practices under the UCL will also prove liability on these non-California state consumer protection claims. *See supra* section III(A)(2)(c).

Courts adjudicate these state unfair practice claims on a classwide basis. *See Randolph v. Crown Asset Mgmt., LLC,* 254 F.R.D. 513, 520 (N.D. Ill. 2008) (certifying three classes, all alleging various claims, including one under the Illinois Consumer Fraud Act); *Tait v. BSH Home Appliances Corp*., 289 F.R.D. 466, 484 (C.D. Cal. 2012) (certifying Maryland class to pursue claim under Maryland Consumer Protection Act); *Elias v. Ungar's Food Prod., Inc*., 252 F.R.D. 233, 252 (D.N.J. 2008) (certifying class bringing claims under New Jersey Consumer Fraud Act); *Sykes v. Mel Harris & Assocs., LLC*, 285 F.R.D. 279, 293 (S.D.N.Y. 2012) (certifying class to pursue New York GBL § 349

1   claim); *Gold v. Lumber Liquidators, Inc.*, 323 F.R.D. 280, 292 (N.D. Cal. 2017) (certifying several

2   state consumer protection classes, including one to pursue claim under Pennsylvania Unfair Trade

3   Practices and Consumer Protection Law). Nor does the element of reliance in the Illinois, Maryland,

4   and Pennsylvania statutes preclude certification because reliance can often be presumed; and even if

5   reliance is individualized, other common questions may still predominate. *See e.g. Randolph v. Crown*

6   *Asset Management, LLC*, 254 F.R.D. 513, 520 (N.D. Ill. 2008) (rejecting defendants' argument that

7   individual issues predominated in ICFA case, since "[i]t is proper to allow a class action where a

8   defendant is alleged to have acted wrongfully in the same basic manner towards an entire class"); *Tait*

9   *v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 483–484 (C.D. Cal. 2012) (rejecting defendant's

10  argument that reliance element prevents certification under the Maryland act because reliance can be

11  presumed).

12      Each of the state subclasses also satisfies numerosity, typicality, and adequacy. There are 24

13  class members in California, 42 in Illinois, 35 in Maryland, 59 in New Jersey, 61 in New York, and 82

14  in Pennsylvania. *See* Ex. 41 to Schrag Decl. Although courts generally hold that each subclass must

15  independently satisfy each Rule 23 requirement, "if the subclass members are members of a larger

16  certified class, courts have applied the numerosity requirement less stringently." *Ireland v. Anderson*,

17  2016 WL 7324104, at *15 (D.N.D. Aug. 29, 2016); *Tokoshima v. Pep Boys—Manny Moe & Jack of*

18  *California*, 2014 WL 1677979, at *5 n.4 (N.D. Cal. Apr. 28, 2014) (holding a subclass of 19 was

19  sufficiently numerous, given judicial efficiency and fairness to subclass members). Lastly, the class

20  representatives for these subclasses are typical and adequate for the same reasons discussed in section

21  III(B)(4) above.

22          **7.    The Court Should Certify California and Georgia Wrongful Foreclosure**

23                  **Subclasses**

24      Lastly, the California and Georgia wrongful foreclosure claims are also amenable to class

25  treatment. These claims largely mirror Plaintiffs' breach of contract claim. Under California and

26  Georgia law, Wells Fargo's failure to exercise its power of sale fairly and in compliance with the

27  mortgage agreement's terms give rise to a wrongful foreclosure claim as well as a contract claim. *See*

28  *Chavez v. Indymac Mortg. Servs.*, 219 Cal.App.4th 1052, 1062-63 (2013) (upholding wrongful

1  foreclosure claim where "Defendants lacked a contractual basis to exercise the power of sale"); *Sheely*

2  *v. Bank of Am., N.A.*, 36 F.Supp.3d 1364, 1376-77 (N.D. Ga. 2014) (borrower may sue for wrongful

3  foreclosure when lender wrongly exercises power of sale in mortgage agreement). If the Court finds

4  that Wells Fargo violated class members' mortgage contracts by failing to notify them that they

5  qualified for a modification before foreclosing, then the Court can also rule on wrongful foreclosure

6  liability for the California and Georgia subclasses.

7  **CONCLUSION**

8      For the reasons discussed, Plaintiffs ask the Court to certify the California class and hold

9  certification of the nationwide class and non-California state subclasses in abeyance pending resolution

10  of the California Class claims. Alternatively, Plaintiffs ask the Court to certify the nationwide class, as

11  well as six state consumer protection subclasses and other state law subclasses.

12      Plaintiffs appreciate the opportunity to file this renewed motion for class certification.

13  Dated: November 21, 2019                    Respectfully submitted,

14                                             /s/ Michael L. Schrag
15                                             **GIBBS LAW GROUP LLP**
                                               Michael L. Schrag (SBN 185832)
16                                             Joshua J. Bloomfield (SBN 212172)
                                               Linda P. Lam (SBN 301461)
17                                             505 14th Street, Ste. 1110
                                               Oakland, California 94612
18                                             Telephone:  510-350-9700
19                                             Facsimile:  510-350-9701
                                               mls@classlawgroup.com
20                                             jjb@classlawgroup.com
                                               lpl@classlawgroup.com
21

22                                             Richard M. Paul III
                                               Ashlea G. Schwarz
23                                             **PAUL LLP**
                                               601 Walnut Street, Suite 300
24                                             Kansas City, Missouri 64106
                                               Telephone: 816-984-8100
25                                             Facsimile:  816-984-8101
                                               Rick@PaulLLP.com
26                                             Ashlea@PaulLLP.com

27
                                               *Attorneys for Plaintiffs and the Proposed Classes*
28