# EXHIBIT 8

Confidential

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

```
ALICIA HERNANDEZ, EMMA WHITE,        )
KEITH LINDNER, DEBORA GRANJA, TROY   )
FRYE, COSZETTA TEAGUE, IESHA BROWN,  )
RUSSELL and BRENDA SIMONEAUX, JOHN   )
and YVONNE DEMARTINO, ROSE WILSON,   )
TIFFANIE HOOD, GEORGE and CYNDI      )
FLOYD, and DIANA TREVINO,            )
individually and on behalf of all    )
others similarly situated,           )
          Plaintiffs,                )
                                     )
     v.                              ) No. 3:18-CV-07354
                                     )
WELLS FARGO & COMPANY, and WELLS     )
FARGO BANK, N.A.,                    )
          Defendants.                )
```

DEPOSITION OF ROBERT FERGUSON

Taken on behalf of Plaintiffs

\* \* \*

BE IT REMEMBERED THAT, pursuant to Federal Rules of Civil Procedure, the deposition of ROBERT FERGUSON was taken before Heather L. Fairless, a Registered Professional Reporter and Certified Shorthand Reporter, on Wednesday, July 10, 2019, commencing at the hour of 9:40 a.m., in the law offices of LANE POWELL PC, 601 S.W. 2nd Avenue, Suite 2100, Portland, Oregon.

\* \* \*

Confidential

| | | |
|---|---|---|
| 10:22:24 | 1 | cause distractions from your routine manner of handling |
| | 2 | your business matters.  Our trained professionals are |
| | 3 | available to assist you in bringing your loan current. |
| | 4 | We will work with you to determine the best option |
| 10:22:34 | 5 | available to you."  Do you see that? |
| | 6 | A    I do. |
| | 7 | Q    And so let's focus on that second sentence, "Our |
| | 8 | trained professionals are available to assist you in |
| | 9 | bringing your loan current."  I have seen -- I think we |
| 10:22:51 | 10 | will get to it later -- but a job title, something to |
| | 11 | the effect of home preservation specialist.  Is that a |
| | 12 | job you are familiar with? |
| | 13 | A    Yes. |
| | 14 | Q    And is that the trained professionals that are |
| 10:23:02 | 15 | being referenced in this letter? |
| | 16 | A    This would be talking to the customer from a |
| | 17 | collection perspective, but if the best option to help |
| | 18 | the customer was to get them in the loss mitigation |
| | 19 | track, that is where they would go. |
| 10:23:22 | 20 | Q    So the home preservation specialist employees are |
| | 21 | within the loss mitigation group? |
| | 22 | A    Correct. |
| | 23 | Q    All right.  And then when it says available to |
| | 24 | assist you in bringing your loan current, that would |
| 10:23:38 | 25 | mean curing the default? |

Confidential

10:23:40  1   A      Yes.

2   Q      And then I think you mentioned this a number of
3   times, but the last sentence there says, "We will work
4   with you to determine the best option available to you,"
10:23:50  5   and I take it that is a reference that there is many
6   ways that process -- many roads that process can go down
7   once the default occurs; is that right?
8   A      That is correct.
9   Q      And in terms of the -- well, one of the roads you
10:24:11 10   have mentioned is loss mitigation.  Correct?
11   A      Yes.
12   Q      What are the other pathways that that can go down
13   from the moment of default?
14   A      It is if the collection team member can make a
10:24:32 15   repayment plan with the borrower that meets their
16   ability to pay, that would be one option or outcome.  If
17   during the conversation the borrower indicates that they
18   are interested in liquidation, again, that would go to
19   loss mitigation, but the focus would be more on a short
10:24:58 20   sale or a deed in lieu.  If they said that they can't
21   make their payments and there is no way for them to make
22   up the past due while keeping current with their current
23   payments but they are interested in retention, then that
24   is -- it would go down the loss mitigation path for
10:25:21 25   retention.  So at this point, that is what I can think

Confidential

10:27:26  1   some of them, I think -- I don't actually know without
          2   looking at the terms.
          3   Q     All right.  So, again, looking at this language in
          4   the third sentence of the second paragraph, "We will
10:27:56  5   work with you to determine the best option available to
          6   you," one option would be payment in full and cure the
          7   default?
          8   A     Yes, one option would be that.
          9   Q     Second option would be a repayment plan where that
10:28:11 10   is repaid in full and default is cured over a period of
         11   time?
         12   A     Correct.
         13   Q     Third option would be they cure the default by
         14   agreeing to give up their home either through a short
10:28:26 15   sale or a deed in lieu of foreclosure?
         16              MS. SCAVO:   Objection to form.
         17              THE WITNESS:   That would be -- that would
         18   take additional review, but that is one pathway that is
         19   available at that point.
10:28:38 20   Q    BY MR. PAUL:  Okay.  And we will talk about the
         21   steps in between as well, but I just want to get the
         22   roads that I need to cover today.  And then I have as a
         23   fourth option retention, which is, again, handled by
         24   loss mitigation and is working with the borrowers
10:28:57 25   through some option to retain their home?

Confidential

| | | |
|---|---|---|
| 10:29:00 | 1 | A    Correct. |
| | 2 | Q    And I take it a loan modification would fall |
| | 3 | within that fourth option? |
| | 4 | A    Yes. |
| 10:29:08 | 5 | Q    Are there other options other than a loan |
| | 6 | modification within retention? |
| | 7 | A    In the longer-term repayment plan than the shorter |
| | 8 | one that the collections team members would be able to |
| | 9 | offer. |
| 10:29:34 | 10 | Q    Are there any other options to cure the default |
| | 11 | that you can think of? |
| | 12 | A    The borrower could sell the house not in a short |
| | 13 | sale if there was equity. |
| | 14 | Q    And that would involve paying off the entire |
| 10:29:59 | 15 | mortgage? |
| | 16 | A    Correct. |
| | 17 | Q    And is there -- if in the response to this letter |
| | 18 | the borrower says, I am going to sell the house and pay |
| | 19 | the bank off, is there a -- which department handles |
| 10:30:16 | 20 | that to oversee that process? |
| | 21 | A    It would just stay in -- if it stayed in default |
| | 22 | until the time of the sale, it would stay in |
| | 23 | collections. |
| | 24 | Q    And is there a set period of time that the |
| 10:30:33 | 25 | collections department would give the borrower to get |

Confidential

| | | |
|---|---|---|
| 11:14:25 | 1 | paragraph that is the third one down with three bullet |
| | 2 | points underneath it that begins "A loan modification:" |
| | 3 | Do you see that? |
| | 4 | A    I do. |
| 11:14:35 | 5 | Q    So I think we talked about that a little bit |
| | 6 | generally this morning, but from a terminology |
| | 7 | perspective, this describes a loan modification as an |
| | 8 | agreement that changes the terms of your existing |
| | 9 | mortgage.  Is that a definition that you would agree |
| 11:14:52 | 10 | with? |
| | 11 | A    Yes. |
| | 12 | Q    All right.  And in terms of the specifics of how |
| | 13 | that actually happens -- well, not how it happens, what |
| | 14 | is happening, if a loan modification is completed, does |
| 11:15:09 | 15 | that result in a new mortgage? |
| | 16 | A    It results in a modification of the original |
| | 17 | mortgage, and in certain cases that modification then |
| | 18 | needs to be recorded with the county, so I guess you |
| | 19 | could technically say it is a new mortgage. |
| 11:15:41 | 20 | Q    At what point in that process of a loan |
| | 21 | modification being agreed to is the default deemed |
| | 22 | cured? |
| | 23 | MS. SCAVO:   Objection to form. |
| | 24 | THE WITNESS:   In the modification process |
| 11:15:55 | 25 | there is settlement, the settlement process, and that is |

Confidential

```
11:15:58   1   when all the requirements of the modification have been
           2   met.  The title on the home is clear.  The terms of the
           3   modification are the same as what was contemplated in
           4   the trial plan.  And when the new mortgage is settled or
11:16:34   5   booked, the default would be cleared, and the past-due
           6   balance would go to zero.
           7   Q     BY MR. PAUL:  And that would be notated in the
           8   MSP?
           9   A     Correct.
11:16:49  10   Q     So we started with this, but the important note at
          11   the bottom references the possibility that a foreclosure
          12   sale could be underway.  But regardless of whether that
          13   sale has been scheduled and is underway, there is
          14   still -- well, let me ask it this way:  Are there still
11:17:15  15   letters going out telling the borrower you are in
          16   default still while the discussions of a loan
          17   modification are occurring?
          18   A     Can you rephrase that?  I am sorry.
          19   Q     Sure.  When a loss mitigation team member is
11:17:35  20   assisting a borrower with modifying their loan, is the
          21   borrower still getting letters like we have looked at
          22   but maybe different forms saying you have missed a
          23   payment, you are in default?
          24              MS. SCAVO:  Objection to form.
11:17:53  25              THE WITNESS:  The borrower could receive
```

Confidential

11:19:36  1  reason not to be applicable.  That is one situation
          2  where I can think of.
          3  Q    All right.  If the borrower is in the midst of
          4  performing on a trial period plan, is that mortgage
11:19:59  5  still listed as in default on the mortgage service
          6  platform?
          7  A    It would be.
          8  Q    Is it the execution of the final loan modification
          9  that removes that mortgage from being in default on the
11:20:19 10  mortgage service platform?
         11  A    If the modification is the way that the loan
         12  ceases to be in default, correct.  The borrower can
         13  always -- if something changes with their situation and
         14  instead of going through the modification program, they
11:20:36 15  paid the loan current or reinstate the loan.  So I just
         16  didn't want it to only be the modification that could
         17  bring the loan current.
         18  Q    Oh, sure.  So let's just break that out.  I think
         19  I understand what you are saying, but at any point in a
11:20:59 20  process the borrower, you know, lost their job, gets
         21  their job back and they have the money to pay, they can
         22  bring that loan current at any point in time and that
         23  would cure the default?
         24  A    Correct.
11:21:10 25  Q    But let's leave that aside.  Let's say that they

Confidential

| | | |
|---|---|---|
| 11:21:13 | 1 | need that loan modification and they are not otherwise |
| | 2 | bringing it current.  The cure to that default is to |
| | 3 | execute the final loan modification.  Correct? |
| | 4 | MS. SCAVO:  Objection to form. |
| 11:21:30 | 5 | THE WITNESS:  The default would be cured |
| | 6 | if the loan modification goes through the final |
| | 7 | settlement process, thus curing the default. |
| | 8 | Q    BY MR. PAUL:  And -- |
| | 9 | MR. PAUL:  Well, what is the form |
| 11:21:48 | 10 | objection? |
| | 11 | MS. SCAVO:  Sorry.  Can you read -- Court |
| | 12 | Reporter, can you please read the question back?  I am |
| | 13 | technically not supposed to say what the form objection |
| | 14 | is per Judge -- |
| 11:22:03 | 15 | MR. PAUL:  I know, but I think he says |
| | 16 | you can ask. |
| | 17 | MS. SCAVO:  Okay. |
| | 18 | (The reporter read the record as |
| | 19 | requested.) |
| 11:22:22 | 20 | MS. SCAVO:  Hypothetical. |
| | 21 | Q    BY MR. PAUL:  So tell me what you mean by the |
| | 22 | settlement process. |
| | 23 | A    It is the bank's internal process by which they |
| | 24 | change the terms of the loan in the system of record |
| 11:22:41 | 25 | sometimes also produce a new deed of trust based on that |

Confidential

| | | |
|---|---|---|
| 11:22:57 | 1 | modification to be recorded at the county.  So it is the |
| | 2 | actual activities that take place to make a loan that |
| | 3 | was once in default now current with new terms according |
| | 4 | to the modification. |
| 11:23:24 | 5 | Q     Which department handles settlement? |
| | 6 | A     It is part of loss mitigation. |
| | 7 | Q     And is that generally the same employee who is |
| | 8 | handling the loan modification process with the borrower |
| | 9 | or somebody different? |
| 11:23:39 | 10 | A     Someone different. |
| | 11 | Q     All right.  Going back to -- we started walking |
| | 12 | through the bullet points of Exhibit 346.  The second |
| | 13 | bullet point says is not -- "A loan modification is not |
| | 14 | a refinance and there are no fees."  Do you see that? |
| 11:24:02 | 15 | A     I do. |
| | 16 | Q     And what is the distinction between a refinance of |
| | 17 | an existing mortgage and a loan modification? |
| | 18 | A     A refinance would constitute brand new money and |
| | 19 | would be handled by the front end of the bank, not the |
| 11:24:25 | 20 | servicing department, so it would have to meet all the |
| | 21 | criteria of a new loan.  Modification is just that, a |
| | 22 | modification of an existing note and deed of trust.  So |
| | 23 | that is the main distinction. |
| | 24 | Q     In the mortgage service platform, does the loan |
| 11:24:55 | 25 | get a new loan number when it is modified? |

Confidential

```
11:24:58   1    A      It does not.
           2    Q      But if it were a refinance it would?
           3    A      If Wells was the servicer of the new loan.  The
           4    old loan would cease to exist and a new loan would
11:25:11   5    appear on the servicing platform.
           6    Q      All right.  Yeah, and that is a good distinction.
           7    I actually was -- I think I know the answer, but I was
           8    meaning if Wells is the servicer before and after it is
           9    still going to get a new loan number?
11:25:30  10    A      It would get a new loan number.
          11    Q      And then the third bullet point says, "Brings your
          12    account up to date and may result in a lower, more
          13    manageable monthly payment."  Let's break that out.  The
          14    first part, bringing your account up to date, just means
11:25:53  15    bringing the loan current?
          16    A      Correct.
          17    Q      And that would be the same as the language we have
          18    been using, curing the default?
          19    A      Yes.
11:26:02  20    Q      And then the lower, more manageable payment, a
          21    loan modification may or may not result in a lower
          22    payment.  Correct?
          23    A      That is correct.
          24    Q      There are some modifications where the principal
11:26:18  25    and interest payment actually goes up because of accrued
```

Confidential

| | | |
|---|---|---|
| 11:26:22 | 1 | late fees and interest and whatever else but isn't -- |
| | 2 | but amortizes that back late fees differently?  Do you |
| | 3 | understand what I am saying? |
| | 4 | MS. SCAVO:  Objection to form. |
| 11:26:37 | 5 | THE WITNESS:  There are different types |
| | 6 | of treatments in loss mitigation that could result in a |
| | 7 | same payment or even a slightly higher payment but also |
| | 8 | cures the default in the process, but it is based on the |
| | 9 | borrower's ability to pay the new modified terms. |
| 11:27:08 | 10 | Q    BY MR. PAUL:  What guidelines does a loss |
| | 11 | mitigation team member have to work with a borrower on a |
| | 12 | loan modification? |
| | 13 | A    The guidelines are going to be set by the investor |
| | 14 | requirements. |
| 11:27:37 | 15 | Q    Are some of those investor requirements set forth |
| | 16 | in the service provider agreement? |
| | 17 | A    They -- investor -- the guidelines would be -- |
| | 18 | well, the guidelines for Freddie and Fannie would be in |
| | 19 | the servicer's guidelines that are online -- the |
| 11:28:03 | 20 | handbook, servicer's handbook, I should say.  Any of the |
| | 21 | other investment portfolios would be -- the guidelines |
| | 22 | would be in the service agreement.  FHA also has their |
| | 23 | specific guidelines for HUD, Rural Development, and VA |
| | 24 | loans. |
| 11:28:31 | 25 | Q    And where are the investor requirements found for |

Page 130

```
 1                    CERTIFICATE

 2           I, HEATHER L. FAIRLESS, a Registered

 3   Professional Reporter, Washington Certified Court

 4   Reporter, and an Oregon Certified Shorthand Reporter,

 5   hereby certify that said witness personally appeared

 6   before me at the time and place set forth in the caption

 7   hereof; that at said time and place I reported in

 8   stenotype all testimony adduced and other oral

 9   proceedings had in the foregoing matter; that thereafter

10   my notes were transcribed through computer-aided

11   transcription under my direction; and that the foregoing

12   pages constitute a full, true, and accurate record of

13   all such testimony adduced and oral proceedings had, and

14   of the whole thereof.

15           I further certify review of the transcript was

16   reserved.

17           Witness my hand at Portland, Oregon, this 18th

18   day of July, 2019.

19

20

21

22
                                    Heather L. Fairless
23                                  Oregon CSR No. 10-0418
                                    Expires 9/30/20
24                                  Washington CCR No. 2842
                                    Expires 10/01/19
25
```