# EXHIBIT 38

Request Document

# Business Requirements Document

Designate any requirements that do not apply to the request with N/A

| Request Name: | 6214:  Attorney Fees for the HPA Tool |
|---|---|
| Request Date: | 3/7/2018 |

| Project Sponsor: | Carmen Bell |
|---|---|
| Project Manager: | Heather Pemble |
| Assigned Analyst: | Travis Hutzell, Adam Alvarez, Mike Agocs |
| Requestor: | Carmen Bell |
| Business Unit: | Loss Mitigation |
| Request Type: | C2C Issue Review and Remediation |

## Approvals

The requirements document will be approved by CEDA management. The analytical manager will sign off on the analytical process. The business will sign off on the high-level project.

| Name | Project Role | Date Approved | Approval Documentation |
|---|---|---|---|
| Carmen Bell | Senior Leader | 6/27/2018 | [ EMBED Package ] |
| Brian Spensley | Executive Sponsor | 6/27/2018 | [ EMBED Package ] |
| Kara Reimers | Business Lead/SME | 6/27/2018 | [ EMBED Package ] |
| Brian Dietz | RECOR | 6/27/2018 | [ EMBED Package ] |
| Jason Depino | Project Team Lead | 6/22/2018 | [ EMBED Package ] |
| Mike Jacoby | Ops Risk Manager | 6/25/2018 | [ EMBED Package ] |

## Version History

For each iterative change, create a new row and key in the description to contain all of the changes for that specific version. Each time the requirements document requires a new approval, a new version number in the Version History is required.

| Version # | Revision Date | Revised By | Change Description |
|---|---|---|---|
| 01 | 4/3/2018 | Mike Agocs | Initial Draft |
| 02 | 5/1/2018 | Mike Agocs | Added additional waterfall items, details on calculations used |
| 03 | 6/1/2018 | Mike Agocs | Updated wording to align with language being used in updates to the Federal Reserve, OCC and CFPB |
| 04 | 6/20/2018 | Mike Agocs | Added waterfall details, one-page summaries of criteria used to determine impact, calculations used |
| 05 | 6/21/2018 | Mike Agocs | Peer review updates and finalized list of approvers |

## Purpose

The request purpose is to define the reason for the requested work; include the issue and how the request will address the issue.  Utilize the CIRT tool or the Comprehensive Commitment to Customer Plan (if retail) to pull in the background information.  CIRT Details:

- Issue – found on the discovery screen, details section
- Root Cause Summary – found on the research screen
- Short Term Solution – found on the discovery screen → Details → Immediate Corrective Action
- Long Term Solution – found on corrective action screen – likely will not be completed initially

CEDA objectives will need to be added based on the waterfall approach.



| Backgrou nd and | Background – From CIRT Tool or Comprehensive Commitment to Customer Plan Incident Description. |
|---|---|

Customer Excellence Data & Analytics

[ PAGE  \* MERGEFORMAT ]

Request Document

| Objective (s): | When reviewing CIT 5920 in the Settlement area related to attorney fees, we identified an opportunity to review for additional impacts, which included looking at loans that were potentially denied due to our process at the time for how attorney fees were calculated in the decision tool. |
|---|---|

The Home Preservation Application (HPA) tool was placed into production April 13, 2010 with logic to utilize a State Fee Matrix that provided maximum allowable foreclosure attorney fees and costs. The HPA tool was automated to pull in attorney fees that were paid at the time of the decision from MSP screen (DDCH) and added them to the maximum allowable from a state matrix.  This practice potentially over stated the dollar amount for recoverable fees that were incurred at the time of the decision, which could have created an HTI impact making the payment unaffordable and potentially declining for either affordability and/or NPV. The fee matrix usage was eliminated from the HPA tool on 10/20/2015.

**Customer Impact.**
Customers may have been inappropriately denied for Home Preservation home retention products and for HAMP decisions, this may have included loss of related incentives.

**Short and Long Term Solutions.**
Issue no longer occurring since Fee Matrix was eliminated in 2015, no immediate corrective action to take.

**Additional Background – From CEDA Data Discovery**

On April 13, 2010, the Home Preservation Application tool ("HPA tool") was place into production.  This tool was used in the loan modification underwriting process in the Wells Owned, Bank and Private, VA, FNMA, and FHLMC portfolios, including in the FNMA and FHLMC no application modification programs.  Among other underwriting processes, the HPA tool was designed to use a state fee matrix to ensure attorney's fees for foreclosure costs did not exceed a certain threshold for each state.  The HPA tool should have taken the amount of attorney's fees that had been previously invoiced to the Bank, added it to the amount foreclosure counsel quoted to the Bank, which had not yet been invoiced, and compared that amount to the maximum allowable for that particular state.  This process should have ensured that the amount invoiced and the amount quoted did not exceed the maximum allowable for that particular state.

Between April 13, 2010 and October 20, 2015, the HPA tool contained an error involving the use of the state fee matrix in calculating the allowable attorney's fees for borrowers who were in active foreclosure.  This calculation error caused the amount previously invoiced and the amount quoted by foreclosure counsel to be added to the amount contained in the state fee matrix.

**Process to identify impacted population**
- SDA pulled population of customers/decisions evaluated for a loan modification using the Home Preservation Application (HPA) tool between 4/13/2010 and 11/1/2015 (extended through February 2016 in the case of appeals).
- A working team was created to identify customers/decisions that were not impacted by the state fee matrix. The project team was a partnership between SDA, Lending Officers from Default Decisioning Escalations and Remediations and Customer Excellence Data & Analytics (CEDA).
- The working team initiated weekly credible challenge meetings to review all criteria with Audit, Legal, RECOR and operations.
- Additionally, the working team would share results of the customer/decisions that were not impacted by the state fee with the larger project team on a weekly basis.
- The Decisioning Escaltions and Remediations team conducted a credible challenge peer review with other Lending Officers to secure their agreement that the not impacted criteria used was correct and accurate.
- Finally, there was a manual review conducted for any loans/decisions that the working team could not prove were not impacted by the state fee using data.

**Implemented Foreclosure Postponement Review Process**

Request Document

- Once this issue was identified, the working team developed and initiated a process to review loans at risk of foreclosure.
- The process consisted of a daily report to identify upcoming foreclosure sales on the possibly impacted population.
- Foreclosure holds were placed on any loans where the customer may have been denied a loan modification improperly.

**Process to identify loans that were not impacted by the state fee matrix**

The project team's goal was to identify decisions, using data, that were not impacted by the state fee matrix.  In order to accomplish that task, we followed the process illustrated below where we attempted to identify all loans/decisions that were not impacted by the state fee matrix.  Throughout the process, the project team had 1) weekly credible challenge meetings (RECOR, Audit, Legal included); 2) working sessions with the business to define new criteria; and 3) Q&A sessions with DVT.  After all the data options were considered, there were still loans/decisions that needed to be manually reviewed to determine if there was impact.



**CEDA Objectives**
**Primary Objective**
- Identify all loans/decisions (customers) that could have been denied a loan modification (i.e. impacted) based on the HPA tool using the State Fee Matrix amount.

| Waterfall Methodology Description: | Waterfall to identify customers that were not impacted by the state fee matrix |
|---|---|
| | [ HYPERLINK "file:///\\\\wfsiadmnsf21\\c_mtgbcd_groups\\DDET\\6214%20Audit%20Docs\\Detail%20of%20each%20not%20impacted%20criteria%20(aka%20one-pagers)" ] to more detail on each determination of not impacted criteria |
| | 1. **Recoverable Fees < the State Fee Matrix amount, HUP/PUP Deferral, Decisioned after 10/21/15**<br> ▪ Pt 1. – Compare the sum of the Capitalized Resolution Recoverable Fee amount(s) and the Pending Attorney Fees to the State Fee Matrix amount.  Any decisions where the sum of this amount is less than the state fee can be removed from the potentially impacted population.<br> ▪ Pt 2. -Any decisions where the product reviewed for was "HUP", "PUP" or "Deferral".  The State Fee Matrix is not used in the decisioning of this product.<br> ▪ Pt 3. –Any non appealed decisions that were decisioned after 10/21/15. |

CONFIDENTIAL

WF_HERNANDEZ_00011933

Request Document

2. **HPA Did Not Run Waterfall -** Identify decisions where the post modification term is NULL. This indicates the waterfall did not run because the decision is either a pre-modification decline or hard eligibility decline and would not have been impacted by the state fee.

3. **Repayment Plan -** Any decisions where the product reviewed for was "Repayment Plan". The State Fee Matrix was not used in the decisioning of this product.

4. **VA Product Type –** Any decisions where the product reviewed for was a VA product. The State Fee Matrix was not used in the decisioning of these products.

5. **Pre-Waterfall Hard Stop**
   ▪ Pt 1. - Any denial reason (see Status of Examples doc below) that had a pre-waterfall hard stop were confirmed as no impact.
   ▪ Pt 2. - A denial reason of 'FailureRecourseOptions' and a Decision Day less than 11/29/2012.

6. **Subsequent Modification Approval -** Any loan that had a modification approval for a retention solution on or after the day the denial decision was committed is not considered to be impacted. This follows precedent established in prior remediation efforts.

7. **Loans with a Subsequent Long Term Modification -** Any loan that had a retention modification completion after the day the denial decision was committed is not considered to be impacted. This follows precedent established in prior remediation efforts.

8. **HTI Product Specific Exclusions**
   ▪ For <u>HAMP Tier 1</u> products; any decisions where the calculated HTI is > .3199 were not impacted by the state fee.
   ▪ For <u>HAMP Tier 2</u> products; any decisions where the calculated HTI is > .42 and the property is the borrowers primary residence were not impacted by the state fee.
   ▪ For the <u>Non-HAMP B&P</u> product; any decisions where the calculated HTI is > .3899 were not impacted by the state fee.

9. **HAMP Tier 1&2 HTI Calc + Denial Reason -** HAMP Tier 1 and 2 products with a re-calculated HTI value minus the attorney fees paired with select denial reasons
   ▪ For <u>HAMP Tier 1</u> products; any decisions where the amount of forbearance allowed is less than the post modification forbearance amount and the calculated excessive forbearance HTI is greater than .3199 and has the denial reasons of "Affordability Not Reached", "Cannot Afford Modified Payment", "Excessive Forbearance", or "Affordability not Reached - Cannot reach 31% DTI" were not impacted by the state fee.
   ▪ HAMP Tier 2:
      a. Any decisions where the amount of forbearance allowed is less than the post modification forbearance amount, the property is the borrowers primary residence,  the calculated excessive forbearance HTI is greater than .42 , has an pre-modification LTV greater than 115 and  has denial reasons of "Insuff Mo Pmt Reduction", "No Min 10% PI Pmt Red. Curr-T2" or, "No Min 10% PI Pmt Red. T1-T2"  can be removed from the potentially impacted population.
      b. Any decisions where the property is the borrowers primary residence,  the calculated HTI is greater than .42 , has an pre-modification LTV less than or equal to 115 and  has denial reasons of "Insuff Mo Pmt Reduction", "No Min 10% PI Pmt Red. Curr-T2" or, "No Min 10% PI Pmt Red. T1-T2" can be removed from the potentially impacted population.
      c. Any decisions where the amount of forbearance allowed is less than the post modification forbearance amount, the property is the borrowers primary residence,  the calculated excessive forbearance HTI is less than or equal to .42 , has an pre-modification LTV greater than 115, the payment reduction is less than 10%, and  has denial reasons of "Insuff Mo Pmt Reduction", "No Min 10% PI Pmt Red. Curr-T2" or, "No Min 10% PI Pmt Red. T1-T2" can be removed from the potentially impacted population.
      d. Any decisions where the property is the borrowers primary residence,  the calculated HTI is less than or equal to .42 , has an pre-modification LTV less  than or equal to 115, the payment reduction is less than 10%, and  has denial reasons of "Insuff Mo Pmt Reduction", "No Min 10% PI Pmt Red. Curr-T2" or, "No

Request Document

Min 10% PI Pmt Red. T1-T2" can be removed from the potentially impacted population.

10. **HAMP Tier 1 with exhausted Forbearance** - For the HAMP Tier 1 products; decisions that have an LTV Post Modification = 100%, denial reason(s) of "Affordability Not Reached", or "Affordability Not Reached – Cannot reach 31% DTI" AND there is a positive forbearance amount were not impacted by the state fee.

11. **HAMP Decision Affordable Pre-Modification**
    ▪ For <u>HAMP Tier 1</u> products; any decisions where the pre-modification HTI is greater than **0** and less than **31** were not impacted by the state fee matrix.
    ▪ For <u>HAMP Tier 2</u> products; any decisions where the pre-modification HTI is greater than **0** and less than **25** were not impacted by the state fee matrix.

12. **B&P Cap to Reinstate + Pre Mod HTI > 39%** - For the B&P Cap to Reinstate product; any denial decisions where the pre-modification HTI was > .39 were not impacted by the state fee.

13. **B&P Cap to Reinstate, Already Affordable** - All B&P Cap to Reinstate Product; and denial decisions where the Post Mod HTI is between 0 and 31 indicating that loan was affordable and State Fee matrix had no impact.

14. **Non-HAMP B&P Product** - For Non HAMP B&P products; decisions that have an LTV Post Modification = 100%, and denial reason(s) of "Affordability Not Reached", "Cannot Afford Modified Payment" or "NonHamp Private Investor Affordability Not Reached" AND there is a positive forbearance amount that is greater or equal to the state fee were not impacted by the calculation.

15. **HAMP Tier 2 – STD** - For HAMP Tier 2-STD products; decisions that have an LTV Post Mod = 115%, and the denial reason of "Post-Mod HTI Above 42%", AND there is a positive forbearance amount that is greater or equal to the state fee were not impacted by the calculation.

16. **HAMP Tier 2 – PRA** - For HAMP Tier 2-PRA; decisions that have an LTV Post Mod = 115%, and the denial reason of "Post-Mod HTI Above 42%", AND a positive PRA amount that is greater or equal to the state fee were not impacted by the calculation.

17. **HAMP Tier 2 denied for minimum of 10% payment reduction not reached** - For HAMP Tier 2 products; any decision where the payment reduction is less than 10% and denial reason of 'No Min 10% PI Pmt Red. Curr-T2' was not impacted be the state fee.

18. **HAMP Product with UPB Too High** - For HAMP products; any decisions with a denial reason of "UPB Too High" were not impacted by the state fee.

19. **Denial Reason Outside Delinquency Limits** - For products in FHLMC Streamlined Mod, FNMA Streamlined Mod, & Alt Mod 3.0; decisions where the denial reason(s) of 'Outside Delinquency Limits', 'Outside Delinquency Limits <3 Months', 'Outside Dlq Limits' were not impacted by the state fee.

20. **FHLMC Streamlined Modification** - For products in FHLMC Streamlined Mod, Alt Mod 3.0, FHLMC Mod, & FNMA New Mod; decisions where the denial reason of 'MTMLTV <80%' *(MTMLTV=Mark to Market LTV)* were not impacted by the state fee.

21. **ALT Mod 3.0** - For the Alt Mod 3.0 product; decisions that have an LTV Post Mod = 115%, and the denial reason of "Modified PI greater than Current PI" AND a positive forbearance amount were not impacted by the state fee.

22. **MOD24 + HTI > 31%** - For the MOD24 product; any decisions where the pre-modification HTI is > .31 were not impacted by the state fee.

23. **FHLMC/FNMA + Denial Reason + HTI Calculation** - For FHLMC Mod & FNMA New Mod products ; any decisions where the calculated HTI is not missing and > .55 or < .10, and with a denial reason of "'DTI - out of range%" were not impacted by the state fee.

[ PAGE  \* MERGEFORMAT ]

CONFIDENTIAL

WF_HERNANDEZ_00011935

Request Document

24. **FHLMC/FNMA Streamline + Denial Reason** - For FHLMC Streamlined Mod & FNMA Streamlined Mod products; any decisions without a denial reason of Modified P&I > Current P&I or Modified P&I > Cap & Extend P&I were not impacted by the state fee.

25. **Modified PI greater than or exceeding Current PI** - Decisions where the property is the borrowers primary residence, their calculated re-amortized mortgage payment (after removing state fees) is greater than their P&I pre-modification, where the P&I pre-modification amount is greater than 0, and where denial reason is either 'Modified PI greater than Current PI' or 'Modified P&I exceeds current' were not impacted by the state fee.

26. **Non-HAMP B&P Affordability not reached** - For the Non-HAMP B&P product; any decisions with a pre-modification % greater than 0 and less than 25% and denial reasons of 'Affordability Not Reached' or 'Affordability not Reached - Cannot reach 31% DTI' were not impacted by the state fee.

27. **GSE loans denied for minimum of 10% payment reduction not reached** - For the FNMA New Mod & FHLMC Mod products; any decision where the payment reduction is less than 10% and denial reason of 'Required 10% Payment Reduction Not Met' were not impacted by the state fee.

28. **Escrow greater than total HH income / HTI Target Exclusion**
    - For HAMP Tier 1 products; any decisions where the total household income is greater than 0 and the sum of the escrow, escrow shortage, and association dues divided by the total household gross income greater than .3199 were not impacted by the state fee.
    - For HAMP Tier 2 products; any decisions where the total household income is greater than 0 and the sum of the escrow, escrow shortage, and association dues divided by the total household gross income greater than .42 and the property is the borrowers primary residence were not impacted by the state fee.
    - For all other products; any decisions where the total household income is greater than 0 and the sum of the escrow, escrow shortage, and association dues is greater than the total household were not impacted by the state fee.

29. **Non-HAMP B&P < 6% Payment Reduction not met** - For the Non-HAMP B&P product: any decision where the PITIAS pre-modification amount is greater than 0, the PITIAS reduction is less than 6%, and denial reasons of 'Requires BU approval for less than 6%' or 'BU Denied for less than 6%'were not impacted by the state fee.

30. **Denial Reason Text Field** - Any denial text (internal messages within denial letters) that had a value of 'Previous Modification' or 'Exceeded Mod Limits - BORR' are not impacted by the state fee.

| | |
|---|---|
| **Goals:** | Identify customers that were impacted so they can be remediated. |
| **Use / Tactics:** | This sizing effort will identify all customers affected by this issue to include in remediation efforts. |
| **Benefits (cost savings, enhance revenue, higher productivity, improved compliance, better decision making, etc.):** | Expanding the scope of the identification efforts will ensure that all affected customers are identified and are remediated if applicable. Will result in increased customer satisfaction through reduced complaints and phone calls. |

Request Document

## Requirements

| | |
|---|---|
| **In Scope:** | • HPA Tool was the only decision tool which leveraged the state fee matrix and therefore is the only decisioning tool which is in scope.<br>• Dates of 4/13/2010 – 10/20/2015 (time period the State Fee Matrix was used by the HPA tool). In the case of appeals, extended the time period through February 2016.<br>• All committed decisions from the HPA tool prior to 11/1/2015 and the final decision in the occurrence of the committed review was a denial.<br>• This effort was based on a decision level review (not at loan level). Therefore, each loan could have one or more decisions. |
| **Out of Scope:** | • All other decisioning tools based on reviews of coding and requirements documents.<br>• Validating the accuracy of the HPA Tool functionality. |
| **Assumptions:** | • Estimated attorney fees were added to the modification decision within the tool logic, **not actually charged to the customer's account**. No Fees were inappropriately charged to customers and therefore are not a consideration for this review. |
| **Due Date:** | June 2018 |
| **Frequency:** | One Time Analysis |
| **Contacts:** | **Recipients:** |

| Name | Role | Phone | Email |
|---|---|---|---|
| Bell, Carmen | Sr Leader | | Carmen.Bell@wellsfargo.com |
| Ossian, Brandy | Finance | | brandy.ossian@wellsfargo.com |
| Brain Spensley | LoB Approver | | Brian.A.Spensley@wellsfargo.com |
| Coffin, Christie | LOB Operational Risk | | christie.coffin@wellsfargo.com |
| Beena Menon | LoB Manager | | beena.menon@wellsfargo.com |
| Kohls, Bob | Legal | | bobkohls@wellsfargo.com |
| Katherine Bothwell | RECOR | | Katherine.m.bothwell@wellsfargo.com |
| Rodriguez, Ruby | CIT Analyst | | ruby.rodriguez@wellsfargo.com |
| Johnson, Tonya | Paralegal | | tonya.johnson2@wellsfargo.com |
| Gutierrez, Cathy | Incident Owner | | cathy.gutierrez@wellsfargo.com |
| Kimberly Smith | LOB Operational Risk | | Kim.Smith2@wellsfargo.com |
| Reimers, Kara | Lending Officer | | karareimers@wellsfargo.com |
| Liggett, Jeff | Lending Officer | | jeff.g.liggett@wellsfargo.com |
| Thompson, Jill | Lending Officer | | jillthompson@wellsfargo.com |
| Nichols, Nicole | Lending Officer | | nicole.l.nichols@wellsfargo.com |

**CEDA Project Team:**

| Name | Role | Phone | Email |
|---|---|---|---|
| Pemble, Heather | Analytic Manager | | Heather.pemble@wellsfargo.com |
| Hutzell, Travis | Analytic Consultant | | Travis.hutzell@wellsfargo.com |
| Alvarez, Adam | Analytic Consultant | | Adam.alvarez@wellsfargo.com |
| Agocs, Mike | Analytic Manager | | Mike.l.agocs@wellsfargo.com |

| | |
|---|---|
| **Output Format:** | Various Documents provided in share folder |
| **Contain Secured Data:** | |
| **Communication Plan:** | Present findings to business partners |

Customer Excellence Data & Analytics

[ PAGE  \* MERGEFORMAT ]

WF_HERNANDEZ_00011937

Request Document

## Business Requirements

**Date:** The date the requirement is entered into this Request Document
**Requirement Type:** The category to which the requirement belongs (Data, Inclusion, Exclusion, Calculation, Metric, Process, Training, Documentation, or Compliance)
**Requirement Description:** A complete description of the requirement
**Rationale:** Why this requirement is necessary

[ HYPERLINK "file:///\\\\\wfsiadmnsf21\\c_mtgbcd_groups\\DDET" ] that contains:

- BRD
- Code for Waterfall Criteria
- One page summaries of each waterfall criteria (including examples/screen shots)
- Calculations used
- Testing Documentation
- Data Mapping
- Top of Waterfall (Initial Data Pull)
- State Fee Matrix amounts

## Legal Documents & Attachments

Include legal settlement, regulatory letters, remediation (C2C) documentation and/or other official documents. Include supporting materials for the requirements, such as screen prints, mock-ups, or prototypes.  Note: meeting notes will be stored in the OneNote file.

| Mock Up: | |
|---|---|
| Legal or Contractual: | |

CONFIDENTIAL

WF_HERNANDEZ_00011938