# **EXHIBIT 39**

| | |
|---|---|
| Message | |
| From: | Liggett, Jeff G [/O=WELLS FARGO & CO./OU=WFB1/CN=RECIPIENTS/CN=JGLIGGE] |
| Sent: | 3/12/2018 3:02:38 PM |
| To: | Customer Impact - Mtg Servicing [customerimpact@wellsfargo.com] |
| CC: | Thompson, Jill L [jillthompson@wellsfargo.com]; Reimers, Kara E [karareimers@wellsfargo.com]; Nichols, Nicole L. [nicole.l.nichols@wellsfargo.com]; Archer, Kari L. [kari.l.archer@wellsfargo.com]; Spensley, Brian A [brian.a.spensley@wellsfargo.com] |
| Subject: | RE: New Incident Submitted: 6214 - Default Decisioning - Underwriting |

Please let me know if you have any questions

---

**From:** Customer Impact - Mtg Servicing
**Sent:** Friday, March 09, 2018 2:36 PM
**To:** Spensley, Brian A; Thompson, Jill L
**Cc:** Nichols, Nicole L.; Customer Impact - Mtg Servicing
**Subject:** FW: New Incident Submitted: 6214 - Default Decisioning - Underwriting

**Thank you for reporting a customer impact!**

**Please respond to the below questions by replying to this email as soon as possible.**

1. Is there an impacted loan population available? If yes, please provide the impacted loan list to the **Customer Impact mailbox.**

No


2. Will the submitter of the issue be available to present the incident on the Customer Impact Issue Review meeting scheduled on [Tuesday, March 13th] from 1:00 pm – 2:30 pm CT? Please advise if someone other than the submitter will present the incident on the call.

Jeff Liggett


3. Could the issue impact Credit Bureau reporting?

Yes


4. What is the time frame that the issue occurred?

4/13/2010 – 10/31/2015


5. What is the description of the process breakdown?

The Home Preservation Application (HPA) tool was placed into production April 13, 2010 with logic to utilize a State Fee Matrix that provided maximum allowable foreclosure attorney fees and costs. The HPA tool was automated to pull in attorney fees that were paid at the time of the decision from MSP screen (DDCH) and added them to the maximum allowable from a state matrix. This practice potentially over stated the dollar amount for recoverable fees that were incurred at the time of the decision, which could have created an HTI impact making the payment unaffordable and potentially declining for either affordability and/or NPV.

CONFIDENTIAL

EXHIBIT NO. 412
ANDREA M. IGNACIO
RPR, CRR, CCRR, CSR # 9830

WF_HERNANDEZ_00013113

6. What system(s) are involved in the issue?

HPA, MSP

7. What screen(s) in the above system(s) are involved?

HPA - Cap/Waive
MSP - DDCH

8. How should this have been detected prior to discovering this issue?

This issue is around tool logic

9. What is the proposed solution at this time?

The fee matrix usage was eliminated from the HPA tool on 10/20/2015.

10. Have any corrective actions already been taken?

The fee matrix usage was eliminated from the HPA tool on 10/20/2015.

11. What date were any corrective actions taken?

10/20/2015

12. Who is the Analytical SME for this issue?

Adam Alvarez

13. Who is the Process SME for this issue?

To Be Determined

**If any of these questions are unable to be answered at this time, please attempt to gather this information prior to the Project Kickoff Call.**

**If this incident is related to a written or electronic communication (i.e. letter, email, statement, text, etc.), please also respond to the below questions:**
1. What is the communication ID(s), if applicable?

2. How is the communication generated and/or printed? By a vendor (i.e. EUS, TransCentra, LSI, RR Donnelly, etc.) or manually (printed and mailed by a Wells Fargo Team Member)?

   a. If printed by a vendor please name the vendor.

3. Is the communication triggered by or through an automation system (i.e. SLoaD, HPS, ER, etc.)?

   a. If Yes, please indicate which system(s).

4. Will the communication be re-sent to the customer?

Note: All required templates for this process are located in the Customer Impact Issue Templates section of the CIT website.

Note: Please review the Customer Impact Issue Review Meeting Job Aid for information related to presenting an incident on the Customer Impact Issue Review meeting.

Thank you!
The Customer Impact Team

From: CustomerImpact@wellsfargo.com [mailto:CustomerImpact@wellsfargo.com]
Sent: Friday, March 09, 2018 1:51 PM
To: Customer Impact - Mtg Servicing <CustomerImpact@wellsfargo.com>
Subject: New Incident Submitted: 6214 - Default Decisioning - Underwriting

A new incident has been submitted. The Customer Impact Incident Tracking Number is: 6214
----------------- Discovery Information -----------------
Discovery Date: 03/07/2018
Discovered By: Spensley, Brian Email: Brian.A.Spensley@wellsfargo.com
How Was the Incident Discovered: When reviewing CIT 5920 in the settlement area related to attorney fees, we identified an opportunity to review for additional impacts, which included looking at loans that were potentially denied due to our process at the time for how attorney fees were calculated in the decision tool (?HPA tool?). A review of loan-level transactions revealed potential concerns.
----------------- Contact Information -----------------

**Owning Department:** Default Decisioning - Underwriting
**Primary Contact:** Thompson, Jill   **Phone:** Not Provided   **Email:** jillthompson@wellsfargo.com

---------------- **Customer Impact** -----------------

**Customer Impact Criteria:** Conflicts with Compliance Requirements
**Customer Impact Criteria:** Conflicts with Corporate Policy
**Customer Impact Criteria:** Impacts Multiple Customers (2 or more)
**Customer Impact Criteria:** Results in Inquiries from the Media or Has Potential for Negative Media Attention
**Estimated # of Impacted Loans:** Unknown
**Incident Description:** When reviewing CIT 5920 in the Settlement area related to attorney fees, we identified an opportunity to review for additional impacts, which included looking at loans that were potentially denied due to our process at the time for how attorney fees were calculated in the decision tool. The Home Preservation Application (HPA) tool was placed into production April 13, 2010 with logic to utilize a State Fee Matrix that provided maximum allowable foreclosure attorney fees and costs. The HPA tool was automated to pull in attorney fees that were paid at the time of the decision from MSP screen (DDCH) and added them to the maximum allowable from a state matrix. This practice potentially over stated the dollar amount for recoverable fees that were incurred at the time of the decision, which could have created an HTI impact making the payment unaffordable and potentially declining for either affordability and/or NPV. The fee matrix usage was eliminated from the HPA tool on 10/20/2015.
**How is the Customer Impacted?** Customers may have been inappropriately denied for Home Preservation home retention products.

---------------- **Root Cause Impact** -----------------

**Initial Root Cause:** Technology Change Management
**Is There a Potential for Negative Customer Impact Such as Negative Credit Bureau Reporting, Financial Reimbursement, Require Re-disclosure, etc.?** Yes
**Negative Impact Type:** Adverse Denials
**Negative Impact Explanation:** Customers may have been inappropriately denied for Home Preservation home retention products and for HAMP decisions, this may have included loss of related incentives.

---------------- **Compliance Impact** -----------------

**Is this Incident the Result of a Compliance Requirement?** Yes
**Compliance Explanation:** Other

---------------- **Foreclosure Impact** -----------------

**Could an improper foreclosure occur as a result of this issue and/or will any assistance be needed from the Foreclosure Team to hold or monitor these loans?** Yes
**Explanation:** Customers may have been inappropriately denied for Home Preservation home retention products.

**Could this issue contribute to the delinquency of the impacted customers?** Yes
**Explanation:** Not Provided
**Options:**
We may have improperly denied a borrower who applied for a modification.

**Could this issue impact our ability to foreclose?** Yes
**Explanation:** Not Provided
**Options:**
We may have potentially impacted our ability to execute an affidavit confirming compliance.

**Could this issue hinder foreclosure reinstatement?** No
**Explanation:** Fees were overestimated with the home retention product review, but were not overcharged.

**Could the correction or remediation of this issue result in any of the following?** Yes
**Explanation:** Remediation efforts may include rerunning the home retention decisions for impacted loans to offer the appropriate product.
**Options:**
Other way the correction or Remediation of this issue could impact us (explanation required; "TBD" is not a valid response).

---------------- **Legal Impact/Information** ----------------

**Redacted-ACP**

---------------- **RECOR Information** ----------------

**RECOR Notified?** Yes
**RECOR Contact:** Dietz, Brian      **Email:** Brian.P.Dietz@wellsfargo.com
**Notification Date:** 03/07/2018

The Customer Impact Team will contact you regarding this submission.
This is a system generated email. Please do not reply.

Please contact CustomerImpact@wellsfargo.com with questions.

Thank you.