# EXHIBIT 42

# In the Matter Of:

## HERNANDEZ vs WELLS FARGO

18-cv-07354-WHA

# DEBORA M. GRANJA

*June 06, 2019*

*VOLUME I*



800.211.DEPO (3376)
EsquireSolutions.com

| | | |
|---|---|---|
| 1 | damage at that time caused by Wells Fargo? | 01:49:29 |
| 2 | A    Not that I can recall at this moment. | 01:49:39 |
| 3 | Q    Okay.  I'd like to talk about the period | 01:49:41 |
| 4 | of time after the foreclosure.  Can you tell me what | 01:49:43 |
| 5 | harm you faced during that time? | 01:49:47 |
| 6 | A    After the foreclosure of what date | 01:49:51 |
| 7 | specifically? | 01:49:54 |
| 8 | Q    I think you said the foreclosure was in | 01:49:54 |
| 9 | 2012? | 01:49:57 |
| 10 | A    That was my understanding at the time -- | 01:49:58 |
| 11 | Q    Okay. | 01:50:00 |
| 12 | A    -- 2012. | 01:50:00 |
| 13 | Q    Okay. | 01:50:02 |
| 14 | A    And, I'm sorry, could you please rephrase | 01:50:03 |
| 15 | the question. | 01:50:04 |
| 16 | Q    So, I'm just trying to get a sense of the | 01:50:05 |
| 17 | damages that you feel, you know, you were facing | 01:50:07 |
| 18 | during certain periods of time. | 01:50:10 |
| 19 | A    Mm-hm. | 01:50:12 |
| 20 | Q    And so I'm trying to compare damages from | 01:50:14 |
| 21 | before the foreclosure with after the foreclosure, | 01:50:17 |
| 22 | and I'd like it if you could walk me through, after | 01:50:19 |
| 23 | the foreclosure, what types of harm you were facing. | 01:50:24 |
| 24 | ==So, I guess, my question is, Could you== | 01:50:28 |
| 25 | ==talk about the harm you were facing following the== | 01:50:31 |



| | | |
|---|---|---|
| 1 | foreclosure of your property? | 01:50:34 |
| 2 | A    The one that was the most significant was | 01:50:38 |
| 3 | losing my home. | 01:50:40 |
| 4 | Q    Yes. | 01:50:42 |
| 5 | A    I've already talked about that. | 01:50:43 |
| 6 | Q    Okay. | 01:50:45 |
| 7 | A    Would you like me to go into that again? | 01:50:45 |
| 8 | Q    What I'd like to know is where you ended | 01:50:48 |
| 9 | up moving -- | 01:50:51 |
| 10 | A    Okay. | 01:50:52 |
| 11 | Q    -- after. | 01:50:52 |
| 12 | A    Well, in addition to losing our home is | 01:50:57 |
| 13 | the impact that it had on my daughters and on me | 01:50:59 |
| 14 | emotionally.  I lost my home, and, therefore, I lost | 01:51:02 |
| 15 | financial aid, affected me because I lost my tax | 01:51:07 |
| 16 | write-off from my home.  It affectedly my credit | 01:51:12 |
| 17 | store, which had been stellar prior to that time.  I | 01:51:16 |
| 18 | had to pay for moving and storage costs.  I ended up | 01:51:19 |
| 19 | moving to Alameda, California, following Brentwood, | 01:51:25 |
| 20 | when I left Brentwood.  That was the question you | 01:51:29 |
| 21 | had. | 01:51:33 |
| 22 | Q    Okay.  Can you tell me about -- you | 01:51:33 |
| 23 | mentioned the impact emotionally on your daughters. | 01:51:39 |
| 24 | Can you expand upon that? | 01:51:43 |
| 25 | A    Yes. | 01:51:47 |



```
 1  that.                                                          05:17:27
 2       Q    Okay.  Skip forward and go through, like,            05:17:36
 3  a series of questions quickly, and then we'll take a           05:17:44
 4  break, probably our last break, if that's okay.                05:17:47
 5  Push on.  All right.                                           05:17:51
 6            I think you mentioned earlier that you               05:17:53
 7  know this case is a class action; is that correct?             05:17:55
 8       A    Correct.                                             05:17:57
 9       Q    What does that mean to you?                          05:17:59
10       A    It means that I am not the only one that             05:18:06
11  was damaged as a result of Wells Fargo's actions.              05:18:08
12       Q    Okay.  Have you ever been a class                    05:18:14
13  representative for a class action before?                      05:18:17
14       A    No.                                                  05:18:19
15       Q    How would you describe your duties as a              05:18:21
16  class representative?                                          05:18:23
17       A    I am to maintain contact with my attorneys           05:18:27
18  in the matter.  I am to produce all documents in               05:18:35
19  evidence that I'm able to in this matter.  I am to             05:18:41
20  proceed with the best interest of all of the parties           05:18:49
21  involved, with their interest above and beyond my              05:18:51
22  individual interest.                                           05:18:58
23       Q    Okay.  Is that, generally speaking, what             05:18:59
24  you understand your duties to be?                              05:19:02
25       A    That's generally speaking.                           05:19:04
```



| | | |
|---|---|---|
| 1 | Q    Okay.  How do those differ -- or those | 05:19:05 |
| 2 | duties differ from those of an individual plaintiff | 05:19:10 |
| 3 | in a nonclass action? | 05:19:12 |
| 4 | A    If it were only me? | 05:19:15 |
| 5 | Q    Yes. | 05:19:16 |
| 6 | A    I would be the only individual being | 05:19:21 |
| 7 | represented by my attorneys.  It would be my -- my | 05:19:23 |
| 8 | interest only that would come before anybody else's. | 05:19:28 |
| 9 | Q    Okay.  Do you know the classes of | 05:19:36 |
| 10 | individuals that you represent in this action? | 05:19:38 |
| 11 | A    I don't know what that means. | 05:19:41 |
| 12 | Q    Do you know -- strike that. | 05:19:45 |
| 13 | Do you know what duties you have to the | 05:19:52 |
| 14 | other class members? | 05:20:01 |
| 15 | A    To represent them as well as myself. | 05:20:04 |
| 16 | Q    Do you know what your compensation will be | 05:20:10 |
| 17 | at the end of the day, if this is successful? | 05:20:13 |
| 18 | A    I have no idea. | 05:20:15 |
| 19 | Q    I think you said this earlier, but you | 05:20:22 |
| 20 | first approached Gibbs to represent you, correct? | 05:20:23 |
| 21 | A    Correct. | 05:20:28 |
| 22 | Q    Okay.  And I think you first learned of | 05:20:31 |
| 23 | them through the letter, correct? | 05:20:35 |
| 24 | A    Through the letter from Wells Fargo? | 05:20:38 |
| 25 | Q    Yes. | 05:20:40 |



```
 1      A    Yes.                                               05:20:40
 2      Q    What do you hope to get out of this                05:20:47
 3 lawsuit?                                                     05:20:49
 4      A    Justice.                                           05:20:53
 5      Q    Anything else?                                     05:20:57
 6      A    Compensation for myself and for everyone           05:20:59
 7 else that was injured as result of Wells Fargo's             05:21:01
 8 actions.                                                     05:21:05
 9      Q    I think you mentioned this earlier, but            05:21:08
10 what has been your role in preparing for this case?          05:21:10
11      A    What has been my role?                             05:21:15
12      Q    What actions have you taken in preparing           05:21:17
13 for this case?                                               05:21:19
14      A    Oh.  I've maintained contact with my               05:21:21
15 attorneys.  I've reviewed any documents that were            05:21:27
16 provided to me by my attorneys.  I've assisted in            05:21:31
17 the preparation of any responses.  I've done                 05:21:36
18 everything that I could to locate any documentation          05:21:44
19 or evidence regarding this case.                             05:21:48
20      Q    Okay.  Approximately how many times have           05:21:54
21 you met with your attorneys in person related to             05:21:56
22 this case?                                                   05:21:59
23      A    Twice.                                             05:22:00
24      Q    Okay.  For how long?                               05:22:01
25      A    Yesterday approximately two hours.  This           05:22:04
```



| | | |
|---|---|---|
| 1 | morning, I think I estimated four hours.  Maybe it | 05:22:09 |
| 2 | was -- yeah, four hours. | 05:22:13 |
| 3 | Q    Okay.  And approximately how many times | 05:22:15 |
| 4 | have you spoken with them over the phone? | 05:22:16 |
| 5 | A    Oh, I -- I have no idea. | 05:22:18 |
| 6 | Q    Less than five. | 05:22:23 |
| 7 | A    Probably more than five. | 05:22:25 |
| 8 | Q    Approximately how much time would you say | 05:22:28 |
| 9 | you've spent talking with your attorneys about the | 05:22:31 |
| 10 | case, over the phone? | 05:22:33 |
| 11 | A    I can't estimate that.  I -- I'm not sure. | 05:22:37 |
| 12 | Q    Would you say it's been over five hours? | 05:22:41 |
| 13 | A    Yes. | 05:22:44 |
| 14 | Q    Okay.  Have you written any, like, letters | 05:22:46 |
| 15 | or e-mails to your attorneys about the case? | 05:22:51 |
| 16 | A    Yes. | 05:22:54 |
| 17 | Q    Approximately how many? | 05:22:54 |
| 18 | A    Ooh.  I'm going to roughly conservatively | 05:23:04 |
| 19 | estimate maybe 20-plus. | 05:23:08 |
| 20 | Q    Approximately how much time do you think | 05:23:15 |
| 21 | you've spent, like, writing those e-mails or | 05:23:17 |
| 22 | back-and-forth correspondence? | 05:23:19 |
| 23 | A    In just the e-mails, not the phone calls. | 05:23:28 |
| 24 | Q    Correct. | 05:23:31 |
| 25 | A    Does that include prep time for the | 05:23:31 |



```
 1   e-mails?                                                  05:23:33
 2         Q    Sure.  Yes.                                    05:23:33
 3         A    Oh.  I'm estimating easily more than 40        05:23:35
 4   hours.                                                    05:23:52
 5         Q    Okay.  Who are the other named plaintiffs      05:23:53
 6   in the case, do you know?                                 05:24:01
 7         A    I don't know.                                  05:24:02
 8         Q    Okay.  Have you ever met or spoken with        05:24:03
 9   any of them?                                              05:24:05
10         A    No.                                            05:24:06
11         Q    So just adding up what you've told me          05:24:13
12   about only the contact you've had with your               05:24:16
13   attorneys, it seems like you had about six hours of       05:24:18
14   meetings in person, over five hours -- or five hours      05:24:19
15   meeting via the phone, so that would be 11, plus          05:24:23
16   more than 40 hours with e-mails.  So a total of           05:24:28
17   about 50 -- over 50 hours that you've dedicated just      05:24:31
18   alone to speaking with your attorneys in the case.        05:24:35
19   Does that sound right?                                    05:24:38
20         A    I'd say that's minimally that.                 05:24:40
21         Q    Okay.  How much time do you anticipate         05:24:42
22   spending on the case in the next year?                    05:24:44
23         A    As much as needed.                             05:24:47
24         Q    Okay.  Who makes the decisions regarding       05:24:48
25   the case against Wells Fargo:  you or your                05:24:56
```



```
 1  would be shared with any person or entity that's not        05:35:45
 2  part of the firm?                                           05:35:49
 3       A    No.  And could I qualify all of those             05:35:49
 4  answers as saying, if there was anything that was           05:35:52
 5  agreed upon, I don't remember any of that.                  05:35:55
 6       Q    Okay.  Do you have an engagement letter           05:35:57
 7  from the law firm?                                          05:36:00
 8       A    My guess is yes.                                  05:36:03
 9       Q    Okay.  But you don't recall the details.          05:36:04
10       A    Correct.                                          05:36:06
11       Q    Okay.  Are you related to any -- or -- or         05:36:07
12  friends with any of the attorneys representing you          05:36:18
13  in this suit?                                               05:36:20
14       A    Not that I know of as far as related to           05:36:22
15  and, no, not friends with.                                  05:36:24
16       Q    Okay.  You said before that you provided          05:36:27
17  them with documents related to the allegations in           05:36:34
18  the lawsuit; is that correct?                               05:36:38
19       A    Correct.                                          05:36:39
20       Q    Have they also provided you with documents        05:36:39
21  regarding this lawsuit?                                     05:36:42
22       A    Yes.                                              05:36:43
23       Q    Okay.  Okay.  We are very close to done.          05:36:44
24            What did you do to collect documents for          05:36:53
25  this matter?                                                05:36:55
```



| | | |
|---|---|---|
| 1 | A    Lots. | 05:36:58 |
| 2 | Q    Okay. | 05:36:59 |
| 3 | A    Would you like me to go through the list? | 05:37:00 |
| 4 | Q    I would like you to, yes. | 05:37:02 |
| 5 | A    Okay. | 05:37:03 |
| 6 | Q    Walk me through the steps you took, | 05:37:04 |
| 7 | please. | 05:37:06 |
| 8 | A    Sure. | 05:37:07 |
| 9 |      I did a search, electronic search, of all | 05:37:07 |
| 10 | of my e-mails sent and received.  I did an | 05:37:14 |
| 11 | electronic search of a hard drive that I had -- or | 05:37:19 |
| 12 | have.  I did a search through of all my hard | 05:37:26 |
| 13 | document files. | 05:37:36 |
| 14 | Q    Did you look through your text messages? | 05:37:40 |
| 15 | A    Text messages.  I don't believe that there | 05:37:45 |
| 16 | was texting at the time of this. | 05:37:50 |
| 17 | Q    Okay. | 05:37:52 |
| 18 | A    And I -- oh, God, that's really, like, | 05:37:57 |
| 19 | making me so -- sound so old.  Sorry. | 05:37:57 |
| 20 |      I've had various phones.  I don't believe | 05:38:01 |
| 21 | I would have looked through my text messages to | 05:38:04 |
| 22 | obtain information in this matter. | 05:38:07 |
| 23 | Q    Okay.  So, do you recall using your cell | 05:38:09 |
| 24 | phone to sends messages to friends or family or | 05:38:13 |
| 25 | anyone else about the foreclosure? | 05:38:16 |



```
 1      A    No.                                              05:38:17
 2      Q    Okay.  Are there any documents related to        05:38:18
 3 the case that you have not yet provided to your             05:38:20
 4 attorney?                                                   05:38:23
 5      A    No.  Not that I'm aware of at all.                05:38:23
 6      Q    Okay.  What does Bart Sloan know about the       05:38:25
 7 case?                                                       05:38:31
 8      A    Bart Sloan was a friend and confidant at         05:38:33
 9 the time that I was going through the 2012                 05:38:41
10 bankruptcy/foreclosure and through the period until        05:38:44
11 I left the area.  He was a coworker that I commuted        05:38:50
12 with.                                                       05:39:01
13      Q    Okay.  And what about Susan Knight?              05:39:01
14      A    What does she know about?                        05:39:03
15      Q    The case.                                         05:39:06
16      A    The case.                                         05:39:07
17      Q    Well, does she know about the issues             05:39:08
18 underlying the case?                                        05:39:11
19      A    She would be aware of the difficulties I        05:39:12
20 was having, at the time, in getting a modification,        05:39:16
21 and that I went through a bankruptcy and foreclosure       05:39:20
22 as a result.                                                05:39:26
23      Q    Okay.  We're going to take a quick break,       05:39:31
24 and then we'll resume and cover any bases we need to       05:39:35
25 cover to finish up.                                         05:39:38
```



800.211.DEPO (3376)
EsquireSolutions.com

```
 1                    CERTIFICATE OF REPORTER
 2              I, Quyen N. Do, CSR No. 12447, a Certified
 3   Shorthand Reporter, hereby certify that the witness in
 4   the foregoing deposition was, by me, duly sworn to tell
 5   the truth, the whole truth, and nothing but the truth in
 6   the within-entitled cause;
 7              That said deposition was taken down in
 8   shorthand by me, a disinterested person, at the time and
 9   place therein stated, and that the testimony of the said
10   witness was thereafter reduced to typewriting, by
11   computer, under my direction and supervision;
12              That before completion of the deposition,
13   review of the transcript [ ] was [X] was not requested.
14   If requested, any changes made by the deponent (and
15   provided to the reporter) during the period allowed are
16   appended hereto.
17              I further certify that I am not of counsel or
18   attorney for either or any of the parties to the said
19   deposition, nor in any way interested in the event of
20   this cause, and that I am not related to any of the
21   parties thereto.
22
     Dated: _July 5, 2019_
23
            
24   _____
     Quyen N. Do
25   CSR No. 12447
```