Amanda L. Groves (SBN: 187216)
agroves@winston.com
Morgan E. Stewart (SBN: 321611)
mstewart@winston.com
**WINSTON & STRAWN LLP**
101 California Street, 35th Floor
San Francisco, CA 94111-5802
Telephone:    (415) 591-1000
Facsimile:    (415) 591-1400

Kobi K. Brinson (Admitted *pro hac vice*)
kbrinson@winston.com
Stacie C. Knight (Admitted *pro hac vice*)
sknight@winston.com
**WINSTON & STRAWN LLP**
300 South Tryon Street, 16th Floor
Charlotte, NC 28202
Telephone:    (704) 350-7700
Facsimile:    (704) 350-7800

Attorneys for Defendant
WELLS FARGO BANK, N.A.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ALICIA HERNANDEZ, *et al*., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO & COMPANY and WELLS FARGO BANK, N.A.,<br><br>Defendants. | No. 3:18-cv-07354 WHA<br><br>**DEFENDANT WELLS FARGO BANK, N.A.'S OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION**<br><br>Date: January 15, 2020<br>Time: 8:00 a.m.<br>Courtroom: 12<br>Judge: Hon. William H. Alsup |

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ........................................................................................................ 1

II.  FACTUAL BACKGROUND ..................................................................................... 1

III.  ARGUMENT .............................................................................................................. 4

    A.  Plaintiffs Should Have Moved Under Rule 23(c)(4), Not Rule 23(b). ........................ 4

    B.  The Proper Analysis—Under Rule 23(c)(4)—Shows Why Liability-Only Certification on the California Claims Must Be Denied. ............................................... 5

        1.  Substantive Rulings on the California Contract Claims Would Have No Application Beyond California, Leaving the Other 799 Class Members' Claims for Resolution. ........................................... 6

        2.  Resolution of the Other California Claims Will Do Nothing to Resolve the Claims of the 799 Remaining Borrowers. .................................... 8

    C.  Even if California Certification Could Materially Advance the Litigation as a Whole, It Still Should Be Denied. ........................................................................ 10

        1.  Causation, and Thus, Liability, Cannot Be Determined on a Class-Wide Basis. ....................................................................................... 10

        2.  A California Issue Class Is Not Superior. ........................................ 15

    D.  California Liability-Only Certification Should Be Denied for Independent Reasons. ............................................................................................. 17

        1.  Plaintiffs Do Not Have UCL Standing. ........................................... 17

        2.  No California Class is Sufficiently Numerous. ................................. 18

    E.  Liability-Only Certification on the State Statutory Claims Outside California Should Be Denied. ................................................................................ 21

    F.  Plaintiffs Have Not Met Their Burden on the Georgia Wrongful Foreclosure Claim. ................................................................................................ 21

    G.  Plaintiffs Cannot Establish Predominance. .................................................................. 22

    H.  Plaintiffs Have Not Demonstrated Adequacy. ............................................................ 24

IV.  CONCLUSION ......................................................................................................... 25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*ABN AMRO Mortg. Grp. v. Tullar*,
5
  770 N.W.2d 851 (Iowa Ct. App. 2009)..........................................................................8

6
*Adkins v. Facebook, Inc.*,
  No. 3:18-cv-05982-WHA, Dkt. 260 (N.D. Cal. Nov. 26, 2019) ....................................14
7

*Allison v. Citgo Petroleum Corp.*,
8
  151 F.3d 402 (5th Cir. 1998) ..........................................................................................6

9
*Alvarez v. Office Depot, Inc.*,
10
  2019 WL 2710750 (C.D. Cal. June 27, 2019) ........................................................11, 18

11
*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)......................................................................................................16
12

*Backhaut v. Apple, Inc.*,
13
  2015 WL 4776427 (N.D. Cal. Aug. 13, 2015) ......................................................16, 18

14
*Ballard v. Bank of Am., N.A.*,
15
  2013 WL 4807193 (C.D. Cal. Sept. 6, 2013) ..............................................................25

16
*Benner v. Becton Dickinson & Co.*,
  214 F.R.D. 157 (S.D.N.Y. 2003) ...................................................................................5
17

*Betts v. Reliable Collection Agency, Inc.*,
18
  659 F.2d 1000 (9th Cir. 1981) .....................................................................................18

19
*Bock v. Hansen*,
20
  225 Cal. App. 4th 215 (2014) ........................................................................................9

21
*Bowers v. Jefferson Pilot Fin. Ins. Co.*,
  219 F.R.D. 578 (E.D. Mich. 2004) ..............................................................................23
22

*Buckeye Tree Lodge and Sequoia Village Inn, LLC*,
23
  2019 WL 1170489 (N.D. Cal. Mar. 13, 2019)...............................................................4

24
*Burton v. Nationstar Mortg., LLC*,
25
  2014 WL 5035163 (E.D. Cal. Oct. 8, 2014)................................................................23

26
*Carnegie v. Household, Inc.*,
  376 F.3d 656 (7th Cir. 2004) .......................................................................................20
27

*Cicero v. DirecTV*,
28
  2010 WL 2991486 (C.D. Cal. July 27, 2010)................................................................6

*Comcast Corp. v. Behrend*,
  133 S. Ct. 1426 (2013) ...........................................................................................................4

*In re Conseco Life Ins. Co. Lifetrend Ins. Sales and Mktg. Litig.*,
  270 F.R.D. 521 (N.D. Cal. 2010) ........................................................................................23

*Culley v. Lincare Inc.*,
  2017 WL 3284800 (E.D. Cal. Aug. 2, 2017) .................................................................19, 20

*Curtis v. Extra Space Storage, Inc.*,
  2013 WL 6073448 (N.D. Cal. Nov. 18, 2013) ..................................................................4, 22

*D.C. by and through Garter v. Cnty. of San Diego*,
  783 F. App'x 766 (9th Cir. 2019) .........................................................................................15

*Davidson v. Apple, Inc.*,
  2018 WL 2322546 (N.D. Cal. May 8, 2018) ........................................................................21

*Dorado v. Bank of Am., N.A.*,
  2016 WL 3924115 (S.D. Fla. July 21, 2016) ..........................................................................8

*Elias v. Ungar's Food Prods., Inc.*,
  252 F.R.D. 233 (D.N.J. 2008) ..............................................................................................24

*Ellsworth v. U.S. Bank, N.A.*,
  2014 WL 2734953 (N.D. Cal. June 13, 2014) ......................................................................23

*Evans v. IAC/Interactive Corp.*,
  244 F.R.D. 568 (C.D. Cal. 2007) .........................................................................................25

*Ewert v. eBay, Inc.*,
  2010 WL 4269259 (N.D. Cal. Oct. 25, 2010) ......................................................................23

*Foad Consulting Grp., Inc. v. Azzalino*,
  270 F.3d 821 (9th Cir. 2001) .................................................................................................7

*Gaspar v. Linvatec Corp.*,
  167 F.R.D. 51 (N.D. Ill. 1996) .............................................................................................20

*Gelfound v. Metlife Ins. Co. of Conn.*,
  313 F.R.D. 674 (S.D. Fla. 2016) ......................................................................................7, 23

*Gen. Tel. Co. of the Nw. v. EEOC*,
  446 U.S. 318 (1980) ..............................................................................................................19

*Glover v. Udren*,
  2013 WL 6237990 (W.D. Pa. Dec. 3, 2013) ........................................................................24

*Gold v. Lumber Liquidators, Inc.*,
  323 F.R.D. 280 (C.D. Cal. 2017) .........................................................................................24

-iii-

*Gomes v. Portfolio Recovery Assocs., LLC*,
    2019 WL 978806 (S.D. Fla. Feb. 28, 2019) ...................................................................22

*Gonzales v. Comcast Corp.*,
    2012 WL 10621 (E.D. Cal. Jan. 3, 2012) ......................................................................22

*Gustafson v. BAC Home Loans Servicing, LP*,
    294 F.R.D. 529 (C.D. Cal. 2013) ...........................................................................21, 23

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .......................................................................................25

*Hayes v. M&T Mortg. Corp.*,
    906 N.E.2d 638 (Ill. App. 2009) .....................................................................................8

*Howerton v. Harbin Clinic, LLC*,
    333 Ga. App. 191, 776 S.E.2d 288 (2015)......................................................................9

*HSBC Bank USA, Nat'l Tr. Co. v. Teagarden*,
    6 N.E.3d 678 (Ohio Ct. App. 2013).................................................................................8

*Johnson v. PNC Mortg.*,
    2014 WL 6629585 (N.D. Cal. Nov. 21, 2014) ..............................................................11

*Kenu, Inc. v. Belkin Int'l*,
    2018 WL 2445318 (N.D. Cal. May 31, 2018) ...............................................................12

*Kleiner v. First Nat'l Bank of Atlanta*,
    97 F.R.D. 683 (N.D. Ga. 1983)......................................................................................23

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) ...........................................................................................17, 18

*Lane v. Wells Fargo Bank, N.A.*,
    2013 WL 3187410 (N.D. Cal. June 21, 2013)...................................................... *passim*

*Leadership Studies, Inc. v. Blanchard Training and Dev.*,
    2017 WL 6025285 (S.D. Cal. Dec. 1, 2017)....................................................................7

*Lil' Man in the Boat, Inc. v. City & Cty. of San Francisco*,
    2019 WL 125905 (N.D. Cal. Jan. 8, 2019) ......................................................16, 20, 21

*In re Lusk*,
    589 B.R. 678 (Bankr. E.D. Cal. 2018).............................................................................6

*Marshall v. H&R Block Tax Servs., Inc.*,
    270 F.R.D. 400 (S.D. Ill. 2010) .....................................................................................24

*Martin v. Behr Dayton Thermal Prods. LLC*,
    896 F.3d 405 (6th Cir. 2018) ...................................................................................14, 15

-iv-

*Martinez v. Patton*,
    2019 WL 3997484 (N.D. Cal. Aug. 23, 2019) .............................................................11

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) .................................................................................9

*In re Med. Capital Sec. Litig.*,
    2011 WL 5067208 (C.D. Cal. July 26, 2011) ...............................................................23

*Miller v. Wells Fargo Bank, N.A.*,
    2017 WL 698520 (S.D. Fla. Feb. 22, 2017) ...............................................................23

*Moeller v. Taco Bell Corp.*,
    2012 WL 3070863 (N.D. Cal. July 26, 2012) ...............................................................14

*In re Paxil Litig.*,
    212 F.R.D. 539 (C.D. Cal. 2003) ...............................................................................12

*Plastic Surgery Assocs., S.C. v. Cynosure, Inc.*,
    --- F. Supp. 3d ---, 2019 WL 3719404 (D. Mass. Aug. 7, 2019) ...........................5, 16

*Pom Wonderful LLC v. Welch Foods, Inc.*,
    2009 WL 5184422 (C.D. Cal. Dec. 21, 2009) ...............................................................18

*Porcell v. Lincoln Wood Prods., Inc.*,
    713 F. Supp. 2d 1305 (D.N.M. 2010) ...............................................................................23

*Rahman v. Mott's LLP*,
    693 F. App'x 578 (9th Cir. 2017) .................................................................................1, 5, 9

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
    725 F.3d 244 (D.C. Cir. 2013) .................................................................................4

*Randolph v. Crown Asset Mgmt., LLC*,
    254 F.R.D. 513 (N.D. Ill. 2008) .................................................................................24

*Rannis v. Recchia*,
    2010 WL 2124096 (9th Cir. May 27, 2010) ...............................................................19

*Rapp v. Green Tree Servicing, LLC*,
    302 F.R.D. 505 (D. Minn. 2014).................................................................................23

*Riera v. Mecta Co.*,
    2018 WL 2718098 (C.D. Cal. Mar. 19, 2018)...............................................................14

*Sandoval v. M1 Auto Collisions Ctrs.*,
    309 F.R.D. 549 (N.D. Cal. 2015).................................................................................19

*Stoudt v. E.F. Hutton & Co., Inc.*,
    121 F.R.D. 36 (S.D.N.Y. 1988) .................................................................................16

*Suggs v. M & T Bank*,
   230 F. Supp. 3d 458 (E.D. Va.), *aff'd sub nom.*
   *Suggs v. M&T Bank*, 694 F. App'x 180 (4th Cir. 2017) .................................................9

*Sykes v. Mel Harris and Assocs., LLC*,
   285 F.R.D. 279 (S.D.N.Y. 2012) ...........................................................................24

*Tait v. BSH Home Appliance Corp.*,
   289 F.R.D. 466 (C.D. Cal. 2012) ..........................................................................24

*Tasion Commc'ns, Inc. v. Ubiquit Networks, Inc.*,
   308 F.R.D. 630 (N.D. Cal. 2015) ...................................................................*passim*

*Taylor v. Wells Fargo Bank, N.A.*,
   85 F. Supp. 3d 63 (D.D.C. 2015) ...........................................................................9

*In re Toys "R" Us—Delaware, Inc.—FACTA Litig.*,
   2010 WL 5071073 (C.D. Cal. Aug. 17, 2010) ........................................................6

*Tyson, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016) ........................................................................................15

*Valenzuela v. Union Pac. R.R. Co.*,
   2017 WL 1398593 (D. Ariz. Apr. 19, 2017) ...............................................5, 9, 10

*Webb v. Alpha and Omega Servs., Inc.*,
   2017 WL3000014 (C.D. Cal. June 1, 2017) .........................................................19

*Weisberg v. Takeda Pharm. U.S.A., Inc.*,
   2018 WL 4043171 (C.D. Cal. Aug. 21, 2018) ......................................................23

*Wells Fargo Home Mortg., Inc.* v. Neal,
   398 Md. 705 (2007) ..............................................................................................8

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
   594 F.3d 1087 (9th Cir. 2010) .............................................................................22

*Zinser v. Accufix Res. Inst., Inc.*,
   253 F.3d 1180 (9th Cir. 2001) .............................................................16, 17, 23

**Statutes**

Cal. Civ. Code § 1636 ...............................................................................................6

Cal. Civ. Code § 2924.12(a)(1) ................................................................................19

**Other Authorities**

2 Newberg on Class Actions § 4.90 (5th ed. 2019 update) ...................................5, 10, 14

-vi-

California Civil Jury Instructions 1602 (2019) ......................................................................9

Fed. R. Civ. P. 23 ........................................................................................ *passim*

http://www.freddiemac.com/singlefamily/service/hmp_reporting.html...............................................2

https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/mhahandbook_52.
    pdf).......................................................................................................3

https://www08.wellsfargomedia.com/assets/pdf/about/investor-relations/sec-
    filings/2018/second-quarter-10q.pdf ..........................................................................4

1

## I.  **INTRODUCTION**

2  The Court gave Plaintiffs a "do over" on their motion for certification, but no amount of

3  repeats can make this case appropriate for class adjudication. The Renewed Motion itself

4  demonstrates that causation must be analyzed on an individual basis, the proposed classes fail to

5  meet numerosity requirements, and even Plaintiffs admit that damages are so individualized that

6  every single one of the class members might testify at trial to prove them. Moreover, a class action is

7  not superior, as shown by the fact that several proposed class members have already filed individual

8  suits and they – like the named plaintiffs here – seek six-figure damages, ***each***.

9  Apparently recognizing that individual issues preclude certification of any "claim" under

10  Rule 23(b)(3), Plaintiffs' Renewed Motion seeks instead a series of "liability only" issue

11  certifications, available only under Rule 23(c)(4). But Plaintiffs inexplicably failed to move under

12  that Rule, so ignored its requirements. Most damaging, the Renewed Motion does not even attempt

13  to show that California liability-only certification will "materially advance[] the litigation ***as a***

14  ***whole***." as required. *Rahman v. Mott's LLP*, 693 F. App'x 578, 579 (9th Cir. 2017) (emphasis

15  added). Plaintiffs fail to explain how their proposed issue certification, followed by 24 individual

16  trials, would advance the 799 other class members' claims in any way, let alone materially. On the

17  contrary, since Plaintiffs bring claims under the laws of 48 jurisdictions, after resolution of the

18  California claims, some 799 individual claims will remain, each requiring an individual trial to

19  establish liability and damages.

20  Whether California, multi-state or national, the end result is the same – certification is

21  inappropriate. Plaintiffs and any other class members can pursue their claims individually and in

22  their home states. The Renewed Motion should be denied. The Court could then order notice of the

23  denial to all putative class members, who can then pursue individual actions in their home states, if

24  they choose.

25  ## II.  **FACTUAL BACKGROUND**

26  Even after Wells Fargo pointed out the factual misstatements in Plaintiffs' original motion,

27  Plaintiffs doubled down. As shown below, they repeat the same false accusations, which either lack

28  citation, mischaracterize the evidence, or withhold pertinent information.

1    In response to the housing crisis that began in 2007, the U.S. Treasury implemented the

2    Home Affordable Modification Program ("HAMP") to increase loss mitigation options for qualified

3    borrowers. According to Plaintiffs, Wells Fargo "received billions in government funds for"

4    participating in HAMP. But the cited evidence states only that Wells Fargo's "Program Participation

5    Cap" under HAMP was $6,406,790, meaning Wells Fargo was eligible for HAMP incentives up to

6    that amount. *See* Schrag Dec. Ex. 6 at § 4(F). Under HAMP, servicers could receive incentives for

7    successfully completed HAMP modifications.[1] Incentives were not available for trial plan denials,

8    which are at issue in this case.

9    In the years that followed the housing crisis, Wells Fargo decisioned nearly three million

10   loan modification applications, and approved some 1.6 million permanent loan modifications.

11   Ferguson Dec. ¶ 3. The error at issue here, described more fully below, impacted 878 of those nearly

12   three million applications.[2] *Id.*, Ex. A.

13   To carry out the various requirements for modification decisioning, Wells Fargo

14   implemented a Home Preservation Application ("HPA") Tool, which uses borrower-specific

15   information to apply a series of steps ("waterfall") to try and achieve a monthly payment that is 31%

16   of the borrower's gross monthly income. Schrag Dec. Ex. 11. Plaintiffs wrongly describe the loan

17   modification process as "standardized" (R.M. 3:18), but the waterfall steps, and the order in which

18   they are applied, vary by program and investor. *See id.* The HPA Tool assesses a modification

19   application by compiling various data inputs (including recoverable attorney fees, subject to

20   applicable state maximums) to be included in the modified payment. Schrag Dec. Exs. 11, 17. The

21   HPA Tool was intended to pull the applicable state maximums from a state fee matrix in order to

22   compare those maximums to the total actual (plus estimated) attorney fees. *Id.*, Ex. 17. This would

23   ensure that the attorney fees capitalized into the principal balance as "recoverable fees" did not

24   exceed the maximum allowable amount. *Id.*

25   However, the HPA Tool contained a calculation error between April 13, 2010 and October 2,

26   2015 (when the error was corrected). *Id.* Instead of <u>comparing</u> actual fees to state maximums, the

---

[1] http://www.freddiemac.com/singlefamily/service/hmp_reporting.html

[2] Fifty-three borrowers signed releases during Wells Fargo's voluntary mediation process, thus bringing the total number of putative class members to 823. Ferguson Ex. A.

**DEFENDANT WELLS FARGO BANK, N.A.'S OPPOSITION TO
PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION**

3:18-cv-07354-WHA

1  HPA Tool erroneously <u>added</u> the state fee matrix amount to actual fees. *Id*. This unintentional

2  calculation error during the eligibility determination caused the amount of fees to be overstated in

3  some instances, which led to an inflated housing-to-income ratio for some borrowers. *Id*. The

4  inflated ratio resulted in the erroneous denial of trial payment plans or trial modifications for

5  impacted borrowers. *See id*.[3] The error was not "obvious," as Plaintiffs claim. R.M. 2:16. Of nearly

6  three million modification decisions, the error affected only 878, or .0002926%. Ferguson Dec. ¶ 3

7  and Ex. A.

8        Concerns regarding the use of the state fee matrix arose in late 2013 when Wells Fargo

9  employee, Thomas Wayne, now deceased, reported that the HPA Tool appeared to be adding the

10  state maximum to already assessed amounts, and that the matrix was outdated, which may have led

11  to inaccurate calculations. Schrag Dec. Exs. 24, 34; Knight Dec. Ex. 1 (Bell Dep. 33:16-20). Almost

12  immediately, Wells Fargo began reviewing decisions on over 7,000 loans. Knight Dec. Ex. 2.

13  Contrary to Plaintiffs' assertion, testing did not show that 50 borrowers were wrongfully denied a

14  loan modification, nor was there "no urgency to fix the error." R.M. 4:17. No documents support

15  these statements and, in fact, one of the documents Plaintiffs cite shows no harm or disparate

16  treatment was found during the review. Schrag Dec. Ex. 35. Nor did Wells Fargo determine that its

17  attorney fee calculations were so defective it called a "5-day summit" with employees to discuss

18  them and other "fee processing errors." R.M. 4:27-28. As Plaintiffs' cited evidence shows, the so-

19  called "summit" was not focused on attorney fee calculations or other so-called errors, but was an

20  omnibus review of <u>all</u> fees within the modification process. Schrag Dec. Ex. 28.

21        Ultimately, to solve the outdated fee matrix issue, Wells Fargo reset the attorney fee values

22  to zero, which also eliminated any overstatement of fees. Knight Dec. Ex. 1 (Bell Dep. 165:4-9).

23  Although Plaintiffs accuse Wells Fargo of "ignoring the error" or "refusing" to fix it (R.M. 4:6, 5:7),

24  that is not the case. Instead, because its 2014/2015 review determined (in hindsight, erroneously)

---

[3] Under HAMP, eligibility for a permanent modification depended upon the successful completion of a trial payment plan (TPP), during which the borrower was required to make timely modified payments. Failure to comply with the trial plan ended that modification opportunity under HAMP. *See* MHA Handbook, v. 5.2, § 2.3.2.2 (available at https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/mhahandbook_52.pdf). It did not end the foreclosure process.

1    there was no harm to borrowers as a result of the software error, Wells Fargo determined that a

2    solution was not necessary at that time. Knight Dec. Ex. 3. As Plaintiffs' own counsel summarized,

3    "they believed that there was no customer harm[.]" *Id*. Ex. 1 (Bell Dep., 178:22-24).

4          While reviewing an unrelated issue in 2017, Wells Fargo determined it needed to re-assess

5    the original "no impact" conclusion.[4] During that reassessment, Wells Fargo concluded that the prior

6    "no-impact" finding was incorrect and that the loans at issue here were eligible for a trial

7    modification or repayment plan. Ferguson Dec. Ex. A; Knight Dec. Ex. 1. (Bell Dep. 23:3-5, 25:19-

8    26:4). Promptly thereafter, Wells Fargo implemented a voluntary remediation program which

9    included the distribution of proactive checks to borrowers as well as the opportunity to engage in

10   mediation if borrowers felt the check were not sufficient to make things right. *Id*. (Bell Dep. 47:24-

11   53:19). All but four of the named Plaintiffs pursued individual mediations with Wells Fargo to seek

12   additional compensation.  Ferguson Dec. ¶ 4.

13   **III.   ARGUMENT**

14        **A.    Plaintiffs Should Have Moved Under Rule 23(c)(4), Not Rule 23(b)(3).**

15          In *Comcast Corp. v. Behrend*, the Supreme Court made clear that where a proposed Rule

16   23(b)(3) class involves individualized damages, the plaintiff must provide a method that is capable

17   of measuring them on a class-wide basis. 133 S. Ct. 1426, 1433 (2013); *see also Curtis v. Extra*

18   *Space Storage, Inc*., 2013 WL 6073448, at *4 (N.D. Cal. Nov. 18, 2013 (Alsup, J.) ("in order for

19   Rule 23(b)(3)'s predominance requirement to be satisfied, a plaintiff must set forth a measurement

20   method that can be applied class-wide").[5] In short, "[n]o damages model, no predominance, no class

21   certification." *In re Rail Freight Fuel Surcharge Antitrust Litig*., 725 F.3d 244, 253 (D.C. Cir. 2013).

22          Plaintiffs have abandoned their prior damages model, and now concede, as they must, that

23   their damages cannot be determined on a class-wide basis. Thus, Plaintiffs propose a series of

24

25   ---

     [4] https://www08.wellsfargomedia.com/assets/pdf/about/investor-relations/sec-filings/2018/second-quarter-10q.pdf.

26   [5] *See also Buckeye Tree Lodge and Sequoia Village Inn, LLC*, 2019 WL 1170489, at *5 (N.D. Cal.
     Mar. 13, 2019) (denying Rule 23(b)(3) certification because "the plaintiffs failed to adequately

27   present a classwide disgorgement model," and noting that "[c]uriously, the plaintiffs presented a
     model in connection with their previous motion for class certification, but in their renewed motion,

28   they provide none").

"liability-only" certifications, which is not proper under Rule 23(b)(3). Instead, Plaintiffs were required to move under Rule 23(c)(4), and show ("in addition to the requirements of Rules 23(a) and (b) (except for the predominance requirement of Rule 23(b)(3)),"[6] that certification would "materially advance[] the litigation as a whole." *Rahman*, 693 F. App'x at 579; *see also Plastic Surgery Assocs., S.C. v. Cynosure, Inc.*, --- F. Supp. 3d ---, 2019 WL 3719404, at *7 (D. Mass. Aug. 7, 2019) (same) (collecting cases). The "litigation as a whole" means "the *entire* case," not just parts of it. *Rahman*, 693 F. App'x at 579 (emphasis in original).

In determining Rule 23(c)(4) certification, courts consider whether it would save "money, time, and judicial resources … ." *Valenzuela v. Union Pac. R.R. Co.*, 2017 WL 1398593, at *2 (D. Ariz. Apr. 19, 2017). Rule 23(c)(4) should be "selectively used," and is "appropriate only if it permits fair presentation of the claims and defenses." 2 Newberg on Class Actions § 4.90 (5th ed. 2019 update). Thus, before certifying an issue class, the court should determine "that common questions are sufficiently separate from other issues and that a severed trial will not infringe any party's constitutional right to a jury trial … ." *Id.*

Because Plaintiffs improperly moved under Rule 23(b)(3), they ignore these factors, and instead focus entirely on predominance, which is irrelevant to the Rule 23(c)(4) analysis. *Tasion Commc'ns*, 308 F.R.D. at 633. Because Plaintiffs ignored the relevant inquiry and analysis, the Renewed Motion fails outright and should be denied.

### B. The Proper Analysis—Under Rule 23(c)(4)—Shows Why Liability-Only Certification on the California Claims Must Be Denied.

A proper analysis using Rule 23(c)(4) shows that liability-only certification must be denied. This litigation includes putative national and multi-state classes, comprised of 823 putative class members from 48 jurisdictions.  Liability-only certification on the California claims would not

---

[6] *Tasion Commc'ns, Inc. v. Ubiquit Networks, Inc.*, 308 F.R.D. 630, 633 (N.D. Cal. 2015).

1    materially advance the rest of Plaintiffs' case; it would do the opposite.[7]

2           **1.    Rulings on the California Contract Claims Would Have No Application
                    Beyond California, Leaving 799 Class Members' Claims for Resolution.**
3

4           Plaintiffs ask the Court to certify a single, California liability-only "class" on the contract

5    claims, even though at least two materially different security instruments, and (due to choice-of-law

6    provisions in the security instruments), the laws of 48 jurisdictions, are implicated. Moreover, it is

7    abundantly clear that Plaintiffs' "Fannie/Freddie" contract claim relies on extrinsic evidence. After

8    the Court deemed the "Fannie/Freddie" deed of trust unambiguous as a matter of law and dismissed

9    that claim based on the deed of trust's plain language (Dkt. 87), Plaintiffs amended, relying on post-

10   contract documents and testimony (which do not reference or rely on the deed of trust at all) to argue

11   that a mortgage modification was a way "to cure a default and bring a loan current." SAC ¶¶ 192-95.

12   Without analysis, Plaintiffs now argue that the Court can apply the same evidence and rules to all

13   class members, and that any extrinsic evidence will be "non-individualized." R.M. 9:4-16, 20:20-23.

14   Plaintiffs are wrong.[8]

15          For the California "Fannie/Freddie" contract claim, "the court must interpret the contract to

16   give effect to the parties' ***mutual intent*** at the time they made the contract." *In re Lusk*, 589 B.R.

17   678, 686 (Bankr. E.D. Cal. 2018) (citing Cal. Civ. Code § 1636) (emphasis added). In discerning

18   "mutual intent," courts follow a two-step process:

19          First, the court provisionally receives (without actually admitting) all credible evidence
            concerning the parties' intentions to determine "ambiguity," i.e., whether the language
20          is "reasonably susceptible" to the interpretation urged by a party. If in light of the
            extrinsic evidence, the court decides the language is "reasonably susceptible" to the
21          interpretation urged, the extrinsic evidence is then admitted to aid in the second step—
            interpreting the contract.

22   ─────────────────
     [7] Considering the effect of issue certification on the class "as a whole" should preclude deciding the
23   California issues now and holding the remaining issues in abeyance. Such "piecemeal certification
     … distorts the certification process and ultimately results in unfairness to all because of the
24   increased uncertainties of what is at stake in the litigation and in whether the litigation will ever
     resolve any significant part of the dispute." *Allison v. Citgo Petroleum Corp*., 151 F.3d 402, 422
25   n.17 (5th Cir. 1998); *see also In re Toys "R" Us—Delaware, Inc.—FACTA Litig*., 2010 WL
     5071073, at *13 (C.D. Cal. Aug. 17, 2010). If Plaintiffs have their way, and the non-California
26   issues are held in abeyance indefinitely, there also is a substantial risk of inconsistent class
     judgments from three other class actions pending outside California, something Rule 23 seeks to
27   avoid. *See, e.g., Cicero v. DirecTV*, 2010 WL 2991486, at *4 (C.D. Cal. July 27, 2010).
     [8] Despite the second chance, Plaintiffs still give only superficial treatment to these issues by
28   providing a state-law survey that fails to analyze ***how*** states allow extrinsic evidence to interpret
     contracts.

1  *Leadership Studies, Inc. v. Blanchard Training and Dev.*, 2017 WL 6025285, at *5 (S.D. Cal. Dec.

2  1, 2017) (quotations and citations omitted). "When there is no material conflict in the extrinsic

3  evidence, the trial court interprets the contract as a matter of law. If, however, there is a conflict in

4  the extrinsic evidence, the factual conflict is to be resolved by the jury." *Id*. (quotations and citations

5  omitted).

6        Plaintiffs' insistence that the "Fannie/Freddie" contract claim involves only "non-

7  individualized" evidence (the Wells Fargo documents and testimony cited in their SAC), violates

8  these rules. Wells Fargo is entitled to introduce "all credible evidence concerning the parties'

9  intentions," including Plaintiffs' testimony about their understanding of the phrase "the action

10  required to cure the default." If the evidence materially conflicts, then a California jury will decide

11  the issue—and its conclusion will, of course, have no application beyond that particular trial,

12  including to the hundreds of claims (and trials) of the non-California borrowers that would remain.

13        Moreover, "[t]he extrinsic evidence issue is more complicated than a binary question of

14  whether a jurisdiction permits or prohibits consideration of extrinsic evidence … ." *Gelfound v.*

15  *Metlife Ins. Co. of Conn.*, 313 F.R.D. 674, 678 (S.D. Fla. 2016). For example, "[i]n contrast to many

16  other states, California has a liberal parol evidence rule. It permits consideration of extrinsic

17  evidence to explain the meaning of the terms of a contract even when the meaning appears

18  unambiguous." *Foad Consulting Grp., Inc. v. Azzalino*, 270 F.3d 821, 826 (9th Cir. 2001). Other

19  states have entirely different rules, which could lead to different results in different states. *See*

20  Knight Dec. Ex. 16.[9]

21        Plaintiffs' FHA contract claim (for which they have no representative, *see* Dkt. 174), poses

22  similar problems. Although Plaintiffs now acknowledge the substantial inconsistency among states

23  as to whether a plaintiff can bring a claim based on alleged violations of HUD regulations

24  incorporated into a contract, the Renewed Motion contains no independent analysis of their own.

25  _____

[9] Because the states' laws regarding those issues are far from uniform, multiple courts have refused

26  to certify nationwide breach of contract claims under Rule 23(b)(3) on those bases. *See* page 23,

27  *infra*. While not controlling (because Rule 23(b)(3) drove the analysis), the courts' refusal to certify
nationwide classes in such circumstances does underscore why a ruling on the California

28  "Fannie/Freddie" contract claim would not apply to the claim in other states, and why California
certification on that claim would not "materially advance the litigation as a whole."

1    Instead, Plaintiffs assume (based on a single case from Florida) that California allows such a claim.

2    R.M. 9:18-26. They also assume the claim is allowed in states where appellate courts have not

3    addressed the issue. *Id.* 20:28-21:2. They are wrong. Some states, like Illinois, Maryland, Ohio,[10] do

4    not recognize the claim at all. Other states, like Iowa,[11] allow it to be used as a "shield" (*i.e.*, a

5    defense to foreclosure) but not as a "sword" (*i.e.*, an affirmative claim for relief). Still other states—

6    in fact, most of them, including California—have not weighed in at all, leaving the Court to predict

7    how that state's highest court would rule. *See Dorado v. Bank of Am., N.A.,* 2016 WL 3924115 (S.D.

8    Fla. July 21, 2016). Thus, even if the FHA claim were cognizable in California (and the California

9    Supreme Court has not decided it is), liability certification would do nothing to materially advance

10   this case as a whole; a ruling on the California claim would have no application beyond the state. Far

11   from saving any time, money, or judicial resources, liability-only certification on the California FHA

12   contract claim would put the parties and the Court back at square one.

13         **2.    Resolution of the Other California Claims Will Do Nothing to Resolve the Claims of the 799 Remaining Borrowers.**

14           Resolution of "liability" on Plaintiffs' other California claims—UCL, HBOR, wrongful

15   foreclosure, and "outrageous" conduct for IIED—will do nothing to resolve the claims of the 799

16   remaining borrowers.

17           First, Plaintiffs do not argue, because they cannot, that the HBOR or California wrongful

18   foreclosure claims apply to anyone outside California. And, because these claims apply only to the

19   15 California borrowers who were foreclosed, Plaintiffs cannot seriously argue that resolution of

20   these California claims, representing less than 2% of the putative class, would "materially advance

21   the litigation as a whole."[12] Similarly, by moving for California-only certification, Plaintiffs

22   apparently concede (as they must) that the UCL does not apply to the other 799 putative class

23   members. Plaintiffs also do not argue that the UCL is similar to the Illinois, Maryland, New Jersey,

24    

25   ---

26   [10] *Hayes v. M&T Mortg. Corp.*, 906 N.E.2d 638, 641-42 (Ill. App. 2009); *Wells Fargo Home Mortg., Inc. v. Neal*, 398 Md. 705, 711 (2007); *HSBC Bank USA, Nat'l Tr. Co. v. Teagarden*, 6 N.E.3d 678, 686 (Ohio Ct. App. 2013).

27   [11] *See, e.g., ABN AMRO Mortg. Grp. v. Tullar*, 770 N.W.2d 851, at *3 (Iowa Ct. App. 2009).

28   [12] Moreover, even if rulings on the California wrongful foreclosure claim could somehow be applied to the Georgia wrongful foreclosure claim, that still would affect only the 18 Georgia borrowers who were foreclosed—just 2% of the putative class.

-8-

1    New York, and Pennsylvania consumer protection statutes at issue here, such that rulings on the

2    UCL claim could be applied to those claims and thereby narrow the issues in the litigation as a

3    whole. Nor could they; the Ninth Circuit has recognized that the UCL and other state consumer

4    protection statutes are "materially different." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589-

5    590 (9th Cir. 2012). Thus, HBOR, wrongful foreclosure, and UCL certification will—at most—

6    advance the claims of just 2.9% of the putative class—a far cry from materially advancing "the

7    *entire* case," rather than just a part of it. *See Rahman*, 693 F. App'x at 579.

8         Rulings on the "outrageous" element of the California IIED claim also would not advance the

9    claims of the 799 remaining putative class members.[13] In California, whether conduct is

10   "outrageous" is "usually a question of fact." *Bock v. Hansen*, 225 Cal. App. 4th 215, 235 (2014).

11   And, that element is not "objective," as Plaintiffs claim. R.M. 15:24-25. Rather, it depends on the

12   defendant's subjective knowledge of a plaintiff's particular, individual circumstances. *See, e.g.*,

13   Judicial Council of California Civil Jury Instructions 1602 (2019) (in considering whether conduct is

14   "outrageous," the jury considers, *inter alia*, "whether the defendant knew the plaintiff was

15   particularly vulnerable to emotional distress"). And state law varies so much on this claim that even

16   Plaintiffs do not try to debate it. *See, e.g., Suggs v. M & T Bank*, 230 F. Supp. 3d 458, 464 (E.D.

17   Va.), *aff'd sub nom. Suggs v. M&T Bank*, 694 F. App'x 180 (4th Cir. 2017) (Virginia does not

18   recognize IIED in foreclosure context); *Taylor v. Wells Fargo Bank, N.A.*, 85 F. Supp. 3d 63, 73

19   (D.D.C. 2015) (D.C. does not recognize IIED in the foreclosure context); *Howerton v. Harbin

20   Clinic, LLC*, 333 Ga. App. 191, 207–08, 776 S.E.2d 288, 301 (2015) (a Georgia plaintiff must prove

21   that he sought medical or psychological treatment to recover for IIED).

22        Nonetheless, even if "outrageous" conduct could be established on any class-wide California

23   basis (and it cannot), that still would not establish Wells Fargo's liability to any other plaintiff on the

24   IIED claim, nor—as Plaintiffs acknowledge—would it obviate the need for 799 more individual

25   trials. *See Valenzuela*, 2017 WL 1398593, at *4 ("At best, individual class members would have in

26   hand an issue-class judgment they could try to use to their advantage in individual lawsuits they may

27

28   ---
[13] The request for issue certification on the IIED claim is the only time Plaintiffs acknowledge Rule
23(c)(4), but their analysis is oversimplified and conclusory.

1  file against [Wells Fargo] … [T]he parties would still need to litigate the rest of the case [and]

2  [r]esolution of the … common issue[] would not establish [Wells Fargo's liability to any Plaintiff.").

3  Indeed, as a practical matter, "full-blown litigation would continue between each class member and

4  [Wells Fargo]," thus, class-wide adjudication of "outrageous" conduct under California law would

5  not "make this litigation significantly more efficient or less complicated." *Id*. at *5.

6        Accordingly, while liability-only certification on the California claims might establish the

7  fact of the software error and the surrounding circumstances, Plaintiffs have not shown how those

8  "facts" would obviate the need to litigate a single element, let alone an entire claim, of any of the

9  remaining 799 borrowers (*e.g.*, what kind of notice the security instruments required before

10  foreclosing, whether Wells Fargo's conduct was "outrageous," whether Wells Fargo caused any

11  particular borrower's claimed damages and if so, in what amount). Thus, California certification

12  would not save time, money, or resources, nor would it materially advance "the *entire* case," as

13  opposed to just the claims of the 24 California borrowers (each of whom will testify at trial).

14  Certification should be denied.

15      **C.**    **Even if California Certification Could Materially Advance the Litigation as a**
**Whole, It Still Should Be Denied.**

16

17      Even if California certification would materially advance the litigation as a whole (and it

18  would not), certification still should be denied. Plaintiffs' certification plan does not permit a fair

    presentation of the claims and defenses at issue here, and common questions are not "sufficiently

19  separate from other issues [such] that a severed trial will not infringe any party's constitutional right

20  to a jury trial." 2 Newberg on Class Actions § 4.90. A California class would not save time, money,

21  or resources, and it is not superior to individual actions.

22

23      **1.**    **Causation, and Thus, Liability, Cannot Be Determined on a Class-Wide**
**Basis.**

24      Plaintiffs argue that California liability-only certification is appropriate because causation

25  can be determined with common evidence on a class-wide basis, leaving only the amount of

26  damages for individual determination. The Court should reject this sleight of hand.

27      Perhaps recognizing that causation is, necessarily, an individualized issue, Plaintiffs first

28  argue that it can be assumed because Wells Fargo referred to putative class members as "impacted"

-10-

borrowers. R.M. 11:1-6. Not so. "Impacted" only means that the software error at issue here played a role in denying a trial modification. It is not an admission that the denial caused Plaintiffs' foreclosures or other claimed harms. Knight Dec. Ex. 4 (Crawford Dep., 31:18-32:18) (borrowers are called "impacted" before Wells Fargo determines whether they were actually (or even negatively) affected by a potential issue).

Plaintiffs next argue that "[a]t a minimum, each class member lost an option to obtain more favorable loan terms that would have cured his or her default; and that option at least has nominal value." R.M. 11:8-10. But "nominal" damages are not pled, [14] and "[i]f [a] plaintiff seeks nominal damages as relief, he must make a specific request for them in his [] complaint." *Martinez v. Patton*, 2019 WL 3997484, at *4 (N.D. Cal. Aug. 23, 2019). Likewise, "[c]lass certification is not a time for asserting new legal theories that were not pleaded in the complaint." *Alvarez v. Office Depot, Inc.*, 2019 WL 2710750, at *5 (C.D. Cal. June 27, 2019).

In any event, while Plaintiffs allege Wells Fargo took away their "opportunity" to obtain a permanent loan modification, they make no mention of their desire or ability to take advantage of that opportunity. Apparently, Plaintiffs want the jury to presume (among other things) that, had they been offered the subject trial modifications, then they, along with all of the other 799 putative class members, would have (1) accepted the trial modification and timely made all required trial payments; (2) qualified for and accepted a permanent loan modification; and (3) timely made all required future payments on the modified loan. But critical evidence (which Plaintiffs still ignore) shows those assumptions cannot be made, and individualized causation issues preclude "liability only" certification here. *See, e.g., Johnson v. PNC Mortg.*, 2014 WL 6629585, at *6 (N.D. Cal. Nov. 21, 2014) ("lost opportunity" or "mere chance" damages are speculative without proof of a causal link).

For example, several putative class members, including Plaintiff Granja, did not respond to multiple trial modification offers Wells Fargo made before the decision at issue here. Knight Dec. Ex. 5. Other putative class members' incomes varied widely, as did their ability to pay. For example, Plaintiff Frye (who received a prior permanent loan modification in 2013) said he only could have

---

[14] *See, e.g.*, SAC ¶ 69.

1  afforded $400 a month, but the trial payment at issue would have been four times that amount.

2  Knight Dec. Exs. 6 (Frye Dep. 90:3-7; 90:25-91:15) and 7. Plaintiff Teague (who moved out of her

3  house because of pervasive mold issues and a lack of heat and hot water, and admitted she never

4  could have afforded the necessary repairs) also revealed she could not have afforded the proposed

5  trial payment. Knight Dec. Exs. 7 and 8 (Teague Dep. 56:9-12; 57:24-59:4; 86:12-87:7; 92:15-93:2;

6  98:24-100:4).

7  In addition, several named Plaintiffs accepted previous repayment plans and permanent loan

8  modifications, yet, unfortunately, all of them defaulted on the modified terms. For example, prior to

9  the decision at issue here, Wells Fargo approved Plaintiff Hood for 13 forbearance agreements and

10  six permanent loan modifications, but she did not make the required payments under any of them.

11  Knight Dec. Ex. 9 (Hood Dep. 149:14-17; 163:19-22). Plaintiff Wilson similarly was offered several

12  forbearance agreements and loan modifications, but she, too, re-defaulted. Knight Dec. Ex. 10. A

13  jury will need to determine whether the opportunity for a trial modification here would have been

14  treated any differently. *See In re Paxil Litig.*, 212 F.R.D. 539, 547 (C.D. Cal. 2003) ("[t]he relevant

15  question … is not whether [the conduct] has the capacity to cause harm, the generic causation issue,

16  but whether it did cause harm and to whom. That determination is highly individualistic, and

17  depends upon the characteristics of individual plaintiffs") (citation omitted); *Kenu, Inc. v. Belkin*

18  *Int'l*, 2018 WL 2445318, at *4 (N.D. Cal. May 31, 2018).

19  Finally, some putative class members apparently decided not to repay their loans, and had no

20  intention of doing so, modified or not. For example, California borrower Jerry de la Cruz (whose

21  uncle was supposed to be making the mortgage payments and eventually stopped paying) testified

22  that he intentionally let the property go into foreclosure because he did not want it, and that he

23  wouldn't have accepted any modification, no matter the monthly payment amount. Knight Dec. Ex.

24  15 (de la Cruz Dep. 86:2-87:4; 93:3-7; 95:14-96:23); *see also id.* (37:2-39:3; 45:5-20; 57:9-58:1;

25  76:3-77:9; 79:12-13; 82:9-85:2; 92:22-93:7). Similarly, Plaintiff Hernandez, who was renting her

26  property out, did not respond to two trial modification offers Wells Fargo made just a few months

27  before the modification decision at issue, and instead chose to pay a mortgage on a different unit she

28  owned in another state. Knight Dec. Exs. 11 (Hernandez Dep. 33:16-39:17; 64:13-65:5;

108:9:110:19) and 12. Indeed, approximately 1/3 of the putative class members altogether ignored Wells Fargo's outreach efforts leading up to the decision at issue, strongly suggesting they weren't interested in any modification "opportunity" and did not want to keep their properties. Ferguson Dec. Ex. A. In short, whether these borrowers—who were, on average, almost 17 payments behind at the time of the decision at issue (*id*.)[15]—would have taken advantage of any "opportunity" for a trial—not permanent—modification—has to be tried, and on an individual basis. As the Court summarized at the November 6, 2019 hearing, "[t]here could be people in the class who no matter how good the modification would have been, they were just totally broke and they couldn't pay -- they couldn't -- nothing would help them. They were going to be foreclosed on anyway." Nov. 6, 2019 Tr. 17:10-14. To that end, the Court instructed Wells Fargo to conduct absent class member discovery, presumably so that Wells Fargo could further explore that very issue. And, if individualized evidence is required from every California borrower, it follows that individualized evidence is required for the remaining 799 borrowers, as well. But individualized testimony from hundreds of borrowers is not "common" evidence as contemplated by Rule 23. It is the opposite.

Desperate to avoid this conclusion, the Renewed Motion argues, without explanation, that these facts go only to the "extent," not the fact, of damages. R.M. 11:13-15. The flaw in this reasoning is easily exposed when one considers how this would actually play out at trial. Under Plaintiffs' plan, the liability phase will include "common proof," which Plaintiffs describe only as evidence related to the calculation error and Wells Fargo's mortgage servicing practices. During the "damages" phase (decided by a different jury for all but the named plaintiffs), a second jury will not hear any of that evidence, but instead will hear evidence only from class members that, for example, they failed to repay their loan for months and months, did not respond to Wells Fargo's loss mitigation outreach attempts,[16] and ignored, refused, or defaulted on previous modification offers. The first jury, deprived of this evidence, will have already (wrongly) decided causation, leaving the

---

[15] Importantly, the software error did not result in a foreclosure for any borrower who was current on his/her payments.  Instead, the error here affected borrowers who were already in foreclosure—*i.e*., sufficiently delinquent on their mortgage payments for the foreclosure process to have already been underway (which explains why foreclosure attorney fees were an element of the trial modification decision)

[16] In fact, some putative class members did not engage or respond to over 150 loss-mitigation solicitations by Wells Fargo prior to the decision at issue. Ferguson Dec. Ex. A.

1   second jury without any option to reject the claim altogether. Thus, Plaintiffs' own plan will prevent

2   the fair presentation of evidence for **both** Wells Fargo and the *class itself.* And, causation and

3   damages issues are not "sufficiently separate from other issues [such] that a severed trial will not

4   infringe any party's constitutional right to a jury trial." 2 Newberg on Class Actions § 4.90.

5        Plainly, Wells Fargo is entitled to present evidence—during the liability phase—relevant to

6   whether, had Plaintiffs been offered the trial modifications at issue, the end result would have been

7   the same. That person-by-person analysis precludes Plaintiffs' proposed class-wide determination of

8   liability. As this Court recognized just three weeks ago when it denied liability certification under

9   Rule 23(c)(4):

> 10   When appropriate, Rule 23(c)(4) allows a court discretion to certify an action "as a class
> action with respect to particular issues." The text does not explain when such a class
> 11   would be appropriate. Here, plaintiff seeks certification of damages claims for lost time.
> Duty and breach would be tried on a common basis. Causation and damages would be
> 12   tried individually. ***This order agrees with [defendant] that "issue certification is not
> appropriate where the determination of liability itself requires an individualized
> 13   inquiry." That is, bifurcating elements of liability "does not materially advance the
> overall disposition of the case because" the court must still consider "plaintiff-specific
> 14   matters such as fact of injury, causation . . . and extent of damage***…"

15   *Adkins v. Facebook, Inc.*, No. 3:18-cv-05982-WHA, Dkt. 260 at 13 (N.D. Cal. Nov. 26, 2019)

16   (Alsup, J.) (emphasis added); *see also Riera v. Mecta Co.*, 2018 WL 2718098, at *3 (C.D. Cal. Mar.

17   19, 2018) (denying 23(c)(4) certification because "causation—and by extension, liability—involves

18   more individual questions than common ones"); *Tasion Comm'cs*, 308 F.R.D. at 640 (denying

19   23(c)(4) certification when "certification here of an issue would resolve only one of many issues

20   necessary to establish only liability"); *Moeller v. Taco Bell Corp.*, 2012 WL 3070863, at *5 (N.D.

21   Cal. July 26, 2012) (denying 23(c)(4) certification and noting that "[i]t is not only damages that are

22   individualized, but also liability and causation, because the issue is whether an individual class

23   member has any claim at all.  Such fact-specific individual liability and damages questions cannot be

24   determined on a classwide basis.").

25        Plaintiffs' reliance on *Martin v. Behr Dayton Thermal Prods. LLC*, 896 F.3d 405 (6th Cir.

26

27

28

2018),[17] is puzzling. The plaintiffs there did not ask the court to issue-certify causation, and the court "certified only issues capable of resolution with generalized, class-wide proof." *Id.* at 414. In fact, all of the certified issues "are questions that need only be answered once because the answers apply in the same way to each property owner," and "the certified issues do not overlap with actual injury or causation." *Id*.

The opposite is true here. Plaintiffs' request for California liability-only certification includes (and improperly assumes) issues—*e.g.*, causation—that cannot be resolved with generalized, class-wide proof. It is a question that must be answered at least 24 times, with full-blown trials—*e.g.*, liability *and* the amount of damages—for each and every California class member.

Even if Plaintiffs were correct that this evidence goes to the "extent," and not the fact, of damages, their trial plan reveals they have no plan to efficiently calculate damages. Plaintiffs have abandoned their prior damages model, presumably because they recognize it is impossible to provide a workable model or plan when causation and damages are so individualized. As the Ninth Circuit observed just one month ago in affirming denial of a Rule 23(c)(4) liability-only class seeking emotional distress damages: "Although we are, of course, mindful that individualized questions of damages alone cannot defeat class certification, plaintiffs seeking certification must nevertheless carry the burden of showing damages are capable of efficient calculation." *D.C. by and through Garter v. Cnty. of San Diego*, 783 F. App'x 766, 767 (9th Cir. 2019). Here, the absence of any class-wide damages model, and the admitted need for individual damages trials in San Francisco, is the opposite of "efficient calculation" of damages. Rule 23(c)(4) certification should be denied on this basis as well.

### 2.    A California Issue Class Is Not Superior.

Rule 23(c)(4) certification on the California claims should be denied because class resolution

---

[17] The *Martin* court cited *Tyson, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016), and said it "instructs that certification may remain 'proper' even if 'important matters' such as actual injury, causation, and damages will have to be tried separately."  But *Tyson, Inc*. did not address Rule 23(c)(4) certification, and the *Martin* court actually misquoted it: "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, ***such as damages or some affirmative defenses peculiar to some individual class members***." (quotations and citation omitted; emphasis added).  Causation is never mentioned.

-15-

of those liability issues is not superior. *See Tasion Comm'cs*, 308 F.R.D. at 633 (Rule 23(c)(4) issues class must still meet the requirements of Rule 23(a) and (b), except predominance).

For the first superiority factor (the interests of individual class members in pursuing their claims separately), the court looks to the damages of each putative class member, and small damages weigh in favor of certification. *Zinser v. Accufix Res. Inst., Inc.*, 253 F.3d 1180, 1190-91 (9th Cir. 2001). In the Ninth Circuit, a $50,000 damages claim is not small. *Id*. Plaintiff Granja, who has already received $37,500 through Wells Fargo's voluntary remediation program[18] claims that Wells Fargo's actions played a role in her getting breast cancer and caused her marriage to fail, and that Wells Fargo still owes her more than $175,000. Knight Dec. Ex. 13 (Granja Dep. 59:24-61:10; 64:4-21). Thus, the California claims here are not small. Plaintiffs attempt to avoid this conclusion by suggesting that "some class members (such as those who did not lose their homes) suffered relatively small monetary losses." R.M. 17:25-27. But at the certification stage, plaintiffs must present "evidentiary proof"; mere allegations are not enough. *Backhaut v. Apple, Inc*., 2015 WL 4776427, at *5 (N.D. Cal. Aug. 13, 2015). Thus, this factor weighs heavily against superiority. *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."); *Plastic Surgery Assocs., S.C.*, 2019 WL 3719404, at *11 (D. Mass. Aug. 7, 2019) (class action, including 23(c)(4) certification, was not superior where plaintiffs' alleged injuries exceeded $100,000 each); *Lil' Man in the Boat, Inc. v. City & Cty. of San Francisco*, 2019 WL 125905, at *5 (N.D. Cal. Jan. 8, 2019) (the claims are "large enough that [putative members] have an incentive to bring them individually"); *Stoudt v. E.F. Hutton & Co., Inc*., 121 F.R.D. 36, 38 (S.D.N.Y. 1988) ($60,000 claims provided the "the ability to assert an individual claim").

The second superiority factor, the extent of any existing litigation concerning the same subject-matter, is more nuanced. Although Plaintiffs are correct that no other California borrowers have filed individual lawsuits, their attorneys represent ten California borrowers (including Ms.

---

[18] Ferguson Dec. Ex. A.

Granja and Sandra Campos, who belatedly seeks named-plaintiff status). R.M. at 7 n.5.[19] It is reasonable to assume that other California borrowers have not filed their own lawsuits, not because they do not want to, but because counsel told them not to.[20] This factor is neutral, at best.

Plaintiffs ignore the third factor, "adequate justification for the concentration of the litigation in this particular forum." *Zinser*, 253 F.3d at 1192.

As for the fourth factor, the Ninth Circuit has explained that where "each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'" *Id*. at 1194. Individual issues here abound, even on the California claims, with every single class member having to testify—possibly more than once if liability and damages truly are bifurcated. The myriad individual issues undercut any claim that a class action is "superior" here.

### D. California Liability-Only Certification Should Be Denied for Independent Reasons.

As demonstrated above, California liability-only certification will not materially advance this case as a whole, given Plaintiffs' refusal to drop their nationwide and multi-state claims. However, the Court should resist the temptation to fix this problem by denying certification on the nationwide and multi-state claims. The California claims suffer from additional problems, each of which independently precludes certification.

#### 1. Plaintiffs Do Not Have UCL Standing.[21]

The Court should deny Rule 23(c)(4) liability-only certification on the UCL claim because Plaintiffs seek no cognizable remedy under the UCL. A plaintiff has standing to pursue a UCL claim only if she seeks remedies that are equitable in nature—*i.e.*, restitution and/or injunctive relief. *Korea Supply Co. v. Lockheed Martin Corp*., 29 Cal. 4th 1134, 1144 (2003). Plaintiffs do not seek Rule 23(b)(2) certification, thus, their UCL standing turns on whether they seek "restitution." They

---

[19] Plaintiffs' counsel have represented to the undersigned that the number is now ten.
[20] This conclusion is buttressed by the other individual lawsuits filed by borrowers who are not represented by Plaintiffs' counsel here (New Jersey (2), Florida (1), Rhode Island (1), New York (1), and Kentucky (1)). Knight Dec. ¶ 3.
[21] Sandra Campos is not currently a named plaintiff, since Plaintiffs moved to add her the same day they filed their Renewed Motion. In the event Plaintiffs' motion is granted, Wells Fargo reserves the right to challenge Ms. Campos' standing after sufficient discovery.

do not. While the SAC seeks monetary relief, it is all in the form of damages Plaintiffs themselves allegedly suffered. SAC ¶ 69. It does not allege money Wells Fargo retained, as required for restitution. *Korea Supply*, 29 Cal. 4th App. at 1144 (emphasis added) (restitution compels a UCL defendant "to return money [it] obtained through an unfair business practice").

The Renewed Motion says restitution "***could be*** … the value of the homes that Wells Fargo took from them, ***measured at the appropriate time***." R.M. 14:10-13 (emphasis added). Plaintiffs do not define "the appropriate time," nor do they allege, must less offer any proof, that Wells Fargo retained any of that purported "value," as required for restitution. Again, at the certification stage, plaintiffs "must show standing through evidentiary proof"; mere allegations are not enough. *Backhaut*, 2015 WL 4776427, at *5 (N.D. Cal. Aug. 13, 2015).[22]

Plaintiffs' unpled theory—that restitution "could" include "the difference between what they paid on their mortgage and what they would have paid had they received a lower, modified payment"[23]—also fails: (1) "class certification is not a time for asserting new legal theories that were not pleaded in the complaint";[24] (2) Plaintiffs offer no proof in support of this theory; and (3) there is, indeed, no available proof of this theory: Ms. Granja—the only named California plaintiff—stopped paying her mortgage more than a year before the decision at issue here. Knight Dec. Ex. 13 (Granja Dep. 85:2-11).

Because Plaintiffs seek remedies that are not available under the UCL, they do not have standing to pursue that claim. *See Pom Wonderful LLC v. Welch Foods, Inc*., 2009 WL 5184422, at *1-5 (C.D. Cal. Dec. 21, 2009). Liability-only certification on the UCL claim should be denied.

### 2. No California Class is Sufficiently Numerous.

A 23(c)(4) issue class "must still meet the requirements of Rules 23(a) and (b) (except for the predominance requirement of Rule 23(b)(3))." *Tasion Commc'ns*, 308 F.R.D. at 633. And each subclass must, independently, meet Rule 23's requirements as well. *See Betts v. Reliable Collection*

---

[22] The reason Plaintiffs have no proof of any lost equity is obvious. During the Great Recession, the U.S. real estate market collapsed, causing home values to plummet and mortgage balances to exceed home values for many homeowners.
[23] R.M. 14:11-12. It is unclear whether this "restitution" theory would apply to all putative class members, or just those who did not experience a foreclosure.
[24] *Alvarez*, 2019 WL 2710750, at *5.

1   *Agency, Inc.*, 659 F.2d 1000, 1005 (9th Cir. 1981).

2       Here, no California class is sufficiently numerous. The HBOR and wrongful foreclosure

3   claims include, at most, the 15 California borrowers who were foreclosed.[25] *See* Ferguson Dec. Ex.

4   A. The Ninth Circuit has explained that numerosity generally is satisfied "when a class includes at

5   least 40 members" and has indicated that a class of 15 is too small. *Rannis v. Recchia*, 2010 WL

6   2124096, at *4 (9th Cir. May 27, 2010); *see also Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318,

7   330 (1980) (putative classes of 15 are too small). Thus, Plaintiffs' California "Fannie/Freddie"

8   contract, HBOR and wrongful foreclosure issue classes fail out of the gate. *See Culley v. Lincare*

9   *Inc.*, 2017 WL 3284800, at *2 (E.D. Cal. Aug. 2, 2017) (decertifying class of 20 members); *Webb v.*

10  *Alpha and Omega Servs., Inc.*, 2017 WL3000014, at *2-3 (C.D. Cal. June 1, 2017) (decertifying

11  class of 18 members). The California "FHA" contract class—comprised of just eight California

12  borrowers who had FHA loans—fails, too.[26] Ferguson Dec. Ex. A. And finally, the "Fannie/Freddie"

13  contract class—comprised of, at most, the 16 non-FHA loans[27]—should also fail for lack of

14  numerosity. *Culley*, 2017 WL 3284800, at *2; *Webb*, 2017 WL3000014, at *2-3.

15      Where a class falls in the "gray area," *i.e.*, proposed classes numbering between 20 and 40

16  (as would the UCL and IIED liability classes of 24), courts consider (1) the judicial economy that

17  will arise from avoiding multiple actions; (2) the geographic dispersion of putative class members;

18  (3) the putative class members' financial resources; (4) the ability of the members to file individual

19  suits; and (5) requests for prospective relief that may have an effect on future class members.

20  *Sandoval v. M1 Auto Collisions Ctrs.*, 309 F.R.D. 549, 562 (N.D. Cal. 2015). Those factors weigh

21  against numerosity for the proposed subclasses here.

22      First, it is logical to assume that of these California borrowers, those who experienced a

---

[25] Non-foreclosed borrowers have no HBOR claim, since before a foreclosure sale relief is limited to a preliminary injunction. Cal. Civ. Code § 2924.12(a)(1). Plaintiffs do not seek an injunctive relief, yet inexplicably assumed that the HBOR and wrongful foreclosure classes include all California borrowers—even those who did not experience a foreclosure. R.M. 6:13-7:5.

[26] Plaintiffs admit that the "Fannie/Freddie" and FHA contract claims do not depend on the same evidence. Thus, resolution of that claim cannot be accomplished via a single class. *See, e.g., Lane v. Wells Fargo Bank, N.A.*, 2013 WL 3187410, at *4-7 (N.D. Cal. June 21, 2013) (Alsup, J.) (refusing certification of a single contract class when the putative class included the Fannie/Freddie and FHA security instruments).

[27] Ferguson Dec. Ex. A.

1   completed foreclosure—15 people—are most likely to file suit.[28] Even if every single one filed suit,

2   that hardly constitutes a strain on the judicial system. Nor would joinder of such suits be

3   impracticable. *See Culley*, 2017 WL 3284800, at *2. This is particularly true in light of counsel's

4   admission that they represent ten California borrowers (including eight who are not putative named

5   plaintiffs), each of whom could file their own suit. R.M. at 7 n.5.[29] It also is reasonable to assume

6   that, at a minimum, borrowers represented by Plaintiffs' counsel (almost 170 of them) are likely to

7   file their own suits if certification is denied. Indeed, in connection with earlier discussions about a

8   potential tolling agreement, Plaintiffs' counsel informed the undersigned that if the Court denies

9   certification, individual lawsuits will be filed.

10       Next, in considering the putative class members' financial resources and their ability to file

11  individual suits, the Court should consider not only their financial status, but also "the size of their

12  claims; and other relevant factors, such as confinement and mental handicaps." *Lil' Man in the Boat,*

13  *Inc.*, 2019 WL 125905, at *5 (citation omitted). No putative class member is alleged to be disabled

14  here, and, most importantly, the evidence shows that their "claims are large enough that they have an

15  incentive to bring them individually." *Id*. Indeed, as this court has explained, "[c]laim size matters

16  because individual claims of certain class members may be too small to warrant individual actions."

17  *Id*. (quotation and citation omitted). That is not an issue here, where the sole named California

18  plaintiff claims damages of at least $175,000 (in addition to the $37,500 she has already been paid),

19  and who claims Wells Fargo contributed to her breast cancer and caused her divorce. *See* page 16,

20  *infra*. Plainly, "this is not a case where a class action is necessary because 'only a lunatic or fanatic

21  sues for $30'" *Lil' Man in the Boat, Inc.*, 2019 WL 125905, at *5 (quoting *Carnegie v. Household,*

22  *Inc.*, 376 F.3d 656, 661 (7th Cir. 2004)).

23       Finally, because Plaintiffs do not seek prospective relief, there is no risk that any such relief

24  _____

25  [28] This is confirmed by the SAC, in which Russell and Brenda Simoneaux are the only named
    Plaintiffs who did not experience a completed foreclosure but instead paid off their loan (and
    admitted they were not harmed). SAC ¶¶ 109-113; Knight Dec. Ex. 14 (Simoneaux Dep. 117:16-
26  118:13). It also is confirmed by the putative class members who filed their own lawsuits, all of
    whom experienced a completed foreclosure, except one, who sold the subject property via a short
27  sale. Knight Dec. ¶ 3.
    [29] Plaintiffs' lone cited case, a decades-old case from Illinois, does not help them. There, the 18
28  putative class members were "geographically dispersed between Illinois, New Jersey, and
    Tennessee." *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D. Ill. 1996).

1    will effect "future class members who have not yet been identified." *Id.* at *6.

2         Because neither the class size nor the numerosity factors favor certification, the Court should

3    deny liability-only certification on all the California claims.

4         **E.    Certification of Liability Under Other States' Statutes California Should Be
              Denied.**

5         The Court should deny liability-only certification on the non-California state statutory

6    claims. Plaintiffs do not argue—and cannot seriously suggest—that liability-certification of those

7    states' claims would materially advance this case as a whole. *See* page 9, *infra*. First, those putative

8    classes contain, at most, 278 people, thus, resolution of those state statutory claims will do nothing to

9    resolve the claims of the remaining 545 borrowers. Ferguson Dec. Ex. A. Second, Plaintiffs

10   downplay the differences among those states' laws, boiling them down into three general elements:

11   whether a prohibited act occurred, resulting harm, and causation. R.M. 23:7-8. The gross

12   oversimplification must be rejected. As demonstrated in the attached state law survey, Plaintiffs

13   ignore numerous differences in these laws, including varying descriptions of "deceptive" or "unfair"

14   conduct; differing legal standards as to scienter, materiality, causation, injury, and reliance; and the

15   differences in available remedies. Knight Dec. Ex. 17. And, "these differences are not trivial as they

16   go to the putative class members' rights to bring consumer protection-based claims. Moreover, they

17   determine whether the relief will be generous, modest, or if there is any relief available at all."

18   *Gustafson v. BAC Home Loans Servicing, LP*, 294 F.R.D. 529, 539 (C.D. Cal. 2013) (quotations and

19   citation omitted). Because the laws are materially different, the result under one will have no

20   application to another, and liability-only certification should be denied, since it will not advance this

21   case ***as a whole***. *See Davidson v. Apple, Inc*., 2018 WL 2325426, at *26 (N.D. Cal. May 8, 2018)

22   (denying 23(c)(4) certification on ICFA and Florida and Washington consumer protection claims: "It

23   is far from clear that resolving liability on a classwide basis [on those claims] would advance the

24   underlying resolution of the instant case") (quotations and citation omitted).

25        **F.    The Georgia Wrongful Foreclosure Claim Is Not Certifiable.**

26        Plaintiffs have not met their burden on their Georgia wrongful foreclosure claims. First, the

-21-

1   18 putative members in Georgia[30] do not satisfy numerosity. *See* page 8 n.12, *infra*. Second, because

2   this claim involves such a small slice of the putative class (2%), it follows that liability-only

3   certification will not materially advance this case as a whole. Moreover, the claim suffers from the

4   same individualized causation issues, and Plaintiffs fail to cite a single case certifying a Georgia

5   wrongful foreclosure claim—on a liability-only basis or otherwise. Finally, Plaintiffs can offer no

6   reason why those Georgia borrowers should be required to litigate their claims in this Court, some

7   2,600 miles away. *Lane*, 2013 WL 3187410, at *12. Liability-only certification on the Georgia

8   wrongful foreclosure claim should be denied.

9          **G.      Plaintiffs Cannot Establish Predominance.**

10          The correct rule, Rule 23(c)(4), does not consider predominance, and focuses instead on

11   whether issue certification would "materially advance the litigation as a whole." For that reason, all

12   of Plaintiffs' cited authorities are irrelevant. Moreover, Plaintiffs' failure to present a class-wide

13   damages model on its own precludes a finding of predominance. *See, e.g., Curtis*, 2013 WL

14   6073448, at *4. Wells Fargo nonetheless briefly addresses predominance.

15          First, the individualized causation issues identified above pervade each and every claim.

16   Plaintiffs' cases are not to the contrary. R.M. 11:17-25. Instead, they stand for the longstanding rule

17   that "damage calculations alone cannot defeat certification." *Yokoyama v. Midland Nat'l Life Ins.*

18   *Co*., 594 F.3d 1087, 1093 (9th Cir. 2010). Wells Fargo has never argued otherwise. Indeed, it is not

19   the ***amount***, but the ***fact***, of damages that prevents a finding of predominance here. *See, e.g.,*

20   *Gonzales v. Comcast Corp*., 2012 WL 10621, at *19 (E.D. Cal. Jan. 3, 2012) (denying class

21   certification because, *inter alia*, individualized causation determinations predominated over any

22   common issues regarding the defendant's business practices); *Gomes v. Portfolio Recovery Assocs.,*

23   *LLC*, 2019 WL 978806, at *8 (S.D. Fla. Feb. 28, 2019) (predominance lacking when "individual

24   issues permeate the claims of putative class members seeking the recovery of actual damages,"

25   including "liability to the extent Defendant is entitled to probe questions addressing causation with

26   each such member").

27          Second, significant state-law differences predominate the contract claims. Plaintiffs

28   ───────────────
[30] Ferguson Dec. Ex. A.

1  acknowledge that 48 jurisdictions' laws will apply, and thus bear the "burden to conduct an

2  extensive choice of law analysis and show that the requirements of Rule 23(b)(3) are not defeated."

3  *Burton v. Nationstar Mortg., LLC*, 2014 WL 5035163, at *15 (E.D. Cal. Oct. 8, 2014). In addition,

4  where significant differences in law exist, plaintiffs bear "the burden of demonstrating a suitable and

5  realistic plan for trial of the class claims." *Zinser*, 253 F.3d at 1189 (quotations and citation omitted).

6  Here, despite their do-over, Plaintiffs do not meet their burden. Indeed, they still ignore material

7  state law differences regarding extrinsic evidence, and their analysis on the FHA claim is

8  nonexistent. Because the states' laws regarding these issues are far from uniform, multiple courts

9  have refused to certify nationwide breach of contract claims on those bases. *See, e.g., Weisberg v.*

10 *Takeda Pharm. U.S.A., Inc.*, 2018 WL 4043171, at *10 (C.D. Cal. Aug. 21, 2018); *Miller v. Wells*

11 *Fargo Bank, N.A.*, 2017 WL 698520 (S.D. Fla. Feb. 22, 2017); *Rapp v. Green Tree Servicing, LLC*,

12 302 F.R.D. 505 (D. Minn. 2014); *Gustafson*, 294 F.R.D. 529; *Bowers v. Jefferson Pilot Fin. Ins. Co.*,

13 219 F.R.D. 578, 583 (E.D. Mich. 2004). [31] For all these reasons, Rule 23(b)(3) certification on the

14 contract claims must be denied.

15     Plaintiffs have also failed to establish predominance on their five state "consumer protection"

16 claims. First, as shown above, Plaintiffs evade the key differences among those claims by boiling

17 them down into three generalized elements. R.M. 23:6-8. These statutes are not "materially

18 identical," and Plaintiffs' "perfunctory analysis of the consumer protection statutes" is precisely

19 what courts have warned against in the class certification context. *Porcell v. Lincoln Wood Prods.,*

20 *Inc.*, 713 F. Supp. 2d 1305, 1324 (D.N.M. 2010). For purposes of class certification, "[a]ll elements

21 of each state's consumer protection statute must be considered" and Plaintiffs cannot focus only a

22 few elements "to the exclusion of others." *Marshall v. H&R Block Tax Servs., Inc.*, 270 F.R.D. 400,

23

24 [31] Plaintiffs' cases are inapposite. The contract claims in *Ellsworth v. U.S. Bank, N.A.*, 2014 WL 2734953 (N.D. Cal. June 13, 2014); *Ewert v. eBay, Inc.*, 2010 WL 4269259 (N.D. Cal. Oct. 25,
25 2010); and *Kleiner v. First Nat'l Bank of Atlanta*, 97 F.R.D. 683 (N.D. Ga. 1983), did not depend on extrinsic evidence, while Plaintiffs' "Fannie/Freddie" contract claims absolutely do—without it, the
26 Court dismissed the claim as a matter of law. Dkt. 87. *In re Med. Capital Sec. Litig.*, 2011 WL 5067208 (C.D. Cal. July 26, 2011), involved application of similar law across only three states. *In re*
27 *Conseco Life Ins. Co. Lifetrend Ins. Sales and Mktg. Litig.*, 270 F.R.D. 521 (N.D. Cal. 2010), involved a Rule 23(b)(2) class, thus, no showing of predominance was required. And Plaintiffs
28 ignore *Miller*, 2017 WL 698520, where the court refused to certify the FHA contract claim.

408 (S.D. Ill. 2010).

Second, Plaintiffs' predominance arguments on these claims are generic and superficial, supported only by a string cite. R.M. 23:22. Not only are Plaintiffs' cases inapposite,[32] but, as shown above, causation cannot be determined on a class-wide basis. Relatedly, violations of the Pennsylvania catch-all provision (under which Plaintiffs proceed here) are "not appropriate for class certification under Rule 23(b)(3) because the element of justifiable reliance is dependent upon predominantly individual issues." *Glover v. Udren*, 2013 WL 6237990, at *21 (W.D. Pa. Dec. 3, 2013) (collecting cases). And finally, Plaintiffs have failed to show that "concentration of the litigation here is desirable." *Lane*, 2013 WL 3187410, at *12. Requiring out-of-state borrowers (most of whom are located on the East Coast) to travel thousands of miles across the country to pursue their claims here benefits no one. The Court should deny certification of the state "consumer protection" subclasses.

### H.     Plaintiffs Have Not Demonstrated Adequacy.

Finally—and especially in light of their repeated but deficient attempt at certification— Plaintiffs' Renewed Motion should be denied for lack of adequacy. Unfortunately, multiple problems remain, including:

- Plaintiffs propose no damages model, which is required under Rule 23(b)(3).
- Plaintiffs only seek issue certification, which is governed by Rule 23(c)(4); because they moved under the wrong rule, Rule 23(b)(3), they do not analyze— at all—whether liability-only certification will "materially advance the litigation as a whole."
- The Renewed Motion asserts "nominal" damages, which are not pled.
- The Renewed Motion speculates that restitution "could" be proven in the future, but does not explain how.
- The Renewed Motion contains zero analysis regarding the FHA contract claim.
- Plaintiffs did not analyze numerosity for their California subclasses.
- Plaintiffs' trial plans are generic and inadequate, even after the Court's admonition that their first two plans were "not very good." November 6, 2019 Tr. 6:21-22.
- Plaintiffs advocate a piecemeal certification strategy that favors the named

---

[32] *Randolph v. Crown Asset Mgmt., LLC*, 254 F.R.D. 513 (N.D. Ill. 2008); *Elias v. Ungar's Food Prods., Inc*., 252 F.R.D. 233 (D.N.J. 2008); and *Sykes v. Mel Harris and Assocs., LLC*, 285 F.R.D. 279 (S.D.N.Y. 2012), certified state classes in the respective state's court. In *Tait v. BSH Home Appliance Corp*., 289 F.R.D. 466, 486 (C.D. Cal. 2012), the court noted that "[g]iven the ***small size*** of each class member's claim …, class treatment is not only the superior, but the only manner in which to ensure fair and efficient adjudication of the present action." (emphasis added). And in *Gold v. Lumber Liquidators, Inc*., 323 F.R.D. 280, 293 (C.D. Cal. 2017), the plaintiffs presented a class-wide damages model.

-24-

representatives (whose damages will be decided at a full-merits trial) at the expense of putative class members (whose damages will be decided with evidence limited to their own circumstances).

For all these reasons, adequacy should not be presumed. *See Lane*, 2013 WL 3187410, at *14-15; *Ballard v. Bank of Am., N.A.*, 2013 WL 4807193, at *6 (C.D. Cal. Sept. 6, 2013) ("the myriad issues with Plaintiff's motion give the Court strong reason to doubt the adequacy of Plaintiff's counsel," including Plaintiff's lack of standing and counsel's "fail[ure] to provide anything approximating evidence sufficient to meet Plaintiff's burden of proof on a motion for class certification"). Indeed, even after the Court admonished the previous motion, counsel proposes piecemeal certification to the detriment of absent class members,[33] fails to adequately analyze the issues, and has continued missteps like those that doomed the prior motion. Their current proposal even asks the Court to enter judgment (including if it's a dismissal with prejudice) without first allowing class members an opportunity to opt out. And Plaintiffs' counsel did not consider how to obtain and present evidence related to class member damages in advance of the discovery cut-off, and inexplicably failed to include a representative for the FHA claim. *See* Dkt. 174, 175, 181. In short, "Plaintiffs' counsel exacerbated their previous conduct … ." *Evans v. IAC/Interactive Corp.*, 244 F.R.D. 568, 579 (C.D. Cal. 2007). While Wells Fargo does not doubt that counsel performed adequately and successfully in other actions, "they cannot simply rest on their laurels. They must establish adequacy in each case in which they seek to represent a class." *Id*. Adequacy has not been established.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Wells Fargo Bank, N.A. respectfully requests that the Court deny Plaintiffs' Renewed Motion for Class Certification. The Court can provide notice of the denial to all putative class members, who can then pursue individual actions in their home states, if they choose.

Dated: December 12, 2019                    WINSTON & STRAWN LLP

                                            By:   */s/ Amanda L. Groves*
                                                  Amanda L. Groves
                                                  Kobi K. Brinson
                                                  Stacie C. Knight

---

[33] *See Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1020 (9th Cir. 1998) ("absent class members must be afforded adequate representation before entry of a judgment which binds them").