

North America   Europe   Asia

101 California Street
34th Floor
San Francisco, CA 94111
T +1 415 591 1000
F +1 415 591 1400

**AMANDA L. GROVES**
PARTNER
AGroves@winston.com

January 10, 2020

**VIA ECF**
Hon. Judge William H. Alsup
San Francisco Courthouse
Courtroom 12, 19th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *Hernandez, et al. v. Wells Fargo Bank, N.A., et al.*, Case No. 3:18-cv-07354-WHA

Dear Judge Alsup:

Defendant Wells Fargo Bank, N.A. ("Wells Fargo") submits this response to Plaintiffs' January 3, 2020 discovery dispute letter (ECF No. 193). We look forward to discussing these issues with opposing counsel on January 15, 2020 and, if necessary, with the Court thereafter.

### I. PLAINTIFFS' REQUEST TO EXTEND THE MOTION TO COMPEL DEADLINE SHOULD BE DENIED.

Under Local Rule 37-3, "no motions to compel discovery may be filed more than seven days after the discovery cut-off." Civ. L.R. 37-3. Plaintiffs were thus required to file any motion to compel on or before December 26, 2019. Plaintiffs' belated request to extend the deadline should be denied because they do not and cannot demonstrate "good cause." Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.").

Plaintiffs acknowledge that "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). And courts do not "routinely grant" extensions when diligence is not shown. ECF No. 193 at 1. For example, in *Raymat Materials, Inc. v. A & C Catalysts, Inc.*, this Court denied a motion to extend the discovery period or "serve untimely discovery requests" because "no diligence has been shown to justify a finding of good cause for extending the scheduling order in such a dramatic way." 2014 WL 1647529, at *6 (N.D. Cal. Apr. 22, 2014). Other courts frequently deny untimely motions to compel. *See, e.g.*, *Gomo v. NetApp, Inc.*, 2018 WL 6002322, at *1–2 (N.D. Cal. Nov. 15, 2018); *Nuance Commc'ns, Inc. v. ABBYY Software House*, 2012 WL 2838431, at *2 (N.D. Cal. July 10, 2012).

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT

Here, Plaintiffs do not demonstrate diligence,[1] and their attempts to explain the failure to abide by the scheduling order are unavailing. First, Plaintiffs neglect to mention that the dates they requested for a meet and confer call were December 27 or "Monday and Tuesday the following week"-- *i.e.* December 30 and 31. *See* Ex. C.[2] The motion to compel deadline was December 26, so these requested dates fell after the motion to compel deadline. Second, Plaintiffs' statement that they were somehow "accommodating" Wells Fargo to meet and confer after the motion to compel deadline is wrong. Indeed, when the parties had their meet-and-confer call, it was clear Plaintiffs had not realized there was a motion to compel deadline at all, let alone that the deadline had passed. After determining that Plaintiffs were unprepared to discuss whether "good cause" existed for their tardiness, Wells Fargo offered to meet and confer further and provide Plaintiffs with an opportunity to explain any basis they felt they had that might excuse their lateness. Plaintiffs' counsel stated they would think about the issue further. Instead of reaching out to meet and confer, however, Plaintiffs filed their discovery dispute letter. This is not diligence. Finally, Plaintiffs' attempt to show diligence by claiming that they served the requests at issue before the discovery cut-off is insufficient to establish "good cause" for modifying the scheduling order. Wells Fargo provided responses to these requests several weeks ago, *see* Exs. E-I, and Plaintiffs responded to Wells Fargo's objections in a letter sent only eight days before the motion to compel deadline. *See* Ex. B. Because Plaintiffs were not diligent, their request to extend the motion to compel deadline should be denied.

## II.   WELLS FARGO INTENDS TO SUPPLEMENT CERTAIN RESPONSES, BUT IS NOT REQUIRED TO COMPLY WITH OTHER REQUESTS.

As Plaintiffs' own exhibits demonstrate, Wells Fargo is willing and intends to supplement certain of the requests Plaintiffs moved on (*e.g.*, the "C2C policy" and the "the SLoaD software program handbook" referenced in Plaintiffs' Exhibit B). As to others, and in addition to the deadline issue raised above, Well Fargo responds as follows:

**Rule 30(b)(1) Deposition**: Wells Fargo should not have to comply with Plaintiffs' Rule 30(b)(1) notice, inexplicably served on the discovery cut-off date, to produce a witness on the "cap sheets" on January 2, 2020. *See* Ex. D. Not only is it too late to move to compel (see above), but

---

[1] Indeed, Plaintiffs have a history of ignoring this Court's scheduling order, including by sandbagging Wells Fargo with 63 new witnesses in an "initial" disclosure served after the discovery cut-off, serving two belated motions to amend, noticing more than 10 depositions, serving discovery requests due after the cut-off, and noticing depositions postdating the cut-off.

[2] Plaintiffs do not provide a citation for their statement that they offered to meet and confer on December 19 and December 20, 2019. Presumably, they rely on their December 18 meet-and-confer letter, which they conveniently failed to attach. The December 18 letter states only: "We are available to talk this week if you would like to hop on the phone and talk through these issues. Otherwise, we ask that Wells Fargo produce the documents and information requested in short order after the holidays, by January 6, 2020." Ex. B. January 6 falls almost two weeks after the motion to compel deadline, further demonstrating Plaintiffs were—again—ignoring the scheduling order.

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT

January 2 is also weeks after the December 18 cut-off.  The deposition notice is thus invalid on its face.  *See Gofron v. Picsel Techs., Inc.*, 804 F. Supp. 2d 1030, 1040 (N.D. Cal. 2011).

**Interrogatories Nos. 15-19 and Requests for Production Nos. 28, 31:** These requests seek information regarding foreclosures, mortgage modifications, and repayment plans unrelated to any alleged calculation error or conduct on the part of Wells Fargo that allegedly caused Plaintiffs' injuries.  *See* Exs. E, F, J.  As such, these requests are overbroad and seek information that is not relevant to this litigation, exceeding the scope of discovery permitted under Fed. R. Civ. P. 26(b)(1).

**Interrogatory No. 21:** Plaintiffs request the terms of permanent loan modifications Plaintiffs hypothetically could have received "had the plaintiff made each payment under his or her trial period payment plan."  Ex. I.  The calculation error at issue occurred in relation to determining Plaintiffs' eligibility for a *trial* modification, not a *permanent* modification.  And eligibility for a trial modification does not equate to an automatic permanent modification, as Plaintiffs' Interrogatory acknowledges.  Therefore, there is no way to know what any terms of any permanent loan modification would have been for any Plaintiff.  Wells Fargo should not have to provide information that does not exist, and any attempt to do so would be meaningless guesswork.

**Request for Admission No. 1, Interrogatory No. 22, and Request for Production Nos. 33, 35, and 36 (Exs. G, I, H):** Because the Court instructed the parties to depose the prospective California class members, Wells Fargo has provided loan files and information for those proposed class members. Yet Plaintiffs claim they will be prejudiced if Wells Fargo does not produce the same burdensome, voluminous, and extremely confidential information for the hundreds of non-California borrowers.  Despite Plaintiffs' representation to the contrary, Wells Fargo of course understands that it could be required to produce some information for putative non-California class members if a nationwide class is certified, even after the fact discovery deadline, subject to any necessary authorizations from them.  At the December 9 discovery dispute hearing, the Court noted specific limited discovery after the certification decision for this reason.[3]

**Request for Production No. 24:** Wells Fargo should not be required to comply with Plaintiffs' overbroad, burdensome, vague, and unbound-in-time request for "*[a]ll*" communications between Wells Fargo and the government related to "compliance with HAMP" and mortgage modification practices.  Ex. F.  Whatever this request means, it encompasses considerable information that is irrelevant and disproportionate to the needs of the case and claims at issue.

**Request for Production No. 25:** Plaintiffs' request for copies of ***all*** customer complaints regarding Wells Fargo's compliance with HAMP and/or its "modification practices" is also overly broad and captures substantial information that is irrelevant and disproportionate to the needs of the case and claims at issue.  Ex. F.  Plaintiffs have offered no explanation as to how communications from Wells Fargo's customers unrelated to the calculation error at issue could

---

[3] *See* Hr'g Tr. at 12:20-13:10 (Dec. 9, 2019) ("[I]f certification is allowed, then I may have to allow some additional discovery . . . . [W]e'll see . . . what specific isolated items plaintiffs need to present their case if it's certified.")

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT

possibly be relevant or needed to prove their claims; Wells Fargo should not be required to produce this information.

                          Respectfully submitted,

                        */s/ Amanda L. Groves*
                        Amanda L. Groves

                        *Counsel for Wells Fargo Bank, N.A.*