# EXHIBIT B



Laura C. Fellows
Attorney

T 816.984.8111
F 816.984.8101

Laura@PaulLLP.com

December 18, 2019

**VIA ELECTRONIC MAIL**

Amanda L. Groves
Kobi K. Brinson
WINSTON & STRAWN LLP
300 South Tryon Street, 16th Floor
Charlotte, North Carolina 28202

Shawn R. Obi
WINSTON & STRAWN LLP
333 South Grand Avenue, 38th Floor
Los Angeles, California 90071

Re: *Hernandez et al. v. Wells Fargo Bank, N.A.*, Case No. 18-cv-07354

Dear Counsel,

We have now had a chance to review Wells Fargo's responses to Plaintiffs' First Requests for Admission, Third and Fourth Sets of Interrogatories, and Second and Third Sets of Requests for Production. We write to resolve Wells Fargo's objections to Plaintiffs' requests and trust the parties will be able to resolve these disputes without the need for court intervention.

## Plaintiffs' First Requests for Admission

### Request for Admission No. 1

Plaintiffs ask Wells Fargo to admit all class members' security instruments contain the same language regarding the "action required to cure the default" or "except as limited by regulations issued by the [HUD] Secretary." Wells Fargo admits as to the named plaintiffs but objects to providing information for non-named plaintiffs. Wells Fargo argues this Request is unduly burdensome and is premature and overbroad because a class has not been certified. First, Wells Fargo is seeking discovery, including depositions, from



non-named plaintiffs. So, Plaintiffs struggle to understand the overbroad/premature objection. Moreover, Wells Fargo repeatedly argues Plaintiffs have not sought discovery about absent class members but then objects to providing the very discovery Plaintiffs seek. Wells Fargo also fails to provide facts to support its contention that this Request is unduly burdensome. Please fully answer this Request.

### Plaintiffs' Third Set of Interrogatories

### Interrogatory No. 15

Plaintiffs ask Wells Fargo to state the number of homes, since 2010, on which it has mistakenly foreclosed. Wells Fargo objects and refuses to answer. This Interrogatory is narrowly tailored to seek relevant information; this case is about Wells Fargo mistake in foreclosing on Plaintiffs' homes. Although Wells Fargo objects it is unduly burdensome, Wells Fargo has not provided any facts to support how it is unduly burdensome. Plaintiffs are not seeking privileged communications, simply a number. Please supplement this response.

### Interrogatories Nos. 16 and 17

These Interrogatories ask Wells Fargo to state the total number of mortgage modifications and mortgage repayment plans Wells Fargo has determined it did not offer but should have offered since 2010. Wells Fargo makes the same objections in response to both Interrogatories: seeks irrelevant information, overbroad and disproportionate, duplicative, unduly burdensome, requests information protected by the attorney-client privilege and/or bank examination privilege, and the phrases "did not offer" and "should have offered to a borrower" are vague and ambiguous.

First, Wells Fargo has not alleged any facts to support its contention that these Interrogatories are unduly burdensome. The Interrogatories are not duplicate; Interrogatory 16 seeks information regarding modifications and Interrogatory 17 seeks information regarding repayment plans. These Interrogatories are narrowly tailored to seek information regarding prior wrongful denials, which is directly relevant to Plaintiffs' claims, including that Wells Fargo failed to offer them mortgage modifications. Plaintiffs



fail to understand how the information sought is protected by attorney-client privilege and/or bank examination privilege. The Interrogatories are simply requesting a total number, not communications with counsel or communications with regulators. Finally, to the extent Wells Fargo is confused by what these Interrogatories request, we welcome a meet and confer to discuss further.

**Interrogatory No. 18**

This Interrogatory asks for the total number of CITs Wells Fargo has opened since 2010. Wells Fargo refuses to answer and objects this Interrogatory seeks irrelevant information, is overbroad and disproportionate, unduly burdensome, and harassing. Wells Fargo further objects the phrase "mistake in foreclosing" is vague and ambiguous and that this Interrogatory requests information protected by the attorney-client privilege and/or bank examination privilege. Plaintiffs believe Wells Fargo is mistaken in objecting that the phrase "mistake in foreclosing" is vague and ambiguous because it is not used in this Interrogatory. The total number of CITs, or customer impact tracking numbers, is not protected by any privilege. Stating the total number of CITs is also not overly broad or unduly burdensome, it is a simple number. Plaintiffs do not seek this information to harass Wells Fargo; it is relevant to Plaintiffs' claims that Wells Fargo failed provide sufficient oversight and ensure it was not committing errors.

**Interrogatory No. 19**

Relatedly, this Interrogatory asks the total number of remediations offered to residential mortgage borrowers since 2010. Wells Fargo again refuses to answer citing the same objections as in its response to Interrogatory No. 18. Again, Plaintiffs seek this information because it relates to their claims that Wells Fargo failed to provide sufficient oversight and ensure it was not harming borrowers. Wells Fargo objects the term "remediations" is vague and ambiguous. To the extent there is any confusion, Plaintiffs are requesting the total number of remediations related to residential borrowers since 2010. Plaintiffs understand remediations are typically assigned a number, whether a RID or SHRP or some other description.



**Interrogatory No. 21**

Plaintiffs ask Wells Fargo to provide various information about the permanent mortgage modification that each named Plaintiff would have been approved for in the absence of the calculation error. Wells Fargo objects this Interrogatory is overbroad, disproportionate, seeks irrelevant information, burdensome, "would have been approved" is vague, and that it is "unintelligible and unanswerable as to permanent modifications." Plaintiffs are perplexed by these objections. Plaintiffs are entitled Wells Fargo's response, under oath, regarding the terms of a permanent modification that Plaintiffs would have received in the absence of Wells Fargo's error.

**Plaintiffs' Fourth Set of Interrogatories**

**Interrogatory No. 22**

If Wells Fargo denies RFA No. 1, Plaintiffs ask Wells Fargo to explain why and identify any security instrument for any class member Wells Fargo claims does not have the language identified in their security instrument. Wells Fargo admits as to the named Plaintiffs but objects that the Interrogatory is premature and overly broad as to any non-named plaintiffs. As outlined above regarding Request for Admission No. 1, this information is relevant to Plaintiffs' claims, including Plaintiffs' claims that the class members are similar to them. There is no basis to object that this Interrogatory is "premature." The court has not ordered sequencing of discovery. Please supplement this response.

**Plaintiffs' Second Set of Requests for Production**

**Request No. 24**

Plaintiffs seek communications between Defendant and any federal or state government official, regarding Defendant's compliance with HAMP and/or mortgage modification practices. This Request specifically excludes communications with the Office



of the Comptroller of the Currency and the Federal Reserve. Nonetheless, Wells Fargo refuses to produce responsive documents and objects this Request is overly broad, unduly burdensome, disproportionate, seeks irrelevant information, and that the phrase "compliance with HAMP" is vague and ambiguous. Wells Fargo also objects this Request seeks documents protected by the bank examination privilege. First, Wells Fargo has not demonstrated how this Request is unduly burdensome. Plaintiffs are not seeking privilege information; to avoid any doubt, this Request also exempts communications with the FDIC. What Wells Fargo told other members of the public is directly relevant to Plaintiffs' claims. Nonetheless, as a show of good faith, Plaintiffs are willing to limit this Request to communications with any federal or state government official regarding the error as disclosed in the Form 10-Q (specifically excluding communications with the OCC, Federal Reserve, and/or FDIC).

### Request No. 25

Plaintiffs seek communications from customers to Wells Fargo from 2010 until December 21, 2018 regarding concerns about Defendant's compliance with HAMP and/or Defendant's mortgage modification practices. Wells Fargo refuses to produce documents objecting the Request is overly broad, unduly burdensome, disproportionate, seeks irrelevant information, and that the phrase "compliance with HAMP" is vague and ambiguous. This Request is relevant to Plaintiffs' claims that Wells Fargo had numerous issues with its mortgage modification practices, including that it was on notice from customers about issues with its mortgage modification practices. Prior complaints from customers are directly relevant to Plaintiffs' claims. Nonetheless, Plaintiffs are willing to limit the scope of this Request to formal complaints regarding HAMP and mortgage modifications. Please supplement this Response.

### Request No. 26

This Request seeks documents regarding the "regular" audits of the HPA tool that Defendant described in its opposition to Plaintiffs' motion for class certification (Dkt. 149 at 11:5-9), including summary reports on the audit results and communications regarding how Defendant planned to address any issues that the audit(s) revealed. Defendant objects this Request is overly broad, unduly burdensome, disproportionate, seeks



December 18, 2019
Page 6

irrelevant information, and seeks privileged information. Defendant also objects it is duplicative of Request No. 21 and answers it has or will produce responsive documents in response to Request No. 21 but that "to the extent" there are other responsive documents, Defendant withholds them. As an initial matter, Request No. 21 seeks "documents containing findings and/or conclusions from any review of Your automated mortgage modification software" and Wells Fargo initially refused to produce documents in response to this Request. After meeting and conferring, Wells Fargo agreed to produce "informal and formal reports…that contained the calculation error(s) described in Wells Fargo & Company's Form 10-A for the quarterly period ending on September 30, 2018." *See* June 3, 2019 letter. First, please identify the documents produced in response to Request No. 21 by bates number. Second, Request No. 21 does not seek the same information; Wells Fargo has alleged it conducted "regular" audits of the HPA tool in its pleadings. Plaintiffs are entitled to information regarding these "regular" audits, including communications about how Defendant planned to address issues that arose in connection with these "regular" audits.

**Request No. 27**

Wells Fargo refuses to provide a copy of the handbook or a document explaining how the SLoaD tool works to determine a borrowers' eligibility for a loan modification. Wells Fargo objects that it is not relevant and that the request is unduly burdensome, overly broad, and disproportionate. The SLoaD decisioning tool is at issue in this case about how the tool did not account for attorneys' fees. Moreover, Wells Fargo provided a handbook for the HPA tool, another tool that is at issue. Plaintiffs are seeking simple documents that explain the SLoaD tool. Please produce responsive documents.

**Request No. 28**

This Request seeks documents regarding remediation of CIT 1600, an error opened at or around the same time as the error at issue in this case. That error was about Wells Fargo's wrongful denial of loan modifications on account of a faulty attorney fee matrix for VA loans. Wells Fargo refuses to produce responsive documents objecting that the requested information is not relevant, overly broad, unduly burdensome, and seeks information protected by attorney-client privilege, bank examination privilege, and/or work



product. Information about a very similar error is directly relevant to Plaintiffs' claims. Wells Fargo does not explain how this Request is overly broad or how it is unduly burdensome to provide the requested documents. If Wells Fargo is withholding documents on the basis of attorney-client privilege, please provide a privilege log. Moreover, Plaintiffs are not seeking documents protected by bank examination privilege; all documents about remediation are not privileged. Please produce non-privileged, responsive documents.

**Request No. 29**

Plaintiffs seek documents showing conclusions and action items regarding attorneys' fees in the modification decisioning process as a result of the summit regarding fees in 2014. Wells Fargo objects this Request is overly broad, unduly burdensome, and disproportionate to the claims in this case. Wells Fargo also objects this Request seeks information protected by the attorney-client privilege, bank examination privilege, and/or work product doctrine. Wells Fargo further objects this Request is duplicative of Request No. 7 but answers it will produce non-privileged documents responsive to Request No. 7 that it can locate but will withhold other documents. Request No. 7 seeks "documents related to any miscalculations of Net Present Value for purposes of assessing the eligibility of any Wells Fargo customer of a loan modification under HAMP, including but not limited to its creation, its impact, and its correction." Request No. 7 is not duplicative of this Request that seeks a very specific category of documents regarding the fee summit Wells Fargo held in 2014, which Plaintiffs understand was *not* limited to just Net Present Value. This Request is directly relevant to Plaintiffs' claims, including that Wells Fargo had numerous errors within its loan modification decisioning process related to fees. If Wells Fargo contends it has already produced all documents responsive to this Request, please identify them by bates number. Otherwise, please produce responsive documents.

**Request No. 30**

This Request is for a copy of the "Commitment to Customer" policy that Defendant implemented in 2015. Wells Fargo objects this Request is overbroad and disproportionate, seeks irrelevant documents, and that the phrase "Commitment to Customer policy that Defendant implemented in 2015" is vague and ambiguous. These



objections are not well received. As an initial matter, this request is directly relevant to Plaintiffs' claims. To the extent Wells Fargo is not clear what is meant by this Request, please see Ms. Bell's testimony at 100:12-102:5. She specifically references the policy in her deposition testifying, there "likely is another actual official non-PowerPoint version of the corporate policy." *Id.* at 101:16-19; *see also* Depo Ex. 400. This document is relevant to Plaintiffs' claims that Wells Fargo failed to implement sufficient oversight to avoid errors. Please provide the requested document.

**Request Nos. 31 & 32**

Wells Fargo did not provide responses to these Requests that seek documents regarding HPU-40/CIT 1600/CCR 17127 (No. 31) and documents regarding insurance claims submitted and paid to Defendant in connection with foreclosures of class members' homes (No. 32). Please provide responsive documents immediately.

**Plaintiffs' Third Set of Requests for Production**

**Request Nos. 33 & 34**

These Requests seek a complete copy of the loan files for the putative class members. Wells Fargo states it will produce the loan file for California class members but refuses to produce loan files for other class members. Plaintiffs struggle to understand the distinction between providing documents for some class members but not others, especially where Wells Fargo has contended it will not be required to provide further documents after the close of discovery. Please supplement this response.

**Requests Nos. 35 & 36**

Plaintiffs ask Wells Fargo to provide a copy of any security instrument that does not include language regarding the "action required to cure the default" (No. 35) and any security instrument that is not a Fannie Mae/Freddie Mac or FHA form version (No. 36). Wells Fargo objects both Requests are overly broad and premature because a class has not yet been certified and objects that production of non-California out-of-state putative class members would "be improper absent court order," among other reasons. Wells



December 18, 2019
Page 9

Fargo appears to be contending it is not required to produce information for absent class members at this time but is not agreeing to produce the requested information at any point. Given Wells Fargo's recent statements that discovery is not going to be bifurcated, Plaintiffs must insist that Wells Fargo produce this information now.

We are available to talk this week if you would like to hop on the phone and talk through these issues. Otherwise, we ask that Wells Fargo produce the documents and information requested in short order after the holidays, by **January 6, 2020**.

Best regards,

Laura C. Fellows