UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALICIA HERNANDEZ, EMMA WHITE, KEITH LINDNER, TROY FRYE, COSZETTA TEAGUE, IESHA BROWN, RUSSELL and BRENDA SIMONEAUX, JOHN and YVONNE DEMARTINO, ROSE WILSON, TIFFANIE HOOD, GEORGE and CYNDI FLOYD, DEBORA GRANJA, and DIANA TREVINO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | No. C 18-07354 WHA<br><br>**ORDER RE MOTION FOR CLASS CERTIFICATION, MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT, AND ADMINISTRATIVE MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF** |

**INTRODUCTION**

In this putative class action, plaintiffs move for class certification. For the following reasons, the motion is **GRANTED IN PART AND DENIED IN PART.**

**STATEMENT**

Previous orders have stated the basic facts. In brief, plaintiffs all had their mortgage loans serviced by defendant Wells Fargo Bank, N.A. Although they met the Home Affordable Modification Program (HAMP) requirements, defendant failed to offer them mortgage modifications. Later, defendant discovered a calculation error that had caused certain fees to

be misstated and had resulted in incorrect mortgage modification denials (Amd. Compl. ¶¶ 30–69, 109–13).

The operative complaint makes the following claims: breach of contract, intentional infliction of emotional distress, wrongful foreclosure, violation of California's Homeowners Bill of Rights, violation of California's unfair competition law, and violations of state consumer protection laws. Based on these theories, plaintiffs seek to certify the following nationwide class:

> All persons who between 2010 and 2018 (i) qualified for a home loan modification or repayment plan pursuant to the requirements of government-sponsored enterprises (such as Fannie Mae and Freddie Mac), the Federal Housing Administration (FHA), the U.S. Department of Treasury's Home Affordable Modification Program (HAMP); and (ii) were not offered a home loan modification or repayment plan by Wells Fargo due to excessive attorney's fees being included in the loan modification decisioning process.

Plaintiffs also seek to certify a number of state subclasses based on violations of state consumer protection laws. Of note are the following California subclasses:

> <u>California Subclass:</u> All members of the Nationwide Class whose home was secured by real property located in California.
>
> <u>California Wrongful Foreclosure Subclass:</u> All members of the California subclass whose home Wells Fargo sold in foreclosure.

In the alternative, plaintiffs request that if the Court holds certification of the nationwide class in abeyance to test the viability of plaintiffs' assertions that plaintiffs' counsel could present a common method of proof at trial, then the following California class should be certified instead:

> <u>California Class:</u> All persons whose home loan was secured by real property located in California who between 2010 and 2018 (i) qualified for a home loan modification or repayment plan pursuant to the requirements of government-sponsored enterprises (such as Fannie Mae and Freddie Mac), the Federal Housing Administration (FHA), or the U.S. Department of Treasury's Home Affordable Modification Program (HAMP); and (ii) were not offered a home loan modification or repayment plan by Wells Fargo due to excessive attorney's fees being included in the loan modification decisioning process.

## ANALYSIS

### 1. MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT.

Plaintiffs seek leave to amend in connection with their renewed motion for class certification and in response to this Court's statement that plaintiffs should consider the possibility of certifying a California class while holding a nationwide class in abeyance (Dkt. No. 169). Although plaintiffs have been aware of the relevant facts since before the July 28 deadline to amend, plaintiffs' proposed amended complaint now seeks to add Sandra Campos, a California resident whose property was secured by an FHA instrument, reasoning that it would be prudent to have such a representative to avoid any conflict between the parties as to whether the Fannie Mae/Freddie Mac and FHA contracts are so different that two representatives would be needed. Given this, good cause exists for allowing leave to amend. Defendant's primary concern about the potential prejudice to discovery will be addressed below. The motion for leave to file a third amended complaint is **GRANTED**. Plaintiffs shall file a third amended complaint in comport with this order by **FEBRUARY 6 AT NOON**.

### 2. MOTION FOR CLASS CERTIFICATION.

Pursuant to FRCP 23(a), for a named plaintiff to obtain class certification, the district court must find: (1) numerosity; (2) common questions of law or fact; (3) typicality; and (4) adequacy of the class representatives and counsel. In addition to satisfying FRCP 23(a)'s prerequisites, the party seeking class certification must show that the action is maintainable under FRCP 23(b)(1), (2), or (3). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613–14 (1997). FRCP 23(b)(3) specifically requires predominance and superiority.

The party seeking class certification may also move for certification under FRCP 23(c)(4), which allows an action to be "brought or maintained as a class action with respect to particular issues." Under FRCP 23(c)(4), the party must satisfy the requirements of FRCP 23(a), superiority, and demonstrate that certification would "materially advance [] the disposition of the litigation as a whole." *Rahman v. Mott's LLP*, 693 F. App'x 578, 579 (9th Cir. 2017)(citations omitted).

Plaintiffs seek certification of a nationwide class for their breach of contract claim as well as resolution of the issue of whether defendant's conduct was extreme and outrageous for their intentional infliction of emotional distress claim. Plaintiffs also seek certification of a California subclass for their Homeowner Bill of Rights and Section 17200 claim, and a further California subclass for their wrongful foreclosure claim.

Plaintiffs have stated they are only seeking certification of liability classes for these claims, and that a remedies phase will need to follow in which a jury will determine the individualized damages of the class members. Our court of appeals has found that even if common questions do not predominate, the district court in appropriate cases may isolate the common issues under FRCP 23(c)(4)(A) and proceed with class treatment of those particular issues. *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir.1996). Although plaintiffs correctly contend that the presence of individualized issues does not defeat the possibility of class certification, liability-only class certification is only permissible under FRCP 23(c)(4)(A).

Setting aside the procedural snafus by plaintiffs' counsel, the action will proceed to trial on both liability and damages together. For the reasons stated below, certification of plaintiffs' proposed classes is **DENIED**. Instead, the following nationwide class is certified as to the breach of contract claim under FRCP 23(b)(3):

> All persons in the United States who between 2010 and 2018 (i) qualified for a home loan modification or repayment plan pursuant to the requirements of government-sponsored enterprises (such as Fannie Mae and Freddie Mac), the Federal Housing Administration (FHA), the U.S. Department of Treasury's Home Affordable Modification Program (HAMP); (ii) were not offered a home loan modification or repayment plan by Wells Fargo due to excessive attorney's fees being included in the loan modification decisioning process; and (iii) whose home Wells Fargo sold in foreclosure.

In other words, we will, on a nationwide basis, determine the value of the equity lost by each homeowner through a foreclosure by reason of the failure of Wells Fargo to give notice of the modification procedure (assuming that it is a breach of contract). There will not otherwise be a wrongful foreclosure subclass.

4

### A. BREACH OF CONTRACT CLAIM.

#### (i) Numerosity.

Numerosity requires an examination of the specific facts of each case and imposes no absolute limitations. *Gen. Tel. Co. of the Nw. v. Equal Employment Opportunity Comm'n*, 446 U.S. 318, 330 (1980). Numerosity is generally satisfied, however, when the class contains 40 members, and insufficient for classes of 20 or fewer. When a proposed class falls in the gray area, courts will consider (1) the judicial economy that will arise from avoiding multiples actions; (2) the geographic dispersion of putative class members; (3) putative class members' financial resources; (4) the ability of members to file individual suits; and (5) requests for prospective relief that may have an effect on future class members. *Greko v. Diesel U.S.A., Inc.,* 277 F.R.D. 419, 425 (N.D. Cal. 2011); *see also Ansari v. New York Univ.*, 179 F.R.D. 112, 114–115 (S.D.N.Y. 1998).

Under the new class definition, there would be at least 33 class members (15 in California and 18 in Georgia), but likely more as it would include all individuals nationwide, not just two states. Even if there were only 33 class members, certification would still be appropriate. Although joinder might be practical, especially given counsel's admission that they represent ten of the California borrowers and the fact that the damages are not insignificant, the class members' geographic dispersal as well as their lack of financial resources weigh in favor of certification. Importantly, many of the individuals would not have the financial resources to develop the extensive evidence or hire the necessary experts that have already been produced here. Thus, a nationwide class here satisfies numerosity.

#### (ii) Commonality and Predominance.

Plaintiffs allege defendant breached the Fannie Mae/Freddie Mac and FHA contracts by failing to notify class members of the possibility of a mortgage modification.

*First,* defendant argues that there would be far too many individualized inquiries for a claim of breaching the above clauses in the contract because state law governs the contracts in question. Contrary to the bank, construing the standardized contracts should not degenerate into a myriad of individual issues. The contracts are standardized. One is Fannie Mae/Freddie

5

Mac and the other is FHA, standard form agreements, used throughout the United States. Both provide:

> This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.

The federal law includes federal common law and will be uniform — no individualized issues state by state. The phrase "the law of the jurisdiction in which the Property is located" refers to the state law where the property is located. It is true that this law might vary from state to state. The Court is confident, however, that the variations from state to state can be handled within the overall management of the classwide trial of the contract claim.

The common issue is whether these standard form contracts — uniform throughout the United States — required the lender to provide notice that loan modifications were available such that Wells Fargo's failure to give notice of the loan modifications constituted a violation of the contracts. The Fannie/Freddie contract, for example, contained the following language:

> Lender shall give notice to Borrower prior to acceleration following Borrower's breach . . . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date not less than 30 days from the date the notice is given to Borrower, by which default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property.

The FHA contract contained the following language:

> In many circumstances, regulations issued by the Secretary will limit Lender's rights . . . This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

In its annual report to Congress for FY2011, HUD then stated, "FHA has maintained a robust set of policies for loan servicer engagement with borrowers to provide assistance in curing mortgage delinquencies" using tools such as "loan modifications."

Contrary to the bank, the undersigned judge has not specifically found that the law of all fifty states will apply as opposed to federal common law. It is true that in an earlier case, a plaintiff argued that California law should apply but the undersigned found that the law of Arkansas rather than California would be applicable. *Lane v. Wells Fargo Bank, N.A.*, 2013 WL 3187410 at *4 (N.D. Cal June 21, 2013). In that case, however, no one raised the issue of

the extent to which federal law might creep in. It was common ground among those litigants that state law would govern and the only issue was whether it was Arkansas or California. That order chose Arkansas. Similarly, the fact that the law of all fifty states might be "implicated," as that order put it, does not finally resolve the issue of the extent to which the particular issue in that case, much less our case, is in fact governed by federal law or that even if state law applies, the extent to which any differences would swamp manageability of this case.

*Second,* the bank argues that common issues do not predominate because there are two contracts at issue. The presence of some individualized inquiries as to the contracts, however, does not defeat commonality. Here, the claim alleged is the same for all plaintiffs (failure to receive a notification regarding mortgage modification) and plaintiffs have demonstrated that the issue can be resolved by analyzing the two contracts. It is conceivable that one side or the other will attempt to use extrinsic evidence on a borrower by borrower basis to vary the meaning of the above mentioned clauses. If and when this occurs, this order finds that it will be manageable even in a nationwide class setting.

*Third,* the bank next argues causation and damages cannot be determined with common evidence. Defendant is correct that calculating damages for each of the class members in a nationwide breach of contract class would require individualized inquiries into the circumstances of their modification denial, their ability to pay, acceptance of previous repayment plans, their intent, and a number of other factors. Under the new class definition, which limits the class only to those whose homes were foreclosed on, however, damages can be calculated through common evidence based on the value of the equity lost by each homeowner through a foreclosure.

*(iii) Typicality.*

Typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FRCP 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same

7

course of conduct." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation and quotation marks omitted).

Plaintiffs Granja and Campos are typical of the proposed class. Granja signed a Fannie/Freddie contract and Campos signed an FHA contract. All claim they were harmed when Wells Fargo failed to notify them they could cure default with a loan modification, and then ultimately foreclosed on their homes. These are the same claims class members have. The typicality requirement is thus satisfied.

### *(iv) Adequacy.*

FRCP 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This prerequisite has two parts: (1) that the proposed representative plaintiff and her counsel do not have any conflicts of interest with the proposed class; and (2) that they will prosecute this action vigorously on behalf of the class. *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998). Plaintiffs Granja and Campos are adequate class representatives. On the current record, no evidence has been presented to indicate that plaintiffs have any conflict with other putative class members.

Defendant, however, questions counsel's ability to prosecute the action vigorously and points to a number of shortfalls in their motion and trial plan such as asking the Court to enter judgment without first allowing class members an opportunity to opt out and failing to consider how to obtain and present evidence related to class member damages in advance of the discovery cut-off. The Court also notes a number of procedural snafus by plaintiffs' counsel as well a lack of clarity in their original class certification briefing and submitted exhibits. Plaintiffs' counsel have, nonetheless, acted diligently here and although have made a number of missteps, are adequate.

### *(v) Superiority.*

Class certification under FRCP 23(b)(3) is appropriate only if class resolution is superior to other available methods for fairly and efficiently adjudicating the controversy. Four factors are considered in determining superiority: (1) class members' interests in individually controlling the prosecution or defense of separate actions, (2) the extent and nature of any

8

litigation regarding the same controversy; (3) the desirability or undesirability of litigating all claims in the same forum; and (4) the likely difficulties in managing a class action.

The first factor weighs in favor of superiority because the only damages here will be the value of equity due to foreclosure, which are relatively large. The second factor slightly weighs against certification. There are at least eight other actions involving the software error in question, which is not insignificant. The third factor weighs in favor of superiority as this Court has overseen this case for well over a year and is familiar with the underlying issues. The fourth factor also weighs in favor of superiority as the significant issues here are common among class members. As stated above, individualized questions regarding issues such as extrinsic evidence will be manageable even in a nationwide class setting. On balance, class certification under the new class definition is superior.

### B.    REMAINING CLAIMS.

#### (i)    Intentional Infliction of Emotional Distress.

Plaintiffs seek certification of an issue class that defendant's conduct was "outrageous" for purposes of their intentional infliction of emotional distress claim under FRCP 23(c)(4). Determining whether conduct is outrageous is not only dependent on each state's laws (which vary widely), but also on the facts and circumstances of each individual putative class member. Hypothetically, one putative class member could be an impoverished individual who attempted to make her mortgage payments, and was wrongfully denied a mortgage modification, while another putative class member could have repeatedly failed to make his mortgage payments due to negligence, but was also denied a mortgage modification. Defendant's conduct could be considered outrageous in one situation and not the other. Such individualized inquiries greatly undermine commonality and defeat class certification. The motion for certification of a nationwide class as to the issue of whether defendant's conduct was "outrageous" is thus **DENIED**.

#### (ii)    State Consumer Law Claims.

Plaintiff has moved for certification of various state subclasses for violations of their respective state consumer protection laws. The state consumer laws here are materially

9

different. Common issues would not predominate and accordingly, certification of the state subclasses is **DENIED.**

### *(iii) California Section 17200 and Homeowner Bill of Rights Claims.*

The proposed California class would be at most 24 class members, but likely less as some of these individuals do not plan to participate in the action. Furthermore, 10 of these individuals are already represented by counsel here. Joinder would be practicable and certification of the California classes is **DENIED**.

### *(iv) Wrongful Foreclosure Claims.*

The California wrongful foreclosure class would have at most, 15 members. The Georgia wrongful foreclosure class would have at most, 18 members. As stated above, such classes are not sufficiently numerous. Certification of the wrongful foreclosure subclasses are accordingly **DENIED**. Damages will be obtainable via the contract claim.

### 3. ADMINISTRATIVE MOTION FOR LEAVE TO FILE A SUPPLEMENTAL BRIEF.

Defendant has filed an administrative motion for leave to file a supplemental brief regarding the calculation of restitution made by plaintiffs' damages expert, Dan Salah. Given the limited class certification only as to the breach of contract claim, not Section 17200, the motion is **DENIED AS MOOT**.

## CONCLUSION

For the reasons stated below, plaintiffs' motion for class certification is **GRANTED IN PART** and **DENIED IN PART.** The following class is **CERTIFIED**:

> All persons in the United States who between 2010 and 2018 (i) qualified for a home loan modification or repayment plan pursuant to the requirements of government-sponsored enterprises (such as Fannie Mae and Freddie Mac), the Federal Housing Administration (FHA), the U.S. Department of Treasury's Home Affordable Modification Program (HAMP); (ii) were not offered a home loan modification or repayment plan by Wells Fargo due to excessive attorney's fees being included in the loan modification decisioning process; and (iii) whose home Wells Fargo sold in foreclosure.

10

The class is certified only with respect to the breach of contract claim.  This class definition shall apply for all purposes, including settlement.  If further discovery is needed as to plaintiff Campos or any other issue, the Court is amenable to reopen discovery for a limited period.

Plaintiffs Granja and Campos are **APPOINTED** as class representatives.  Michael Schrag of Gibbs Law Group LLP and Richard Paul of Paul LLP are **APPOINTED** as class counsel.  By **FEBRUARY 20,** the parties shall jointly submit a proposal for class notification with a plan to distribute notice by first-class mail.

**IT IS SO ORDERED.**

Dated:  January 29, 2020.

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE