

February 5, 2020

<u>**VIA ECF**</u>

Hon. Laurel Beeler
San Francisco Courthouse
Courtroom B – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

**Re: *Hernandez et al. v. Wells Fargo Bank, N.A.*, Case No. 3:18-cv-07354-WHA**

Dear Judge Beeler:

The parties have reached an impasse with respect to the discovery disputes outlined below and submit this joint letter pursuant to the Court's standing order (Dkt. 201-1). The parties met and conferred in person on January 17 and January 23 and again by telephone on January 31, and while they were able to resolve some disputes, they have not been able to resolve their disagreement on the below issues.

**Timing of Plaintiffs' Request**

First, the parties disagree as to whether Plaintiffs have good cause for an extension of the motion to compel deadline under Local Rule 37-3.

<u>**Plaintiffs' Position**</u>

In late November and early December, Wells Fargo served its objections and responses to Plaintiffs' latest set of discovery requests but refused to produce responsive information and documents to nearly all of those requests.[1] The scheduling order in this case set December 18, 2019 as the fact discovery cut-off date. Dkt. 63 at ¶ 4. Local Rule 37-3 requires that a motion to compel discovery be filed within seven days of the fact discovery cut-off date – in this case, December 25. On December 18, Plaintiffs sent Wells Fargo a letter explaining the deficiencies in its discovery responses and offered to meet and confer the following day. In response, Wells Fargo agreed to meet and confer, and asked for clarification as to some of the issues raised in the letter.[2] Wells Fargo's counsel stated they were available to meet and confer on December 31, and

---

[1] In response to Plaintiffs' earlier requests for production, Wells Fargo produced documents in a "rolling" production that began in May 2019 and continued up until the discovery cut-off date.

[2] On December 23, Wells Fargo's counsel asked Plaintiffs' counsel for clarification on a document that was requested in the meet and confer letter. *See* **Exh. 1**. Wells Fargo also served supplemental responses to certain requests that it omitted from its original responses, even though a full set of responses was due more than a month earlier.

Plaintiffs agreed to that date with the understanding that Wells Fargo would meet and confer in good faith. On that call, however, Wells Fargo refused to discuss any substantive issues, taking the position that the motion to compel deadline had passed. Plaintiffs now seek a short extension of the motion to compel deadline, which fell on Christmas Day, and move to compel responses to certain discovery requests.[3]

Plaintiffs have diligently sought this discovery – in some cases for many months – and should now be allowed to bring their motion. *See, e.g.*, *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) ("Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment."). Such extensions are routinely granted in cases like this, where Plaintiffs attempted to meet and confer before the motion to compel deadline and tried to resolve the disputes without resort to a motion to compel. *See, e.g.*, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2015 WL 13655173, at *4 (N.D. Cal. Aug. 6, 2015) (finding good cause under FRCP and Local Rule 37-3 to excuse an untimely motion to compel because the parties had made good faith agreement attempting to resolve their discovery dispute); *Employers Ins. of Wausau v. California Water Serv. Co.*, 2007 WL 2893591 (N.D. Cal. Sept. 28, 2007) (finding good cause to extend the deadline for discovery motions because plaintiff's document request was served before the discovery cut-off). Here, a short extension of the Christmas day deadline will not prejudice Wells Fargo.

**Defendant's Position**

Under Local Rule 37-3, "no motions to compel discovery may be filed more than seven days after the discovery cut-off." Civ. L.R. 37-3. Plaintiffs were thus required to file any motion to compel on or before December 26, 2019. Their latest attempt to ignore this Court's scheduling order should be rejected out of hand. *See* Wells Fargo's Discover Letter (Dkt. 199) at 2 n.1 ("Plaintiffs have a history of ignoring this Court's scheduling order, including by sandbagging Wells Fargo with 63 new witnesses in an "initial" disclosure served after the discovery cut-off, serving two belated motions to amend, noticing more than 10 depositions, serving discovery requests due after the cut-off, and noticing depositions postdating the cut-off."). Plaintiffs' belated request to extend the deadline should be denied because they do not and cannot demonstrate "good cause." Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). Indeed, in the Court's Order referring the instant dispute to Your Honor, Judge Alsup made plain that "[c]ounsel should be mindful that deadlines in the case management order will not be extended." Order Referring All Discovery Matters to Magistrate Judge to be Randomly Selected, Dkt. 200 (Jan. 10, 2020).

Plaintiffs acknowledge that "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). And courts do not "routinely grant" extensions when diligence is not shown. Dkt. 193 at 1. For example, in *Raymat Materials, Inc. v. A & C Catalysts, Inc.*, Judge Alsup denied a motion to extend the discovery period or "serve untimely discovery requests" because "no diligence has been shown to justify a finding of good cause for extending the scheduling order in such a dramatic way." 2014 WL 1647529, at *6 (N.D. Cal. Apr. 22, 2014).

---

[3] Plaintiffs' initial letter brief was filed on January 3, 2020. *See* Dkt. 193. The parties have since been able to resolve some of the disputes raised in Plaintiffs' initial letter brief.

Other courts frequently deny untimely motions to compel.  *See, e.g., Gomo v. NetApp, Inc.*, 2018 WL 6002322, at *1–2 (N.D. Cal. Nov. 15, 2018); *Nuance Commc'ns, Inc. v. ABBYY Software House*, 2012 WL 2838431, at *2 (N.D. Cal. July 10, 2012).

      Here, Plaintiffs do not demonstrate diligence, and their attempts to explain the failure to abide by the scheduling order are unavailing.  First, Plaintiffs neglect to mention that the dates they requested for a meet and confer call were December 27 or "Monday and Tuesday the following week", *i.e.* December 30 or 31, 2019, respectively.  *See* Dkt. 199-3 (Ex. C to Wells Fargo's response). [4]  The motion to compel deadline was December 26, so these requested dates fell after the motion to compel deadline.  Second, Plaintiffs' statement that they were somehow "accommodating" Wells Fargo to meet and confer after the motion to compel deadline is wrong.  Indeed, when the parties had their meet-and-confer call, it was clear Plaintiffs had not realized there was a motion to compel deadline at all, let alone that the deadline had passed.  After determining that Plaintiffs were unprepared to discuss whether "good cause" existed for their tardiness, Wells Fargo offered to meet and confer further and provide Plaintiffs with an opportunity to explain any basis they felt they had that might excuse their lateness.  Plaintiffs' counsel stated they would think about the issue further.  Instead of reaching out to meet and confer, however, Plaintiffs filed their discovery dispute letter.  Dkt. 193 (Jan. 3, 2020).  This is not diligence.  Finally, Plaintiffs' attempt to show diligence by claiming that they served the requests at issue before the discovery cut-off is insufficient to establish "good cause" for modifying the scheduling order.  Wells Fargo provided responses to these requests several weeks ago, *see* Dkt. 199-5, 199-6, 199-7, 199-8, 199-9 (Exs. E–I to Wells Fargo's response), and Plaintiffs responded to Wells Fargo's objections in a letter sent only eight days before the motion to compel deadline.  *See* Dkt. 199-2 (Ex. B to Wells Fargo's response).  Because Plaintiffs were not diligent, their request to extend the motion to compel deadline should be denied.

### Interrogatories Nos. 15-19

      In the interest of space, the parties attach hereto a copy of the relevant interrogatory responses as **Exhibit 2**. The parties dispute whether Wells Fargo must provide responses to Plaintiffs' interrogatories that seek information regarding Wells Fargo's prior errors.

### **Plaintiffs' Position**

      Broadly, these requests seek information regarding the scope of Wells Fargo's prior errors in residential mortgage servicing. These errors are relevant because they show large-scale

---

[4] Plaintiffs do not provide a citation for their statement that they offered to meet and confer on December 19 and December 20, 2019.  *See generally* Dkt. 193.  Presumably, they rely on their December 18 meet-and-confer letter, which they conveniently failed to attach.  The December 18 letter states only: "We are available to talk this week if you would like to hop on the phone and talk through these issues.  Otherwise, we ask that Wells Fargo produce the documents and information requested in short order after the holidays, by January 6, 2020."  Dkt. 199-2 (Ex. B to Wells Fargo's response).  January 6 falls almost two weeks after the motion to compel deadline, further demonstrating Plaintiffs were—again—ignoring the scheduling order.

lapses in oversight over Wells Fargo's loan modification practices, which led to the specific error that affected Plaintiffs. Moreover, the prior errors are relevant because Wells Fargo's expert argues "the existence of an error does not indicate that Wells Fargo acted unreasonably." *See* **Exh. 3**, Ross Report excerpts at p. 26. Although Wells Fargo contends it would have to search e-mail custodians again (or new custodians) in order to provide this information, Plaintiffs are seeking simple written responses (which Plaintiffs understand Wells Fargo maintains in the ordinary course of business). It would not be burdensome for Wells Fargo to provide this information and it should not require Wells Fargo to search e-mail custodians.

**Defendant's Position**

These requests (Interrogatories 15-19) seek information regarding foreclosures, mortgage modifications, and repayment plans generally and are completely unrelated to any alleged calculation error or conduct on the part of Wells Fargo that allegedly caused Plaintiffs' injuries here. *See* Dkt. 199-5 (Ex. E to Wells Fargo's response). By way of example, Interrogatory No. 15 asks that Wells Fargo "[s]tate the total number of homes since 2010 on which [it] foreclosed and later determined it made a mistake in foreclosing." These requests are nearly unbounded in scope and would require Wells Fargo to provide information that that is not relevant or proportional to this litigation, and as such, far exceeds the scope of discovery permitted under Fed. R. Civ. P. 26(b)(1).

### Request for Production No. 24

In the interest of space, the parties attach hereto a copy of the relevant request for production and response as **Exhibit 4**. Plaintiffs seek to compel Wells Fargo to provide a response to this request that seeks non-privileged communications regarding the error at issue in this case between Wells Fargo and government officials.

**Plaintiffs' Position**

Plaintiffs asked for a copy of communications between Wells Fargo and members of the state and/or federal government (such as legislators) regarding compliance with HAMP but specifically excluded communications protected by the bank examination privilege. During the course of the meet-and-confer, Plaintiffs agreed to limit this request to communications regarding the specific error at issue in this case; in fact, Wells Fargo has provided some documents that apparently hit on other search terms showing that the bank was contacted by at least one legislator regarding this error. Plaintiffs have alleged Wells Fargo failed to heed government warnings about deficiencies in its loan modification decisioning; Wells Fargo's responses to the government about its deficiencies are therefore relevant.

**Defendant's Position**

Wells Fargo should not be required to comply with Plaintiffs' overbroad, burdensome, vague, and unbound-in-time request for "*[a]ll*" communications between Wells Fargo and the government related to "compliance with HAMP" and mortgage modification practices. Dkt. 199-6 (Ex. F to Wells Fargo's response). Whatever this request means, it encompasses considerable

information that is irrelevant and disproportionate to the needs of the case and claims at issue. Plaintiffs' later agreement to limit this request to communications regarding the specific error at issue in this case does not solve these issues and, in any event, should have been narrowed at the outset. *See* Judge Alsup's Standing Order, ¶ 17 ("When the judge finds (on motion) that a request was unreasonably burdensome or otherwise objectionable from the outset, his normal practice is to strike it in its entirety rather than to try to salvage some narrower element lurking within it. Again, the judge's approach is intended to encourage reasonably narrow requests from the start, meaning don't ask for more than you deserve with the expectation that the judge will cut it back to what you deserve. He will cut unreasonably burdensome requests back to zero.").

### Request for Production Nos. 28, 31

In the interest of space, the parties attach hereto a copy of the relevant request for production and response to Request No. 28 as **Exhibit 4**. Response to Request No. 31 is attached as **Exhibit 5**.

### Plaintiffs' Position

Plaintiffs seek documents regarding an error almost identical to the one at issue here, involving an unmaintained attorney fee matrix that led to the wrongful denial of VA loan modifications around the same time period as the error at issue in this case. These documents are directly relevant to Wells Fargo's notice and reckless indifference to problems in its loan modification decisioning software that ultimately led to the wrongful denial of modifications to Plaintiffs and class members.

### Defendant's Position

Wells Fargo incorporates its position as outlined above in response to Plaintiffs' Interrogatories Nos. 15-19, for these requests (Plaintiffs' Request for Production Nos. 28 and 31). *See also* Dkt. 199-6 (Ex. F to Wells Fargo's response), 199-10 (Ex. J to Wells Fargo's response). Indeed, these requests seek information unrelated to any alleged calculation error or conduct on the part of Wells Fargo that allegedly caused Plaintiffs' injuries here. *See* Dkt. 199-5 (Ex. E to Wells Fargo's response). Wells Fargo should not have to provide information that that is not relevant or proportional to this litigation and that exceeds the scope of discovery permitted under Fed. R. Civ. P. 26(b)(1).


/s/ Michael Schrag                          /s/ Amanda Groves
 Michael Schrag                               Amanda Groves

*Counsel for Plaintiffs*                    *Counsel for Defendant*