Amanda L. Groves (SBN: 187216)
agroves@winston.com
Morgan E. Stewart (SBN: 321611)
mstewart@winston.com
**WINSTON & STRAWN LLP**
101 California Street, 35th Floor
San Francisco, CA  94111-5802
Telephone:     (415) 591-1000
Facsimile:      (415) 591-1400

Kobi K. Brinson (Admitted *pro hac vice*)
kbrinson@winston.com
Stacie C. Knight (Admitted *pro hac vice*)
sknight@winston.com
**WINSTON & STRAWN LLP**
300 South Tryon Street, 16th Floor
Charlotte, NC 28202
Telephone:     (704) 350-7700
Facsimile:      (704) 350-7800

Attorneys for Defendant
WELLS FARGO BANK, N.A.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| ALICIA HERNANDEZ, *et al*., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | No. 3:18-cv-07354 WHA<br><br>**DEFENDANT WELLS FARGO BANK, N.A.'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: April 2, 2020<br>Time: 8:00 a.m.<br>Courtroom: 12<br>Judge: Hon. William H. Alsup |

1

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2

**PLEASE TAKE NOTICE THAT** on April 2, 2020 at 8:00 a.m., or as soon thereafter as the

3

matter may be heard, in Courtroom 12 of the above-entitled court, located at 450 Golden Gate

4

Avenue, San Francisco, California, Defendant Wells Fargo Bank, N.A. ("Wells Fargo") will and

5

hereby does move, under Rule 56 of the Federal Rules of Civil Procedure, for partial summary

6

judgment on Plaintiffs' class claim for breach of contract, and on their individual claims for

7

wrongful foreclosure and violations of the California Unfair Competition Law. Wells Fargo also

8

seeks summary judgment on Plaintiff Sandra Campos' claim under the California Homeowner Bill

9

of Rights.

10

This Motion is based upon this Notice of Motion and Motion, the accompanying

11

Memorandum of Points and Authorities, the Declarations of Robert Ferguson and Stacie C. Knight,

12

the record in this action, and any other written or oral submission that may be presented at or before

13

the hearing on this Motion.

14

Dated: February 20, 2020                            Respectfully submitted,

15

16                                                          **WINSTON & STRAWN LLP**

17
                                                     By: /s/ *Amanda L. Groves*
18                                                       Amanda L. Groves (SBN: 187216)
                                                         agroves@winston.com
19                                                       Morgan E. Stewart (SBN: 321611)
                                                         mstewart@winston.com
20                                                       101 California Street, 35th Floor
                                                         San Francisco, CA  94111-5802
21                                                       Telephone:    (415) 591-1000
                                                         Facsimile:    (415) 591-1400
22
                                                         Kobi K. Brinson (Admitted *pro hac vice*)
23                                                       kbrinson@winston.com
                                                         Stacie C. Knight (Admitted *pro hac vice*)
24                                                       sknight@winston.com
                                                         300 South Tryon Street, 16th Floor
25                                                       Charlotte, NC 28202
                                                         Telephone:    (704) 350-7700
26                                                       Facsimile:    (704) 350-7800

27

28

# <u>TABLE OF CONTENTS</u>

<b>Page</b>

I.    INTRODUCTION ................................................................................................... 1

II.   FACTUAL BACKGROUND ................................................................................. 1

III.  NAMED PLAINTIFFS GRANJA AND CAMPOS ............................................ 2

    A.   Debora Granja ............................................................................................ 2

        1.   The "Notice" Provision at Issue ..................................................... 3

        2.   Ms. Granja Defaulted on Her Loan By Failing to Make the
            Required Payments. ........................................................................ 3

    B.   Ms. Campos ............................................................................................... 5

        1.   The Provisions at Issue ................................................................... 5

        2.   Ms. Campos Defaulted on Her Loan By Failing to Make the
            Required Payments. ........................................................................ 6

IV.   THE COURT'S CLASS CERTIFICATION ORDER ........................................ 8

V.    ARGUMENT ........................................................................................................ 8

    A.   Plaintiffs' Classwide Breach of Contract Claim Fails as a Matter of Law. ................. 8

        1.   Choice of Law ................................................................................. 8

        2.   Wells Fargo Did Not Breach the Fannie Mae/Freddie Mac Deed of
            Trust. ............................................................................................. 10

            a.   The Fannie Mae/Freddie Mac Deed of Trust Did Not Require
                Wells Fargo to "Notify Plaintiffs They Could Cure Their
                Default and Avoid Acceleration and Foreclosure By Accepting
                a Mortgage Modification." ............................................ 11

            b.   Wells Fargo Complied With Paragraph 22 of the Fannie
                 Mae/Freddie Mac Deed of Trust. ................................. 14

        3.   Wells Fargo Did Not Breach the FHA Deed of Trust. ................. 16

            a.   Foreclosing Without First Complying With HUD Servicing
                 Regulations Cannot Sustain an Affirmative Claim For
                 Damages. ....................................................................... 16

            b.   Plaintiffs Have Not Identified Any Regulations Supporting
                 Their Theory. ................................................................. 18

|  |  | 4. | Plaintiffs' Notices of Default Were Accurate. | 19 |
|  | B. | Plaintiffs Granja and Campos' Individual Wrongful Foreclosure Claims Fail as a Matter of Law. |  | 20 |
|  | C. | Plaintiffs' Individual UCL Claims Fail as a Matter of Law Because They Do Not Seek Restitution. |  | 20 |
|  |  | 1. | Monetary Recovery Under the UCL Is Limited to Restitution. | 21 |
|  |  | 2. | Plaintiffs' Putative Lost Equity Amounts Are Not Restitution. | 22 |
|  | D. | Plaintiff Campos Has No HBOR Claim as a Matter of Law. |  | 24 |
| VI. |  | CONCLUSION |  | 24 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aning v. Citimortgage, Inc.*,
   2015 WL 11236540 (N.D. Ga. June 29, 2015).................................................................15

*Arizona v. Tohono O'odham Nation*,
   818 F.3d 549 (9th Cir. 2016) ...........................................................................................10

*Bank of Am. Nat'l Tr. & Sav. Ass'n v. Parnell*,
   352 U.S. 29 (1956)..............................................................................................................9

*Bank of the West v. Superior Court*,
   2 Cal. 4th 1254 (1992) ........................................................................................................9

*Bell v. Wells Fargo Bank, NA*,
   663 F. App'x 549 (9th Cir. 2016) .....................................................................................24

*Benavides v. EMC Mortg. Corp.*,
   2013 WL 416195 (S.D. Tex. Jan. 31, 2013) .....................................................................14

*Biltcliffe v. Citimortgage, Inc.*,
   952 F. Supp. 2d 371 (D. Mass. 2013) .........................................................................15, 19

*Borg v. Transamerica Ins. Co.*,
   47 Cal. App. 4th 448 (1996) ...............................................................................................9

*Boyle v. United Techs. Corp.*,
   487 U.S. 500 (1988).............................................................................................................8

*Christenson v. CitiMortgage, Inc.*,
   2013 WL 5291947 (D. Colo. Sept. 18, 2013) ...................................................................18

*In re Crystal Props., Ltd., L.P.*,
   268 F.3d 743 (9th Cir. 2001) ..............................................................................................9

*Davis v. DRRF Tr. 2015-1*,
   2016 WL 8257126 (W.D. Tex. Jan. 6, 2016) ...................................................................13

*Day v. AT & T Corp.*,
   63 Cal. App. 4th 325 (1998) .............................................................................................23

*DeLeon v. Wells Fargo Bank, N.A.*,
   2011 WL 311376 (N.D. Cal. Jan. 28, 2011) ...............................................................11, 12

*Dietz v. Quality Loan Serv. Corp. of Washington*,
   2014 WL 1245269 (W.D. Wash. Mar. 25, 2014) .............................................................18

*Dixon v. Wells Fargo Bank, N.A.*,
   2012 WL 4450502 (E.D. Mich. Sept. 25, 2012)...............................................................18

*Dorado v. Bank of Am., N.A.*,
  2016 WL 3924115 (S.D. Fla. July 21, 2016)....................................................................18

*Eastern Sav. Bank, FSB v. Marcus*,
  2015 WL 5472314 (D. Conn. Sept. 16, 2015)............................................................14, 15

*EchoStar Satellite Corp. v. NDS Grp. PLC*,
  2008 WL 4596644 (C.D. Cal. Oct. 15, 2008)..................................................................22

*Elliott v. Specialized Loan Servicing, LLC*,
  2019 WL 1198760 (N.D. Ga. Jan. 30, 2019).....................................................................19

*In re First Alliance Mortg. Co.*,
  471 F.3d 977 (9th Cir. 2006) ............................................................................................21

*Flores v. Am. Seafoods Co.*,
  335 F.3d 904 (9th Cir. 2003) ............................................................................................10

*Fonteno v. Wells Fargo Bank, N.A.*,
  228 Cal. App. 4th 1358 (2014) ...................................................................................17, 18

*Fowler v. Wells Fargo Bank, N.A.*,
  2017 WL 3977385 (N.D. Cal. Sept. 11, 2017) (Gilliam, J.)...........................................18

*Gov't Emps. Ins. Co. v. Nadkarni*,
  --- F. Supp. 3d ---, 2019 WL 6251193 (N.D. Cal. 2019)..................................................9

*Groupion, LLC v. Groupon, Inc.*,
  859 F. Supp. 2d 1067 (N.D. Cal. 2012) ...........................................................................23

*Hart v. Bayview Loan Servicing*,
  2016 WL 5334647 (C.D. Cal. Sept. 19, 2016) .................................................................24

*Heintze v. Wells Fargo Bank, N.A.*,
  2015 WL 12696455 (C.D. Cal. June 19, 2015) ................................................................21

*Henok v. Chase Home Fin., LLC*,
  922 F. Supp. 2d 110 (D.D.C. 2013)..................................................................................15

*Hernandez v. Wells Fargo Bank, N.A.*,
  2019 WL 2359198 (N.D. Cal. June 3, 2019)..............................................................12, 13

*Hill v. Opus Corp.*,
  464 B.R. 361 (C.D. Cal. 2011) .........................................................................................23

*HSBC Bank USA, Nat'l Tr. Co. v. Teagarden*,
  6 N.E.3d 678 (Ohio App. 2013).......................................................................................18

*IV Sols. Inc v. United Healthcare Servs. Inc*,
  2014 WL 12558118 (C.D. Cal. May 29, 2014) ..........................................................21, 22

*Kakarala v. Wells Fargo Bank, N.A.*,
  2012 WL 1458235 (D. Ariz. Apr. 27, 2012) ...................................................................17

*Kerivan v. Title Ins. & Tr. Co., Inc.*,
   147 Cal. App. 3d 225 (1983) ...................................................................................11

*Klamath Water Users Protective Ass'n v. Patterson*,
   204 F.3d 1206 (9th Cir. 1999) ................................................................................10

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) .....................................................................................21, 23

*Kwikset Corp. v. Superior Court*,
   51 Cal. 4th 310 (2011) ............................................................................................21

*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.*,
   107 Cal. App. 4th 516 (2003) ...................................................................................9

*Lombardi v. Bank of Am.*,
   2015 WL 1234890 (N.D. Tex. Mar. 18, 2015)........................................................15

*May v. JPMorgan Chase Bank, N.A.*,
   2014 WL 2996180 (E.D. Tex. July 3, 2014) ...........................................................19

*McHatten v. Chase Home Fin., LLC*,
   2010 WL 3882587 (D. Ariz. Sept. 29, 2010)...........................................................18

*Midwest Transp., Inc. v. FCE Benefit Admins., Inc.*,
   2007 WL 4357632 (N.D. Cal. Dec. 11, 2007)..........................................................16

*Miller v. Glenn Miller Prods., Inc.*,
   454 F.3d 975 (9th Cir. 2006) (per curiam)...............................................................12

*Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*,
   2007 WL 801886 (N.D. Cal. Mar. 14, 2007)...........................................................23

*Nolasco v. CitiMortgage, Inc.*,
   2012 WL 3648414 (S.D. Tex. Aug. 23, 2012) .........................................................13

*Ogden v. Bumble Bee Foods, LLC*,
   2014 WL 27527 (N.D. Cal. Jan. 2, 2014) ...............................................................23

*Openshaw v. FedEx Ground Package Sys., Inc.*,
   2012 WL 13015027 (C.D. Cal. Feb. 29, 2012).......................................................23

*Pankow Const. Co. v. Advance Mortg. Corp.*,
   618 F.2d 611 (9th Cir. 1980) .....................................................................................9

*Pauma Band of Luiseno Mission Indians of Pauma & Yuima Reservation v. California*,
   813 F.3d 1155 (9th Cir. 2015) .................................................................................12

*Pfeifer v. Countrywide Home Loans, Inc.*,
   211 Cal. App. 4th 1250 (2012) ....................................................................16, 17, 18

*Revitch v. DirecTV, LLC*,
   2018 WL 4030550 (N.D. Cal. Aug. 23, 2018) .........................................................12

-v-

*Richter v. Nationstar Mortg., LLC*,
2017 WL 4155477 (S.D. Tex. Sept. 19, 2017) ...................................................13

*Rockridge Tr. v. Wells Fargo Bank, N.A.*,
985 F. Supp. 2d 1110 (N.D. Cal. 2014) ...........................................................24

*Schmidt v. Western Progressive, LLC*,
2018 WL 6930762 (C.D. Cal. Sept. 17, 2018) ...................................................15

*Schroeder v. United States*,
569 F.3d 956 (9th Cir. 2009) ........................................................................12

*SkinMedica, Inc. v. Histogen Inc.*,
869 F. Supp. 2d 1176 (S.D. Cal. 2012)............................................................22

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009) ..................................................................................21

*Trujillo v. Wells Fargo Bank, N.A.*,
2014 WL 6886074 (S.D. Tex. Dec. 4, 2014) .....................................................15

*Urenia v. Pub. Storage*,
2013 WL 4536562 (C.D. Cal. Aug. 27, 2013)................................................16, 18

*Velasco v. Wells Fargo Bank*,
2015 WL 12746226 (C.D. Cal. Jan. 8, 2015) ....................................................14

*Wells Fargo Home Mortg. Inc. v. Neal*,
922 A.2d 539 (Md. 2007) ..............................................................................18

*Wernet v. Mortg. Elec. Registration Sys., Inc.*,
2013 WL 3776298 (W.D. Mich. July 17, 2013)..................................................18

*Whiterock v. Old Republic Default Mgmt. Servs., Inc.*,
2015 WL 5539526 (N.D. Cal. Sept. 17, 2015) ...................................................24

*Zaghi v. State Farm Gen. Ins. Co.*,
77 F. Supp. 3d 974 (N.D. Cal. 2015) ...........................................................9, 11

**Statutes**

Cal. Bus. & Prof. Code §17203 .........................................................................21

Cal. Civ. Code § 1636.......................................................................................9

Cal. Civ. Code § 2924.17 .................................................................................24

**Other Authorities**

24 C.F.R. § 203.500 *et seq.*............................................................................16

24 C.F.R. § 203.501 ........................................................................................19

24 C.F.R. § 203.605(a).....................................................................................19

1

24 C.F.R. § 203.606 ..................................................................................................................19

2

24 C.F.R. § 203.606(a) ............................................................................................................19

3

Cal. Stats. 2012, Ch. 86, Assembly Bill 278, § 20 ..................................................................24

4

https://www08.wellsfargomedia.com/assets/pdf/about/investor-relations/sec-
filings/2019/first-quarter-10q.pdf (visited Jan. 30, 2020) ..................................................1

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT WELLS FARGO BANK, N.A.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1

## I.    **INTRODUCTION**

Plaintiffs' breach of contract claim is based on their contention that Wells Fargo breached their security instruments by failing to "notify Plaintiffs and class members that they could cure their default and avoid acceleration and foreclosure by accepting a mortgage modification." As shown herein, however, courts have uniformly rejected that theory, and this Court should do the same. Because Wells Fargo owed Plaintiffs no contractual duty to notify them of a potential loan modification, their breach of contract claim fails as a matter of law. And, because Plaintiffs' individual wrongful foreclosure claims mirror their breach of contract claim, Wells Fargo is entitled to summary judgment on those claims as well.

Wells Fargo also is entitled to summary judgment on Plaintiffs Debora Granja and Sandra Campos' individual claims under the UCL because they do not seek restitution, and damages are not available under the UCL as a matter of law.

Finally, Wells Fargo is entitled to summary judgment on Plaintiff Campos' HBOR claim because her notice of default was recorded in 2011, long before the effective date of HBOR.

## II.    **FACTUAL BACKGROUND**

On May 3, 2019, Wells Fargo announced that an internal review had identified two errors in its loan modification decisioning process, both of which led to the erroneous denials of trial payment plans or trial modifications for certain borrowers in the foreclosure process.[1] The first was a calculation error in an underwriting tool called the "Home Preservation Application Tool" or "HPA Tool." The HPA Tool was intended to pull the applicable state attorneys' fee maximums from a state fee matrix in order to compare those maximums to the total actual (plus estimated) attorneys' fees. Knight Dec., Ex. 1. This would ensure that the attorneys' fees capitalized into the principal balance as "recoverable fees" did not exceed the maximum allowable amount. *Id*. However, the HPA Tool contained a calculation error between April 13, 2010 and October 2, 2015, when the error was corrected. *Id*. Specifically, instead of <u>comparing</u> actual, incurred attorneys' fees to state maximums,

---

[1] Wells Fargo Form 10-Q For the Quarterly Period Ended March 30, 2019 at 5 (located at https://www08.wellsfargomedia.com/assets/pdf/about/investor-relations/sec-filings/2019/first-quarter-10q.pdf (visited Jan. 30, 2020)).

the HPA Tool erroneously <u>added</u> the state maximum to actual, incurred fees. *Id*. This unintentional calculation error during the eligibility determination caused the amount of fees to be overstated in some instances, which led to an inflated housing-to-income ratio for some borrowers. *Id*. The inflated ratio resulted in the erroneous denial of trial payment plans or trial modifications for impacted borrowers. *Id*.

The second error involved a failure to appropriately reconcile attorneys' fees that had been incurred and paid with fees that had been incurred, but not yet paid, to ensure that the total amount of attorneys' fees did not exceed the applicable state maximum. Knight Dec., Ex. 2 (Bell Dep., 30:2-31:6). This error affected certain loans in the foreclosure process between March 15, 2010, and April 30, 2018, when new controls were implemented.[2] All told, these two errors affected 881 decisions out of almost three million—less than one-third of one percent (.029%). Ferguson Dec., ¶¶ 4-5 and Ex. 1.

Following the identification and public disclosure of these errors, Wells Fargo began a voluntary remediation program. Knight Dec., Ex. 2 (Bell Dep. 47:24-53:19). Class representatives Debora Granja and Sandra Campos participated in that process, receiving $37,500 and $34,500, respectively. Ferguson Dec., ¶ 6 and Ex. 1. All told, Wells Fargo has paid borrowers almost $25.5 million under its voluntary remediation program, with an average per-borrower payment of $29,000. *See id*., ¶ 6 and Ex. 1.

## III.   NAMED PLAINTIFFS GRANJA AND CAMPOS

### A.   Debora Granja

Class Representative Granja obtained the $410,000 loan at issue on February 9, 2006. Ferguson Dec., Ex. 2. To secure repayment of the loan, Ms. Granja executed a "Fannie Mae/Freddie Mac" deed of trust. RJN, Ex. 6.

---

[2] Wells Fargo Form 10-Q For the Quarterly Period Ended March 30, 2019 at 5.

1

### 1.     The "Notice" Provision at Issue

2        Both the note and deed of trust Ms. Granja signed contained clauses governing how Wells

3   Fargo would notify her if she was in default. The note's notice of default provision provided, in

4   pertinent part:

5
> If I am in default, the Note Holder may send me a written notice telling
> me that if I do not pay the overdue amount by a certain date, the Note
6   > Holder may require me to pay immediately the full amount of principal
> which has not been paid and all the interest that I owe on that amount.
7   > That date must be at least 30 days after the date on which the notice is
> mailed to me or delivered by other means.
8

9   Ferguson Dec., Ex. 2, ¶ 6(c). The deed of trust's notice of default provision, Paragraph 22, provided

10  in pertinent part:

11
> Acceleration; Remedies. Lender shall give notice to Borrower prior to
12  > acceleration following Borrower's breach of any covenant or agreement
> in this [Deed of Trust] … . The notice shall specify: (a) the default; (b)
13  > the action required to cure the default; (c) a date, not less than 30 days
> from the date the notice is given to Borrower, by which the default must
14  > be cured; and (d) that failure to cure the default on or before the date
> specified in the notice may result in acceleration of the sums secured by
15  > this [Deed of Trust] and sale of the Property.

16  RJN, Ex. 6, ¶ 22. If the 30-day deadline for curing default elapsed without a cure, the deed of trust

17  entitled Wells Fargo to invoke its power to foreclose. *Id.*

18
### 2.     Ms. Granja Defaulted on Her Loan By Failing to Make the Required
19          Payments.

20       The note required Ms. Granja to make monthly payments of $2,092.71 for a period of ten

21  years, at which point the required monthly payment amount would change. Ferguson Dec., Ex. 2, ¶

22  3. As the note explained, "If I do not pay the full amount of each monthly payment on the date it is

23  due, I will be in default." *Id.*, ¶¶ 3(A) and 7(B). The deed of trust likewise provided that Ms. Granja

24  "shall pay when due the principal of, and interest on, the debt evidenced by the Note and any

25  prepayment charges and late charges due under the Note," and that "a breach of any covenant or

26  agreement in the [deed of trust]" was a default under the deed of trust. RJN, Ex. 6, ¶¶ 1, 22.

27       There is no dispute that Ms. Granja defaulted under the note and deed of trust by failing to

28

make the required loan payments. Indeed, Ms. Granja stopped making payments altogether after October 1, 2012. Ferguson Dec., ¶ 9(a). Wells Fargo responded by sending her a notice of default dated January 11, 2013, which stated as follows:

> Our records indicate that your loan is in default for failure to make payments due. Unless the payments on your loan can be brought current by February 14, 2013, it will become necessary to require immediate payment in full (also called acceleration) of your Mortgage Note and pursue the remedies provided for in your Mortgage or Deed of Trust, which include foreclosure.
>
> To correct the default you must pay the total delinquency against your account, which as of today's date is:

| | | |
|---|---|---|
| Past Due Payments | $ | $6,278.13 |
| Late Charge Balance | $ | $0.00 |
| Other Fees | $ | $15.00 |
| Unapplied Funds | -$ | $0.00 |
| **Total Delinquency as of January 11, 2013** | $ | **$6,293.13** |

> To avoid the possibility of acceleration, you must pay this amount on or before February 14, 2013 in CERTIFIED funds, to **Wells Fargo Home Mortgage, 1200 W 7th Street, Suite L2-200, Los Angeles, CA 90017.** For the loan to be current and not in default, any additional monthly payments, late charges and other charges that may be due under the note, mortgage and applicable law after the date of this notice must also be paid.
>
> If funds are not received by the above referenced date, we will proceed with acceleration. Once acceleration has occurred, we may take steps to terminate your ownership in the property by a foreclosure proceeding, which could result in Lender or another person acquiring ownership of the property. If foreclosure is initiated, you have the right to argue that you did keep your promises and agreements under the Mortgage Note and Mortgage, and to present any other defenses that you may have.

*Id.*, ¶ 9(b) and Ex. 3. Ms. Granja did not pay the total delinquency amount of $6,293.13. *Id.*, ¶ 9(b).

On May 23, 2013, Wells Fargo approved Ms. Granja for a 90-day trial payment plan. *Id.*, ¶ 9(c) and Ex. 4. She did not make any of the required trial payments, and the trial was canceled. *Id.*, ¶ 9(c). Wells Fargo approved Ms. Granja for another trial payment plan on August 29, 2013, but that trial also was canceled after Ms. Granja did not make the required trial payments. *Id.*, ¶ 9(d) and Ex. 5. Wells Fargo evaluated Ms. Granja for another trial payment plan in December 2013, and determined she was ineligible on December 13, 2013. *Id.*, ¶ 9(c) and Ex. 1. The above-described calculation error in the HPA Tool affected that decision. *Id.*, ¶ 9(c).

On December 20, 2013, the trustee recorded a Notice of Default and Election To Sell Under Deed of Trust. RJN, Ex. 7. The notice informed Ms. Granja that (1) her property was in foreclosure because she had failed to make her required loan payments; (2) she owed $33,063.45 as of the date of the notice; and (3) unless she paid all past-due payments and permitted costs and expenses, her home could be sold at foreclosure. *Id.* Ms. Granja did not pay the past-due amounts, and on April 10,

1    2014, the trustee sold Ms. Granja's home at a foreclosure auction. RJN, Ex. 9; Ferguson Dec., ¶ 9(f).

2    By that time, the loan was 18 months' delinquent. Ferguson Dec., ¶ 9(a). At the foreclosure sale, a

3    third-party, Capital Equity Management Group Inc., submitted the winning bid of $429,400.01, and

4    the trustee subsequently executed a trustee's deed conveying the property to that entity. RJN, Ex. 9.

5    The winning bid was almost $31,000 less than the total debt with costs, which, at the time of the

6    sale, was $460,332.75. *Id*.; Ferguson Dec., ¶ 9(f).

7    **B.   Ms. Campos**

8    Class Representative Campos obtained the $349,515 loan at issue on June 13, 2008.

9    Ferguson Dec., Ex. 6. The loan was insured by FHA/HUD. *See id*. To secure repayment of the loan,

10   Ms. Granja executed an "FHA California Deed of Trust." RJN, Ex. 1.

11   **1.   The Provisions at Issue**

12   Ms. Campos' note and deed of trust addressed acceleration of the loan in the event of a

13   default. Specifically, they provided, in pertinent part:

14
15   > If Borrower defaults by failing to pay in full any monthly payment, then
     > Lender may, except as limited by regulations of the Secretary[3] in the
16   > case of payment defaults, require immediate payment in full of the
     > principal balance remaining due and all accrued interest. … In many
17   > circumstances regulations issued by the Secretary will limit Lender's
     > rights to require immediate payment in full in the case of payment
18   > defaults. This Note does not authorize acceleration when not permitted
     > by HUD regulations.

19   > [ ]

20   > Lender may, except as limited by regulations issued by the Secretary, in
     > the case of payment defaults, require immediate payment in full of all
21   > sums secured by the Security Instrument and due under the Note if: (i)
     > Borrower defaults by failing to pay in full any monthly payment
22   > required by this Note and the Security Instrument prior to or on the due
     > date of the next monthly payment; or (ii) Borrower defaults by failing,
23   > for a period of thirty days, to perform any other obligations contained in
     > the Security Instrument securing the Note.
24

25   > [ ]

26
27
     [3] The "'Secretary' means the Secretary of Housing and Urban Development or his or her designee."
28   Ferguson Dec., Ex. 6, ¶ 6(B).

> In many circumstances regulations issued by the Secretary will limit Lender's rights in thecase of payment defaults to require immediate payment in full and foreclose if not paid. This Note/Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

Ferguson Dec., Ex. 6, ¶¶ 6(B), 10(A), 10(D); RJN, Ex. 1, ¶¶ 9(a) and 9(d).

### 2. Ms. Campos Defaulted on Her Loan By Failing to Make the Required Payments.

The note required Ms. Campos to make monthly payments of $2,095.52. Ferguson Dec., Ex. 6, ¶ 4(A). The note explained that "failing to pay in full any monthly payment" would be a "default." *Id*., ¶ 6(B). The FHA deed of trust likewise provided that Ms. Campos "shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note," and that a failure to make the required payments was a default under the deed of trust. RJN, Ex. 1, ¶¶ 1, 9(a).

There is no dispute that Ms. Campos defaulted under the note and deed of trust by failing to make the required loan payments. Her delinquency began in 2009, less than a year after loan origination. Ferguson Dec., ¶ 11(a). Wells Fargo made many attempts to help Ms. Campos avoid foreclosure. *Id*., ¶ 11(b). Indeed, Wells Fargo conducted a total of nine loan modification reviews throughout the life of her loan, and offered her seven different foreclosure alternatives: (1) a repayment plan in February 2009; (2) four special forbearance agreements in September 2009, January 2010, February 2011, and April 2013; (3) one trial payment plan in February 2013; and (4) a permanent loan modification in May 2010. *Id*., ¶¶ 11(b) – (i) and Exs. 7-12. Ms. Campos did not comply with any of these offers. *Id*., ¶¶ 11(b) – (i).

As a result of her continued failure to make her required loan payments, Wells Fargo sent Ms. Campos a series of letters informing her of her default. *Id*., ¶¶ 11(k) – (o) and Exs. 13-17. As one example, on December 5, 2010, Wells Fargo sent Ms. Campos a letter stating as follows:

Our records indicate that your loan is in default for failure to make payments due. Unless the payments on your loan can be brought current by January 04, 2011, it will become necessary to require immediate payment in full (also called acceleration) of your Mortgage Note and pursue the remedies provided for in your Mortgage or Deed of Trust, which include foreclosure.

To correct the default you must pay the total delinquency against your account, which as of today's date is:

| | | |
|---|---|---|
| Past Due Payments | $ | $7,731.66 |
| Late Charge Balance | $ | $0.00 |
| Other Fees | $ | $0.00 |
| Unapplied Funds | -$ | $598.82 |
| **Total Delinquency as of December 5, 2010** | $ | **$7,132.84** |

To avoid the possibility of acceleration, you must pay this amount on or before January 04, 2011 in CERTIFIED funds, to **Wells Fargo Home Mortgage, 1200 W 7th Street, Suite L2-200, Los Angeles, CA 90017.**   For the loan to be current and not in default, any additional monthly payments, late charges and other charges that may be due under the note, mortgage and applicable law after the date of this notice must also be paid.

If funds are not received by the above referenced date, we will proceed with acceleration. Once acceleration has occurred, we may take steps to terminate your ownership in the property by a foreclosure proceeding, which could result in Lender or another person acquiring ownership of the property. If foreclosure is initiated, you have the right to argue that you did keep your promises and agreements under the Mortgage Note and Mortgage, and to present any other defenses that you may have.

*Id.*, ¶ 11(o) and Ex. 18. Ms. Campos did not pay the total delinquency amount of $7,132.84. *Id.*, ¶ 11(o).

On February 10, 2011, the trustee recorded a Notice of Default and Election To Sell Under Deed of Trust. RJN, Ex. 2. The notice informed Ms. Campos that (1) her property was in foreclosure because she had failed to make her required loan payments; (2) she owed $15,327.65 as of the date of the notice; and (3) unless she paid all past-due payments and permitted costs and expenses, her home could be sold at foreclosure. *Id*. Ms. Campos did not pay the past-due amounts, and on February 7, 2014, the trustee sold Ms. Campos' home at a foreclosure auction. Ferguson Dec., ¶ 11(p); RJN, Ex. 5. By that time, Ms. Campos had not made a payment on the loan for 38 months, and the loan was 1,082 days delinquent. Ferguson Dec., ¶ 11(a). A third-party, Valley Property Investors, LLC, submitted the winning bid of $289,200 at the foreclosure sale, and the trustee subsequently executed a trustee's deed conveying the property to that entity. RJN, Ex. 5; Ferguson Dec., ¶ 11 (p). The winning bid was over $164,240 less than Ms. Campos' outstanding principal balance, which, at the time of the sale, was 369,323.01. Ferguson Dec., ¶ 11(p).

## IV.    THE COURT'S CLASS CERTIFICATION ORDER

On January 29, 2020, the Court certified the following class "only with respect to the breach of contract claim," and appointed Ms. Granja and Ms. Campos as class representatives:

> All persons in the United States who between 2010 and 2018 (i) qualified for a home loan modification or repayment plan pursuant to the requirements of government-sponsored entities (such as Fannie Mae and Freddie Mac), the Federal Housing Administration (FHA), the U.S. Department of Treasury's Home Affordable Modification Program (HAMP); (ii) were not offered a home loan modification or repayment plan by Wells Fargo due to excessive attorney's fees being included in the loan modification decisioning process; and (iii) whose home Wells Fargo sold in foreclosure.

Dkt. 217 at 10-11.

## V.    ARGUMENT

### A.    Plaintiffs' Classwide Breach of Contract Claim Fails as a Matter of Law.

Plaintiffs base their breach of contract claim on the allegation that Wells Fargo "did not notify Plaintiffs and class members that they could cure their default and avoid acceleration and foreclosure by accepting a mortgage modification." TAC ¶¶ 180. As shown below, that allegation fails as a matter of law, because there is no such "notice" requirement in either the Fannie Mae/Freddie Mac or FHA deeds of trust.

#### 1.    Choice of Law

The Fannie Mae/Freddie Mac and FHA deeds of trust contain an identical choice of law provision, which provides: "This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located." RJN, Ex. 1, ¶ 14; *id*., Ex. 6, ¶ 16. In its January 31, 2020 class certification order, the Court declined to decide whether "federal common law" or state law governs Plaintiffs' breach of contract claim. Dkt. 217 at 7. However, as shown in Wells Fargo's January 15, 2020 submission (Dkt. 209), Plaintiffs' breach of contract claim arises under state law, and, under U.S. Supreme Court precedent, "federal common law" simply cannot apply here. This litigation does not implicate any "obligations to and rights of the United States under its contracts," "civil liability of federal officials for actions taken in the course of their duty," or "civil liabilities arising out of the performance of federal procurement contracts." *Boyle v. United Techs.*

1    *Corp.*, 487 U.S. 500, 504-06 (1988). Indeed, where, as here, "litigation is purely between private

2    parties and does not touch the rights and duties of the United States," federal law cannot govern.

3    *Bank of Am. Nat'l Tr. & Sav. Ass'n v. Parnell*, 352 U.S. 29, 33 (1956); *see also Pankow Const. Co.*

4    *v. Advance Mortg. Corp.*, 618 F.2d 611, 613-14 (9th Cir. 1980) (federal common law did not apply

5    in private litigation involving FHA-insured loan: "there is no compelling need for a uniform federal

6    rule, either with respect to the federal mortgage insurance program generally or with respect to the

7    particular issues before us … since disputes between the contractor and the mortgage lender over

8    loan proceeds are wholly between private parties, a uniform federal rule is not required to protect the

9    financial interests of the United States"). Thus, state law, not "federal common law," applies to

10   Plaintiffs' breach of contract claim. Under either law, however, the claim fails.

11       In California,[4] contract interpretation is a question of law for the court. *See, e.g.*, *Gov't Emps.*

12   *Ins. Co. v. Nadkarni*, --- F. Supp. 3d ---, 2019 WL 6251193, at *5 (N.D. Cal. 2019). "A contract

13   must be so interpreted as to give effect to the mutual intent of the parties as it existed at the time of

14   contracting … ." Cal. Civ. Code § 1636; *see also People ex rel. Lockyer v. R.J. Reynolds Tobacco*

15   *Co.*, 107 Cal. App. 4th 516, 525 (2003) ("a court's paramount consideration in construing a

16   [contract] is the parties' objective intent ***when they entered into it***") (emphasis added). "Where

17   contract language is clear and explicit and does not lead to absurd results, [courts] ascertain intent

18   from the written terms and go no further." *Zaghi v. State Farm Gen. Ins. Co.*, 77 F. Supp. 3d 974,

19   977 (N.D. Cal. 2015); *see also Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1264 (1992) ("If

20   contractual language is clear and explicit, it governs"). Further, a court may not interpret a contract

21   in a way that contradicts its plain meaning. *See Borg v. Transamerica Ins. Co.*, 47 Cal. App. 4th 448,

22   456 (1996). Finally, under longstanding California law, "a note and deed of trust must be read and

23   construed together." *In re Crystal Props., Ltd., L.P.*, 268 F.3d 743, 750 (9th Cir. 2001).

---

27   [4] Both Granja and Campos' properties were located in California. Thus, California law "is the law of
     the jurisdiction in which the Property is located" and it governs their contract claim, to the extent
28   "federal common law" does not apply.

Under federal common law,

> contract terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself. Whenever possible, the plain language of the contract should be considered first. The fact that the parties dispute a contract's meaning does not establish that the contract is ambiguous; it is only ambiguous if reasonable people could find its terms susceptible to more than one interpretation.

*Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999). Moreover, "as a general rule, a court should not consider extrinsic evidence to give meaning to a contract unless the contract's terms are vague and ambiguous," and extrinsic evidence that "attempts to vary or contradict the terms of a final agreement … must be rejected." *Arizona v. Tohono O'odham Nation*, 818 F.3d 549, 561-62 (9th Cir. 2016). Finally, when a "reading would involve considerable revision of the language in the contract, requiring [the court] to remove some words and to add others that contradict the terms of the agreement," the court must reject it. *Flores v. Am. Seafoods Co*., 335 F.3d 904, 912 (9th Cir. 2003) (rejecting testimony that "did not track the language of the contract").

### 2. Wells Fargo Did Not Breach the Fannie Mae/Freddie Mac Deed of Trust.

Plaintiffs base their Fannie Mae/Freddie Mac breach of contract claim on Paragraph 22 of the deed of trust, which provides:

> Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this [deed of trust] … . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this [deed of trust] and sale of the Property.

TAC ¶ 170. As shown below, this provision cannot reasonably be read to require Wells Fargo to "notify Plaintiffs and class members that they could cure their default and avoid acceleration and foreclosure by accepting a mortgage modification."

**a.**     **The Fannie Mae/Freddie Mac Deed of Trust Did Not Require Wells Fargo to "Notify Plaintiffs They Could Cure Their Default and Avoid Acceleration and Foreclosure By Accepting a Mortgage Modification."**

As an initial matter, the Court can interpret Paragraph 22 on its face without reference to extrinsic evidence. On June 3, 2019, the Court dismissed Plaintiffs' original breach of contract claim based on the contract's plain language, finding that "[n]othing in [Paragraph 22] (or any other provision in the contract) supports Plaintiffs' proposed interpretation." Dkt. 87 at 15. Months later, Plaintiffs amended, relying on post-contract documents and testimony to argue that a mortgage modification was a contractually-mandated way to "cure a default and bring a loan current." SAC ¶¶ 188-89. In their Renewed Motion for Class Certification, however, Plaintiffs expressly disclaimed reliance on extrinsic evidence: "Because the form Fannie/Freddie contract is unambiguous, the Court can interpret it as a matter of law" and "admission of extrinsic evidence should not be necessary to interpret the contractual provisions at issue." Dkt. 173 at 8-9. Thus, the court must "ascertain intent from the written terms and go no further." *Zaghi*, 77 F. Supp. 3d at 977.

Second, as stated above, California law provides that "a note and deed of trust … must be read and construed together." *Kerivan v. Title Ins. & Tr. Co., Inc.*, 147 Cal. App. 3d 225, 230 (1983). Plaintiff Granja's note plainly stated:

> If I am in default, the Note Holder may send me a written notice telling me *that if I do not pay the overdue amount by a certain date*, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

Ferguson Dec., Ex. 2, ¶ 6(c) (emphasis added). Thus, construing the note and deed of trust together compels but one conclusion: that "the action required to cure the default" is "pay[ment of] the overdue amount by a certain date"—not a loan modification, as Plaintiffs claim. *See DeLeon v. Wells Fargo Bank, N.A.*, 2011 WL 311376, at *7 (N.D. Cal. Jan. 28, 2011) (lender's alleged misrepresentations during loan modification process did not cause the borrowers to lose their home: "In order to cure the default, Plaintiffs would have had to pay [the amount in arrears] in full, plus any payment obligations that accrued after the default was recorded.").

Third, Plaintiffs admit that their contract claim is based on loan modification programs that did not exist at the time of contracting: "HAMP and other types of government-mandated mortgage modifications might have come into effect after plaintiffs and class members signed their Security Instruments … ." TAC ¶ 180. To get around that fatal admission, Plaintiffs argue that "a reasonable interpretation of these contracts required Wells Fargo to inform Plaintiffs of actions available to cure their default *at the time of the default* – not just any action available at the time the parties executed the contract." *Id*. (emphasis in original). But that is not the law. Again, under California and federal common law, the court must discern the parties' objective intent ***at the time of contracting***. Indeed, as the Ninth Circuit has explained, "a contract provision has only one true meaning—***what it meant when written***—even though the parties may later dispute the correct interpretation." *Pauma Band of Luiseno Mission Indians of Pauma & Yuima Reservation v. California*, 813 F.3d 1155, 1165 (9th Cir. 2015) (emphasis added). Accordingly, this Court was correct when it observed:

> Under California law, "[t]he fundamental goal of contract interpretation is to give effect to the mutual intent of the parties as it existed at the time of contracting." *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 989 (9th Cir. 2006) (per curiam) (citation omitted). Plaintiffs point to nothing in the complaint to suggest that a "government-mandated mortgage modification" even existed at the time they entered into their contracts with Wells Fargo. Accordingly, the phrase "the action required to cure the default" is susceptible to only one reasonable interpretation under the circumstances alleged—payment of the amount required to bring the loan current. … Wells Fargo's failure to offer plaintiffs loan modifications … did not amount to a breach of plaintiffs' secured-loan instruments.

*Hernandez v. Wells Fargo Bank, N.A.*, 2019 WL 2359198, at *9 (N.D. Cal. June 3, 2019) (Dkt. 87);[5] *see also Schroeder v. United States*, 569 F.3d 956, 961 (9th Cir. 2009) (under federal common law, contract could not be interpreted to include information that parties did not know at time of contracting); *Revitch v. DirecTV, LLC*, 2018 WL 4030550, at *10 (N.D. Cal. Aug. 23, 2018) ("affiliate" could not be interpreted to include a company that became an affiliate "years after Plaintiff entered into the contract").

---

[5] Because Plaintiffs have expressly disclaimed reliance on extrinsic evidence, the Court's original reasoning holds true.

1      Finally, nothing in either the note or Fannie Mae/Freddie Mac deed of trust supports

2  Plaintiffs' proffered interpretation. As the Court already observed, "[t]he alleged requirement to

3  offer plaintiffs a loan modification comes only from 'HAMP or related programs,' none of which are

4  referenced in the contract that Wells Fargo purportedly breached." *Hernandez*, 2019 WL 2359198, at

5  *9. For this reason, courts interpreting Paragraph 22 of the Fannie Mae/Freddie Mac deed of trust

6  routinely reject the argument Plaintiffs make here (and notably, we have not located a single

7  decision accepting Plaintiffs' theory). For example, in *Davis v. DRRF Tr. 2015-1*, 2016 WL

8  8257126 (W.D. Tex. Jan. 6, 2016), the plaintiff, like Plaintiffs here, alleged that her lender breached

9  the deed of trust by "failing to give her the opportunity to cure her default by allowing her to modify

10  her loan under the federal Home Affordable Modification Program." *Id*. at *2. The court disagreed,

11  reasoning that

12          nothing in the deed of trust requires Defendant to modify Plaintiff's loan
           under HAMP or to provide other curative modifications. … Arguably,
13          loan modification does not cure default but rather is an alternative to
           foreclosure in the event of default. The plain language of the deed of
14          trust clearly does not require Defendant to modify Plaintiff's loan in the
           event of default.
15

16  *Id*.

17      Similarly, in *Nolasco v. CitiMortgage, Inc*., 2012 WL 3648414 (S.D. Tex. Aug. 23, 2012),

18  the plaintiff alleged that her servicer breached Paragraph 22 of the Fannie Mae/Freddie Mac deed of

19  trust by failing to send her a notice that listed "*possible* default-curing options," including a loan

20  modification under HAMP. *Id*. at *3 (emphasis in original). The court roundly rejected that theory.

21  As it explained, the deed of trust

22          d[id] not require defendants to provide her with a list of cure options –
           [it] obligate[d] them to give her notice of *the action* required to cure.
23          There is nothing in the deed of trust or note granting [plaintiff],
           following her default, the right to *any* loan modification, let alone
24          HAMP consideration … Indeed, she does not assert that the form of
           notice was improper and instead argues that the court should read into
25          the contract additional terms that are simply not present.

26  *Id*. at *4 (emphasis in original); *see also Richter v. Nationstar Mortg., LLC*, 2017 WL 4155477, at

27  *5 (S.D. Tex. Sept. 19, 2017) (rejecting argument that loan servicer breached the deed of trust by

28

-13-

1    "not allowing [plaintiff] to cure the loan default with a short sale or other alternative. … ***Nothing in***

2    ***the deed of trust required [the servicer] to allow [plaintiff] to choose an alternative form of 'cure***.'

3    … Nowhere does the deed of trust state that [the servicer] had to accept a short-sale or any cure

4    other than the payment of sums due. The deed of trust defeats this basis for a claim for breach of

5    contract.") (emphasis added); *Benavides v. EMC Mortg. Corp*., 2013 WL 416195, at *3 (S.D. Tex.

6    Jan. 31, 2013) (under Paragraph 22, "Defendants were only required to provide the required notice,

7    specify in that notice an action required to cure the default, and give Plaintiffs 30 days to take that

8    action. They were not required to consider Plaintiffs for any particular foreclosure alternatives or to

9    make those alternatives available to Plaintiffs."); *cf. Velasco v. Wells Fargo Bank*, 2015 WL

10   12746226, at *4 (C.D. Cal. Jan. 8, 2015) ("The parties' only contractual obligations are with respect

11   to the loan, note, and deed of trust—none of which gave [plaintiff] a right to a loan modification—

12   and thus [plaintiff] has failed to state a claim for breach of the implied covenant. Because the

13   contracts [at] issue do not contain the terms on which [plaintiff] relies for this claim, [the claim] is

14   dismissed with prejudice."); *Eastern Sav. Bank, FSB v. Marcus*, 2015 WL 5472314, at *5 (D. Conn.

15   Sept. 16, 2015) ("There is no duty to modify the terms of a note … prior to initiating a foreclosure

16   action when such duty is not expressed in the loan documents. … The loan documents do not contain

17   a provision requiring Eastern to negotiate a modification … prior to initiating a foreclosure action.

18   … Imposing a duty on Eastern to … negotiate a modification of the Note … would achieve a result

19   contrary to the clearly expressed terms of the contract. This the Court cannot do.").

20          For all these reasons, Paragraph 22 of the Fannie Mae/Freddie Mac deed of trust cannot

21   reasonably be read to require Wells Fargo to "notify Plaintiffs and class members that they could

22   cure their default and avoid acceleration and foreclosure by accepting a mortgage modification."

23   TAC ¶ 180. Thus, the breach of contract claim fails as a matter of law.

24                     **b.    Wells Fargo Complied With Paragraph 22 of the Fannie**
                               **Mae/Freddie Mac Deed of Trust.**
25

26          The undisputed evidence also shows that Wells Fargo complied with Paragraph 22 of the

27   Fannie Mae/Freddie Mac deed of trust. Specifically, on January 11, 2013, Wells Fargo mailed Ms.

28   Granja a letter that specified (a) the default ("your loan is in default for failure to make payments

-14-

1  due"); (b) the action required to cure the default ("To correct the default, you must pay the total

2  delinquency against your account, which as of today's date is … $6,293.13."); (c) a date, not less

3  than 30 days from the date the notice [was] given to [Ms. Granja], by which the default must be

4  cured ("To avoid the possibility of acceleration, you must pay this amount on or before February 13,

5  2013"); and (d) that failure to cure the default on or before the date specified in the notice may result

6  in acceleration of the sums secured by this [deed of trust] and sale of the Property ("Unless payments

7  on your loan can be brought current by February 13, 2013, it will become necessary to require

8  payment in full (also called acceleration) of your Mortgage Note and pursue the remedies provided

9  for in your Mortgage or Deed of Trust, which include foreclosure."). Ferguson Dec., ¶ 9(b) and Ex.

10  3.

11      Courts repeatedly have held that notices identical to the one Wells Fargo sent Ms. Granja

12  here comply with Paragraph 22 of the Fannie Mae/Freddie Mac deed of trust, and that a breach of

13  contract claim will not lie under such circumstances. *See, e.g., Schmidt v. Western Progressive, LLC*,

14  2018 WL 6930762, at *2 (C.D. Cal. Sept. 17, 2018) (rejecting breach of contract claim in failed loan

15  modification case when notice of default contained all the information required by Paragraph 22 of

16  the Fannie Mae/Freddie Mac deed of trust); *Henok v. Chase Home Fin., LLC*, 922 F. Supp. 2d 110,

17  117 (D.D.C. 2013) (granting summary judgment for servicer on breach of contract claim when

18  servicer sent plaintiff a letter "that fully complied with the requirements of [Paragraph 22 of] the

19  deed of trust"); *Biltcliffe v. Citimortgage, Inc*., 952 F. Supp. 2d 371, 379-80 (D. Mass. 2013) (no

20  breach of Paragraph 22's notice requirement in failed loan modification case when demand letters

21  "indicated that the loan was in default, specified the amount due, gave plaintiff ninety days to cure

22  the default, and warned that acceleration of the debt could occur if the default was not timely

23  cured").[6]

24      Plaintiffs have no answer for this evidence or caselaw. Instead, they ask the Court to rewrite

25

26  [6] *See also Eastern Sav. Bank*, 2015 WL 5472314, at *3 (summary judgment granted to lender in failed loan modification case); *Aning v. Citimortgage, Inc.*, 2015 WL 11236540, at *7 (N.D. Ga. June 29, 2015) (same); *Lombardi v. Bank of Am.*, 2015 WL 1234890, at *8 (N.D. Tex. Mar. 18,

27  2015) (same); *Trujillo v. Wells Fargo Bank, N.A.*, 2014 WL 6886074, at *3 (S.D. Tex. Dec. 4, 2014)

28  (same).

the Fannie Mae/Freddie Mac deed of trust and find that Wells Fargo breached it—even though Wells Fargo did exactly what the deed of trust required it to do. The Court should reject this absurd result. *See, e.g.*, *Midwest Transp., Inc. v. FCE Benefit Admins., Inc.*, 2007 WL 4357632 (N.D. Cal. Dec. 11, 2007) (courts cannot interpret contracts in a way that leads to absurd results). Indeed, no court has done what Plaintiffs ask this Court to do, and the Court should not be the first. As a matter of law, Paragraph 22 of the Fannie Mae/Freddie Mac deed of trust did not require Wells Fargo to "notify Plaintiffs and class members that they could cure their default and avoid acceleration and foreclosure by accepting a mortgage modification." TAC ¶ 180. Summary judgment is warranted.

### 3. Wells Fargo Did Not Breach the FHA Deed of Trust.

Plaintiffs' FHA breach of contract claim hinges on the same theory as the Fannie Mae/Freddie Mac claim: that Wells Fargo breached the FHA deed of trust because it "did not notify Plaintiffs and class members that they could cure their default and avoid acceleration and foreclosure by accepting a mortgage modification." *Id*. Plaintiffs argue that the following language from the FHA deed of trust supports their claim: "In many circumstances regulations issued by the [HUD] Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.[7] *Id*. at ¶ 181. Plaintiffs are wrong.

#### a. Foreclosing Without First Complying With HUD Servicing Regulations Cannot Sustain an Affirmative Claim For Damages.

Pursuant to the authority granted by Congress, HUD has promulgated regulations pertaining to FHA/HUD-insured mortgages. Servicing responsibilities are codified at 24 C.F.R. § 203.500 *et seq*. It is well-established that borrowers do not have private rights of action under HUD regulations. *See, e.g.*, *Pfeifer v. Countrywide Home Loans, Inc.*, 211 Cal. App. 4th 1250, 1255 (2012); *Urenia v.*

---

[7] Plaintiffs also allege that "as a part of the financial crisis, the HUD Secretary stated in a report to Congress that 'During this time of elevated financial stress on households, FHA maintained a robust set of policies…to provide assistance in *curing* mortgage delinquencies.'" TAC ¶ 181 (emphasis in original). In two rounds of amendments to their operative pleading, Plaintiffs have never identified this purported "report to Congress," apparently content to leave it to speculation and guesswork. In any event, a "report to Congress" is not a regulation, thus, this unidentified "report to Congress" is irrelevant to the breach of contract claim.

1   *Pub. Storage*, 2013 WL 4536562, at *2 (C.D. Cal. Aug. 27, 2013); *Kakarala v. Wells Fargo Bank,*

2   *N.A.*, 2012 WL 1458235, at *4 (D. Ariz. Apr. 27, 2012). Moreover, the California Court of Appeals

3   has twice found that borrowers cannot bring affirmative claims for damages based on alleged

4   breaches of HUD regulations incorporated into contracts. *See Pfeifer*, 211 Cal. App. 4th at 1269;

5   *Fonteno v. Wells Fargo Bank, N.A.*, 228 Cal. App. 4th 1358, 1371 (2014).

6          In *Pfeifer*, the plaintiffs, relying on the same deed of trust provisions at issue here, brought

7   various damages claims and sought to enjoin a pending foreclosure sale based on their lender's

8   alleged violation of HUD regulations. Interpreting California law, the California Court of Appeals

9   rejected the damages claims, concluding that "the regulations … may not be invoked by the

10  [borrower] as a sword in an offensive cause of action against the lender." *Id*. at 1270. The court thus

11  drew a sharp distinction between a defensive claim for equitable relief—*i.e.*, an injunction to stop a

12  foreclosure—and an offensive claim for damages. *See id*. at 1255. As it explained, "we concur with

13  those courts distinguishing an offensive action from a defensive action. … Consequently, the

14  [plaintiffs] may seek to enjoin the lender[] from proceeding with … foreclosure based on the

15  lenders' failure to perform a HUD servicing requirement. … The [plaintiffs] do not, however, have a

16  claim for damages." *Id*. at 1255, 1281.

17         The California Court of Appeals reaffirmed *Pfeifer* two years later in *Fonteno*, where it

18  reiterated that "pursuit of damages" for alleged violations of HUD regulations incorporated into

19  mortgage documents is "not allowed." 228 Cal. App. 4th at 1371.  The Central District of California

20  also has adopted *Pfeifer*: "The distinction between offense and defense is paramount for HUD

21  violations: HUD regulations may be used defensively as an affirmative defense to a … foreclosure

22  action, but they may not be invoked by the mortgagor as a sword in an offensive cause of action

23

24

25

26

27

28

-17-

1   against the mortgagee." *Urenia*, 2013 WL 4536562, at *2;[8] *but see Fowler v. Wells Fargo Bank,*

2   *N.A.*, 2017 WL 3977385, at *4 (N.D. Cal. Sept. 11, 2017) (Gilliam, J.) ("Plaintiff has identified the

3   provision of the promissory note—allegedly incorporating [a specific HUD regulation] that

4   Defendant allegedly breached and her resulting damages. The Court finds that this is enough under

5   California law to survive at the ***motion to dismiss stage***.") (emphasis added); *Dorado v. Bank of Am.,*

6   *N.A.*, 2016 WL 3924115, at *5 (S.D. Fla. July 21, 2016) (distinguishing *Pfeifer*, *Fonteno*, and

7   *Urenia* and finding that a California court "would most likely" allow a breach of contract claim

8   based on failure to comply with HUD regulations).

9         Here, just like the plaintiffs in *Pfeifer*, *Fonteno*, and *Urenia*, Plaintiffs allege that Wells

10  Fargo breached their FHA mortgage contracts by breaching unspecified HUD regulations that

11  allegedly were incorporated into those contracts. But allowing Plaintiffs to pursue this affirmative

12  damages claim would create a loophole to the bar against private enforcement of HUD regulations.

13  *See Dixon*, 2012 WL 4450502, at *8 ("This Court is not inclined to permit Plaintiffs to merely

14  restate or redress their claim based on a violation of HUD regulations, which is otherwise clearly

15  foreclosed, as a breach of contract claim based on paragraph 9(d) of the mortgage agreement."). The

16  Court should thus find that, in keeping with *Pfeifer* and its progeny, allegedly foreclosing without

17  first complying with HUD servicing regulations cannot sustain an affirmative claim for damages.

18              **b.**      **Plaintiffs Have Not Identified Any Regulations Supporting**

19                      **Their Theory.**

20        In any event, even Plaintiffs could pursue a breach of contract claim based on alleged

21  violations of HUD regulations, their TAC does not identify a single regulation Wells Fargo allegedly

22  breached, much less a regulation requiring Wells Fargo to "notify Plaintiffs and class members that

23      [8] California courts are not alone. Other courts have prohibited private enforcement of alleged HUD

24  violations through breach of contract claims. *See, e.g., Christenson v. CitiMortgage, Inc*., 2013 WL
    5291947, at *7 (D. Colo. Sept. 18, 2013); *Dietz v. Quality Loan Serv. Corp. of Washington*, 2014

25  WL 1245269, at *3 (W.D. Wash. Mar. 25, 2014); *Wernet v. Mortg. Elec. Registration Sys., Inc*.,
    2013 WL 3776298, at *4 (W.D. Mich. July 17, 2013); *Dixon v. Wells Fargo Bank, N.A*., 2012 WL

26  4450502, at *7 (E.D. Mich. Sept. 25, 2012); *McHatten v. Chase Home Fin., LLC*, 2010 WL
    3882587, at *6 (D. Ariz. Sept. 29, 2010); *HSBC Bank USA, Nat'l Tr. Co. v. Teagarden*, 6 N.E.3d

27  678, 685-86 (Ohio App. 2013); *Wells Fargo Home Mortg. Inc. v. Neal*, 922 A.2d 539, 542, 547 (Md.
    2007).

28

they could cure their default and avoid acceleration and foreclosure by accepting a mortgage modification." TAC ¶ 180. In prior briefing, however, Plaintiffs identified 24 C.F.R. §§ 203.501, 203.605(a), and 203.606(a). Dkt. 67 at 11. None of these regulations supports their theory.

First, 24 C.F.R. §§ 203.501 and 203.605(a) do not require any kinds of "notice" to borrowers, and, in fact, set forth no duties to borrowers at all. Instead, they require servicers to take actions that "can reasonably be expected to generate the smallest financial loss **to [HUD]**." 24 C.F.R. §§ 203.501 (emphasis added).

24 C.F.R. § 203.606(a) also does not help Plaintiffs. That regulation provides that a mortgagee cannot commence foreclosure until at least three full payments are unpaid, and that, prior to initiating foreclosure, the mortgagee must notify the borrower "that the mortgagor is in default and the mortgagee intends to foreclose unless the mortgagor cures the default." 24 C.F.R. § 203.606(a). This regulation says nothing at all about loan modification, much less "notifying" borrowers of a loan modification. Moreover, as shown in section III.B.2. above, Wells Fargo complied with § 203.606(a). First, when the Notice of Default and Election to Sell Under Deed of Trust was recorded in February 2011, Ms. Campos' loan was due for well more than three installments. Ferguson Dec., ¶ 11(a) and RJN, Ex. 2. Second, before initiating foreclosure, Wells Fargo notified Ms. Campos that she was in default and that it intended to foreclose unless she cured the default by paying the past-due amounts. Ferguson Dec., ¶¶ 11(k) – (o) and Exs. 13-17.

For all these reasons, Plaintiffs' FHA breach of contract claim fails as a matter of law, and summary judgment is warranted.

### 4. Plaintiffs' Notices of Default Were Accurate.

Wells Fargo also is entitled to summary judgment because Plaintiffs' notices of default were accurate.

"[T]he plain language of the [Fannie Mae/Freddie Mac] deed of trust required only a single notice pursuant to Section 22." *Elliott v. Specialized Loan Servicing, LLC*, 2019 WL 1198760, at *21 (N.D. Ga. Jan. 30, 2019); *see also Biltcliffe*, 952 F. Supp. 2d at 379 (Paragraph 22 does not require subsequent notices of default); *May v. JPMorgan Chase Bank, N.A.*, 2014 WL 2996180, at *4 (E.D.

Tex. July 3, 2014) (Paragraph 22 requires only a single notice of default). The FHA deed of trust likewise required only one notice of default. *See* FHA Deed of Trust, Paragraph 18 ("If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. … If Lender invokes the power of sale, Lender shall execute or cause the Trustee to execute *a* written notice of the occurrence of an event of default and of the Lender's election to cause the Property to be sold … .") (emphasis added). Plaintiff Granja's erroneous decision occurred in December 2013—almost a year after Wells Fargo sent the January 11, 2013 notice of default. Ferguson Dec., ¶¶ 9(b), (e) and Exs. 1, 3. Ms. Campos' erroneous decision also occurred in December 2013—three years after the last notice of default on December 5, 2010. *Id*., ¶¶ 11(j) and (o) and Exs. 1, 17. Thus, even accepting Plaintiffs' theory (which has no basis in the contracts), when Wells Fargo sent the notices of default, Plaintiffs were not, in fact, entitled "to cure their default[s] and avoid acceleration and foreclosure by accepting a mortgage modification." TAC ¶ 180. Accordingly, their notices of default were accurate. And because Wells Fargo was under no contractual obligation to send new notices, Wells Fargo did not breach, and Plaintiffs have no claim based on either the Fannie Mae/Freddie Mac or FHA deeds of trust.

### B. Plaintiffs Granja and Campos' Individual Wrongful Foreclosure Claims Fail as a Matter of Law.

Mirroring their breach of contract claim, Plaintiffs Granja and Campos purport to bring wrongful foreclosure claims based on their allegation that "[t]he foreclosure was unlawful and/or unfair because Wells Fargo did not first notify [them] that they could cure their default by accepting a mortgage modification." TAC ¶ 192. These claims fail for the same reasons the breach of contract claim fails, thus, summary judgment is warranted.

### C. Plaintiffs' Individual UCL Claims Fail as a Matter of Law Because They Do Not Seek Restitution.

In connection with their UCL claims, Ms. Granja and Ms. Campos seek lost equity, based on the values of their properties today minus the amounts they owed Wells Fargo. *See* Dkt. 211-3. As shown below, these purported losses do not constitute restitution under the UCL, and Plaintiffs' individual UCL claims thus fail as a matter of law.

### 1.    Monetary Recovery Under the UCL Is Limited to Restitution.

Remedies for UCL violations are narrowly limited to injunctive relief and restitution. Damages are not available. Cal. Bus. & Prof. Code §17203; *In re First Alliance Mortg. Co*., 471 F.3d 977, 996 (9th Cir. 2006); *In re Tobacco II Cases*, 46 Cal. 4th 298, 312, 319 (2009) (injunctions are "the primary form of relief available under the UCL to protect consumers from unfair business practices," while restitution is a type of "ancillary relief").

California law is well-settled: an order for restitution is one "compelling a UCL defendant to ***return money*** obtained through an unfair business practice to those persons in interest from whom the property was taken, that is, to persons who had an ownership interest in the property." *Korea Supply Co. v. Lockheed Martin Corp*., 29 Cal. 4th 1134, 1144-45 (2003) (emphasis added). In other words, "[a] restitution order against a defendant thus requires both that money or property have been lost by a plaintiff, on the one hand, and that it has been ***acquired by a defendant***, on the other." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 336 (2011) (emphasis added); *see also Heintze v. Wells Fargo Bank, N.A*., 2015 WL 12696455, at *13 (C.D. Cal. June 19, 2015) (when restitution is ordered, "defendant is asked to return something he wrongfully received; he is not asked to compensate the plaintiff for injury suffered as a result of his conduct") (citation omitted).

In the seminal case on this issue, *Korea Supply*, the plaintiff sought money obtained by the defendant, but in the form of profits the defendant allegedly earned from third-party sales. The California Supreme Court found that these profits were not "restitution" under the UCL: "Any award that plaintiff would recover from defendants would not be restitutionary as it would not replace any money or property that ***defendants took directly from plaintiff***." 29 Cal. at 1149 (emphasis added). The court reasoned that allowing the plaintiff to recover the requested amounts "would enable it to obtain tort damages while bypassing the burden of proving the elements of liability under its traditional tort claim for intentional interference with prospective economic advantage." *Id*. at 1151.

Citing these principles, courts routinely reject plaintiffs' attempts to recast damages claims as "restitution." For example, in *IV Sols. Inc v. United Healthcare Servs. Inc*, 2014 WL 12558118, at *8 (C.D. Cal. May 29, 2014) the court explained that "despite the use of the word 'restitution,'" what

-21-

1    the plaintiff sought was "actually a claim for damages, as 'IVS seeks to recover the amounts it

2    claims were due under the four contracts on which it has sued.'" *Id*. As the court explained, there

3    was "not an identifiable fund in United's possession in which IVS could claim an ownership interest

4    for purposes of a claim for restitution," and a plaintiff cannot "disguise a damages claim as

5    restitution merely by labeling it as such." *Id*.; *see also EchoStar Satellite Corp. v. NDS Grp. PLC*,

6    2008 WL 4596644, at *9 (C.D. Cal. Oct. 15, 2008) (plaintiffs cannot simply "dress up [their]

7    unsuccessful damages claim as one for restitution under the UCL" because doing so "would

8    eviscerate the distinction between restitution and damages [and] [a]ny plaintiff who suffered injury

9    to property could claim restitution because the defendant 'took away' the value of the property");

10   *SkinMedica, Inc. v. Histogen Inc*., 869 F. Supp. 2d 1176, 1186–87 (S.D. Cal. 2012) ("[P]arties

11   cannot simply restyle speculative damages claims as 'restitution' for sales they might have made, or

12   value their business might have lost or gained, in order to obtain relief under section 17200.").

13          **2.      Plaintiffs' Putative Lost Equity Amounts Are Not Restitution.**

14          Plaintiffs Granja and Campos do not seek restitution under the UCL, despite labeling their

15   demands as such. Instead, they seek what they describe as "lost equity." Dkt. 211-3. To that end,

16   Plaintiffs produced a demonstrative exhibit describing and listing the amounts of their claimed

17   "UCL Restitution, apparently prepared by their putative damages expert, Dan Salah. *Id*. Mr. Salah

18   testified that he calculated these amounts starting with estimates from Zillow and Redfin, which

19   represent his opinion of the current value of the subject properties. He then subtracted from those

20   estimates what he contends Ms. Granja and Ms. Campos would have owed on the properties under

21   the terms of the modified mortgage today, assuming the trial modification plans were successfully

22   completed, permanent modifications were granted, and that all payments were made timely and in

23   full. Knight Dec., Ex. 3 (Salah Dep., 29:2–16, 32:6–34:1, 58:15–62:2).

24           Critically, none of these "lost equity" amounts—$236,567 for Ms. Granja and $174,100 for

25   Ms. Campos—are "money to be returned" to either Plaintiff. Dkt. 211-3. Nor are they money "Wells

26   Fargo made as a result of the denial of the mortgage modification." Knight Dec., Ex. 3 (Salah Dep.,

27   30:5–13). Indeed, Plaintiffs have no evidence on this score, and their own expert admitted he does

28

not know what money Wells Fargo made or did not make, or what it might have gained, as a result of denying the modifications. *Id*.; *see also id*. (Salah Dep., 31:8–16, 35:22–36:2). Mr. Salah was not asked to review the amounts Plaintiffs paid to Wells Fargo, and to the extent he considered those amounts at all, it was in connection with determining their monetary damages (***not restitution***). *Id*. (Salah Dep., 32:20–33:20). Mr. Salah also admitted he did not see anything even implying that Wells Fargo somehow stood to profit from not offering borrowers the trial loan modifications. *Id*. (Salah Dep., 35:10–15).

Moreover, as noted above, both Ms. Granja's and Ms. Campos' homes were sold ***to third parties*** at their foreclosure sales, and at amounts significantly less than what they owed on their loans. *See* pages 4-5 and 7, above. The undisputed evidence also shows that Ms. Granja and Ms. Campos paid nothing to Wells Fargo as a result of the allegedly unfair business practice, because they paid nothing to Wells Fargo after the erroneous decisions whatsoever. Ferguson Dec., ¶¶ 9(a), 11(a). In fact, Ms. Granja had not paid Wells Fargo anything since October 2012, and Ms. Campos had not paid since July 2011. *Id*.

In sum, Plaintiffs have proffered no evidence—nor could they—that Wells Fargo "took directly" from them any lost equity it could possibly "return" to them, and they have no restitution claim as a matter of law. *Korea Supply Co.*, 29 Cal. 4th at 1149; *Day v. AT & T Corp.*, 63 Cal. App. 4th 325, 339 (1998) (the UCL's definition of restitution "operates only to return to a person those ***measurable amounts*** which are ***wrongfully taken*** by means of an unfair business practice.") (emphasis in original). Courts routinely grant summary judgment on this ground, and this Court should do the same. *See, e.g.*, *Ogden v. Bumble Bee Foods, LLC*, 2014 WL 27527, at *13 (N.D. Cal. Jan. 2, 2014); *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd*., 2007 WL 801886, at *8 (N.D. Cal. Mar. 14, 2007); *Groupion, LLC v. Groupon, Inc*., 859 F. Supp. 2d 1067, 1082–83 (N.D. Cal. 2012); *Openshaw v. FedEx Ground Package Sys., Inc*., 2012 WL 13015027, at *2 (C.D. Cal. Feb. 29, 2012); *Hill v. Opus Corp*., 464 B.R. 361, 394 (C.D. Cal. 2011).

D.     **Plaintiff Campos Has No HBOR Claim as a Matter of Law.**

Finally, Plaintiff Campos has no HBOR claim as a matter of law.

Ms. Campos alleges that Wells Fargo violated California Civil Code § 2924.17, which was enacted as part of HBOR. *Hart v. Bayview Loan Servicing*, 2016 WL 5334647, at *5 (C.D. Cal. Sept. 19, 2016) ("section 2924.17 of the Homeowner's Bill of Rights took effect on January 1, 2013"). HBOR took effect on January 1, 2013. *See* Cal. Stats. 2012, Ch. 86, Assembly Bill 278, § 20.

HBOR "is not retroactive." *Bell v. Wells Fargo Bank, NA*, 663 F. App'x 549, 551 (9th Cir. 2016). Thus, § 2924.17 applies only to documents recorded after its effective date, January 1, 2013. *See, e.g.*, *Rockridge Tr. v. Wells Fargo Bank, N.A.*, 985 F. Supp. 2d 1110, 1129 (N.D. Cal. 2014). Because Ms. Campos' Notice of Default and Election to Sell Under Deed of Trust was recorded on February 10, 2011,[9] almost two years before HBOR's effective date, her HBOR claim necessarily fails. *Bell*, 663 F. App'x at 551 ("The Notice of Default underlying Bell's claim was recorded in December 2011. Thus, Bell did not state a claim under [HBOR]."); *see also Hart*, 2016 WL 5334647, at *5 ("the allegedly deficient notice of default was recorded in 2011, two years before the safeguards of section 2924.17 went into effect"); *Whiterock v. Old Republic Default Mgmt. Servs., Inc.*, 2015 WL 5539526, at *4 (N.D. Cal. Sept. 17, 2015) ("Since the NOD was recorded before January 1, 2013, Plaintiff cannot recover monetary damages for wrongful foreclosure based on tehse alleged violations of HBOR."). Summary judgment must be granted on Plaintiff Campos' HBOR claim.

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, Wells Fargo Bank, N.A. respectfully requests that the Court grant summary judgment in its favor on (1) Plaintiffs' classwide breach of contract claim; (2) Plaintiffs Granja and Campos' individual claims for wrongful foreclosure and violations of the UCL; and (3) Plaintiff' Campos' HBOR claim.

[9] RJN, Ex. 2.

1    Dated: February 20, 2020            WINSTON & STRAWN LLP

2                                        By:   */s/ Amanda L. Groves*
                                               Amanda L. Groves
3                                              Morgan E. Stewart
                                               Kobi K. Brinson (Admitted *pro hac vice*)
4                                              Stacie C. Knight (Admitted *pro hac vice*)

5                                              Attorneys for Defendant
                                               WELLS FARGO BANK, N.A.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANT WELLS FARGO BANK, N.A.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
3:18-cv-07354-WHA