Amanda L. Groves (SBN: 187216)
agroves@winston.com
Morgan E. Stewart (SBN: 321611)
mstewart@winston.com
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111-5802
Telephone: (415) 591-1000
Facsimile: (415) 591-1400

Kobi K. Brinson (Admitted pro hac vice)
kbrinson@winston.com
Stacie C. Knight (Admitted pro hac vice)
sknight@winston.com
WINSTON & STRAWN LLP
300 South Tryon Street, 16th Floor
Charlotte, NC 28202
Telephone: (704) 350-7700
Facsimile: (704) 350-7800

Attorneys for Defendant
WELLS FARGO BANK, N.A.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ALICIA HERNANDEZ, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | No. 3:18-cv-07354 WHA<br><br>**DECLARATION OF ROBERT FERGUSON IN SUPPORT OF DEFENDANT WELLS FARGO BANK, N.A.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date: April 2, 2020<br>Time: 8:00 a.m.<br>Courtroom: 12<br>Judge: Hon. William H. Alsup |

I, Robert Ferguson, hereby declare:

1. I am a Loan Administration Manager for Wells Fargo Home Mortgage, which is a division of Wells Fargo Bank, N.A. I have worked for Wells Fargo Home Mortgage for approximately 16 years. My job responsibilities include leading the employees responsible for working with in-house and outside counsel on litigated matters, to review documents and to verify discovery responses. I also appear on behalf of Wells Fargo at settlement conferences, mediations, depositions, and trials. Except where otherwise indicated, I have personal knowledge of the matters set forth below and could and would testify competently thereto.

2. As part of my job responsibilities for Wells Fargo, I am familiar with the types of records maintained by Wells Fargo in connection with the loans at issue in this litigation. Also as part of my job responsibilities for Wells Fargo, I have authority to access the records maintained by Wells Fargo in connection with the loans at issue in this litigation.

3. During, and in the aftermath of, the 2008 economic crisis, Wells Fargo was faced with a significant increase in demand for loss mitigation, which included loan modifications.

4. Based upon my review of records kept in the normal course of business, from 2010 to 2018, Wells Fargo considered and decisioned approximately 2.9 million loan modification applications. Of those, Wells Fargo approved more than 1.6 million permanent loan modifications.

5. On May 3, 2019, Wells Fargo announced that an internal review had identified two errors in its loan modification decisioning process, both of which led to the erroneous denials of trial payment plans or trial modifications for certain borrowers in the foreclosure process. All told, those errors affected 881 loan modification decisions.

6. In connection with the above-described errors, Wells Fargo began a voluntary remediation program. Debora Granja and Sandra Campos participated in that process, receiving $37,500 and $34,500, respectively. All told, Wells Fargo has paid borrowers almost $25.5 million under its voluntary remediation program.

7. A true and correct copy of a redacted chart showing information in Wells Fargo's records regarding borrowers potentially impacted by the calulation errors at issue here is attached

1

FERGUSON DECL. ISO MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 3:18-CV-07354 WHA

hereto as Exhibit 1. Exhibit 1 contains information from documents that were (a) made at or near the time recorded in each document; (b) made by someone with knowledge—or from information transmitted by someone with knowledge—of the contents of each document; (c) kept in the regular course of Wells Fargo's regularly conducted business activity; and (d) made as part of a routine practice of Wells Fargo's regularly conducted business activity.

## **Debora Granja**

8. A true and correct copy of the Initial Interest Adjustable Rate Note Debora Granja signed is attached hereto as Exhibit 2.

9. Based on my review of records (a) made at or near the time recorded; (b) made by someone with knowledge—or from information transmitted by someone with knowledge—of the contents of each document; (c) kept in the regular course of Wells Fargo's regularly conducted business activity; and (d) made as part of a routine practice of Wells Fargo's regularly conducted business activity:

 a. No payments were made on Ms. Granja's loan after October 1, 2012.

 b. On January 11, 2013, Wells Fargo mailed Ms. Granja the letter attached as Exhibit 3. Ms. Granja did not pay the total delinquency amount of $6,293.13.

 c. On May 23, 2013, Wells Fargo approved Ms. Granja for a 90-day trial payment plan, but the trial was canceled after she did not make any of the required trial payments. A true and correct copy of the trial offer that was mailed to Ms. Granja is attached as Exhibit 4.

 d. On August 29, 2013, Wells Fargo approved Ms. Granja for a 90-day trial payment plan, but the trial was canceled after she did not make any of the required trial

payments. A true and correct copy of the trial offer that was mailed to Ms. Granja is attached as Exhibit 5.

 e. Wells Fargo evaluated Ms. Granja for another trial loan modification in December 2013, and determined she was ineligible on December 13, 2013. The calculation error in the HPA tool affected that decision.

 f. The property securing Ms. Granja's loan was sold to a third-party at a foreclosure sale on April 10, 2014. The winning bid was $429,400.01. At the time of the foreclosure sale, Ms. Granja's total debt was $460,332.75.

## Sandra Campos

10. A true and correct copy of the Note Sandra Campos signed is attached hereto as Exhibit 6.

11. Based on my review of records (a) made at or near the time recorded; (b) made by someone with knowledge—or from information transmitted by someone with knowledge—of the contents of each document; (c) kept in the regular course of Wells Fargo's regularly conducted business activity; and (d) made as part of a routine practice of Wells Fargo's regularly conducted business activity:

 a. Ms. Campos fell behind on her mortgage payments beginning in February 2008. No payments were made on the loan after July 7, 2011. At that time, the loan was due for the December 1, 2010 payment.

 b. Wells Fargo conducted a total of nine loan modification reviews throughout the life of Ms. Campos' loan.

 c. On February 19, 2009, Wells Fargo placed Ms. Campos on a repayment plan in an attempt to cure her delinquency. Ms. Campos did not make the required payments under the repayment plan. A true and correct copy of the February 19, 2009 repayment plan is attached as Exhibit 7.

 d. On September 4, 2009, Wells Fargo offered Ms. Campos a Special Forbearance Agreement. Ms. Campos did not make the required payments. A true and correct

copy of the September 4, 2009 Special Forbearance Agreement is attached as Exhibit 8.

  e. On January 29, 2010, Ms. Campos agreed to Special Forbearance Agreement. A true and correct copy of the January 9, 2010 Special Forbearance Agreement is attached as Exhibit 9.

  f. On May 10, 2010, Wells Fargo agreed to permanently modify Ms. Campos' loan. Ms. Campos made the first two required payments, but fell behind again starting in September 2010. A true and correct copy of the loan modification agreement is attached as Exhibit 10.

  g. On February 8, 2011, Ms. Campos agreed to a Special Forbearance Agreement. She did not make the required payments. A true and correct copy of the February 8, 2011 Special Forbearance Agreement is attached as Exhibit 11.

  h. In February 2013, Wells Fargo approved Ms. Campos for a 90-day trial payment plan, but the trial was canceled after she did not make any of the required trial payments.

  i. On April 9, 2013, Wells Fargo offered Ms. Campos a Special Forbearance Agreement. She did not make the required payments. A true and correct copy of the April 9, 2013 Special Forbearance Agreement is attached as Exhibit 12.

  j. Wells Fargo evaluated Ms. Campos for a trial loan modification in December 2013, and determined she was ineligible on December 17, 2013. The attorneys' fees reconciliation error affected that decision.

  k. On December 7, 2008, Wells Fargo mailed Ms. Campos the letter attached as Exhibit 13. Ms. Campos did not pay the total delinquency amount of $6,288.64.

  l. On May 3, 2009, Wells Fargo mailed Campos the letter attached as Exhibit 14. Ms. Campos did not pay the total delinquency amount of $6,288.64.

  m. On July 26, 2009, Wells Fargo mailed Ms. Campos the letter attached as Exhibit 15. Ms. Campos did not pay the total delinquency amount of $8,038.73.

  n. On October 3, 2010, Wells Fargo mailed Ms. Campos the letter attached as

Exhibit 16. Ms. Campos did not pay the total delinquency amount of $5,257.53.

  o. On December 5, 2010, Wells Fargo mailed Ms. Campos the letter attached as Exhibit 17. Ms. Campos did not pay the total delinquency amount of $7,132.84.

  p. The property securing Ms. Campos' loan was sold to a third-party at a foreclosure sale on February 7, 2014. The winning bid was $289,200. At the time of the foreclosure sale, Ms. Campos' unpaid principal balance was $369,323.01.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 19th day of February 2020.

Robert Ferguson
Loan Administration Manager
Assistant Vice President