Michael L. Schrag (SBN 185832)
Joshua J. Bloomfield (SBN 212172)
Linda Lam (SBN 301461)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, California 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
mls@classlawgroup.com
jjb@classlawgroup.com
lpl@classlawgroup.com

Richard M. Paul III
Ashlea G. Schwarz
Laura C. Fellows
**PAUL LLP**
601 Walnut Street, Suite 300
Kansas City, Missouri 64106
Telephone: (816) 984-8100
Facsimile: (816) 984-8101
Rick@PaulLLP.com
Ashlea@PaulLLP.com
Laura@PaulLLP.com

*Counsel for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT FOR THE**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALICIA HERNANDEZ et al., individually and on behalf of all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | Case No. 3:18-cv-07354 -WHA<br><br>**PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND REIMBURSEMENT OF EXPENSES**<br><br>Date:   August 20, 2020<br>Time:   8 a.m.<br>Dept:   Courtroom 12<br>Judge:  Hon. William H. Alsup |

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................... 1

ARGUMENT .............................................................................................................................. 1

    I.      Class Counsel's Request for Attorney's Fees Is Reasonable ..................................... 1

    II.     Results Achieved ....................................................................................................... 2

    III.    Litigation Risk and Quality of Work ........................................................................ 3

    IV.    Contingent Nature of the Fee .................................................................................... 6

    V.     The Lodestar Cross-Check Confirms the Reasonableness of Class Counsel's Fee Request .............................................................................................................. 6

        A.    Class Counsel reasonably devoted nearly seven thousand hours to prosecuting this litigation ................................................................................ 7

        B.    Class Counsel's rates fall within the range prevailing in the community and have been approved by courts across the country ..................................... 9

        C.    The 1.2 multiplier is far below multipliers routinely approved in the Ninth Circuit ....... 10

    VI.    Class Counsel's Request for Reimbursement of Expenses Is Also Reasonable .................... 10

CONCLUSION ......................................................................................................................... 11

**TABLE OF AUTHORITIES**

**Cases**

*Acosta v. Trans Union LLC*,
  243 F.R.D. 377 (C.D. Cal. 2007) .................................................................................................. 5

*Bellinghausen v. Tractor Supply Co.*,
  306 F.R.D. 245 (N.D. Cal. 2015) ............................................................................................. 1, 7

*Camacho v. Bridgeport Fin., Inc.*,
  523 F.3d 973 (9th Cir. 2008) ...................................................................................................... 9

*Chao v. Aurora Loan Servs.*,
  No. 10-03118-SBA, 2015 WL 294823 (N.D. Cal. Jan. 21, 2015) .............................................. 3

*Chavez v. Netflix, Inc.*,
  162 Cal. App. 4th 43 (2008) ..................................................................................................... 10

*Destefano v. Zynga, Inc.*,
  2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ............................................................................ 10

*Gaudin v. Saxon Mortg. Servs., Inc.*,
  No. 11-cv-01663-JST, 2015 WL 7454183 (N.D. Cal. Nov. 23, 2015) ....................................... 3

*Hoffman v. Constr. Protective Servs., Inc.*,
  2006 WL 6105638 (C.D. Cal. Aug. 31, 2006) ........................................................................... 2

*Hopkins v. Stryker Sales Corp.*,
  2013 WL 496358 (N.D. Cal. Feb. 6, 2013) .............................................................................. 10

*In re Anthem, Inc. Data Breach Litig.*,
  2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ........................................................................... 9

*In re Bluetooth Headset Prod. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ............................................................................................ 1, 2, 7, 8

*In re Heritage Bond Litig.*,
  2005 WL 1594403 (C.D. Cal. June 10, 2005) ........................................................................... 3

*In re Hyundai & Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019) ...................................................................................................... 2

*In re Omnivision Techs.,*
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..................................................................................... 1, 3, 10

*In re Optical Disk Drive Prod. Antitrust Litig.,*
    No. 17-15065, 2020 WL 2507359 (9th Cir. May 15, 2020) ........................................................... 1, 2

*In re Wash. Pub. Power Supply Sys. Sec. Litig.,*
    19 F.3d 1291 (9th Cir. 1994) ................................................................................................................ 6

*Jasper v. C.R. England, Inc.,*
    2014 WL 12577426 (C.D. Cal. Nov. 3, 2014) ..................................................................................... 7

*Ketchum v. Moses,*
    24 Cal. 4th 1122 (2001) ...................................................................................................................... 10

*Laffitte v. Robert Half Int'l Inc.,*
    1 Cal.5th 480 (2016) ........................................................................................................................... 10

*Mangold v. Cal. Pub. Utils. Comm'n,*
    67 F.3d 1470 (9th Cir. 1975) ................................................................................................................ 2

*Mira v. Heartland Emp't Serv., LLC,*
    2014 WL 1026282 (N.D. Cal. Mar. 13, 2014) ..................................................................................... 4

*Monterrubio v. Best Buy Stores, L.P.,*
    291 F.R.D. 443 (E.D. Cal. 2013) .......................................................................................................... 6

*Powers v. Eichen,*
    229 F.3d 1249 (9th Cir. 2000) .............................................................................................................. 1

*Spann v. J.C. Penney Corp.,*
    2016 WL 5844606 (C.D. Cal. Sept. 30, 2016) ............................................................................... 6, 10

*Vizcaino v. Microsoft Corp.,*
    290 F.3d 1043 (9th Cir. 2002) ..................................................................................................... 2, 7, 10

*Wershba v. Apple Computer, Inc.,*
    91 Cal. App. 4th 224 (2001) ............................................................................................................... 10

# NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT on August 20, 2020 at 8 a.m., or as soon thereafter as this matter may be heard before the Honorable William H. Alsup, either by telephone or videoconference, *see* N.D. Cal. General Order No. 72-3, or in Courtroom 12, 19th Floor of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiffs will and hereby do move the Court, under Federal Rule of Civil Procedure 23(h), for an Order:

    A. Awarding attorney's fees in the amount of $4,525,000, which is 25% of the net settlement amount;

    B. Reimbursing Class Counsel for litigation expenses in the amount of $335,000, because such costs are adequately documented and reasonable.

This motion is based on this notice of motion and motion, the accompanying memorandum of points and authorities, the joint declaration of Michael L. Schrag and Richard M. Paul, all papers and records on file in this matter, and such other matters as the Court may consider.

A proposed order is also being filed contemporaneously.

For the reasons set forth in these materials, the motion for attorney's fees and reimbursement of expenses should be granted.

Dated: June 8, 2020

Respectfully submitted,

*/s/ Michael Schrag*
**GIBBS LAW GROUP LLP**
Michael L. Schrag (SBN 185832)
Joshua J. Bloomfield (SBN 212172)
Linda Lam (SBN 301461)
505 14th Street, Suite 1110
Oakland, California 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
mls@classlawgroup.com
jjb@classlawgroup.com
lpl@classlawgroup.com

Richard M. Paul III
Ashlea G. Schwarz
Laura C. Fellows
**PAUL LLP**

601 Walnut Street, Suite 300
Kansas City, Missouri 64106
Telephone: (816) 984-8100
Facsimile: (816) 984-8101
Rick@PaulLLP.com
Ashlea@PaulLLP.com
Laura@PaulLLP.com

*Counsel for Plaintiffs and the Class*

**INTRODUCTION**

The proposed class action settlement provides $18.5 million for just over 500 borrowers who were wrongfully denied loan modifications and lost their homes in foreclosure. These monetary benefits exceed those achieved in comparable wrongful foreclosure cases and provide monetary benefits for emotional distress.

Class Counsel assumed considerable financial risks in prosecuting this case and overcame numerous legal obstacles in the course of achieving this significant common fund. Even still, Class Counsel seek 25% of the net class recovery—or $4,525,000—which is a multiplier of only 1.2 on their billable time—and reimbursement of $335,000 in expenses.[1] Because these requests are reasonable and well documented, the Court should grant Plaintiffs' motion.

**ARGUMENT**

**I.  Class Counsel's Request for Attorney's Fees Is Reasonable**

Rule 23 permits a court to award "reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable[.]" *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).

Courts in the Ninth Circuit typically use the percentage-of-recovery method with a lodestar crosscheck to confirm that a request for fees is reasonable when, as here, the settlement establishes a common fund, the monetary value of which is evident. *In re Optical Disk Drive Prod. Antitrust Litig.*, No. 17-15065, 2020 WL 2507359, at *5 (9th Cir. May 15, 2020). In such cases, the benchmark is 25% of the recovery obtained, *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 260 (N.D. Cal. 2015), with most "awards exceed[ing]" 25%. *In re Omnivision Techs.,* 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008). District courts may depart (upward or downward) from the 25% benchmark rate by "providing adequate explanation in the record of any 'special circumstances.'" *In re Bluetooth*, 654 F.3d at 942. And courts may consider the net or gross recovery in assessing the reasonableness of a fee request. *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000) (holding "reasonableness of attorneys' fees is

---

[1] The net recovery is $18.1 million calculated by subtracting $335,000 in litigation expenses and $65,000 in notice and administration costs from the $18.5 million settlement. Twenty-five percent of $18.1 million is $4,525,000. (Joint Decl. at ¶ 3.)

-1-

not measured by the choice of the denominator"). Ultimately, however, "[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002).

Courts consider several non-exclusive factors when assessing requests for attorney's fees calculated pursuant to the percentage-of-recovery method: "(1) the extent to which class counsel achieved exceptional results for the class; (2) whether the case was risky for class counsel; (3) whether counsel's performance generated benefits beyond the cash settlement fund; (4) the market rate for the particular field of law; (5) the burdens class counsel experienced while litigating the case; (6) and whether the case was handled on a contingency basis." *In re Optical*, 2020 WL 2507359, at *6. No single factor is determinative; rather, courts must ensure any fee award is based on findings that account for all relevant circumstances. *Id.*

Courts may also use the lodestar method instead of the percentage method to confirm that a fee request is reasonable. *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 571 (9th Cir. 2019) (en banc). The lodestar method is more typically used in circumstances not present here, such as when there is no common fund or the settlement benefits are hard to value. *See id.* ("When valuing the settlement is difficult or impossible, the lodestar method may prove more convenient."); *see also In re Bluetooth*, 654 F.3d at 941. If the lodestar method is used, then courts are not required "to perform a 'crosscheck' using the percentage method." *In re Hyundai*, 926 F.3d at 571.

In this case, either method yields the same result: Class Counsel's request for attorney's fees in the amount of $4.525 million—which is 25% the net recovery—is reasonable given the results achieved and the risks assumed.[2]

## II. Results Achieved

"The overall result and benefit to the class from the litigation is the most critical factor in

---

[2] Because this class action does not arise under any single state's law and involved federal contract law, Plaintiffs apply Ninth Circuit jurisprudence on fees rather than any state's law. *See Hoffman v. Constr. Protective Servs., Inc.*, 2006 WL 6105638, at *3 (C.D. Cal. Aug. 31, 2006) ("Where the Complaint invokes both state and federal law, the method of calculating attorney's fees rests in the Court's discretion."); *see also Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1479 (9th Cir. 1975) (holding, in case involving state and federal statutes, "[t]he trial court did not err in applying state law to calculate the fees"). By any measure, however, the fee request is reasonable here, and in fact Ninth Circuit law is arguably stricter than state laws that might govern this fee request, such as California law.

granting a fee award." *In re Omnivision Techs.*, 559 F. Supp. 2d at 1046. Here, the $18.5 million non-reversionary fund that Class Counsel obtained is a successful resolution to the litigation. Class members will receive between $14,000 and $120,000 in settlement funds for economic harm, in addition to any funds they may receive by submitting a claim for an award from the $1 million severe emotional distress fund. (Joint Class Counsel Declaration ("Joint Decl.") at ¶¶ 25, 27.)

The settlement fund represents 37% of what Plaintiffs estimate they could have recovered in economic damages at trial. (Joint Decl. at ¶ 19.) Such a recovery is significant for complex class actions like this one. *See, e.g., In re Heritage Bond Litig.*, 2005 WL 1594403, at *19 (C.D. Cal. June 10, 2005) (settlement representing 36-38% of the class's total net loss was "an exceptional result"). Indeed, the settlement provides substantially more relief than other similar class actions involving wrongful loan modification denials. *See, e.g., Chao v. Aurora Loan Servs.*, No. 10-03118-SBA, 2015 WL 294823 (N.D. Cal. Jan. 21, 2015) (gross settlement on behalf of borrowers who were denied loan modifications represented approximately 19% of the claimed damages for breach of contract and UCL restitution); *Gaudin v. Saxon Mortg. Servs., Inc.*, No. 11-cv-01663-JST, 2015 WL 7454183 (N.D. Cal. Nov. 23, 2015) (approving settlement on behalf of borrowers who made HAMP trial plan payments but were not offered a permanent modification; settlement represented about 13.5% of the breach of contract, UCL, and Rosenthal Act damages). It is important to note that in addition to the settlement funds, class members have already received approximately $15 million from Wells Fargo in voluntary remediation payments. The gross amount class members will receive in connection with this error will therefore be over $33 million.

The settlement also provides class members with an opportunity to receive compensation for emotional distress damages. Proving that Wells Fargo intentionally caused emotional distress would be challenging given the bank's defense that the calculation error was an innocent mistake. Even so, the settlement creates a $1 million fund and class members can submit a claim if they believe they suffered severe emotional distress as a result of the calculation error.

The settlement relief, in short, provides a "win" for the class and supports the requested fee.

### III. Litigation Risk and Quality of Work

Class Counsel achieved this settlement two months before the trial date after over a year of

hard-fought litigation. Class Counsel overcame legal obstacles and faced the risk of no recovery. To start, Wells Fargo retained experienced and well-resourced counsel who mounted challenging defenses at every stage of the case. Wells Fargo filed two motions to dismiss and strenuous oppositions to class certification. (Dkt. 37, 59, 149, 188.) The Court initially dismissed the breach of contract claim, but Class Counsel took further discovery on this claim and succeeded in resurrecting it. This turned out to be an important victory because it was the only claim the Court certified. (Dkt. 136, 217.)

The bank also contested Class Counsel's discovery efforts, requiring substantial negotiation and motion practice, with Plaintiffs submitting five discovery disputes to the Court. (Dkt. 102, 105, 106, 175, 193, 196, 218, 219.) The Court compelled Wells Fargo to produce several categories of discovery, including testimony about the bank's efforts to comply with certain government consent orders and documents concerning loan modification practices that were given to board-level committees. (Dkt. 115 at ¶¶ 1, 3.) In short, the resources that Wells Fargo devoted to the litigation and the quality of its defense warrant consideration as part of the overall risk analysis. *See de Mira v. Heartland Emp't Serv., LLC,* 2014 WL 1026282, at *2 (N.D. Cal. Mar. 13, 2014) (quality of opposition important in evaluation of the quality of the work done by plaintiffs' counsel).

There were also risks inherent in the breach of contract claim. Plaintiffs argued that Wells Fargo breached the mortgage contracts by failing to notify class members of their eligibility for a loan modification before foreclosing on their homes. But Wells Fargo sought summary judgment on this claim relying on case law from other districts stating that the contracts do not require a bank to notify class members of their eligibility for a modification. Plaintiffs believe they had strong arguments to defeat Wells Fargo's summary judgment motion on this claim, but high levels of risk remained on summary judgment, trial, and appeal.

Class Counsel also faced risk in establishing a viable damages model. Plaintiffs alleged they were entitled to damages in the form of lost equity and loss of use[3] of their homes, but faced adverse precedent holding that lost equity damages must be measured at the time of foreclosure and cannot

---

[3] Wells Fargo argued that class members' loss of use damages are not recoverable at all, relying on this Court's class certification order. (Dkt. 252 at 4 ("The only purpose of [the class] trial is to 'determine the value of the equity lost by each homeowner through a foreclosure . . . ").)

-4-   MOTION FOR ATTORNEY'S FEES AND REIMBURSEMENT OF EXPENSES

include "post-foreclosure property value increases." (Dkt. 154 at 19.) If Class Counsel did not prevail on this point, then nearly all class members would have no damages because their foreclosures took place when they were "under water" and had little to no equity in their homes. Class Counsel's research found caselaw and developed strong fairness and economic arguments to counter Wells Fargo's argument on this, but this dispute on the proper measure of damages presented another risk of zero or near zero recovery. (Joint Decl. at ¶¶ 20-21.)

Class Counsel also obtained class certification. Even though each class member was affected by the same error in Wells Fargo's loan decisioning program, the bank opposed class certification by arguing that individual issues on causation predominated. (Dkt. 188 at 10-15.) Wells Fargo's position was that whether each class member would have accepted a modification, made the required payments, and ultimately kept her home were key liability questions that couldn't be determined on a class-wide basis. (*Id.* at 11.) Class Counsel overcame this argument and prevailed on the class certification motion. (Dkt. 217.) But Wells Fargo filed a Rule 23(f) petition for permission to appeal that order, which was pending when the parties settled. (Dkt. 227.) At the time of settlement, Class Counsel still faced the risk of a reversal on the certification order or decertification. *See Acosta v. Trans Union LLC*, 243 F.R.D. 377, 392 (C.D. Cal. 2007) ("The value of a class action 'depends largely on the certification of the class,' and … certification undeniably represents a serious risk for plaintiffs in any class action lawsuit.").

The hurdles that Class Counsel overcame are a testament to their skill and experience. For example, Class Counsel resurrected the breach of contract claim after the Court initially dismissed it by identifying documents where the bank acknowledged that a modification can cure a default and eliciting testimony from a Rule 30(b)(6) witness to that same effect. (Dkt. 136.) Class Counsel also won several motions to compel, resulting in Wells Fargo producing board-level documents on its loan modification practices and testimony on its efforts to comply with government consent orders. (Dkt. 115.) Class Counsel's discovery efforts revealed that Wells Fargo discovered the calculation error in 2013, but did not fully fix it until 2018. And Class Counsel achieved certification of a litigation class despite Wells Fargo's strenuous opposition. (Dkt. 217.)

At every stage of the case, Class Counsel's experience and knowledge of procedural and substantive law helped. The case presented several unique legal issues, such as whether state or federal contract law should apply in interpreting the government mortgage contracts class members signed (Dkt. 203), whether the relevant contract language required the bank to notify borrowers of their eligibility for a modification before foreclosing, and whether lost equity damages should be measured at the time of foreclosure or at the time of trial. Class Counsel devoted many hours to researching and developing these issues.

Class Counsel also crafted a plan that fairly allocates settlement funds based on the value of each class member's lost modification opportunity and created a fund so that class members who suffered severe emotional distress can apply for additional settlement money.

Overall, to achieve this settlement, Class Counsel had to overcome high hurdles on liability, damages and class certification issues; the case had considerable risk because the legal issues were complex and uncertain. Still, Class Counsel persevered and achieved an excellent result for the class in the face of these risks, through skill and hard work. These factors weigh in favor of the requested fee.

**IV.    Contingent Nature of the Fee**

"Courts have long recognized that the attorneys' contingent risk is an important factor in determining the fee award and may justify awarding a premium over an attorney's normal hourly rates." *Monterrubio v. Best Buy Stores, L.P.,* 291 F.R.D. 443, 457 (E.D. Cal. 2013) (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1299 (9th Cir. 1994)). Class Counsel took this case on an entirely contingent fee basis, incurring a total of just over $335,000 in out-of-pocket costs and billing (collectively) 6,877 hours (resulting in a lodestar of $3,758,689), knowing they could receive no compensation for their work and no recoupment of expenses. That substantial risk warrants the requested 25% fee.

**V.    The Lodestar Cross-Check Confirms the Reasonableness of Class Counsel's Fee Request**

In applying the percentage-of-recovery method, a district court has discretion to "double check the reasonableness of the percentage fee through a lodestar calculation." *Spann v. J.C. Penney Corp.,* 2016 WL 5844606, at *13 (C.D. Cal. Sept. 30, 2016) (citation omitted). Because the lodestar measures

counsel's time investment in the litigation, it provides a check on the reasonableness of the percentage award. *Vizcaino,* 290 F.3d at 1050.

"The lodestar cross-check calculation need entail neither mathematical precision nor bean counting . . . [courts] may rely on summaries submitted by attorneys and need not review actual billing records." *Bellinghausen,* 306 F.R.D. at 264 (N.D. Cal. 2015). To calculate the lodestar, courts multiply the number of hours reasonably expended litigating the case by a reasonable hourly rate, and then can adjust the lodestar up or down by an appropriate multiplier reflecting "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Jasper v. C.R. England, Inc.*, 2014 WL 12577426, at *9 (C.D. Cal. Nov. 3, 2014) (citing *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d at 941-42).

Below, Class Counsel discuss the total lodestar in the case of $3,758,689 which is an amount after Class Counsel made significant deductions for arguably duplicative or unnecessary work based on their billing discretion. This lodestar is based on 6,877 hours devoted to the litigation and counsel's hourly rates which are typical and in line with market rates for class and complex litigation. (*See* Joint Decl. at ¶¶ 59-63.)

### A.   Class Counsel reasonably devoted nearly seven thousand hours to prosecuting this litigation

To assist the Court in evaluating their lodestar, Class Counsel reviewed their daily time records and prepared a declaration and chart detailing the time they spent on this case. (*See id.* at ¶ 65, Exh. A.) The declaration includes a chart that organizes time by discrete projects. *See* Dkt. 141 (Order re Attorney's Fees and Costs) in *Etter v. Allstate Ins. Co.*, No. C 17-00184 WHA (N.D. Cal. Aug. 27, 2018). For each project, there is a detailed description of the work performed, the attorney or litigation staff member who performed it, and the time expended. The declaration also includes a summary chart of the total time and fees per timekeeper and describes how "billing judgment" was exercised to eliminate certain projects entirely and reduce the hours and lodestar for other projects.

As described in that declaration, Class Counsel and their staff spent 6,877 hours litigating this case for the benefit of the class. It is important to note that this lodestar reflects less than the total number of hours billed during the case, as both firms exercised billing discretion and voluntarily

reduced their time before filing this motion. (*See id*. at ¶¶ 66-75.) For example, Class Counsel eliminated from the reported lodestar, all work done briefing the first class certification motion and in connection with the expert testimony submitted with that motion. (*Id.* at ¶ 67.) Class Counsel also reduced the number of hours worked on many of the 93 projects described in the lodestar report. (*Id*. at ¶ 74.) In all, Class Counsel cut 2,675 hours and $1.4 million in lodestar.

By way of high-level overview only, Class Counsel's time in this case included:

- A robust pre-filing investigation into Wells Fargo's error and class members' circumstances;
- A request for an order to show cause on Wells Fargo's communications and mediations with putative class members;
- Two rounds of Rule 12(b)(6) briefing;
- Preparation of written discovery requests (including multiple sets of document requests, interrogatories, requests for admission, and a Rule 30(b)(6) notice), supported by many in-person, telephonic, and written meet-and-confer efforts;
- Responding to Wells Fargo's multiple sets of discovery requests and producing documents;
- Reviewing over 200,000 pages of documents produced by Wells Fargo;
- Deposing seven Wells Fargo employees across five states;
- Defending 34 named Plaintiff / California class member depositions;
- Briefing five discovery motions;
- Working with two experts who submitted initial and rebuttal reports, and who assisted with liability issues and a class-wide damages methodology;
- Preparing a motion for class certification, supported by evidence and trial plans;
- Opposing Wells Fargo's motion for partial summary judgment;
- Mediating with Magistrate Judge Donna Ryu and negotiating a comprehensive settlement agreement, class notice, as well as an allocation plan;
- Drafting the preliminary and final approval briefs and supporting papers.

(Joint Decl. at ¶¶ 4-11, 75.)

The litigation, in short, required considerable effort by Class Counsel. These efforts are likely to continue for at least several more months, as they continue to work through the settlement approval

process and with the settlement administrator and class members on settlement-related issues that arise. Thus, the reported lodestar undercounts the hours that Class Counsel worked, and will continue to work, on the case.

### B. Class Counsel's rates fall within the range prevailing in the community and have been approved by courts across the country

After evaluating the number of hours devoted to the litigation, the next step is to assign a reasonable hourly billing rate. In assessing the reasonableness of an attorney's hourly rate, the Court should consider whether the rate is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *See Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 979 (9th Cir. 2008).

The hourly rates used to calculate Class Counsel's lodestar range from $575 to $910 for partners (Mr. Schrag's rate is $800 and Mr. Paul's is $725), $275 to $580 for associates, $275 to $415 for staff attorneys, and $85 to $280 for law clerks, paralegals, and litigation support staff. (Joint Decl. at ¶ 59.) These hourly rates are set by counsel based on their own experience, based on periodic reviews of the rates charged by other attorneys involved in complex litigation, and fall within the range of rates prevailing in the relevant legal community. *See, e.g., In re Anthem, Inc. Data Breach Litig.,* 2018 WL 3960068, at *17 (N.D. Cal. Aug. 17, 2018) (approving billing rates for partners from about $400 to $970; rates for non-partner attorneys, including senior attorneys, of counsel, and associates, from about $185 to $850; and rates for litigation support staff from about $95 to $440).

Class Counsel's hourly rates are also regularly evaluated by courts in California and across the country and have been consistently approved as reasonable in recent years. (*See* Joint Decl. at ¶ 62); *see also In re Lenovo Adware Litig.*, No. 15-md-02624, Dkt. 258 (N.D. Cal. Apr. 24, 2019) (approving hourly billing rates for Gibbs Law Group); *In re Hyundai Sonata Engine Litig.*, No. 15-cv-01685, Dkt. 85 (N.D. Cal. Jan 23, 2017) (Gibbs); *In re: Vizio, Inc., Consumer Privacy Litig.*, No. 16-ml-02693, Dkt. 337 (C.D. Cal. July 31, 2019) (Gibbs); *Audino v. JPMorgan Chase Bank*, No. 16-cv-00631, Dkt. 101 (S.D. Iowa Nov. 14, 2018) (Paul); *In re: Syngenta AG MIR 162 Corn Litigation*, 14-md-2591, Dkt. 4128 (D. Kan. March 20, 2019) (Paul).

        **C.**    **The 1.2 multiplier is far below multipliers routinely approved in the Ninth Circuit**

The final step in a lodestar cross-check is to consider applying a multiplier to the base lodestar. The purpose of a multiplier is "to compensate for the risk of loss generally in contingency cases," because a "lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second half of these functions." *Ketchum v. Moses,* 24 Cal. 4th 1122, 1133 (2001).

In the Ninth Circuit, multipliers of 1 to 4 are typical. *See Hopkins v. Stryker Sales Corp.*, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013) ("Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases."); *Vizcaino*, 290 F.3d at 1051, n. 6–54 (surveying multipliers in 24 class action suits and recognizing that courts applied multipliers of 1.0 to 4.0 in 83% of surveyed cases). Under California law, multipliers of 2 to 4 or even higher are also typical. *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 255 (2001); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 (2008) (affirming 2.5 multiplier); *Spann,* 211 F. Supp. 3d at 1265 (applying California law and finding multiplier of 3.07 "well within the range of reasonable multipliers").

Here, taking into account the base lodestar of $3,758,689, the requested attorney's fee reflects a multiplier of 1.2, well within the range for reasonable multipliers. The multiplier will also decrease as Class Counsel continue to devote additional time toward final settlement approval, settlement administration, and class member inquiries in the coming months.

Therefore, the lodestar cross-check confirms the reasonableness of awarding the 25% fee. *See Laffitte v. Robert Half Int'l Inc.*, 1 Cal.5th 480, 496 (2016) ("If the implied multiplier is reasonable, then the cross-check confirms the reasonableness of the percentage-based fee").

**VI.**    **Class Counsel's Request for Reimbursement of Expenses Is Also Reasonable**

"Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *In re Omnivision Techs.*, 559 F. Supp. 2d at 1048; *see also Destefano v. Zynga*, Inc., 2016 WL 537946, at *22 (N.D. Cal. Feb. 11, 2016) ("courts throughout the Ninth Circuit regularly award litigation costs and expenses—including photocopying, printing, postage, court costs, research on online databases, experts and consultants, and reasonable travel expenses.").

Here, Class Counsel seek reimbursement of $335,000 in out-of-pocket costs incurred during this litigation. That amount is more than reasonable given the significant legal work performed in this case, including taking over 40 depositions, and the expert heavy nature of this case. This request is also adequately documented. (Categorization of Costs, Exh. C to Joint Decl.) Lastly, this request does not exceed the amount stated in the class notice.

For these reasons, Class Counsel should recover these expenses.

## CONCLUSION

For the reasons just discussed, Plaintiffs respectfully request that the Court award $4,525,000 in attorney's fees (25% of the net settlement fund) and $335,000 in cost reimbursements.

Dated: June 8, 2020                                Respectfully submitted,

*/s/ Michael Schrag*
**GIBBS LAW GROUP LLP**
Michael L. Schrag (SBN 185832)
Joshua J. Bloomfield (SBN 212172)
Linda Lam (SBN 301461)
505 14th Street, Suite 1110
Oakland, California 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
mls@classlawgroup.com
jjb@classlawgroup.com
lpl@classlawgroup.com

Richard M. Paul III
Ashlea G. Schwarz
Laura C. Fellows
**PAUL LLP**
601 Walnut Street, Suite 300
Kansas City, Missouri 64106
Telephone: (816) 984-8100
Facsimile: (816) 984-8101
Rick@PaulLLP.com
Ashlea@PaulLLP.com
Laura@PaulLLP.com

*Counsel for Plaintiffs and the Class*