Michael L. Schrag (SBN 185832)
Joshua J. Bloomfield (SBN 212172)
Linda P. Lam (SBN 301461)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, California 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
mls@classlawgroup.com
jjb@classlawgroup.com
lpl@classlawgroup.com

Richard M. Paul III
Ashlea G. Schwarz
Laura C. Fellows
**PAUL LLP**
601 Walnut Street, Suite 300
Kansas City, Missouri 64106
Telephone: (816) 984-8100
Facsimile: (816) 984-8101
Rick@PaulLLP.com
Ashlea@PaulLLP.com
Laura@PaulLLP.com

*Counsel for Plaintiffs and the Class*

# UNITED STATES DISTRICT COURT FOR THE

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALICIA HERNANDEZ et al., individually and on behalf of all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | Case No. 3:18-cv-07354 -WHA<br><br>**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SUPPLEMENTAL CLASS ACTION SETTLEMENT AND FOR ATTORNEY'S FEES AND REIMBURSEMENT OF EXPENSES (UNOPPOSED)**<br><br>Date: January 6, 2022<br>Time: 11 a.m.<br>Dept: Courtroom 12<br>Judge: Hon. William H. Alsup |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT on January 6, 2022, at 11 a.m., or as soon thereafter as this matter may be heard telephonically before the Honorable William H. Alsup of the United States District Court for the Northern District of California, Plaintiffs will and hereby do move the Court for an order:

(a) granting final approval of the proposed $21,864,673[1] supplemental class action settlement under Federal Rule of Civil Procedure 23(e);

(b) granting final certification of the supplemental settlement class under Rules 23(a) and 23(b)(3);

(c) finding that notice has been implemented in accordance with the Court-approved notice plan and comports with due process;

(d) awarding attorney's fees in the amount of $3,623,865; and

(e) reimbursing Class Counsel for litigation expenses in the amount of $1,483.

This motion is based on this notice of motion and motion, the accompanying memorandum of points and authorities, the declarations of Class Counsel Michael L. Schrag and Richard M. Paul III, and Settlement Administrator Gretchen Eoff; all papers and records on file in this case, and such other matters as the Court may consider.

For the reasons set forth in these materials, the motion for final approval of class action settlement and for attorney's fees and reimbursement of expenses should be granted.

Dated: December 2, 2021

Respectfully submitted,

*/s/ Michael Schrag*
**GIBBS LAW GROUP LLP**
Michael L. Schrag (SBN 185832)
Joshua J. Bloomfield (SBN 212172)
Linda Lam (SBN 301461)
505 14th Street, Suite 1110
Oakland, California 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
mls@classlawgroup.com
jjb@classlawgroup.com

---

[1] The supplemental settlement amount is $1,017 less than stated in the preliminary approval motion because while Wells Fargo agreed to pay up to $2,500 in litigation expenses, actual expenses were only $1,483. This has no impact on class member recovery amounts.

lpl@classlawgroup.com

Richard M. Paul III
Ashlea G. Schwarz
Laura C. Fellows
PAUL LLP
601 Walnut Street, Suite 300
Kansas City, Missouri 64106
Telephone: (816) 984-8100
Facsimile: (816) 984-8101
Rick@PaulLLP.com
Ashlea@PaulLLP.com
Laura@PaulLLP.com

*Counsel for Plaintiffs and the Class*

MOTION FOR FINAL APROVAL, FEES, AND EXPENSES

# TABLE OF CONTENTS

I.   Introduction ...................................................................................................................... 1

II.   Overview of the litigation .................................................................................................. 2

  A.   Procedural history relevant to supplemental class and class notice .......................... 2

III.   Overview of the settlement ................................................................................................ 5

  A.   The proposed supplemental settlement class ............................................................. 5

  B.   Benefits to the supplemental settlement class ........................................................... 6

    1.   Supplemental settlement payments .................................................................. 6

    2.   Supplemental settlement allocation ................................................................. 6

      a.   Economic damages fund .......................................................................... 6

      b.   Severe emotional distress fund ................................................................ 7

  C.   The scope of supplemental class members' release of claims ................................... 8

  D.   The notice plan ......................................................................................................... 8

  E.   The provision for attorney's fees and cost reimbursements ...................................... 9

IV.   Final approval of the supplemental settlement is warranted ............................................. 9

  A.   The proposed supplemental settlement merits approval ............................................ 9

    1.   The parties negotiated the supplemental settlement at arm's length ............... 10

    2.   The quality of relief to the supplemental class weighs in favor of approval ... 11

      a.   The settlement provides substantial relief to supplemental class members ................. 11

      b.   Continued litigation would entail substantial risk, cost, and delay ........... 12

      c.   The supplemental settlement will effectively distribute proceeds to the class ........... 13

      d.   The terms of the proposed award of attorney's fees also support approving the
           supplemental settlement ......................................................................... 13

      e.   The parties have no other agreements pertaining to the supplemental settlement ....... 14

    3.   The class representatives and Class Counsel have adequately represented the
         supplemental class ....................................................................................... 14

    4.   The supplemental settlement treats all settlement class members equitably ...... 14

  B.   Certification remains appropriate ........................................................................... 15

  C.   Notice to the supplemental settlement class comported with Rule 23 and due process ........ 15

V.   Class Counsel's request for attorney's fees is reasonable .............................................. 16

  A.   The parties' fee agreement ..................................................................................... 16

  B.   Percentage of fund analysis ................................................................................... 17

C.   Results achieved.................................................................................................18

D.   Quality of work .................................................................................................19

E.   Contingent nature of the fee and risk of no recovery........................................21

F.   A lodestar crosscheck is not required but would confirm the reasonableness of Class Counsel's fee request.................................................................................22

G.   Class Counsel's request for reimbursement of expenses is also reasonable.........................24

VI.  Conclusion.................................................................................................................24

# TABLE OF AUTHORITIES

Cases

*Altamirano v. Shaw Indus., Inc.*,
  2015 WL 4512372 (N.D. Cal. July 24, 2015) ................................................. 15

*Bellinghausen v. Tractor Supply Co.*,
  306 F.R.D. 245 (N.D. Cal. 2015) ........................................................... 17, 22

*Briseno v. Henderson*,
  2021 WL 2197968 (9th Cir. June 1, 2021) ............................................10-11, 17

*Calderon v. Wolf Firm*,
  2018 WL 6843723 (C.D. Cal. Mar. 13, 2018) ............................................... 13

*Campbell v. Facebook, Inc.*,
  951 F.3d 1106 (9th Cir. 2020) ................................................................ 9

*Chao v. Aurora Loan Services*,
  2015 WL 294823 (N.D. Cal. Jan. 21, 2015) ............................................ 11, 19

*Chavez v. Netflix, Inc.*,
  162 Cal. App. 4th 43 (Cal. Ct. App. 2008) .................................................. 23

*Dahl v. Bay Power Inc.*,
  2021 WL 2313388 (N.D. Cal. May 28, 2021) ............................................... 17

*Destefano v. Zynga, Inc.*,
  2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ................................................ 24

*Farrell v. Bank of Am. Corp., N.A.*,
  827 Fed. App'x. 628 (9th Cir. 2020) ........................................................ 22

*Gaudin v. Saxon Mortgage Sevices, Inc.*,
  2015 WL 7454183 (N.D. Cal. Nov. 23, 2015) .......................................... 11, 19

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ............................................................... 10

*Hopkins v. Stryker Sales Corp.*,
  2013 WL 496358 (N.D. Cal. Feb. 6, 2013) ................................................. 23

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ................................................ 13, 16, 18, 23

*In re Heritage Bond Litig.*,
  2005 WL 1594403 (C.D. Cal. June 10, 2005) ............................................. 19

*In re MyFord Touch Consumer Litig.*,
  2019 WL 1411510 (N.D. Cal. Mar. 28, 2019) .............................................. 10

*In re Omnivision Techs.,*
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) .............................................................17, 18, 24

*In re Optical Disk Drive Prods. Antitrust Litig.,*
    959 F.3d 922 (9th Cir. 2020) ..........................................................................................18

*In re Tableware Antitrust Litig.,*
    484 F. Supp. 2d 1078 (N.D. Cal. 2017) .........................................................................10

*In re Wash. Pub. Power Supply Sys. Sec. Litig.,*
    19 F.3d 1291 (9th Cir. 1994) .....................................................................................21-22

*Jasper v. C.R. England, Inc.,*
    2014 WL 12577426 (C.D. Cal. Nov. 3, 2014) ..........................................................22-23

*Laffitte v. Robert Half Int'l Inc.,*
    1 Cal.5th 480 (2016) .......................................................................................................24

*Linney v. Cellular Alaska P'ship,*
    151 F.3d 1234 (9th Cir. 1998) ........................................................................................12

*Monterrubio v. Best Buy Stores, L.P.,*
    291 F.R.D. 443 (E.D. Cal. 2013) ...................................................................................21

*Online DVD-Rental Antitrust Litig.,*
    779 F.3d 934 (9th Cir. 2015) ..........................................................................................22

*Powers v. Eichen,*
    229 F.3d 1249 (9th Cir. 2000) ........................................................................................18

*Spann v. J.C. Penney Corp.,*
    211 F. Supp. 3d 1244 (C.D. Cal. 2016) .....................................................................23-24

*Stanger v. China Elec. Motor, Inc.,*
    812 F.3d 734 (9th Cir. 2016) ..........................................................................................22

*Vizcaino v. Microsoft Corp.,*
    290 F.3d 1043 (9th Cir. 2002) ..................................................................................18, 23

*Wershba v. Apple Computer, Inc.,*
    91 Cal. App. 4th 224 (2001) ...........................................................................................23


Other Authorities

Newberg on Class Actions § 15:76..............................................................................16

## I.      Introduction

On October 12, 2020, the Court granted final approval of an $18.5 million settlement that resolved the claims of borrowers who lost their homes to foreclosure after Wells Fargo erroneously denied them trial loan modifications. The settlement class consisted of 505 borrowers. Shortly thereafter, the bank identified 741 additional borrowers who were similarly affected. The parties then negotiated a supplemental settlement of $21,864,673 for these additional borrowers, seeking to provide the supplemental class with the same level of settlement benefits as the original settlement class. On July 26, 2021, the Court preliminarily approved the supplemental settlement. (Dkt. 318.) Class notice was mailed on September 10, 2021. One borrower opted out of the supplemental class. The parties now request that the Court grant final approval of this supplemental settlement. If approved, this long-running case will come to a close, with an aggregate gross settlement amount of $40,364,673 for 1,245 class members.

This supplemental settlement for 740 additional settlement class members breaks down as follows. Wells Fargo will pay $18,169,325 to the supplemental class for economic damages and severe emotional distress without any potential reversion. Supplemental class members will receive a check to compensate for economic harm using the same formula as the original settlement. These payments will range between $14,000 and $116,502, and will total $16,719,325. In addition, Wells Fargo will pay $1,450,000 to class members who claim severe emotional distress in connection with the trial loan modification denial. As in the original settlement, supplemental class members had the opportunity to submit a simple claim form for a portion of the emotional distress fund and 102 class members submitted claims. Wells Fargo will separately pay settlement administration expenses, attorney's fees, and litigation costs.

Class Counsel strongly believe the supplemental settlement is in the best interest of the supplemental class, and the supplemental class overwhelmingly agrees. No one has objected to the settlement. And the one member who opted out did so not because the settlement's monetary benefits are inadequate, but because that person's settlement amount was so large that it might have affected his entitlement to government benefits. Because the settlement is fair, reasonable, and adequate, and will deliver significant payments to supplemental class members, Plaintiffs respectfully request that the

MOTION FOR FINAL APROVAL, FEES, AND EXPENSES

1   Court grant final approval.

2          Plaintiffs also request that the Court approve payment of attorney's fees of $3,623,865, which

3   Wells Fargo has agreed to pay separate from payments to the Class members. The amount Wells Fargo

4   agreed to pay, if awarded, is 16.6% of the net amount of the supplemental settlement (after deducting

5   litigation and administration expenses). Moreover, the aggregate fees awarded for the entire case would

6   be 20.4% of the aggregate net settlement amount. These percentages are proportional, reasonable, and

7   below the Ninth Circuit's 25% benchmark. Moreover, the aggregate fee is a 1.8 multiplier on Class

8   Counsel's total lodestar in the entire case of $4,461,043 (after Class Counsel audited and made

9   substantial reductions, *see* Dkt. 292 at pp. 12-13). Class Counsel also seek reimbursement of $1,483 in

10  litigation expenses. The class representatives do not seek incentive awards. Because these requests are

11  reasonable and well documented, the Court should grant Plaintiffs' motion.

12  **II.     Overview of the litigation**

13         **A.     Procedural history relevant to supplemental class and class notice**

14         Because the Court is familiar with the allegations and procedural history of the case (Dkt. 292,

15  312), Plaintiffs will focus on events after final approval of the original settlement.

16         Shortly after final approval, Wells Fargo identified 741 additional class members not disclosed

17  or accounted for in the original settlement. The parties then negotiated a supplemental class settlement

18  to provide the same level of relief to the newly identified class members as those in the original

19  settlement. The Court granted preliminary approval to the supplemental settlement on July 26, 2021.

20  (Dkt. 318.)

21         After preliminary approval, the parties provided class action administrator JND with the

22  approved supplemental class notice. JND formatted the notice and circulated the final version for

23  approval. Class Counsel checked proofs of the notice and made edits to it before JND printed each

24  supplemental class member's notice that included the amount of the remediation payment from Wells

25  Fargo and the estimated amount the class member would receive under this supplemental settlement.

26  (Class Counsel Decl. ¶ 20.) Each notice included the correct amounts for each supplemental class

27  member. But when, in the mail room, the notices were inserted into envelopes, numerous letters were

28  inserted into the wrong envelopes, leading supplemental settlement class members to receive the wrong

1  individual mailing. (Dkt. 323-1 at ¶¶ 7-8.) Upon learning of the error, the parties immediately asked

2  for, and the Court ordered, a corrected mailing. (Dkt. 325.)

3      To ensure that the error in the mail room did not recur, Class Counsel took the following steps.

4  First, JND prepared each supplemental class member's notice to state her remediation and settlement

5  payment amounts. Per the Court's order, each notice stated: "This notice supersedes the prior notice

6  dated August 13, 2021" and specifically called out (in bold font) October 25, 2021 as the new deadline

7  to object, opt-out, and/or submit emotional distress claims. (*Id.*) Class Counsel reviewed and approved

8  this notice. (Eoff Decl. ¶ 10; Class Counsel Decl. ¶ 23.)

9      Next, JND conducted a quality review of these notices as well as the other components of the

10  notice packet (the claim form for severe emotional distress and the sheet with the class member's name

11  and address). During this step, JND re-ran updated address searches using the National Change of

12  Address (NCOA) database for any supplemental class member whose first notice was returned as

13  undeliverable and reviewed the notices to make sure the stated remediation and settlement amounts

14  matched each supplemental class member's unique ID number. (Eoff Decl. ¶ 11; Class Counsel Decl. ¶

15  24.)

16      JND then prepared the notice packets by placing, for each supplemental class member, the

17  components of the packet into an envelope addressed to him or her. After each packet was assembled, a

18  JND employee double-checked each of the 743[2] envelopes to make sure each included the correct class

19  member's notice and emotional distress form. JND then conducted a second level of quality control,

20  where each envelope was triple-checked. During that round of checking, Class Counsel video-

21  conferenced with JND and conducted a random spot-check of the packets to ensure that envelopes had

22  the correct class notices in them. Only after each envelope was triple-checked by JND and spot-

23  checked by Class Counsel did JND seal the envelopes and place them in the mail on September 10,

24  2021. (Eoff Decl. ¶ 12; Class Counsel Decl. ¶ 25.)

25      In the end, the mailing error was fully corrected without any prejudice to supplemental class

26  members who had the same amount of time—45 days from the second mailing—to opt out, object

27

28  _____

[2] For two sets of co-borrower supplemental class members who are now divorced, JND sent a separate notice to each co-borrower. Therefore, JND mailed 743 envelopes instead of 741.

MOTION FOR FINAL APROVAL, FEES, AND
                                                                                    EXPENSES

and/or apply for emotional distress funds as they would have had absent the envelope stuffing error. Indeed, given the supplemental class's robust participation in the emotional distress claims process and the absence of complaints, the second mailing served its purpose.

Since the September 10, 2021 mailing, Class Counsel has worked diligently to find new addresses for supplemental class members whose notices came back as undeliverable. First, Class Counsel obtained the initial list of supplemental class members for whom JND's initial efforts failed to locate an updated address. Class Counsel worked with Wells Fargo to provide JND with any additional contact information from the bank's records as well as social security numbers for those borrowers. Using this information, JND found new addresses for many of these class members and remailed notices. Before notices were sent to these addresses, JND triple-checked the envelopes and Class Counsel again video-conferenced with JND to conduct a random spot-check of the packets to ensure that envelopes had the correct class notices in them. (Class Counsel Decl. ¶ 27.)

Later, Class Counsel reached out to JND and requested an updated list of all undeliverable notices. Class Counsel then conducted Accurint searches for potential addresses and contact information. Class Counsel called and e-mailed the phone numbers and e-mail addresses it found for supplemental class members and forwarded any updated addresses to JND. These efforts reduced the number of unfound class members to 60.[3] (Eeoff Decl. ¶ 14; Class Counsel Decl. ¶ 28.) JND and Class Counsel will continue efforts to locate these class members or their heirs so that as many class members as possible deposit settlement checks.

Moreover, numerous individuals who believe they may have been impacted by the calculation error at issue here have contacted Class Counsel. Class Counsel analyzed each of these inquiries to determine if they were from supplemental class members. Where Class Counsel was able to verify class membership, Class Counsel either confirmed they had received the class notice or, if they had not, Class Counsel obtained an updated address, sent the updated address to JND to re-send notice by mail, and also e-mailed the notice to the supplemental class member to provide immediate notice. (Class

---

[3] Based on our experience with original class members, even some supplemental class members whose notices were not returned may not initially cash their checks. Class Counsel will work to locate those supplemental class members during the distribution period, as we did with original class members. *See* Section V(D) *infra*.

MOTION FOR FINAL APROVAL, FEES, AND EXPENSES

1  Counsel Decl. ¶ 29.)

2        The deadline for class members to opt out of or object to the supplemental settlement was

3  October 25, 2021. (Dkt. 325.) No class member objected and only one class member opted out of the

4  settlement.[4] In addition, 102 supplemental class members submitted claims to the special master for

5  severe emotional distress awards. Special master Cathy Yanni processed these claims (including

6  exercising her discretion to accept claims that came in after the deadline). She issued initial awards on

7  November 15, 2021. Class members have until December 6, 2021 to dispute their initial awards, and

8  Ms. Yanni will issue final awards on December 27, 2021.[5]

9  **III.    Overview of the settlement**

10       **A.       The proposed supplemental settlement class**

11       If finally approved, the supplemental settlement would offer relief to the following class:

12       All persons in the United States who between 2010 and 2018 (i) qualified for a home loan
         modification or repayment plan pursuant to the requirements of government-sponsored
13       enterprises (such as Fannie Mae and Freddie Mac), the Federal Housing Administration
         (FHA), the U.S. Department of Treasury's Home Affordable Modification Program
14       (HAMP); (ii) were not offered a home loan modification or repayment plan by Wells
         Fargo due to excessive attorney's fees being included in the loan modification
15       decisioning process; (iii) whose home Wells Fargo sold in foreclosure; and (iv) were not
         part of the original Hernandez settlement finally approved on October 12, 2020.
16

17  (Settlement Agreement ("Settlement"), Dkt. 312-2 § II, ¶¶ 6, 39.) The supplemental settlement class is

18  the same class the Court certified in approving the original settlement, except that it excludes original

19  settlement class members. (Dkt. 217 at 4; Dkt. 292 at 2.) The supplemental settlement excludes: (a)

20  Wells Fargo and its principals, affiliated entities, legal representatives, successors, and assigns; (b) any

21  Person who files a valid, timely Request for Exclusion; (c) federal, state, and local governments

22  (including all agencies and subdivisions thereof); and (d) any Person who settled and released claims at

23  issue in this action. (Dkt. 312-2 at § II, ¶ 39.)

24

25

26

27  ───────────────
    [4] One person opted out to avoid disrupting governmental benefits. (Class Counsel Decl. ¶ 30.) His
    proceeds will be distributed pro rata among class members. (Allocation Plan, Dkt. 312-2 at Ex. A.)
28  [5] Class Counsel will report Ms. Yanni's final rulings in a supplemental filing on January 3, 2022, before
    the final approval hearing, and will submit a proposed order with that filing.

1    **B.    Benefits to the supplemental settlement class**

2        **1.   Supplemental settlement payments**

3        Of the $18,169,325 that Wells Fargo will pay to supplemental class members, $16,719,325 is

4    allocated to economic damages, and $1,450,000 is allocated to severe emotional distress damages.

5    These funds will not revert to Wells Fargo for any reason. (Dkt. 312-2 at § IV.) These amounts are

6    commensurate with the measure of relief provided to original class members. Wells Fargo has

7    separately agreed to pay $3,623,865 in attorney's fees and $71,483 in administration and litigation

8    expenses. (*Id.* at § IV, ¶ B.)

9        There is no claims process for economic loss awards because the supplemental class members

10   are known and the amount of their payments will be determined using the same allocation plan as in the

11   original settlement. Upon final approval, JND will mail checks to supplemental class members and,

12   under Class Counsel's supervision, will follow-up with them and/or seek updated addresses if checks

13   are not deposited.

14       The claims process for severe emotional distress funds required supplemental class members to

15   complete a simple claim form that allowed them to explain and substantiate any severe emotional

16   distress. The Court-appointed special master, Cathy Yanni of JAMS, evaluated the claims and issued

17   initial awards, subject to appeal rights. She will complete her work before the final approval hearing.

18       As in the original settlement, the funds allocated to the supplemental class member who opted

19   out and any unawarded amounts from the severe emotional distress fund will be distributed pro rata to

20   class members who do not opt out based on each class member's share of the total amount paid from

21   the economic damages fund. (Allocation Plan, Dkt. 312-2 at Ex. A.) If there are any uncashed checks,

22   JND will remit checks to the unclaimed property fund for the state in which each supplemental class

23   member was last known to reside. (*Id.*)

24       **2.   Supplemental settlement allocation**

25            **a.   Economic damages fund**

26       Like the allocation methodology used in the original settlement, the allocation plan for the

27   economic damages fund recognizes that Wells Fargo has already paid class members an average of

28   38% of the unpaid principal balance (UPB) on their loan at the time of the decision error. (*Id.*; Class

Counsel Decl. ¶ 34.) The allocation plan uses this percentage as a benchmark, and initially provides each supplemental class member the amount needed to bring the total of his settlement payment and remediation payment to 38% of his UPB. The allocation plan, however, reduces this amount by 5% for every six months of delinquency, but sets a minimum payment from the settlement fund of $14,000 in recognition of the fact that each supplemental class member was denied a trial modification and later lost her home to foreclosure. The plan thus results in a minimum payment of $14,000, which, when added to prior remediation payments Wells Fargo made, means each supplemental class member will receive at least $26,000 in compensation for the error. (*Id.* at ¶ 35.)

The plan recognizes that the value of the lost modification opportunity varies among supplemental class members, and some have already received substantial compensation from Wells Fargo for such losses. The allocation plan thus uses the UPB at the time of the error as a proxy for the lost modification opportunity. In general, under Plaintiffs' theory, supplemental class members with larger UPBs are more likely to have suffered more lost equity and more damages due to the lost modification opportunity.

The reduction for long delinquency periods captures the economic realities of this case: long delinquencies decrease the potential economic value of a loan modification. The number of days of each supplemental class member's delinquency has a practical correlation to both the supplemental class member's ability to perform under a loan modification and the amount of equity versus unpaid interest and fees being re-amortized in a modification. Also, higher delinquency equates to longer occupancy in properties for which mortgage payments were not made; meaning supplemental class members received the value of keeping their properties longer without making mortgage payments. In these ways, the allocation plan fairly distributes compensation for economic harm based on the realities of this case.

### b.  Severe emotional distress fund

In addition to their economic damages payment, supplemental class members had the opportunity to submit a claim for severe emotional distress. Recognizing that not all would assert that the bank's error caused severe emotional distress, the settlement set aside $1,450,000 (an amount proportional to the amount made available to original class members) and required supplemental class

members to submit a claim. Using the same process as the original settlement, the form asked for a narrative statement and, if available, supporting documentation, such as medical records. (Dkt. 312-2 at Ex. D.) Special master Yanni helped design the form and resolved claims for compensation based on factors including the severity of emotional distress and the extent to which the class member demonstrated it was caused by Wells Fargo's error as opposed to other life issues. (*See* Declaration of Cathy Yanni, Dkt. 312-4 at ¶¶ 11-12.) Supplemental class members can ask Ms. Yanni to reconsider her initial award. (Dkt. 312-2 at § IV, ¶ B.) These requests are due on December 6, 2021, and Ms. Yanni will issue final rulings by December 27, 2021, before the final approval hearing.

      **C.**      **The scope of supplemental class members' release of claims**

      The release is the same as the one the Court approved in the original settlement. (Dkt. 292 at 7-8.) In exchange for the settlement payment, each supplemental class member will release claims against Wells Fargo and its officers, directors, legal representatives, successors, subsidiaries, and assigns limited to "all claims, rights, causes of action, liabilities, actions, suits, damages, or demands (including Unknown Claims as defined in Paragraph 47, herein), of any kind whatsoever that arise out of or are based on the claims set forth in the Action, including claims based on the subject Loan Modification Denials, damages based on any failure to modify the Loans and/or damages based on the foreclosures challenged in the Action." (Dkt. 312-2 at § II, ¶ 32.) In turn, Wells Fargo will release supplemental class members from any claims related to this litigation or settlement. (*Id.*) For supplemental class members whose economic damages checks are sent to state unclaimed property funds, any claim they might have for emotional distress will **not** be released.

      **D.**      **The notice plan**

      The class notice clearly explained the material aspects of the settlement, as well as how to opt out of or object to the supplemental settlement. (Dkt. 312-2 at Ex. B.) Each supplemental class member's notice specified the amount he will receive from the economic damages fund and states the amount he has already received in remediation payments. (*Id.* at Sec. 9.) The notice also identified a website with links to important case documents, a Spanish translation of the notice, and updates on the settlement approval process.

The notice plan was effective. As of this filing, there are 60 supplemental class members who remain unfound. (Eoff Decl. at ¶ 14.) JND and Class Counsel will continue efforts to locate these supplemental class members or their heirs so that as many supplemental class members as possible deposit settlement checks. (Class Counsel Decl. at ¶ 28.)

### E.       The provision for attorney's fees and cost reimbursements

Under the supplemental settlement, Wells Fargo agrees to pay attorney's fees and litigation and administration costs separately from the settlement fund. The $3,623,865 fee that Wells Fargo agreed to pay, subject to Court approval, is 16.6% of the net supplemental settlement amount (the gross supplemental settlement amount minus supplemental settlement administration and litigation expenses). Wells Fargo will also pay supplemental litigation expenses of $1,483 and $70,000 to JND to administer the settlement; this amount includes Ms. Yanni's fee. These amounts were included in the notice disseminated to the class. (Dkt. 312-2 at Ex. B, Sec. 17.)

## IV.     Final approval of the supplemental settlement is warranted

### A.       The proposed supplemental settlement merits approval

A proposed class settlement should be approved if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Ninth Circuit has described the following factors for district courts to consider when evaluating the fairness of a proposed class settlement: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020).

The Rule 23(e)(2) factors are substantially similar to those the Ninth Circuit has instructed district courts to consider in determining whether to approve a settlement and were designed "to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. As discussed below, each factor under Rule 23(e)(2) weighs in favor of final approval.

### 1.  The parties negotiated the supplemental settlement at arm's length

This Rule 23(e)(2) factor asks the Court to confirm the settlement was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B). This can be "described as [a] 'procedural' concern[], looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2)(B), advisory committee's note. Where, like here, a litigation class has already been certified, "the Settlement Agreement need not be held to the 'higher standard of fairness' required of pre-certification settlements." *See In re MyFord Touch Consumer Litig.,* 2019 WL 1411510, at *5 n.2 (N.D. Cal. Mar. 28, 2019) (citing *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998)). Even so, there are multiple indicia of the arm's length nature of the negotiations.

In approving the original settlement, the Court noted that because it resulted from extensive, hard-fought litigation and the efforts of Magistrate Judge Ryu in facilitating mediation, it appeared to be the product of "serious, informed, non-collusive negotiations." (Dkt. 292 at 11 (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2017))). For this supplemental settlement, the parties negotiated the same relief for supplemental class members as original class members received. They communicated with Judge Ryu as part of this process but did not hold a formal settlement conference. (Class Counsel Decl. ¶ 15.)

After the parties agreed to the supplemental class member benefits, Wells Fargo agreed to pay, subject to court approval, an additional amount in attorney's fees that, if awarded, would be 16.6% of the net amount of the supplemental settlement. As such, the attorney's fees award will not diminish the supplemental settlement benefits. *See In re Volkswagen "Clean Diesel" Mktg., Sales Prac. and Prod. Liab. Litig.*, No. 3:15-md-02672-CRB, Dkt. 3053 at 7 (N.D. Cal. Mar. 17, 2017) (finding no detriment to the class in awarding fees paid by defendant separate from non-reversionary class compensation amount). The parties were cognizant that the amount of monetary benefits in the supplemental settlement should be the same as those already awarded in the original settlement. Thus, as mentioned at preliminary approval (Dkt. 312 at 10), unawarded fees, if any, will return to Wells Fargo rather than increase the amount distributed to supplemental class members. While such "reverters" are ordinarily disfavored, here they are "elements of a good deal" and in the "class' best interest as part of the settlement package." *Briseno v. Henderson,* 2021 WL 2197968, at *9 (9th Cir. June 1, 2021). For all

1  these reasons, there is no cause for concern that the supplemental settlement is the product of collusion.

2         **2.   The quality of relief to the supplemental class weighs in favor of approval**

3         The next factor to consider is whether "the relief provided for the class is adequate, taking into

4  account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method

5  of distributing relief to the class, including the method of processing class-member claims; (iii) the

6  terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement

7  required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C).

8         **a.   The settlement provides substantial relief to supplemental class members**

9         The supplemental settlement provides substantial relief—$18,169,325 for 740 supplemental

10  class members. This supplemental settlement provides the same formula for relief as the original

11  settlement, which represented 37% of what Plaintiffs estimated they could have recovered in economic

12  damages on their best day at trial.[6] Thus, like the original settlement, this supplemental settlement

13  provides substantially more relief than that approved in similar settlements involving wrongful loan

14  modifications. (Dkt. 292 at 9) (citing *Chao v. Aurora Loan Services*, 2015 WL 294823 (N.D. Cal. Jan.

15  21, 2015) (Armstrong, J.) (approving a $5.25M settlement on behalf of 15,000 class members that

16  represented approximately 19% of the claimed damages for breach of contract and UCL restitution));

17  *see also Gaudin v. Saxon Mortgage Sevices, Inc.*, 2015 WL 7454183 (N.D. Cal. Nov. 23, 2015) (Tigar,

18  J.) (approving $4.5M settlement providing each class member with average payment of approximately

19  $1,100, representing approximately 13.6% of the claimed damages); *Wigod v. Wells Fargo Bank, N.A.*,

20  No. 1:10-cv-02348 (N.D. Ill.) at Dkts. 269, 274 at 7, 277 (approving claims-made settlement where

21  borrowers whose homes were foreclosed were eligible to receive part of $2 million fund based on

22  criteria such as whether the borrower previously received a modification; 170 claims were submitted).

23         Moreover, in addition to the settlement funds, supplemental class members have already

24  received approximately $19.2 million from Wells Fargo in voluntary remediation payments. The total

25  amount supplemental class members will receive in connection with this error will therefore be over

26

---

27  [6] Plaintiffs' damages expert, Dan Salah, prepared an expert damages report for the named Plaintiffs and
California class members in the original settlement in which he calculated two categories of economic

28  damages: lost equity in class members' homes and the value of the "loss of use" of their homes. (Class
Counsel Decl. ¶ 31; Dkt. 192-12.)

$37.3 million. Class Counsel achieved this substantial supplemental settlement despite the litigation risks that remained: Wells Fargo could prevail at summary judgment, trial, or on appeal, leaving the supplemental class with no recovery at all.

Plaintiffs also sought emotional distress damages through their IIED claim. Proving that Wells Fargo intentionally caused emotional distress would be challenging given its defense that the calculation error was an innocent mistake. Nevertheless, the supplemental settlement creates a $1,450,000 fund and supplemental class members could submit a claim if they believed they suffered severe emotional distress due to the calculation error.

Finally, the settlement is fair in light of the claims released by supplemental class members. The release here is identical to the release the Court approved for original class members (Dkt. 292 at 7-8, Dkt. 312-2 at § II, ¶ 32.), and covers only claims related to the conduct at issue and relates to the types of damages supplemental class members suffered in losing their homes.

The negotiated relief is therefore more favorable than what classes in comparable cases received and readily satisfies the Rule 23 standard of fair, reasonable, and adequate. This settlement provides a substantial payment to each supplemental class member in a case that was fiercely contested, where Plaintiffs' contract interpretation theory presented substantial litigation risk, and where even upon a showing of liability there would have been questions about Plaintiffs' ability to demonstrate damages. Under these circumstances, Plaintiffs and Class Counsel wholeheartedly endorse this negotiated resolution.

### b. Continued litigation would entail substantial risk, cost, and delay

Most class actions are long, costly, and risky, which supports the Ninth Circuit's "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1238 (9th Cir. 1998). Here, for the same reasons the Court noted in approving the original settlement, had the parties not settled, the litigation would have remained risky, protracted, and costly. (Dkt. 292 at 9-10) (noting that adverse authority from other districts threatened the breach of contract claims of class members with Fannie/Freddie contracts and that the parties sharply contested at what point in time the value of class members' foreclosed homes should be appraised for purposes of calculating lost equity).

1    Plaintiffs believe they had reasonably strong prospects of overcoming Wells Fargo's arguments

2    and defenses, but there can be little doubt that those defenses presented the possibility that the

3    supplemental class would recover nothing if the case persisted, or at least far less than what Plaintiffs

4    were seeking. Even if Plaintiffs had prevailed on each of these issues, an appeal would likely follow,

5    taking another two-plus years to resolve. This supplemental settlement "eliminates the risks inherent in

6    certifying a class, prevailing at trial, and withstanding any subsequent appeals, and it may provide the

7    last opportunity for class members to obtain relief." *Calderon v. Wolf Firm,* 2018 WL 6843723, at *7

8    (C.D. Cal. Mar. 13, 2018). This factor therefore weighs in favor of settlement approval.

9        **c.   The supplemental settlement will effectively distribute proceeds to the**

10       **class**

11   The plan of allocation of supplemental settlement proceeds is the same one the Court found fair

12   and reasonable in the original settlement. (Dkt. 292 at 10.) Supplemental class members will receive

13   checks for their share of the economic damages fund automatically in the mail, without the need to

14   submit a claim or gather any documentation.

15   As for the $1,450,000 severe emotional distress fund, the claims process was the same, simple

16   process used in the original settlement and supplemental class members had the choice to submit a

17   claim online or by mail. 102 supplemental class members have been awarded benefits. Each has the

18   opportunity to contest Ms. Yanni's initial award and the appeal process will be completed before the

19   final approval hearing.

20       **d.   The terms of the proposed award of attorney's fees also support**

21       **approving the supplemental settlement**

22   As detailed below, Class Counsel's request for attorney's fees in the amount of $3,623,865

23   (which Wells Fargo will pay separately, and which will revert to Wells Fargo if not paid) is

24   proportional to the supplemental settlement class's recovery. This amount is 16.6% of the net

25   supplemental settlement amount. This fee request is below the Ninth Circuit's 25% benchmark. *See In*

26   *re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 942 (9th Cir. 2011). Nothing about the

27   proposed award of attorney's fees should detract from the fairness of the supplemental settlement.

28

1

2

**e.   The parties have no other agreements pertaining to the supplemental settlement**

3   The Court also must evaluate any agreement made in connection with the proposed settlement.

4   *See* Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3). Here, the supplemental settlement agreement before the

5   Court is the only agreement between the parties. (Class Counsel Decl. ¶ 50.)

6

7

**3.   The class representatives and Class Counsel have adequately represented the supplemental class**

8   Under Rule 23(e)(2)(A), courts look to the adequacy of representation, which includes an

9   analysis of "the nature and amount of discovery" undertaken in the litigation. Fed. R. Civ. P.

10   23(e)(2)(A), advisory committee's notes. The Court has noted that the class representatives and Class

11   Counsel have adequately represented the class. (Dkt. 292 at 11.) The class representatives did not seek

12   an incentive award in the original settlement and do not seek one here.

13   At all times, Class Counsel has worked hard for both original and supplemental class members.

14   (Dkt. 292 at 13.) For example, after final approval, Class Counsel and their staff attempted to locate

15   unfound original class members. Class Counsel further worked with JND to find alternate addresses

16   and to reach out to class members to remind them to cash their settlement payments. (Dkt. 311.)

17   For the supplemental settlement, Class Counsel has worked diligently over the past 13 months

18   to analyze Wells Fargo's data related to each supplemental class member, confirm the accuracy of the

19   data, and ultimately worked to negotiate a resolution that would treat supplemental class members

20   equitably vis-a-vis the original class members. Class Counsel has also remained available and promptly

21   answered inquiries from supplemental class members related to the initial correspondence they received

22   from Wells Fargo and Wells Fargo's remediation program.

23   Throughout the investigation, litigation, and settlement process, Class Counsel have

24   continuously and adequately represented the class's best interests, and in the end achieved meaningful

25   compensation for all class members.

26   **4.   The supplemental settlement treats all settlement class members equitably**

27   The final Rule 23(e)(2) factor turns on whether the proposed settlement "treats class members

28   equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include

1    whether the apportionment of relief among class members takes appropriate account of differences

2    among their claims, and whether the scope of the release may affect class members in different ways

3    that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D), advisory committee's notes.

4    Here, the supplemental settlement employs the same allocation plan that the Court found equitable in

5    approving the original settlement. (Dkt. 292 at 10.)

6        Also, no class representative is seeking an incentive award and thus no named Plaintiff is

7    receiving a benefit not available to other class members; thus, supplemental class members' awards are

8    directly proportional to any damages they might have been able to recover at trial, and this factor

9    weighs in favor of settlement approval. *See, e.g., Altamirano v. Shaw Indus., Inc.*, 2015 WL 4512372,

10   at *8 (N.D. Cal. July 24, 2015) (finding no preferential treatment because the settlement "compensates

11   class members in a manner generally proportionate to the harm they suffered on account of [the]

12   alleged misconduct").

13       **B.    Certification remains appropriate**

14       The proposed supplemental settlement class definition is the same as the initial settlement class

15   the Court finally approved in October 2020 except that it excludes original class members. (Dkts. 217,

16   292.) There is no reason to depart from the Court's previous conclusions regarding the propriety of

17   certification.

18       **C.    Notice to the supplemental settlement class comported with Rule 23 and due**

19       **process**

20       Where a settlement class is certified under Rule 23(b)(3), the notice must be the "best notice

21   that is practicable under the circumstances, including individual notice to all members who can be

22   identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

23       Here, the corrected notice was disseminated to each supplemental class member via first-class

24   mail on September 10, 2021. Notices were sent in envelopes that were stamped with the phrase

25   "NOTICE RE: WELLS FARGO LOAN MODIFICATION SETTLEMENT" to be more likely to be

26   opened than thrown away as junk mail. (Dkt. 12 at Sec. 13.) JND received class member addresses

27   from Wells Fargo and ran all addresses through the United States Postal Service's National Change of

28   Address database. (JND Declaration, Dkt. 312-3 at ¶¶ 14-18.) When notices were returned as

undeliverable, JND and Class Counsel worked to find new addresses and redeliver notices. (Class Counsel Decl. ¶¶ 27-28.) JND also maintained a website with a full version of the notice in both English and Spanish, the claim form for the severe emotional distress fund (in both English and Spanish), important documents from the litigation, and up-to-date information on the settlement approval process. (*See* www.homeloanmodificationsettlement.com.)

The supplemental class notice also complies with Rule 23(c)(2)(B) in that it "clearly and concisely state[s] in plain, easily understood language" the nature of the action; the class definition; the class claims, issues, or defenses; that the class member may appear through counsel; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on class members. (*See* Notice, Dkt. 312-2, Exhibit B.) To that end, the notice is consistent with the samples provided by the Federal Judicial Center.[7]

Finally, notice was also provided to the U.S. Attorney General and appropriate regulatory officials, as required by 28 U.S.C. § 1715. (Settlement, Dkt. 312-2 at § VII.)

## V.    Class Counsel's request for attorney's fees is reasonable

Rule 23 permits a court to award "reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable[.]" *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 941. Here, Plaintiffs seek this Court's approval of reasonable attorney's fees pursuant to the parties' agreement. *See* Fed. R. Civ. P. 23(h).

### A.    The parties' fee agreement

"[I]n those situations in which defendant is paying the fee, it has an incentive to negotiate a reasonable one. Thus, the product of that negotiation provides evidence that the proposed fee is reasonable under Rule 23." Newberg on Class Actions § 15:76. Here, Class Counsel and Wells Fargo negotiated an agreement whereby Wells Fargo will pay attorney's fees of $3,623,865 in addition to the amount due to the supplemental class. That this agreement was reached at arm's length after negotiating settlement benefits and does not affect the supplemental class benefits is evidence that the

---

[7] *See* https://www.fjc.gov/sites/default/files/2016/ClaAct04.pdf.

proposed fee request is reasonable. Also, the parties negotiated a proposed fee of approximately 16.6%

of the net supplemental settlement amount. (Dkt. 312-2 at § IV, ¶ B.). This is 8.4% lower than the

percentage fee award of 25% that the Court approved as part of the original settlement.

The parties' agreed-upon fee does not implicate any concerns about collusion. As discussed, any

award of attorney's fees will not diminish settlement benefits. *See In re Volkswagen "Clean Diesel"*

*Mktg., Sales Practices and Prod. Liab. Litig.*, No. 3:15-md-02672-CRB, Dkt. 3053 at 7 (N.D. Cal. Mar.

17, 2017) (no detriment to class in awarding fees paid by defendant separate and apart from non-

reversionary class compensation amount); *see also Dahl v. Bay Power Inc.*, 2021 WL 2313388, at *3

(N.D. Cal. May 28, 2021) (approving agreed-upon fee amount in an FLSA case where "the negotiated

attorney's fee does not reduce the award to any Plaintiff").

As discussed at preliminary approval (Dkt. 312 at 11–12), because of the importance of not

awarding supplemental class members more than original class members, unawarded fees (if any) will

return to Wells Fargo rather than increase the amount of the supplemental settlement. While such

"reverters" can be evidence of collusion, here it is an "element[] of a good deal" and in the "class' best

interest as part of the settlement package." *Briseno,* 2021 WL 2197968 at *9. It ensures that the

supplemental settlement class would receive the same benefits as the original class and that Wells

Fargo could not obtain a lower settlement value by allocating or agreeing to pay Class Counsel more.

Thus, the parties' negotiated fee award is reasonable and warrants this Court's approval.

### B.    Percentage of fund analysis

The amount of fees Class Counsel seeks is a reasonable percentage of the net supplemental

settlement amount. If this motion is granted, the gross supplemental settlement amount would be

$21,864,673. Deducting administration and litigation expenses, the aggregate *net* supplemental

settlement amount would be $21,793,190. The requested $3,623,865 fee is 16.6% of this net amount.

The Ninth Circuit benchmark is 25% of the recovery obtained, *Bellinghausen v. Tractor Supply*

*Co*., 306 F.R.D. 245, 260 (N.D. Cal. 2015), with most "awards exceed[ing]" 25%. *In re Omnivision*

*Techs.,* 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008). District courts may depart (upward or downward)

from the 25% benchmark rate by "providing adequate explanation in the record of any 'special

circumstances.'" *In re Bluetooth*, 654 F.3d at 942. And courts may consider the net or gross recovery in

assessing the reasonableness of a fee request. *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000) (holding "reasonableness of attorneys' fees is not measured by the choice of the denominator"). Ultimately, however, "[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). Thus, the requested fee is below the Ninth Circuit benchmark and is reasonable.

Moreover, examining Class Counsel's aggregate fees as a percentage of the aggregate net settlement also supports granting the requested fee. If this motion is granted, the aggregate gross settlement amount would be $40,364,673. Deducting aggregate administration and litigation expenses, the aggregate *net* settlement amount would be $39,893,190. If the Court approves the requested fee Wells Fargo agreed to pay, the aggregate fees Class Counsel will receive for work on the case overall ($8,148,865) would be 20.4% of this aggregate *net* settlement amount. This percentage is also below the Ninth Circuit benchmark.

Courts consider several non-exclusive factors when comparing a request for attorney's fees to a percentage of the amount recovered: "(1) the extent to which class counsel achieved exceptional results for the class; (2) whether the case was risky for class counsel; (3) whether counsel's performance generated benefits beyond the cash settlement fund; (4) the market rate for the particular field of law; (5) the burdens class counsel experienced while litigating the case; (6) and whether the case was handled on a contingency basis." *In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d 922, 930 (9th Cir. 2020). No single factor is determinative; rather, courts must ensure any fee award is based on findings that account for all relevant circumstances. *Id*.

### C.   Results achieved

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *In re Omnivision Techs.,* 559 F. Supp. 2d at 1046. As the Court recognized in granting final approval of the original settlement, the supplemental settlement also "brings significant relief" for the class. (Dkt. 292 at p. 13). Here, $18,169,325 will be paid by Wells Fargo on a non-reversionary basis to the Class, exclusive of attorney's fees and expenses that Wells Fargo has agreed to pay separately. Like the original settlement, this supplemental settlement is a successful resolution to the litigation. Supplemental class members will receive between $14,000 and $116,502 in settlement

funds for economic harm, in addition to any funds they may receive from the $1,450,000 severe emotional distress fund. (Class Counsel Decl. ¶ 2.)

This settlement was designed to provide the same level of payments to supplemental class members as the original settlement provided to original class members, which represented 37% of what Plaintiffs estimated they could have recovered in economic damages at trial. (*Id.* at ¶ 31.) Such a recovery is significant for complex class actions like this one. *See, e.g., In re Heritage Bond Litig.*, 2005 WL 1594403, at *19 (C.D. Cal. June 10, 2005) (settlement representing 36-38% of the class's total net loss was "an exceptional result"). Indeed, as the court recognized in granting final approval of the original settlement (Dkt. 292 at 13), the supplemental settlement provides significant relief when compared to other similar class actions involving wrongful loan modification denials. *See, e.g., Chao*, 2015 WL 294823 (gross settlement on behalf of borrowers who were denied loan modifications represented approximately 19% of the claimed damages for breach of contract and UCL restitution); *Gaudin,* 2015 WL 7454183 (approving settlement on behalf of borrowers who made HAMP trial plan payments but were not offered a permanent modification; settlement represented about 13.5% of the breach of contract, UCL, and Rosenthal Act damages). Notably, in addition to the settlement funds, supplemental class members have already received approximately $19.2 million from Wells Fargo in voluntary remediation payments. The total amount supplemental class members will receive in connection with this error will therefore exceed $37.3 million.

The supplemental settlement also provides supplemental class members with an opportunity to receive compensation for severe emotional distress damages. Proving that Wells Fargo intentionally caused emotional distress would be challenging given the bank's defense that the calculation error was an innocent mistake. Even so, the settlement creates a $1,450,000 fund and supplemental class members were able to submit a claim if they believed they suffered severe emotional distress due to the calculation error.

The settlement benefits Class Counsel obtained for the supplemental class, in short, provide a "win" for the supplemental class and support the requested fee.

### D.   Quality of work

This supplemental settlement was, of course, only achieved because of the hard-fought litigation

that brought about the original settlement. Plaintiffs have already detailed their work to achieve the original settlement. (Dkt. 281.) As the Court noted in awarding Class Counsel 25% of the original net settlement fund, Class Counsel "undoubtedly worked hard on this suit." (Dkt. 292 at 13) (noting that Class Counsel responded to over 50 discovery requests on behalf of named plaintiffs; reviewed over 200,000 pages of documents; took seven depositions in Iowa, Oregon, Minnesota, North Carolina, and California; and defended sixteen named plaintiffs and eighteen absent class members in depositions taken by the bank). Here, Class Counsel will describe the work they did after final approval to distribute settlement funds to as many original class members as possible, negotiate the supplemental settlement, distribute the supplemental notice, and present the supplemental settlement for approval.

Class Counsel oversaw JND's settlement administration work for the original settlement class from start to finish, including exchanging over 500 e-mails with JND regarding administration and distribution of settlement proceeds to original class members. (Class Counsel Decl. ¶ 8.)

JND mailed checks to original class members on December 7, 2020, and sent postcard reminders after 60 days to those who had not yet cashed their checks. On February 18, 2021, JND reported that approximately $2.5 million in settlement funds (19% of the original net settlement fund) remained uncashed. Class Counsel immediately began working with JND and Wells Fargo to increase the deposit rate. Class Counsel requested and received from JND a list of all original class members who had not yet cashed their checks and then worked with JND to send follow-up letters to those class members. Class Counsel worked with Wells Fargo to obtain any additional information it had on these individuals (including phone numbers) so that Class Counsel could try contacting them. (*Id*. at ¶ 10.)

Class Counsel also independently researched each of these original class members and tried contacting them using a variety of methods. Specifically, Class Counsel searched on Google and people-search websites such as www.intelius.com and www.familytreenow.com to obtain possible phone numbers and e-mail addresses. Class Counsel also searched social media sites such as Facebook, LinkedIn, and Twitter for alternative ways to get in touch with these class members (such as sending messages to their accounts). Class Counsel searched for relatives, neighbors, and employers who seemed to be associated with the original class members. For each original class member who hadn't deposited a check, Class Counsel called every potential number found, messaged every potential e-mail

address found, and pursued every other avenue that could be found to contact them (such as calling and e-mailing their workplaces and relatives). (Class Counsel Decl. ¶ 11.)

When Class Counsel made contact with an original class member who had not cashed her check, Class Counsel continued following up with the individual until it was cashed. For instance, in one case, Class Counsel learned through Facebook that an original class member had moved to a foreign country and contacted her by calling an international number found online. Class Counsel learned that her settlement check, which was over $100,000, had been mailed to a former address she had in the US, so Class Counsel worked with her until she could locate it and coordinate with a contact who helped her deposit it. (*Id*. at ¶ 12.)

Class Counsel's efforts were successful. As reflected in the Post-Distribution Interim Accounting (Dkt. 311), by April 28, 2021, the amount of uncashed checks decreased more than half from $2.5 million to $1.23 million. Class Counsel then continued this work, and by the time all stale dates on checks had expired and we filed the final status report on June 29, 2021 (Dkt. 314), the amount of uncashed checks further decreased to $760,942. Thus, Class Counsel's efforts led to over $1.7 million in additional deposits; and, in the end, original class members deposited over 94% of settlement funds available to class members. Class Counsel then worked with JND to send the remaining funds to state unclaimed property funds. On August 6, 2021, JND sent the remaining 6% to the state unclaimed property funds. (Dkt. 320; Class Counsel Decl. ¶ 13.)

As described above, after negotiating the supplemental settlement and obtaining preliminary approval, Class Counsel performed similar work to obtain addresses for supplemental class members whose notices were not deliverable; and Class Counsel will work just as hard to distribute checks to these supplemental class members.

### E.   Contingent nature of the fee and risk of no recovery

"Courts have long recognized that the attorney's contingent risk is an important factor in determining the fee award and may justify awarding a premium over an attorney's normal hourly rates." *Monterrubio v. Best Buy Stores, L.P.,* 291 F.R.D. 443, 457 (E.D. Cal. 2013) (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1299 (9th Cir. 1994)). Class Counsel took this case on an entirely contingent fee basis, knowing they could receive no compensation for their work and no

recoupment of expenses. Overall, to achieve this settlement, this Court has recognized that Class Counsel had to overcome high hurdles on liability, damages, and class certification issues. (Dkt. 292 at 9-10.) Still, Class Counsel persevered and obtained significant compensation for the class in the face of these risks. These factors weigh in favor of the requested 16.6% fee for the supplemental settlement.

**F.     A lodestar crosscheck is not required but would confirm the reasonableness of Class Counsel's fee request**

The Ninth Circuit "has consistently refused to adopt a crosscheck requirement," finding instead that in certain circumstances a district court may use "the percentage-of-recovery method to calculate fees and refus[e] to conduct a lodestar crosscheck[.]" *Farrell v. Bank of Am. Corp., N.A.*, 827 Fed. App'x. 628, 630 (9th Cir. 2020), *cert. denied sub nom. Threatt v. Farrell*, -- St. Ct. --, 2021 WL 4507641 (U.S. Oct. 4, 2021). In particular, a lodestar crosscheck is unnecessary when, as here, a proposed fee award would "f[a]ll under the 25% benchmark that [the Ninth Circuit has] encouraged district courts to use as a yardstick." *Id.* at 631 (citing *Stanger v. China Elec. Motor, Inc*., 812 F.3d 734, 738 (9th Cir. 2016); *Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 955 (9th Cir. 2015)). This Court, therefore, need not conduct another lodestar crosscheck because (as described above) the proposed fee request is 16.6% of the net supplemental settlement amount; the aggregate fees would be 20.4% of the aggregate net settlement. The reasonableness of attorney's fees, then, can be appropriately assessed based on a percentage-of-recovery method only. *See id*.

Even so, the Court has already performed a lodestar crosscheck, finding that a 25% fee award was reasonable for the original settlement. (Dkt. 292 at 12-13.) Another lodestar crosscheck would yield the same conclusion that the overall aggregate fee award of 20.4% is also reasonable. "The lodestar cross-check calculation need entail neither mathematical precision nor bean counting . . . [courts] may rely on summaries submitted by attorneys and need not review actual billing records." *Bellinghausen,* 306 F.R.D. at 264. To calculate the lodestar, courts multiply the number of hours reasonably expended litigating the case by a reasonable hourly rate, and then can adjust the lodestar up or down by an appropriate multiplier reflecting "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Jasper v. C.R. England, Inc*., 2014 WL 12577426, at *9 (C.D. Cal. Nov. 3, 2014) (citing *In re Bluetooth Headset*,

654 F.3d at 941-42).

Here, performing a lodestar crosscheck on the aggregate lodestar/multiplier shows that the requested fee is reasonable. The supplemental settlement, of course, is the product of the work performed since the inception of this case and the work performed after these additional class members were discovered. In its final approval order, the Court noted that Class Counsel's hours, hourly rates and lodestar of $3,758,689 million (after exercising billing discretion) was reasonable. (Dkt. 292 at 12-13.) Since they submitted this lodestar, Class Counsel has incurred an additional $702,354[8] in lodestar for their work submitting final approval paperwork for the original settlement, locating and distributing settlement proceeds to original class members, negotiating the supplemental class settlement, preparing preliminary approval papers including class notice, overseeing JND's mailing of class notice and researching new addresses for class members whose notices were undeliverable, communicating with the special master, communicating with supplemental class members, and preparing the supplemental final approval and fee motion. (Class Counsel Decl. ¶ 42.) This brings Class Counsel's aggregate lodestar to $4,461,043. If the Court awards the requested fee in this supplemental settlement, Class Counsel's total fee in the entire case would be $8,148,865, which represents a 1.8 multiplier.

This multiplier is well within the range that the Ninth Circuit has found to be reasonable. In the Ninth Circuit, multipliers of 1 to 4 are typical. *See Hopkins v. Stryker Sales Corp.*, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013) ("Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases."); *Vizcaino*, 290 F.3d at 1051 n.6 (surveying multipliers in 24 class action suits and recognizing that courts applied multipliers of 1.0 to 4.0 in 83% of surveyed cases). Under California law, multipliers of 2 to 4 or even higher are also typical. *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 255 (2001); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 (Cal. Ct. App. 2008) (affirming 2.5 multiplier); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1265 (C.D. Cal. 2016) (applying California law and finding multiplier of 3.07 "well within the range of reasonable multipliers"). Given the total result here—a $40 million nationwide class settlement against a major U.S. bank—and the risks already familiar to the Court, this 1.8 multiplier is reasonable.

---

[8] This lodestar reflects a reduction of 138 hours deducted in Class Counsel's exercise of billing discretion.

1   This multiplier will also decrease as Class Counsel continues to devote additional time toward

2   supplemental class member inquiries and settlement distribution work in the coming months.

3   Therefore, the lodestar crosscheck confirms the reasonableness of awarding the requested fee, which

4   would make the aggregate fee 20.4% of the overall $40 million settlement. *See Laffitte v. Robert Half*

5   *Int'l Inc.*, 1 Cal.5th 480, 496 (2016) ("If the implied multiplier is reasonable, then the cross-check

6   confirms the reasonableness of the percentage-based fee").

7   Finally, consistent with the Court's order granting final approval of the original settlement, the

8   parties propose that Class Counsel be paid half their fee after the effective date of the settlement

9   agreement and the remaining half after they certify that all supplemental class member funds have been

10   distributed. (Dkt. 292 at 14.).

### G.     Class Counsel's request for reimbursement of expenses is also reasonable

12   "Attorneys may recover their reasonable expenses that would typically be billed to paying

13   clients in non-contingency matters." *In re Omnivision Techs.*, 559 F. Supp. 2d at 1048; *see also*

14   *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *22 (N.D. Cal. Feb. 11, 2016). Here, Class Counsel has

15   only $1,483 in out-of-pocket costs that were not already awarded in the original final approval. (Dkt.

16   292.) This request does not exceed the amount stated in the class notice, is well documented, and

17   reasonable.

18   For these reasons, Class Counsel should recover these expenses.

## VI.    Conclusion

20   For all the above reasons, Plaintiffs respectfully request that the Court grant final approval of

21   the supplemental settlement of $21,864,673 and award Class Counsel $3,623,865 in attorney's fees and

22   $1,483 in cost reimbursements.

23    Dated: December 2, 2021                          Respectfully submitted,

25                                                     */s/ Michael Schrag*
                                                       **GIBBS LAW GROUP LLP**
26                                                     Michael L. Schrag (SBN 185832)
                                                       Joshua J. Bloomfield (SBN 212172)
27                                                     Linda Lam (SBN 301461)
                                                       505 14th Street, Suite 1110
28                                                     Oakland, California 94612
                                                       Telephone: (510) 350-9700

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Facsimile: (510) 350-9701
mls@classlawgroup.com
jjb@classlawgroup.com
lpl@classlawgroup.com

Richard M. Paul III
Ashlea G. Schwarz
Laura C. Fellows
**PAUL LLP**
601 Walnut Street, Suite 300
Kansas City, Missouri 64106
Telephone: (816) 984-8100
Facsimile: (816) 984-8101
Rick@PaulLLP.com
Ashlea@PaulLLP.com
Laura@PaulLLP.com

*Counsel for Plaintiffs and the Class*