Michael L. Schrag (SBN 185832)
Joshua J. Bloomfield (SBN 212172)
Linda P. Lam (SBN 301461)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, California 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
mls@classlawgroup.com
jjb@classlawgroup.com
lpl@classlawgroup.com

Richard M. Paul III
Ashlea G. Schwarz
Laura C. Fellows
**PAUL LLP**
601 Walnut Street, Suite 300
Kansas City, Missouri 64106
Telephone: (816) 984-8100
Facsimile: (816) 984-8101
Rick@PaulLLP.com
Ashlea@PaulLLP.com
Laura@PaulLLP.com

*Counsel for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT FOR THE**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALICIA HERNANDEZ et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | Case No. 3:18-cv-07354 -WHA<br><br>**JOINT DECLARATION OF MICHAEL L. SCHRAG AND RICHARD M. PAUL III IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SUPPLEMENTAL CLASS ACTION SETTLEMENT AND FOR ATTORNEY'S FEES AND REIMBURSEMENT OF EXPENSES**<br><br>Date: January 6, 2022<br>Time: 11 a.m.<br>Dept: Courtroom 12<br>Judge: Hon. William H. Alsup |

We, Michael Schrag and Richard Paul, declare as follows:

1. We are Class Counsel for the certified class and are partners at Gibbs Law Group LLP and Paul LLP, respectively. We have worked on this case and supervised the work of others in our firms from the investigative stage through both settlement approval processes. We make this joint declaration based on personal knowledge and review of our firms' case files.

2. We have both litigated class and complex cases for over twenty-five years and based on our experience and deep knowledge of the facts and legal issues in this case, fully support this supplemental settlement. Wells Fargo should have included these supplemental class members as part of the original class settlement but did not identify them before the original class settlement was finally approved. As the Court previously found, the original class settlement was a favorable one for class members. This supplemental settlement, which provides a $21,864,673 all cash settlement, will pay supplemental class members between $14,000 and $116,502 in settlement payments for economic loss based on the same allocation methodology used to calculate the net settlement payments to the original class members. In addition, supplemental class members who submitted claims for severe emotional distress will receive a share of the $1,450,000 fund set aside for severe emotional distress claims, allocated by Special Master Cathy Yanni. These supplemental class member payments totaling $18,169,325 are non-reversionary.

3. In the original settlement, Class Counsel were awarded fees of 25% of the net settlement fund of $18.1 million ($18.5 million minus $335,000 in litigation costs and $65,000 in settlement administration expenses). The awarded fee was slightly above our lodestar of $3,758,689 after we made substantial billing judgment reductions totaling $1.4 million. (Dkt. 282 at ¶ 74.) Because the net settlement fund would have been larger had Wells Fargo identified these supplemental class members when the original settlement was negotiated, Wells Fargo agreed to pay additional fees as part of this supplemental settlement. There was, however, no discussion of fees until after we determined the full amount of settlement payments necessary for the supplemental class members to receive equivalent payments had they been included in the original class settlement. Only then did the parties negotiate fees.

4. After arms-length negotiations, the parties agreed, subject to court approval, that Wells Fargo would pay $3,623,865 in attorney's fees separate from and in addition to the supplemental class

member benefits. This fee represents approximately 16.6% of the net supplemental settlement (after deducting litigation and administration expenses). Wells Fargo also separately agreed to pay up to $72,500 in settlement administration and litigation expenses. While no part of the class member compensation can revert to Wells Fargo, any unawarded fees and expenses would be retained by Wells Fargo.

5. Class Counsel incurred a lodestar of $702,354 after the cut-off for time submitted in their original fee application. Some of this work involved making sure original class members received and deposited their settlement checks, and some work involved negotiating and carrying out the supplemental class settlement. Of course, the results achieved in the supplemental settlement were based in large part on the work done to achieve the original class settlement.

6. A lodestar crosscheck comparing the aggregate lodestar incurred in the entire case ($4,461,043) with the aggregate total fees Class Counsel would receive if this motion is granted ($8,148,865) yields a 1.8 multiplier.

I.     **Class Counsel's work since final approval of the original settlement**

7. On October 12, 2020, the Court entered an order finally approving the $18.5 million original settlement. (Dkt. 277.) The Court also affirmed its prior order appointing Debora Granja and Sandra Campos as class representatives and Gibbs Law Group LLP and Paul LLP as Class Counsel. (Dkt. 277; Dkt. 217 at 4.)

8. Class Counsel oversaw JND's settlement administration work for the original settlement class from start to finish, including exchanging over 500 e-mails with JND regarding administration and distribution of settlement proceeds to original class members.

9. Class Counsel worked to locate original class members who had not cashed their settlement checks, including engaging paralegals to individually research and attempt to locate each class member. Class Counsel further worked with JND to find alternate addresses and to reach out to original class members to remind them to cash their settlement payments.

10. JND mailed checks to original class members on December 7, 2020 and sent postcard reminders 60 days later to those who had not yet cashed their checks. On February 18, 2021, JND reported that approximately $2.5 million in settlement funds (19% of the settlement funds available to

original class members) remained uncashed. Class Counsel immediately began working with JND and Wells Fargo to increase the deposit rate. Class Counsel requested and received from JND a list of all original class members who had not yet cashed their checks and then worked with JND to send follow-up letters to those class members. Class Counsel worked with Wells Fargo to obtain any additional information it had on these individuals (including phone numbers) so that Class Counsel could try contacting them.

11. Class Counsel also independently researched each of these original class members and tried contacting them using a variety of methods. Specifically, Class Counsel searched on Google and people-search websites such as www.intelius.com and www.familytreenow.com to obtain possible phone numbers and e-mail addresses. Class Counsel also searched social media sites such as Facebook, LinkedIn, and Twitter for alternative ways to get in touch with these class members (such as sending messages to their accounts). Class Counsel searched for relatives, neighbors, and employers who seemed to be associated with the original class members. For each original class member who hadn't deposited a check, Class Counsel called every potential number found, messaged every potential e-mail address found, and pursued every other avenue that could be found to contact them (such as calling and e-mailing their workplaces and relatives).

12. When Class Counsel made contact with an original class member who had not cashed her check, Class Counsel continued following up with the individual until she could cash her check. For instance, in one case, Class Counsel learned through Facebook that an original class member had moved to a foreign country and contacted her by calling an international number found online. Class Counsel learned that her settlement check, which was over $100,000, had been mailed to a former address she had in the US, so Class Counsel worked with her until she could locate it and coordinate with a contact who helped her deposit her check.

13. Class Counsel's efforts were successful. As reflected in the Post-Distribution Interim Accounting (Dkt. 311), by April 28, 2021, the amount of uncashed checks decreased more than half from $2.5 million to $1.23 million. Class Counsel then continued this work, and by the time all stale dates on checks had expired and we filed the final status report on June 29, 2021 (Dkt. 314), the amount of uncashed checks further decreased to $760,942. Thus, Class Counsel's efforts led to over $1.7

million in additional deposits; and, in the end, original class members deposited over 94% of settlement funds available to them. Class Counsel then worked with JND to send the remaining funds to state unclaimed property funds. On August 6, 2021, JND sent the remaining 6% to state unclaimed property funds. (Dkt. 320.)

14. Shortly after final approval of the original class settlement, Wells Fargo identified 741 additional borrowers not disclosed or accounted for in the original settlement. Therefore, this group of borrowers had not received class notice, or any remediation; nor were they on track to receive settlement payments.

15. The parties promptly brought this issue to the Court's attention and began negotiating this supplemental settlement. (Dkt. 296.) First, Wells Fargo produced the same customer data for supplemental class members that the parties had used to negotiate the original settlement. Second, Class Counsel analyzed that data to determine the total amount of economic loss payments to supplemental class members, using the same allocation formula used with the original class members, that would deliver equivalent settlement payments to each supplemental class member as if she had been an original class member. The parties therefore negotiated the same relief for supplemental class members as original class members received. They determined and agreed that the amount for supplemental economic loss payments would be $16,719,325. They also agreed that because the supplemental class is approximately 45% larger than the original class, the severe emotional distress should be proportionally larger -- making it $1,450,000. They communicated with Judge Ryu as part of this process but did not hold a formal settlement conference.

16. After agreeing on this aggregate amount for economic loss payments as well as the severe emotional distress fund, the parties then negotiated the attorney's fee and litigation costs sought herein as separate payments. The purpose of the separate fee payment was to avoid impacting the amounts supplemental class members receive and preserve equity between original and supplemental class members. This negotiation was arms-length. The parties ultimately agreed that Wells Fargo would, subject to court approval, pay $3,623,865, which is 16.6% of the net supplemental settlement amount. (*See infra* ¶ 46.) The parties then prepared and executed a settlement agreement formalizing these terms.

17. On July 26, 2021, the Court entered an order preliminarily approving the supplemental settlement. (Dkt. 318.) The Court also affirmed its prior order appointing Debora Granja and Sandra Campos as class representatives and Gibbs Law Group LLP and Paul LLP as Class Counsel. (Dkt. 318; Dkt. 217 at 4.)

18. For both the original and supplemental settlements, the parties retained the services of an experienced settlement administrator, JND Legal Administration. Based on the work that JND performed in administering the initial settlement, the parties determined that retaining JND to administer this supplemental settlement was in the best interest of the supplemental class. In particular, it allowed the parties to maintain the same website used in the original class settlement, which had the added benefit of keeping the information on the original class settlement available longer for those who did not cash their original class settlement payments. JND followed the same robust notice program used in the original settlement, as described in the JND declarations (filed concurrently and at Dkt. 312-3).

19. For the supplemental settlement, JND maintained the website it created for the original settlement at www.homeloanmodificationsettlement.com. The website includes important pleadings, a full version of the notice in both English and Spanish, and up-to-date information about the settlement approval process. The website also includes contact information for the settlement administrator and Class Counsel. Additionally, the website allowed supplemental class members to electronically submit the severe emotional distress claim form and any supporting documentation.

20. After preliminary approval, the parties provided JND with the approved supplemental class notice. JND formatted the notice and circulated the final version of the notice for approval. Class Counsel checked proofs of the notice and made edits to it before JND printed each supplemental class member's notice that included the amount of the remediation payment from Wells Fargo and the estimated amount the class member would receive under this supplemental settlement.

21. On August 13, 2021, notice was disseminated to each class member via first-class mail. Using the class list Wells Fargo provided, JND performed a National Change of Address search and conducted advanced address updating using a variety of tools, such as LexisNexis, to obtain the most current address for supplemental class members. The notices were sent in envelopes that were stamped

with the phrase "NOTICE RE: WELLS FARGO LOAN MODIFICATION SETTLEMENT," to make it more likely they would be opened rather than thrown away as junk mail. (Dkt. 12 at 4.)

22. Each notice included the correct amounts for each supplemental class member. But when, in the mail room, the notices were inserted into envelopes, numerous letters were inserted into the wrong envelopes, leading supplemental settlement class members to receive the wrong individual mailing. Upon learning of the error, the parties immediately asked for, and the Court ordered, a corrected mailing. (Dkt. 325.)

23. To ensure that the error in the mail room did not recur, Class Counsel took the following steps. First, JND prepared each supplemental class member's notice to state her remediation and settlement payment amounts. Per the Court's order, each notice stated: "This notice supersedes the prior notice dated August 13, 2021" and specifically called out (in bold font) October 25, 2021 as the new deadline to object, opt-out, and/or submit emotional distress claims. (Dkt. 325.) Class Counsel reviewed and approved this notice.

24. Next, JND conducted a quality review of these notices as well as the other components of the notice packet (the claim form for severe emotional distress and the sheet with the class member's name and address). During this step, JND re-ran updated address searches using the National Change of Address (NCOA) database for any supplemental class member whose first notice was returned as undeliverable and reviewed the notices to make sure the stated remediation and settlement amounts matched each supplemental class member's unique ID number.

25. JND then prepared the notice packets by placing, for each supplemental class member, the components of the packet into an envelope addressed to him or her. After each packet was assembled, a JND employee double-checked each of the 743[1] envelopes to make sure each included the correct class member's notice and emotional distress form. JND then conducted a second level of quality control, where each envelope was triple-checked. During that round of checking, Class Counsel video-conferenced with JND and conducted a random spot-check of the packets to ensure that envelopes had the correct class notices in them. Only after each envelope was triple-checked by JND and spot-

---

[1] For two sets of co-borrower supplemental class members who are now divorced, JND sent a separate notice to each co-borrower. Therefore, JND mailed 743 envelopes instead of 741.

-6-  JOINT DECLARATION IN SUPPORT OF MOTION FOR FINAL APPROVAL, FEES, AND EXPENSES

checked by Class Counsel did JND seal the envelopes and place them in the mail on September 10, 2021.

26. In the end, the mailing error was fully corrected without any prejudice to supplemental class members who had the same amount of time—45 days from the second mailing—to opt out, object and/or apply for emotional distress funds as they would have had absent the envelope stuffing error.

27. Since the September 10, 2021 mailing, Class Counsel has worked diligently to find new addresses for supplemental class members whose notices came back as undeliverable. First, Class Counsel obtained the initial list of supplemental class members for whom JND's initial efforts failed to locate an updated address. Class Counsel worked with Wells Fargo to provide JND with any additional contact information from the bank's records as well as social security numbers for those borrowers. Using this information, JND found new addresses for many of these class members and remailed notices. Before notices were sent to these addresses, JND triple-checked the envelopes and Class Counsel again video-conferenced with JND to conduct a random spot-check of the packets to ensure that envelopes had the correct class notices in them.

28. Later, Class Counsel reached out to JND and requested an updated list of all undeliverable notices. Class Counsel then conducted Accurint searches for potential addresses and contact information. Class Counsel called and e-mailed the phone numbers and e-mail addresses they found for supplemental class members and forwarded any updated addresses to JND. These efforts reduced the number of unfound class members to 60. (*See* Declaration of Gretchen Eoff at ¶ 14.) JND and Class Counsel will continue efforts to locate these class members or their heirs so that as many class members as possible deposit settlement checks.

29. Moreover, numerous individuals who believe they may have been impacted by the calculation error at issue here have contacted Class Counsel. Class Counsel analyzed each of these inquiries to determine if they were from supplemental class members. Where Class Counsel was able to verify class membership, Class Counsel either confirmed they had received the class notice or, if they had not, Class Counsel obtained an updated address, sent the updated address to JND to re-send notice by mail, and also e-mailed the notice to the supplemental class member to provide immediate notice.

### II. Class Counsel supports the supplemental class settlement

30. The deadline for supplemental class members to opt out or object to the supplemental settlement was October 25, 2021. (Dkt. 325.) No supplemental class member objected and only one opted out of the settlement. We spoke to a representative with power of attorney for this supplemental class member and she explained that she opted out to avoid disrupting governmental benefits. Funds allocated to this class member will be distributed pro rata to supplemental class members who do not opt out based on each supplemental class member's share of the total amount paid from the economic damages fund. (Allocation Plan, Dkt. 312-2 at Ex. A.)

31. Plaintiffs' damages expert, Dan Salah, prepared an expert damages report for the named Plaintiffs and California class members in the original settlement in which he calculated two categories of economic damages: lost equity in class members' homes and the value of the "loss of use" of their homes. The original $18.5 million settlement fund represented approximately 37% of the economic damages Class Counsel estimated the class could have recovered on their best day at trial. This supplemental settlement was designed to mirror the compensation provided to the original class.

32. Given how well the original class members received the initial settlement as well as the similar response from the supplemental class members, Class Counsel continue to strongly believe that this supplemental settlement is fair, reasonable, and adequate.

33. The supplemental settlement fairly allocates net settlement proceeds to class members. The settlement proceeds to the supplemental class are divided into an economic damages fund of $16,719,325 and a severe emotional distress fund of $1,450,000.

34. For the economic damages fund, the allocation plan is the same as the one used in the original settlement and (1) sets a minimum payment of $14,000 per supplemental class member to provide each with significant relief for having to undergo the wrongful denial and foreclosure; (2) considers the amount of remediation payments already received from Wells Fargo; (3) provides supplemental class members at least 38%[2] of their unpaid principal balance at the time of the decision error, reduced by 5% for every six months of delinquency. (*See* Allocation Plan, Dkt. 312-3.)

---

[2] In its remediation program for original class members, Wells Fargo paid original class members an average of 38% of their unpaid principal balance.

35. The plan uses unpaid principal balance as a proxy for the value of the modification denied because, in general, supplemental class members with larger unpaid principal balances are more likely to have suffered more lost equity and, under Plaintiffs' theory, more damages as a result of the lost modification opportunity. The supplemental settlement will provide at least $14,000 and as much as $116,502 to each supplemental class member with no need to file a claim. And it does so in a case that was fiercely contested, where there was substantial litigation risk on both liability and damages. The plan thus results in a minimum payment of $14,000, which, when added to prior remediation payments Wells Fargo made, means each supplemental class member will receive at least $26,000 in compensation for the error.

36. JND will distribute settlement proceeds from the economic damages fund directly to supplemental class members by check without a claims process.

37. Supplemental class members who believed they suffered severe emotional distress were able to submit a simple claim form to the settlement administrator, who then provided all such claims to special master Cathy Yanni. (Emotional Distress Claim Form, Dkt. 312-4.) 102 supplemental class members submitted claims.

38. Ms. Yanni, who has over two decades of experience allocating settlement funds to injured plaintiffs, decided the monetary awards for each claimant. (Dkt. 312; Dkt. 318.) In addition to relying on her experience and discretion, Ms. Yanni considered (1) the severity of the emotional distress, *e.g.*, whether it required mental health or medical treatment or cause lack of functionality at home or work; and (2) whether the trial payment denial, as opposed to factors not related to this lawsuit, appeared to cause (or exacerbate) the emotional distress. (*See* Declaration of Cathy Yanni, Dkt. 312-4 at ¶¶ 11-12.) The deadline for supplemental class members to apply for compensation from the severe emotional distress fund was October 25, 2021. Some class members submitted late claims which Yanni, exercising her discretion, accepted. Yanni has made her initial awards, which were mailed to supplemental class members on November 15, 2021, except that awards on late claims were processed shortly after they were submitted. These supplemental class members have until December 6, 2021 to ask Yanni to reconsider her awards and final awards will be mailed by December 27, 2021. Class Counsel will report the results on January 3, 2022, in advance of the final approval hearing.

39. Each supplemental class member will receive his or her share of the settlement fund by check. Supplemental class members will have 120 days to deposit their checks. JND will send a postcard reminder notice to any supplemental class members who have not cashed their checks 60 days after issue. If any settlement checks are returned as undeliverable or remain uncashed, JND will use adequate and customary practices to contact and/or locate these supplemental class members. (Dkt. 312-2 at § V, ¶¶ D-E.)

40. In addition, as they did for original class members, Class Counsel will continue to work with JND to ensure that as many supplemental class members as possible deposit their settlement checks.

### III. Breakdown of time by project and final lodestar

41. To assist in the Court's assessment of reasonable attorney's fees in connection with the original class settlement, Class Counsel provided a detailed summary of our firms' work to litigate this action and deliver the original class settlement. (Dkt. 282, 282-1.)

42. In its final approval order, the Court noted that Class Counsel's hours, hourly rates, and lodestar $3,758,689 (after exercising billing discretion) was reasonable. (Dkt. 292 at 12-13.) Since they submitted this lodestar, Class Counsel has incurred an additional $702,354 in lodestar for their work on the motion for final approval of the original settlement and (as described above) locating and distributing settlement proceeds to original class members, negotiating the supplemental class settlement, preparing preliminary approval papers for the supplemental settlement including class notice, overseeing JND's mailing of notice to supplemental class members and researching new addresses for supplemental class members whose notices were undeliverable, communicating with the Special Master, communicating with supplemental class members about the case and the settlement, and preparing the supplemental final approval and fee motion. Thus, Class Counsel's total lodestar for the entire case is $4,461,043 (after exercising billing discretion).

43. As in Class Counsel's motion for attorney's fees in connection with the original settlement, we have categorized our detailed time entries to show the work we did on six specific projects. *See* Exh. A. These entries are listed chronologically within each project and include the date, attorney or paralegal initials, hourly rate, time spent, and a detailed description of the work performed. We also provide the total lodestar for each project after "billing judgment." Below are the timekeepers listed in

Exhibit A.

| Name | Initials | Position |
|---|---|---|
| Michael Schrag | MLS | Partner |
| Richard Paul | RMP | Partner |
| Linda Lam | LPL | Partner |
| Laura Fellows | LCF | Associate |
| Joshua Bloomfield | JJB | Counsel |
| | | |
| Angelyn Ancheta | AA | Administrative Assistant |
| Andre Mura | AMM | Partner |
| Dennis Higgs | DH | Litigation Assistant |
| Edwin Rhodes | EER | Legal Technology Manager |
| Eric Gibbs | EHG | Partner |
| Honeyleen Bohol | HCB | Litigation Assistant |
| Kendra John | KDJ | Paralegal |
| Patrick Neal | RPN | Paralegal |

44. Class Counsel exercised reasonable billing judgment in preparing our lodestar information. We reviewed each of our firms' time entries and eliminated or reduced time entries that were excessive, redundant, or unnecessary. In total, we deducted approximately 138 hours and a lodestar of $62,833 from our reported time from June 1, 2020 (the cut-off for time submitted in support of Class Counsel's motion for attorney's fees on the original settlement) to November 29, 2021.

45. The table below provides a project-by-project total of the hours and lodestar billed on these six projects.

| Project | Total Hours Recorded | Total Lodestar |
|---|---|---|
| Final approval / fee and costs motions for original settlement | 371.8 | $210,424 |
| Settlement check distribution to original class members | 286.3 | $147,048 |

| Negotiating supplemental settlement | 197.1 | $126,259 |
|---|---|---|
| Motion for preliminary approval of supplemental settlement | 145.1 | $83,480 |
| Notice to and communications with supplemental class members | 189.8 | $81,581 |
| Final approval / fee motion for supplemental settlement | 80.8 | $53,560 |

46. Class Counsel requests a fee of $3,623,865 in connection with this supplemental settlement. The amount is approximately 16.6% of the net supplemental settlement amount of $21,793,190 (the gross supplemental settlement of $21,864,673 minus administration and litigation expenses of $71,483).

47. If the final approval and fee motion is granted, the aggregate gross settlement amount would be $40,364,673. Deducting aggregate administration and litigation expenses, the aggregate *net* settlement amount would be $39,893,190. If the Court approves the requested fee Wells Fargo agreed to pay, the aggregate fees Class Counsel will receive for work on the case overall ($8,148,865) would be 20.4% of this aggregate *net* settlement amount.

48. Moreover, the aggregate fee is a 1.8 multiplier on Class Counsel's total lodestar in the case of $4,461,043 (after billing discretion, *see* Dkt. 292 at pp. 12-13).

49. The multiplier will effectively decrease as Class Counsel continue to devote additional time towards settlement approval, settlement administration, and class member inquiries in the coming months.

50. The Supplemental Settlement Agreement is the only agreement between the parties; the parties have no undisclosed agreement made in connection with the supplemental settlement proposal.

**IV.   Expenses**

51. The attached Exhibit B details Class Counsel's costs. The notice informed supplemental class members that Class Counsel would seek up to $2,500 in litigation expenses. (Dkt. 312-2 at Ex. B, Sec. 17.) Class Counsel request reimbursement of $1,483 for their out-of-pocket costs.

52. As with the original settlement, Class Counsel will not ask the Court to award service awards. We again acknowledge our gratitude to Ms. Granja and Ms. Campos for the time and effort they expended for the benefit of the class.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on December 2, 2021 in Oakland, California.

*/s/ Michael Schrag*
Michael Schrag

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on December 2, 2021 in Kansas City, Missouri.

*/s/ Richard M. Paul III*
Richard M. Paul III