UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALICIA HERNANDEZ et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | Case No. 3:18-cv-07354 -WHA<br><br>**[PROPOSED] ORDER AND JUDGMENT GRANTING MOTION FOR FINAL APPROVAL OF SUPPLEMENTAL CLASS SETTLEMENT AND AWARDING ATTORNEY'S FEES AND COSTS**<br><br>Date:   January 6, 2022<br>Time:  11 a.m.<br>Dept:   Courtroom 12<br>Judge:  Hon. William H. Alsup |

## INTRODUCTION

In this class action certified under Rule 23(b)(3), Plaintiffs move for final approval of a supplemental settlement agreement and for attorney's fees and costs. Defendant Wells Fargo does not oppose. For the following reasons, the motion is GRANTED.

## STATEMENT OF FACTS

The background of this action has been set forth in a prior final approval order and need not be repeated here (*see* Dkt. No. 292). On October 12, 2020, the Court granted final approval of an $18,500,000 settlement concerning Wells Fargo's erroneous denial of trial loan modifications where borrowers later lost their home to foreclosure. The settlement class consisted of 505 borrowers. Shortly thereafter, the bank identified 741 additional borrowers who were similarly affected. The parties notified the Court of this development. The parties then negotiated a supplemental settlement for these additional borrowers, seeking to provide the supplemental class with the same level of settlement

benefits as the original settlement class. The gross supplemental settlement value is $21,864,673. On July 26, 2021, the Court preliminarily approved the supplemental class settlement on behalf of a nationwide class under FRCP 23(b)(3) defined as follows (Dkt. No. 318):

> All persons in the United States who between 2010 and 2018 (i) qualified for a home loan modification or repayment plan pursuant to the requirements of government-sponsored enterprises (such as Fannie Mae and Freddie Mac), the Federal Housing Administration (FHA), the U.S. Department of Treasury's Home Affordable Modification Program (HAMP); (ii) were not offered a home loan modification or repayment plan by Wells Fargo due to excessive attorney's fees being included in the loan modification decisioning process; and (iii) whose home Wells Fargo sold in foreclosure; and (iv) were not part of the original *Hernandez* settlement finally approved on October 12, 202.

The supplemental settlement class is the same class the Court certified in approving the original settlement, except that it excludes original settlement class members. (Dkt. 217 at 4; Dkt. 292 at 2.) The supplemental settlement excludes: (a) Wells Fargo and its principals, affiliated entities, legal representatives, successors, and assigns; (b) any Person who filed a valid, timely Request for Exclusion; (c) federal, state, and local governments (including all agencies and subdivisions thereof); and (d) any Person who settled and released claims at issue in this action. (Dkt. 312-2 at § II, ¶ 39.)

The Court approved, as to form and content, the class notice describing the supplemental settlement and the key dates for supplemental class members such as the final approval hearing and the deadline to object, opt out, or submit a claim for severe emotional distress. The Court also approved the claim form for the "severe emotional distress fund;" re-confirmed its prior appointment of Debora Granja and Sandra Campos as class representatives and Gibbs Law Group LLP and Paul LLP as Class Counsel; and re-appointed Cathy Yanni as special master for processing supplemental class members' claims for severe emotional distress. (Dkt. No. 318).

The supplemental settlement for 740 additional class members breaks down as follows.[1] Wells Fargo will pay $18,169,325 to the supplemental class for economic damages and severe emotional distress without any potential reversion. Supplemental class members will receive a check to compensate for economic harm using the same formula as the original settlement. These payments will range between $14,000 and $116,502 and will total $16,719,325. In addition, Wells Fargo will pay $1,450,000 to supplemental class members who suffered severe emotional distress due to the

---

[1] One supplemental class member opted out of the settlement.

foreclosure of their homes. As in the original settlement, supplemental class members had the opportunity to submit a simple claim form for a portion of the emotional distress fund and 104 class members submitted claims. Wells Fargo will separately pay settlement administration expenses, attorney's fees, and litigation costs.

On September 10, 2021, the class administrator mailed notice of the proposed supplemental class settlement and fee request to all 741 class members via first-class mail (Dkt. 328-1, Eoff Decl. ¶ 9, Exh. B). The envelopes containing the notice letters were conspicuously marked to signify importance. The class administrator, Wells Fargo, and Class Counsel worked to find new addresses and redeliver notices to supplemental class members whose notices were returned as undeliverable. After these efforts, 52 supplemental class members' notices remain undeliverable and it appears that at least 21 of those are deceased and no known next-of-kin have been located, leaving no more than 31 living supplemental class members (of the 740 total) unfound. Economic damages awards for unfound supplemental class members will be sent to the unclaimed property fund in the state in which the supplemental class member last resided. This payment will be remitted to the unclaimed property funds within 180 calendar days after the last stale check on a date for any settlement class member receiving monetary relief. (Dkt. No. 312-2 at §IV, ¶ C). Thus, these supplemental class members will have fully released any claims for economic damages per the settlement agreement.

No supplemental class member objected to the settlement and only one opted out (in order to avoid the risk of losing governmental benefits). Moreover, 104 supplemental class members submitted claims for damages under the severe emotional damages fund and Ms. Yanni has now completed review of all of these claims and all 10 requests for reconsideration; she allocated the entire $1,450,000 fund among the 104 supplemental class members. Because the deadline for filing a claim under the severe emotional distress fund has passed and Ms. Yanni has already allocated the entire fund, for the 52 unfound class members, "to the extent any such [severe emotional distress] claims are allowed under applicable law," they will not be released.  (Dkt. No. 312-2 at § II(A) ¶ 32).

Since the supplemental class notices were mailed, moreover, the class administrator maintained a toll-free number for supplemental class members to call and obtain information as well as a website. The website supplied all the important court documents related to this litigation as well as up-to-date

information about the settlement approval process (Dkt. 328-1 at ¶ 15). Moreover, the website enabled supplemental class members to electronically submit their severe emotional distress claim form through the website, though class members could also do so via mail or email.

Plaintiffs now move for final approval of the proposed supplemental class settlement, an award of $3,623,865 in attorney's fees, and $1,483 in unreimbursed expenses. The bank does not oppose. (Dkt. No. 328). This order follows full briefing and a telephonic fairness hearing on January 6, 2022.

## ANALYSIS

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class . . . may be settled . . . only with the court's approval." When a proposed Settlement agreement is presented, the district court must perform two tasks: (1) direct notice in a reasonable manner to all class members who would be bound by the proposal, and (2) approve the settlement only after a hearing and on finding that the terms of the agreement are fair, reasonable, and adequate.

1. **FINAL APPROVAL OF PROPOSED SUPPLEMENTAL CLASS SETTLEMENT.**

    **A. ADEQUACY OF SUPPLEMENTAL NOTICE.**

The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (citations omitted). It must also describe "the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980).

The undersigned judge previously approved the form, content, and planned distribution of the supplemental class notice (Dkt. No. 318). As described above, the claims administrator has fulfilled the notice plan. Notice was mailed to 741 supplemental class members and the class administrator, Wells Fargo, and Class Counsel made efforts to redeliver to supplemental class members whose notice was returned undeliverable. After these efforts, 52 supplemental class members' notices remain undeliverable and it appears that at least 21 of those are deceased and no known next-of-kin have been located, leaving no more than 31 living supplemental class members unfound. It appears that notice reached the vast majority of supplemental class members.

**B. SCOPE OF RELEASE.**

The proposed supplemental settlement class is co-extensive with the class certified in January 2020 (*see* Dkt. Nos. 217 at 4; 269-2 at 3). The proposed supplemental settlement agreement, like the original class settlement, contains a release of claims that exceeds the scope of the certified class claim. Specifically, though the Court certified the class only as to the breach of contract claim, under the proposed settlement, supplemental class members — as well as their spouses, children, heirs, devisees, and so forth — will release the bank and its officers, directors, legal representatives, successors, subsidiaries, and assigns of (Dkt. No. 312-2 at § II(A) ¶¶ 32, 47):

> any and all claims, rights, causes of action, liabilities, actions, suits, damages, or demands (including Unknown Claims as defined in Paragraph 47, herein), of any kind whatsoever that arise out of or are based on the claims set forth in the Action, including claims based on the subject Loan Modification Denials, damages based on any failure to modify the Loans and/or damages based on the foreclosures challenged in this Action.
>
> \* \* \*
>
> "Unknown Claims" means any Released Claims that Plaintiffs or any Settlement Class Member does not know or suspect to exist in his, her or its favor at the time of the release of the Released Parties, and any Released Parties' Claims that Wells Fargo does not know or suspect to exist in his, her or its favor, which, if known by him, her or it, might have affected his, her or its settlement with and release of the Class Representatives, Settlement Class Members, and Class Counsel, or might have affected his, her or its decisions with respect to the Settlement.

In turn, the bank will release supplemental class members from any claims related to this litigation or Settlement (*id.* at ¶ 32).

Although the undersigned judge usually requires that a release of class claims "be limited only to the claims certified for class treatment" and avoid "releasing claims that 'could have been brought'" (*see* Dkt. No. 12 at 3), as in the original settlement, the release here is anchored to "claims set forth in this [a]ction, including claims based on the subject [l]oan [m]odification [d]enials" (Dkt. No. 312-2 at II(A) ¶ 32). The scope of the release, therefore, is tailored to the conduct at issue in this action — erroneous denials of loan modifications — as well as the harm alleged by supplemental class members — damages stemming from the loss of their homes. That is, with the exception of the intentional infliction of emotional distress claim, the damages Plaintiffs alleged for the remaining claims in the operative complaint were the same as the damages for the breach of contract claim in that they each relate to damages for the loss of supplemental class members' homes.

As to the emotional distress damages Plaintiffs sought as part of their intentional infliction of emotional distress claim and as a component of their damages for wrongful foreclosure claims in California and Georgia, this order, like the original final approval order, finds that the $1,450,000 fund specifically allocated for this type of harm in the proposed supplemental settlement overcomes the undersigned's admonishment that the scope of the release be limited to claims that were certified for class treatment.

Further, the supplemental settlement provides that the emotional distress claims of the 52 class members whose notice was returned as undeliverable and who have not been located will not be released.

In sum, all supplemental class members' economic damages claims will be released. But, as to emotional distress claims, the claims of all except 52 of the supplemental class members will be released.

Accordingly, under the circumstances described above, this order finds that the scope of the release is reasonable.

### C.  FAIRNESS, REASONABLENESS, AND ADEQUACY OF PROPOSED SUPPLEMENTAL SETTLEMENT.

A district court may approve a proposed class settlement only upon finding that it is fair, reasonable, and adequate, taking into account (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. FRCP 23(e); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015). For the following reasons, this order finds that the proposed class settlement is fair, reasonable, and adequate.

First, the supplemental settlement terms are fair, reasonable, and adequate. The settlement here will provide supplemental class members with non-reversionary settlement payments of $18,169,325. This supplemental settlement provides the same formula for relief as the original settlement, which represented 37% of what Plaintiffs estimated they could have recovered in economic damages on their

best day at trial.[2] Thus, like the original settlement, this supplemental settlement provides substantially more relief than that approved in similar settlements involving wrongful loan modifications. (Dkt. 292 at 9) (citing *Chao v. Aurora Loan Services*, 2015 WL 294823 (N.D. Cal. Jan. 21, 2015) (Armstrong, J.) (approving a $5.25M settlement on behalf of 15,000 class members that represented approximately 19% of the claimed damages for breach of contract and UCL restitution); *Gaudin v. Saxon Mortgage Servs., Inc.*, 2015 WL 7454183 (N.D. Cal. Nov. 23, 2015) (Tigar, J.) (approving $4.5M settlement providing each class member with average payment of approximately $1,100, representing approximately 13.6% of the claimed damages)); *see also Wigod v. Wells Fargo Bank, N.A.,* No. 1:10-cv-02348 (N.D. Ill.) at Dkts. 269, 274 at 7, 277 (approving claims-made settlement where borrowers whose homes were foreclosed were eligible to receive part of $2 million fund based on criteria such as whether the borrower previously received a modification; 170 claims were submitted).

Moreover, in addition to the settlement funds, supplemental class members have already received approximately $19.2 million from Wells Fargo in voluntary remediation payments. The total amount supplemental class members will receive in connection with this error will therefore be over $37.3 million. Class Counsel achieved this substantial supplemental settlement despite the litigation risks that remained: Wells Fargo could prevail at summary judgment, trial, or on appeal, leaving the supplemental class with no recovery at all.

The negotiated relief is therefore more favorable than what classes in comparable cases received and readily satisfies the Rule 23 standard of fair, reasonable, and adequate. This supplemental settlement provides a substantial payment to each supplemental class member in a case that was fiercely contested, where Plaintiffs' contract interpretation theory presented substantial litigation risk, and where even upon a showing of liability there would have been questions about Plaintiffs' ability to demonstrate damages.

*Second*, the allocation plan for supplemental settlement proceeds is fair and reasonable. There is no claims process for distributing the $16,719,325 in economic loss awards because the supplemental

---

[2] Plaintiffs' damages expert, Dan Salah, prepared an expert damages report for the named Plaintiffs and California class members in the original settlement in which he calculated two categories of economic damages: lost equity in class members' homes and the value of the "loss of use" of their homes. (Dkt. No. 328-2 at ¶ 31; Dkt. No. 192-12.)

class members are known and the amount of their payments will be determined using the same allocation plan (based on factors that are designed to represent each borrower's proportionate damages) that this Court approved with respect to the original settlement. Supplemental class members will receive checks ranging from $14,000 and $116,502. The class administrator will mail checks to supplemental class members.

As to the severe emotional distress fund, Ms. Yanni has allocated the $1,450,000 fund among the 104 supplemental class members who submitted claims. Each of the 104 members will receive between $11,400 and $34,420. The Court appreciates the good work of special master Cathy Yanni in allocating the emotional distress claims.

*Third*, the original class settlement, on which this settlement was based, followed the efforts of Magistrate Judge Ryu in facilitating mediation between the parties. In negotiating this supplemental settlement, the parties again communicated with Judge Ryu although no settlement conference was needed. This background is relevant to whether or not the proposed settlement agreement appears to be "the product of serious, informed, non-collusive negotiations." *See In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2017) (Chief Judge Vaughn Walker).

*Fourth*, the class representatives and Class Counsel have adequately represented the class. The Court previously found that they adequately represented the original class members. (Dkt. No. 292 at 11.) The fact that these class representatives remained engaged to ensure that the supplemental class members receive equal settlement compensation further proves that they have taken their role as class representatives seriously. Moreover, the class representatives are still not seeking service awards.

Having considered the applicable factors, this order finds the proposed class settlement is fair, reasonable, and adequate as to warrant final approval. Accordingly, final approval of the class settlement and plan of allocation is **GRANTED**.

**2. MOTION FOR ATTORNEY'S FEES AND COSTS.**

**A. ATTORNEY'S FEES.**

A district court must ensure that attorney's fees are "fair, adequate, and reasonable," even if the parties have entered into a settlement agreement that provides for those fees. *Staton v. Boeing Co.*, 327 F.3d 938, 963–64 (9th Cir. 2003). Here, Class Counsel and Wells Fargo negotiated an agreement

whereby Wells Fargo, subject to court approval, will pay attorney's fees of up to $3,623,865 in addition to the amount due to the supplemental class. That this agreement was reached at arm's length after negotiating settlement benefits and does not affect the supplemental class benefits in any way is evidence that the proposed fee request is reasonable. Also, the parties negotiated a proposed fee of approximately 16.6% of the net supplemental settlement amount. (Dkt. 312-2 at § IV, ¶ B.). This is 8.4% lower than the percentage fee award of 25% that the Court approved as part of the original settlement.

While this Court usually prefers that the parties not enter into agreements on fees, under the unique circumstances of this supplemental settlement, the parties' agreed upon fee does not implicate any concerns about collusion. As Class Counsel explained in their preliminary and final approval filings, before negotiating fees, the parties negotiated the amount of economic damages to be paid to supplemental class members as well as the amount of the severe economic distress fund. They did so in order to ensure that supplemental class members receive economic loss payments under the same formula as the original class as well as a proportionate severe emotional distress fund. The parties then negotiated the amount of attorney's fees, which Wells Fargo agreed to pay separate and apart from supplemental class member benefits. The award of attorney's fees, therefore, will not diminish settlement benefits. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices and Prod. Liab. Litig.*, No. 3:15-md-02672-CRB, Dkt. 3053 at 7 (N.D. Cal. Mar. 17, 2017) (no detriment to class in awarding fees paid by defendant separate and apart from non-reversionary class compensation amount); *see also Dahl v. Bay Power Inc.*, 2021 WL 2313388, at *3 (N.D. Cal. May 28, 2021) (approving agreed upon fee amount in an FLSA case where "the negotiated attorney's fee does not reduce the award to any Plaintiff"). Thus, under these circumstances the parties' negotiated fee award is reasonable and warrants this Court's approval.

The amount of fees Class Counsel seeks is a reasonable percentage of the net supplemental settlement amount. The gross supplemental settlement, including the requested fees and expenses is $21,864,673. Deducting administration and litigation expenses, the aggregate *net* supplemental settlement amount is $21,793,190. The requested $3,623,865 fee is 16.6% of this net amount.

The Ninth Circuit benchmark is 25% of the recovery obtained, *Bellinghausen v. Tractor Supply*

*Co.*, 306 F.R.D. 245, 260 (N.D. Cal. 2015), with most "awards exceed[ing]" 25%. *In re Omnivision Techs.,* 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008). District courts may depart (upward or downward) from the 25% benchmark rate by "providing adequate explanation in the record of any 'special circumstances.'" *In re Bluetooth*, 654 F.3d at 942. And courts may consider the net or gross recovery in assessing the reasonableness of a fee request. *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000) (holding "reasonableness of attorneys' fees is not measured by the choice of the denominator"). Ultimately, however, "[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). Thus, the requested fee is below the Ninth Circuit benchmark and is reasonable.

Moreover, examining Class Counsel's aggregate fees as a percentage of the aggregate net settlement (i.e. the sum of the original and supplemental settlements) also supports granting the requested fee. Including the supplemental fees, the aggregate gross settlement amount is $40,364,673. Deducting aggregate administration and litigation expenses, the aggregate *net* settlement amount is $39,893,190. The aggregate fees Class Counsel will receive for work on the case overall ($8,148,865) is 20.4% of this aggregate *net* settlement amount. This percentage is also below the Ninth Circuit benchmark.

While the Court need not perform a lodestar crosscheck because the requested fee is below the 25% benchmark (*Farrell v. Bank of Am. Corp., N.A.*, 827 Fed. App'x. 628, 631 (9th Cir. 2020), *cert. denied sub nom. Threatt v. Farrell*, No. 20-1349, 2021 WL 4507641 (U.S. Oct. 4, 2021), a crosscheck here confirms the reasonableness of the fee. The supplemental settlement is the product of the work performed since the inception of this case and the work performed after these supplemental class members were identified. In its order granting final approval to the original settlement, this Court noted that Class Counsel's hours, hourly rates and lodestar of $3,758,689 (after exercising their discretion to cut over 2,500 hours) were reasonable. (Dkt. 292 at 12-13.) Since they submitted this lodestar, Class Counsel has incurred fees exceeding $700,000[3] in lodestar for their work submitting final approval paperwork for the original settlement, locating and distributing settlement proceeds to original class

---

[3] This lodestar reflects a reduction of 138 hours for work connected with the supplemental class notice mailed in September 2021 and for other miscellaneous hours deducted in Class Counsel's exercise of billing discretion.

members, negotiating the supplemental class settlement, preparing preliminary approval papers including class notice, overseeing the class administrator's mailing of class notice and researching new addresses for supplemental class members whose notices were undeliverable, communicating with the special master, communicating with supplemental class members, and preparing the supplemental final approval and fee motion.

This brings Class Counsel's aggregate lodestar to $4,461,043. Awarding the requested fee in this supplemental settlement brings Class Counsel's total fee in the entire case to $8,148,865, which represents a roughly 1.8 multiplier. This multiplier is well within the range that the Ninth Circuit has found to be reasonable. In the Ninth Circuit, multipliers of 1 to 4 are typical. *See Hopkins v. Stryker Sales Corp.*, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013) ("Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases."). Thus, a crosscheck confirms the reasonableness of awarding Class Counsel the requested fee.

The motion for attorney's fees is accordingly **GRANTED**.

### B. COST AND EXPENSES.

Class Counsel seek to recover from the settlement fund a total of $1,483 in litigation costs and expenses as reimbursement for copying and research costs related to locating unfound class members. These expenses are of a type customarily billed to a fee-paying client and are reasonable.

The motion for reimbursement of these costs is therefore **GRANTED**.

IT IS SO ORDERED.

Dated: _____

_____
WILLIAM H. ALSUP
UNITED STATES DISTRICT JUDGE